James E. Cecchi
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey  07068
(973) 994-1700

Steve W. Berman
Sean R. Matt
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, Washington  98101
(206) 623-7292

*Attorneys for Plaintiff and the Proposed Classes*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ULYANA LYNEVYCH, on behalf of herself and all others similarly situated,<br><br>                                   Plaintiff,<br><br>        v.<br><br>MERCEDES-BENZ USA, LLC, a Delaware Limited Liability Company,<br><br>                                   Defendant. | Civil Action No.<br><br><br>**COMPLAINT and**<br>**<u>DEMAND FOR JURY TRIAL</u>** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     JURISDICTION ....................................................................................................4

III.    VENUE ..................................................................................................................4

IV.     PARTIES ...............................................................................................................4

      A.      Plaintiff ......................................................................................................4

      B.      Defendant ...................................................................................................6

V.      FACTUAL ALLEGATIONS .................................................................................7

      A.      The Environmental Challenges Posed by Diesel Engines and the United States Regulatory Response Thereto ......................................................7

      B.      The BlueTEC Technology ..........................................................................8

      C.      Mercedes Advertised and Promoted BlueTEC as the World's Cleanest Diesel Engine .............................................................................9

      A Clean Campaign ................................................................................................9

      D.      The Mercedes Deception .........................................................................14

      E.      The Damage ..............................................................................................19

VI.     TOLLING OF THE STATUTE OF LIMITATIONS.............................................20

      A.      Discovery Rule Tolling.............................................................................20

      B.      Fraudulent Concealment Tolling .............................................................21

      C.      Estoppel....................................................................................................21

VII.    CLASS ALLEGATIONS ......................................................................................22

      **A.      Claims Brought on Behalf of the Nationwide Class and the New Jersey Subclass Under New Jersey Law**....................................................31

      **B.      Claims Brought on Behalf of the Virginia Subclass** .................................35

      **C.      Breach of Contract Claims Brought on Behalf of the Remaining State Subclasses**........................................................................................43

**D.** **Unfair and Deceptive Trade Practices Act Claims Brought on Behalf of 36 State Subclasses and the District of Columbia Subclass** ........................................45

**E.** **Fraudulent Concealment Claims Brought on Behalf of the Remaining State Subclasses**....................................................................................................................51

Plaintiff Ulyana Lynevych (Plaintiff), individually and on behalf of all others similarly situated (the "Class"), alleges the following based upon the investigation of counsel, the review of scientific papers, and the investigation of experts:

## I.     INTRODUCTION

1.      In the wake of the major scandal involving Volkswagen and Audi diesel vehicles evading emissions standards with the help of certain software that turns off emissions controls when the vehicles are not being tested, reports now indicate that Mercedes-Benz USA, LLC's (Mercedes)' so called "Clean Diesel" vehicles emit far more pollution on the road than in lab tests.  Real world testing has recently revealed that these vehicles emit dangerous oxides of nitrogen (NOx) at a level *more than 65 times higher than the United States Environmental Protection Agency permits*.  The Mercedes "Clean Diesel" turns out to be far from "clean."

2.      Diesel engines pose a difficult challenge to the environment because they have an inherent trade-off between power, fuel efficiency, and emissions.  Compared to gasoline engines, diesel engines generally produce greater torque, low-end power, better drivability and much higher fuel efficiency.  But these benefits come at the cost of much dirtier and more harmful emissions.

3.      One by-product of diesel combustion is NOx, which generally describes several compounds comprised of nitrogen and oxygen atoms.  These compounds are formed in the cylinder of the engine during the high temperature combustion process.  NOx pollution contributes to nitrogen dioxide, particulate matter in the air, and reacts with sunlight in the atmosphere to form ozone.  Exposure to these pollutants has been linked with serious health dangers, including serious respiratory illnesses and premature death due to respiratory-related or cardiovascular-related effects. The United States Government, through the Environmental

Protection Agency (EPA), has passed and enforced laws designed to protect United States citizens from these pollutants and certain chemicals and agents known to cause disease in humans.  Automobile manufacturers must abide by these U.S. laws and must adhere to EPA rules and regulations.

4.     In order to produce a diesel engine that has desirable torque and power characteristics, good fuel economy, and emissions levels low enough to meet the stringent European and United States governmental emission standards, Mercedes developed the BlueTEC™ diesel engine.  The BlueTEC name is a general trade name used to describe a number of in-cylinder and after-treatment technologies used to reduce emissions.  The primary emission control after-treatment technologies include a diesel particulate filter (DPF) and a selective catalytic reduction (SCR) system.  The DPF traps and removes particulate (soot) emissions, while the SCR system facilitates a chemical reaction to reduce NOx into less harmful substances, such as nitrogen and oxygen.

5.     In order to appeal to environmentally conscious consumers, Mercedes *vigorously* markets its BlueTEC vehicles as "the world's cleanest and most advanced diesel" with "ultra-low emissions, high fuel economy and responsive performance" that emits "up to 30% lower greenhouse-gas emissions than gasoline."  Mercedes represents that its BlueTEC vehicles "convert[] the nitrogen oxide emissions into harmless nitrogen and oxygen" and "reduces the nitrogen oxides in the exhaust gases by up to 90%."

6.     Additionally, Mercedes promotes its Clean Diesel vehicles as "Earth Friendly": "With BlueTEC, cleaner emissions are now an equally appealing benefit."  In fact, Mercedes proclaims itself "#1 in CO2 emissions for luxury vehicles."

7.      These representations are deceptive and false.  ***Mercedes has programmed its BlueTEC vehicles to turn off the NOx reduction systems when ambient temperatures drop below 50 degrees Fahrenheit***.  Mercedes has ***admitted*** that a shut-off device in the engine management of certain BlueTEC diesel cars stops NOx cleaning under these and other, unspecified circumstances.  On-road testing has confirmed that Mercedes' so-called "Clean Diesel" cars produced NOx emissions at an average of 603 mg/km, which is 7.5 times the Euro 6 standard and 19 times higher than the U.S. standard.  Some instantaneous NOx values were as high as 2000 mg/km—25 times the Euro 6 standard and 65 times higher than the U.S. limit.

8.      Thus, Mercedes manufactures, designs, markets, sells, and leases certain "BlueTEC Clean Diesel" vehicles as if they were "reduced emissions" cars that comply with all applicable regulatory standards, when in fact, these Mercedes vehicles are not "clean diesels" and emit more pollutants than allowed by federal and state laws—and far more than their gasoline fueled counterparts.  On information and belief, Plaintiffs allege that the following Mercedes models powered by BlueTEC diesel fueled engines are affected by the unlawful, unfair, deceptive, and otherwise defective emission controls utilized by Mercedes:  ML 320, ML 350, GL 320, E320, S350, R320, E Class, GL Class, ML Class, R Class, S Class, GLK Class, GLE Class, and Sprinter (the Affected Vehicles).

9.      Mercedes did not previously disclose to Plaintiff, consumers, or U.S. regulatory authorities that, when the temperature falls below 50 degrees, the Affected Vehicles spew unmitigated NOx into the air.

10.     Mercedes never disclosed to consumers that Mercedes diesels with BlueTEC engines may be "clean" diesels when it is warm, but are "dirty" diesels when it is not.  Mercedes

never disclosed that, when the temperature drops below 50 degrees, it prioritizes engine power and profits over people.

11. Plaintiff brings this action individually and on behalf of all other current and former owners or lessees of Affected Vehicles. Plaintiff seeks damages, injunctive relief, and equitable relief for Mercedes' misconduct related to the design, manufacture, marketing, sale, and lease of Affected Vehicles with unlawfully high emissions, as alleged in this Complaint.

## II.     JURISDICTION

12. This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.    VENUE

13. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, where Mercedes was headquartered for most of the relevant time period. Moreover, Mercedes has marketed, advertised, sold, and leased the Affected Vehicles within this District.

