# Exhibit G

1 | Elizabeth J. Cabraser, Bar No. 083151
2 | *ecabraser@lchb.com*
**LIEFF CABRASER HEIMANN**
3 | **& BERNSTEIN, LLP**
275 Battery Street, Suite 3000
4 | San Francisco, CA 94111
Telephone: (415) 956-1000
5 | Facsimile: (415) 956-1008

6 | Mark P. Robinson, Jr., Bar No. 054426 | Marc M. Seltzer, Bar No. 054534
*mrobinson@rcrlaw.net* | *mseltzer@susmangodfrey.com*
7 | **ROBINSON, CALCAGNIE** | **SUSMAN GODFREY L.L.P.**
**& ROBINSON** | 1901 Avenue of the Stars, Suite 950
8 | 620 Newport Center Drive, 7th Floor | Los Angeles, CA 90067
Newport Beach, CA 92660 | Telephone: (310) 789-3102
9 | Telephone: (949) 720-1288 | Facsimile: (310) 789-3006
Facsimile: (949) 720-1292

10 | Steve W. Berman (*pro hac vice*) | Cari K. Dawson (*pro hac vice*)
*steve@hbsslaw.com* | *cari.dawson@alston.com*
11 | **HAGENS BERMAN SOBOL** | Lisa Gilford, Bar No. 171641
**SHAPIRO LLP** | *lisa.gilford@alston.com*
12 | 1918 Eighth Avenue, Suite 3300 | **ALSTON + BIRD LLP**
Seattle, WA 98101 | 333 South Hope Street,
13 | Telephone: (206) 268-9320 | Sixteenth Floor
Facsimile: (206) 623-0594 | Los Angeles, California 90071
14 | | Telephone: (213) 576-1000
| Facsimile: (213) 576-1100
15 |

16 | Frank M. Pitre, Bar No. 100077 | Vincent Galvin, Jr., Bar No, 104448
*fpitre@cpmlegal.com* | *vincent.galvin@bowmanandbrooke.com*
17 | **COTCHETT, PITRE** | Joel H. Smith (*pro hac vice*)
**& MCCARTHY** | *joel.smith@bowmanandbrooke.com*
18 | 840 Malcolm Road, Suite 200 | **BOWMAN AND BROOKE LLP**
Burlingame, CA 94010 | 1741 Technology Drive, Suite 200
19 | Telephone: (650) 697-6000 | San Jose, California 95110-1355
Facsimile: (650) 697-0577 | Telephone: (408) 279-5393
20 | | Facsimile: (408) 279-5845

21 |           **UNITED STATES DISTRICT COURT**

22 |           **CENTRAL DISTRICT OF CALIFORNIA**

23 | IN RE: TOYOTA MOTOR CORP. | Case No. 8:10ML02151 JVS (FMOx)
UNINTENDED ACCELERATION |
24 | MARKETING, SALES PRACTICES, AND | **ORDER FOR PRESERVATION OF**
PRODUCTS LIABILITY LITIGATION | **DOCUMENTS AND TANGIBLE**
25 | | **THINGS**

26 | This document relates to: |
| Date:       July 20, 2010
27 | ALL CASES | Time:       9:00 a.m.
| Location:    Court Room 10C
28 | | Judicial Officer: Hon. James V. Selna

Case 8:10-ml-02151-JVS-FMO   Document 243-7   Filed 07/16/10   Page 3 of 26   Page ID #:5822

The Parties have submitted the following Order for Preservation of Documents and Tangible Items (the "Order") to preserve Documents (as defined in Section III, Paragraph 6), including electronically stored information and data ("ESI") and Tangible Items (as defined in Section III, Paragraph 8).

IT IS HEREBY ORDERED AS FOLLOWS:

## I.  SCOPE OF DOCUMENTS AND TANGIBLE ITEMS SUBJECT TO PRESERVATION

This MDL proceeding includes cases alleging defects in the Toyota products (as defined in Section III, Paragraph 11).  The issues in the cases also pertain to the Subject Vehicles (as defined in Section III, Paragraph 15) involved in the Subject Incidents (as defined in Section III, Paragraph 14), and the facts related to these Incidents and Plaintiffs' alleged injuries and medical treatment.  In addition, the issues in the cases relate to the sale and marketing of the Toyota products.  A particularized listing of the categories of Documents and Tangible Items that are subject to preservation pursuant to the provisions of the Order by the Toyota Defendants (as defined in Section III, Paragraph 12), the Dealer Defendants (as defined in Section III, Paragraph 13), other Defendants named in the personal injury actions or in the consolidated complaints, and each of the Plaintiffs (as defined in Section III, Paragraph 6) is set forth in Attachment 1.

## II.  SCOPE OF THE ORDER

The Order (including Attachment 1) addresses the preservation of Documents and Tangible Items as defined herein.  The Order does not address, limit or determine the relevancy, discoverability, or admissibility of any Document or Tangible Items, regardless of whether the Document or Tangible Items are required to be preserved pursuant to the terms of the Order.  The Order does not expand the preservation requirements under the Federal Rules of Civil Procedure, and it does not limit any

protection provided by Fed. R. Civ. P. 37(e) or other applicable Rules.  The Parties do not waive any objections as to the production, discoverability, or confidentiality of Documents, including ESI, or Tangible Items preserved under the Order.  The Order also does not address the Parties' respective responsibilities for the costs of retrieving or producing Documents or Tangible Items that may be subject to discovery.  Moreover, nothing in the Order limits or specifies the form of production of Documents or Tangible Items as provided in the Federal Rules of Civil Procedure or as may be agreed to by the Parties or ordered by the Court.

