**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| IN RE MERCEDES-BENZ EMISSIONS LITIGATION | Civil Action No. 2:16-cv-881 (JLL) (JAD)<br><br>Motion Date: August 1, 2016<br><br>**ELECTRONICALLY FILED**<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS MERCEDES-BENZ USA, LLC'S AND DAIMLER AG'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
AND TO COMPEL ARBITRATION**

Daniel W. Nelson
Geoffrey M. Sigler
Lucas C. Townsend
Chantale Fiebig
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel: (202) 887-3731
Fax: (202) 530-4254

Matthew J. Kemner
Troy M. Yoshino
Eric J. Knapp
Squire Patton Boggs (US) LLP
44 Montgomery Street, Suite 400
San Francisco, California 94104
Tel: (415) 743-2441
Fax: (415) 989-0932

*Attorneys for Defendants Mercedes-Benz USA, LLC and Daimler AG*

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................. 1

STATEMENT OF FACTS ............................................................................... 3

LEGAL STANDARD ....................................................................................... 6

ARGUMENT ..................................................................................................... 7

I.   PLAINTIFFS LACK ARTICLE III STANDING ............................................. 7

    A.   Plaintiffs Fail to Allege That Their Vehicles Were Misrepresented ......... 7

    B.   Plaintiffs Fail to Allege a Concrete, Non-Speculative Injury-in-Fact .................................................................................................... 10

II.   PLAINTIFFS' CLAIMS ARE BARRED UNDER THE DOCTRINES OF PREEMPTION AND PRIMARY JURISDICTION ................................................................ 14

    A.   Plaintiffs' Claims Are Preempted by the Clean Air Act .......................... 14

    B.   The Primary Jurisdiction Doctrine Bars All of Plaintiffs' Claims .......... 17

III.   PLAINTIFFS AGREED TO ARBITRATE ALL CLAIMS RELATING TO THEIR VEHICLES ................................................................................................ 21

IV.   PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED ................. 25

V.   PLAINTIFFS' FRAUDULENT CONCEALMENT CLAIMS SHOULD BE DISMISSED ........ 28

    A.   Plaintiffs' Failure to Distinguish Between Defendants Is Fatal to Their Fraudulent Concealment Claims ................................................... 28

    B.   Plaintiffs Fail to State a Claim for Fraudulent Concealment ................... 29

        1.   Plaintiffs Fail to Plead Specific Misrepresentations That Plaintiffs Saw or Relied On ...................................................... 30

        2.   Plaintiffs Fail to Plead Facts Giving Rise to Any Duty to Disclose ........................................................................................... 31

    C.   Economic Loss Bars Fraud-Based Claims ................................................ 33

VI.   PLAINTIFFS' STATE STATUTORY CLAIMS SHOULD BE DISMISSED ................... 35

    A.   Plaintiffs Fail to State a Claim for Violations of State Statutes ............... 35

i

**TABLE OF CONTENTS**
(cont'd)

Page

B.    Certain Statutory Claims Are Independently Barred ............................. 38

    1.    Statutes of Limitations or Repose Bar Plaintiffs' Alabama, Florida, and Michigan Statutory Claims ..................................... 38

    2.    Plaintiffs Failed to Provide Daimler AG with Required Pre-Suit Notice ................................................................................... 39

CONCLUSION ............................................................................................................. 40

# TABLE OF AUTHORITIES

Page

**Cases**

*Am. Express Co. v. Italian Colors Rest.*,
  133 S. Ct. 2304 (2013) ....................................................................................21, 22

*Anjelino v. N.Y. Times Co.*,
  200 F.3d 73 (3d Cir. 1999) ....................................................................................11

*Aprigliano v. Am. Honda Motor Co.*,
  979 F. Supp. 2d 1331 (S.D. Fla. 2013) ................................................................32

*Arcand v. Brother Int'l Corp.*,
  673 F. Supp. 2d 282 (D.N.J. 2009) .......................................................................32

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................6

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ...........................................................................14, 17

*AT&T Techs., Inc. v. Comm. Workers of Am.*,
  475 U.S. 643 (1986) ...............................................................................................21

*Barakezyan v. BMW of N. Am., LLC*,
  2016 WL 2840803 (C.D. Cal. Apr. 7, 2016) .........................................................13

*Baykeeper v. NL Indus., Inc.*,
  660 F.3d 686 (3d Cir. 2011) ......................................................................17, 18, 20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................6

*Belville v. Ford Motor Co.*,
  13 F. Supp. 3d 528 (S.D. W. Va. 2014) ................................................................31

*Blinco v. Green Tree Servicing, LLC*,
  400 F.3d 1308 (11th Cir. 2005) ............................................................................24

*Bocre Leasing Corp. v. Gen. Motors Corp.*,
  840 F. Supp. 231 (E.D.N.Y. 1994) .......................................................................34

*Brayman Const. Corp. v. Home Ins. Co.*,
  319 F.3d 622 (3d Cir. 2003) ..................................................................................21

*Bussian v. DaimlerChrysler Corp.*,
  411 F. Supp. 2d 614 (M.D.N.C. 2006) .................................................................33

# TABLE OF AUTHORITIES
(cont'd)

Page

*Campbell v. Capital One N.A.*,
2012 WL 4959611 (W.D. Ky. Oct. 16, 2012) ........................................................27

*Chan v. Daimler AG*,
2012 WL 5827448 (D.N.J. Nov. 9, 2012) ..........................................................6, 11

*Cipollone v. Liggett Grp., Inc.*,
505 U.S. 504 (1992)........................................................................................14, 16

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001)................................................................................................22

*Clapper v. Amnesty Int'l USA*,
133 S. Ct. 1138 (2013).......................................................................................7, 11

*Clark v. Actavis Grp.*,
567 F. Supp. 2d 711 (D.N.J. 2008) ........................................................................19

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962) .................................................................................20

*Collins v. Davol, Inc.*,
56 F. Supp. 3d 1222 (N.D. Ala. 2014)..............................................................38, 39

*Cottrell v. Alcon Labs., Inc.*,
2015 WL 3889367 (D.N.J. June 24, 2015) ..............................................................7

*Coyle v. Hornell Brewing Co.*,
2010 WL 2539386 (D.N.J. 2010) ..........................................................................18

*Crozier v. Johnson & Johnson Consumer Cos.*,
901 F. Supp. 2d 494 (D.N.J. 2012) ..........................................................................7

*Cruz v. Chang*,
400 F. Supp. 2d 906 (W.D. Tex. 2005)...................................................................40

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)................................................................................................22

*Delta Funding Corp. v. Harris*,
396 F. Supp. 2d 512 (D.N.J. 2004) ........................................................................22

*Demmick v. Cellco P'ship*,
2011 WL 1253733 (D.N.J. Mar. 29, 2011)........................................................18, 20

# TABLE OF AUTHORITIES
(cont'd)

Page

*Destifino v. Reiswig,*
630 F.3d 952 (9th Cir. 2011) .............................................................28

*DIRECTV, Inc. v. Imburgia,*
136 S. Ct. 463 (2015) .......................................................................22

*Donachy v. Intrawest U.S. Holdings, Inc.,*
2012 WL 869007 (D.N.J. Mar. 14, 2012) ........................................28, 35

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.,*
269 F.3d 187 (3d Cir. 2001) ................................................................24

*In re Elk Cross Timbers Decking Mktg., Sales Practices & Prods. Liability Litig.,*
2015 WL 6467730 (D.N.J. Oct. 26, 2015) .............................28, 31, 34

*Eprotec Pres., Inc. v. Engineered Materials, Inc.,*
2011 WL 867542 (D.N.J. Mar. 9, 2011) ..............................................27

*Faistl v. Energy Plus Holdings, LLC,*
2012 WL 3835815 (D.N.J. Sept. 4, 2012) ...........................................25

*Farina v. Nokia Inc.,*
625 F.3d 97 (3d Cir. 2010) ..................................................................15

*Finkelman v. Nat'l Football League,*
810 F.3d 187 (3d Cir. 2016) ................................................................11

*Fleisher v. Fiber Composites, LLC,*
2012 WL 5381381 (E.D. Pa. Nov. 2, 2012) .........................................36

*Fox Fuel, a Div. of Keroscene, Inc. v. Del. Cnty. Schools Joint Purchasing Bd.,*
856 F. Supp. 945 (E.D. Pa. 1994) .......................................................26

*Frederico v. Home Depot,*
507 F.3d 188 (3d Cir. 2007) .......................................................6, 25, 30

*Gaines v. United Parcel Serv., Inc.,*
2014 WL 1450113 (D.N.J. Apr. 14, 2014) ...........................................25

*Global NAPs, Inc. v. Bell Atl.-N.J., Inc.,*
287 F. Supp. 2d 532 (D.N.J. 2003) .....................................................19

*In re GNC Corp.,*
789 F.3d 505 (4th Cir. 2015) ..............................................................36

**TABLE OF AUTHORITIES**
(cont'd)

Page

*Gold v. Lumber Liquidators, Inc.*,
  2015 WL 7888906 (N.D. Cal. Nov. 30, 2015) .......................................................35

*Gomez v. Arkema, Inc.*,
  2014 WL 98319 (N.D. Ill. Mar. 12, 2014).............................................................39

*Gray v. Bayer Corp.*,
  2009 WL 1617930 (D.N.J. June 9, 2009) ..............................................................36

*Green v. Green Mountain Coffee Roasters, Inc.*,
  279 F.R.D. 275 (D.N.J. 2011) ...............................................................................37

*Grigson v. Creative Artists Agency LLC*,
  210 F.3d 524 (5th Cir. 2000) ................................................................................24

*Griswold v. Coventry First LLC*,
  762 F.3d 264 (3d Cir. 2014)..................................................................................24

*Harte v. Ocwen Fin. Corp.*,
  2014 WL 4677120 (E.D.N.Y. Sept. 19, 2014) ......................................................26

*Hartz Mountain Indus., Inc. v. Polo*,
  2005 WL 2807355 (D.N.J. Oct. 26, 2005)..............................................................10

*Herron v. Best Buy Stores, L.P.*,
  2014 WL 465906 (E.D. Cal. Feb. 4, 2014).......................................................39, 40

*Holmes v. Behr Process Corp.*,
  2015 WL 7252662 (N.D. Ala. Nov. 17, 2015) ......................................................38

*Iowa Network Servs., Inc. v. AT&T Corp.*,
  2015 WL 5996301 (D.N.J. Oct. 14, 2015).............................................................19

*In re iPhone 4s Consumer Litig.*,
  637 F. App'x 414 (9th Cir. 2016) .........................................................................37

*Jackson v. Gen. Motors Corp.*,
  770 F. Supp. 2d 570 (S.D.N.Y. 2011).........................................................14, 15, 16

*Katz v. Fiat/Chrysler Automobiles*,
  2015 WL 2452419 (M.D. Pa. May 21, 2015)...........................................................8

*Koronthaly v. L'Oreal USA, Inc.*,
  374 F. App'x 257 (3d Cir. 2010) ...........................................................................12

# TABLE OF AUTHORITIES
### (cont'd)

Page

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
  992 F. Supp. 2d 962 (C.D. Cal. 2014) ...................................................................12

*Lerner v. DMB Realty, LLC*,
  322 P.3d 909 (Ariz. Ct. App. 2014) ......................................................................29

*Lieberson v. Johnson & Johnson Consumer Cos.*,
  865 F. Supp. 2d 529 (D.N.J. 2011) ..................................................................36, 37

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ...............................................................................................7

*MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,
  496 F.2d 214 (3d Cir. 1974) ..................................................................................17

*McKissic v. Country Coach, Inc.*,
  2008 WL 2782678 (M.D. Fla. July 16, 2008) ........................................................39

*MDNet, Inc. v. Pharmacia Corp.*,
  147 F. App'x 239 (3d Cir. 2005) ...........................................................................28

*Medley v. Johnson & Johnson Consumer Cos.*,
  2011 WL 159674 (D.N.J. Jan. 18, 2011) ................................................................12

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) ..............................................................................................15

*Metro. Taxicab Bd. of Trade v. City of N.Y.*,
  615 F.3d 152 (2d. Cir. 2010) .................................................................................15

