# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE MERCEDES-BENZ EMISSIONS LITIGATION | Civil Action No.  16-881(JLL)(JAD) |

## PLAINITFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO COMPEL ARBITRATION

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey  07068
Tel:  (973) 994-1700

Steve W. Berman
Sean R. Matt
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, Washington  98101
Tel: (206) 623-7292

*Interim Lead Counsel for Plaintiffs and the Proposed Classes*
(additional counsel on signature page)

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................1

II.     FACTUAL BACKGROUND...............................................................................4

III.    GENERAL LEGAL STANDARDS.....................................................................9

IV.     PLAINTIFFS HAVE ARTICLE III STANDING.............................................10

        A.      Plaintiffs Plausibly Allege Injury in Fact..............................................10

        B.      Defendants' No-Injury Cases Are Inapposite ........................................13

        C.      Plaintiffs Plausibly Allege That Mercedes Misrepresented Their Vehicles
                and that Their Injury Is Fairly Traceable to Mercedes' Conduct...........16

V.      THE CLEAN AIR ACT DOES NOT PREEMPT PLAINTIFFS' CLAIMS ...................19

        A.      Plaintiffs' Claims Are Not Expressly Preempted ..................................19

                1.      The narrow scope of the preemption clause does not capture
                        Plaintiffs' claims. ...................................................................19

                2.      Mercedes' preemption cases do not apply. .................................22

        B.      Plaintiffs' Claims Are Not Impliedly Preempted...................................23

VI.     THE PRIMARY JURISDICTION DOCTRINE DOES NOT BAR PLAINTIFFS'
        CLAIMS .........................................................................................................25

        A.      The Court is Fully Competent to Address the Issues in this Case ........26

        B.      The Issue is Not Particularly Within the EPA's Discretion...................28

        C.      There is No Danger of Inconsistent Rulings...........................................29

        D.      Plaintiffs Have Not Applied to the EPA for Relief.................................30

VII.    MERCEDES CANNOT COMPEL ARBITRATION BASED ON AGREEMENTS
        TO WHICH IT IS NOT A PARTY ....................................................................31

        A.      Mercedes Cannot Enforce Arbitration Agreements to Which It Is Not A
                Party .........................................................................................................31

        B.      Equitable Estoppel Does Not Apply .......................................................34

VIII.   PLAINTIFFS PROPERLY PLEAD FRAUDULENT CONCEALMENT ......36

        A.      Plaintiffs Adequately Put Mercedes On Notice of the Precise Misconduct
                Charged ....................................................................................................36

B.     Plaintiffs' Fraudulent Concealment Claim is Plausibly Pled...............................39

     1.     Plaintiffs need not plead each of the pervasive affirmative misrepresentations that Plaintiffs saw and relied on.................................39

     2.     Mercedes necessarily owed a duty to disclose based on omitted material factual information that it exclusively knew and concealed........41

          a.     Exclusive knowledge. ...................................................................41

          b.     Concealment. ................................................................................42

C.     The Economic Loss Doctrine Does Not Apply to Plaintiffs' Claims...................43

IX.     PLAINTIFFS PROPERLY PLEAD UNFAIR AND DECEPTIVE TRADE PRACTICE ACT CLAIMS ......................................................................................44

A.     Plaintiffs' Consumer Protection Claims Are Pled With Sufficient Specificity ........................................................................................................44

B.     Mercedes' Fraudulent Concealment Tolls Statutes of Limitation ........................47

C.     Pre-Suit Notice Was Timely Served ....................................................................49

X.     CONCLUSION........................................................................................................50

10585-11  887591 V1

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Altria Grp., Inc. v. Good*,
555 U.S. 70 (2008)........................................................................21

*Arthur Andersen LLP v. Carlisle*,
556 U.S. 624 (2009)......................................................................31

*Ass'n of Taxicab Operators USA v. City of Dallas*,
720 F.3d 534 (5th Cir. 2013) ....................................................20, 24

*Ass'n of Taxicab Operators, USA v. City of Dallas*,
866 F. Supp. 2d 595 (N.D. Tex. 2012), *aff'd*, 720 F.3d 534 (5th Cir. 2013)..........................24

*In re Auto. Parts Antitrust Litig.*,
2015 WL 1849138 (E.D. Mich. Apr. 22, 2015)........................................48

*Baldwin v. Cavett*,
502 F. App'x 350 (5th Cir. 2012) ........................................................33

*Barakezyan v. BMW of N. Am., LLC*,
2016 U.S. Dist. LEXIS 68839 (C.D. Cal. Apr. 7, 2016) ........................................14

*Bates v. Dow Agrosciences, LLC*,
544 U.S. 431 (2005)......................................................................19

*Baykeeper v. NL Indus., Inc.*,
660 F.3d 686 (3d Cir. 2011)................................................... *passim*

*Bellman v. i3Carbon, LLC*,
563 F. App'x 608 (10th Cir. 2014) ........................................................35

*In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*,
2006 U.S. Dist. LEXIS 95500 (N.D. Cal. Aug. 16, 2006)........................................27

*BK Trucking Co. v. PACCAR, Inc.*,
2016 U.S. Dist. LEXIS 85149 (D.N.J. June 30, 2016) ........................................38

*Blinco v. Green Tree Servicing, LLC*,
400 F.3d 1308 (11th Cir. 2005) ........................................................32

*Byrnes v. Greystone Park Psychiatric Hosp.*,
2016 U.S. Dist. LEXIS 37661 (D.N.J Mar. 22, 2016)......................................9, 10

*Carriuolo v. GM Co.*,
   2016 U.S. App. LEXIS 8962 (11th Cir. May 17, 2016) ....................................................12, 19

*In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*,
   2015 U.S. Dist. LEXIS 98784 (D.N.J. July 29, 2015) .................................................... *passim*

*Chan v. Daimler AG*,
   2012 U.S. Dist. LEXIS 161716 (D.N.J. Nov. 9, 2012) ....................................................14, 15

*Cipollone v. Liggett Grp.*,
   505 U.S. 504 (1992) ........................................................................................................19, 20

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013) ...........................................................................................................16

*Clark v. Actavis Grp.*,
   567 F. Supp. 2d 711 (D.N.J. 2008) .........................................................................................29

*Coghlan v. Wellcraft Marine Corp.*,
   240 F.3d 449 (5th Cir. 2001) ............................................................................................12, 13

*Corson v. Toyota Motor Sales, U.S.A., Inc.*,
   2013 U.S. Dist. LEXIS 189262 (C.D. Cal. July 18, 2013) .....................................................36

*Costa v. Kerzner Int'l Resorts, Inc.*,
   2011 WL 2519244 (S.D. Fla. June 23, 2011) .........................................................................44

*Cruz v. Chang*,
   400 F. Supp. 2d 906 (W.D. Tex. 2005)....................................................................................49

*Danvers Motor Co., Inc. v. Ford Motor Co.*,
   432 F.3d 286 (3d Cir. 2005).....................................................................................................12

*Demmick v. Cellco P'ship*,
   2011 U.S. Dist. LEXIS 34381 (D.N.J. Mar. 29, 2011)......................................................28, 29

*Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*,
   2015 U.S. Dist. LEXIS 116427 (N.D. Cal. Sept. 1, 2015) .....................................................42

*Dillon v. BMO Harris Bank, N.A.*,
   2016 WL 1175193 (M.D.N.C. Mar. 23, 2016) ........................................................................32

*Doll v. Ford Motor Co.*,
   814 F. Supp. 2d 526 (D. Md. 2011) .........................................................................................36

*Dzielak v. Whirlpool Corp.*,
   26 F. Supp. 3d 304 (D.N.J. 2014) ...........................................................................................47

- 4 -

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*,
   269 F.3d 187 (3d Cir. 2001)..................................................................................34, 35

*Ehrlich v. BMW of N. Am. LLC*,
   801 F. Supp. 2d 908 (C.D. Cal. 2010) ...............................................................42, 43

*In re Elk Cross Timbers Decking Mktg., Sales Practices & Prods. Liab. Litig.*,
   2015 U.S. Dist. LEXIS 144790 (D.N.J. Oct. 26, 2015)......................................39, 43

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
   541 U.S. 246 (2004)....................................................................................................20

*Falk v. GMC*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007) ..............................................................36, 37

*Feldman v. Mercedes-Benz USA, LLC*,
   2012 U.S. Dist. LEXIS 178924 (D.N.J. Dec. 18, 2012) .............................................36

*Finkleman v. NFL*,
   810 F.3d 187 (3d Cir. 2016)................................................................................10, 16

*Fleisher v. Fiber Composites, LLC*,
   2012 U.S. Dist. LEXIS 157343 (E.D. Pa. Nov. 2, 2012)....................................45, 46

*Florida Lime & Avocado Growers, Inc. v. Paul*,
   373 U.S. 132 (1963)....................................................................................................24

*In re Ford Fusion & C-Max Fuel Econ. Litig.*,
   2015 U.S. Dist. LEXIS 155383 (S.D.N.Y. Nov. 12, 2015)...............................20, 26

*Francis E. Parker Mem. Home, Inc. v. Georgia-Pacific LLC*,
   945 F. Supp. 2d 543 (D.N.J. 2013) ............................................................................47

*In re Gerber Probiotic Sales Practices Litig.*,
   2013 U.S. Dist. LEXIS 121192 (D.N.J. Aug 22, 2013).........................11, 15, 18, 47

*Gladstone Realtors v. Bellwood*,
   441 U.S. 91 (1979)......................................................................................................11

*Global NAPS, Inc. v. Bell Atl.-N.J., Inc.*,
   287 F. Supp. 2d 532 (D.N.J. 2003) ............................................................................29

*Goldman v. KPMG LLP*,
   173 Cal. App. 4th 209 (2009) ....................................................................................36

*Grigson v. Creative Artists Agency, LLC*,
   210 F.3d 524 (5th Cir. 2000) ...............................................................................34, 35

*Griswold v. Coventry First LLC,*
762 F.3d 264 (3d Cir. 2014)..................................................................31, 34

*Hartz Mountain Indus., Inc. v. Polo,*
2005 U.S. Dist. LEXIS 25411 (D.N.J. Oct. 26, 2005)............................16

*Hedges v. United States,*
404 F.3d 744 (3d Cir. 2005)....................................................................44

*Hennigan v. General Elec. Co.,*
2010 WL 3905770 (E.D. Mich. Sept. 29, 2010)......................................49

*Herron v. Best Buy Stores, L.P.,*
2014 WL 465906 (E.D. Cal. Feb. 4, 2014)........................................49, 50

*Hess v. Chase Manhattan Bank USA, N.A.,*
220 S.W.3d 758 (Mo. 2007) ...................................................................45

*Hines v. Davidowitz,*
312 U.S. 52 (1941)..................................................................................24

*Iowa Network Servs., Inc. v. AT&T Corp.,*
2015 U.S. Dist. LEXIS 139968 (D.N.J. Oct. 14, 2015)..........................29

*Jackson v. GMC.,*
770 F. Supp. 2d 570 (S.D.N.Y. 2011), *aff'd*, 472 F. App'x 80 (2d Cir. 2012)......................22

*Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.,*
644 F.3d 934 (9th Cir. 2011) .............................................................20, 24

*Jimenez v. Superior Ct.,*
29 Cal. 4th 473, 127 Cal. Rptr. 2d 614, 58 P.3d 450 (Cal. 2002)...........43

*Johnson v. Harley-Davidson Motor Co. Grp., LLC,*
2011 U.S. Dist. LEXIS 80011 (E.D. Cal. July 21, 2011) ........................42

*Jovel v. I-Health, Inc.,*
2013 U.S. Dist. LEXIS 139661 (E.D.N.Y. Sept. 27, 2013)......................27

*Katz v. Fiat/Chrysler Autos.,*
2015 U.S. Dist. LEXIS 66469 (M.D. Pa. Apr. 23, 2015) ........................14

*Kelly v. Cape Cod Potato Chip Co.,*
81 F. Supp. 3d 754 (W.D. Mo. 2015) ......................................................12

*Koronthaly v. L'Oreal USA, Inc.,*
374 F. App'x 257 (3d Cir. 2010) .............................................................15

- 6 -

*Kramer v. Toyota Motor Co.*,
  705 F.3d 1122 (9th Cir. 2013) ..........................................................................31, 35

*Kwikset Corp. v. Superior Ct.*,
  51 Cal. 4th 310 (Cal. 2011)................................................................................12, 13

*Lawson v. Life of the S. Ins. Co.*,
  648 F.3d 1166 (11th Cir. 2011) ...................................................................... *passim*

*Lee v. Toyota Motor Sales, USA, Inc.*,
  992 F. Supp. 2d 962 (C.D. Cal. 2014) .......................................................................14

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
  449 F. App'x 704 (10th Cir. 2011) ...................................................................34, 35

*Lloyd v. GMC*,
  916 A.2d 257 (Md. Ct. App. 2007)...........................................................................12

*MacDonald v. Ford Motor Co.*,
  37 F. Supp. 3d 1087 (N.D. Cal. 2014) ......................................................................37

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012).........................................................................19, 46

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) ...................................................................................12

*McTernan v. City of York*,
  577 F.3d 521 (3d Cir. 2009).........................................................................................9

*Mebuin v. United States*,
  2015 U.S. Dist. LEXIS 133790 (D.N.J. Oct. 1, 2015)...............................................9

*Medley v. Johnson & Johnson Consumer Cos.*,
  2011 U.S. Dist. LEXIS 4627 (D.N.J. Jan. 18, 2011) ...............................................15

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996).........................................................................................19, 20

*In re Mercedes-Benz Tele Aid Contract Litig.*,
  257 F.R.D. 46 (D.N.J. 2009)...........................................................................19, 40, 46

*Metro. Taxicab Bd. of Trade v. City of N.Y.*,
  615 F.3d 152 (2d Cir. 2010)........................................................................................24

*Metro. Taxicab Bd. of Trade v. City of N.Y.*,
  633 F. Supp. 2d 83 (S.D.N.Y. 2009), *aff'd*, 615 F.3d 152 (2d Cir. 2010)...............................23

*Mickens v. Ford Motor Co.*,
   900 F. Supp. 2d 427 (D.N.J. 2012) .................................................................45, 47

*Miller v. Am. Family Publishers*,
   284 N.J. Super. 67 (Ch. Div. 1995) .........................................................................19

*Montich v. Miele USA, Inc.*,
   849 F. Supp. 2d 439 (D.N.J. 2012) ..........................................................................36

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ..................................................................................................25

*Morgan v. AT&T Wireless Servs.*,
   177 Cal. App. 4th 1235 (2009) .........................................................................49, 50

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014) .......................................................................44

*Nader v. Allegheny Airlines, Inc.*,
   426 U.S. 290 (1976) ..................................................................................................26

*Naporano Iron & Metal Co. v. Am. Crane Corp.*,
   79 F. Supp. 2d 494 (D.N.J. 1999) ............................................................................39

*Natixis Fin. Prods., LLC v. Pub. Serv. Elec. & Gas Co.*,
   2014 U.S. Dist. LEXIS 58943 (D.N.J. Apr. 29, 2014) ............................................28

*In re Office of Attorney General of Sate of New York*,
   269 A.D.2d 1 (N.Y. App. Div. 2000) ......................................................................23