## IV.     PARTIES

**A.     Plaintiff**

14. Plaintiff Ulyana Lynevych is an individual residing in Schiller Park, Illinois. In August 2014, Plaintiff purchased a Mercedes ML 350 from Tysinger Motor Co., Inc., an authorized Mercedes dealer in Hampton, Virginia. Plaintiff purchased, and still owns, this vehicle. Unknown to Plaintiff, at the time the vehicle was purchased, it was equipped with an

emissions system that turned off NOx reduction when the temperature dropped below 50 degrees Fahrenheit, and that during normal driving conditions, emitted many multiples of the allowed level of pollutants such as NOx. Mercedes' unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the ML 350 without proper emission controls has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of her vehicle. Mercedes knew about, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased her vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel," complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

15.     Plaintiff selected and ultimately purchased her vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes. Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure relating to the unlawfully high emissions and the fact that Mercedes had designed part of the emissions reduction system to turn off below 50 degrees Fahrenheit. Had Mercedes disclosed this design, and the fact that the ML 350 actually emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

16.     Each and every Plaintiff and each Class member has suffered an ascertainable loss as a result of Mercedes' omissions and/or misrepresentations associated with the BlueTEC Clean Diesel engine system, including, but not limited to, out-of-pocket loss and future attempted

repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle.

17.     Neither Mercedes nor any of its agents, dealers, or other representatives informed Plaintiff or Class members of the existence of the unlawfully high emissions and/or defective nature of the BlueTEC Clean Diesel engine system of the Affected Vehicles prior to purchase.

**B.     Defendant**

18.     Defendant Mercedes-Benz USA, LLC ("Mercedes") is a Delaware limited liability corporation whose principal place of business is 303 Perimeter Center North, Suite 202, Atlanta, Georgia, 30346.  Until approximately July 2015, Mercedes' principal place of business was 1 Mercedes Drive, Montvale, New Jersey 07645.  Mercedes' Customer Service Center is at 3 Mercedes Drive, Montvale, New Jersey 07645, and it operates a Learning and Performance Center at the same location.  Mercedes operates a regional sales office at Morris Corporate Center 3, Bldg. D, 400 Interpace Parkway, Parsippany, New Jersey 07054, and has a parts distribution center at 100 New Canton Way, Robbinsville, New Jersey 08691.  Mercedes' registered agent for service of process is The Corporation Trust Company, Corporation Trust Center, 1209 Orange St, Wilmington, Delaware 19801.

19.     Mercedes, through its various entities, designs, manufactures, markets, distributes and sell Mercedes automobiles in Illinois and multiple other locations in the United States and worldwide.  Mercedes and/or its agents designed, manufactured, and installed the BlueTEC Clean Diesel engine systems in the Affected Vehicles.  Mercedes also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Affected Vehicles.

## V.      FACTUAL ALLEGATIONS

**A.      The Environmental Challenges Posed by Diesel Engines and the United States Regulatory Response Thereto**

20.      The United States Government, through the Environmental Protection Agency (EPA), has passed and enforced laws designed to protect United States citizens from pollution and in particular, certain chemicals and agents known to cause disease in humans.  Automobile manufacturers must abide by these U.S. laws and must adhere to EPA rules and regulations.

21.      The U.S. Clean Air Act has strict emissions standards for vehicles, and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution.  Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity.

22.      There is a very good reason that these laws and regulations exist, particularly as regards vehicles with diesel engines:  In 2012, the World Health Organization declared diesel vehicle emissions to be carcinogenic, and about as dangerous as asbestos.

23.      Diesel engines pose a particularly difficult challenge to the environment because they have an inherent trade-off between power, fuel efficiency, and emissions:  the greater the power and fuel efficiency, the dirtier and more harmful the emissions.

24.      Instead of using a spark plug to combust highly refined fuel with short hydrocarbon chains, as gasoline engines do, diesel engines compress a mist of liquid fuel and air to very high temperatures and pressures, which causes the diesel to spontaneously combust.  This causes a more powerful compression of the pistons, which produces greater engine torque (that is, more power).

25.     The diesel engine is able to do this both because it operates at a higher compression ratio than a gasoline engine and because diesel fuel contains more energy than gasoline.

26.     But this greater energy and fuel efficiency comes at a cost:  diesel produces dirtier and more dangerous emissions.  One by-product of diesel combustion is oxides of nitrogen (NOx), which include a variety of nitrogen and oxygen chemical compounds that only form at high temperatures.

27.     NOx pollution contributes to nitrogen dioxide, particulate matter in the air, and reacts with sunlight in the atmosphere to form ozone.  Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital.  Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory illness are at acute risk of health effects from these pollutants.

**B.     The BlueTEC Technology**

28.     Car manufacturers have struggled to produce diesel engines that have high power and strong fuel efficiency but also cleaner emissions.  Removing NOx from the untreated exhaust is difficult, and diesel car makers have reacted by trying to remove NOx from the car's exhaust using catalysts.

29.     Mercedes' response to the challenge has been the BlueTEC diesel engine.

30.     After the by-products of combustion leave the engine, the BlueTEC technology injects ammonia-rich urea into the exhaust in order to convert NOx into less harmful substances, such as nitrogen and oxygen.

31.     The urea solution, which is branded "AdBlue" in the Affected Vehicles, is held in its own tank under the car.  The AdBlue in the tank must be periodically refilled to ensure that the catalyst system effectively removes NOx.

32.     The BlueTEC approach, when it is operational, results in cleaner emissions without compromising power or fuel economy.

**C.      Mercedes Advertised and Promoted BlueTEC as the World's Cleanest Diesel Engine**

33.     In order to counter beliefs that diesel engines produce "dirty" emissions and to capitalize on consumers' desire to protect the environment, Mercedes aggressively markets the BlueTEC engine as being environmentally friendly.

34.     The central theme in Mercedes' BlueTEC engine marketing is the promise of "clean diesel:"



35.     Mercedes touts the BlueTEC engine as "[e]arth-friendly, around the world."

36.     Mercedes expressly markets the Affected Vehicles as BlueTEC Clean Diesel vehicles, with EPA certifications throughout the United States:  "Presenting BlueTEC:  simply the world's cleanest and most advanced diesel. . . .   [W]e've been constantly refining and mastering the technology, now available in five different Mercedes-Benz BlueTEC models in all 50 states."

37.     Mercedes promises that the BlueTEC Clean Diesel vehicles provide "higher torque and efficiency with up to 30% lower greenhouse-gas emissions than gasoline," together with "ultra-low emissions, high fuel economy and responsive performance[.]"   Mercedes represents that, "[w]hen injected into the exhaust, AdBlue converts the nitrogen oxide emissions into harmless nitrogen and oxygen" and "reduces the nitrogen oxides in the exhaust gases by up to 90%."

38.     According to Mercedes, the company offers consumers "the world's cleanest diesel automobiles."   Additionally, Mercedes promotes its Clean Diesel vehicles as "Earth Friendly": "With BlueTEC, cleaner emissions are now an equally appealing benefit."   In fact, Mercedes proclaims itself "#1 in CO2 emissions for luxury vehicles."

39.     Mercedes holds itself out as a protector of the environment:   "Long before it became front-page news, Mercedes-Benz has been innovating and implementing new ways to help minimize the impact of cars and trucks on the world we share.   It's a promise that's been kept for generations, and not just with cleaner, more efficient power under the hood.  . . .  For generations, Mercedes-Benz has been breaking new ground to help preserve the earth for future generations."   Indeed, the company relishes its message that it plays an industry leading role in advancing "green" technologies like BlueTEC.