The scope of this Order defines preservation obligations of the Parties on a going-forward basis unless otherwise specified in this Order.  The Parties agree to reserve all rights as to preservation obligations prior to entry of this Order.  This Order does not authorize the destruction of, or failure to preserve, Existing Documents (as defined in Section III, Paragraph 7) or Tangible Items presently in existence.

While this Order shall supersede the prior Order(s) of the Court regarding preservation, including *Order No. 1:  Initial Conference*, entered on April 14, 2010, nothing in this Order shall modify or supersede any preservation order or agreement entered in any matter not centralized in this MDL proceeding.

To the extent that individuals or entities are transferred, coordinated or consolidated into this MDL proceeding, this Order shall govern the obligations of the Parties regarding preservation of Documents and Tangible Items, on a going-forward basis, beginning on the date that the Transfer Order listing the transferred case is filed in the Clerk's office of the United States District Court for the Central District of California–Southern Division.

## III.    DEFINITIONS

1.    "Relevant Time Frame" means 1993 to the present or such later date as may be indicated by the particular document preservation category identified in Attachment 1, and refers to the time period applicable to this Order.  Specified Documents and Tangible Items created during this time period shall be preserved.

2.    "<u>Backup System(s)</u>" refers to computer systems or devices that periodically store electronic information, including both digital and analog information on disks, tapes or other media to permit recovery of the information in the event of disaster such as equipment failure, or loss of information due to any other reason

3.    "<u>Backup Media</u>" refers to disks, tapes or other media onto which Backup Systems store such electronic information, including both digital and analog information.

4.    "<u>Network Accessible Storage Device(s)</u>" shall mean any hard drive or other data storage device, server or electronic repository mounted or connected through a network directly, or indirectly via the internet, such that it is accessible to multiple users authenticated to that network.

5.    "<u>Parties</u>" shall mean all Plaintiffs (as defined below), the Toyota Defendants (as defined below), the Dealer Defendants (as defined below), and any other Defendants that are joined or transferred into this proceeding.  The duty to preserve Documents and Tangible Items as specified in this Order also extends to any person appearing in a representative capacity for a named Plaintiff and to any successor of a Party.

6.    "<u>Plaintiff(s)</u>" shall mean all named class representatives and other named Plaintiffs in this proceeding, as well as named Plaintiffs in cases that are transferred, coordinated or consolidated in this proceeding.

7.    "<u>Preservation</u>" or "<u>Preserve(d)</u>" shall mean taking reasonable steps to prevent the partial or full destruction, alteration, shredding, incineration, wiping, loss due to any reason whatsoever, of Documents or Tangible Items.

8.    "<u>Document(s)</u>" shall mean documents, within the scope and subject matter of this order, as the term is used in Fed. R. Civ. P. 34(a)(1)(A): "[A]ny designated documents or electronically stored information - including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or

data compilations – stored in any medium from which information can be obtained either directly or, if necessary, after translation [of data] by the responding party into a reasonably usable form" that are reasonably anticipated to be the subject of discovery in this action.

9. "Existing Document(s)" shall mean Documents that have been collected or preserved in connection with Toyota litigation and are presently in the possession of a Party as of the date of this Order.

10. "Tangible Item(s)" shall mean the Toyota product(s), as defined below, the Subject Vehicle, as defined below, all parts removed or repaired from the Subject Vehicle, and any component parts from the Toyota products involved in the Incident, and all footwear worn by the driver of any Subject Vehicle to the extent that footwear is in the possession, custody or control of the subject Plaintiff as of a reasonable time after the entry of this Order,

11. "Toyota product(s)" means all production models of Toyota vehicles (including Lexus vehicles) from the 1998 model year through the current model year in production. Current model year in production means Toyota products models that have been manufactured and introduced for sale to the public as of 2010.

12. "Toyota Defendants" shall mean Toyota Motor Corporation; Toyota Motor Sales, U.S.A., Inc.; Toyota Motor North America, Inc.; Toyota Motor Engineering & Manufacturing North America, Inc.; Toyota Motor Manufacturing Canada, Inc.; Toyota Financial Services Corp.; and any additional Toyota entities that are named as defendants in Plaintiffs' consolidated complaint filed with the Court on August 2, 2010, named as defendants in any other action personal injury actions in this MDL, or which the Toyota Defendants know or reasonably should know may possess documents, information, products, or evidence that are encompassed within this order or which may be discoverable or relevant to any cases in this MDL.

13.     "<u>Dealer Defendant</u>" - means any dealer of Toyota products named as a defendant in any of the personal injury actions or in the consolidated complaints in this MDL.

14.     "<u>Subject Incident(s)</u>" or "<u>Incident(s)</u>" means the alleged unintended acceleration incident involving a Toyota product owned, leased, or operated by a named putative class representative or other named Plaintiff, whether or not there was a resulting accident, injury or death.

15.     "<u>Subject Vehicle(s)</u>" means the Toyota product involved in the Subject Incident.

16.     "<u>NHTSA</u>" means the National Highway Traffic Safety Administration.