*Metro. Taxicab Bd. of Trade v. City of N.Y.*,
  633 F. Supp. 2d 83 (S.D.N.Y. 2009) ......................................................................15

*Morales v. Trans World Airlines, Inc.*,
  504 U.S. 374 (1992) .........................................................................................15, 16

*Moto Tech, LLC v. KTM N. Am., Inc.*,
  2013 WL 6446239 (D. Idaho Dec. 9, 2013) ...........................................................27

*Motor & Equip. Mfrs. Ass'n v. EPA*,
  627 F.2d 1095 (D.C. Cir. 1979) .............................................................................15

*Motor & Equip. Mfrs. Ass'n v. Nichols*,
  142 F.3d 449 (D.C. Cir. 1998) ...............................................................................14

# TABLE OF AUTHORITIES
(cont'd)

Page

*Murphy v. Proctor & Gamble Co.*,
   695 F. Supp. 2d 600 (E.D. Mich. 2010)...................................................................34

*Naporano Iron & Metal Co. v. Am. Crane Corp.*,
   79 F. Supp. 2d 494 (D.N.J. 1999) ...............................................................28, 35

*Nationwide Ins. Co. of Columbus, Ohio v. Patterson*,
   953 F.2d 44 (3d Cir. 1991)..........................................................................24

*Natixis Fin. Prods., LLC v. Pub. Serv. Elec. & Gas Co.*,
   2014 WL 1691647 (D.N.J. 2014) ...................................................................18

*Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*,
   492 F. App'x 518 (6th Cir. 2012)...................................................................26

*In re Office of the Att'y Gen. of N.Y.*,
   709 N.Y.S.2d 1 (N.Y. App. Div. 2000) .......................................................16, 17

*Oh v. AT&T Corp.*,
   76 F. Supp. 2d 551 (D.N.J. 1999) ..............................................................17, 19

*Pelman ex rel. Pelman v. McDonald's Corp.*,
   396 F.3d 508 (2d Cir. 2005)..........................................................................35

*Pereira v. Azevedo*,
   2013 WL 1655988 (D.N.J. Apr. 17, 2013) ...................................................27

*Potter v. Clark*,
   497 F.2d 1206 (7th Cir. 1974) .......................................................................8

*Precision Funding Grp., LLC v. Nat'l Fidelity Mortg.*,
   2013 WL 2404151 (D.N.J. May 31, 2013)..................................................25

*RBC Bank (USA) v. Petrozzini*,
   2012 WL 1965370 (D.N.J. May 31, 2012) ..................................................36

*Reilly v. Ceridian Corp.*,
   664 F.3d 38 (3d Cir. 2011).............................................................................11

*Reitz v. Nationstar Mortg., LLC*,
   954 F. Supp. 2d 870 (E.D. Mo. 2013)...........................................................25

*In re Riddell Concussion Reduction Litig.*,
   77 F. Supp. 3d 422 (D.N.J. 2015) ............................................................36, 37

## TABLE OF AUTHORITIES
(cont'd)

Page

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 987 (N.D. Cal. 2009) ........................................................... 32, 33

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014) ................................................................................ 6

*Sheeran v. Blyth Shipholding S.A.*,
    2015 WL 9048979 (D.N.J. Dec. 16, 2015) ..................................................... 25

*Sherer v. Green Tree Servicing, LLC*,
    548 F.3d 379 (5th Cir. 2008) .......................................................................... 23

*Slack v. Suburban Propane Partners, L.P.*,
    2010 WL 5392845 (D.N.J. Dec. 22, 2010) ..................................................... 27

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
    678 F.3d 235 (3d Cir. 2012) .............................................................................. 6

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ................................................................................... 10

*Stevenson v. Mazda Motor of Am., Inc.*,
    2015 WL 3487756 (D.N.J. June 2, 2015) ...................................................... 29, 30

*In re Suprema Specialties, Inc. Secs. Litig.*,
    438 F.3d 256 (3d Cir. 2006) ..................................................................... *passim*

*Tex. & Pac. Ry. Co. v. Abilene Cotton Oil Co.*,
    204 U.S. 426 (1907) ........................................................................................ 19

*Thompson-CSF, S.A. v. Am. Arbitration Ass'n*,
    64 F.3d 773 (2d Cir. 1995) .............................................................................. 24

*In re Time Warner Inc. Sec. Litig.*,
    9 F.3d 259 (2d Cir. 1993) ............................................................................... 33

*Toll Bros., Inc. v. Twp. of Readington*,
    555 F.3d 131 (3d Cir. 2009) ........................................................................... 13

*Top v. Ocean Petroleum, LLC*,
    2010 WL 3087385 (D.N.J. Aug. 3, 2010) ..................................................... 25

*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*,
    2009 WL 2940081 (D.N.J. Sept. 11, 2009) ................................................... 37

# TABLE OF AUTHORITIES
(cont'd)

Page

*In re Toyota Motor Corp. Unintended Acceleration Litig.*,
    790 F. Supp. 2d 1152 (C.D. Cal. 2011) ...............................................8, 11, 12

*Travelers Indem. Co. v. Bailey*,
    557 U.S. 137 (2009)...........................................................................15

*Traylor v. Awwa*,
    899 F. Supp. 2d 216 (D. Conn. 2012)......................................................30

*United States v. Richardson*,
    418 U.S. 166 (1974)...........................................................................10

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liability Litig.*,
    No. 3:15-md-02672 (N.D. Cal. Feb. 22, 2016)........................................20

*Wallert v. Atlan*,
    141 F. Supp. 3d 258 (S.D.N.Y. 2015).....................................................27

*Werwinski v. Ford Motor Co.*,
    286 F.3d 661 (3d Cir. 2002) ...........................................................33, 34

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990)...........................................................................11

*Young v. Johnson & Johnson*,
    2012 WL 1372286 (D.N.J. Apr. 19, 2012) ..........................................12, 13

*Yucyco, Ltd. v. Republic of Slovenia*,
    984 F. Supp. 209 (S.D.N.Y. 1997).........................................................26

*Zambrano v. CarMax Auto Superstores, LLC*,
    2014 WL 228435 (S.D. Cal. Jan. 21, 2014)..............................................37

**Statutes**

9 U.S.C. § 2 ...................................................................................21

9 U.S.C. § 3 ...................................................................................22

42 U.S.C. § 7521 ..............................................................................14

42 U.S.C. § 7522 ...........................................................................3, 19

42 U.S.C. § 7543 ..........................................................................14, 15

Ala. Code § 8-19-14..........................................................................38

x

# TABLE OF AUTHORITIES
(cont'd)

Page

Clean Air Act § 209 ...................................................................................14, 15, 16

Cal. Civ. Code § 1782(a) ........................................................................................39

Cal. Code Regs. tit. 13, § 1960.1 .......................................................................4, 5

Cal. Code Regs. tit. 13, § 1961 ..........................................................................4, 5

Fla. Stat. § 95.11(3)(f) ...........................................................................................38

Mich. Comp. Laws § 445.911...............................................................................39

N.Y. Gen. Bus. Law § 349 ....................................................................................38

**Rules**

Fed. R. Civ. P. 8 .....................................................................................................25

Fed. R. Civ. P. 9(b) .......................................................................................... *passim*

Fed. R. Civ. P. 12(b)(1).............................................................................................6

Fed. R. Civ. P. 12(b)(6)........................................................................................6, 24

**Regulations**

40 C.F.R. § 86.000-8 ................................................................................................5

40 C.F.R. § 86.096-8 ................................................................................................5

40 C.F.R. § 86.113-94 ............................................................................................18

40 C.F.R. § 86.115-78 ............................................................................................18

40 C.F.R. § 86.127-12 ..............................................................................................4

40 C.F.R. § 86.158-08 ..............................................................................................4

40 C.F.R. § 86.159-08 ..............................................................................................4

40 C.F.R. § 86.160-00 ..............................................................................................4

40 C.F.R. § 86.161-00 ........................................................................................4, 18

40 C.F.R. § 86.1805-12 ............................................................................................4

40 C.F.R. § 86.1809-10(b)........................................................................................5

**TABLE OF AUTHORITIES**
(cont'd)

Page

40 C.F.R. § 86.1811-04.........................................................................................4, 5, 19

40 C.F.R. § 86.1811-09.................................................................................................19

40 C.F.R. § 86.1811-10.................................................................................................19

## INTRODUCTION

Daimler AG, which manufactures Mercedes-Benz vehicles, has invested substantial resources to design and develop more environmentally friendly cars to help meet the challenges facing the automotive industry and the world. These investments have led to, among other things, significant advancements in diesel technology. Today, Daimler AG and Mercedes-Benz USA, LLC ("MBUSA") (collectively, "Defendants") respectively manufacture and distribute a wide array of diesel-powered vehicles, ranging from family sedans to Sprinter vans, that offer consumers the brand's signature characteristics of luxury, reliability and performance, and also reflect substantial efforts to improve environmental sustainability.

Diesel emissions have come under heightened scrutiny recently in the wake of Volkswagen's highly publicized admission that it employed illegal "defeat devices" in its diesel vehicles to pass emissions tests. As a result, federal and state regulators are currently reviewing compliance of diesel vehicles industry-wide, including Mercedes-Benz vehicles. Defendants are cooperating fully with those inquiries. To date, regulators have not determined that any manufacturer besides Volkswagen violated emissions standards.

By filing this suit—which alleges that Defendants have misrepresented certain aspects of their diesel vehicles, particularly their regulatory compliance—plaintiffs seek to shortcut this ongoing regulatory review and force this Court to decide highly complex technical issues that are plainly within the regulators' purview and expertise. Allowing plaintiffs to proceed on their claims—which are inextricably intertwined with the alleged regulatory violations—would needlessly risk frustrating and complicating the regulators' efforts to administer diesel emissions standards. The Court need not (and should not) allow such interference, particularly because plaintiffs' complaint suffers from fundamental and incurable legal deficiencies that warrant

1

dismissal in its entirety.

At the threshold, there are three fundamental bars to plaintiffs' complaint—two of which are jurisdictional. *First*, plaintiffs do not allege any cognizable Article III injury. Plaintiffs make various allegations about environmental impacts and the potential impact of a recall, but they have failed to identify any actual injury-in-fact they have personally suffered. *Second*, even if plaintiffs had standing to sue—and they do not—their suit should be dismissed because their claims (all of which arise under state law) are premised on regulatory compliance with vehicle emissions standards, and such claims are expressly preempted by the Clean Air Act. *Third*, even assuming some of plaintiffs' claims are not expressly preempted, the entire suit should at a minimum be stayed in accordance with the primary jurisdiction doctrine. Regulators are *currently* reviewing emissions control systems in Mercedes-Benz diesel vehicles sold in the United States, and the Court should defer resolution of plaintiffs' claims until those inquires have been resolved.

In addition to the foregoing fundamental bars to this suit, plaintiffs' claims—alleging breach of contract, fraudulent concealment under the common law of 30 states, and statutory consumer protection claims in 30 states—also suffer from categorical deficiencies that require dismissal.

As an initial matter, several plaintiffs are barred because their sale or lease agreement with the dealership from which they obtained their vehicle contains a binding arbitration provision. Defendants are presently aware of at least three plaintiffs whose sale or lease agreements with dealerships contain broad arbitration clauses, and their claims all must be dismissed.

Additionally, plaintiffs' breach of contract claim should be dismissed because plaintiffs do not plausibly allege that any valid contract exists between them and either Defendant, nor do they identify the particular contract or provision Defendants have allegedly breached.

Plaintiffs' two remaining categories of claims—for common law fraudulent concealment and statutory consumer protection violations—should also be dismissed because they fail to satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires plaintiffs to state with particularity the precise circumstances of any alleged fraud. Plaintiffs make broad proclamations of fraud, springing from alleged regulatory violations, but they fail to allege specific facts regarding fraud by either Defendant.

These legal deficiencies—and several others relating specifically to particular plaintiffs or statutes—are fatal to the claims in the complaint.  The suit should be dismissed in its entirety.