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
   461 U.S. 190 (1983) ..................................................................................................24

*Pearson v. United Debt Holdings, LLC*,
   123 F. Supp. 3d 1070 (N.D. Ill. 2015) .....................................................................32

*Peel v. BrooksAmerica Mortg. Corp.*,
   788 F. Supp. 2d 1149 (C.D. Cal. 2011) ....................................................................38

*Pelman v. McDonald's Corp.*,
   396 F.3d 508 (2d Cir. 2005)......................................................................................45

*Philips v. Ford Motor Co.*,
   2015 U.S. Dist. LEXIS 88937 (N.D. Cal. July 7, 2015).........................................37

*Puerto v. Timbertech, Ltd.*,
   2015 WL 8664276 (D.N.J. Dec. 10, 2015)...............................................................45

*Pulaski & Middleman*, *LLC v. Google*, *Inc.*,
    802 F.3d 979 (9th Cir. 2015), *cert denied*, 2016 U.S. LEXIS 3730 (2016) ..........................12

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011).................................................................................................16

*In re Riddell Concussion Reduction Litig.*,
    77 F. Supp. 3d 422 (D.N.J. 2015) ......................................................................................46

*Shelton v. Restaurant.com, Inc.*,
    543 F. App'x 168 (3d Cir. 2013) ........................................................................................47

*Sherer v. Green Tree Servicing*, *LLC*,
    548 F.3d 379 (5th Cir. 2008) .............................................................................................32

*Skeen v. BMW of N. Am.*, *LLC*,
    2014 U.S. Dist. LEXIS 9256 (D.N.J. Jan. 24, 2014) .....................................................36, 42

*Smajlaj v. Campbell Soup Co.*,
    782 F. Supp. 2d 84 (D.N.J. 2011) ..........................................................................11, 13, 46

*Soto v. Am. Honda Motor Co.*, *Inc.*,
    946 F. Supp. 2d 949 (N.D. Cal. 2012) .............................................................................32, 35

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016).......................................................................................................10

*Stearns v. Ticketmaster Corp.*,
    655 F.3d 1013 (9th Cir. 2011) ......................................................................................12, 13

*Stewart v. Smart Balance*, *Inc.*,
    2012 U.S. Dist. LEXIS 138454 (D.N.J. June 25, 2012) ......................................................45

*In re Takata Airbag Prods. Liab. Litig.*,
    2016 U.S. Dist. LEXIS 78662 (S.D. Fla. June 14, 2016) .....................................................48

*Thompson-CSF*, *S.A. v. Am. Arbitration Ass'n*,
    64 F.3d 773 (2d Cir. 1995).................................................................................................34

*Tietsworth v. Sears & Roebuck & Co.*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) .............................................................................42

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (Cal. 2009)................................................................................................40

*In re Toyota Motor Corp.*,
    790 F. Supp. 2d 1152 (C.D. Cal. 2011) .........................................................................12, 15

10585-11  887591 V1

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prods. Liab. Litig.*,
    828 F. Supp. 2d 1150 (C.D. Cal. 2011), *aff'd sub nom.*, 705 F.3d 1122 (9th Cir. 2013) ........32

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ..............................................................12, 27, 40, 42

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*,
    838 F. Supp. 2d 967 (C.D. Cal. 2012) .................................................................................35

*Union Ink Co., Inc. v. AT&T Corp.*,
    352 N.J. Super. 617 (App. Div. 2002) ..................................................................................19

*United States v. Richardson*,
    418 U.S. 166 (1974)..............................................................................................................16

*United States v. W. Pac. R.R. Co.*,
    352 U.S. 59 (1956)...........................................................................................................25, 26

*Valencia v. Volkswagen Grp. of Am. Inc.*,
    2015 U.S. Dist. LEXIS 105555 (N.D. Cal. Aug. 11, 2015)..................................................42

*Velasco v. Chrysler Grp., LLC*,
    2014 U.S. Dist. LEXIS 117620 (C.D. Cal. Aug. 22, 2014)..................................................37

*Weingarten Realty Inv'rs v. Miller*,
    495 F. App'x 418 (5th Cir. 2012) ...................................................................................33, 34

*Young v. Johnson & Johnson*,
    2012 U.S. Dist. LEXIS 55192 (D.N.J. Apr. 19, 2012), *aff'd*, 525 F. App'x 179 (3d Cir. 2013) ......................................................................................................................15, 16

*Zebersky v. Bed Bath & Beyond, Inc.*,
    2006 U.S. Dist. LEXIS 86451 (D.N.J. Nov. 28, 2006)........................................................18

## Statutes

42 U.S.C. § 7543.....................................................................................................2, 20, 24

42 U.S.C. § 7604..........................................................................................................27

49 U.S.C. § 32919.........................................................................................................24

Ala. Code § 8-19-14......................................................................................................48

Fla. Stat. Ann. § 95.11..................................................................................................48

Mich. Comp. Laws Ann. § 445.911.............................................................................49

10585-11 887591 V1

Mɪᴄʜ. Cᴏᴍᴘ. Lᴀᴡs Aɴɴ. § 600.5855 ...........................................................................................49

## Other Authorities

13 Sᴀᴍᴜᴇʟ Wɪʟʟɪsᴛᴏɴ & Rɪᴄʜᴀʀᴅ A. Lᴏʀᴅ, A Tʀᴇᴀᴛɪsᴇ ᴏɴ ᴛʜᴇ Lᴀᴡ ᴏғ Cᴏɴᴛʀᴀᴄᴛs
§ 37:1 (4th ed. 1999) ..............................................................................................................31

# I.     INTRODUCTION

Recognizing the materiality of environmentally conscious messaging to consumers,[1] Mercedes aggressively touted its BlueTEC "clean diesel" vehicles as "Earth Friendly" vehicles having "ultra-low emissions," and "the world's cleanest diesel automobiles" with "up to 30% lower greenhouse-gas emissions than gasoline" powered vehicles. ¶ 101. These representations are deceptive and false. Based on extensive testing by Plaintiffs and independent organizations, Plaintiffs allege that Mercedes intentionally rigged its BlueTEC emissions reduction systems— the very core of its technology to reduce noxious pollutants—to shut down or significantly reduce effectiveness during real-world driving. Thus, these Mercedes vehicles are not ultra-low emission "clean diesels" and, by undisclosed design, emit significantly more pollutants than their gasoline counterparts. They are simply not the low emission, environmentally-friendly vehicles that Mercedes promised they would be.

Mercedes has confessed to a small part of the scheme. It recently told a German magazine that certain BlueTEC diesel cars stop nitrogen oxide (NOx) reduction when ambient temperatures drop below 50 degrees Fahrenheit and under other, unspecified circumstances. Mercedes has not disclosed this highly material fact to Plaintiffs and consumers in the United States. Nor has Mercedes disclosed that its deception goes far beyond just turning BlueTECs into dirty vehicles in cooler weather. Nonetheless, Mercedes moves to dismiss Plaintiffs' well-grounded claims. Mercedes' arguments in support of dismissal fail for the following reasons:[2]

---

[1] ¶ 98. Unless the context otherwise indicates, all "¶" references are to paragraphs in the Consolidated and Amended Class Action Complaint (Complaint).

[2] Plaintiffs do not oppose dismissal of their breach of contract claims and concede that, at a minimum, amending is necessary. Plaintiffs also agree that Paul Herrman should be dismissed. *See* Br. at 8 n.3. Mr. Herrman, for whom no allegations are included in the Complaint, was mistakenly included in the case caption.

***Plaintiffs have Article III standing***.  Plaintiffs plausibly allege that Mercedes' omissions and specific misrepresentations have caused Plaintiffs an injury in fact that is fairly traceable to Mercedes' unlawful conduct and likely to be redressed by a favorable judicial decision. Plaintiffs plead a concrete and particularized injury in the form of classic "benefit of the bargain" damages for overpayment, which courts recognize are recoverable to remedy false, deceptive, and misleading conduct.   Unlike the cases cited by Mercedes, where the plaintiffs lacked standing because they essentially got what they bargained for, Plaintiffs here were promised clean diesels but were delivered dirty diesels.  As a result, Plaintiffs did not receive what they were promised and have Article III standing to pursue their claims.  *See infra* at 10-19.

***No preemption***.  The Clean Air Act (CAA) preempts state actions that "adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles . . . ."  42 U.S.C. § 7543(a).  The Supreme Court and other courts have narrowly interpreted this clause to preempt only directives to select a specific design, device, or emission limit—so-called "command and control sanctions" that are not remotely implicated by Plaintiffs' claims. Plaintiffs seek compensation for Mercedes' deception in duping them into buying the BlueTEC vehicles based on omissions and misrepresentations, and do not need to demonstrate a violation of the CAA in order to recover.  Indeed, there is no emission standard for on-road driving conditions.[3]  As such, Plaintiffs' claims are not expressly preempted by the CAA.  Implied preemption also does not apply, because the CAA's savings clause (42 U.S.C. § 7543(d)) negates

---

[3] Plaintiffs allege that Mercedes programmed the BlueTEC emissions reduction systems to run at full efficiency to produce low emissions during laboratory dynamometer testing pursuant to governmental protocols.  The Complaint references these certification standards in order to demonstrate that Mercedes has rigged the systems so that they pass the tests but turn off in real-world driving.  This is the only plausible explanation for why the vehicles pass the lab tests but generate very high NOx levels on the road.  The fact that the BlueTEC vehicles pass the lab tests shows that this case cannot be based on violations of emissions standards.  The BlueTEC's are simply not "clean diesels" when the emission reduction systems are not working on the road.

10585-11  887591 V1

field preemption, and there is no conflict between the Environmental Protection Agency's (EPA) regulatory regime and Plaintiffs' deception claims, which seek only monetary—and not injunctive—relief. *See infra* at 19-25.

*No primary jurisdiction*.  The factors supporting primary jurisdiction are not present. This Court is competent to decide cases, like this one, involving fraud and unfair and deceptive conduct without the need to refer technical or policy considerations to the EPA.  It is not within the EPA's particular discretion to evaluate whether Mercedes' conduct has the capacity to deceive consumers and violate state law.  There is no danger of inconsistent rulings given that Plaintiffs' claims do not conflict with EPA directives or amount to a collateral attack on EPA action, which may or may not be pending.  And Plaintiffs have not applied to the EPA for relief, nor could they; the EPA has no power to compensate Plaintiffs for Mercedes' deception. Mercedes cannot overcome the strong presumption against abstention based on primary jurisdiction. *See infra* at 25-30.

*Arbitration cannot be compelled*.  Mercedes cannot force arbitration under agreements signed by certain Plaintiffs and independent dealers because Mercedes did not sign those agreements.  Nor can Mercedes successfully invoke equitable estoppel, because Plaintiffs' claims do not rely on the agreements, and Plaintiffs do not allege any substantially interdependent and concerted misconduct by the dealers and Mercedes. *See infra* at 31-36.

*Plaintiffs properly plead fraudulent concealment*.  Plaintiffs' concealment allegations satisfy Rule 9(b) and identify the "who, what, when, where, and how" of Mercedes' central omission of failing to disclose the degraded on-road performance of the BlueTEC emission systems.  Plaintiffs also satisfy Rule 9(b) by identifying 15 affirmative misrepresentations that Mercedes has made relating to the purported environmental friendliness of the BlueTECs.

Plaintiffs allege that they would have made different purchasing decisions had they known the truth, which establishes reliance and causation under prevailing case law.   Plaintiffs also demonstrate that Mercedes owed a duty to disclose that it programmed the BlueTEC emissions reduction systems to shut off or significantly reduce effectiveness in real-world driving, but concealed that fact; Mercedes had exclusive knowledge of this highly material fact (which took expert testing to unearth), and engaged in active concealment by denying that it manipulated testing results.   Consequently, Plaintiffs may recover overpayment damages resulting from the fraud, a recovery that is not barred by the economic loss rule.   *See infra* at 36-44.

*Plaintiffs properly plead unfair and deceptive trade practice act claims*.   Many of the reasons supporting Plaintiffs' fraudulent concealment claim support the plausibility of Plaintiffs' consumer protection act claims:   Plaintiffs have identified with specificity the core omission that Mercedes failed to disclose (BlueTEC vehicles are not actually clean diesels or low emission vehicles) and the exact low-emissions misrepresentations at issue.   These allegations suffice to place Mercedes on notice of the precise misconduct that forms the basis of Plaintiffs' omissions and deception claims under the relevant state statutes.   Further, by alleging that Plaintiffs would have made different purchasing decisions had they known of Mercedes' deception, they have properly pled reliance (where required) and the requisite causal connection between the deceptive conduct and Plaintiffs' cognizable, overpayment injury.   In addition, Mercedes' fraudulent concealment tolls the Alabama, Florida, and Michigan Plaintiffs' claims, and pre-suit notice to Daimler AG should not impede the orderly progress of this case.   *See infra* at 44-50.

## II.    FACTUAL BACKGROUND

Compared to gasoline engines, diesel engines generally produce greater torque and higher fuel efficiency.   But these benefits come at the cost of much dirtier and more harmful emissions. One by-product of diesel combustion is nitrogen oxide (NOx), a pollutant that contributes to

- 4 -

nitrogen dioxide, particulate matter in the air, and reacts with sunlight in the atmosphere to form ozone and smog. United States law protects citizens from these pollutants, which have been linked with serious respiratory illnesses and death. Companies like Mercedes must abide by these laws and associated rules and regulations. ¶¶ 2-3, 80-89.

In order to produce a diesel engine that has desirable power, good fuel economy, and emissions levels low enough to satisfy governmental emission standards, while meeting increasing consumer demand for environmentally-friendly products, Mercedes developed the BlueTEC™ diesel engine. BlueTEC is a general trade name that describes "in-cylinder" and "after-treatment" technologies used to reduce emissions, including a diesel particulate filter (DPF) and a selective catalytic reduction (SCR) system. The DPF traps and removes particulate (soot) emissions, while the SCR system facilitates a chemical reaction to reduce NOx into less harmful substances, such as nitrogen and oxygen. When it is fully operating, the BlueTEC system produces substantially cleaner emissions than when it is not working. ¶¶ 4, 90-97.[4] All of the Plaintiffs' models have the same BlueTEC system.

Mercedes has acknowledged that customers expect "exceptional environmental sustainability" and knows that "the environmental sustainability of vehicles is gaining importance in the purchasing decision." ¶ 98. Recognizing that a "clean diesel" promise would be material to consumer decision-making, Mercedes sought to appeal to environmentally conscious consumers by *vigorously* marketing its BlueTEC vehicles as "the world's cleanest and most advanced diesel" with "ultra-low emissions," and "up to 30% lower greenhouse-gas emissions than gasoline." ¶ 101. The Complaint cites numerous examples of similar advertising

---

[4] Plaintiffs allege that the following Mercedes models powered by BlueTEC diesel fueled engines are affected by Mercedes' unfair and deceptive conduct: ML 320, ML 350, GL 320, E320, S350, R320, E Class, GL Class, ML Class, R Class, S Class, GLK Class, GLE Class, and Sprinter (the Affected Vehicles). ¶ 141.

that was widely disseminated throughout the United States.  For example, Mercedes represented that its BlueTEC vehicles "convert[] the nitrogen oxide emissions into harmless nitrogen and oxygen" and "reduce[] the nitrogen oxides in the exhaust gases by up to 90%."  Additionally, Mercedes promoted its BlueTEC vehicles as "Earth Friendly":  "With BlueTEC, cleaner emissions are now an equally appealing benefit."  Mercedes even proclaimed itself "#1 in CO2 emissions for luxury vehicles."  ¶¶ 5-6, 98-104.