40.     Mercedes calls BlueTEC an "environmental hero":



41.     Other Mercedes ads touting BlueTEC as environmentally friendly and having ultra-low emissions that "can help everyone breathe easier" include the following:





## *Earth-friendly, around the world*

**The leader in diesel, since the beginning.**

Drivers in much of Europe and Asia frequently choose diesel over gasoline for its rich torque output and higher fuel efficiency. With BlueTEC, cleaner emissions are now an equally appealing benefit.

ADAC, Germany's largest automobile association, rates BlueTEC as #1 in $CO_2$ emissions for luxury vehicles. Many BlueTEC models already fulfill the 2014 emission standards of the European Union. And beyond cars, the Mercedes-Benz Actros commercial truck is already the fuel economy champion and first to meet the Euro VI emission standard.

Since inventing the car in 1886, Mercedes-Benz has reinvented it numerous times. From the first diesel car of 1936 to today's BlueTEC clean diesels, it's an unmatched history of ever-increasing efficiency, record-setting durability, and exceeding the needs of drivers today, and tomorrow.



## Up for anything, yet remarkably down to earth.

**Full-time response. Far-reaching responsibility.** The three engines of the GL-Class all share two powerful traits: The mighty torque necessary to motivate a full-size SUV. And certified Ultra Low Emissions, to motivate every other SUV on the planet. Two gasoline-powered V-8 engines deliver breathtaking acceleration. While a 50-state clean diesel BlueTEC V-6 breaks down its nitrogen oxide emissions into harmless nitrogen and oxygen, for torque-rich performance that can help everyone breathe easier. To wield its power even more wisely, every GL-Class features a smooth 7-speed automatic transmission and efficient 4MATIC® all-wheel drive¹ that continually directs the engine's torque to the tires with the best grip—in snow, mud or even dry corners. The GL-Class always strives to put its best foot forward.





**Cleaner power.** With an estimated 21 highway mpg,² the GL 350 BlueTEC can go up to 550 miles on a tank of fuel, including B5 Biodiesel. That's further than most any full-size SUV. Advanced BlueTEC technology starts with cleaner combustion of its diesel fuel, and finishes with certified Ultra Low Emissions, even in the most stringent U.S. states.

**Pure performance.** The GL-Class also offers two powerful gasoline V-8 engines that output a bounty of low-end torque while still earning Ultra Low Emission Vehicle certification. The 335-hp GL 450 can accelerate from 0 to 60 mph in just 6.9 seconds, while the 382-hp GL 550 whisks you there in an effortless 6.4 seconds³—quicker than some sports cars.

**Clear control.** Every GL-Class delivers its ample power via the smooth, seamless response of a 7-speed automatic transmission. An elegant electronic selector lever operates with fingertip ease. Driver-adaptive logic matches the shift points to your current driving style, or you can take charge anytime with the steering wheel-mounted paddle shifters.

D.      **The Mercedes Deception**

42.     In the wake of a major scandal involving Volkswagen and Audi diesel vehicles evading emissions standards with the help of certain software that manipulates emissions controls (called "defeat devices"),[1] scientific literature and reports indicate that Mercedes' so called Clean Diesel vehicles emit far more pollution on the road than in lab tests.  The EPA has widened its probe of auto emissions to include, for example, the Mercedes E250 BlueTEC.

43.     Unlike Volkswagen and Audi, which employed software that turns full emissions controls on only when the software detects that the vehicle is undergoing official emissions testing, Mercedes does not use a "defeat device" specifically designed to trick the test.

44.     However, ***Mercedes has programmed its BlueTEC vehicles with another "defeat device" that turns off the NOx reduction system when ambient temperatures drop below 50 degrees Fahrenheit***.

45.     As first reported in a February 2016 issue of German language magazine *Der Spiegel*, Mercedes has ***admitted*** that a shut-off device in the engine management of its C-Class diesel cars stops NOx cleaning under these and other, unspecified circumstances.  Mercedes asserts, without providing details, that the shut-off is done to protect the engine.

46.     So, while the Mercedes diesels with the BlueTEC engine are designed to pass official emissions tests, which are usually conducted at a temperature exceeding 50 degrees, the

---

[1]     The EPA's Notice of Violation ("NOV") to Volkswagen Group of America, Inc. can be found at: *http://www3.epa.gov/otaq/cert/documents/vw-nov-caa-09-18-15.pdf*.  As detailed in the EPA's Notice of Violation ("NOV"),] software in Volkswagen and Audi diesel vehicles detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test.  But otherwise, while the vehicle is running, the emissions controls are suppressed.  This results in cars that meet emissions standards in the laboratory or state testing station, but during normal operation emit NOx at up to 40 times the standard allowed under United States laws and regulations.  Volkswagen has admitted to installing a defeat device in its diesel vehicles.

vehicles nonetheless emit far more pollution than government emissions standards in the United States permit when the temperature drops below 50 degrees.

47.    This puts the lie to Mercedes' claims that BlueTEC is "the world's cleanest diesel passenger vehicle" with "ultralow emissions:"    Mercedes misrepresents the emissions performance of its vehicles equipped with BlueTEC engines because, when the temperature falls below 50 degrees, the Affected Vehicles spew unmitigated NOx into the air.

48.    Mercedes never disclosed to consumers that Mercedes diesels with BlueTEC engines may be "clean" diesels when it is warm, but are "dirty" diesels when it is not.  Mercedes never disclosed that, when the temperature drops below 50 degrees, it prioritizes engine power and profits over people.

49.    A study conducted by TNO for the Dutch Ministry of Infrastructure and the Environment confirms that, in real world testing, the Mercedes C-Class 220 emits NOx at levels much higher than in controlled dynamometer tests and much higher than the "Euro 6 standard," which is less stringent than the U.S. standard.  More specifically, the May 2015 TNO Report found that post-selective catalytic reduction (SCR) tailpipe NOx emissions ranged from 250 to 2000 mg/km; for reference, the Euro 6 max, which is less stringent than U.S. standards, is 80 mg/km.   "Overall the NOx real-world emissions of [the C-Class 220] are relatively high, especially during the very short trips . . . and trips at high speeds."  *See* TNO Report at 34. Furthermore, the "results show clearly that different control strategies of the engine are applied in chassis dynamometer tests and on the road."  *Id.*, Appendix B, page 3.  In other words, the vehicle emitted significantly more NOx on real-world test trips on the road than during a type approval test in the laboratory.

50.     TNO added:  "In chassis dynamometer tests the engine out NOx emissions are 100 to 450 mg/km, indicating an effective EGR [exhaust gas recirculation] system which reduces NOx emissions in certain chassis dynamometer tests.  In real-world tests the EGR system seems to be less effective or not effective at all, as engine out NOx emissions in real-world tests range from 450 to as much as 2250 mg/km.  TNO Report at 34.

51.     TNO also found that the tank holding the AdBlue in the Mercedes C-Class 220 was too small to hold the amount of AdBlue catalyst necessary to reduce NOx emissions below regulatory limits for the advertised service interval (22,000 km).  The tank size is 25 liters, and TNO found that a 45.8 liter tank would be necessary to meet the Euro 6 80 mg/km NOx emission level—a level that is less stringent than U.S. limits.  TNO Report at 45.

52.     TNO further remarked:  "It is remarkable that the NOx emission under real-world conditions exceeds the type approval value by [so much].  It demonstrates that the settings of the engine, the EGR and the SCR during a real-world test trip are such that they do not result in low NOx emissions in practice.  In other words: ***In most circumstances arising in normal situations on the road, the systems scarcely succeed in any effective reduction of NOx emissions***."  TNO Report at 6 (emphasis added).

53.     Other organizations are beginning to take notice of the Mercedes deception.  The Transportation and Environment (T&E) organization, a European group aimed at promoting sustainable transportation, compiled data from "respected testing authorities around Europe" that show Mercedes might sell cars that produce illegal levels of tailpipe emissions.  T&E stated in September 2015 that real-world emissions testing showed drastic differences from laboratory tests such that the Mercedes models tested emitted 50% more pollutants such as $CO_2$ on the road

than in their laboratory tests.  "For virtually every new model that comes onto the market the gap between test and real-world performance leaps," the report asserts.