17.     "<u>Draft</u>" (and all of its variants) shall mean a document which has not yet been put into final form by its author or creator.

18.     "<u>Identical Copy</u>" (and all of its variants) shall mean:

        i.      A full and complete copy of the original paper Document that does not differ from the original paper Document because of highlights, underlining, marginalia, total pages, attachments, notes, markings or other alterations.  Each such differing copy shall itself be considered an original paper Document and not an Identical Copy.  For example where there are two documents with identical content but one has highlighting and the other does not, in such a situation, the two documents shall not be considered identical.

        ii.     An electronic Document that is a copy of the original electronic Document excluding metadata.  An Identical Copy shall include matching Documents that contain the same content excluding metadata.  For example, an Identical Copy would include copies of the same Document saved on the local hard drives and network shared drives of multiple individuals.

## IV.  DOCUMENTS AND TANGIBLE ITEMS REQUIRED TO BE PRESERVED

1.  Consistent with the Manual For Complex Litigation's objective to eliminate unnecessary litigation costs, the Parties' obligations to preserve Documents and Tangible Items pursuant to this Order should be aimed at "best preserv[ing] relevant matter without imposing undue burdens."  *See* Manual for Complex Litigation, Fourth Edition § 11.442.

The parties shall preserve all "relevant" evidence, as defined by the Federal Rules of Civil Procedure and the Federal Rules of Evidence.  Attachment 1 provides a non-exhaustive list of relevant Documents and Tangible Items within the categories set forth in Attachment 1 and covered by the Relevant Time Frame which are required to be preserved.

2.  The preservation obligations of this Order shall continue until final adjudication of this action, including any appeals.

3.  The Parties shall retain Existing Documents in the form in which the Existing Documents currently exist, or in a reasonably useable form the transition to which causes no loss of content or useability.

4.  The Parties shall retain Documents in the form created.  ESI may be retained in original or native format except that a Party may copy the ESI to an alternative storage device or media.  The Order does not obligate Parties to segregate Documents from other records or Backup Media, which are outside the scope of this Order where the Documents may reside.  The Order (i) does not obligate Parties to image Documents otherwise stored in paper form; (ii) does not obligate Parties to retain paper Documents if a party in the ordinary course of its business practices scans, microfiches or otherwise images hard copies of documents for purposes of records retention; and (iii) does not obligate Parties to retain Existing Documents in paper form if a party images or otherwise scans the paper Documents in PDF or TIFF format.  Provided that it is otherwise complying with its obligations to preserve

Documents as set forth in this Order, a Party shall not be required to preserve Backup Media currently in active use or that in the future may be used in the Party's Backup System that are scheduled to be recycled, erased or reused in the ordinary course of business.

5.     Given the number of Parties and the wide range of approaches used by the Parties to manage Documents (including the management of ESI and the systems used for its recovery in the event of a disaster), it is not practical to define a single detailed process that all Parties must follow to preserve Documents.  Accordingly, the Order does not require any of the Parties to utilize a particular method for the preservation of ESI or require any of the Parties to modify its computer systems or suspend operating protocols of computer systems and applications so long as the Party meets its preservation obligations under law as set forth in this Order.

6.     The Parties shall preserve Documents as follows:

    a.     <u>Identification of Custodians</u>

The following persons shall be responsible for carrying out preservation obligations on behalf of the following parties:

— Plaintiffs – Each currently named Plaintiff in this proceeding and Plaintiffs that are transferred, coordinated or consolidated in this proceeding.

— Toyota Defendants – to be designated by Toyota.

— Other Defendants – to be designated by each defendant in each case.

    b.     <u>Paper Documents</u>

For Documents that are created in paper form, the Parties must preserve at least one Identical Copy of such Documents in paper form, except such Documents may be preserved as allowed in Section IV, Paragraph 5.

    c.     <u>Electronic Mail</u>

For electronic mail Documents, the Parties shall take reasonable steps to preserve such

Documents, including attachments, and to the extent such information was created and maintained by the electronic mail system in the ordinary course of business. The Parties are to preserve all metadata associated with both the e-mail and any attachments to e-mails. Where a subsequent electronic mail message contains all of the portions of an earlier message, including attachments, that are required to be preserved under this paragraph (e.g. forwarded or replied to messages), it is not necessary for the Party to preserve the earlier message in addition to the subsequent inclusive message.

Without restricting the Parties' freedom to use reasonable preservation methods permitted by Section IV, Paragraph 5, reasonable approaches that Parties may use to preserve these Documents could include: (i) identifying individuals reasonably likely to create or receive electronic mail Documents and instructing such individuals to retain such electronic mail Documents in electronic form, (ii) use of an automated electronic preservation system that identifies and preserves specific emails based on predetermined keywords and/or other reasonable criteria, (iii) for Plaintiffs, saving electronic mail Documents in the Plaintiffs' electronic mail program and refraining from deleting or otherwise altering electronic mail Documents and attachments required under this Order, or (iv) taking any other reasonable preservation step(s) as appropriate for such data.

d.   Other Electronic Documents on Computer Systems Saved on Network Accessible Storage Devices

For Documents maintained in electronic form on Network Accessible Storage Devices and not covered by Section IV, Paragraph 7(c) above, the Parties shall take reasonable steps to preserve at least one copy of all such Documents including all metadata that is contained within a file when the file is preserved. Without restricting their freedom to use reasonable preservation methods permitted by Section IV, Paragraph 5, reasonable approaches that the Parties may use to Preserve these Documents could include: (i) preserving an Identical Copy of all such Documents, (ii) making reasonable efforts to identify individuals whom they reasonably expect to

9

create, receive or otherwise come into possession of electronic Documents saved on Network Accessible Storage Devices and to notify them of their duties and obligations to preserve Documents under this Order, or (iii) taking any other reasonable preservation step(s) as appropriate for such data.

       e.    <u>Other Electronic Documents Saved on Local Hard Drives or External Hard Drives or Media</u>

For electronic Documents saved to a local hard drive, or to external drives or other media such as CDs or DVDs and thumb drives, the Parties shall take reasonable steps to preserve such Documents.