## STATEMENT OF FACTS

Diesel fuel was historically used most commonly in long-distance trucking vehicles and heavy machinery.  However, as the automotive industry began recognizing the widespread benefits of diesel—including its increased engine torque and fuel economy—manufacturers began developing passenger vehicles fueled by diesel rather than traditional gasoline.  Diesel engines have grown in popularity in the U.S. market due to their speed, efficiency, and precision.

As these usage patterns have evolved, so have environmental regulations governing this technology.  The environmental impacts of the automotive industry generally—and diesel emissions specifically—are tightly regulated in the United States by the Environmental Protection Agency ("EPA"), which is charged with regulating mobile and stationary sources of air pollution under the Clean Air Act ("CAA").  Before any diesel vehicle is sold in the U.S., it must have a "Certificate of Conformity" ("COC"), which the manufacturer receives after certifying to the EPA that the vehicle complies with emissions standards.  42 U.S.C. § 7522(a)(1).  The CAA expressly preempts states from setting their own "standards" governing motor vehicle emissions, with the

exception that the EPA can waive preemption for California and other states that wish to "opt-in" to California's emissions control program.  *Id.* §§ 7507, 7543.

Plaintiffs' claims invoke emissions testing standards that wade directly into complex territory within the purview of these agencies.  Compliance with emissions standards is determined based on laboratory testing following two protocols, the Federal Test Procedure ("FTP") and the Supplemental Federal Test Procedure ("SFTP"), that evaluate exhaust emissions on a dynamometer—a stationary platform that allows vehicle wheel rotation, comparable to a treadmill.  40 C.F.R. §§ 86.1811-04, 86.1841-01, 86.127-12, 86.158-08; Cal. Code Regs. tit. 13, §§ 1960.1(r), 1961(a)(7).  The FTP and SFTP consist of test series conducted under a set of specified conditions:  urban driving (FTP-75), high-speed or aggressive driving (US06), urban driving with air conditioning (SC03) and, for gasoline vehicles, cold weather urban driving (Cold FTP).  *See* 40 C.F.R. §§ 86.127-12, 86.158-08, 86.159-08, 86.160-00, 86.161.00.  EPA standards under these testing protocols regulate tailpipe emissions of nitrogen oxides ("NOx"), non-methane organic gas, non-methane hydrocarbons, carbon monoxide, formaldehyde, and particulate matter.  *Id.* § 86.1811-04(c), (m).  For vehicles manufactured after 2012, EPA standards also regulate carbon dioxide, nitrous oxide, methane, hydrofluorocarbons, perfluorocarbons, and sulfur hexafluoride.  *Id.*  Under the FTP and SFTP testing protocols, manufacturers must ensure their vehicles comply with EPA standards set for each of these regulated emissions at various mileage intervals, over the useful life of the vehicles.  *Id.* § 86.1805-12.  Light duty vehicles and trucks are also subject to a NOx emissions threshold of 1.33 times their FTP threshold under the Highway Fuel Economy Test ("HWFET").  *Id.* § 86.1811-04(j).  Manufacturers must meet California Air Resources Board ("CARB") standards

to sell vehicles in California, and in thirteen other jurisdictions that opted into CARB (rather than EPA) standards.  Cal Code Regs. tit. 13, §§ 1961, 1960.1(r).

In addition, for the purposes of investigating potential defeat devices, EPA may test vehicles "using driving cycles and conditions which may reasonably be expected to be encountered in normal operation and use."  40 C.F.R. § 86.1809-10(b).  To be clear, and contrary to plaintiffs' repeated claims of "on the road" emissions in excess of "standards," CAC ¶¶ 123-40, EPA and CARB have not promulgated *any* broadly-applicable "real-world" driving (i.e., on the road) emissions testing criteria or emissions standards.

As light duty diesel vehicles have risen in popularity, EPA and CARB have modified the regulations that govern diesel emissions.  *See* 40 C.F.R. § 86.1811-04; *see also id.* § 86.096-8, 86.000-8 (Tier I standards which are now reserved and have been replaced with Tier II standards).  To meet these stringent regulations, Mercedes-Benz developed BlueTEC technology, which reduces diesel emissions using a two-part process.  CAC ¶¶ 91, 97.  First, BlueTEC vehicles employ "a post-combustion emission reductant generically referred to as 'Diesel Exhaust Fluid' or 'DEF' and marketed as 'AdBlue'" that "when injected into the exhaust stream in a catalyst chamber, converts NOx into nitrogen gas, water, and carbon dioxide."  *Id.* ¶ 95.  Second, "[a]fter the by-products of combustion leave the engine, some of the exhaust is cooled and returned through the combustion chamber using exhaust gas recirculation (EGR)." *Id.* ¶ 96.  As plaintiffs concede, "[t]he BlueTEC approach, when it is operating, results in cleaner emissions," and Mercedes-Benz vehicles pass all regulatory certification testing.  *Id.* ¶¶ 10, 97.

Plaintiffs are individual consumers who allege that Defendants falsely advertised Mercedes-Benz diesel vehicles as compliant with applicable environmental regulations, and as being more "environmentally friendly" than they actually are under certain driving conditions.

CAC ¶¶ 98-104.  Plaintiffs assert these allegations on behalf of a putative nationwide class and thirty state-specific subclasses of all individuals or entities who, as of February 18, 2016, have ever owned or leased over a dozen distinct models of Mercedes-Benz diesel vehicles.  *Id.* ¶ 155.[1]

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(1), a court must dismiss a complaint where plaintiffs lack Article III standing.  *Chan v. Daimler AG*, 2012 WL 5827448, at *4 (D.N.J. Nov. 9, 2012); *see In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244 (3d Cir. 2012) (court must apply a "plausibility standard" to determine whether standing exists).  In addition, a complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2]

Moreover, when a claim is premised on fraud, the allegations must satisfy the more "stringent pleading requirements" of Rule 9(b), and a plaintiff is required to "state with particularity the circumstances of the alleged fraud or otherwise inject the requisite precision into her allegations."  Fed. R. Civ. P. 9(b); *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).  "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of [ ] fraud with all of the essential factual background that would accompany the 'first paragraph of any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue."  *In re Suprema Specialties, Inc. Secs. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006) (internal citation

---

[1]    The alleged "Affected Vehicles" include all "diesel-powered: ML 320, ML 350, GL 320, E320, S350, R320, E Class, GL Class, ML Class, R Class, S Class, GLK Class, GLE Class, and Sprinter" vehicles manufactured or distributed by Defendants.  CAC ¶ 155.

[2]    In addition to the complaint, the Court can consider documents explicitly referenced in the complaint—such as plaintiffs' purchase or lease agreements—in resolving this motion. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment").

omitted).  These standards apply with equal force in the class action context and "each

'individually named plaintiff must satisfy Rule 9(b) independently.'"  *Crozier v. Johnson &*

*Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012).

## ARGUMENT

## I.  PLAINTIFFS LACK ARTICLE III STANDING

Plaintiffs' complaint should be dismissed because plaintiffs have failed to allege an

injury-in-fact sufficient to establish Article III standing.  *Cottrell v. Alcon Labs., Inc.*, 2015 WL

3889367, at *5 (D.N.J. June 24, 2015) ("The Third Circuit has stressed that of the[ ] three

required elements of constitutional standing, 'the injury-in-fact element is often

determinative.'").  To allege an injury-in-fact, plaintiffs must allege "an invasion of a legally

protected interest which is (a) concrete and particularized, and (b) actual or imminent, not

conjectural or hypothetical."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Here,

plaintiffs have not plausibly alleged any defect or deficiency in the emissions profile of the make

and model vehicles that ***plaintiffs*** actually own or lease.  Without factual allegations that *they*

have experienced the alleged defect, plaintiffs have not alleged an injury-in-fact.  In addition,

plaintiffs' cursory allegations of "damage" in the form of environmental harm, future economic

harm, and present economic harm—allegations which are relegated to four paragraphs in the

complaint—are, respectively, not particularized, speculative, and not plausibly pled.

### A.  Plaintiffs Fail to Allege That Their Vehicles Were Misrepresented

Plaintiffs fail to allege that the particular makes or models of vehicles ***they*** own or lease

produce more emissions than Defendants represented, or are defective because they do not meet

applicable regulatory emissions standards.  *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138,

1147 (2013) (holding plaintiffs lacked standing where they did not allege they were actually

harmed and only speculated that they could be injured). Plaintiffs lack standing because they fail to "allege that *they* experienced a [ ] defect." *In re Toyota Motor Corp. Unintended Acceleration Litig.*, 790 F. Supp. 2d 1152, 1165 (C.D. Cal. 2011) (emphasis added); *Katz v. Fiat/Chrysler Autos.*, 2015 WL 2452419, at *2 (M.D. Pa. May 21, 2015) (dismissing for lack of standing where "the claimed safety issues were never manifest[ed] in [plaintiff's] vehicle").[3]

Plaintiffs rely extensively on testing and reports relating to European models of Mercedes-Benz diesel vehicles that have never been sold or leased in the United States. *See* CAC ¶¶ 105-41. But testing of European vehicles does not permit an inference that plaintiffs' own vehicles—*which were designed for and sold in the United States*—emit unlawfully high emissions, particularly given plaintiffs' recognition that European emissions standards differ from U.S. standards. *Id.* ¶ 119. Moreover, the European studies cited do not raise any plausible inferences about plaintiffs' vehicles for the additional, independent reason that the models they test are different than those that plaintiffs own or lease.[4]

Even if these European studies did speak to the emissions performance of plaintiffs' vehicles, those tests affirmatively undercut plaintiffs' contention that emissions are unlawfully high. Far from concluding that any Mercedes-Benz vehicle violated any official European or

---

[3]    There is not a single allegation attributable to named plaintiff Paul Herrmann. The complaint does not identify the vehicle he purchased, nor when or where he purchased it, what representations he saw or relied on, or how he was damaged. Accordingly, Mr. Herrmann should be dismissed as a named plaintiff. *Cf. Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed[.]").

[4]    For instance, plaintiffs rely heavily on both (1) "[a] study conducted by TNO for the Dutch Ministry of Infrastructure and the Environment confirm[ing] that, in real world testing, the Mercedes C-Class 220 emits NOx at levels much higher than in a controlled dynamometer test," and (2) Defendants' purported admission of a "shut-off device in the engine management of its C-Class diesel cars [that] stops NOx cleaning when ambient temperatures drop below 50 degrees Fahrenheit." CAC ¶¶ 106, 111. But not a single plaintiff alleges that he or she owns or leases a C-Class vehicle, and those vehicles are not included within the class definition. *Id.* ¶ 155.

U.S. emissions standard, several of the reports cited recognized that all the European diesel vehicles tested—including Mercedes-Benz European models—"passed the EU's official lab-based regulatory test," and concluded that "[t]here is no evidence of illegal activity, such as the defeat devices used by Volkswagen."  CAC ¶¶ 117-18; *see also id.* ¶¶ 111-14 (noting that TNO reported "Mercedes passed the dynamometer tests in all tests").

Setting aside European compliance, plaintiffs concede—as they must—that when "tested on a dynamometer using EPA testing protocols," Mercedes-Benz vehicles also pass U.S. emissions tests.  CAC ¶ 10; *see also id.* ¶¶ 130-31.  Nevertheless, plaintiffs purport to rely on their own *unregulated* testing of *unspecified* vehicles "on the road," conducted without complying with any established EPA testing protocol (because none exists with respect to "on the road" emissions testing criteria or standards).  *Id.* ¶¶ 124-35.  Plaintiffs' allegations based on their counsel's or experts' "road" testing also fail to establish that *the vehicles plaintiffs lease or own* produce unlawfully high or higher-than-represented emissions.  Among other things, plaintiffs fail to allege facts showing that any of *their* vehicles were tested—or even which model(s) or model year(s) were tested.  As with the European testing, there is no basis to infer that testing of undisclosed vehicles under unregulated conditions can plausibly demonstrate anything about the emissions of plaintiffs' vehicles.  This is especially so given the wide variety of vehicles plaintiffs own or lease.  Not only do the named plaintiffs' vehicles differ significantly in type, covering 17 different models ranging from sedans to sports utility vehicles to cargo vans, they also differ significantly in time, spanning 11 different model years (and yet still do not begin to cover the huge variety of vehicles in the putative class).  *See id.* ¶¶ 20-64.  Plaintiffs do not plausibly demonstrate that their own vehicles suffer from any deficiency, so they fail to establish standing.