These representations are deceptive and false.  Pervasive evidence cited in the Complaint reveals that the BlueTEC emissions reduction system runs at full efficiency to produce low emissions during laboratory dynamometer testing but turns off or substantially reduces effectiveness during real-world driving.  ¶ 7.  That evidence falls into three categories.  *First*, Mercedes recently confessed that a shut-off device in the engine management of certain BlueTEC diesel cars stops NOx cleaning when ambient temperatures drop below 50 degrees Fahrenheit (10 degrees Celsius) and under other, unspecified circumstances.  Mercedes asserts, without providing details, that the shut-off is done to protect the engine.  However, in its disclosures, Mercedes fails to inform consumers of the highly material fact that the vehicles spew unmitigated NOx into the air in cooler temperatures.  This alone puts the lie to Mercedes' claims that BlueTEC is "the world's cleanest diesel passenger vehicle" with "ultralow emissions" and up to 90% reduced nitrogen oxide.  ¶¶ 106-08.

*Second*, testing done by Plaintiffs' experts reveals a much broader deception:  Mercedes limits the effectiveness of the BlueTEC emission controls in normal driving conditions even when the ambient temperature exceeds 50°F.  ¶ 110.  The testing, which was conducted on 2.1

and 3.0 liter Mercedes BlueTEC vehicles[5] on a dynamometer and in "real world" driving conditions, demonstrated low laboratory emissions but on-road emissions that were very high and much higher than for gasoline engines. Here is what the testing found for the 2.1 liter engine (¶¶ 124-34):

- Average highway emissions were 4.5 to 6.1 times the federal laboratory standard and were even higher at temperatures below 50°F, where NOx emissions were found to range from 8.1 to 19.7 times the standard.[6]

- Testing performed under variable speed and stop-and-go driving conditions found average variable speed emissions to be 5 times the laboratory standard, with *no* measured emissions falling *below* the standard, and some emissions are up to 12.6 times the standard. Additional variable-speed testing conducted below 50°F found NOx emissions as much as 30.8 times the laboratory standard.

- In stark contrast to the foregoing, laboratory dynamometer tests conducted in accordance with EPA and California Air Resources Board testing protocols revealed results close to or under the standards and sometimes well under the standards.

- In addition, testing was done for mountain driving, which produced NOx emissions of 579 mg/mile, hardly "clean" or "earth friendly."[7]

Similar testing on the 3.0 liter BlueTEC engine also revealed on-road driving emissions that were very high and much higher than for gasoline engines (¶ 135). Stop-and-go driving tests

---

[5] The BlueTECs have one of two engine types: 2.1 liter or 3.0 liter. All 2.1 liter engine models have the same engine and emissions control system, as do all 3.0 liter engine models. Plaintiffs' experts tested both engine types covering all class vehicles. Because each model has but one of the two engine types, it is not necessary to test each specific model in order to allege injury. Moreover, it is implausible to suggest that the emissions systems are different in each model; they were not in Volkswagen, where the EPA issued violation notices based on engine size (2.0 and 3.0 liters) and did not differentiate based on models or years. In other words, all 2.0 models were in violation, not, for example, some but not all Jettas or Jettas but not Passats. Similarly, what is common to all Mercedes class vehicles, regardless of engine, is the BlueTEC system.

[6] The term "standard" in Plaintiffs' allegations is used to show the difference between lab tests and on-road conditions; there is no regulatory standard for the latter.

[7] There is no laboratory emissions standard for mountain driving. However, a reasonable consumer, based on Mercedes' promises, expected a clean diesel. The jury can decide whether such emissions comport with a consumer's reasonable expectations.

revealed NOx emissions that were, on average, 5 times the laboratory standard.  Steady driving at various speeds resulted in NOx emissions that were, on average, 4.4 times the standard.

*Third*, the testing results from Plaintiffs' experts are echoed by independent testing and reporting done by European organizations on vehicles **with engines very similar to the engines in the BlueTEC models sold in the United States**.  The European testing also confirms that BlueTEC vehicles produce much higher on-road NOx emissions than gasoline vehicles and that Mercedes manipulates the emissions system when the vehicle senses that it is being tested on a dynamometer pursuant to government testing protocols:

- A study conducted by TNO for the Dutch government confirms that, in on-road driving, the Mercedes C-Class 220 emits NOx at levels much higher than in controlled dynamometer tests and much higher than the "Euro 6 standard," which is less stringent than the U.S. standard.  TNO said:  "It is remarkable that the NOx emission under real-world conditions exceeds the type approval value by [so much].  It demonstrates that the settings of the engine, the EGR and the SCR during a real-world test trip are such that they do not result in low NOx emissions in practice.  In other words:  ***In most circumstances arising in normal situations on the road, the systems scarcely succeed in any effective reduction of NOx emissions***."  ¶¶ 111-14.

- Transportation and Environment compiled data from "respected testing authorities around Europe" and reported that the real-world emissions testing showed drastic differences from laboratory tests:  Mercedes models emitted 50% more pollutants on the road than in the laboratory.  ¶¶ 115-16.

- On-road testing in 2015 in Europe by Emissions Analytics showed that Mercedes' diesel cars emitted NOx on the road at levels 5 times higher than the Euro 6 level permits (which is more than 13 times higher than the U.S. level permits).  ¶¶ 117-18.

- Testing by the Institute for Transport Studies in 2015 also confirmed that Mercedes' vehicles exceeded the more lax European NOx standards.  ¶ 119.

Mercedes never disclosed to consumers that it manipulates the Blue TEC emissions systems so that the BlueTEC engines may be "clean" diesels in laboratory testing but are "dirty" diesels under on-road driving conditions.  Likewise, Mercedes never disclosed that BlueTEC vehicle emissions materially exceed the emissions from gasoline powered vehicles and that the emissions were not low and exceeded what a reasonable consumer would expect from a "clean

diesel." ¶ 14.   A BlueTEC simply cannot be a "clean diesel" if the emissions reduction system is not operating or is compromised on the road.   Consequently, Mercedes has engaged in unfair and deceptive conduct and defrauded its customers (¶ 140), and Plaintiffs have suffered losses in money and/or property.   Had Plaintiffs known of Mercedes' manipulations and the dirty emissions at the time they purchased or leased their BlueTECs, they would not have purchased or leased those vehicles, or would have paid substantially less.   ¶¶ 20-64, 145.   Plaintiffs seek certification of a national class and state-based subclasses of all BlueTEC diesel owners, ¶¶ 155-64, and assert claims for violation of state unfair and deceptive trade practices acts and fraudulent concealment under the laws of 30 states.   ¶¶ 165-1451.

### III.    GENERAL LEGAL STANDARDS

"To withstand a motion to dismiss for failure to state a claim, 'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.''" *Mebuin v. United States*, 2015 U.S. Dist. LEXIS 133790, at *9 (D.N.J. Oct. 1, 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Iqbal*, 556 U.S. at 678).   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*   "[A]ll well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them."  *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (internal quotation marks and citation omitted).   "The Court's role is not to determine whether the non-moving party 'will ultimately prevail' but whether that party is 'entitled to offer evidence to support the claims.'"  *Byrnes v. Greystone Park Psychiatric Hosp.*, 2016 U.S. Dist. LEXIS 37661, at *6 (D.N.J Mar. 22, 2016) (quoting *United States ex rel. Wilkins v. United*

*Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011)).  "The Court's analysis is a context-specific task requiring the court 'to draw on its judicial experience and common sense.'"  *Id.* at *6-7 (quoting *Iqbal*, 556 U.S. at 663-64).

## IV.    PLAINTIFFS HAVE ARTICLE III STANDING

Courts apply a "plausibility" standard when evaluating whether factual allegations, taken as a whole, show that the plaintiff possesses Article III standing.  *Finkleman v. NFL*, 810 F.3d 187, 194 (3d Cir. 2016).  This means that the factual allegations must be well pled, and that speculation or conjecture are insufficient.  *Id.*  To qualify Article III standing, a claimant must have (i) suffered an injury in fact, (ii) that is fairly traceable to the challenged conduct, and (iii) that is likely to be redressed by a favorable judicial decision.  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  Injury in fact requires that the plaintiff suffered "an invasion of a legally protected interest" that is "concrete and particularized."  *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way."  *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1).  A "concrete" injury must be "*de facto*"; "that is, it must actually exist."  *Id.*  "[R]isk of real harm can satisfy the requirement of concreteness," and "the law has long permitted recovery by certain tort victims even if their harms may be difficult to prove or measure."  *Id.* at 1549.  Plaintiffs satisfy these standards and have standing to pursue their claims.

### A.    Plaintiffs Plausibly Allege Injury in Fact

Plaintiffs satisfy the injury in fact test because they have suffered a concrete and particularized injury as a result of Mercedes' conduct.  Plaintiffs allege that Mercedes promotes its BlueTEC "clean diesel" vehicles as low-emission, "Earth Friendly" vehicles that are "the world's cleanest diesel automobiles" but that such representations are deceptive and false.  Based on extensive testing by Plaintiffs and other organizations, Plaintiffs allege that the emissions

reduction systems in the BlueTEC vehicles turn off or substantially reduce effectiveness during on-road driving.  Thus, the BlueTEC vehicles are not "clean diesels" and emit significantly more pollutants than their gasoline fueled counterparts.  Had they known of Mercedes' undisclosed manipulations and the higher emissions produced by the BlueTECs, Plaintiffs would not have purchased or leased those vehicles, or would have paid substantially less than they did.  ¶¶ 20-64, 145.  Thus, each Plaintiff's injury is particularized and concrete:  it results from actual economic damage relating to the purchase or lease of his or her own vehicle.

This is *classic* "benefit of the bargain" injury for overpayment that is recoverable to remedy false, deceptive, and misleading representations, as this Court recognized in evaluating Article III standing in *In re Gerber Probiotic Sales Practices Litig.*, 2013 U.S. Dist. LEXIS 121192, at *16 (D.N.J. Aug 22, 2013):

> Plaintiffs claim that they paid a premium for the Products at issue based on false, deceptive, and misleading representations.  Plaintiffs correctly argue that "[m]onetary harm is a classic form of injury in fact.  Indeed it is often assumed without discussion."  (Pl.'s Opp'n. 22) (quoting *Danvers Motor Co.*, *Inc. v. Ford Motor Co.*, 432 F.3d at 293) . . . .  Accordingly, at this stage of the litigation, Plaintiffs sufficiently allege an actual injury which is concrete and particularized.

*See also Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99 (D.N.J. 2011) ("The New Jersey Supreme Court has repeatedly and explicitly endorsed a benefit-of-the-bargain theory under the Consumer Fraud Act that requires nothing more than that the consumer was misled into buying a product that was ultimately worth less to the consumer than the product he was promised.").

Many other courts agree with *Gerber* and *Smajlaj* and recognize that benefit of the bargain damages are recoverable for overpayment and confer standing in a wide variety of circumstances involving misrepresentations and omissions.  *See*, *e.g.*, *Gladstone Realtors v. Bellwood*, 441 U.S. 91, 115 (1979) (decline in economic value of home "as a result of the conduct of another certainly is sufficient under Art. III to allow standing to contest the legality of

that conduct"); *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291, 294 (3d Cir. 2005) (noting that "[i]njury-in-fact is not Mount Everest" and that economic harm in the form of damages is a "paradigmatic" form of injury in fact and will generally support standing unless such a theory is "totally fanciful"); *Maya v. Centex Corp.*, 658 F.3d 1060, 1069-71 (9th Cir. 2011) (overpayment caused by a wrongful conduct is "a quintessential injury-in-fact"); *In re Toyota Motor Corp. Unintended Acceleration Mktg.*, *Sales Practices & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1161 (C.D. Cal. 2010) (economic loss injuries consisting of overpayment or loss in value sufficient to confer standing).[8]

 *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 330 (Cal. 2011), is paradigmatic.  In *Kwikset*, the plaintiffs alleged that "(1) Kwikset labeled certain locksets with 'Made in U.S.A.' or a similar designation, (2) these representations were false, (3) plaintiffs saw and relied on the

---

[8] *See also Carriuolo v. GM Co.*, 2016 U.S. App. LEXIS 8962, at *14-17 (11th Cir. May 17, 2016) (the false or omitted statement allows the seller "to command a price premium and to overcharge customers systematically," and the measure of that premium is the difference in the market value of the vehicle as delivered and the market value in the condition it should have been delivered); *Pulaski & Middleman*, *LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015) (restitution focuses on the difference between what was paid and what a reasonable consumer would have paid at the time of the purchase had the fraudulent or omitted information been known), *cert. denied*, 2016 U.S. LEXIS 3730 (2016); *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 n.13 (9th Cir. 2011) (there is a "conclusive presumption" of injury under the California Unfair Competition Law; "when a defendant puts out tainted bait and a person sees it and bites, the defendant has caused an injury"); *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 452-53 (5th Cir. 2001) (benefit of the bargain damages recoverable where plaintiffs were promised an all fiberglass boat but received a hybrid wood-fiberglass boat; measure of damage is "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered"); *Kelly v. Cape Cod Potato Chip Co.*, 81 F. Supp. 3d 754 (W.D. Mo. 2015) (false "all natural" and "no preservatives" claims result in ascertainable loss under the benefit of the bargain rule allowing a purchaser to be awarded the difference between the actual value of the property and what its value would have been if it had been as represented); *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1168 (C.D. Cal. 2011) (because plaintiffs "allege that they would have made a different purchasing decision but for Toyota's misrepresentations, [they] have lost 'money or property' within the meaning of the UCL and FAL"); *Lloyd v. GMC*, 916 A.2d 257, 281 n.17 (Md. Ct. App. 2007) (loss under consumer protection act includes "a difference between what was expected and what was received as a result of the . . . misrepresentation").

labels for their truth in purchasing Kwikset's locksets, and (4) plaintiffs would not have bought the locksets otherwise."  *Id.* at 327-28.  The court found that plaintiffs had standing, observing that there were "innumerable ways in which economic injury from unfair competition may be shown," including paying more in a transaction than otherwise would have been paid but-for the misrepresentation.  *Id*. at 328; *see also id.* at 312, 317.  The court also found that plaintiffs sufficiently alleged both injury and causation by pleading that they would not have purchased a product but for the misrepresentation.  *Id*. at 330.  Likewise, Plaintiffs here allege that they would not have purchased their BlueTEC vehicles or would have paid less had they known about Mercedes' misrepresentations and omissions.  In the words of the *Stearns* court, Plaintiffs were lured in by Mercedes' "tainted bait" and were injured.  655 F.3d at 1021 n.13.

## B.      Defendants' No-Injury Cases Are Inapposite

Mercedes contends that "Plaintiffs lack standing because they fail to 'allege that they experienced a [] defect.'"  Br. at 8.  But Plaintiffs need not allege a defect; allegations of material misrepresentations and omissions suffice, as this Court held in *Smajlaj*, when it rightly rejected contentions that benefit of the bargain damages cannot be recoverable in the absence of a defect:

> Although it is often the case that the difference between the promised product and the product actually received is some defect or flaw in the product, there is no requirement that the product actually received be defective or deficient in any way other than that it is not what was promised. . . .  If a manufacturer promises a car with all the features of a Formula One racecar and delivers an ordinary minivan, the consumer's fraud claim is not foreclosed by the fact that the minivan runs fine, and many people choose it for its great interior space.