54.     Furthermore, it was reported in October 2015 that certain diesel models sold by Mercedes in Europe (including the C 220 BlueTEC and the GLA 200 d) were found to emit 2 to 3 times higher levels of NOx pollution when tested in more realistic driving conditions, according to new research data compiled by ADAC, Europe's largest motoring organization. The new testing results are based on a U.N.-developed test called "WLTC."

55.     Worse still, according to on-road testing in Europe by Emissions Analytics, publicized on October 9, 2015, Mercedes' diesel cars produced an average of 0.406g/km of NOx on the road, 5 times higher than the Euro 6 level permits—and more than 13 times higher than the U.S. level permits (.03g/km).

56.     Emissions Analytics is a U.K. company, which says that it was formed to "overcome the challenge of finding accurate fuel consumption and emissions figures for road vehicles."  With regard to its recent on-road emissions testing, the company explains:

> "[I]n the European market, we have found that real-world emissions of the regulated nitrogen oxides are four times above the official level, determined in the laboratory.  Real-world emissions of carbon dioxide are almost one-third above that suggested by official figures.  For car buyers, this means that fuel economy on average is one quarter worse than advertised.  This matters, even if no illegal activity is found."

57.     The German Environmental Aid organization (DUH) recently called for emergency action to ban the C220 from city centers in Germany when the temperature drops below 10 degrees Celsius/50 degrees Fahrenheit.  *See* https://translate.google.com/translate?hl=en&sl=de&u=http://www.duh.de/pressemitteilung.html %3F%26tx_ttnews%255Btt_news%255D%3D3726&prev=search.

58.     In response to the current diesel emissions controversy, Mercedes' parent company, Daimler AG, has issued a statement claiming:  "We categorically deny the accusation of manipulating emission tests regarding our vehicles.  A defeat device, a function which illegitimately reduces emissions during testing, has never been and will never be used at Daimler.  This holds true for both diesel and petrol engines.  Our engines meet and adhere to every legal requirement.  . . . [W]e can confirm that none of the allegations apply to our vehicles. The technical programming of our engines adheres to all legal requirements."

59.     A spokesman for Mercedes evaded the ramifications of the findings that Mercedes diesel cars violate emissions standards, saying only:  "Since real-world driving conditions do not generally reflect those in the laboratory, the consumption figures may differ from the standardized figures."  Notably, Mercedes and its parent company have not actually denied that their diesel cars violate emissions standards.

60.     The U.S. Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution.  Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity.  Accordingly, Mercedes has certified to the EPA that the Mercedes BlueTEC Clean Diesel vehicles sold in the United States meet applicable federal emissions standards.  Nevertheless, by manufacturing and selling BlueTEC cars that emit far more pollutants than permitted under EPA standards in cool weather, and that emit far more pollutants on the road than in laboratory tests in cool weather, Mercedes violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal law.

61.     On information and belief, Plaintiff alleges that the following Mercedes diesel models are affected by the unlawful, unfair, deceptive, and otherwise defective emission controls (the "Affected Vehicles"):  ML 320, ML 350, GL 320, E320, S350, R320, E Class, GL Class, ML Class, R Class, S Class, GLK Class, GLE Class, and Sprinter.  Discovery may reveal that additional vehicle models and model years are properly included as Affected Vehicles.

**E.     The Damage**

62.     Mercedes will not be able to make the Affected Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency.  As a result, even if Mercedes is able to make Class members' Affected Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised.  This will necessarily result in a diminution in value of every Affected Vehicle, and it will cause owners of Affected Vehicles to pay more for fuel while using their affected vehicles.

63.     As a result of Mercedes' unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Affected Vehicles are not "clean" diesels and emit more pollutants than permitted under federal and state laws, owners and/or lessees of the Affected Vehicles have suffered losses in money and/or property.  Had Plaintiff and Class members known of the higher emissions at the time they purchased or leased their Affected Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did.  Moreover, when and if Mercedes recalls the Affected Vehicles and degrades the BlueTEC Clean Diesel engine performance in order to make the Affected Vehicles compliant with EPA standards, Plaintiff and Class members will be required to spend additional sums on fuel and will not obtain the performance characteristics of

their vehicles when purchased.  Moreover, Affected Vehicles will necessarily be worth less in the marketplace because of their decrease in performance and efficiency and increased wear on their cars' engines.

## VI.      TOLLING OF THE STATUTE OF LIMITATIONS

### A.      Discovery Rule Tolling

64.      Class Members had no way of knowing about Mercedes' deception with respect to the unlawfully high emissions of its BlueTEC Clean Diesel engine system in Affected Vehicles. To be sure, Mercedes continues to market the Affected Vehicles as "clean" diesels and also continues to claim that that Affected Vehicles comply with EPA emissions standards.

65.      Within the time period of any applicable statutes of limitation, Plaintiff and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Mercedes was concealing the conduct complained of herein and misrepresenting the Company's true position with respect to the emission qualities of the Affected Vehicles.

66.      Plaintiff and the other Class Members did not discover, and did not know of facts that would have caused a reasonable person to suspect, that Mercedes did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Mercedes had concealed information about the true emissions of the Affected Vehicles, which was discovered by Plaintiff only shortly before this action was filed.  Nor in any event would such an investigation on the part of Plaintiff and other Class members have disclosed that Mercedes valued profits over truthful marketing and compliance with federal and state law.

67.      For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Affected Vehicles.

**B.      Fraudulent Concealment Tolling**

68.     All applicable statutes of limitation have also been tolled by Mercedes' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

69.     Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the Affected Vehicles were far worse than represented, and of its disregard of federal and state law, Mercedes falsely represented that the Affected Vehicles complied with federal and state emissions standards, that the diesel engines were "Clean," and that it was a reputable manufacturer whose representations could be trusted.

**C.      Estoppel**

70.     Mercedes was under a continuous duty to disclose to Plaintiff and the other Class members the true character, quality, and nature of emissions from the Affected Vehicles, and of those vehicles' emissions systems, and of the compliance of those systems with applicable federal and state law.

71.     Mercedes knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the emissions systems, and the emissions, of the Affected Vehicles.

72.     Mercedes was also under a continuous duty to disclose to Plaintiff and Class members that it had engaged in the conduct complained of herein contrary to federal and state emissions and clean air standards, and that it systematically devalued compliance with federal and state law regulating vehicle emissions and clean air.

73.     Based on the foregoing, Mercedes is estopped from relying on any statutes of limitations in defense of this action.

## VII.    CLASS ALLEGATIONS

74.    Plaintiff brings this action on behalf of herself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class and subclasses (collectively, the "Classes"):

### The Nationwide Class

All persons or entities in the United States who owned and or leased an "Affected Vehicle" as of February 18, 2016.  Affected Vehicles include, without limitation, the diesel-powered:  ML 320, ML 350, GL 320, E320, S350, R320, E Class, GL Class, ML Class, R Class, S Class, GLK Class, GLE Class, and Sprinter.

### The Alabama Subclass

All persons or entities in the state of Alabama who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Alaska Subclass

All persons or entities in the state of Alaska who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Arizona Subclass

All persons or entities in the state of Arizona who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Arkansas Subclass

All persons or entities in the state of Arkansas who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The California Subclass

All persons or entities in the state of California who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Colorado Subclass

All persons or entities in the state of Colorado who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Connecticut Subclass

All persons or entities in the state of Connecticut who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Delaware Subclass

All persons or entities in the state of Delaware who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Florida Subclass

All persons or entities in the state of Florida who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Georgia Subclass

All persons or entities in the state of Georgia who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Hawaii Subclass

All persons or entities in the state of Hawaii who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Idaho Subclass

All persons or entities in the state of Idaho who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Illinois Subclass

All persons or entities in the state of Illinois who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Indiana Subclass

All persons or entities in the state of Indiana who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Iowa Subclass

All persons or entities in the state of Iowa who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Kansas Subclass

All persons or entities in the state of Kansas who owned and/or leased an Affected Vehicle as of February 18, 2016.