Without restricting their freedom to use reasonable preservation methods permitted by Section IV, Paragraph 5, reasonable approaches that the Parties may use to Preserve these Documents could include: (i) preserving an identical copy or image of all such Documents, (ii) taking reasonable efforts to identify individuals whom they reasonably expect to possess electronic Documents saved on Local Hard Drives and notifying them of their duties and obligations to preserve Documents under this Order, or (iii) taking any other reasonable Preservation step(s) as appropriate for such data.

       7.    <u>Tangible Items</u>: The Parties shall preserve Tangible Items in the condition as they existed at the time of the Incident to the extent that those items are in their possession or under their custody or control, and will take reasonable steps to ensure that the Tangible Items remain in their possession, custody or control and are not altered, modified or changed in any way. To the extent that Tangible Items are not within a Party's possession, but the Party has advanced knowledge or information that Tangible Item(s) may be subject to alteration, modification, change, loss, sale or destruction, the Party must notify the other Parties and provide reasonable notice to permit the other Parties to object, to confer regarding the proposed actions of the non-party, or to inspect the Tangible Item(s) prior to any alteration, modification, change, loss, sale or destruction.

       a.    <u>Vehicle Inspection Protocol</u>.

       (1)    Toyota

For any Subject Vehicle, about which there is a complaint, concern or claim relating to unintended acceleration ("UA"), *not involved* in an accident or crash that is either inspected by any Toyota Defendant or anyone acting on its behalf (including but not limited to the Toyota SMART TEAM) or any Toyota/Lexus dealership or brought to a facility owned by any Toyota defendant or to any Toyota/Lexus dealership and an inspection is requested, the following data collection and preservation protocol will apply: Toyota Motor Sales ("TMS") has an established vehicle inspection protocol for those instances when a customer has concerns about UA. The protocol has been provided to Toyota/Lexus dealers and they have been asked to follow the protocol when customers indicate that they have a concern about UA whether or not the customer claims to have experienced such an alleged event. Copies of the Toyota/Lexus inspection protocols are attached as Exhibits A and B. For any Toyota/Lexus dealer that is networked with TMS, the information downloaded from the vehicle inspection pursuant to the inspection protocol is transmitted to TMS. For dealers that are not connected to TMS, the inspection protocol requests that the dealer print the downloaded information and attach it to the service records and file it at the dealership for future reference. To the extent Toyota Defendants are provided with information from these inspections, it is preserved in the manner received, and Toyota Defendants will preserve that information pursuant to this preservation order. Toyota Defendants will provide Toyota/Lexus dealers with a copy of this preservation order.

For any Subject Vehicle in the possession, custody, or control of the Toyota Defendants that *has been involved* in an accident or crash resulting in property damage or injury, Toyota Defendants shall preserve said vehicles in their post-accident condition and not modify said vehicles in any material respect. The parties further agree any inspection of those vehicles should be jointly arranged and attended by the parties to this action with an agreed inspection protocol. If the parties cannot

agree on an inspection protocol, then the issue will be submitted to a Special Master for resolution.

(2)    Plaintiffs

For any Subject Vehicle which Plaintiffs claim or allege experienced a UA related event that is inspected, examined, or tested by any Plaintiff, Plaintiff shall preserve all information, data, and/or documents generated or obtained during or as a result of said inspection, examination, or testing pursuant to this preservation order.

For any Subject Vehicle that *has been involved* in an accident or crash resulting in property damage or injury in the possession, custody, or control of any Plaintiff, said Plaintiff shall preserve said vehicles in their post-accident condition and not modify said vehicles in any material respect. The parties further agree any inspection of those vehicles should be jointly arranged and attended by the parties to this action with an agreed inspection protocol. If the parties cannot agree on an inspection protocol, then the issue will be submitted to a Special Master for resolution.

> b.    <u>EDR (Event Data Recorder), GDR (G-Force Data Recorder), and ECM (Engine Control Module) Download Protocol</u>.

From time to time a Toyota Defendant, primarily TMS, inspects or downloads the Event Data Recorder ("EDR") on vehicles alleged to have experienced UA-related events. The Toyota Defendants agree that no EDR download will be performed if there is a risk of evidence destruction. If there is such a risk, then plaintiffs will be advised and a mutually agreed protocol will be established to accomplish the EDR download. If the parties cannot reach an agreement this matter will be submitted to a Special Master for resolution. If a download is performed Toyota Defendants will preserve the information collected from such EDR downloads without modification or alteration.