**B.** **Plaintiffs Fail to Allege a Concrete, Non-Speculative Injury-in-Fact**

In addition to failing to allege facts showing they have experienced a defect, plaintiffs also fail to plead "injury" stemming from any defect.  Strikingly, plaintiffs' 1,451 paragraph complaint devotes only four paragraphs (less than 0.3% of the complaint) to a section alleging "The Damage" caused by Defendants' actions.  CAC ¶¶ 142-45.  For numerous reasons, none of the cursorily alleged "damage" constitutes cognizable Article III injury-in-fact.

*First*, the public harms that plaintiffs allege have resulted from Defendants' supposed noncompliance with regulatory standards, such as environmental and health effects, CAC ¶¶ 142-43, cannot satisfy the injury-in-fact requirement because they are "generalized grievances that are shared by the public at large," but are not specifically suffered by any of the named plaintiffs.  *See Hartz Mountain Indus., Inc. v. Polo*, 2005 WL 2807355, at *3 (D.N.J. Oct. 26, 2005); *United States v. Richardson*, 418 U.S. 166, 171 (1974) (plaintiffs lack standing where their asserted injury is "plainly undifferentiated and 'common to all members of the public'").  This "general and amorphous" harm purportedly caused by automotive exhaust emissions is precisely the type of injury that courts have repeatedly held does ***not*** establish standing.  *Hartz*, 2005 WL 2807355, at *5 (rejecting increased traffic as "not the type of particular, concrete, and litigant-specific injury that would support standing").  Moreover, plaintiffs cannot establish standing simply by alleging that Defendants violated environmental regulations because standing premised solely on a regulatory violation has been expressly rejected by the Supreme Court.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548-49 (2016) (holding that "Article III standing requires a concrete injury even in the context of a statutory violation").

*Second*, the injuries plaintiffs allege they personally have suffered are highly speculative future injuries that cannot satisfy the injury-in-fact requirement either.  Plaintiffs assert that their

vehicles might someday be "worth less in the market place" and that they might one day have to "spend additional sums on fuel"—*if* Defendants' vehicles are found to be out of compliance with emissions requirements, *if* Defendants are therefore required in the future to recall plaintiffs' vehicles to bring them into compliance, and *if* that recall "substantially degrad[es] [the vehicles'] performance characteristics, including their horsepower and their fuel efficiency." CAC ¶¶ 144-45. But for future injuries to support standing, they must be concrete and imminent, not speculative. *See Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 88 (3d Cir. 1999). This means that the "threatened injury must be certainly impending." *Clapper*, 133 S. Ct. at 1147 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). In other words, mere allegations of possible future injury are not sufficient to satisfy Article III. *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011).

None of plaintiffs' alleged future injuries—increased fuel costs, decreased performance, or diminished value—are "certainly impending" because they are explicitly predicated upon multiple contingencies. The alleged economic injury might arise only after a hypothetical, future recall of plaintiffs' vehicles that might result—if at all—only from the "exercise" of "judgment" by "independent decisionmakers." *See Clapper*, 133 S. Ct. at 1150; *see also* CAC ¶ 145 (claiming these injuries will occur only "if" Defendants issue a recall). It is purely speculative whether the vehicles after a recall and repair would be worth more, less, or the same as they are worth now. As this Court has held, there must be a "factual predicate upon which [it] may draw the plausible inference that plaintiffs' vehicles did, in fact, diminish in value." *Chan*, 2012 WL 5827448, at *9; *see also Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (dismissing for lack of standing where "[i]t [was] pure conjecture . . . what the ticket resale market might have looked like if" defendant had not acted unlawfully); *In re Toyota Motor Corp.*, 790 F. Supp. 2d at 1165 (dismissing for lack of standing where "[p]laintiffs do not allege . . . that they tried to sell or trade

the vehicle at a loss"). Such a "factual predicate" is absent here: There are no specific allegations to plausibly support the conclusion that a recall would not preserve the vehicles' value. And no plaintiff alleges that he or she has sold (or tried to sell) a Mercedes-Benz vehicle and received less than he or she might otherwise have received absent the alleged misrepresentations.

*Third*, plaintiffs claim they suffered economic harm because they "overpaid" for their vehicles based on Defendants' alleged misrepresentations, and "did not receive the benefit of their bargain." CAC ¶ 145. To establish standing at the pleading stage under a benefit of the bargain theory, however, plaintiffs "must allege '*something more*' than 'overpaying for a "defective" product' to support a claim." *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 973 (C.D. Cal. 2014) (emphasis added); *In re Toyota Motor Corp.*, 790 F. Supp. 2d at 1165 n.11 (same). Merely alleging overpayment, without more, is wholly insufficient. *See, e.g.*, *Young v. Johnson & Johnson*, 2012 WL 1372286, at *3 (D.N.J. Apr. 19, 2012) (dismissing for lack of standing where product did not satisfy the plaintiff's "own subjective belief" as to its health benefits, and plaintiff did "not set forth allegations as to how he paid a premium"); *Medley v. Johnson & Johnson Consumer Cos.*, 2011 WL 159674, at *2 (D.N.J. Jan. 18, 2011) (dismissing for lack of standing even though it "is undoubtedly correct" that "had Plaintiffs known the true nature of the Defendant's baby shampoo, they . . . would have [not] purchased it"). Plaintiffs must allege that the vehicles they purchased or leased have "failed to work for [their] intended purpose or [are] worth objectively less than what one could reasonably expect." *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010). "Absent any [such] allegation[s]," plaintiffs "ha[ve] not demonstrated a concrete injury in fact." *Id.*

Here, even taking all of plaintiffs' allegations as true, the Court still cannot draw a plausible inference that plaintiffs did not receive the benefit of their bargain because the

Mercedes-Benz "Clean Diesel" vehicles were less "environmentally friendly" than they were advertised to be or do not meet regulatory standards.  Plaintiffs do not allege, for example:

- That there is any objective measure of "environmental friendliness" that can be used to determine whether the vehicles were as "environmentally friendly" as advertised;

- That allegedly elevated levels of NOx emissions are not counteracted by lower levels of other exhaust emissions, such as ammonia or greenhouse gases, resulting in a low level of emissions overall; or

- That the "FTP standard" used as a benchmark by plaintiffs is considered by the regulatory agencies to be an appropriate or applicable standard for measuring test results for on-road driving, such that plaintiffs' on-road tests can be considered evidence of regulatory non-compliance.

Without these and other critical factual allegations, plaintiffs' allegations are equally consistent with the inference that, given modern engineering constraints, complex chemical reactions, and existing industry regulations, Mercedes-Benz diesel vehicles are, as advertised, "environmentally friendly," CAC ¶ 101, and compliant with all regulations, *id.* ¶ 104.  Put differently, exactly how plaintiffs "received a product that did not deliver the advertised benefits" cannot be plausibly inferred from their allegations, so plaintiffs' claims must be dismissed for lack of standing.  *Young*, 2012 WL 1372286, at *4; *Barakezyan v. BMW of N. Am., LLC*, 2016 WL 2840803, at *4 (C.D. Cal. Apr. 7, 2016) (a plaintiff lacks standing where he "receives the benefit of his bargain").

In any event, whether plaintiffs have alleged that their vehicles produce more emissions than Defendants represented they would, plaintiffs' claims must be dismissed for lack of standing because plaintiffs have not plausibly alleged that any purported injury of "overpayment" is "fairly traceable to the challenged action of the [Defendants]."  *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137-38 (3d Cir. 2009).  Absent allegations showing that plaintiffs actually relied on any specific misrepresentations—allegations that plaintiffs have failed to make, *see infra* at 30-31— there is no plausible basis to claim that plaintiffs paid a premium *because* of purported misrepresentations.

II.   **PLAINTIFFS' CLAIMS ARE BARRED UNDER THE DOCTRINES OF PREEMPTION AND PRIMARY JURISDICTION**

Plaintiffs' claims are predicated on alleged regulatory violations "relat[ing] to the control of emissions" and are therefore expressly preempted by Section 209 of the CAA.  42 U.S.C. § 7543(a); *see also Cipollone v. Liggett Grp., Inc*., 505 U.S. 504, 523 (1992) (preemption of state enforcement actions "relating to" a federally regulated subject includes state common-law suits); *Jackson v. Gen. Motors Corp*., 770 F. Supp. 2d 570, 576 (S.D.N.Y. 2011) (holding CAA preempted state tort claims alleging diesel engines were defectively designed to allow excessive emissions), *aff'd sub. nom. Butnick v. Gen. Motors Corp.*, 472 Fed. App'x 80 (2d Cir. 2012).

Plaintiffs' claims also implicate the primary jurisdiction of both EPA and CARB. Determining whether BlueTEC vehicles "exceed federal and state emission standards," CAC ¶ 1, requires expertise, technical knowledge, and policy experience that only EPA and CARB possess, and "should be addressed in the first instance by" EPA and CARB, "rather than by the judicial branch."  *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 760 (9th Cir. 2015). Predetermining these issues would impermissibly infringe on EPA's and CARB's authority to establish and enforce emissions standards for motor vehicles.  42 U.S.C. § 7521; *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 452 (D.C. Cir. 1998) ("Subchapter II of the [CAA] vests in the federal government the almost exclusive responsibility for establishing automobile emission standards for new cars.").

The Court should therefore dismiss plaintiffs' claims on express preemption grounds or, in the alternative, defer judgment in favor of EPA and CARB's primary jurisdiction.

A.   **Plaintiffs' Claims Are Preempted by the Clean Air Act**

Section 209(a) of the CAA unequivocally bars states from "adopt[ing] or attempt[ing] to enforce any standard relating to the control of emissions from new motor vehicles or new motor

vehicle engines."  42 U.S.C. § 7543(a).  Preemption clauses like the CAA's, which use the phrase "relating to," have a "broad scope" and "expansive sweep."  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992).  This is because, "in a statute, the phrase 'in relation to' is expansive," *Metro. Taxicab Bd. of Trade v. City of N.Y.*, 615 F.3d 152, 157 (2d. Cir. 2010) (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 149 (2009)), and a provision preempting state law relating to a subject is properly construed to preempt everything that has "any connection with or reference to" that subject.  *Morales*, 504 U.S. at 384.  Thus, in the context of the CAA, "enforcement actions that have any connection with or reference to the control of emissions from motor vehicles are preempted."  *Jackson*, 770 F. Supp. 2d at 577.  That broad preemptive sweep serves Congress's purpose of avoiding an "anarchic patchwork of federal and state regulatory programs, a prospect which threatened to create nightmares for the manufacturers."  *Motor & Equip. Mfrs. Ass'n v. EPA*, 627 F.2d 1095, 1109 (D.C. Cir. 1979); *Metro. Taxicab Bd. of Trade v. City of N.Y.*, 633 F. Supp. 2d 83, 104 (S.D.N.Y. 2009) (Congress established CAA preemption because it "was concerned about the possibility of 50 different standards applying to one vehicle that so easily moves across state lines.").

The broad preemptive language in Section 209(a) evinces Congress's intent to preempt both state statutory causes of action and common-law tort actions for damages when those claims are premised on a failure to meet the federal standards promulgated by EPA.  *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("the purpose of Congress is the ultimate touch-stone" for analyzing whether a federal statute preempts state law); *Farina v. Nokia Inc.*, 625 F.3d 97, 115 (3d Cir. 2010) ("Congress, through a statute's express language, declares its intent to displace state law.").  Indeed, a New York appellate court confronted with claims nearly identical to those plaintiffs allege here—fraud and breach of warranty claims premised on alleged concealment of

excessive emissions caused by alleged "defeat devices" in diesel vehicles—held that these claims were preempted by the CAA. *In re Office of the Att'y Gen. of N.Y.*, 709 N.Y.S.2d 1, 9-10 (N.Y. App. Div. 2000).