782 F. Supp. 2d at 99; *accord Coghlan*, 240 F.3d at 455 n.4 (damages sought for misrepresentation "are not rooted in the alleged defect of the product as such, but in the fact that [plaintiffs] did not receive the benefit of their bargain;" the wrongful act is the defendant's "failure to uphold its end of their bargain and to deliver what was promised").

- 13 -

Consequently, Mercedes' cases dismissing claims where alleged defects have not "manifested" do not apply.  *See Barakezyan v. BMW of N. Am.*, *LLC*, 2016 U.S. Dist. LEXIS 68839, at *11 (C.D. Cal. Apr. 7, 2016) (economic injury not properly pled because plaintiff "has not alleged the Subject Vehicle failed to perform as advertised . . . or that he identified false representations about the noise the carbon ceramic brakes made by BMW"); *Katz v. Fiat/Chrysler Autos.*, 2015 U.S. Dist. LEXIS 66469, at *4 (M.D. Pa. Apr. 23, 2015) (alleging that plastic fuel tank was defectively designed was insufficient to demonstrate cognizable injury where the tank did not experience a rupture or other malfunction and where recall relief was already provided); *Lee v. Toyota Motor Sales*, *USA*, *Inc.*, 992 F. Supp. 2d 962, 972 (C.D. Cal. 2014) ("Plaintiffs have not alleged an actual economic injury because they have not had any negative experience with the [pre-collision braking feature] and have not identified any false representations about the automatic pre-collision braking feature made by Toyota.").  Indeed, the *Lee* court indicated that the plaintiffs would have suffered cognizable injury under a benefit of the bargain theory had they alleged a misrepresentation:  "Plaintiffs do not have a bargained-for benefit claim based on the extent of performance of the PCS in the absence of a claim that Toyota made representations about the amount or extent of speed reduction provided by the PCS."  992 F. Supp. 2d at 972.  That is the gist of what Plaintiffs allege here:  misrepresentations and omissions about the emissions performance of the BlueTEC diesel engines.

This Court's decision in *Chan v. Daimler AG*, 2012 U.S. Dist. LEXIS 161716 (D.N.J. Nov. 9, 2012), also does not support Mercedes, because the plaintiffs did not allege overpayment based on false representations as to the car's quality; instead, they made conclusory allegations

- 14 -

of diminution in value resulting from an undisclosed defect.  *Id.* at \*22.[9]  *Young v. Johnson & Johnson*, 2012 U.S. Dist. LEXIS 55192 (D.N.J. Apr. 19, 2012), *aff'd*, 525 F. App'x 179 (3d Cir. 2013), is also inapposite.  Health claims made on a butter/margarine substitute package were challenged, but the Court found that plaintiff's benefit of the bargain allegations were insufficient to plead injury-in-fact given that the plaintiff did not allege any adverse health consequences, and the package disclosed the presence of the objectionable ingredients and was otherwise consistent with relevant FDA regulations.  *Id.* at \*12; *see also Medley v. Johnson & Johnson Consumer Cos.*, 2011 U.S. Dist. LEXIS 4627 (D.N.J. Jan. 18, 2011) (plaintiff received benefit of the bargain in the absence of allegations that a premium price was paid based on misrepresentations); *Koronthaly v. L'Oreal USA*, *Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010) (plaintiff did not plead cognizable injury when defendant never represented that the lipstick did not contain lead and where FDA found that lead levels in the lipstick were not dangerous).

In Mercedes' cases, the plaintiffs essentially got what they bargained for.  Not so here, where Plaintiffs were promised clean diesels but, unknown to them, were delivered dirty diesels.  This Court has similarly distinguished ***deception*** cases, like this one, from "consumer protection cases where the products at issue contained potentially dangerous substances, but the plaintiffs suffered no ill effects."  *In re Gerber Probiotic Sales Practices Litig.*, 2013 U.S. Dist. LEXIS 121192, at \*15 (citing *Koronthaly*).[10]

---

[9] Moreover, the Court found that certain plaintiffs suffered no injury because the cars were repaired at no charge and performed as promised during the warranty period.  *Id.* at \*23.  Even so, the Court did "not dispute that a diminution in the value of Plaintiffs' vehicles resulting from the alleged defects may constitute a sufficient injury to confer standing . . . ."  *Id.* at \*22.

[10] Mercedes also cites *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, another defective vehicle case, but overlooks that court's admonition that "overpayment injury does not depend on how the product functions because 'labels' and 'brands' have independent economic value."  *Id.* at 1166 n.11.  Further, the court upheld "overpayment" claims for plaintiffs who had stopped

Similarly, Mercedes' cases involving risk of possible future injury or harm to the public at large do not apply.  *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (no standing based on speculative allegations that future communications may be intercepted under wiretap statute); *United States v. Richardson*, 418 U.S. 166, 171 (1974) (no standing to challenge Central Intelligence Agency accounting for expenditures); *Finkleman*, 810 F.3d at 195, 197 (no standing to challenge NFL Super Bowl ticket policies where purchasers on the secondary market could not adequately assert that paying higher than face-price was fairly traceable to the NFL's decision to withhold some tickets from sale to the general public); *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (no standing for victims of generalized data theft absent allegations that hacker used the information, because threat of future harm was neither imminent nor impending); *Hartz Mountain Indus.*, *Inc. v. Polo*, 2005 U.S. Dist. LEXIS 25411 (D.N.J. Oct. 26, 2005) (general allegations of increased commute times resulting from construction project do not state a cognizable injury in fact).  This is not a case about fear of future injury; Plaintiffs were deceived and overpaid as a result of Mercedes' deception, resulting in a present, concrete injury recognized by the case law.

## C.    Plaintiffs Plausibly Allege That Mercedes Misrepresented Their Vehicles and that Their Injury Is Fairly Traceable to Mercedes' Conduct

Mercedes contends that "exactly how plaintiffs 'received a product that did not deliver the advertised benefits' cannot be plausibly inferred from their allegations."  Br. at 13 (quoting *Young*, 2012 U.S. Dist. LEXIS 55192, at *11).   However, a fair reading of the Complaint demonstrates that Plaintiffs present well-pled, non-speculative allegations that Mercedes did not make good on its promises that the BlueTEC vehicles were "the world's cleanest and most

---

using vehicles for fear of personal safety or sold or traded-in vehicles at a loss due to depressed resale values following recalls and the wide publicity the defect received.

advanced diesel[s]" with "ultra-low emissions;" emitted "up to 30% lower greenhouse-gas emissions than gasoline;" and "reduce[d] the nitrogen oxides in the exhaust gases by up to 90%." ¶¶ 5-6, 98-104.  These representations were deceptive and false given that extensive testing has shown that the BlueTEC emissions reduction systems turn off or substantially reduce effectiveness during real-world driving, resulting in dirty emissions that were not "ultra-low," that did not have up to 90% reduced nitrogen oxides, and were not 30% lower than gasoline car emissions.  ¶ 7.[11]  The allegations are not speculative; they are based on testing of the actual engines at issue, which demonstrates the plausibility of Plaintiffs' claims.

While Mercedes speculates over whether Plaintiffs' expert testing was sufficiently robust, *see* Br. at 9, that is a fact challenge not properly resolved on a motion to dismiss.[12]  Moreover, Mercedes has **admitted** that certain BlueTEC diesel cars stop NOx cleaning when ambient temperatures drop below 50°F and under other, unspecified circumstances—a material piece of information that Mercedes did not previously disclose (¶¶ 107-08), even though testing reveals much broader manipulation.  This admission amplifies plausibility.[13]

---

[11] Mercedes complains that Plaintiffs do not allege whether (i) the vehicles were "environmentally friendly," (ii) ammonia emissions were high, and (iii) Mercedes complied with the EPA's FTP standard.  Br. at 13.  Plaintiffs do not need to allege these things to plead plausible injury claims.  Mercedes made specific misrepresentations that are false, and these misrepresentations (and associated omissions) are the proper focus of Plaintiffs' claims.

[12] Mercedes discounts Plaintiffs' citations to European studies.  Br. at 8.  While the European studies did not test the precise models at issue here, the findings based on testing of similar engines using similar pollution control technologies buttress Plaintiffs' allegations regarding the U.S. models.  The European testing was done on BlueTEC engines and confirms that BlueTEC vehicles produce much higher NOx emissions than gasoline vehicles and that Mercedes manipulates the emissions reduction system to alter performance when the vehicles are on the road.  ¶¶ 111-19.  This is precisely what Plaintiffs' experts found when testing the engines contained in the U.S. models.  It is not plausible to infer that BlueTEC vehicles that do not meet the less stringent European standards are magically compliant in the U.S.

[13] Tellingly, Mercedes has not denied that the BlueTEC emission systems are manipulated during on-road driving.  ¶ 122.  The most that Mercedes can muster is a vague and contorted explanation that, "given modern engineering constraints, complex chemical reactions, and

- 17 -

Mercedes contends that Plaintiffs have not plausibly alleged that they paid a premium because of purported misrepresentations, and that Plaintiffs' alleged injury is not fairly traceable to Mercedes' conduct.   Br. at 13.   But each Plaintiff specifically alleges that Mercedes' deceptions and omissions caused them damage.   For instance, New Jersey Plaintiff Anthony Caputo alleges:

> Mercedes knew about, manipulated, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel" as compared to gasoline vehicles, complied with United States emissions standards, and would retain all of its operating characteristics throughout its useful life, including high fuel economy.   Plaintiff selected and ultimately purchased his vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes. Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system.   None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Affected Vehicle had high emissions compared to gasoline vehicles and the fact that Mercedes had designed part of the emissions reduction system to turn off during normal driving conditions.   Had Mercedes disclosed this design, and the fact that the ML 350 actually emitted pollutants at a much higher level than gasoline vehicles do, and at a much higher level than a reasonable consumer would expect, and emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.   [¶ 20.[14]]

These are just the sort of allegations that courts hold plausibly plead injury that is fairly traceable to a defendant's conduct.   *See supra* cases at pages 11-13; *see also Zebersky v. Bed Bath & Beyond, Inc.*, 2006 U.S. Dist. LEXIS 86451, at *4-5 (D.N.J. Nov. 28, 2006) (allegations

---

existing industry regulations, Mercedes-Benz diesel vehicles are, as advertised, 'environmentally friendly' . . . ."   Br. at 13.   That is hardly an unqualified denial that Mercedes compromises BlueTEC emission systems performance on the road.   In any event, discovery will more fully reveal the full scope of Mercedes' emissions engineering and manipulations.

[14] The Complaint makes identical or nearly identical allegations for all other Plaintiffs.   *See* ¶¶ 21-64, 145.   These allegations distinguish this case from the Court's finding in *Gerber Probiotic* that plaintiffs had failed to allege "the general type or medium of 'advertising' to which they were allegedly exposed" or how that advertising caused their injuries.   2013 U.S. Dist. LEXIS 121192, at *21.   Moreover, this is also an omissions case.

that "goods purchased were of inferior quality to what was represented by defendants" suffice for standing); *see also Marcus v. BMW of N. Am.*, *LLC*, 687 F.3d 583, 606 (3d Cir. 2012) (plaintiff not required to show monetary loss, only that what was purchased was less than what was promised); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 73 (D.N.J. 2009) ("Plaintiffs need only show that they 'paid for a product and got something less than what had been promised'") (quoting *Elias v. Ungar's Food Prods.*, 252 F.R.D. 233, 249 (D.N.J. 2007)); *Union Ink Co.*, *Inc. v. AT&T Corp.*, 352 N.J. Super. 617, 646 (App. Div. 2002) ("ascertainable loss occurs when a consumer receives less than what was promised"); *Miller v. Am. Family Publishers*, 284 N.J. Super. 67, 89-91 (Ch. Div. 1995) ("For their money, they received something less than, and different from, what they reasonably expected in view of defendant's presentations.  That is all that is required to establish 'ascertainable loss' . . ."); *Carriuolo*, 2016 U.S. App. LEXIS 8962, at *14-17 ("manufacturer's misrepresentation may allow it to command a price premium and to overcharge customers systematically").

## V.      THE CLEAN AIR ACT DOES NOT PREEMPT PLAINTIFFS' CLAIMS

### A.      Plaintiffs' Claims Are Not Expressly Preempted

#### 1.      The narrow scope of the preemption clause does not capture Plaintiffs' claims.

Express preemption exists if "the legal duty that is the predicate of the [cause of action]" creates a legal requirement prohibited by a "fair but narrow reading" of the preemption provision.  *Cipollone v. Liggett Grp.*, 505 U.S. 504, 524 (1992).  Any ambiguity in the text of a preemption clause is to be interpreted against preemption.  *Bates v. Dow Agrosciences*, *LLC*, 544 U.S. 431, 449 (2005).  There is a presumption against preemption, which is based on the "assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  *Medtronic*, *Inc. v.*

*Lohr*, 518 U.S. 470, 485 (1996).  Regulation of false advertising is a traditional state police power, thereby invoking the presumption.  *E.g.*, *In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 U.S. Dist. LEXIS 155383, at *77 (S.D.N.Y. Nov. 12, 2015).  Mercedes is unable to overcome this presumption.

The Clean Air Act (CAA) preemption clause provides that "[n]o State or any political subdivision thereof shall adopt ***or attempt to enforce any standard*** relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part."  42 U.S.C. § 7543(a) (emphasis added).  The Court in *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246 (2004) (*EMA*), narrowed the scope of the word "standard" in § 7543(a) to refer to a mandatory, pollution-related obligation that requires that the vehicle "must not emit more than a certain amount of a given pollutant, must be equipped with a certain type of pollution-control device, or must have some other design feature related to the control of emissions."  *Id.* at 253.[15]  Subsequent courts have read *EMA* to mean that only "standards" that include command and control sanctions to select a specific design, device, or emission limits are preempted by the CAA.  *See*, *e.g.*, *Jensen Family Farms*, *Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 940 (9th Cir. 2011) (requirement that farmers register and pay a fee for diesel engines is not a "standard" as it did not set emission levels nor impose design requirements); *Ass'n of Taxicab Operators USA v. City of Dallas*, 720 F.3d 534, 539-40 (5th Cir. 2013) (rejecting preemption of rule prioritizing cabs running on natural gas; rule did not require emissions standard, nor force the purchase of a particular engine or pollution device).

Applying the requisite narrow reading of the CAA preemption clause to Plaintiffs' claims shows no preemption.  Plaintiffs do not "attempt to enforce any standard relating to the control

---

[15] This is the Supreme Court's most recent discussion of CAA preemption, yet Mercedes fails to cite it.

of emissions," and Plaintiffs' claims do not seek to sanction a specific design, device, or emission limit.  In fact, the allegations do not rely on any standard, as there is no federal standard for emissions performance on the road.[16]  Instead, Plaintiffs simply seek compensation for Mercedes' omissions and deception for duping them into buying the BlueTEC vehicles based on false representations about the ultra-low emissions performance of those vehicles.  Plaintiffs simply want to recover money that they wouldn't have spent but for Mercedes' deception.