- 23 -

### The Kentucky Subclass

All persons or entities in the state of Kentucky who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Louisiana Subclass

All persons or entities in the state of Louisiana who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Maine Subclass

All persons or entities in the state of Maine who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Maryland Subclass

All persons or entities in the state of Maryland who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Massachusetts Subclass

All persons or entities in the state of Massachusetts who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Michigan Subclass

All persons or entities in the state of Michigan who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Minnesota Subclass

All persons or entities in the state of Minnesota who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Mississippi Subclass

All persons or entities in the state of Mississippi who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Missouri Subclass

All persons or entities in the state of Missouri who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Montana Subclass

All persons or entities in the state of Montana who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Nebraska Subclass

All persons or entities in the state of Nebraska who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Nevada Subclass

All persons or entities in the state of Nevada who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The New Hampshire Subclass

All persons or entities in the state of New Hampshire who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The New Jersey Subclass

All persons or entities in the state of New Jersey who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The New Mexico Subclass

All persons or entities in the state of New Mexico who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The New York Subclass

All persons or entities in the state of New York who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The North Carolina Subclass

All persons or entities in the state of North Carolina who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The North Dakota Subclass

All persons or entities in the state of North Dakota who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Ohio Subclass

All persons or entities in the state of Ohio who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Oklahoma Subclass

All persons or entities in the state of Oklahoma who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Oregon Subclass

All persons or entities in the state of Oregon who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Pennsylvania Subclass

All persons or entities in the state of Pennsylvania who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Rhode Island Subclass

All persons or entities in the state of Rhode Island who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The South Carolina Subclass

All persons or entities in the state of South Carolina who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The South Dakota Subclass

All persons or entities in the state of South Dakota who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Tennessee Subclass

All persons or entities in the state of Tennessee who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Texas Subclass

All persons or entities in the state of Texas who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Utah Subclass

All persons or entities in the state of Utah who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Vermont Subclass

All persons or entities in the state of Vermont who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Virginia Subclass

All persons or entities in the state of Virginia who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Washington Subclass

All persons or entities in the state of Washington who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The West Virginia Subclass

All persons or entities in the state of West Virginia who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Wisconsin Subclass

All persons or entities in the state of Wisconsin who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The Wyoming Subclass

All persons or entities in the state of Wyoming who owned and/or leased an Affected Vehicle as of February 18, 2016.

### The District of Columbia Subclass

All persons or entities in the District of Columbia who owned and/or leased an Affected Vehicle as of February 18, 2016.

75.    Excluded from the Class are individuals who have personal injury claims resulting from the unlawfully high emissions in the BlueTEC Clean Diesel system of Affected Vehicles.  Also excluded from the Class are Mercedes and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and

the Judge to whom this case is assigned and his/her immediate family.  Plaintiff reserves the right to revise the Class definition based upon information learned through discovery.

76.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

77.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

78.     **Numerosity**.  Federal Rule of Civil Procedure 23(a)(1):  The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable.  While Plaintiff is informed and believe that there are at least thousands of members of the Class, the precise number of Class members is unknown to Plaintiff, but may be ascertained from Mercedes' books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

79.     **Commonality and Predominance**:  Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3):  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

a)     Whether Mercedes engaged in the conduct alleged herein;

b)     Whether Mercedes designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States;

c)      Whether the BlueTEC Clean Diesel engine system in the Affected Vehicles emit pollutants at levels that do not make them "clean" diesels and that do not comply with U.S. EPA requirements;

d)      Whether the BlueTEC Clean Diesel engine systems in Affected Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Affected Vehicles;

e)      Whether Mercedes knew about the unlawfully high emissions and, if so, how long Mercedes has known;

f)      Whether Mercedes designed, manufactured, marketed, and distributed Affected Vehicles with defective or otherwise inadequate emission controls;

g)      Whether Mercedes' conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

h)      Whether Plaintiff and the other Class members overpaid for their Affected Vehicles;

i)      Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

j)      Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

80.      **Typicality**:   Federal Rule of Civil Procedure 23(a)(3):   Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Mercedes' wrongful conduct as described above.

81.   **Adequacy**:  Federal Rule of Civil Procedure 23(a)(4):  Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other members of the Classes she seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously.  The Classes' interests will be fairly and adequately protected by Plaintiff and her counsel.

82.   **Declaratory and Injunctive Relief**:  Federal Rule of Civil Procedure 23(b)(2): Mercedes has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to each Class as a whole.

83.   **Superiority**:  Federal Rule of Civil Procedure 23(b)(3):  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Mercedes, so it would be impracticable for the members of the Classes to individually seek redress for Mercedes' wrongful conduct.  Even if Class members could afford individual litigation, the court system could not.  Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

A.      **Claims Brought on Behalf of the Nationwide Class and the New Jersey Subclass Under New Jersey Law**

**COUNT I**
**Violations Of The New Jersey Consumer Fraud Act**
**(N.J.S.A.. §§ 56:8-1, *et seq.*)**

84.      Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

85.      Plaintiff brings this Count on behalf of the Nationwide Class and New Jersey Subclass.

86.      The New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq.* ("NJ CFA"), prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

87.      In the course of Mercedes' business, it willfully failed to disclose and actively concealed that the NOx reduction system in the Affected Vehicles' turns off when ambient temperatures drop below 50 degrees Fahrenheit, that the emissions controls were defective, and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOx, as described above.   Accordingly, Mercedes engaged in unfair and deceptive trade practices, including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.   Further, Mercedes' acts and practices described herein offend established public policy because the harm they cause to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and because Mercedes fraudulently concealed the defective nature of the Affected Vehicles from consumers.

88.     Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

89.     Mercedes' conduct proximately caused injuries to Plaintiff and the other Class and Subclass members.

90.     Plaintiff and the other Class members were injured as a result of Mercedes' conduct in that Plaintiff and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

91.     Pursuant to N.J.S.A. § 56:8-20, Plaintiff will serve the New Jersey Attorney General with a copy of this Complaint.

### COUNT II
### Breach Of Contract
### (Based On New Jersey Law)

92.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

93.     Plaintiff brings this Count on behalf of the Nationwide Class and New Jersey Subclass.

94.     Mercedes' misrepresentations and omissions alleged herein, including but not limited to Mercedes' failure to disclose that the NOx reduction system in the Affected Vehicles' turns off when ambient temperatures drop below 50 degrees Fahrenheit, caused Plaintiff and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive

alternative vehicles that did not contain the defective BlueTEC Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

95.     Each and every sale or lease of an Affected Vehicle constitutes a contract between Mercedes and the purchaser or lessee.  Mercedes breached these contracts by, among other things, selling or leasing to Plaintiff and the other New Jersey Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles' turns off when ambient temperatures drop below 50 degrees Fahrenheit, including information known to Mercedes rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with the defective BlueTEC Clean Diesel engine system.

96.     As a direct and proximate result of Mercedes' breach of contract, Plaintiff and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III
## Fraudulent Concealment

97.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

98.     Plaintiff brings this Count on behalf of the Nationwide Class and New Jersey Subclass.

99.     Mercedes intentionally concealed that the NOx reduction system in the Affected Vehicles' turns off when ambient temperatures drop below 50 degrees Fahrenheit, that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants

such as NOx, and were non-compliant with EPA emission requirements, or Mercedes acted with reckless disregard for the truth, and denied Plaintiff and the other Class members information that is highly relevant to their purchasing decision.

100.    Mercedes further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

101.    Mercedes knew these representations were false when made.

102.    The Affected Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, non-EPA compliant and unreliable because the NOx reduction system in the Affected Vehicles' turns off when ambient temperatures drop below 50 degrees Fahrenheit.