# V.    <u>DOCUMENTS NOT REQUIRED TO BE PRESERVED</u>

The Parties have no obligation to preserve the following:

12

1     1. "System" data created by the normal operation of computer systems,

2 such as metadata and temporary system files and data fragments contained in slack

3 space or unused portions of a hard drive that could only be read using forensic

4 recovery tools.

5     2. Identical Copies.

6 **VI. PERMISSIBLE MODIFICATIONS AND ALTERATIONS OF**

7     **DOCUMENTS**

8     Parties shall not be in violation of the Order if they take any of the following

9 actions in the ordinary course of business:

10     1. Routine maintenance and operation of a Party's computer systems so

11 long as the conduct does not result in the destruction or alteration of a Document

12 required to be preserved in this Order.

13     2. Distribution and sale of production Toyota products for purchase by

14 Toyota Defendants and Dealer Defendants and further sale to the public by Dealer

15 Defendants.

16     3. Upgrading, loading, reprogramming, customizing or migrating data, even

17 if such actions modify or alter the way that data is maintained, stored or viewed,

18 provided that the data itself is not altered.

19     4. Inputting, accessing, updating or modifying data in a database, resulting

20 in the data being modified, altered or overwritten where such data is modified, altered

21 or overwritten in the ordinary course of business including, for example, updating

22 contact or warranty information.

23     5. Editing, modifying or taking down web pages, internet, extranet or

24 intranet sites, as long as older information is properly archived and amenable to

25 recreation.

26     6. Editing or revising copies of Documents as long as an unedited or

27 unrevised copy of the Document is preserved.

28

13

7.    Operating a vehicle in the normal course of ownership and operation of the Toyota product.

## VII.   **IMPLEMENTATION AND MODIFICATION OF ORDER**

1.    Although the Order and the obligations described herein are effective immediately, the Court recognizes that the parties may need sixty (60) days to put in place systems and procedures implementing the Order.

2.    The Parties must communicate the existence and substance of the Order to (i) those individuals or employees responsible for carrying out the Parties' obligations as set forth in Section IV, Paragraph 8(a), (ii) members of the Plaintiff's family and household whom the Parties reasonably believe most likely to possess Documents or Tangible Items required to be preserved, and (iii) employees whom the Parties reasonably believe most likely to possess Documents or Tangible Items required to be preserved.   In addition, the Toyota Defendants shall provide this preservation order to their dealers and distributors and shall notify them that the Toyota Defendants have been ordered to instruct them to comply with it.

3.    If a requesting Party has a reasonable belief that a non-party is in possession of unique Documents or Tangible Items (i.e. Documents or Tangible Items that are not duplicated within the files or other sources of information in the possession of a Party) and that the non-party is within the control of the responding Party, then the requesting Party shall notify the responding Party of its belief.   The responding Party shall investigate and, if the non-party has possession of such unique Documents or Tangible Items and the non-party is within the control of the responding Party, then the responding Party shall notify the non-party of the duty to preserve.

4.    Notwithstanding a Party's obligations to preserve Documents or Tangible Items in accordance with this Order, a Party must send written notice to the other Parties of its intention to take action pursuant to routine policies and programs or as a result of other circumstances that would result in Documents or Tangible Items being

Case 2:16-cv-00881-KM-ESK Document 29-3 Filed 06/01/16 Page 16 of 27 PageID: 658
Case 3:10-cv-02151-JWS-FMO Document 243 Filed 07/16/10 Page 19 of 28 Page ID
#:5835

destroyed, lost, disposed of, or otherwise altered. Service of notice of such intention must be provided to Co-Lead Counsel for Personal Injury and Wrongful Death Cases, Co-Lead Counsel for Economic Loss Class Actions, and Lead Defense Counsel thirty (30) days prior to a Party taking such action. Such notice must include a detailed description of the Documents or Tangible Items that would be affected. If within fifteen (15) days after receiving such written notice, the Parties' Lead Counsel does not indicate in writing any objection, then those Parties shall be deemed to have not objected to such destruction, loss or alteration. If within fifteen (15) days after receiving such written notice, any Parties' Lead Counsel indicates in writing any objection, then a Party shall not take action that would result in Documents or Tangible Items being destroyed, lost, disposed of, or otherwise altered, until determination by the Court of the issue. Any Party may move the Court for determination of the issue.

5. The Parties are directed to confer to resolve questions as to what Documents or Tangible Items are to be preserved under the Order. Counsel for the Parties may stipulate and agree in writing that specific Documents need or need not be preserved.

6. If the provisions of the Order present particular and/or unique problems for a Party, or make it unreasonably burdensome or impossible for a Party to comply with, that Party and opposing counsel may negotiate and agree to any reasonable exception to or modification of the Order. If such negotiation does not lead to an agreed modification, the Party may apply to this Court for an exception to or modification of the Order.

7. If the Parties are unable to agree as to what Documents or Tangible Items: (i) are outside the scope of the Order, (ii) may be destroyed, lost or otherwise altered pursuant to routine policies and programs, or (iii) otherwise need not be preserved, any Party may apply to the Court for clarification or relief from the Order upon reasonable notice.