This suit is equally preempted. The Supreme Court has made clear that state-law damages actions rooted in regulatory violations are preempted enforcement actions because "state regulation can be as effectively exerted through an award of damages as through some form of preventive relief." *Cipollone*, 505 U.S. at 523; *Morales*, 504 U.S. at 383-84 (consumer protection claims based on alleged regulatory violations clearly constituted "enforcement" of those regulations). Because the imposition of damages is a means to control and affect policy, common-law damages suits have been found preempted even where the statutory language is far less clear than Section 209(a). *See Cipollone*, 505 U.S. at 515, 521 (bar on state "requirement[s] or prohibition[s]" preempted both positive enactments and common-law suits for damages because "[t]he obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy"). And, as courts have recognized, "[i]t is hard to contemplate language that would more plainly demonstrate Congress's intent to preempt state common law tort action than the 'attempt to enforce' language employed in . . . the CAA." *Jackson*, 770 F. Supp. 2d at 576.

Plaintiffs' claims fall within the CAA's preemptive scope because they have a connection with and reference the control of emissions. Plaintiffs' claims are expressly premised on allegations that Defendants represented that BlueTEC vehicles "complied with EPA regulations" when they were in fact "non-EPA-compliant," CAC ¶¶ 188, 221, 262 (fraudulent concealment claims); *id.* ¶¶ 174, 248, 288 (state consumer protection claims), and thus require "a determination of whether [Defendants] complied with the Federal emission standard." *In re Office of the Att'y*

*Gen. of N.Y.*, 709 N.Y.S.2d at 9-10.  Plaintiffs' claims accordingly attempt to enforce regulatory standards by "seeking to use [the] State's [ ] law to penalize" MBUSA and Daimler AG for failure to comply with EPA regulations.  *Id.* at 9.  Congress expressly preempted such actions, and plaintiffs' claims must be dismissed.

### B.     The Primary Jurisdiction Doctrine Bars All of Plaintiffs' Claims

Plaintiffs' claims are independently barred by the primary jurisdiction doctrine, which permits courts to stay or dismiss claims that "implicate[ ] technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch," because they "require[ ] expertise or uniformity in administration."  *Astiana*, 783 F.3d at 760 (citations omitted).  Here, there are ongoing inquiries by EPA and CARB—the agencies tasked with enforcing the regulations that plaintiffs contend are being violated—and this Court should defer judgment until these inquiries have been resolved.  Doing so is consistent with the doctrine of primary jurisdiction, and would allow this case to proceed in a streamlined and efficient way.

The Third Circuit has adopted a four-factor test to guide application of the primary jurisdiction doctrine:

> (1) Whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) Whether the question at issue is particularly within the agency's discretion; (3) Whether there exists a substantial danger of inconsistent rulings; and (4) Whether a prior application to the agency has been made.

*Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011).  These factors all weigh in favor of deferral in this case.

*First*, the factual disputes implicated by plaintiffs' allegations "involve technical and policy considerations" best addressed by the agencies in the first instance.  *Oh v. AT&T Corp.*, 76 F. Supp. 2d 551, 557 (D.N.J. 1999) (quoting *MCI Commc'ns Corp. v. Am. Tel. & Tel. Co.*,

496 F.2d 214, 220 (3d Cir. 1974)); *see Coyle v. Hornell Brewing Co.*, 2010 WL 2539386, at *4

(D.N.J. 2010) (referring the question of whether high fructose corn syrup was "natural" for food

labeling purposes to the FDA).  Plaintiffs' claims cannot be evaluated without assessing a

vehicle's emissions levels and compliance with regulatory standards, all of which plainly invoke

complex analysis and balancing.

　　　　For example, adjudicating plaintiffs' claim that the diesel vehicles at issue "use a defeat

device to obtain test results that appear to pass emissions standards," CAC ¶ 10, can be answered

only by applying complex and highly technical regulations regarding the emissions testing

process, auxiliary emissions control devices ("AECDs") (which are permissible within certain

defined parameters under the applicable regulations), and "defeat devices" (which are not).  *E.g.*,

40 C.F.R. §§ 86.113-94, 86.115-78, 86.161-00 (establishing fuel specifications, dynamometer

driving schedules, and ambient temperature and humidity requirements for emissions testing);

§ 86.1844-01(d)(11) (defining AECDs); § 86.1803-01 (defining defeat devices and related

exceptions).  Resolving these complex issues would benefit from review, in the first instance, by

agencies that are vested by statute with the authority to review these issues, and therefore have an

in-depth understanding of vehicle design and engineering, as well as emissions testing, and

judgment informed by experience applying governing regulations.  *Baykeeper*, 660 F.3d at 691.

　　　　*Second*, the CAA "charges [EPA]" with regulatory, supervisory, and enforcement

authority over vehicle emissions.  *See Baykeeper*, 660 F.3d at 691; *Natixis Fin. Prods., LLC v.*

*Pub. Serv. Elec. & Gas Co.*, 2014 WL 1691647, at *7 (D.N.J. 2014) (applying primary

jurisdiction doctrine where the agency "maintains regulations" regarding the issue in question);

*Demmick v. Cellco P'ship*, 2011 WL 1253733, at *7 (D.N.J. Mar. 29, 2011) (Linares, J.) (staying

case pending determination by the FCC as to whether the challenged conduct was "reasonable"

under regulations).  Not only does EPA maintain regulations regarding vehicle emissions, *see, e.g.*, 40 C.F.R. §§ 86.1811-04, 86.1811-09, 86.1811-10, but also it has supervisory and enforcement authority by virtue of the statutory requirement that auto manufacturers obtain a COC—which only EPA can grant—before they can place their vehicles in the market.  *See* CAC ¶ 89 (citing 42 U.S.C. § 7522(a)(1)).

*Third*, the danger of inconsistent rulings is substantial in this case.  *See Clark v. Actavis Grp.*, 567 F. Supp. 2d 711, 715 (D.N.J. 2008); *Global NAPs, Inc. v. Bell Atl.-N.J., Inc.*, 287 F. Supp. 2d 532, 549 (D.N.J. 2003) (finding primary jurisdiction applied due to, *inter alia*, danger of inconsistent rulings); *Oh*, 76 F. Supp. 2d at 557 (primary jurisdiction applied to fraud and negligent misrepresentation claims that turned on a question necessitating interpretation of complex regulations); *Iowa Network Servs., Inc. v. AT&T Corp.*, 2015 WL 5996301, at *7 (D.N.J. Oct. 14, 2015) (referring case involving allegations of regulatory violations to the FCC because the pending regulatory action and civil suit "may have overlapping issues and there is a risk [of] inconsistent findings").  As plaintiffs acknowledge, EPA has already determined that Mercedes-Benz diesel cars are in regulatory compliance because Defendants were required to (and did) obtain a COC before introducing its diesel vehicles into the market.  CAC ¶ 89. Plaintiffs are asking this Court to rule that Mercedes vehicles fail EPA emissions standards even before EPA, the agency that originally issued the COCs, has had a chance to complete its inquiry into these issues.  Avoiding this risk of inconsistency from parallel court proceedings on regulatory issues was the very motivation for adopting the primary jurisdiction doctrine in the first place.  *See Tex. & Pac. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 441 (1907).[5]

---

[5]   The impropriety of plaintiffs' attempts to bypass the regulators' inquiries is underscored by the different procedural postures between this litigation and the Volkswagen ("VW") diesel litigation.  In VW's circumstance, EPA and CARB's investigation of VW was much more

*Fourth*, the "prior application" factor is meant to take into account whether "the issue to be referred may already be pending before the agency." *Demmick v. Cellco P'ship*, 2011 WL 1253733, at *6 (D.N.J. Mar. 29, 2011) (Linares, J.); *cf. Baykeeper*, 660 F.3d at 692 (relevance of prior application depends on how recently the agency has addressed the relevant issues). Here, EPA and CARB are currently considering relevant factual issues underlying all of plaintiffs' claims. In light of their ongoing review and the three other *Baykeeper* factors weighing heavily in favor of application of the primary jurisdiction doctrine, the Court should, at a minimum, stay all proceedings pending resolution of the inquiries by EPA and CARB. *See Demmick*, 2011 WL 1253733, at *6. And doing so poses no prejudice to plaintiffs, since courts have recognized that the prospect of any delay in obtaining the monetary damages that plaintiffs seek is not a cognizable prejudice. *See CMAX, Inc. v. Hall*, 300 F.2d 265, 268-69 (9th Cir. 1962).

*     *     *

The threshold bars of Article III standing and federal preemption of state-law enforcement actions warrant dismissal of the complaint in its entirety. If the Court resolves this motion on either basis, it need not reach Defendants' remaining arguments regarding the deficiencies of plaintiffs' claims. Similarly, if the Court stays these proceedings in accordance with the primary jurisdiction doctrine, it need not resolve Defendants' remaining arguments at this time. As the balance of this brief demonstrates, however, plaintiffs' breach of contract, fraudulent concealment, and statutory consumer protection claims also all fail as a matter of law and should be dismissed.

---

advanced and had already reached conclusions regarding potential violations—and thus litigation of the agencies' enforcement actions were proceeding in tandem with the class actions. Indeed, the first consumer complaint was filed the same day that EPA issued a notice of violation to VW, and the operative, consolidated consumer class action complaint was not filed until five months later. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liability Litig.*, No. 3:15-md-02672 (N.D. Cal. Feb. 22, 2016), ECF No. 1230 (Plaintiffs' Consolidated Consumer Class Action Complaint).

### III.   PLAINTIFFS AGREED TO ARBITRATE ALL CLAIMS RELATING TO THEIR VEHICLES

The named plaintiffs are individual consumers with tremendous variability amongst them.  Included among these variations are differences in the sale and lease agreements that the named plaintiffs signed when they purchased or leased their vehicles from Mercedes-Benz dealers (or other sellers).[6]  Based on current information, at least three plaintiffs (and potentially many others as-yet unknown to Defendants) agreed to arbitrate any and all claims relating to their Mercedes-Benz vehicle, and all claims asserted by those plaintiffs must be dismissed.

Under the Federal Arbitration Act ("FAA"), a written arbitration provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2315 (2013) (recognizing federal law establishes a robust preference for arbitration).  Courts have interpreted this broadly to mean that "there is a presumption of arbitrability" and all "[d]oubts should be resolved in favor of" arbitration.  *AT&T Techs., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 650 (1986).  Thus, where a contract contains an arbitration clause, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *Id.*; *see also Brayman Const. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir. 2003).  This "presumption in favor of arbitrability is particularly applicable where the arbitration clause is broad."  *Brayman*, 319 F.3d at 625 (alterations and internal quotation marks omitted).

---

[6]   Any sale or lease agreement (or other agreement, such as a financing agreement) relating to plaintiffs' vehicles is beyond the custody or control of Defendants, *see* Fleming Decl. ¶ 4, and may contain any number of distinct substantive terms that govern plaintiffs' claims.  Although Defendants are presently only aware of arbitration clauses in agreements with Mercedes-Benz dealers, it is possible that similar clauses exist in plaintiffs' contracts with Carmax or other private sellers.  MBUSA and Daimler AG reserve their right to compel arbitration of the remaining plaintiffs' claims if their agreements also contain arbitration clauses.

Further, "[t]he party opposing arbitration bears the burden of proving that the claims at issue are not subject to arbitration." *Delta Funding Corp. v. Harris*, 396 F. Supp. 2d 512, 515 (D.N.J. 2004).  If a court concludes that an issue is covered by an arbitration agreement, or even that it *might* be covered, the FAA leaves a court no discretion.  The court must dismiss the plaintiff's claims and direct the parties to arbitration on the covered issues.  9 U.S.C. § 3; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001) (holding the FAA preempts all state laws that conflict with the federal policy favoring broad interpretation of arbitration clauses).  Additionally, waivers of class arbitration rights are valid and must be enforced.  *Italian Colors Rest.,* 133 S. Ct. at 2309 (citation omitted); *see also DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 471 (2015).