Plaintiffs' do not have to prove any violations of EPA standards in order to prevail. Instead, the claims pivot on whether the BlueTEC emission controls are abandoned or compromised during normal driving, thereby undermining Mercedes' express promises.  If so, then Mercedes has engaged in deception.  Indeed, Plaintiffs' contentions, if proven, would result in Mercedes liability *even if there were no federal laboratory standards*.  *See*, *e.g.*, *In re Caterpillar*, *Inc.*, *C13 & C15 Engine Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 98784, at *35 (D.N.J. July 29, 2015) (no express preemption where engine defect claims based on problems with emission control components did "not require a showing that Caterpillar's Engines either did or did not comply with emissions standards").  Plaintiffs' claims are predicated on a duty not to deceive, and common law and fraud claims based on that duty are not preempted.  *See*, *e.g.*, *Altria Grp.*, *Inc. v. Good*, 555 U.S. 70, 81 (2008) (consumer protection claims not preempted by Federal Cigarette Labeling and Advertising Act because the duty "codified in that state statute, like [a] duty imposed by the state common-law rule . . . has nothing to do with smoking and

---

[16] The reason that Plaintiffs refer to the federal standard for laboratory dynamometer testing is to show the difference between the real world (dirty) and the laboratory world (clean) in order to highlight Mercedes' misrepresentations that the BlueTEC vehicles were "Earth Friendly" vehicles having "ultra-low emissions" and were "the world's cleanest diesel automobiles" with "up to 30% lower greenhouse-gas emissions than gasoline."  The whole "clean diesel" marketing campaign was a lie: a vehicle simply cannot be "clean" when the emissions reduction system is compromised on the road.

health."); *see also Caterpillar*, 2015 U.S. Dist. LEXIS 98784, at *43-44 n.17 ("The duty not to deceive as embodied by the various state consumer protection laws upon which Plaintiffs rely has nothing to do with emissions control systems.").

In addition, Plaintiffs do not seek injunctive relief forcing Mercedes to comply with EPA regulations.  Mercedes may argue that a damages award would result in indirect enforcement of the CAA because of an award's potential influence on future behavior, but this does not support preemption; "[a]ny incidental effect Plaintiffs' claims may have on [Mercedes'] future business practices is speculative and beyond the scope of the CAA's express preemption provision."  *Id.* at *37-38 n.14.  In any event, and invoking *EMA*, a duty to disclose the truth about how Mercedes manipulates the BlueTEC's emissions control system would not force Mercedes to use a new device, design, or emission standard.

### 2.     Mercedes' preemption cases do not apply.

Mercedes' reliance on *Jackson v. GMC.*, 770 F. Supp. 2d 570 (S.D.N.Y. 2011), *aff'd*, 472 F. App'x 80 (2d Cir. 2012), is misplaced.  The *Jackson* plaintiffs brought negligence and strict products liability claims against bus and engine manufacturers for harm allegedly caused by exposure to diesel exhaust fumes.  Plaintiffs admitted that their proof required evidence that the vehicles failed CAA emissions standards, *id.* at 572, and the court framed the issue as whether § 7543(a) "expressly preempts state common law tort actions premised on failure to meet the federal standards promulgated by the EPA pursuant to the CAA."  *Id.* at 574.  The court found preemption because "a state common law tort action that questions whether a defendant complied with standards promulgated under the CAA is an example of a state attempting to enforce the CAA, and is therefore subject to preemption."  *Id.* at 575.  In contrast, Plaintiffs' claims here do not depend on a finding that Mercedes violated federal emissions requirements. *See In re Caterpillar*, 2015 U.S. Dist. LEXIS 98784, at *36-37 (distinguishing *Jackson* on

similar grounds and observing that claims did not depend on a finding that the engines failed to comply with CAA standards).  Mercedes promised "the world's cleanest" diesel," "ultra-low emissions," "up to 30% lower greenhouse-gas emissions than gasoline," and reduced nitrogen oxides "by up to 90%" but did not deliver on those promises (and intentionally undermined them); that is the crux of Plaintiffs' claims.

For similar reasons, *In re Office of Attorney General of Sate of New York*, 269 A.D.2d 1 (N.Y. App. Div. 2000), is unpersuasive.  The New York Attorney General was investigating defendants' efforts to circumvent Federal emissions standards; his claims necessarily turned on that alleged violation and, therefore, were "attempt[ing] to enforce [a] standard relating to the control of emissions from new motor vehicles" as prohibited by § 7543(a).  *Id.* at *9-11.  Not so here, where Plaintiffs simply request compensation for deception.  For the same reason, *Metro. Taxicab Bd. of Trade v. City of N.Y.*, 633 F. Supp. 2d 83, 104 (S.D.N.Y. 2009), *aff'd*, 615 F.3d 152 (2d Cir. 2010), is inapposite, because it challenged regulations effectively forcing owners to purchase hybrid taxicabs in order to reduce emissions, thereby setting a "standard" in violation of § 7543(a).  In contrast, Plaintiffs' claims here do not seek to establish any such standard.

Mercedes' preemption cases did not involve claims by plaintiffs who purchased a product based on deceptions that were actionable in the absence of federal emissions requirements.  For this reason, Mercedes' cases are inapposite.

## B.   Plaintiffs' Claims Are Not Impliedly Preempted[17]

Implied preemption can occur in two general ways.  First, where Congress evidences an

---

[17] It is unclear precisely which forms of preemption underpin Mercedes' motion.  It contends generally that "Plaintiffs claims fall within the CAA's preemptive scope," without clarifying whether express or implied preemption principles are invoked (and failing to structure its analysis accordingly, as case law commands).  To the extent that Mercedes is trying to invoke implied preemption, Plaintiffs rebut that argument here.

intent to occupy a given field, any state law within that field is preempted.  *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203-04 (1983).  Second, state law may be preempted where it actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, *Florida Lime & Avocado Growers*, *Inc. v. Paul*, 373 U.S. 132, 142-43 (1963), or where it presents an obstacle to Congressional objectives.  *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).  Neither form of implied preemption applies here.

The CAA savings clause demonstrates that Congress did not intend to preempt the field of emissions regulation:  "Nothing in this part shall preclude or deny to any State or political subdivision thereof the right otherwise to control, regulate, or restrict the use, operation, or movement of registered or licensed motor vehicles."  42 U.S.C. § 7543(d).  This savings clause negates field preemption, and no court has found field preemption under the CAA.  *See Caterpillar*, 2015 U.S. Dist. LEXIS 98784, at *48 (explaining that no court has held that the CAA preempts the field and that "the savings clause suggests that Congress did not intend to occupy the entire field of motor vehicle regulation"); *Ass'n of Taxicab Operators*, *USA v. City of Dallas*, 866 F. Supp. 2d 595, 603 (N.D. Tex. 2012) (rejecting field preemption and noting "the strong evidence of Congressional intent to preserve broad State and local authority over use and operation of vehicles"), *aff'd*, 720 F.3d 534 (5th Cir. 2013); *Jensen Family Farms*, 644 F.3d at 941 (rejecting broad "relating to" preemption under the CAA given the *EMA* court's narrowing of the word "standard").[18]

---

[18] Mercedes cites *Metro. Taxicab Bd. of Trade v. City of N.Y.*, 615 F.3d 152, 157 (2d Cir. 2010), for the proposition that the phrase "in relation to" is expansive.  Br. at 15.  However, *Metro. Taxicab* is not persuasive given that the court was analyzing a different statute—49 U.S.C. § 32919(a), which related to fuel economy standards—and, therefore, did not construe the scope of the word "standard" in the CAA as the Supreme Court directed courts to do narrowly in *EMA*.  Here, because Plaintiffs' claims do not invoke a standard, the "in relation to" inquiry is unnecessary.  *See Ass'n of Taxicab Operators*, 720 F.3d at 542 n.10.  For similar reasons,

Conflict preemption also does not apply.  Plaintiffs' claims of deception do not make it impossible for Mercedes to comply with both state and federal law when prevailing on those claims will not require the Court to find a violation of the CAA.  *Caterpillar*, 2015 U.S. Dist. LEXIS 98784, at *52.   Moreover, Plaintiffs' claims are not an obstacle to Congressional objectives and will not interfere with the EPA's certification or recall process under the CAA because Plaintiffs are not seeking injunctive relief demanding compliance with the CAA.  *See id.* at *53; *see also id.* at *54 ("speculation regarding duplicative costs from this action and a potential EPA recall of the engines at issue is not a basis for preemption").

## VI.   THE PRIMARY JURISDICTION DOCTRINE DOES NOT BAR PLAINTIFFS' CLAIMS

There is a presumption against abstention based on primary jurisdiction:  "[f]ederal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them,' and '[a]bstention, therefore, is the exception rather than the rule.'"  *Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), and *Riley v. Simmons*, 45 F.3d 764, 770 (3d Cir. 1995)).  While there is no "fixed formula" for applying the doctrine of primary jurisdiction, each case turns on whether the reasons for the doctrine's existence are present, to wit, where "enforcement of the claim *requires* the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body . . . ."  *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956) (emphasis added).

Mercedes correctly identifies the four *Baykeeper* factors that courts apply to determine whether a court should abstain from considering Plaintiffs' claims.  *See* Br. at 17.  However,

---

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) (construing Airline Deregulation Act), also cited by Mercedes, does not apply.

Mercedes misapplies those factors, which militate strongly against abstention.  Plaintiffs' claims do not require the resolution of issues which, under the CAA, have been placed within the special competence of the EPA.  *Western Pac. R.R.*, 352 U.S. at 64.  Instead, Plaintiffs' claims involve run-of-the-mill contentions of deceptive conduct that courts are well-equipped to adjudicate.  Tellingly, the parties are unable to identify any case that was stayed based on the doctrine of primary jurisdiction when a consumer sought redress for a car manufacturer's consumer deceptions involving vehicle emissions.[19]  Mercedes cannot overcome the strong presumption against application of the doctrine here.

## A.    The Court is Fully Competent to Address the Issues in this Case

The first *Baykeeper* factor—whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise—"focuses on the competence of the court and the agency to address the matter," 660 F.3d at 691, and favors Plaintiffs here.  This Court is competent to decide cases involving alleged violations of state unfair and deceptive trade practice acts, false advertising, fraud, and alleged deception in the sales of automobiles generally.  *See*, *e.g.*, *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 305-06 (1976) ("The standards to be applied in an action for fraudulent misrepresentation are within the conventional competence of the courts, and the judgment of a technically expert body is not likely to be helpful."); *In re Ford Fusion & C-Max Fuel Econ. Litig.*, 2015 U.S. Dist. LEXIS 155383, at *82-83 (court may determine whether "alleged guarantees of real-world fuel economy were misleading to consumers without treading

---

[19] Mercedes' argument would require any action challenging deceptive statements made about an automaker's emissions to be referred to the EPA, regardless of whether the EPA had the power to review the statements in the first instance (which it does not).

on the calculation methods devised by the EPA, or their disclosure as mandated by the FTC").[20]

"When 'the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility.'" *Bextra*, 2006 U.S. Dist. LEXIS 95500, at *74 (quoting *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1104 (3d Cir. 1995)).[21]

Mercedes contends that assessing "compliance with regulatory standards" is necessary to evaluate Plaintiffs' claims (Br. at 18), but this is not true.  Plaintiffs can and will prove their claims without reference to the CAA by demonstrating through easy-to-understand expert testimony that Mercedes manipulates the BlueTEC emissions reduction systems to shut off or significantly reduce effectiveness under most real world driving conditions, which puts the lie to Mercedes' contentions that the BlueTEC engines are "the world's cleanest and most advanced diesel," had "ultra-low emissions," emitted "up to 30% lower greenhouse-gas emissions than gasoline," and "reduce[d] the nitrogen oxides in the exhaust gases by up to 90%."  The inquiry involves standard assessments for deceptive conduct that the Court and jury can make without the need to refer technical or policy considerations to the EPA.

---

[20] *See also Jovel v. I-Health, Inc.*, 2013 U.S. Dist. LEXIS 139661, at *20-21 (E.D.N.Y. Sept. 27, 2013) (primary jurisdiction does not apply in false advertising case concerning healthcare products claimed to support brain development because "every day courts decide whether conduct is misleading"); *In re Toyota Motor Corp.*, 754 F. Supp. 2d at 1200 (defect claims did "not arise under the Safety Act or NHTSA regulations" and were instead based on statutory, general contract, and tort principles and, therefore, "within the conventional competence of the courts"); *In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig.*, 2006 U.S. Dist. LEXIS 95500, at *74 (N.D. Cal. Aug. 16, 2006) (declining to apply primary jurisdiction to statements about a drug's purported superiority, commenting that "[c]ourts and juries frequently decide similar false advertising claims").

[21] Further, although Plaintiffs do not seek to enforce the CAA, Congress provided for broad enforcement of the CAA by specifically authorizing "citizen suits" in federal district court against any person who is alleged to have violated the CAA.  *See* 42 U.S.C. § 7604.  This factor militates against abstention.  *See Baykeeper*, 660 F.3d at 691 (citing citizen suit provisions of the Resource Conservation and Recovery Act and Clean Water Act—provisions that are quite similar to the citizens suit authorization under the CAA).

**B.     The Issue is Not Particularly Within the EPA's Discretion**

The second factor—whether the question at issue is particularly within the agency's discretion—also weighs against Mercedes.  It is not enough that the agency in question merely "maintain regulations" as Mercedes asserts the EPA does (*see* Br. at 19); the claims at issue have to be ***particularly*** within the agency's discretion given that the CAA authorizes federal courts to address clean air issues.  *See Baykeeper*, 660 F.3d at 691-92.  The EPA has no discretion to evaluate whether Mercedes' conduct has the capacity to deceive consumers or violate state law and has no power to award Plaintiffs damages under state unfair and deceptive trade practices acts.  Again, Plaintiffs' claims do not turn on interpretation of the CAA but instead apply garden-variety state statutes and common law generally governing claims of deception.  This matter is not within the particular discretion of the EPA.

The two cases that Mercedes cites under this factor are inapposite.  In *Natixis Fin. Prods., LLC v. Pub. Serv. Elec. & Gas Co.*, 2014 U.S. Dist. LEXIS 58943 (D.N.J. Apr. 29, 2014), the successor to an energy services company sued a public utility for alleged violations of an agreement established under an extensive regulatory scheme for the purchase of energy savings generated by customers and third parties.  *Id.* at *2-5.  The court found that the agency in question had "unique insight into the policy considerations behind the [program]," *id.* at *14, and authority and discretion over the program governing the agreement, as well as "expansive jurisdiction and regulatory power over utilities."  *Id.* at *20.  *Demmick v. Cellco P'ship*, 2011 U.S. Dist. LEXIS 34381 (D.N.J. Mar. 29, 2011), involved claims brought under the Federal Communications Act (FCA) against a cellular telephone company.  This Court abstained based on primary jurisdiction because resolution of the plaintiffs' claims required a determination of whether the carrier's practices were "just and reasonable" under the FCA, which many courts had found to be within the particular discretion of the Federal Communications Commission.  *Id.*

at *17-20.  In contrast here, Plaintiffs' claims are not brought under the CAA or a complex regulatory scheme.  Plaintiffs' claims simply ask the Court to determine whether the BlueTEC's compromised emissions performance on the road undermine its "clean diesel" promises—an inquiry that does not require EPA involvement or pivot on CAA regulatory interpretation.