103.    Mercedes had a duty to disclose that the NOx reduction system in the Affected Vehicles' turns off when ambient temperatures drop below 50 degrees Fahrenheit, and that these Affected Vehicles were defective, non-EPA compliant and unreliable in that they emitted unlawfully high levels of pollutants, because Plaintiff and the other Class members relied on Mercedes' material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

104.    The aforementioned concealment was material because if it had been disclosed Plaintiff and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

105.    The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle.  Mercedes

knew or recklessly disregarded that its representations were false because it knew that the NOx reduction system in the Affected Vehicles' turns off when ambient temperatures drop below 50 degrees Fahrenheit.  Mercedes intentionally made the false statements in order to sell Affected Vehicles.

106.    Plaintiff and the other Class members relied on Mercedes' reputation—along with Mercedes' failure to disclose the defective nature of the BlueTEC Clean Diesel engine system and Mercedes' affirmative assurance that its Affected Vehicles were reliable and reduced emissions vehicles, and other similar false representations—in purchasing or leasing Mercedes' Affected Vehicles.

107.    As a result of their reliance, Plaintiff and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

108.    Mercedes' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members.  Plaintiff and the other Class members are therefore entitled to an award of punitive damages.

**B.    Claims Brought on Behalf of the Virginia Subclass**

<u>**COUNT IV**</u>
**Fraud By Concealment Under Virginia Law**

109.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

110.    This claim is brought on behalf of the Virginia Subclass.

111.    Mercedes designed, manufactured, marketed, sold, and/or leased Affected Vehicles to Plaintiff and the Subclass members.  Mercedes affirmatively misrepresented to

- 35 -

Plaintiff and the Subclass members in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles had no significant defects, complied with EPA and state emissions regulations, and would perform and operate properly when driven in normal usage.

112.    The Affected Vehicles purchased or leased by Plaintiff and the Subclass members were, in fact, defective, non-EPA compliant, and unreliable, because the NOx reduction system in the Affected Vehicles' turns off when ambient temperatures drop below 50 degrees Fahrenheit.

113.    Mercedes intentionally concealed, suppressed, and failed to disclose the facts that the NOx reduction system in the Affected Vehicles' turns off when ambient temperatures drop below 50 degrees Fahrenheit and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements.

114.    As alleged in this complaint, at all relevant times, Mercedes has held out the Affected Vehicles to be EPA-compliant reduced emissions vehicles.  Mercedes disclosed certain details about the BlueTEC Clean Diesel engine, but nonetheless, Mercedes intentionally failed to disclose the important facts that the NOx reduction system in the Affected Vehicles' turns off when ambient temperatures drop below 50 degrees Fahrenheit, and that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants, and were non-compliant with EPA emissions requirements, making other disclosures about the emission system deceptive.

115.    The truth about the defective emissions controls, unlawfully high emissions, and non-compliance with EPA emissions requirements was known only to Mercedes; Plaintiff and

the Subclass members did not know of these facts and Mercedes actively concealed these facts from Plaintiff and Subclass members.

116.   Plaintiff and Subclass members reasonably relied upon Mercedes' deception. They had no way of knowing that Mercedes' representations were false and/or misleading. As consumers, Plaintiff and Subclass members did not, and could not, unravel Mercedes' deception on their own.   Rather, Mercedes intended to deceive Plaintiff and Subclass members by concealing the true facts about the Affected Vehicle emissions.

117.   Mercedes also concealed and suppressed material facts concerning what is evidently the true culture of Mercedes—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers.  It also emphasized profits and sales above the trust that Plaintiff and Subclass members placed in its representations.  Consumers buy diesel cars from Mercedes because they feel they are clean diesel cars.  They do not want to be spewing noxious gases into the environment.  And yet, that is precisely what the Affected Vehicles are doing in cool weather.

118.   Mercedes' false representations were material to consumers, because they concerned the quality of the affected vehicles, because they concerned compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Mercedes well knew, its customers, including Plaintiff and Subclass members, highly valued that the vehicles they were purchasing or leasing were clean diesel cars with reduced emissions, and they paid accordingly.

119.    Mercedes had a duty to disclose the emissions defect, defective design of emissions controls, and violations with respect to the Affected Vehicles because details of the true facts were known and/or accessible only to Mercedes, because Mercedes had exclusive knowledge as to such facts, and because Mercedes knew these facts were not known to or reasonably discoverable by Plaintiff or Subclass members.  Mercedes also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *reduced emissions* diesel cars and as compliant with all laws in each country, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue.  Having volunteered to provide information to Plaintiff, Mercedes had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and Subclass members.  Whether a manufacturer's products pollute, comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles must pass.   Mercedes represented to Plaintiff and Subclass members that they were purchasing or leasing *reduced emission* diesel vehicles, when in fact, they were purchasing or leasing defective and unlawfully high emission vehicles.

120.    Mercedes actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles were not clean

diesel vehicles and did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Mercedes money, and it did so at the expense of Plaintiff and Subclass members.

121.    On information and belief, Mercedes has still not made full and adequate disclosures, and continues to defraud Plaintiff and Subclass members by concealing material information regarding the emissions qualities of its referenced vehicles.

122.    Plaintiff and Subclass members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly reduced emissions diesel cars manufactured by Mercedes, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff and Subclass members' actions were justified.  Mercedes was in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Subclass members.

123.    Because of the concealment and/or suppression of the facts, Plaintiff and Subclass members have sustained damage because they own vehicles that are diminished in value as a result of Mercedes' concealment of the true quality and quantity of those vehicles' emissions and Mercedes' failure to timely disclose the defect or defective design of the BlueTEC Clean Diesel engine system, the actual emissions qualities and quantities of Mercedes-branded vehicles, and the serious issues engendered by Mercedes' corporate policies.  Had Plaintiff and Subclass members been aware of the true emissions facts with regard to the Affected Vehicles, and the Company's disregard for the truth and compliance with applicable federal and state law and regulations, Plaintiff and Subclass members who purchased or leased new or certified previously

owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

124.    The value of Plaintiff' and Subclass members' vehicles has diminished as a result of Mercedes' fraudulent concealment of the defective emissions controls of the Affected Vehicles, and of the unlawfully high emissions of the Affected Vehicles, and of the non-compliance with EPA emissions requirements, all of which has greatly tarnished the Mercedes brand name attached to Plaintiff' and Subclass members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

125.    Accordingly, Mercedes is liable to Plaintiff and Subclass members for damages in an amount to be proven at trial.

126.    Mercedes' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff' and Subclass members' rights and the representations that Mercedes made to them, in order to enrich Mercedes.  Mercedes' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT V**
**Violations Of The Virginia Consumer Protection Act**
**(Va. Code Ann. §§ 59.1-196, *et seq.*)**

127.    Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

128.    This claim is brought on behalf of the Virginia Subclass.

129.    The Virginia Consumer Protection Act prohibits "…(5) misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; (6) misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; … (8) advertising goods or services with intent not to sell them as advertised …; [and]

(14) using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]"  VA. CODE ANN. § 59.1-200(A).

130.    Defendants are each a "person" as defined by VA. CODE ANN. § 59.1-198.  The transactions between Plaintiff and the other Subclass members on the one hand and Mercedes on the other, leading to the purchase or lease of the Affected Vehicles by Plaintiff and the other Subclass members, are "consumer transactions" as defined by VA. CODE ANN. § 59.1-198, because the Affected Vehicles were purchased or leased primarily for personal, family or household purposes.