8.     If a Party has a good faith basis to believe that materials reasonably anticipated to be the subject of discovery in this action are outside the scope of Attachment 1 and this Order, then the following meet and confer provisions shall apply.  A Party shall send written notice to the other Parties of its belief that Attachment 1 may require supplementation.  Service of such notice shall be provided to the Parties' Lead Counsel.  Such notice shall include a detailed description of the materials that would be affected by the proposed supplementation of Attachment 1.  Within thirty (30) days of receiving such written notice, the Parties shall confer to resolve whether Attachment 1 may require supplementation.  Within a reasonably prompt period after receiving written notice of a Party's belief that Attachment 1 may require supplementation, the Party believed to be in possession of the materials shall take reasonable steps to ensure that the materials are not destroyed, lost, disposed of, or otherwise altered until resolution by the Parties of the issue or determination by the Court of the issue.  If the Parties are unable to agree whether Attachment 1 should be supplemented, any Party may move the Court for determination of the issue.

IT IS SO ORDERED.

Dated: July 16, 2010

_____
James V. Selna
United States District Judge

### ATTACHMENT 1

The Documents and Tangible Items to be retained pursuant to the terms and conditions of this Order include the following items. This list is non-exhaustive, and is meant as a guide to assist in the Parties' retention obligations. The general categories are for organizational purposes and are not intended to limit in any way the Parties' retention obligations.

**Subject Vehicles**

1.  The Subject Vehicle and any parts, components, or accessories that were on the Subject Vehicle at the time of the Subject Incident.

2.  Documents reflecting the purchase, receipt, repair, maintenance, modification, or sale of the Subject Vehicle.

3.  Documents reflecting lease payments and financing of the Subject Vehicle.

4.  Documents reflecting efforts to sell the Subject Vehicle, including advertising and trade-in efforts, offers made or accepted, and trade-in values obtained or quoted.

**All Claims**

5.  Documents in the possession of the Toyota Defendants related to any Plaintiff in these proceedings to the extent such documents can be reasonably identified.

6.  Documents in the possession of any Plaintiff related to the Toyota Defendants and/or the Toyota products to the extent such documents can be reasonably identified.

7.  Documents reflecting any settlement or compromise between a Plaintiff and any Party or third party related to the Subject Incident.

8.  Documents that the Parties believe in good faith will be, or are, required to be produced pursuant to document requests in the Parties' fact sheets, if and when such fact sheets are approved by the Court.

Case 2:10-cv-00811-KM-ESK Document 29-3 Filed 06/01/16 Page 19 of 27 PageID: 661
Case 8:10-mn-02151-JVS-FMO Document 243 Filed 07/16/10 Page 19 of 26 Page ID
#:5838

9.    Documents reflecting the Toyota Defendants' management structure, corporate hierarchy, the role of particular divisions, and the identity of specific personnel responsible for matters relevant to the claims and defenses in these actions.

10.    Documents reflecting the Toyota Defendants' finances and profits as allowed pursuant to a claim for punitive damages.

Communications and other Writings

11.    Documents reflecting any Party's communications (including letters, submissions, presentations, testing, video, written materials, summaries and other materials) to and from any state or federal government or regulatory agency, including NHTSA, regarding the Toyota products.

12.    Documents reflecting any Party's communications (including letters, submissions, presentations, testing, video, written materials, summaries and other materials) to and from any third party safety organization, including Consumers Union, regarding the Toyota products.

13.    The Toyota Defendants' written document retention policies applicable to the design, development, marketing, sale and distribution of the Toyota products.

14.    Documents regarding product literature prepared for the Toyota products in the United States, including owner's manuals, technical bulletins, parts lists, shop manuals, pre-delivery check lists and set-up instructions.

15.    Toyota products advertising prepared by or at the direction of the Toyota Defendants, including brochures, print advertisements, television advertisements and radio advertisements.

16.    Documents reflecting the Toyota Defendants' response(s) when they learned of the alleged unintended acceleration problem.

17.    Documents reflecting the Toyota Defendants' representations and conduct regarding the alleged problem of unintended acceleration regarding Toyota products.

18.     Documents reflecting the information kept by, or transmitted to, Toyota dealers relevant to the alleged unintended acceleration claims, complaints, or problems within the possession, custody, or control of the Toyota Defendants, including Dealer Contact Reports, Dealer Files, and warranty work records regarding Toyota products.

19.     Documents reflecting the Toyota Defendants' positions in governmental and legislative investigations regarding the Toyota products and the issue of unintended acceleration.

20.     Documents reflecting the Toyota Defendants' dealings with the National Highway Transportation Safety Administration ("NHTSA") and the NHTSA's investigation, handling and response to the unintended acceleration issue regarding the Toyota products.

21.     Documents reflecting the Toyota Defendants' decision as to whether and when to mail notice to owners and purchasers of Toyota products advising of alleged defects related to the safety of said products.

22.     Documents regarding prior recalls by the Toyota Defendants (e.g., floor mats, sticky pedals) relating to the issue of unintended acceleration.

23.     Documents relating to any governmental investigation or inquiry concerning known, suspected, alleged or potential UA-related events (including but not limited to purported problems Toyota attributes to floor mats, "sticky" pedals, surging, or other related issues) in any of the Toyota products.

Subject Vehicles' Design and Testing

24.     Documents regarding the development of the Toyota products and product programs, including alternative and competitive product designs and programs, that relate or could be relevant to known, suspected, alleged or potential UA-related events (including but not limited to purported problems Toyota attributes to floor mats, "sticky" pedals, surging, or other related issues).