Plaintiffs Andary's, Feller's, and McVey's agreements require that they arbitrate *all* claims—including claims against non-signatories to the agreements, i.e., Defendants here— arising from the sale or condition of their vehicles.  The arbitration clause in Andary's contract, for example, states that Andary agrees to arbitrate "[a]ny claim or dispute, whether in contract, tort, statute or otherwise . . . which arises out of or relates to [her] credit application, *purchase or condition of this vehicle*, this contract or any resulting transaction or relationship (*including any such relationship with third parties who do not sign this contract*)."  Fleming Decl. Ex. 1 (Andary Agreement) (emphases added).[7]  All of these plaintiffs' claims fit squarely within the

---

[7]    *See also* Fleming Decl. Ex. 2 (Feller Agreement) ("[a]ny claim or dispute, whether in contract, tort, statute or otherwise . . . which arises out of or relates to your credit application, purchase or condition of this vehicle, your purchase or financing contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign our purchase or financing contract)"); Fleming Decl. Ex. 3 (McVey Agreement) ("This buyers [sic] order is subject to and incorporates by reference the attached agreement to arbitrate/class action arbitration waiver," which states that "[a]ny claim or dispute, whether in contract, tort or otherwise . . . which arises out of or relates to a credit application, this contract or any resulting transaction or relationship arising out of this contract" (some capitalization altered)).

scope of this provision.  Not only do their claims for breach of contract, fraudulent concealment, and violations of state statutes fall within the clause's enumerated categories and "arise" from the "purchase or condition of [the] vehicle," but those claims are based on a "relationship" between plaintiffs and Defendants allegedly created by the purchase or lease of their vehicles.  *See, e.g.*, CAC ¶ 183.

Defendants may invoke these arbitration clauses as non-signatories to the agreements. Indeed, courts have consistently held plaintiffs to their signed agreements to arbitrate, and have confirmed the rights of non-signatory defendants to compel arbitration of any claims that fall within the scope of the language in an arbitration provision.  In *Sherer v. Green Tree Servicing, LLC*, for example, the plaintiff sued his loan servicer under the Fair Debt Collection Practices Act and Fair Credit Reporting Act after obtaining that loan through a contract with a separate company.  548 F.3d 379, 381-82 (5th Cir. 2008) (per curiam).  Even though the servicer was not a signatory to the loan agreement, the Fifth Circuit held that, "[a]ccording to the broad terms of the Loan Agreement, [the plaintiff] has agreed to arbitrate any claims arising from 'the relationships which result from the agreement.'"  *Id.* at 382; *see also Blinco v. Green Tree Servicing, LLC*, 400 F.3d 1308 (11th Cir. 2005).  And the "loan servicer . . . is just such a 'relationship,'" particularly because "without the Loan Agreement, there would be no loan for [the defendant] to service."  *Sherer*, 548 F.3d at 382.  Accordingly, the plaintiff's claims, even against a non-signatory, fell within the contract's broad arbitration language and were arbitrable. Significantly, *Sherer* did not limit arbitration to contractual claims.  Rather, plaintiff's statutory claims under the Fair Debt Collection Practices Act and Fair Credit Reporting Act were also subject to arbitration because they too related to the loan agreement.  *Id.*; *see also Blinco*, 400 F.3d at 1310 (compelling arbitration of statutory claims against non-signatory).

Defendants here are in an identical position.  Plaintiffs agreed to arbitrate "any claim"—including claims based on "contract, tort, [and] statute"—related to the "purchase" of their vehicles or any "resulting" "relationship."  And their claims arise from the contract because, without signing the purchase and lease agreements, plaintiffs Andary, Feller, and McVey would not possess the vehicles upon which each of their claims is based.  All of their claims therefore fall within the plain language of their arbitration agreements.

Moreover, plaintiffs also claim that Defendants are liable for breach of contract.  Although plaintiffs fail to allege the elements of breach of contract for the reasons stated *infra* at 25-28, these claims arise from the very agreements containing the arbitration clauses.  Where, as here, plaintiffs' "claims [are] intimately founded in and intertwined with the underlying contract obligations," plaintiffs must arbitrate claims against non-signatories relating to that contract.  *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 201 (3d Cir. 2001).  This is because a "signatory to [an] agreement cannot . . . 'have it both ways': it cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory."  *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 528 (5th Cir. 2000) (emphasis omitted); *see Thompson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (collecting cases); *Griswold v. Coventry First LLC*, 762 F.3d 264, 272 (3d Cir. 2014) (same).

Consequently, if this Court concludes that it has jurisdiction, it must dismiss their claims and compel these plaintiffs to arbitrate.  *See Nationwide Ins. Co. of Columbus, Ohio v. Patterson*, 953 F.2d 44, 45-46 & n.1 (3d Cir. 1991) ("Dismissal of a declaratory judgment action because the dispute is covered by an arbitration provision is generally effected under Rule 12(b)(6).");

*Precision Funding Grp., LLC v. Nat'l Fidelity Mortg.*, 2013 WL 2404151, at *1, 8 (D.N.J. May 31, 2013) (compelling arbitration of tort claims where plaintiff agreed to arbitrate "any claim based on contract, tort, or statute").

## IV.   PLAINTIFFS' BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED

The existence of a valid contract is a required element of breach of contract claims.  *See Frederico*, 507 F.3d at 203; Appendix A.  This Court and others routinely dismiss claims where, as here, plaintiffs offer no ***facts*** to show that a valid contract exists between them and the defendant. *See Gaines v. United Parcel Serv., Inc.*, 2014 WL 1450113, at *9-10 (D.N.J. Apr. 14, 2014) (Linares, J.) (dismissing claim where plaintiff "fail[ed] to specify what rules, policies, or procedures (either written, oral, or otherwise) constitute the contract that was allegedly breached"); *see also, e.g.*, *Top v. Ocean Petroleum, LLC*, 2010 WL 3087385, at *3 (D.N.J. Aug. 3, 2010) ("Merely stating that the parties became contractually bound . . . is a conclusory statement and does not by itself establish that the parties had some contractual relationship."); *Reitz v. Nationstar Mortg., LLC*, 954 F. Supp. 2d 870, 884 (E.D. Mo. 2013) ("[v]ague references to unspecified 'agreements' are insufficient to state a claim for breach of contract").

Here, plaintiffs make the conclusory assertion that each plaintiff's purchase "constituted a contract [with] Mercedes," CAC ¶ 328, but, as this Court has recognized, that is plainly insufficient under Rule 8 to state a claim against MBUSA and/or Daimler AG because it impermissibly lumps the Defendants together.  *Faistl v. Energy Plus Holdings, LLC*, 2012 WL 3835815, at *7-8 (D.N.J. Sept. 4, 2012) (Linares, J.) (dismissing complaint under Rule 8 where plaintiff did "not allege—much less with sufficient factual support—which particular Defendant (or Defendants) breached" the alleged agreement); *see also, e.g.*, *Sheeran v. Blyth Shipholding S.A.*, 2015 WL 9048979, at *3

(D.N.J. Dec. 16, 2015) ("group pleading," or "lump[ing] Defendants together as a group and assert[ing] general common factual allegations against all of them" "does not satisfy Rule 8").

Even if the complaint specifically cited each plaintiff's sale or lease agreement with a dealership (or other seller or lessor), this would not suffice to allege formation of a valid contract giving rise to plaintiffs' breach of contract claims because Defendants did ***not*** sell or lease plaintiffs' vehicles and are not parties to those agreements.  Quite simply, Defendants did not make the promises in these contracts.  *See, e.g.,* CAC ¶ 24 (plaintiff Andary alleges she purchased her vehicle from "Walter's Automotive"); *see also Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 215 (S.D.N.Y. 1997) (it is "well established that a plaintiff in a breach of contract action 'may not assert a cause of action to recover damages for breach of contract against a party with whom it is not in privity'").  "It is fundamental contract law that one cannot be liable for a breach of contract unless one is a party to that contract."  *Fox Fuel, a Div. of Keroscene, Inc. v. Del. Cnty. Schools Joint Purchasing Bd.*, 856 F. Supp. 945, 953 (E.D. Pa. 1994); *see also Harte v. Ocwen Fin. Corp.*, 2014 WL 4677120, *5 (E.D.N.Y. Sept. 19, 2014) ("It is hornbook law that a nonsignatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract." (citing cases)).  Therefore, while non-signatories can enforce arbitration provisions in a contract to which the *plaintiff* agreed to be bound (as discussed above), plaintiffs cannot assert a breach of contract claim against a non-party who never assumed any obligations under the contract at issue.

Plaintiffs also fail to allege which specific provisions of *any* contract MBUSA or Daimler AG supposedly breached.  "It is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached."  *Northampton Rest. Grp., Inc. v. FirstMerit Bank, N.A.*, 492 F. App'x 518,

522 (6th Cir. 2012).  Under the laws of every state at issue in the complaint, "[f]ailure to allege the specific provisions of contracts breached is grounds for dismissal."  *Eprotec Pres., Inc. v. Engineered Materials, Inc.*, 2011 WL 867542, at *8 (D.N.J. Mar. 9, 2011); *see Wallert v. Atlan*, 141 F. Supp. 3d 258, 286 (S.D.N.Y. 2015) ("[T]he *Twombly-Iqbal* standard of federal pleading require[s] a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached.  Otherwise, the complaint must be dismissed."); *see also* Appendix A.

Here again, plaintiffs' allegations fall woefully short.  The complaint merely asserts, in conclusory fashion, that MBUSA and Daimler AG breached some unspecified contract by selling "defective" vehicles and failing to disclose that the vehicles were "non-EPA-compliant." *E.g.*, CAC ¶ 328.  But the complaint contains ***no*** allegations about the provisions of the alleged contracts that this conduct allegedly breached.  This "[f]ailure to allege the specific provisions of contracts breached" is, on its own, "grounds for dismissal."  *Eprotec Preservation*, 2011 WL 867542, at *8; *see also Slack v. Suburban Propane Partners, L.P.*, 2010 WL 5392845, at *6 (D.N.J. Dec. 22, 2010) (Linares, J.) ("[T]he Court agrees with Defendants that Plaintiffs' failure to identify *which* contractual provision allegedly violated a clearly established right of Plaintiffs (or responsibility of Suburban), renders this claim deficient as a matter of law."); *Pereira v. Azevedo*, 2013 WL 1655988, at *8 (D.N.J. Apr. 17, 2013) (Linares, J.) (dismissing claim for failure to identify the contract provision allegedly breached).[8]

---

[8]    Plaintiffs' failure to allege the existence of a contract between any of them and Defendants also is fatal to their Idaho Consumer Protection Act and the Kentucky Consumer Protection Act claims.  *See, e.g.*, *Moto Tech, LLC v. KTM N. Am., Inc.*, 2013 WL 6446239, at *3 (D. Idaho Dec. 9, 2013) ("[A] claim under the ICPA must be based upon a contract."); *Campbell v. Capital One N.A.*, 2012 WL 4959611, at *2 (W.D. Ky. Oct. 16, 2012) (KCPA claims require privity of contract).

## V.   PLAINTIFFS' FRAUDULENT CONCEALMENT CLAIMS SHOULD BE DISMISSED

Plaintiffs also fail to state a claim for state-law fraudulent concealment under the common law applicable to each of the thirty state subclasses (including New Jersey common law, which plaintiffs also seek to apply to the nationwide class, *see* CAC at 94).  Fraudulent concealment claims must satisfy the stringent Rule 9(b) pleading requirement.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *In re Elk Cross Timbers Decking Mktg., Sales Practices & Prods. Liability Litig.*, 2015 WL 6467730, at *25 (D.N.J. Oct. 26, 2015) (Linares, J.) (applying Rule 9(b) to fraudulent concealment claims).  Plaintiffs' claims fail to meet this standard because they fail to differentiate between Defendants, and fail to allege even the most basic "who, what, when, where and how" of any alleged fraud.  *In re Suprema Litig.*, 438 F.3d at 276.

### A.   Plaintiffs' Failure to Distinguish Between Defendants Is Fatal to Their Fraudulent Concealment Claims

Throughout their complaint, plaintiffs lump Daimler AG and MBUSA together as "Mercedes," never differentiating between the two.  This conflation is impermissible under Rule 9(b):  "When multiple defendants are involved, the complaint must be plead with particularity by specifying the allegations of fraud applying to ***each*** defendant."  *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 244 (3d Cir. 2005) (emphasis added); *see also Destifino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (affirming dismissal of "shotgun pleading" where plaintiffs made "'everyone did everything' allegations").  Complaints that instead "vaguely attribute[ ] the alleged fraudulent statements to 'defendants'" must be dismissed.  *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999); *Donachy v. Intrawest U.S. Holdings, Inc.*, 2012 WL 869007, at *3 (D.N.J. Mar. 14, 2012) (failure to differentiate between defendants was a "pervasive defect" and "fatal" to plaintiff's consumer fraud claims).