## C.  There is No Danger of Inconsistent Rulings

The third *Baykeeper* factor directs courts to consider whether there exists a substantial danger of inconsistent rulings.  There is no such risk here.  Plaintiffs' claims do not conflict with any EPA directives; nor do they amount to a "collateral attack" on EPA action.  *See Baykeeper*, 660 F.3d at 692 (refusing to invoke primary jurisdiction where the claims did not conflict with agency directives).  The issue is whether Mercedes misrepresented to consumers the true nature of its BlueTEC vehicles given intentional emissions reduction failures on the road.  Resolving that inquiry will not interfere with the CAA regulatory scheme nor EPA actions thereunder.

Here again, Mercedes' authorities do not apply.  The plaintiffs in *Clark v. Actavis Grp*., 567 F. Supp. 2d 711, 715 (D.N.J. 2008), sought injunctive relief in the form of a court-ordered notice that could conflict with notification methods approved by the FDA as part of its pending recall for the drug.  In *Iowa Network Servs.*, *Inc. v. AT&T Corp.*, 2015 U.S. Dist. LEXIS 139968, at *21-22 (D.N.J. Oct. 14, 2015), an FCC adjudication against AT&T with probable overlapping issues was pending, raising the specter of inconsistent rulings on regulatory topics such as the FCC's cap rates and exclusive provider status under regulations governing competitive local exchange carriers.  And in *Global NAPS*, *Inc. v. Bell Atl.-N.J.*, *Inc.*, 287 F. Supp. 2d 532, 549 (D.N.J. 2003), the Court was concerned that a ruling in the case could conflict with actions taken by the New Jersey Board of Public Utilities in approving the agreements.  In each of these three cases, the relevant agency had taken, or was taking, action that could resolve the plaintiffs' claims.  In contrast, the EPA has not approved Mercedes' "clean diesel" representations, let

alone the alleged emissions systems manipulations undermining those representations (nor could it); there simply is no risk of inconsistent rulings on matters within the EPA's discretion.

**D.      Plaintiffs Have Not Applied to the EPA for Relief**

The fourth *Baykeeper* factor considers whether any prior application to a regulatory agency has been made, yet Plaintiffs have not applied to the EPA for relief (nor could they). Without offering any specifics or building a factual record, Mercedes contends that "there are ongoing inquiries by EPA and CARB" (Br. at 17), and that "EPA and CARB are currently considering relevant factual issues underlying all of plaintiffs' claims" (*id.* at 20).   While it appears that the United States Department of Justice has asked Mercedes to review its certification and admissions process related to exhaust emissions in the United States,[22] there is no evidence that any comprehensive investigation is underway.   Inconvenience and prejudice to Plaintiffs would result if a stay is granted in deference to unspecified administrative activity that may or may not be occurring.   In any event, even if regulatory review was pending, Plaintiffs' claims, which seek redress for Mercedes' deception, would not interfere with that inquiry; Plaintiffs do not seek injunctive relief that would compromise any investigation undertaken by the EPA or any action that the EPA may direct Mercedes to take.[23]

---

[22] *See*, *e.g.*, http://www.roadandtrack.com/new-cars/car-technology/news/a28932/mercedes-benz-bluetec-diesel-emissions/.

[23] Mercedes attempts to distinguish the Volkswagen diesel litigation, which Mercedes contends has a "different procedural posture" given that "EPA and CARB's investigation of VW was much more advanced and had already reached conclusions regarding potential violations . . . ." Br. at 19-20 n.5.   However, the Volkswagen diesel litigation demonstrates why primary jurisdiction does not apply, because the EPA publicly acknowledged a very detailed investigation, yet the class action proceeded without being stayed on primary jurisdiction grounds.   And the class action has resulted in a proposed settlement valued at over $10 Billion.

10585-11  887591 V1

### VII.   MERCEDES CANNOT COMPEL ARBITRATION BASED ON AGREEMENTS TO WHICH IT IS NOT A PARTY

**A.   Mercedes Cannot Enforce Arbitration Agreements to Which It Is Not A Party**

A fundamental "rule of contract law is that one who is not a party to an agreement cannot enforce its terms against one who is a party." *Lawson v. Life of the S. Ins. Co*., 648 F.3d 1166, 1167-68 (11th Cir. 2011); *see also* 13 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 37:1 (4th ed. 1999) (strangers to a contract generally acquire no rights under it). Instead, the "right of enforcement generally belongs to those who have purchased it by agreeing to be bound by the terms of the contract themselves." *Lawson*, 648 F.3d at 1168. This rule applies with equal force to agreements to arbitrate. *See, e.g*., *Kramer v. Toyota Motor Co*., 705 F.3d 1122, 1126 (9th Cir. 2013). Importantly the "presumption of arbitrability" cited by Mercedes, Br. at 21-22, "does not extend … to non-signatories to an agreement; it applies only when both parties have consented to and are bound by the arbitration clause." *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014). A non-signatory may enforce an arbitration agreement against a signatory only if "'traditional principles' of state law" so allow, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (citing, *e.g*., "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel"), none of which apply here.

Mercedes contends that the claims of Plaintiffs Andary (California), Feller (Virginia), and McVey (Colorado) should be dismissed because they "agreed to arbitrate any and all claims related to their . . . vehicle[s]." Br. at 21.[24] Yet, Mercedes is not entitled to enforce agreements

---

[24] Mercedes selectively quotes from three unauthenticated purchase contracts for these three Plaintiffs, yet Mercedes does not offer any custodial testimony regarding how the documents were created, maintained, or preserved, or whether such documents are regularly kept in the ordinary course of business. Therefore, compelled arbitration fails on this basis alone. *See*

to which it is not bound.  Indeed, Mercedes has expressly disavowed obligations under those contracts:  "Defendants did ***not*** sell or lease plaintiffs' vehicles and are not parties to those agreements.  Quite simply, Defendants did not make the promises in those contracts."  Br. at 26.

Mercedes nonetheless argues that it is entitled to enforce arbitration because the agreements cover "[a]ny claim" that arises from a "resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)."  Br. at 22.  So, the argument goes, as long as a given dispute falls within the arguable scope of an arbitration agreement, anyone, regardless of signatory status, can force arbitration.  This is wrong.  *See In re Toyota Motor Corp. Hybrid Brake Mktg.*, *Sales*, *Practices & Prods. Liab. Litig.*, 828 F. Supp. 2d 1150, 1159-60 (C.D. Cal. 2011) (broad language applying to "any such relationship with third parties who do not sign this contract" did not give nonsignatory Toyota right to force arbitration), *aff'd sub nom.*, 705 F.3d 1122 (9th Cir. 2013) ("the terms of the arbitration clauses are expressly limited to Plaintiffs and the Dealerships"); *see also Soto v. Am. Honda Motor Co.*, *Inc.*, 946 F. Supp. 2d 949, 955 (N.D. Cal. 2012) (denying compelled arbitration of class claim, explaining that "any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)" clause was "properly understood to refer to a secondary sale of the car, and not the relationship with the manufacturer").

Mercedes relies on *Sherer v. Green Tree Servicing*, *LLC*, 548 F.3d 379 (5th Cir. 2008), and *Blinco v. Green Tree Servicing, LLC*, 400 F.3d 1308 (11th Cir. 2005), but they are not persuasive.  Neither decision purports to apply California, Virginia, or Colorado law, and prior to *Arthur Andersen* in 2009, courts were divided as to whether federal or state law decides if a non-signatory can enforce an arbitration clause.  Accordingly, many older cases that rely exclusively

---

*Pearson v. United Debt Holdings*, *LLC*, 123 F. Supp. 3d 1070, 1073 (N.D. Ill. 2015); *Dillon v. BMO Harris Bank, N.A.*, 2016 WL 1175193, at *3 (M.D.N.C. Mar. 23, 2016).

on federal common law—including Mercedes' cases—have been "overruled or at least undermined to the point of abrogation." *Lawson*, 648 F.3d at 1171 (listing *Blinco* among cases so overruled); *see also Baldwin v. Cavett*, 502 F. App'x 350, 353 (5th Cir. 2012) (emphasizing the important distinction between signatories and non-signatories and rejecting argument that non-signatory accountants may enforce arbitration agreement simply because the agreement expressly covers claims against "employees or agents").

Sherer and Blinco are also distinguishable because the arbitration provisions in those cases were mandatory, whereas the relevant arbitration agreements at issue here all require a party to the agreement to ***elect*** to proceed to arbitration.[25]  This distinction ultimately dooms Mercedes' argument.  *See Lawson*, 648 F.3d at 1171 (notwithstanding broad scope of dispute clause, non-signatory not permitted to enforce arbitration because the agreement was not mandatory and granted only "you or we" the right to elect to arbitrate); *Weingarten Realty Inv'rs v. Miller*, 495 F. App'x 418, 421 (5th Cir. 2012) (arbitration provision expressly provided that only a party to the document may request arbitration).

Only disputes arising between these three Plaintiffs and their respective dealership are subject to arbitration, and only then upon the election by one of the parties to the contract, which is not Mercedes.  Accordingly, Mercedes' textual argument fails.

---

[25] *See* Fleming Decl. Ex. 1 (Andary) ("[a]ny claim or dispute … between you and us or our employees, agents, successors, or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, ***at your or our election***, be resolved by neutral, binding arbitration….") (emphasis added); Fleming Decl. Ex. 2 (Feller) (similar); Fleming Decl. Ex. 3 (McVey) ("***At the request of either party***, the American Arbitration Association . . . shall commence and conduct this arbitration….") (emphasis added; capitalization altered).  Defendants do not contend to be "employees, agents, successors, or assigns" of the dealerships.

## B.      Equitable Estoppel Does Not Apply

Mercedes' fallback position based on equitable estoppel fares no better.  *See* Br. at 24.

Mercedes cites no authority suggesting that the relevant jurisdictions (California, Virginia, and

Colorado) even recognize the doctrine.  *See*, *e.g.*, *Lenox MacLaren Surgical Corp. v. Medtronic*,

*Inc.*, 449 F. App'x 704, 709 (10th Cir. 2011) ("The Colorado Supreme Court has not addressed

whether and under what circumstances equitable estoppel might apply to compel arbitration

between a signatory and a nonsignatory.").  Moreover, equitable estoppel should not apply given

the fact that the arbitration agreements expressly specify who is entitled to request arbitration,

which strongly suggests that others not identified (like Mercedes) were not intended by the

parties to have that right.  *See*, *e.g.*, *Weingarten Realty*, 495 F. App'x at 422 (affirming refusal to

apply equitable estoppel because "the arbitration provision of the Loan Agreement expressly

provides that only a party to a Loan Document may request arbitration").

In any event, before *Arthur Andersen* made it clear that state law governs application of

the doctrine, federal courts developed two lines of equitable estoppel authorities that continue to

be followed;[26] neither line applies here.  Most of the authorities cited by Mercedes address a

signatory seeking to compel a non-signatory to arbitrate,[27] but these cases do not apply because

Mercedes is not a signatory.  The more relevant cases involving non-signatories generally hold

that equitable estoppel may be appropriate when:  (i) "a signatory must rely on the terms of the

written agreement in asserting its claims against the nonsignatory or the claims are 'intimately

---

[26] Although federal courts must apply a particular state's law or determine how a particular state's highest court would rule, federal courts' previous articulation of governing standards continue to be cited as persuasive authority.

[27] *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, *S.A.S.*, 269 F.3d 187 (3d Cir. 2001); *Grigson v. Creative Artists Agency*, *LLC*, 210 F.3d 524 (5th Cir. 2000); *Thompson-CSF*, *S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773 (2d Cir. 1995); *Griswald v. Coventry First LLC*, 762 F.3d 264 (3d Cir. 2014).

- 34 -

founded in and intertwined with' the underlying contract," or (ii) "the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and 'the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.'" *Kramer*, 705 F.3d at 1128-29 (internal quotes and citations omitted).[28] Equitable estoppel is "much more readily applicable" when both bases are present. *Grigson*, 210 F.3d at 527-28. Neither factor is present here.

First, Plaintiffs, as signatories, do not rely on their agreements with the dealers in asserting their claims against Mercedes; nor are those claims "intimately founded in and intertwined with" those agreements. *See Kramer*, 705 F.3d at 1130 (plaintiffs' consumer fraud, false advertising, and breach of contract claims did not rely on the terms of agreements between plaintiffs and dealers); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, 838 F. Supp. 2d 967, 991-95 (C.D. Cal. 2012) (plaintiffs' claims are "independently viable in that they do not rely on the terms of the customer agreements to support them"). Second, Mercedes does not contend that Plaintiffs allege "interdependent and concerted misconduct" by the dealers or any other signatory to the agreements. Instead, Mercedes simply contends that Plaintiffs' "claims arise from the contract because, without signing the purchase and lease agreements, plaintiffs . . . would not possess the vehicles upon which each of their claims is based." Br. at 24. But numerous courts have rejected similar "but for" arguments as insufficient to satisfy the "intimately founded in and intertwined with" standard. *See*, *e.g.*, *Lenox*, 449 F. App'x at 709-10; *Lawson*, 648 F.3d at 1173-74; *Soto*, 946 F. Supp. 2d at 956.[29]

---

[28] Although the circuits have not uniformly articulated the standards for applying estoppel, their formulations contain "common elements." *Lenox*, 449 F. App'x at 708; *E.I. DuPont de Nemours & Co.*, 269 F.3d at 199.

[29] *See also Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 617-18 (10th Cir. 2014) (declining to apply equitable estoppel because operating agreement did not "form the legal basis" of plaintiffs'

Because Mercedes is a stranger to the arbitration agreements, is not entitled to request arbitration under their plain terms, and cannot invoke an equitable estoppel exception, the Court should reject Mercedes' request to dismiss these three Plaintiffs on arbitration grounds.

## VIII.   PLAINTIFFS PROPERLY PLEAD FRAUDULENT CONCEALMENT

### A.   Plaintiffs Adequately Put Mercedes On Notice of the Precise Misconduct Charged

Numerous courts have recognized that *omission*-based fraud claims are necessarily held to a lower pleading standard, for it is impossible to plead with particularity as to something that is not known to any person except the one who is lying.  For example, in *Corson v. Toyota Motor Sales*, *U.S.A.*, *Inc.*, 2013 U.S. Dist. LEXIS 189262, at *11 (C.D. Cal. July 18, 2013), the court recognized that while fraudulent omission claims are subject to the heightened standard under Rule 9(b), "a plaintiff alleging fraud by omission is not required to specify the time, place, and specific content of the fraudulent omission because he would not be able to do so."  *Id.* (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. Cal. 2009)); *see also Skeen v. BMW of N. Am.*, *LLC*, 2014 U.S. Dist. LEXIS 9256, at *23 (D.N.J. Jan. 24, 2014) (discussing the relaxed standard in fraudulent omission cases that should be flexibly applied); *Feldman v. Mercedes-Benz USA*, *LLC*, 2012 U.S. Dist. LEXIS 178924, at *26-27 (D.N.J. Dec. 18, 2012) ("[P]laintiffs pleading a fraud by omission claim are not required to plead fraud as precisely as they would for a false representation claim."); *Montich v. Miele USA*, *Inc.*, 849 F. Supp. 2d 439, 451 (D.N.J. 2012) (Rule 9(b)'s "heightened standard is somewhat relaxed in a case based on a fraudulent omission," rather than one based on misrepresentation.); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 545-46 (D. Md. 2011) (lower standard employed for claims based on omission); *Falk v.*

_____

fraudulent misrepresentation and omission claims); *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 231 (2009) (claims that "logically presuppose the existence" of the contract are insufficient because allegations "must rely on or depend on the terms of the written agreement, not simply on the fact that an agreement exists").