131.    In the course of Mercedes' business, as described above, Mercedes sold and leased Affected Vehicles that suffer from a defective emissions control system and that emit unlawfully high levels of pollutants under normal driving conditions; marketed the Affected Vehicles as reduced emissions vehicles possessing functional and defect-free, EPA compliant diesel engine systems, when in fact the Affected Vehicles are not; deceptively obtained EPA certification for Affected Vehicles; and otherwise violated federal and state emissions laws, including the Clean Air Act.  Accordingly, Mercedes engaged in acts and practices violating VA. CODE ANN. § 59.1-200(A), including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

132.    Mercedes' actions as set forth above occurred in the conduct of trade or commerce.

133.    Mercedes' conduct proximately caused injuries to Plaintiff and the other Subclass members.

134.    Plaintiff and the other Subclass members were injured as a result of Mercedes' conduct in that Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Mercedes' misrepresentations and omissions.

135.    Mercedes concealed and/or suppressed the material facts regarding the defective and non-EPA compliant BlueTEC Clean Diesel engine system, in whole or in part, with the intent to deceive and mislead Plaintiff and the other Subclass members and to induce Plaintiff and the other Subclass members to purchase or lease Affected Vehicles at a higher price, which did not match the Affected Vehicles' true value.  Plaintiff and the other Subclass members therefore seek treble damages.

**COUNT VI**
**Breach Of Contract**
**(Based on Virginia Law)**

136.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

137.    Plaintiff brings this Count on behalf of Virginia Subclass members.

138.    Mercedes' misrepresentations and omissions alleged herein, including Mercedes' failure to disclose the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls as alleged herein, caused Plaintiff and the other Subclass members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Subclass members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective BlueTEC Clean Diesel engine system and

which were not marketed as including such a system.  Accordingly, Plaintiff and the other Subclass members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

139.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Mercedes and the purchaser or lessee.  Mercedes breached these contracts by selling or leasing to Plaintiff and the other Subclass members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles' turns off when ambient temperatures drop below 50 degrees Fahrenheit and the existence of the BlueTEC Clean Diesel engine system's defect and/or defective design of emissions controls, including information known to Mercedes rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with the defective BlueTEC Clean Diesel engine system.

140.    As a direct and proximate result of Mercedes' breach of contract, Plaintiff and the Subclass have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

**C.    Breach of Contract Claims Brought on Behalf of the Remaining State Subclasses**

<u>**COUNT VII**</u>
**Breach Of Contract**

141.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

142.    Plaintiff brings this Count on behalf of state subclass members except the New Jersey and Virginia state subclasses.

143.    Mercedes' misrepresentations and omissions alleged herein, including but not limited to Mercedes' failure to disclose that the NOx reduction system in the Affected Vehicles' turns off when ambient temperatures drop below 50 degrees Fahrenheit, caused Plaintiff and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the defective BlueTEC Clean Diesel engine system and which were not marketed as including such a system.  Accordingly, Plaintiff and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

144.    Each and every sale or lease of an Affected Vehicle constitutes a contract between Mercedes and the purchaser or lessee.  Mercedes breached these contracts by, among other things, selling or leasing to Plaintiff and the other New Jersey Class members defective Affected Vehicles and by misrepresenting or failing to disclose that the NOx reduction system in the Affected Vehicles' turns off when ambient temperatures drop below 50 degrees Fahrenheit, including information known to Mercedes rendering each Affected Vehicle non EPA-compliant, and thus less valuable, than vehicles not equipped with the defective BlueTEC Clean Diesel engine system.

145.    As a direct and proximate result of Mercedes' breach of contract, Plaintiff and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

D.     **Unfair and Deceptive Trade Practices Act Claims Brought on Behalf of 36 State Subclasses and the District of Columbia Subclass**

**COUNT VIII**
**Violations Of The Unfair And Deceptive Trade Practices Acts**
**Of 36 States And The District Of Columbia**

146.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

147.    Plaintiff brings this Count on behalf of the subclasses associated with the states identified below in the next paragraph immediately *infra*.

148.    Mercedes' conduct described herein constitutes prohibited practices, unfair, deceptive and unconscionable conduct under the unfair and deceptive trade practices acts of 36 states and the District of Columbia, as follows:

a.      Alaska:  The aforementioned practices by Mercedes were and are in violation of the Alaska Unfair Trade Practices and Consumer Protection Act, Ala. Code § 45.50.471, *et seq*.;

b.      Arkansas:  The aforementioned practices by Mercedes were and are in violation of the Arkansas Deceptive Trade Practices Act, Ark. Code §4-88-101, *et seq*.;

c.      California:  The aforementioned practices by Mercedes were and are in violation of the California Unfair and Deceptive Practices Act, Cal. Civ. Code § 1750, *et seq*., and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq*.;

d.      Colorado:  The aforementioned practices by Mercedes were and are in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq*.;

e.      Connecticut:   The aforementioned practices by Mercedes were and are in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq*.;

f.      Delaware:  The aforementioned practices by Mercedes were and are in violation of the Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq*.;

g.      District of Columbia:  The aforementioned practices by Mercedes were and are in violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901, *et seq.*;

h.      Florida:  The aforementioned practices by Mercedes were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

i.      Georgia:  The aforementioned practices by Mercedes were and are in violation of the Georgia Fair Business Practices Act, §10-1-390 *et seq.*;

j.      Hawaii:  The aforementioned practices by Mercedes were and are in violation of Hawaii's Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480-1, *et. seq.*, and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.*;

k.      Idaho:  The aforementioned practices by Mercedes were and are in violation of the Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;

l.      Illinois:  The aforementioned practices by Mercedes were and are in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.*;

m.      Kansas:  The aforementioned practices by Mercedes were and are in violation of the Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50-626, *et seq.*;

n.      Kentucky:  The aforementioned practices by Mercedes were and are in violation of the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, et seq.;

o.      Louisiana:  The aforementioned practices by Mercedes were and are in violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et seq.*;

p.      Maine:  The aforementioned practices by Mercedes were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq*., and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, et seq.;

q.      Maryland:  The aforementioned practices by Mercedes were and are in violation of the Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq*.;

r.      Massachusetts:  The aforementioned practices by Mercedes were and are in violation of the Massachusetts Unfair and Deceptive Practices Act, Mass. Ann. Laws ch. 93A, *et seq*;

s.      Michigan:  The aforementioned practices by Mercedes were and are in violation of the Michigan Consumer Protection Act, §§ 445.901, *et seq*.;

t.      Minnesota:  The aforementioned practices by Mercedes were and are in violation of the Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq*.; and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq*.;

u.      Mississippi:  The aforementioned practices by Mercedes were and are in violation of the Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq*.;

v.      Missouri:  The aforementioned practices by Mercedes were and are in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq*.;

w.      Montana:  The aforementioned practices by Mercedes were and are in violation of the  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq*.;

x.      Nebraska:  The aforementioned practices by Mercedes were and are in violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. §59-1601, *et seq*., and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301, *et seq*.;

y.      Nevada:  The aforementioned practices by Mercedes were and are in violation of the Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.*; New Hampshire:  The aforementioned practices by Mercedes were and are in violation of the New Hampshire Consumer Protection Act,  N.H. Rev. Stat. § 358-A:1, *et seq.*;

z.      New Mexico:  The aforementioned practices by Mercedes were and are in violation of the New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1, *et seq.*;

aa.     New York:  The aforementioned practices by Mercedes were and are in violation of the New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.*;

bb.     North Dakota:  The aforementioned practices by Mercedes were and are in violation of the North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51-15-01, *et seq.*;

cc.     Oklahoma:  The aforementioned practices by Mercedes were and are in violation of the Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

dd.     Oregon:  The aforementioned practices by Mercedes were and are in violation of the Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

ee.     Rhode Island:  The aforementioned practices by Mercedes were and are in violation of the Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

ff.     South Carolina:  The aforementioned practices by Mercedes were and are in violation of the South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

gg.     South Dakota:  The aforementioned practices by Mercedes were and are in violation of  South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37-24-1, *et seq.*;

hh.    Vermont:  The aforementioned practices by Mercedes were and are in violation of the Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.*;

ii.    Washington:   The aforementioned practices by Mercedes were and are in violation of the Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq*.;

jj.    West Virginia:   The aforementioned practices by Mercedes were and are in violation of the West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

kk.    Wisconsin: The aforementioned practices by Mercedes were and are in violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et seq*.