19

25.     Documents regarding design, testing and analysis of the Toyota products' electronic throttle control system.

26.     Documents reflecting the design, implementation, and manufacture of the Toyota products' electronic throttle control system and its component parts (including pedals, floor mats, electronic control systems, software, accelerator pedals, throttle bodies, engine control modules, printed circuit boards and the associated components).

27.     Documents reflecting the software programming and data contained in the engine control modules of 1998-2010 Toyota products.

28.     Documents regarding the fault detection and error correction systems used in the engine control modules of 1998-2010 Toyota products.

29.     Documents regarding accelerator pedals in the Toyota products.

30.     Documents regarding floor mats in the Toyota products.

31.     Toyota products design drawings, engineering drawings, and revisions notices that relate or could be relevant to known, suspected, alleged or potential UA-related events (including but not limited to purported problems Toyota attributes to floor mats, "sticky" pedals, surging, or other related issues).

32.     Documents regarding the critical systems engineering, fault-tolerant design, redundancy capabilities, watchdog systems and fail-safe mechanisms of the electronic throttle control systems of Toyota products.

33.     Documents reflecting the data contained in the Toyota products' engine control modules and event data recorders that relate or could be relevant to known, suspected, alleged or potential UA-related events (including but not limited to purported problems Toyota attributes to floor mats, "sticky" pedals, surging, or other related issues).

34.     The data and the interpretation of the data contained in the event data recorders of Toyota vehicles that relate or could be relevant to known, suspected, alleged or potential UA-related events (including but not limited to purported

problems Toyota attributes to floor mats, "sticky" pedals, surging, or other related issues).

35.     Test Reports for Toyota products regarding the electronic throttle control system.

36.     Failure Modes and Effects Analyses (FMEA) or other similar analyses of the Toyota products' electronic throttle control system.

37.     Documents reflecting the incidents of alleged unintended acceleration (e.g., Other Similar Incidents, or "OSIs"), both suspected and confirmed, and people who have experienced, witnessed, or documented such incidents, including law enforcement personnel.

38.     Copies of all claim and/or litigation files where claims of unintended acceleration have been made involving Toyota products.

39.     Documents regarding the nature, scope, and existence of alleged defects in the Toyota products and product programs and Toyota's notice of said alleged defects that relate or could be relevant to known, suspected, alleged or potential UA-related events (including but not limited to purported problems Toyota attributes to floor mats, "sticky" pedals, surging, or other related issues).

40.     Documents regarding the feasibility of repairing or fixing the alleged defects and/or preventing incidents of unintended acceleration, including the potential cost or effectiveness of possible remedies.

41.     All versions, both electronic and physical, of any "Books of Knowledge" (also known as Engineering Books of Knowledge) that are applicable to the ETCS-I. This includes, but is not limited to the ETCS-I system as a whole with respect to its design, production, testing, and quality assurance, as well as its individual components such as accelerator pedals, wiring harnesses and connectors, ECM, throttle bodies, and their associated components, including any systems designed to avoid or prevent unintended acceleration.

42.     All Field Technical Reports generated by the Toyota Defendants' employees, dealers, agents and consultants regarding all complaints of unwanted acceleration, sticky pedals, or floor mat interference in the possession, custody, or control of the Toyota Defendants.

43.     All Documents pertaining to the Toyota Dealer UA Process Flow and all steps involved in this process, including the flow charts, process flow charts, online systems for dealers to use, Vehicle Diagnostic Reports, Diagnostic Trouble Code Reports, Freeze Frame Data Reports, Unintended Acceleration (UA) Report Interview Guides, Unintended Acceleration (UA) Report Pre-Call Worksheets and other related documents instructing or advising dealers on how to handle unintended acceleration claims or other similar customer complaints.

44.     All databases and all data contained therein, including all of the dealer code databases, and all other databases reflecting claims of unintended acceleration, the results of vehicle inspections, and other related documents.

45.     Documents reflecting Toyota products service history, date placed in service, pre-delivery checklists, Recall and TSB campaigns, and CARFAX history, including all freeze frame data and DTCs.

46.     Documents reflecting Toyota products' service history, service dates, and recall campaigns.

Marketing, Advertising, and Warranties

47.     Documents reflecting the Toyota Defendants' marketing and promotional efforts regarding 1998-2010 Toyota products and the results of these efforts, including the Toyota Defendants' marketing campaign regarding the safety, quality and reliability of said vehicles.

48.     Documents relating to dealer advertising, including brochures, print advertisements, television advertisements and radio advertisements regarding Toyota products within the possession, custody, or control of the Toyota Defendants.

49.     Documents regarding the Toyota Defendants' customer relations and dealer contacts regarding Toyota products' electronic throttle control system within the possession, custody, or control of the Toyota Defendants.

50.     Copies of any advertisements, promotional and/or marketing materials created by a Toyota dealer to promote the Toyota products within the possession, custody, or control of the Toyota Defendants.

51.     Materials and/or presentations relating to training programs offered by Toyota dealers that sold the Toyota products to purchasers within the possession, custody, or control of the Toyota Defendants.

52.     Documents regarding warning materials for the Toyota products, including manuals and other instructional materials.

53.     Materials, brochures or other written materials provided to purchasers of the Toyota products by Toyota dealers within the possession, custody, or control of the Toyota Defendants.