28

None of plaintiffs' fraud-related allegations distinguish between MBUSA and Daimler

AG. Instead, plaintiffs attribute all of the alleged actions, misrepresentations, and omissions to

"Mercedes" generally, without specifying who between MBUSA and Daimler AG is responsible

for each act. *E.g.*, CAC ¶ 101 (describing "Mercedes' advertisements, promotional campaigns,

and public statements"). Indeed, the only factual allegations specific to Daimler AG describe its

corporate organization and practices. *See, e.g., id.* ¶¶ 68, 71, 72-77 (describing Daimler AG's

business practices and ownership of MBUSA). The only fraud-related allegation specific to

Daimler AG—that it "manipulated the emission systems," and knowingly "exported these

vehicles" to the United States—is conclusory, not factual, and does not charge Daimler AG with

making any misrepresentation or fraudulent omission. *Id.* ¶ 69. Likewise, there are no

misrepresentations specifically attributed to MBUSA. Because plaintiffs' allegations fail to

inform either MBUSA or Daimler AG of its alleged role in the predicate fraud, plaintiffs'

fraudulent concealment claims should be dismissed.

### B.      Plaintiffs Fail to State a Claim for Fraudulent Concealment

The elements of a fraudulent concealment claim vary from state to state—making the

application of laws from 30 states a significant hurdle to class certification. Despite their

differences, however, there are at least two indispensable elements to each state's fraudulent

concealment law that plaintiffs have failed to plead: reliance and a duty to disclose. *See, e.g.*,

*Stevenson v. Mazda Motor of Am., Inc.*, 2015 WL 3487756, at *8-9 (D.N.J. June 2, 2015) (listing

elements of fraudulent concealment in New Jersey); *see also* Appendix B.[9] Thus, while

---

[9]     The lone exception to the commonality of these elements is Arizona, which does not
require a plaintiff to plead a duty to disclose, although plaintiffs must still allege reliance with
sufficient particularity, which they have failed to do. *Lerner v. DMB Realty, LLC*, 322 P.3d 909,
916 (Ariz. Ct. App. 2014). Additionally, a fraudulent concealment claim brought under
Connecticut law must be dismissed on the separate ground that no such cause of action

plaintiffs have also failed to allege other elements of their fraudulent concealment claims under the particular state laws at issue, this Court can and should dismiss all of plaintiffs' fraudulent concealment claims for failure to plead with particularity facts showing that either of these two necessary elements are met. *Frederico*, 507 F.3d at 200-01; *In re Suprema Litig.*, 438 F.3d at 270.

### 1.      Plaintiffs Fail to Plead Specific Misrepresentations That Plaintiffs Saw or Relied On

Reliance is an element of every fraudulent concealment claim brought by plaintiffs. *See* Appendix B. Yet not one of the forty-six plaintiffs has identified any specific representation they actually saw or relied upon when deciding to purchase or lease a putative class vehicle.

Each plaintiff makes the same generic allegation that he or she "recalls" some unidentified "advertisements and representations tout[ing] the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system," but not disclosing "high emissions compared to gasoline vehicles" or that the emissions systems turn off under certain circumstances. *See, e.g.*, CAC ¶¶ 20-64. These allegations lack even basic details: *what* "advertisements and representations" they saw, *when* (before or after purchase) they saw them, *where* (at the dealership, on television, online, from a private third-party, etc.) they saw them, and *who* (MBUSA, Daimler AG, independent dealership, private third-party, etc.) was speaking or communicated the alleged misrepresentation. *See Stevenson*, 2015 WL 3487756, at *7-9 (holding plaintiff's failure to "allege[ ] when *he* viewed the statements on the Mazda website, or if such statements were posted at the time *he* purchased his vehicle" could not satisfy "reliance" element

---

exists. *Traylor v. Awwa*, 899 F. Supp. 2d 216, 224 (D. Conn. 2012) ("[U]nder Connecticut law, there is no cause of action for fraud by concealment.").

to state a claim for fraudulent concealment (emphasis added)).  This Court has rejected such "fill-in the-blank pleading allegations."  *In re Elk Cross Timbers Litig.*, 2015 WL 6467730, at *26.

Moreover, plaintiffs generally reference several categories of representations Defendants purportedly made about unspecified cars that are allegedly false or misleading without even identifying which specific vehicles they apply to.  *See, e.g.*, CAC ¶¶ 98-100 ("World's Cleanest Diesel Engine"); *id.* ¶ 101 ("low-emitting"); *id.* ¶¶ 102-103 ("environmentally friendly"); *id.* ¶ 104 ("meeting and exceeding compliance with U.S. emissions standards in all 50 states").[10]  Plaintiffs "do not say they ever saw, read, or heard these particular statements."  *Belville v. Ford Motor Co.*, 13 F. Supp. 3d 528, 546 (S.D. W. Va. 2014) (holding it is a "fatal flaw" where plaintiffs cannot "specifically identify 'the representations, advertisements, and promotional materials that omitted the reference to the [defect], [that] mislead him, and upon which he relied'").  This failure to plead reliance with specificity is fatal to plaintiffs' fraudulent concealment claims.

## 2.    Plaintiffs Fail to Plead Facts Giving Rise to Any Duty to Disclose

To the extent plaintiffs base their fraudulent concealment claims on Defendants' alleged omissions, *e.g.*, CAC ¶ 197, their claims fail because they have not alleged that MBUSA and Daimler AG had a duty to disclose the allegedly omitted information—that the NOx emissions system purportedly turns off during normal driving conditions.  Appendix B.[11]  A duty to

---

[10]  Four of these alleged representations do correspond to a specific vehicle but they are nevertheless irrelevant because no plaintiff has alleged seeing any of these representations, and two of them correspond to vehicles that no named plaintiff owns.  *See* CAC ¶ 101 n.9 (quote from "2011 GL Class brochure"); *id.* ¶¶ 101 n.11, 103 n.21 (quotes from "2016 Sprinter Van Brochure," which no named Plaintiff owns); *id.* ¶ 101 n.12 (quote from "2011 M-Class Brochure," which no named Plaintiff owns).

[11]  The complaint contains no factual allegations regarding "pollutants" or greenhouse gases other than NOx.  Instead, plaintiffs rely only on vague and conclusory allegations regarding these other "pollutants."  *See, e.g.*, CAC ¶ 140; *id.* ¶ 86 (alleging that "Mercedes" failed to disclose that its diesel vehicles "emit more pollutants than do gasoline powered vehicles, and emit more pollutants than permitted under federal and state laws").  Thus, plaintiffs cannot claim that

disclose between Defendants and plaintiffs could have arisen only if (1) undisclosed material facts render Defendants' affirmative representations misleading; or (2) Defendants were uniquely aware of material facts that plaintiffs could not reasonably learn.  Plaintiffs do not allege facts supporting either theory.  *See, e.g.*, *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 297 (D.N.J. 2009) ("Importantly, 'New Jersey courts will not imply a duty to disclose' in a case alleging fraudulent concealment.").

Here, plaintiffs have not pled facts showing that any omission rendered affirmative representations regarding the diesel vehicles misleading.  Plaintiffs fail to specify with particularity what information constitutes a "defect" in any advertisements.  *See, e.g.*, *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 986 (N.D. Cal. 2009) (plaintiff failed to allege a duty to disclose when he "fail[ed] to describe with specificity representations made by [defendant] with respect to the [alleged defect] that would give rise to a duty to disclose, how he relied on such partial disclosures, or the manner in which such representations or omissions were false and misleading").

Plaintiffs similarly fail to allege facts supporting their conclusion that "Mercedes had exclusive knowledge" of material facts.  CAC ¶ 197.  Indeed, plaintiffs do not allege any ***facts*** plausibly demonstrating that either Defendant ever had "exclusive knowledge" that Mercedes-Benz vehicles produce elevated levels of NOx or other emissions under certain driving conditions, much less that either Defendant had such knowledge at the time they allegedly made the statements or omissions that plaintiffs claim were misleading.  *See Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1343 (S.D. Fla. 2013) (dismissing fraudulent concealment claim when plaintiffs failed to "allege the specifics of Honda's purported scheme, the means

---

BlueTEC vehicles were misrepresented because they impermissibly produce "more pollutants" or greenhouse gases; this theory fails given plaintiffs' inability to plead any relevant facts with sufficient particularity.

Honda used to perpetrate the scheme, or specific facts indicating the existence of the alleged scheme").

Plaintiffs also fail to demonstrate the materiality of the allegedly omitted facts. Information is material when a "reasonable consumer" would have behaved differently had the omitted information been disclosed. *See, e.g.*, *Sanders*, 672 F. Supp. 2d at 985. Here, while plaintiffs, piggy-backing on the outrage inspired by Volkswagen, assert that they would have *wanted* to know every aspect of the emissions systems, their subjective expectations do not render the omitted facts material. *Cf. In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993) ("But a corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact."). Plaintiffs' generalized, vague, and conclusory allegations regarding Defendants' alleged omissions therefore do not meet the heightened pleading standards of Rule 9(b). *In re Suprema Litig.*, 438 F.3d at 270.

### C.   Economic Loss Bars Fraud-Based Claims

Plaintiffs' fraudulent concealment claims under Florida, Missouri, New Jersey, New York, North Carolina, Pennsylvania, and Virginia law are independently barred by the economic loss doctrine, which "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671, 678-79, 681 (3d Cir. 2002) (affirming district court's dismissal of Pennsylvania fraudulent concealment claims based on the economic loss doctrine, where plaintiffs sought only monetary damages arising out of alleged fraudulent misconduct concerning the quality of defendant's product); *see also Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 625-26 (M.D.N.C. 2006) (recognizing that "tort concepts of safety and risk . . . do[ ] not apply where a manufacturer's products simply fail to 'meet the business needs of his customers'").

In cases such as this one, where the only alleged injury "is to the product itself and the product has not met the customer's expectations," "express and implied warranties under contract law are best suited to compensate for a loss in product value," rather than a tort claim such as fraudulent concealment. *Werwinski*, 286 F.3d at 671; *see* Appendix B. This is so even where there is no contract between the parties, as "[p]rivity of contract is not an element of the economic loss doctrine." *Bocre Leasing Corp. v. Gen. Motors Corp.*, 840 F. Supp. 231, 233-34 (E.D.N.Y. 1994) (citation omitted); *Murphy v. Proctor & Gamble Co.*, 695 F. Supp. 2d 600, 602, 606-07 (E.D. Mich. 2010). Here, plaintiffs' fraudulent concealment claims arise out of an exclusively economic injury that results from a purported product defect. *See, e.g.*, CAC ¶¶ 144-45, 233-34. Plaintiffs have not "explain[ed] why contract remedies are inadequate to provide redress when the alleged misrepresentation relates to the quality or characteristics of the goods sold." *Werwinski*, 286 F.3d at 679-80. Accordingly, plaintiffs' Florida, Missouri, New Jersey, New York, North Carolina, Pennsylvania, and Virginia fraudulent concealment claims are barred by the economic loss doctrine.

This Court and others have also applied the economic loss doctrine to bar *statutory claims* premised on fraudulent conduct when plaintiffs allege only monetary loss. *Werwinski*, 286 F.3d at 681 (affirming district court decision to "apply[ ] the [economic loss] doctrine to appellants' UTPCPL claims"); *In re Elk*, 2015 WL 6467730, at *20 (Linares, J.) (dismissing state statutory claims pursuant to economic loss doctrine for "failure to plead anything other than economic loss"). Here, plaintiffs' statutory claims (discussed further *infra* at 35-40) seek redress for monetary damages that arise out of alleged fraudulent misconduct concerning the quality or characteristics of a product (and which plaintiffs conclusorily allege arise from a contract between plaintiffs and Defendants). *See, e.g.*, CAC ¶¶ 1123, 857, 1293, 1038. Accordingly,

plaintiffs' Pennsylvania UTPCPL, Missouri MMPA, Virginia VCPA, and North Carolina UDTPA claims should also be dismissed pursuant to the economic loss doctrine adopted by those states.  *See* Appendix C.