*GMC*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007) ("[A] fraud by omission claim can succeed without the same level of specificity required by a normal fraud claim.").

Three recent auto class action omission cases reassert this common sense approach.  In *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087 (N.D. Cal. 2014), the court found:

> Plaintiffs adequately allege the 'who what when and how' given the inherent limitations of an omission claim.  In short, the 'who' is Ford, the 'what' is its knowledge of a defect, the 'when' is prior to the sale of Class Vehicles, and the 'where' is the various channels of information through which Ford sold Class Vehicles.

*Id.* at 1096; *see also Velasco v. Chrysler Grp., LLC*, 2014 U.S. Dist. LEXIS 117620, at *5 (C.D. Cal. Aug. 22, 2014) (same); *Philips v. Ford Motor Co.*, 2015 U.S. Dist. LEXIS 88937, at *42 (N.D. Cal. July 7, 2015) (applying lowered pleading standard).

Plaintiffs have more than satisfied the relaxed requirement of identifying the "who, what, when, where, and how" of Mercedes' omissions and misstatements as follows:

| | | |
|---|---|---|
| **Who?** | Mercedes. | ¶¶ 65-79 |
| **What?** | In the identified BlueTEC models, "Mercedes knew about, manipulated, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects." | ¶¶ 20, 141 |
| **Where?** | Omission:  Disclosures about BlueTEC's dirty nature and the fact that emission controls are turned off on the road. | ¶¶ 106-109, 136 |
| | Misrepresentations: Plaintiffs identified 15 specific advertisements. | ¶¶ 101-103 |
| **When?** | Omission:  During the production years of the BlueTEC-equipped vehicles. | ¶ 13 |
| | Misrepresentations:  At the identified times of each of the specific advertisement misrepresentations. | ¶¶ 101-104 |
| **How?** | Mercedes through "its agents, dealers, or other representatives." | ¶ 20 |
| **Why?** | "[P]rofits over people." | ¶ 14 |

Accordingly, Plaintiffs adequately plead claims under the requirements of fraudulent concealment in the 30 states at issue.  *See* Appendix A.  Plaintiffs have identified with specificity

the core omission that Mercedes failed to disclose—that BlueTEC vehicles are not low emission vehicles on the road.  This is sufficient to plead fraudulent concealment in each state.

Although Mercedes insists that Plaintiffs' claims fail because the Complaint does not differentiate between Defendants (Br. at 28-29), Mercedes is mistaken.  Plaintiffs took great care in drafting the Complaint and identifying the involved entities.  Each of the Mercedes defendants acted toward one unified goal:  selling the BlueTEC vehicles.  Daimler was the master:  it "owns 100% of the capital share in [MBUSA]" (¶ 76), paid for MBUSA's current headquarters (¶ 77), and supplies the vehicles and controls its marketing and distribution through its U.S. subsidiary, Mercedes-Benz USA (MBUSA), which sold them to Plaintiffs (¶¶ 66-69).  Critically, "the relationship between Daimler AG and [MBUSA] is governed by a General Distributor Agreement that gives Daimler AG the right to control nearly every aspect of [MBUSA's] operations—including sales, marketing, management policies, information governance policies, pricing, and warranty terms."  ¶ 75.  Daimler AG is simply the "alter ego" of MBUSA.  ¶ 79.

While the Complaint contains paragraphs directed at each individual Defendant, because it is impossible to "lump together" that which cannot be separated, Plaintiffs' use of "Mercedes" to commonly refer to both entities engaging in the ***same misconduct*** is proper throughout the Complaint.  *See Peel v. BrooksAmerica Mortg. Corp.*, 788 F. Supp. 2d 1149, 1160 (C.D. Cal. 2011) (Rule 9(b) satisfied where general common allegations were made against all of the defendants, coupled with some separate paragraphs making more specific allegations about each); *BK Trucking Co. v. PACCAR, Inc.*, 2016 U.S. Dist. LEXIS 85149, at *19 (D.N.J. June 30, 2016) (naming defendants together in one action allowed when repair of specific component systems "is uniquely within Defendants' control.  The Court cannot expect Plaintiffs to provide more specificity about the ATS without the benefit of discovery.").

The relationship between Daimler AG and MBUSA is not complicated or a relationship of strangers.  Unlike Mercedes' cases (*see* Br. at 28-29), this is not a case in which multiple, competing defendants across an industry are lumped together in one sweeping complaint, and Plaintiffs do not seek to impute knowledge or concert of action from other, competing automakers.  *See*, *e.g.*, *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999) (eight different defendants that plaintiff pled together generally as "defendants").

**B.     Plaintiffs' Fraudulent Concealment Claim is Plausibly Pled**

> **1.     Plaintiffs need not plead each of the pervasive affirmative misrepresentations that Plaintiffs saw and relied on.**

In addition to the "who, what, when, where, why, and how" allegations, Plaintiffs have detailed the marketing materials that Mercedes used to sell BlueTEC vehicles.  ¶¶ 101, 103-04.  Rather than provide "bare bones" or "fill-in-the-blank pleading allegations" of the type criticized by the Court in *In re Elk Cross Timbers Decking Mktg.*, *Sales Practices & Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 144790, at *83 (D.N.J. Oct. 26, 2015), the Complaint identifies eight affirmative misrepresentations in ads regarding the low-emission characteristics of the BlueTEC vehicles (¶ 101) and seven affirmative misrepresentations in ads relating to the purported environmental friendliness of the BlueTEC vehicles (¶¶ 102-03).   Further, the Complaint identifies the dates of each advertisement with as much specificity as possible in footnotes.  While Mercedes says that Plaintiffs do not identify "which specific vehicles" to which the advertising applies (Br. at 31), this marketing material applied to ***all*** BlueTEC U.S. diesel models and included general press releases (¶¶ 101(a), (b), 104(b)) and Mercedes' web copy (¶¶ 101(g)-(h), 102, 103(a), (c), 104(a)).   And each Plaintiff alleges that he or she relied on such marketing materials in deciding to make his or her purchasing decision.  *See*, *e.g.*, ¶ 20.

Contrary to Mercedes' contentions (*see* Br. at 30-31), these detailed allegations suffice to properly plead reliance and causation.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (Cal. 2009).  Causation can be shown by pleading that, in an advertisement's absence, "in all reasonable probability [the plaintiff] would not have engaged in the injury-producing conduct." *Id.* at 328.  This is especially true "where the defendant has engaged in a pervasive campaign of false claims over a long period of time."  *Id.* at 330.  In such a case, "the named plaintiffs [need not] cite a specific advertisement or advertisements that influenced their purchases."  *Id.*  Thus, "a plaintiff need [not] demonstrate individualized reliance on specific misrepresentations to satisfy the reliance requirement."  *Id.* at 327; *see also In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 74 (D.N.J. 2009), *opinion clarified*, 267 F.R.D. 113 (D.N.J. 2010), *opinion modified on reconsideration*, 2010 WL 2976496 (D.N.J. July 22, 2010) ("plaintiffs asserting fraud claims involving primarily failure to disclose material information need not demonstrate 'positive proof of reliance' in order to recover.  All that is necessary is that the facts withheld be material in the sense that a reasonable [purchaser] might have considered them important in the making of [his or her] decision.") (internal citations and quotations omitted); *In re Toyota Motor Corp.*, 754 F. Supp. 2d at 1172 (plaintiffs satisfied Rule 9(b) by identifying the challenged representations (that Toyota vehicles are safe) and where the representations were made (in magazine advertisements, press kits, and brochures).  Other states take a similar approach, assuming reliance where causation is plausibly pled—or not requiring a showing of reliance at all.  *See* Appendix A.

Plaintiffs here similarly need not demonstrate their individualized reliance on specifically-delineated advertisements because they each plead:  (i) that they relied on pervasive advertisements touting the cleanliness of the BlueTEC engines, advertisements that Plaintiffs

contend caused them to purchase their vehicles, and (ii) that they would not have bought or leased the vehicles had they known the truth, or would have paid less. *See*, *e.g.*, ¶ 20.

### 2. Mercedes necessarily owed a duty to disclose based on omitted material factual information that it exclusively knew and concealed.

Mercedes erroneously contends that Plaintiffs must, in the complaint, plead a "duty to disclose" (Br. at 29), even though Plaintiffs have (*e.g.*, ¶ 197).  A duty to disclose arises as a matter of the factual conduct pled, and not because of a legal label that may be pled.  *See* Appendix A (outlining the relevant cases, per state, for a duty to disclose to arise).  Labels aside, Plaintiffs allege the core omission at issue that gave rise to a duty to disclose:  Mercedes failed to disclose that it intentionally rigged the BlueTEC emissions reduction systems to shut down or significantly reduce effectiveness during real-world driving.  Generally speaking, a duty to disclose based on omissions arises if Mercedes (i) had exclusive knowledge of material facts not known to plaintiffs *or* (ii) if Mercedes actively concealed material facts.  *See* Appendix A (citing cases for each state's elements).  Plaintiffs plead sufficient facts under each theory.

#### a. Exclusive knowledge.

Mercedes had exclusive knowledge of material facts not known to Plaintiffs, namely that Mercedes programmed the BlueTEC emissions reduction systems to turn off or substantially reduce effectiveness on the road.  ¶¶ 106-109.  Plaintiffs' allegations are not pulled from the sky: Plaintiffs' experts and multiple independent organizations have tested Mercedes' BlueTEC vehicles and have confirmed the scheme.  ¶¶ 111-35.  In the face of Mercedes' "clean diesel" marketing, Plaintiffs could not have, in the exercise of reasonable diligence, independently discovered Mercedes' lie prior to the purchase.

Plaintiffs' allegations of Mercedes' exclusive knowledge are entirely plausible given that highly trained experts were required to uncover the deception.  Further, numerous courts have

found that vehicle makers have exclusive knowledge of non-obvious design and manufacturing details. *See*, *e.g.*, *Digby Adler Grp., LLC v. Mercedes-Benz U.S.A.*, *LLC*, 2015 U.S. Dist. LEXIS 116427, at *8-9 (N.D. Cal. Sept. 1, 2015) (plaintiff adequately pled exclusive knowledge by referencing a Mercedes document instructing dealers on how to remedy defective rear air-conditioning units if a customer complained); *Skeen*, 2014 U.S. Dist. LEXIS 9256, at *27 (plaintiffs adequately pled exclusive knowledge of timing chain tensioner problem); *Johnson v. Harley-Davidson Motor Co. Grp.*, *LLC*, 2011 U.S. Dist. LEXIS 80011, at *12 (E.D. Cal. July 21, 2011) (exclusive knowledge properly pled because defendant was in a superior position to know its defective engines).

### b.     Concealment.

Plaintiffs allege that Mercedes undertook active steps to conceal the true facts about its BlueTEC vehicles.  For example, although Mercedes initially confirmed in a magazine interview that the BlueTEC system ceases to function below 50°F (¶ 106), Mercedes has since reversed course, offering a wholesale denial that it manipulates emissions testing results (¶ 121).  Such conduct is the definition of concealment, giving rise to a duty to come clean.

Courts have held that plaintiffs adequately plead concealment against automakers when plaintiffs allege that the defendant was aware of a vehicle characteristic, such as a defect, and failed to alert customers to its existence.  *See*, *e.g.*, *Valencia v. Volkswagen Grp. of Am. Inc*., 2015 U.S. Dist. LEXIS 105555, at *13 (N.D. Cal. Aug. 11, 2015) (VW denied defect and blamed driver error for the uneven brake wear); *In re Toyota Motor Corp.*, 754 F. Supp. 2d at 1192 (allegations that Toyota repeatedly denied the existence of the alleged defect sufficient to plead active concealment); *Tietsworth v. Sears & Roebuck & Co.*, 720 F. Supp. 2d 1123, 1134 (N.D. Cal. 2010) (active concealment sufficiently pled where complaint alleged that defendants denied product was defective); *Ehrlich v. BMW of N. Am. LLC*, 801 F. Supp. 2d 908, 919 (C.D. Cal.

2010) (plaintiffs adequately alleged that BMW concealed that windshields were highly susceptible to cracking).

Mercedes contends that Plaintiffs fail to plead the materiality of the allegedly omitted facts.  Br. at 33.  This is not true.  The Complaint specifically alleges that Mercedes knew that customers expected "exceptional environmental sustainability" and that "the environmental sustainability of vehicles is gaining importance in the purchasing decision."   ¶ 98.   The Complaint also alleges that each Plaintiff "selected and ultimately purchased his [or her] vehicle, in part, because of" Mercedes' clean diesel representations (*e.g.*, ¶ 20).  Materiality is adequately and fulsomely pled.

## C.   The Economic Loss Doctrine Does Not Apply to Plaintiffs' Claims

The economic loss doctrine bars claims based on injury to the product itself but does not apply in cases in which harm "result[s] in damage to other property [than the defective product itself]."  *In re Elk Cross Timbers Litig.*, 2015 U.S. Dist. LEXIS 144790, at *73 (citing *Metropolitan Pro. & Cas. Ins. Co. v. James McHugh Constr. Co.*, 1999 U.S. Dist. LEXIS 16475, 1999 WL 971283, *2 (N.D. Ill. Oct. 21, 1999)) (internal quotations omitted).  The Court "first determine[s] whether the injury is to the product itself (for which recovery is barred by the economic loss rule) or to property other than the defective product (for which plaintiffs may recover in tort)."  *Jimenez v. Superior Ct.*, 29 Cal. 4th 473, 483, 127 Cal. Rptr. 2d 614, 58 P.3d 450 (Cal. 2002).[30]

---

[30] Mercedes has not moved to dismiss based on the economic loss doctrine as to Plaintiffs' fraudulent concealment claims under the laws of Alabama, Arizona, California, Colorado, Connecticut, Delaware, Georgia, Idaho, Illinois, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, Ohio, Tennessee, Texas, Utah, Washington, West Virginia, and Wisconsin.  *Compare* Dkt. No. 38-3 *with* Appendix A.  Mercedes further has not moved to dismiss based on the economic loss doctrine as to Plaintiffs' statutory unfair practice-act claims under the laws of New Jersey, Alabama, Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Kentucky, Maryland, Massachusetts, Michigan, Minnesota,

The economic loss rules does not apply here, where the complained of injury is not to the vehicles themselves.  Rather, Plaintiffs allege that they overpaid as a result of Mercedes' misrepresentations and omissions.  In other words, the fraud occurred at the time of the bargain itself by overpaying for vehicles that were not as promised.  *See supra* Section IV.B.  For example, in *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936 (N.D. Cal. 2014), the court rejected economic loss bar arguments under both Florida and North Carolina law because "[i]f the fraud is in a term of the bargain [not an act of performance, then the claim] is not barred by the economic loss rule."  *Id.* at 965 (citing *HTC Leleu Family Trust v. Piper Aircraft, Inc.*, 2012 U.S. Dist. LEXIS 149498, at \*10-11 (S.D. Fla. Oct. 17, 2012)).  The law is the same (or similar) in the few states in which Mercedes has argued the economic loss rule applies.  *See* Appendix A.