149.    Under statutes enacted in New Jersey and 36 other states, and the District of Columbia, to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Plaintiff and Subclass members are consumers who purchased Mercedes' defective Affected Vehicles pursuant to a consumer transaction for personal use and are therefore subject to protection under such legislation.

150.    Under statues enacted in New Jersey and 36 other states, and the District of Columbia, to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Mercedes is a supplier, manufactures, advertisers, and sellers who are subject to liability under such legislation for unfair, deceptive, fraudulent and unconscionable consumer sales practices.

151.    Mercedes violated the statutes enacted in New Jersey and 36 other states, and the District of Columbia, to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, by knowingly and falsely representing that the Affected Vehicles were "Clean Diesels" with low emissions, when in fact

they were not, and by other acts alleged herein. These representations were made in uniform promotional materials.

152. Mercedes violated the statutes enacted in New Jersey and 36 other states, and the District of Columbia, to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, by willfully failing to disclose and actively concealing that the NOx reduction system in the Affected Vehicles' turns off when ambient temperatures drop below 50 degrees Fahrenheit, that the emissions controls were defective and that the Affected Vehicles emitted unlawfully high levels of pollutants, including NOX, as described above.

153. The actions of the Mercedes alleged herein are uncured or incurable deceptive acts under the statutes enacted in New Jersey and 36 other states, and the District of Columbia, to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising.

154. Mercedes had actual knowledge of the defective condition of its BlueTEC Clean Diesel engine system, and failed to take any action to cure such defective condition or to adequately inform Plaintiff or the Class of material information regarding the performance of its BlueTEC Clean Diesel engine system, well in excess of thirty (30) days before the Plaintiff or any Class member did or could have possessed any such knowledge.

155. As a direct result of the Mercedes' violations of the statutes enacted in New Jersey and 36 other states, and the District of Columbia, to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising, Plaintiff and members of the Class have been damaged.

156.    Plaintiff and members of the Class are therefore entitled to and hereby seek compensatory damages, multiple damages, and equitable and declaratory relief and any and all other available remedies according to proof.

**E.    Fraudulent Concealment Claims Brought on Behalf of the Remaining State Subclasses**

**COUNT IX**
**Fraudulent Concealment**

157.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

158.    Plaintiff brings this Count on behalf of state subclass members except the New Jersey and Virginia state subclasses.

159.    Mercedes intentionally concealed that the NOx reduction system in the Affected Vehicles' turns off when ambient temperatures drop below 50 degrees Fahrenheit, that the Affected Vehicles had defective emissions controls, emitted unlawfully high levels of pollutants such as NOx, and were non-compliant with EPA emission requirements, or Mercedes acted with reckless disregard for the truth, and denied Plaintiff and the other Class members information that is highly relevant to their purchasing decision.

160.    Mercedes further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each car, that the Affected Vehicles it was selling had no significant defects, complied with EPA regulations, and would perform and operate properly when driven in normal usage.

161.    Mercedes knew these representations were false when made.

162.    The Affected Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, non-EPA compliant and unreliable because the NOx reduction

system in the Affected Vehicles' turns off when ambient temperatures drop below 50 degrees Fahrenheit.

163.    Mercedes had a duty to disclose that the NOx reduction system in the Affected Vehicles' turns off when ambient temperatures drop below 50 degrees Fahrenheit, and that these Affected Vehicles were defective, non-EPA compliant and unreliable in that they emitted unlawfully high levels of pollutants, because Plaintiff and the other Class members relied on Mercedes' material representations that the Affected Vehicles they were purchasing were reduced emission vehicles, efficient, and free from defects.

164.    The aforementioned concealment was material because if it had been disclosed Plaintiff and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Vehicles at the prices they paid.

165.    The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle.  Mercedes knew or recklessly disregarded that its representations were false because it knew that the NOx reduction system in the Affected Vehicles' turns off when ambient temperatures drop below 50 degrees Fahrenheit.  Mercedes intentionally made the false statements in order to sell Affected Vehicles.

166.    Plaintiff and the other Class members relied on Mercedes' reputation—along with Mercedes' failure to disclose the defective nature of the BlueTEC Clean Diesel engine system and Mercedes' affirmative assurance that its Affected Vehicles were reliable and reduced emissions vehicles, and other similar false representations—in purchasing or leasing Mercedes' Affected Vehicles.

167.   As a result of their reliance, Plaintiff and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

168.   Mercedes' conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members.  Plaintiff and the other Class members are therefore entitled to an award of punitive damages.

WHEREFORE, Plaintiff, individually and on behalf of members of the Nationwide Class and State Subclasses, respectfully requests that the Court enter judgment in their favor and against Mercedes, as follows:

A.   Certification of the proposed Nationwide Class and State Subclasses, including appointment of Plaintiff's counsel as Class Counsel;

B.   An order temporarily and permanently enjoining Mercedes from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.   Injunctive relief in the form of a recall or free replacement program;

D.   Restitution, including at the election of Class members, recovery of the purchase price of their Affected Vehicles, or the overpayment or diminution in value of their Affected Vehicles;

E.   Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial, except that monetary relief under certain consumer protection statutes, as stated above, shall be limited prior to completion of the applicable notice requirements;

F.      An order requiring Mercedes to pay both pre- and post-judgment interest on any amounts awarded;

G.      An award of costs and attorneys' fees; and

H.      Such other or further relief as may be appropriate.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
Attorneys for Plaintiff


By _____ */s/ James E. Cecchi* _____
          JAMES E. CECCHI
DATED:  February 18, 2016                    5 Becker Farm Road
                                             Roseland, New Jersey  07068
                                             Tel:  (973) 994-1700
                                             Fax:  (973) 994-1744


Steve W. Berman                       Jeffrey S. Goldenberg
Sean R. Matt                          GOLDENBERG SCHNEIDER, L.P.A.
HAGENS BERMAN SOBOL SHAPIRO           One West Fourth Street, 18th Floor
LLP                                   Cincinnati, OH  45202-3604
1918 8th Avenue, Suite 3300           Tel:  (513) 345-4291
Seattle, Washington  98101            Fax:  (513) 345-8294
Tel: (206) 623-7292                   JGoldenberg@gs-legal.com
Fax: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com

David Freydin
Timothy A. Scott
LAW OFFICES OF DAVID FREYDIN, PC
8707 Skokie Blvd., Suite 305
Skokie, Illinois  60077
Tel:  (847) 972-6157
Fax:  (866) 897-7577
david.freydin@freydinlaw.com


*Attorneys for Plaintiff and the Proposed Classes*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
Attorneys for Plaintiff

By _____/s/ James E. Cecchi_____
    James E. Cecchi

DATED:  February 18, 2016
    5 Becker Farm Road
    Roseland, New Jersey  07068
    Tel:  (973) 994-1700
    Fax:  (973) 994-1744

Steve W. Berman
Sean R. Matt
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, Washington  98101
Tel: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com

David Freydin
Timothy A. Scott
LAW OFFICES OF DAVID FREYDIN, PC
8707 Skokie Blvd., Suite 305
Skokie, Illinois  60077
Tel:  (847) 972-6157
Fax:  (866) 897-7577
david.freydin@freydinlaw.com

Jeffrey S. Goldenberg
GOLDENBERG SCHNEIDER, L.P.A.
One West Fourth Street, 18th Floor
Cincinnati, OH  45202-3604
Tel:  (513) 345-4291
Fax:  (513) 345-8294
JGoldenberg@gs-legal.com

*Attorneys for Plaintiff and the Proposed Classes*