54.     Toyota Defendants' customer surveys regarding the Toyota products that relate or could be relevant to known, suspected, alleged or potential UA-related events (including but not limited to purported problems Toyota attributes to floor mats, "sticky" pedals, surging, or other related issues).

55.     Documents concerning Toyota products that were reviewed by any Plaintiff prior to the Subject Incident.

Plaintiffs' Information

56.     Documents reflecting any felony convictions of Plaintiffs within five (5) years prior the Incident.

57.     Documents reflecting any traffic collisions involving Plaintiffs within five (5) years prior the Incident.

58.     Documents reflecting any public or private insurance benefits received by Plaintiffs as a result of the Incident.

59. Documents and information concerning alleged unintended acceleration events, including, but not limited to: Documents containing identifying information regarding persons in the vehicle at the time of the incident, first responders, and eye witnesses; accident and/or investigative reports; and records of inspections of the vehicle, other than inspections by Plaintiffs' experts or consultants.

60. Documents reflecting any costs of vehicle repairs or expenses for alternative transportation as a result of the Subject Incident.

**Personal Injury Claims**

61. Documents reflecting medical care and treatment provided to any Plaintiff related to the Subject Incident, including medical records and medical billing records.

62. Documents reflecting medical care and treatment provided to any Plaintiff for the five (5) years prior to the Incident to the present for major injuries or illnesses, or significant chronic conditions.

63. If the Plaintiff is making a wage loss claim, Documents reflecting employment of the Plaintiff for the five (5) year period prior to the Incident.

64. If the Plaintiff is making a wage loss claim, Documents reflecting income of the Plaintiff for the five (5) year period prior to the Incident.

65. If the Plaintiff is making a wage loss claim, Documents reflecting education history of the Plaintiff for the five (5) year period prior to the Incident.

66. Documents reflecting any claims for, and receipt of, disability benefits by a Plaintiff as a result of the Subject Incident.

67. Documents reflecting any claims for, and receipt of, workers compensation benefits by a Plaintiff as a result of the Incident.

68. Documents reflecting any medical liens that have been asserted against a Plaintiff's future monetary recovery as a result of the Incident.

69. Documents reflecting any personal injury lawsuits filed by a Plaintiff within five (5) years prior the Incident.

**Economic Loss Claims**

70. Documents and information concerning the sale and purchase history of any dealer Plaintiffs and the rental history of any rental car company Plaintiffs.

71. Documents and information concerning Plaintiffs' lease and/or finance contracts with Toyota Motor Credit Corporation ("TMCC") for those cases seeking to impose liability on TMCC or other Toyota Financial Services entities.

Respectfully submitted,

Dated: July 13, 2010      By:   */s/ Elizabeth J. Cabraser*
                               Elizabeth J. Cabraser

                          Elizabeth J. Cabraser, Bar No. 083151
                          *ecabraser@lchb.com*
                          LIEFF CABRASER HEIMANN
                             & BERNSTEIN, LLP
                          275 Battery Street, Suite 3000
                          San Francisco, CA 94111
                          Telephone: (415) 956-1000
                          Facsimile: (415) 956-1008

Dated: July 13, 2010      By:   */s/ Mark P. Robinson, Jr.*
                               Mark P. Robinson, Jr.

                          Mark P. Robinson, Jr., Bar No. 054426
                          *mrobinson@rcrlaw.net*
                          ROBINSON, CALCAGNIE & ROBINSON
                          620 Newport Center Drive, 7th Floor
                          Newport Beach, CA 92660
                          Telephone: (949) 720-1288
                          Facsimile: (949) 720-1292

Dated: July 13, 2010      By:   */s/ Steve W. Berman*
                               Steve W. Berman

                          Steve W. Berman (*pro hac vice*)
                          *steve@hbsslaw.com*
                          HAGENS BERMAN SOBOL SHAPIRO LLP
                          1918 Eighth Avenue, Suite 3300
                          Seattle, WA 98101
                          Telephone: (206) 268-9320
                          Facsimile: (206) 623-0594

Dated:  July 13, 2010          By: _ */s/ Frank M. Pitre*_
                                            Frank M. Pitre

Frank M. Pitre, Bar No. 100077
*fpitre@cpmlegal.com*
COTCHETT, PITRE & MCCARTHY
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:  (650) 697-6000
Facsimile:   (650) 697-0577

Dated:  July 13, 2010          By: _ */s/ Marc M. Seltzer*_
                                            Marc M. Seltzer

Marc M. Seltzer, Bar No. 054534
*mseltzer@susmangodfrey.com*
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Telephone:  (310) 789-3102
Facsimile:   (310) 789-3006

Dated:  July 13, 2010          By: _ */s/ Lisa Gilford*_
                                            Lisa Gilford

Lisa Gilford, Bar No. 171641
*lisa.gilford@alston.com*
ALSTON BIRD, LLP
333 South Hope Street, Sixteenth Floor
Los Angeles, CA  90071
Telephone:  (213) 576-1000
Facsimile:  (213) 576-1100

Dated:  July 13, 2010          By: _ */s/ Vincent Galvin, Jr.*_
                                            Vincent Galvin, Jr.

Vincent Galvin, Jr., Bar No. 104448
*vincent.galvin@bowmanandbrooke.com*
BOWMAN & BROOKE LLP
1741 Technology Drive
San Jose, CA 95110-1364
Telephone:  (408) 961-4501
Facsimile:   (408) 279-5845