## VI.   PLAINTIFFS' STATE STATUTORY CLAIMS SHOULD BE DISMISSED

Plaintiffs' third and final category of claims alleges violations of various state consumer protection statutes.  These too are subject to the heightened pleading requirements of Rule 9(b) and should be dismissed both because plaintiffs have failed to distinguish between MBUSA and Daimler AG, and because plaintiffs failed to state a claim by not pleading every element with specificity.  *In re Suprema Litig.*, 438 F.3d at 270.[12]  In addition, particular statutory claims advanced by some plaintiffs should be dismissed on statute-specific grounds.

### A.       Plaintiffs Fail to State a Claim for Violations of State Statutes

As an initial matter, as with their fraudulent concealment claims, all of plaintiffs' claims for violations of state consumer protection statutes should be dismissed because they fail to meaningfully differentiate between Defendants.  *See Naporano Iron*, 79 F. Supp. 2d at 512; *Donachy*, 2012 WL 869007, at *3; *see also supra* at 28-29.

In addition, plaintiffs' statutory claims should be dismissed because plaintiffs fail to allege the indispensable elements of reliance, falsity, or damages with sufficient particularity to meet their burden under Rule 9(b).

---

[12]   The Second Circuit has declined to hold plaintiffs to the strictures of Rule 9(b) when asserting fraud claims under New York's General Business Law Section 349, *see Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 5121 (2d Cir. 2005), but the Third Circuit has time and again held to the procedural rule that when claims "sound in fraud," Rule 9(b) governs.  *In re Suprema Litig.*, 438 F.3d at 270; *see also Gold v. Lumber Liquidators, Inc.*, 2015 WL 7888906, at *12 (N.D. Cal. Nov. 30, 2015) (applying Rule 9(b) to fraud claims under New York's General Business Law because it was required to apply Ninth Circuit, not Second Circuit law).  Because plaintiffs' New York statutory claims sound in fraud, they must conform with Rule 9(b).

*First*, reliance (or a "causal nexus" between the alleged unlawful conduct and any alleged injury) is an element of every state consumer protection statute that plaintiffs allege Defendants violated, just as it was for each claim of fraudulent concealment. *See, e.g.*, *Fleisher v. Fiber Composites, LLC*, 2012 WL 5381381, at *10 (E.D. Pa. Nov. 2, 2012) ("Plaintiffs must [ ] establish a causal connection between the defendants' deceptive act and the plaintiffs' injury" to state a claim under Massachusetts, New York, and New Jersey consumer protection statutes); Appendix C.  For the same reasons discussed *supra* at 30-31, plaintiffs' "scatter-shot pleading[s]" that only "list[ ] examples of Defendants' marketing statements without identifying which statement(s), if any, Plaintiffs were exposed to," *In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 433 (D.N.J. 2015), are "insufficient" to allege reliance under Rule 9(b).  *Gray v. Bayer Corp.*, 2009 WL 1617930, at *3 (D.N.J. June 9, 2009) (holding plaintiffs must "*specify* what misrepresentations [they] relied upon or when [they] [were] exposed to those misrepresentations" (emphasis added)); *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 539 (D.N.J. 2011) (same).

*Second*, plaintiffs fail to specifically allege facts showing that Defendants made a "false, deceptive, or misleading" statement, as required by every relevant consumer protection statute.  *In re GNC Corp.*, 789 F.3d 505, 513 & n.6 (4th Cir. 2015); *see also RBC Bank (USA) v. Petrozzini*, 2012 WL 1965370, at *3 (D.N.J. May 31, 2012) (stating that a plaintiff must provide a "specific explanation as to why" a defendant's representations "were false"); Appendix C.  As explained throughout this brief, plaintiffs do not allege any facts from which the Court may infer that their vehicles are anything other than what was represented, and therefore plaintiffs do not allege any facts from which the Court may infer that any of Defendants' alleged representations are objectively false.  At best plaintiffs have alleged they are subjectively unhappy, but "[f]ailure to

meet Plaintiffs' [ ] expectations . . . does not render [Defendants'] representations misleading." *In re iPhone 4s Consumer Litig.*, 637 F. App'x 414, 415-16 (9th Cir. 2016).

*Third*, plaintiffs' statutory claims should be dismissed because they fail to allege with the specificity required by Rule 9(b) that they have been injured by any of Defendants' alleged misrepresentations.  In particular, the consumer protection statutes of New Jersey, California, Florida, Maryland, and Illinois require plaintiffs to go beyond alleging an injury *simpliciter* and to allege that they have incurred an *ascertainable* loss.  *See, e.g.*, *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 282 (D.N.J. 2011) ("Under the [NJCFA], Plaintiff is required to plead specific facts setting forth and defining the ascertainable loss suffered."); Appendix C.  Under these statutes, generic, vague, and conclusory allegations of injury are insufficient to state a plausible claim for relief.  For example, to state a claim under the New Jersey Consumer Fraud Act, plaintiffs must "specify the price paid for the product and the price of comparable products." *In re Riddell Litig.*, 77 F. Supp. 3d at 439.  But plaintiffs here allege no facts regarding the price they paid for their respective vehicles, the price of comparable diesel vehicles, or even the current price of plaintiffs' purportedly devalued vehicles.  *See In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, 2009 WL 2940081, at *13 (D.N.J. Sept. 11, 2009) (rejecting a complaint on Rule 9(b) grounds based on plaintiffs' failure to articulate the quantitative amount of any damage).  "[A]bsent any specific information concerning the price of the [p]roducts or the price of any comparable products, Plaintiff's allegations concerning the ascertainable loss are nothing more than unsupported conclusory statements that are insufficient to withstand a motion to dismiss." *Lieberson*, 865 F. Supp. 2d at 541-42; *Zambrano v. CarMax Auto Superstores, LLC*, 2014 WL 228435, at *6-7 (S.D. Cal. Jan. 21, 2014).

### B.      Certain Statutory Claims Are Independently Barred

Even if plaintiffs had sufficiently alleged each element of their statutory consumer

protection claims—which, as explained above, they did not—certain claims should nevertheless

be dismissed due to (1) statutes of limitations or repose, and (2) plaintiffs' failure to comply with

pre-suit notice requirements.

#### 1.    Statutes of Limitations or Repose Bar Plaintiffs' Alabama, Florida, and Michigan Statutory Claims

Three plaintiffs' statutory claims should be dismissed as time-barred.  Jonathan Mose's

Alabama Deceptive Trade Practices Act claim is barred by the statute of repose because it was

brought "more than four years from the date of the transaction giving rise to the cause of action."

Ala. Code § 8-19-14.[13]  Dedrick Watkins' Florida Unfair and Deceptive Trade Practices Act

claim and Brenda O'Neal's Michigan Consumer Protection Act claim are barred by these Acts'

four- and six-year statutes of limitations, respectively, which began to run on the date of the

transaction, not the date of discovery, and cannot be tolled.  Fla. Stat. § 95.11(3)(f) (four years);

Mich. Comp. Laws § 445.911 (six years).

Because these plaintiffs assert their claims against Daimler AG and MBUSA, who,

respectively, manufacture and distribute vehicles but do not sell them to retail customers, the

"date of the [relevant] transaction" is the date their vehicles were first used by *any* consumer for

their intended purpose.  *See Collins v. Davol, Inc.*, 56 F. Supp. 3d 1222, 1228 (N.D. Ala. 2014).

Each of these plaintiffs' vehicles was originally purchased outside of the applicable statute of

limitations or statute of repose.  *See* CAC ¶ 21 (Mose purchased a used 2007 model year

---

[13]     In the event that the Court declines to dismiss Mose's Alabama Deceptive Trade Practices Act claim, it should dismiss all of his other claims, because he waived his right to bring other claims when he chose to assert an ADTPA claim.  *See Holmes v. Behr Process Corp.*, 2015 WL 7252662, at *2 (N.D. Ala. Nov. 17, 2015).

vehicle); *id*. ¶ 41 (O'Neal purchased a used 2009 model year vehicle); *id*. ¶ 31 (Watkins

purchased a used vehicle in 2013, showing the vehicle was originally sold pre-2013).  The date

the plaintiffs themselves purchased the vehicles is irrelevant, because reselling a product on the

secondary market does not reset or pause the limitations period.  *Gomez v. Arkema, Inc.*, 2014

WL 98319, at *7 (N.D. Ill. Mar. 12, 2014) ("[S]uch a requirement would create a situation where

a product could oscillate between protected and non-protected status under the statute of

repose.").  Any alleged fraud resulting in delayed discovery of their claims is also irrelevant, as

these states do not recognize fraudulent tolling of their limitations periods.  *See, e.g.*, *Collins v.

Davol, Inc.* 56 F. Supp. 3d 1222, 1228 (N.D. Ala. 2014) (statute of repose extinguished ADTPA

claim notwithstanding alleged fraud delaying discovery); *McKissic v. Country Coach, Inc.*, 2008

WL 2782678, at *8 (M.D. Fla. July 16, 2008) ("[D]elayed discovery rule does not apply to the

FDUPTA.").  Thus, these plaintiffs' claims are time-barred and should be dismissed.

### 2. Plaintiffs Failed to Provide Daimler AG with Required Pre-Suit Notice

Many plaintiffs' state-law statutory claims should be dismissed as to Daimler AG

because these plaintiffs did not provide Daimler AG with the requisite statutory notice.  *See*

Appendix C.  As plaintiffs acknowledge in the complaint, to assert a claim under various state

consumer protection laws, they must first serve each defendant with a pre-suit notice or demand.

*See*, *e.g.*, CAC ¶ 314 ("Plaintiffs and the Subclass have provided Mercedes with notice of its

violations of the CLRA pursuant to Cal. Civ. Code § 1782(a).").  The notices generally must

include a detailed explanation of the claim's basis, the purpose of which is to allow defendants

an opportunity to evaluate the merits of a complaint and potentially to offer compensation before

any lawsuit.  *See Herron v. Best Buy Stores, L.P.*, 2014 WL 465906, at *4 (E.D. Cal. Feb. 4,

2014).  Here, it is undisputed that plaintiffs failed to serve ***any*** notice on Daimler AG—

underscoring their complete failure to distinguish between the two Defendants.  Any demand

letter sent to MBUSA is insufficient to notice Daimler AG because a plaintiff suing multiple

defendants under state consumer protection statutes must serve ***each*** defendant individually.

*See*, *e.g.*, *Cruz v. Chang*, 400 F. Supp. 2d 906, 910 n.4 (W.D. Tex. 2005) ("[S]ufficiency of

notice is assessed as to each defendant in a multiparty case."); *Herron*, 2014 WL 465906, at *4

(same).  Thus, these statutory claims against Daimler AG should be dismissed.

## CONCLUSION

Because the Consolidated Amended Complaint suffers from fundamental and incurable

deficiencies, all claims against Daimler AG and Mercedes-Benz USA, LLC should be dismissed

with prejudice and, if the Court determines it has jurisdiction, plaintiffs Andary, Feller, and

McVey should be ordered to arbitrate their claims.

Dated:  July 8, 2016                                    Respectfully Submitted,

                                                        GIBSON, DUNN & CRUTCHER LLP

                                                        By:  s/      Lucas C. Townsend
                                                                    Lucas C. Townsend

Matthew J. Kemner                          Daniel W. Nelson
  *admitted pro hac vice*                    *admitted pro hac vice*
Troy M. Yoshino                            Geoffrey M. Sigler
  *admitted pro hac vice*                    *admitted pro hac vice*
Eric J. Knapp                              Lucas C. Townsend
  *admitted pro hac vice*                  Chantale Fiebig
Squire Patton Boggs (US) LLP                 *admitted  pro hac vice*
44 Montgomery Street, Suite 400            Gibson, Dunn & Crutcher LLP
San Francisco, California 94104            1050 Connecticut Avenue, N.W.
Tel: (415) 743-2441                        Washington, DC 20036-5306
Fax: (415) 989-0932                        Tel: (202) 887-3731
                                           Fax: (202) 530-4254

*Attorneys for Defendants Mercedes-Benz USA, LLC and Daimler AG*