## IX.   PLAINTIFFS PROPERLY PLEAD UNFAIR AND DECEPTIVE TRADE PRACTICE ACT CLAIMS

### A.   Plaintiffs' Consumer Protection Claims Are Pled With Sufficient Specificity

Plaintiffs adequately plead claims under governing state consumer protection laws, all of which are broadly worded to provide a remedy for almost any conceivable form of deceptive or unfair conduct.  *See* Appendix B.  Plaintiffs have identified with specificity the core omission that Mercedes failed to disclose (BlueTEC vehicles are not low emission vehicles) and the exact low-emissions misrepresentations at issue.  This is sufficient to plead actionable violations of the relevant consumer protection laws, whether Rule 9(b) applies or not.[31]

---

Montana, Nevada, New York, Ohio, Tennessee, Texas, Utah, Washington, West Virginia, and Wisconsin.  *Compare* Dkt. No. 38-4 *with* Appendix A.  Because the burden is on Mercedes to argue for such dismissal, and it has failed to do so, dismissal is not appropriate as to the foregoing states.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) ("defendant bears the burden of showing that no claim has been presented").

[31] Even though Plaintiffs' allegations satisfy Rule 9(b), that rule does not apply to claims under many of the relevant state consumer protection acts.  *See, e.g.*, *Costa v. Kerzner Int'l Resorts, Inc.*, 2011 WL 2519244, at \*2 (S.D. Fla. June 23, 2011) (Rule 9(b) does not apply to Florida

Mercedes argues that the statutory consumer protection claims should be dismissed for the same unsupported contentions made against the fraudulent concealment claims.  Br. at 35-37.  However, as discussed above, Mercedes is on notice of the precise misconduct with which it is charged.  The same omissions of fact giving rise to the common-law fraud claims are the basis for the consumer protection claims and should be sustained for the same reasons.

Mercedes' contention that Plaintiffs have failed to allege the causal connection between the alleged misrepresentations and their damages (or reliance, to the extent that reliance would be an element of the claim) (Br. at 36) ignores Plaintiffs' omissions allegations.  Plaintiffs' claims are based, in part, upon Mercedes' failure to disclose that it intentionally rigged its BlueTEC emissions reduction systems to shut down or significantly reduce effectiveness during real-world driving, resulting in emitting pollutants at a higher level than their gasoline fueled counterparts.  None of Mercedes' marketing materials disclosed this.  In an omissions case, it is sufficient for the plaintiff simply to allege that he would not have purchased the product had he known the concealed fact.  *See*, *e.g.*, *Puerto v. Timbertech*, *Ltd.*, 2015 WL 8664276, at *5 (D.N.J. Dec. 10, 2015); *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 447 (D.N.J. 2012) (citing cases); *Stewart v. Smart Balance*, *Inc.*, 2012 U.S. Dist. LEXIS 138454, at *34 (D.N.J. June 25, 2012).[32]  Each of the Plaintiffs alleges that they would not have purchased their vehicles had Mercedes disclosed that the BlueTECs were not low emission vehicles.  ¶¶ 20-64, 145.

---

DUTPA claims); *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (action under New York General Business Law § 349 need only meet the notice-pleading requirements of Rule 8(a) as it does "not require proof of the same essential elements (such as reliance) as common-law fraud"); *Hess v. Chase Manhattan Bank USA*, *N.A.*, 220 S.W.3d 758 (Mo. 2007) (omission or concealment of material fact under Missouri MPA requires lower quantum of proof than comparable elements of common law fraud claims).

[32] Mercedes relies substantially upon cases interpreting the New Jersey Consumer Fraud Act.  Br. at 36.  However, on this issue, there does not appear to be any substantial difference between New Jersey's Consumer Fraud Act and other consumer protection statutes.  *See*, *e.g.*, *Fleisher v.*

Regarding claims of affirmative deception, Mercedes' contention that Plaintiffs are simply unhappy with their vehicles and can point to no facts that were misrepresented to them (Br. at 36) is false.  The Complaint alleges in detail that Mercedes advertised the BlueTEC vehicles as earth friendly, having ultra-low emissions, and having emissions lower than gasoline vehicles.  ¶¶ 98-104.  Plaintiffs allege that these claims are false because, on the road, BlueTEC vehicles are—just as Mercedes intended—dirty and emit pollutants far in excess of their gasoline counterparts.  ¶¶ 105-141; *see also* Section IV.C *supra*.  These allegations suffice to place Mercedes on notice of the precise misconduct that forms the basis of the Complaint.

Mercedes also argues that Plaintiffs have failed to plead damages or ascertainable loss with sufficient specificity.  Br. at 37.[33]  But in order to suffer an ascertainable loss, Plaintiffs are not required to show monetary loss, only that they purchased a product and got something less than what had been promised.  *See* Section IV.A *supra*; *Marcus*, 687 F.3d at 606; *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. at 73; *Smajlaj*, 782 F. Supp. 2d at 99.

While some cases from this District require a plaintiff to specifically allege the price paid for the goods in question and the amount of the ascertainable loss, *see In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 438-39 (D.N.J. 2015), the weight of authority is to the

---

*Fiber Composites, LLC*, 2012 U.S. Dist. LEXIS 157343, at *36 (E.D. Pa. Nov. 2, 2012) (Massachusetts, New York, and New Jersey consumer protection statutes satisfied by allegation that plaintiff would have acted differently if defendant had disclosed omitted fact) (cited in Br. at 36).

[33] As with causation, Mercedes relies primarily upon cases interpreting the New Jersey Consumer Fraud Act as a proxy for the other state consumer protection claims.  As a result, Plaintiffs likewise concentrate on New Jersey law but, as did Mercedes, provide additional law for other states in Appendix B.  Mercedes' Appendix C cherry-picks cases that are largely inapposite; none involve deliberate acts of misconduct such as the conduct in which Plaintiffs allege Mercedes engaged.  Mercedes also fails to provide any content or analysis for its cases, much less provide any connection between the allegations in those cases and the facts and circumstances alleged here.  Consequently, Mercedes' authorities have limited utility for determining whether the Complaint satisfies Rule 9(b).

contrary.  The threshold for pleading ascertainable loss is low, as long as the plaintiff has alleged a definite, certain and measurable loss rather than a hypothetical loss.  *Shelton v. Restaurant.com, Inc.*, 543 F. App'x 168, 170 (3d Cir. 2013).  There is no level of specificity required in pleading the ascertainable loss, *Mickens*, 900 F. Supp. 2d at 446 (citing *Theidemann*), and the law does not require specificity for specificity's sake.  The level of particularity required is sufficient detail to put the defendant on notice of the precise misconduct with which it is charged, *Francis E. Parker Mem. Home, Inc. v. Georgia-Pacific LLC*, 945 F. Supp. 2d 543, 558 (D.N.J. 2013) (quoting *Smajlaj*, 782 F. Supp. 2d at 104), which Plaintiffs have done.  It is not necessary for Plaintiffs to plead a specific dollar amount to survive at the pleading stage.  *Id.*; *In re Gerber Probiotic*, 2013 U.S. Dist. LEXIS 121192, at *16-17 n.4; *Dzielak v. Whirlpool Corp.*, 26 F. Supp. 3d 304, 336 (D.N.J. 2014).  All that Plaintiffs are required to plead is that they received something less than or different from what they reasonably expected in view of defendant's presentations.  *In re Gerber Probiotic*, 2013 U.S. Dist. LEXIS 121192, at *15-16.

Plaintiffs have alleged a theory of damage and have put Mercedes on notice of its wrongdoing—that Plaintiffs overpaid for their BlueTEC vehicles based on Mercedes' omissions and misrepresentations.  While Plaintiffs do not plead a specific dollar amount of damage, which would require expert testimony based on data yet to be produced, these allegations put Mercedes on notice of the type of harm that Plaintiffs have suffered based on the foregoing authorities.

## B.     Mercedes' Fraudulent Concealment Tolls Statutes of Limitation

Mercedes argues that Plaintiffs' consumer protection claims from Alabama, Florida, and Michigan must be dismissed because the respective statutes of limitations have run and cannot be tolled.  Br. at 38-39.  Mercedes is wrong.

Mercedes argues that the four-year statute of limitations began to run for Jonathan Mose's Alabama Deceptive Trade Practices Act (ADTPA) claim in 2007, the model year of Mr.

Mose's vehicle and when it was sold to its original purchaser.  But Mercedes ignores the ADTPA's operative limitations provision that "no action may be brought under this chapter more than one year after the person bringing the action **discovers or reasonably should have discovered** the act or practice which is the subject of the action . . . ."  ALA. CODE § 8-19-14 (emphasis added).  Plaintiffs allege that for years Mercedes actively concealed the existence of its BlueTEC emissions system manipulations and still does.  *See*, *e.g.*, ¶¶ 7-10; 14, 121.  It was only after investigation and testing in the wake of the Volkswagen and Audi diesel emissions scandal (¶ 105; ¶¶ 124-139), coupled with admissions made by Mercedes in a February 2016 German magazine (¶ 106), that Plaintiffs were able to discover the alleged actions which are the subject of this litigation (¶¶ 105-141).  The commencement of Mr. Mose's action based on the very recent discovery of Mercedes' deceptive conduct falls within the one year period adopted by ALA. CODE § 8-19-14.

In Florida, claims founded on statutory liability have a four-year statute of limitations. FLA. STAT. ANN. § 95.11(3)(f).  Mercedes again attempts to link its statute of limitations argument to the date of the original sale of Mr. Watkins vehicle before 2014 (Br. at 39), but ignores the well-settled proposition that "[t]he doctrine of fraudulent concealment will operate to toll the statute of limitations when it can be shown that fraud has been perpetrated on the injured party sufficient to place him in ignorance of his right to a cause of action or to prevent him from discovering his injury."  *In re Takata Airbag Prods. Liab. Litig.*, 2016 U.S. Dist. LEXIS 78662, *174 (S.D. Fla. June 14, 2016) (quoting *Am. Home Assur. Co. v. Weaver Aggregate Tramp., Inc.*, 990 F. Supp. 2d 1254, 1272 (M.D. Fla. 2013)); *id.* at *179-80 (applying doctrine of fraudulent concealment to toll statute of limitations for FDUTPA claim); *accord In re Automotive Parts Antitrust Litig.*, 2015 WL 1849138, at *4 (E.D. Mich. Apr. 22, 2015) (noting same).  Plaintiffs

have alleged fraudulent concealment (in addition to discovery rule tolling and estoppel, ¶¶ 146-154) sufficient to toll the running of the statute of limitations on Dedrick Watkins' FDUTPA claim.

The Michigan Consumer Protection Act (MCPA) contains a six-year statute of limitations. MICH. COMP. LAWS ANN. § 445.911(7). Mercedes again argues in conclusory fashion that the statute of limitations runs from the original date of purchase of Ms. O'Neal's 2009 vehicle. Even if the six-year limitations period began to run in 2009, fraudulent concealment operates to toll the statute of limitations. MICH. COMP. LAWS ANN. § 600.5855; *see also Hennigan v. General Elec. Co.*, 2010 WL 3905770, at *13 (E.D. Mich. Sept. 29, 2010) (acts of affirmative concealment toll the MCPA statute of limitations). As with the foregoing two Plaintiffs, the running of Ms. O'Neal's MCPA claim is tolled due to Mercedes' concealment.

## C.    Pre-Suit Notice Was Timely Served

Finally, Mercedes argues that because Daimler AG did not expressly receive pre-suit notice, although admittedly MBUSA did, the consumer protection claims for Plaintiffs from Alabama, California, Georgia, Massachusetts, Texas, and West Virginia should be dismissed as to Daimler AG.[34] To the extent that Plaintiffs may have been required to provide a separate CLRA notice to Daimler AG, *see Herron v. Best Buy Stores*, *L.P.*, 2014 WL 465906, at *4 (E.D. Cal. Feb. 4, 2014), the requirement to serve a CLRA notice applies only to the existing complaint. *See Morgan v. AT&T Wireless Servs.*, 177 Cal. App. 4th 1235, 1260-61 (2009). The appropriate remedy is to allow Plaintiffs to send Daimler AG a CLRA notice and file an

---

[34] While Mercedes' Appendix C references all of these states, it cites only to California cases relating to the California Consumers Legal Remedies Act (CLRA). *Cruz v. Chang*, 400 F. Supp. 2d 906 (W.D. Tex. 2005), has nothing to do with consumer protection claims. *Cruz* addressed the need for Texas medical malpractice plaintiffs to serve an expert report and CV within 180 days after the filing of a complaint. *Cruz*, 400 F. Supp. 2d at 910-16. Because Mercedes addressed only the CLRA, Plaintiffs will likewise only address California law.

amended complaint at least 30 days thereafter, assuming that Daimler AG does not agree in the meantime to remedy the problem.  *See Morgan*, 177 Cal. App. 4th at 1261; *Herron*, 2014 WL 465906, at *5.

## X.  CONCLUSION

For the reasons set forth above, Mercedes' motion should be denied.

DATED:  August 5, 2016

**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
*Interim Lead Counsel for Plaintiffs and the*
*Proposed Classes*


By    /s/ James E. Cecchi
        JAMES E. CECCHI
5 Becker Farm Road
Roseland, New Jersey  07068
Tel:  (973) 994-1700
Fax:  (973) 994-1744

Steve W. Berman
Sean R. Matt
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 8th Avenue, Suite 3300
Seattle, Washington  98101
Tel: (206) 623-7292
Fax: (206) 623-0594
steve@hbsslaw.com
sean@hbsslaw.com

*Interim Lead Counsel for Plaintiffs and the*
*Proposed Classes*

Christopher A. Seeger
**SEEGER WEISS LLP**
77 Water Street, New York,
New York, NY 10005
Tel:  (212) 584-0700
Fax:  (212) 584-0799
cseeger@seegerweiss.com

10585-11  887591 V1

Bob Hilliard
**HILLIARD MUNOZ GONZALES LLP**
719 S Shoreline Blvd, # 500
Corpus Christi, TX 78401
(361) 882-1612

Jeffrey S. Goldenberg
**GOLDENBERG SCHNEIDER, L.P.A.**
One West Fourth Street, 18th Floor
Cincinnati, OH  45202-3604
Tel:  (513) 345-4291
Fax:  (513) 345-8294
jgoldenberg@gs-legal.com

David Freydin
Timothy A. Scott
**LAW OFFICES OF DAVID FREYDIN, PC**
8707 Skokie Blvd., Suite 305
Skokie, Illinois  60077
Tel:  (847) 972-6157
Fax:  (866) 897-7577
david.freydin@freydinlaw.com

Lesley Weaver
**BLOCK & LEVITON LLP**
520 3rd St., Suite 108
Oakland, California  94607
Tel:  (415) 968-8999
Fax:  (617) 507-6020
Lesley@blockesq.com

*Other Attorneys for Plaintiffs and the Proposed
Classes*

10585-11  887591 V1