# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE MERCEDES-BENZ EMISSIONS LITIGATION | Civil Action No. 2:16-cv-881 (JLL) (JAD)<br><br>Motion Date: October 3, 2016<br><br>**ELECTRONICALLY FILED**<br><br>**ORAL ARGUMENT REQUESTED** |

### DEFENDANTS MERCEDES-BENZ USA, LLC'S AND DAIMLER AG'S
### REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
### AND TO COMPEL ARBITRATION

Daniel W. Nelson
Geoffrey M. Sigler
Lucas C. Townsend
Chantale Fiebig
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5306
Tel: (202) 887-3731
Fax: (202) 530-4254

Matthew J. Kemner
Troy M. Yoshino
Eric J. Knapp
Squire Patton Boggs (US) LLP
44 Montgomery Street, Suite 400
San Francisco, California 94104
Tel: (415) 743-2441
Fax: (415) 989-0932

*Attorneys for Defendants Mercedes-Benz USA, LLC and Daimler AG*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

I.    Plaintiffs Lack Article III Standing................................................................................ 3

II.   Plaintiffs' Claims Are Barred Under the Doctrines of Preemption and Primary
      Jurisdiction ................................................................................................................... 9

      A.    Plaintiffs' Claims Are Preempted Under the Clean Air Act Because They
            Refer and Are Connected to Standards Relating to Emissions ............................ 9

      B.    The Primary Jurisdiction Doctrine Bars All of Plaintiffs' Claims ...................... 13

III.  Plaintiffs Cannot Avoid Arbitration by Dropping Their Breach of Contract Claims ...... 16

IV.   Plaintiffs' Fraudulent Concealment Claims Should Be Dismissed ................................ 20

      A.    Plaintiffs Fail to Allege Sufficient Facts to State a Claim .................................. 21

      B.    The Economic Loss Doctrine Bars Plaintiffs' Fraud-Based Claims .................. 25

V.    Plaintiffs' State Statutory Claims Should Be Dismissed ................................................ 26

      A.    Plaintiffs Have Failed to Allege Fraud-Based Statutory Violations with
            Sufficient Particularity ...................................................................................... 26

      B.    Applicable Statutes of Limitations and Repose Bar Plaintiffs' Claims .............. 28

CONCLUSION .................................................................................................................. 30

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abuhouran v. KaiserKane, Inc.*,
  2011 WL 6372208 (D.N.J. Dec. 19, 2011)...........................................................................12

*Aetna Health Inc. v. Davila*,
  542 U.S. 200 (2004)........................................................................................................11

*Aprigliano v. Am. Honda Motor Co.*,
  979 F. Supp. 2d 1331 (S.D. Fla. 2013) ..........................................................................24

*Arcand v. Brother Int'l Corp.*,
  673 F. Supp. 2d 282 (D.N.J. 2009) ............................................................................3, 24

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009)........................................................................................................18

*Ass'n of Taxicab Operators USA v. City of Dall.*,
  720 F.3d 534 (5th Cir. 2013) ..........................................................................................12

*Astiana v. Hain Celestial Grp.*,
  783 F.3d 753 (9th Cir. 2015) ..........................................................................................13

*Atl. Circulation, Inc. v. Midwest Circulations, LLC*,
  2012 WL 5876515 (M.D. Pa. Nov. 20, 2012) ................................................................17

*Austin-Spearman v. AARP & AARP Servs. Inc.*,
  119 F. Supp. 3d 1 (D.D.C. 2015)......................................................................................3

*Baez v. Root*,
  2014 WL 1414433 (S.D. Fla. April 11, 2014).................................................................29

*Baykeeper v. NL Indus., Inc.*,
  660 F.3d 686 (3d Cir. 2011)................................................................................14, 15, 16

*Beck v. Park W. Galleries Inc.*,
  2016 WL 3653955 (Mich. Ct. App. July 7, 2016)...........................................................30

*Beshear v. Volkswagen Grp. of Am., Inc.*,
  2016 WL 3040492 (E.D. Ky. May 25, 2016) ..................................................................15

*BK Trucking Co. v. PACCAR, Inc.*,
  2016 WL 3566723 (D.N.J. June 30, 2016).......................................................................23

*Blinco v. Green Tree Serv., LLC*,
  400 F.3d 1308 (11th Cir. 2005) ......................................................................................18

## TABLE OF AUTHORITIES
### (cont'd)

Page(s)

*Braitberg v. Charter Comms. Inc.*,
-- F.3d --, 2016 WL 4698283 (8th Cir. Sept. 8, 2016) ............................................................3

*In re Caterpillar, Inc., C13 and C15 Engine Prods. Liab. Litig.*,
2015 WL 4591236 (D.N.J. July 29, 2015) .....................................................................11, 28

*Cibrowski v. Pella Window & Door Co.*,
2005 WL 3478159 (Mich. Ct. App. Dec. 20, 2005) ............................................................30

*Collins v. Davol, Inc.*,
56 F. Supp. 3d 1222 (N.D. Ala. 2014) ................................................................................29

*Demmick v. Cellco P'ship*,
2011 WL 1253733 (D.N.J. Mar. 29, 2011) ..........................................................................15

*Dineen v. Pella Corp.*,
2015 WL 6688040 (D. S.C. Oct. 30, 2015) .........................................................................29

*Donachy v. Intrawest U.S. Holdings, Inc.*,
2012 WL 869007 (D.N.J. Mar. 14, 2012) ............................................................................22

*In re Elk Cross Timbers Decking Mktg., Sales Pracs. & Prods. Liab. Litig.*,
2015 WL 6467790 (D.N.J. Oct. 26, 2015) ...........................................................................21

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
541 U.S. 246 (2004) ............................................................................................................12

*Faistl v. Energy Plus Holdings, LLC*,
2012 WL 3835815 (D.N.J. Sept. 4, 2012) ...........................................................................22

*FCMA, LLC v. Fujifilm Recording Media U.S.A., Inc.*,
2010 WL 3076486 (D.N.J. Aug. 5, 2010) ...........................................................................17

*Flintkote Co. v. Aviva PLC*,
769 F.3d 215 (3d Cir. 2014) ................................................................................................18

*In re Ford Tailgate Litig.*,
2014 WL 1007066 (N.D. Cal. Mar. 12, 2014) .....................................................................29

*In re Gerber Probiotic Sales Practices Litig.*,
2013 WL 4517994 (D.N.J. Aug. 23, 2013) ...........................................................................5

*Goldstein v. Roxborough Real Estate, LLC*,
2015 WL 5823056 (D.N.J. Oct. 2, 2015) .............................................................................18

*Gray v. Toyota Motor Sales, U.S.A.*,
2012 WL 313703 (C.D. Cal. Jan. 23, 2012) ..........................................................................6

iii

# TABLE OF AUTHORITIES

(cont'd)

Page(s)

*Green v. Green Mountain Coffee Roasters, Inc.*,
    279 F.R.D. 275 (D.N.J. 2011) ............................................................................... 27

*Griglak v. CTX Mortg. Co.*,
    2010 WL 1424023 (D.N.J. Apr. 8, 2010) ............................................................... 16

*Griswold v. Coventry First LLC*,
    762 F.3d 264 (3d Cir. 2014) .................................................................................. 18

*Guzman v. Bridgepoint Educ., Inc.*,
    2011 WL 4964970 (S.D. Cal. Oct. 19, 2011) ......................................................... 4

*Hammer v. Vital Pharms., Inc.*,
    2012 WL 1018842 (D.N.J. Mar. 26, 2012) .............................................................. 8

*Harnish v. Widener Uni. Sch. of Law*,
    -- F.3d --, 2016 WL 4363133 (3d Cir. Aug. 16, 2016) ................................... 3, 8, 9

*HCA Health Servs. of Fla., Inc. v. Hillman*,
    906 So. 2d 1094 (Fla. Dist. Ct. App. 2004) ......................................................... 29

*Herndon v. Green Tree Serv., LLC*,
    2016 WL 1613973 (M.D. Pa. Apr. 22, 2016) ....................................................... 19

*Hornicek v. Cardworks Serv., LLC*,
    2011 WL 2623274 (E.D. Pa. June 29, 2011) ........................................................ 18

*Hughes v. Panasonic Consumer Elecs. Co.*,
    2011 WL 2976839 (D.N.J. July 21, 2011) .............................................................. 8

*Jackson v. Gen. Motors Corp.*,
    770 F. Supp. 2d 570 (S.D.N.Y. 2011) ........................................................ 9, 10, 13

*Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*,
    644 F.3d 934 (9th Cir. 2011) ................................................................................ 12

*Joseph v. Wiles*,
    223 F.3d 1155 (10th Cir. 2000) ............................................................................ 20

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .............................................................................. 21

*Konrad v. Epley*,
    2013 WL 6200009 (E.D.N.Y. Nov. 25, 2013) ...................................................... 11

*Koronthaly v. L'Oreal USA, Inc.*,
    374 F. App'x 257 (3d Cir. 2010) ..................................................................... 4, 26

**TABLE OF AUTHORITIES**
(cont'd)

Page(s)

*Kwikset Corp. v. Superior Court,*
  51 Cal. 4th 310 (Cal. 2011) ................................................................. 5

*Leisure Pass N. Am., LLC v. Leisure Pass Grp., Ltd.,*
  2013 WL 4517841 (D.N.J. Aug. 26, 2013) ........................................ 8

*Lieberson v. Johnson & Johnson Consumer Cos.,*
  865 F. Supp. 2d 529 (D.N.J. 2011) ................................................... 27

*Lightning Lube, Inc. v. Witco Corp.,*
  4 F.3d 1153 (3d Cir. 1993) ............................................................... 25

*Major League Baseball v. Morsani,*
  790 So. 2d 1071 (Fla. 2001) ............................................................ 29

*Maloney v. Verizon Internet Servs., Inc.,*
  413 F. App'x 997 (9th Cir. 2011) ...................................................... 6

*Mance v. MBUSA,*
  901 F. Supp. 2d 1147 (N.D. Cal. 2012) ........................................... 19

*MDNet, Inc. v. Pharmacia Corp.,*
  147 F. App'x 239 (3d Cir. 2005) ...................................................... 23

*Metro. Taxicab Bd. of Trade v. City of N.Y.,*
  615 F.3d 152 (2d Cir. 2010) ............................................................ 10

*Mladenov v. Wegmans Food Mkts., Inc.,*
  124 F. Supp. 3d 360 (D.N.J. 2015) ................................................... 28

*Montich v. Miele USA, Inc.,*
  849 F. Supp. 2d 439 (D.N.J. 2012) ................................................... 22

*Morales v. Trans World Airlines, Inc.,*
  504 U.S. 374 (1992) ......................................................................... 11

*In re MyFord Touch Consumer Litig.,*
  46 F. Supp. 3d 936 (N.D. Cal. 2014) ............................................... 25

*In re Nickelodeon Consumer Privacy Litig.,*
  2014 WL 3012873 (D.N.J. July 2, 2014) ........................................... 7

*In re Office of the Att'y Gen. of N.Y.,*
  709 N.Y.S.2d 1 (N.Y. App. Div. 2000) ........................................ 9, 10

*Oh v. AT&T Corp.,*
  76 F. Supp. 2d 551 (D.N.J. 1999) ................................................... 14

# TABLE OF AUTHORITIES
## (cont'd)

Page(s)

*Oral Cancer Prevention Int'l, Inc. v. Johnson & Johnson,*
    2011 WL 6130599 (D.N.J. Dec. 7, 2011) ................................................................16

*Peel v. BrooksAmerica Mortg. Corp.,*
    788 F. Supp. 2d 1149 (C.D. Cal. 2011) ................................................................23

*Peruto v. TimberTech Ltd.,*
    126 F. Supp. 3d 447 (D.N.J. 2015) ................................................................28

*Richmond v. Lumisol Elec. Ltd.,*
    2014 WL 1405159 (D.N.J. Apr. 10, 2014) ................................................................23

*In re Riddell Concussion Reduction Litig.,*
    77 F. Supp. 3d 422 (D.N.J. 2015) ................................................................27

*Rodriguez v. Nationstar Mortg. LLC,*
    2014 WL 5426972 (D. Mass. Oct. 24, 2014) ................................................................28

*Ross v. AXA Equitable Life Ins. Co.,*
    115 F. Supp. 3d 424 (S.D.N.Y. 2015) ................................................................5

*Selby v. Deutsche Bank Trust Co. Ams.,*
    2013 WL 1315841 (S.D. Cal. Mar. 28, 2013) ................................................................19

*Sherer v. Green Tree Serv., LLC,*
    548 F.3d 379 (5th Cir. 2008) ................................................................18, 19

*Sicily by Car S.p.A. v. Hertz Global Holdings, Inc.,*
    2015 WL 2403129 (D.N.J. May 20, 2015) ................................................................18

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ................................................................3

*Stanley v. Huntington Nat'l Bank,*
    492 F. App'x 456 (4th Cir. 2012) ................................................................28

*State Farm Fire & Cas. Co. v. Owen,*
    729 So. 2d 834 (Ala. 1998) ................................................................25

*Stevenson v. Mazda Motor of Am., Inc.,*
    2015 WL 3487756 (D.N.J. June 2, 2015) ................................................................21

*Sutler v. Redland Ins. Co.,*
    2013 WL 3732873 (D. Mass. July 12, 2013) ................................................................17

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) ................................................................22

# TABLE OF AUTHORITIES
### (cont'd)

Page(s)

*Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*,
    601 F.3d 329 (5th Cir. 2010) ...................................................19

*In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*,
    2009 WL 2940081 (D.N.J. Sept. 11, 2009) ...............................8

*Traylor v. Awwa*,
    899 F. Supp. 2d 216 (D. Conn. 2012)........................................21

*In re Volkswagen "Clean Diesel" Litig.*,
    CL-2016-9917 (Va. Cir. Ct. Aug. 30, 2016).............................10

*Werwinski v. Ford Motor Co.*,
    286 F.3d 661 (3d Cir. 2002).......................................................25

*Weske v. Samsung Elecs. Am., Inc.*,
    2012 WL 833003 (D.N.J. Mar. 12, 2012)............................21, 24

*Wilder v. Midland Credit Mgmt.*,
    2010 WL 2499701 (N.D. Ga. May 20, 2010)............................19

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ...................................................24

*Young v. Johnson & Johnson*,
    2012 WL 1372286 (D.N.J. Apr. 19, 2012) ...............................4, 5

**Statutes**

42 U.S.C. § 7543(a) ...........................................................................11

Ala. Code § 8-19-14...........................................................................29

Ala. Code § 8-19-10(e) ......................................................................28

Fla. Stat. § 95.051(2).........................................................................29

Ga. Code § 10-1-399(b) .....................................................................28

Mass. Gen. Laws Ch. 93A, § 9(3)......................................................28

Tex. Bus. & Com. Code § 17.505.......................................................28

**Rules**

Fed. R. Evid. 901(b)(1), (4) ...............................................................17

## TABLE OF AUTHORITIES
### (cont'd)

Page(s)

Va. Supreme Ct. R. 5A:1 ...................................................................................................10

**Regulations**

40 C.F.R. § 86.1803-01......................................................................................14, 15, 26

40 C.F.R. § 86.1844-01............................................................................................14, 15

74 Fed. Reg. 66,496 (Dec. 15, 2009) ...............................................................................6

## INTRODUCTION

Plaintiffs' opposition cannot refashion their claims to circumvent the many failings demonstrated by Defendants' motion to dismiss.  First, plaintiffs' opposition jettisons most of the generalized environmental and speculative future injury allegations from the Consolidated and Amended Complaint, Dkt. 17 ("CAC"), in effect conceding these claims cannot give them standing to sue.  The only theory of standing that plaintiffs defend—that they supposedly were denied the "benefit of the bargain" they were promised through advertising statements "aggressively tout[ing]" the environmental friendliness of Mercedes BlueTEC diesel vehicles, Opp. 1, Dkt. 45—lacks supporting factual allegations in the complaint.  Not a single named plaintiff alleges that he or she personally saw and relied on *any* of the specific statements that they purport to challenge, and plaintiffs also fail to allege facts showing that any of the challenged statements were false or deceptive.  This deficiency is reason enough to grant this motion.

Second, in an attempt to avoid preemption and primary jurisdiction, plaintiffs now want to bury the relationship between their claims about diesel emissions and the EPA regulations that govern diesel emissions and emissions control technology.  But plaintiffs cannot now ignore the express regulatory underpinnings of their complaint, which refers to EPA emissions standards ***more than seventy times***, or downplay the agencies' roles in regulating the highly-complex emissions control technology that plaintiffs purport to challenge (including the currently ongoing review of diesel emissions in the United States by the EPA and CARB).

Third, plaintiffs abandon their breach-of-contract claims in an attempt to avoid several plaintiffs' binding arbitration provisions.  But these arbitration provisions apply by their express

terms to all of these plaintiffs' claims, regardless of legal theory, so they cannot plead their way around them simply by dropping their breach-of-contract claims.

Fourth, plaintiffs cannot argue their way around the other numerous, incurable deficiencies in the complaint.   Plaintiffs fail to identify specific factual allegations to satisfy essential elements of their statutory and fraudulent concealment causes of action, let alone any that would satisfy the heightened Rule 9(b) standard that applies to fraud-based claims. Plaintiffs also cannot avoid the economic loss doctrine, as well as applicable statutes of limitation and repose that bar several of their statutory claims.

What plaintiffs lack in plausible, specific factual allegations they cannot make up for with mischaracterizations and hyperbole in their brief.  Plaintiffs contend, for example, that Defendants supposedly "confessed to a small part of the scheme" in *Der Spiegel*.  Opp. 1.  But that mischaracterizes what the article said: as plaintiffs' complaint alleges, the article actually explained that Daimler AG used functionality necessary to protect the vehicles' engines, CAC ¶ 106—a purpose expressly authorized by EPA regulations.  Likewise, plaintiffs' repeated attempts to compare Defendants with Volkswagen are completely lacking in factual support or merit.  In any event, these unsupported and irrelevant assertions cannot substitute for the missing factual allegations that are required to satisfy threshold standing requirements and state essential elements of plaintiffs' claims.  Plaintiffs' complaint should be dismissed in its entirety or, at a minimum, held in abeyance pending resolution of regulators' ongoing inquiry.

## ARGUMENT

### I.   PLAINTIFFS LACK ARTICLE III STANDING

The few allegations of injury or damages that are included in the complaint—in just four out of its 1,451 paragraphs—focus on the claimed effects of a particular pollutant, NOx, on the environment and public health, or the alleged possibility of future impacts on plaintiffs' vehicles if they are later recalled.  CAC ¶¶ 142-45.  Plaintiffs appropriately do not dispute that these generalized, speculative allegations fail to support plaintiffs' individual standing to sue.  Similarly, in light of the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, plaintiffs could not and do not dispute that alleged regulatory non-compliance is insufficient to confer standing.  136 S. Ct. 1540, 1548-49 (2016); *see also Braitberg v. Charter Comms. Inc.*, -- F.3d --, 2016 WL 4698283, at *3-5 (8th Cir. Sept. 8, 2016).  Instead, plaintiffs argue they have standing under a "benefit of their bargain" theory.  Opp. 10, 13.  That theory rests on ***just a single allegation*** that plaintiffs "would not have purchased or leased these vehicles, or would have paid substantially less for the vehicles" if they had not been fraudulently advertised.  CAC ¶ 145; *see also*, *e.g.*, *id.* ¶ 20 (same general assertion repeated for each named plaintiff).

Plaintiffs fail to plead the necessary facts to support this "benefit-of-the-bargain" theory of standing.  The alleged injury under a "benefit-of-the-bargain" theory is the "difference between the product [the plaintiff] received and the product as represented at purchase."  *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 300-01 (D.N.J. 2009) (brackets omitted).  To support this theory, plaintiffs must identify the representations that the defendant made *to them* when making their purchases.  It is insufficient to allege "beliefs and expectations" that are not tied to "what the parties agreed."  *Austin-Spearman v. AARP & AARP Servs. Inc.*, 119 F. Supp. 3d 1, 13 (D.D.C. 2015); *see also Harnish v. Widener Uni. Sch. of Law*, -- F.3d --, 2016 WL 4363133, at *7 n.5 (3d Cir. Aug. 16, 2016) (benefit of the bargain is a "contract-like" theory of injury).

Plaintiffs' complaint and opposition brief refer to several advertisements that they argue were deceptive.  Opp. 39 (cataloging 15 advertisements that plaintiffs challenge); *see also id.* 1, 10, 16-17, 21, 39 (repeated references to same statements).  But ***none*** of the named plaintiffs alleges these statements were part of the "bargain" he or she struck when purchasing or leasing their vehicle.  As Defendants pointed out in their opening brief and plaintiffs do not dispute, plaintiffs do not allege any facts showing that they saw or relied on any of these specific statements; they merely assert, generally, that they "purchased [their] vehicle[s], in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Defendants."  Opp. 18; *see also, e.g.*, CAC ¶¶ 20-64.  No plaintiff identifies any specific "advertisements and representations" that he or she saw, or even that the challenged advertisements related to the specific models they purchased or leased.

In fact, plaintiffs have now completely abandoned their breach-of-contract claims arising from their purchase or lease contracts—the actual, express terms of their "bargain" in purchasing or leasing their vehicles.  Opp. 1 n.2; *see Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010) (holding that plaintiff "could not have been denied the benefit of any bargain" because her "purchases were not made pursuant to a contract"); *Young v. Johnson & Johnson*, 2012 WL 1372286, at *4 (D.N.J. Apr. 19, 2012) (dismissing for lack of benefit-of-the-bargain standing where "purchases . . . were not made pursuant to a contract").  Plaintiffs offer no factual allegations whatsoever about any claims, representations, or warranties made to them when they purchased or leased a vehicle.  Plaintiffs' failure to identify any specific benefit-of-the-bargain statement(s) dooms their standing under this theory.  *See Guzman v. Bridgepoint Educ., Inc.*, 2011 WL 4964970, at *5 (S.D. Cal. Oct. 19, 2011) (plaintiff lacked standing where she failed "to allege sufficient facts to show that she relied on any misrepresentations," and made only

"conclusory allegations regarding general misrepresentations"); *Ross v. AXA Equitable Life Ins. Co.*, 115 F. Supp. 3d 424, 436 n.2 (S.D.N.Y. 2015) (plaintiffs lacked standing where they did not allege that their purchase "was specifically influenced by [defendant's] misrepresentations").

These deficiencies distinguish this case from those in which plaintiffs successfully pled a benefit-of-the-bargain theory. In *In re Gerber Probiotic Sales Practices Litigation*, for example, this Court held only those plaintiffs who alleged facts showing they saw or relied on specific claims on the product's label at the time of purchase had standing. 2013 WL 4517994 (D.N.J. Aug. 23, 2013). In doing so, the court specifically distinguished—and dismissed for lack of standing—the claims of other plaintiffs who alleged, as plaintiffs do here, they were misled by Gerber's advertising, but failed to specify "even the general type or medium of 'advertising' to which they were allegedly exposed." *Id.* at *6; *see also Young*, 2012 WL 1372286, at *4 (no standing under benefit-of-the-bargain theory where plaintiff did "not set forth allegations as to how he paid a premium for [the product] or received a product that did not deliver the advertised benefits"). Like the latter set of plaintiffs in *Gerber*, plaintiffs' claims should be dismissed.[1]

Plaintiffs' benefit-of-the-bargain theory also fails because they cannot allege facts showing that the advertisements they challenge—even *if* they had seen and relied on these statements—were false or deceptive. Plaintiffs purport to challenge three categories of statements. They first challenge two comparative statements that certain vehicles at issue emitted "up to 30% lower greenhouse-gas emissions than gasoline" or "reduced the nitrogen

---

[1] Plaintiffs' other cases also are easily distinguishable. Plaintiffs argue, for example, that the California state court decision in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (Cal. 2011), "is paradigmatic." Opp. 12. But *Kwikset* also involved a very specific and expressly regulated labeling claim ("Made in the U.S.A.") that the plaintiff allegedly saw and relied on when buying the product—not general allegations of advertising statements as plaintiffs assert here. Further, *Kwikset* does not address Article III standing; rather, it involved the requirements for standing in California state court under California law. 51 Cal. 4th at 323.

oxides in the exhaust gases by up to 90%."  Opp. 17 (alteration omitted).  Plaintiffs claim these statements are false based on their "testing" of unspecified vehicles, but none of plaintiffs' "testing" allegations show that these statements were false.  In particular, both statements clearly state that the vehicles would reduce emissions **"up to"** the specified levels—not that they would always achieve these levels, in every driving condition, as plaintiffs suggest they must.  *See Maloney v. Verizon Internet Servs., Inc.*, 413 F. App'x 997, 999 (9th Cir. 2011) (affirming dismissal of deception claims based on advertisements that Verizon's internet service would provide "up to" three megabits per second because no reasonable consumer would "have been deceived by [the] statements" since the qualifier "up to" means "the same or less than"); *Gray v. Toyota Motor Sales, U.S.A.*, 2012 WL 313703, at *6 (C.D. Cal. Jan. 23, 2012) (dismissing fraud claims based on fuel economy advertisements that made no representations regarding consumers' ability to achieve those levels).

Additionally, with respect to the first of these two statements—that certain vehicles emit "up to 30% lower green-house gas emissions than gasoline"—plaintiffs fail to allege any facts whatsoever.  Plaintiffs allege their testing showed "higher" levels of a single pollutant, NOx, *see* CAC ¶¶ 125-37, but NOx is not a greenhouse gas under EPA regulations, *see* Endangerment & Cause or Contribute Findings for Greenhouse Gases Under Section 202(a) of the Clean Air Act, 74 Fed. Reg. 66,496 (Dec. 15, 2009).  Plaintiffs do not allege anything about the "greenhouse-gas emissions" in their vehicles.  Nor do plaintiffs allege any testing of gasoline vehicles, or how the greenhouse gas levels for any diesel vehicles compare to the corresponding levels for gasoline vehicles.  They therefore fail to plead any factual basis to challenge the statement that certain vehicles emit "up to 30% lower greenhouse gas emissions than gasoline."

In addition, even as to the testing that plaintiffs did perform, plaintiffs still refuse to address another issue raised in Defendants' opening brief: whether they tested any of their own vehicles or models—or any of the vehicles about which these statements were made.  This failure is a *pleading* deficiency, because plaintiffs expressly rely on these testing allegations to contend that they were denied the "benefit of the bargain" and therefore have standing.[2] Plaintiffs' reliance on the alleged European testing is similarly unavailing, particularly because they concede that these studies also "did not test the precise models at issue here."  Opp. 17 n.12.

The second category of advertisements plaintiffs challenge involves subjective statements—that certain vehicles are "Earth Friendly," amount to "Clean Diesel," have "ultra-low emissions," and are "the world's cleanest diesel automobiles."  CAC ¶ 101; *see also* Opp. 16-17.  Here again, plaintiffs' allegations about "testing" levels of a single pollutant, NOx, in certain conditions, in certain vehicles, fails to a support a claim that these subjective statements are false.  Plaintiffs identify no objective standard or factual allegation to plausibly support any claim that these statements were false.  Although plaintiffs' allegations in the complaint referred extensively to the EPA's emissions standards, they now acknowledge in their opposition brief that these standards do not govern the on-road conditions they claim to have tested.  *Compare* CAC ¶¶ 9-10 (alleging testing revealed that "Mercedes BlueTEC vehicles' on-road emissions . . . exceeded federal standards"), *with* Opp. 21 ("there is no federal standard for emissions performance on the road").  Having offered no other objective standard or factual allegation by

---

[2]  In a series of unsupported assertions buried in a footnote, plaintiffs argue that they did not need to include the make and model vehicles that they own or lease in their own testing because all class vehicles have either a 2.1 liter or a 3.0 liter engine, and supposedly "[a]ll 2.1 liter engine models have the same engine and emissions control system, as do all 3.0 liter engine models." Opp. 7 n.5.  Not only is this assertion completely unsupported, but it is an "after-the-fact allegation[]" that should be disregarded because it is nowhere "in the complaint itself."  *In re Nickelodeon Consumer Privacy Litig.*, 2014 WL 3012873, at *7 (D.N.J. July 2, 2014).

which to challenge these statements, plaintiffs cannot use these subjective statements to argue they were denied the benefit of the bargain. *See, e.g.*, *Hughes v. Panasonic Consumer Elecs. Co.*, 2011 WL 2976839, at *12 (D.N.J. July 21, 2011) (dismissing challenge to a claim that a particular product was "industry leading"); *Hammer v. Vital Pharms., Inc.*, 2012 WL 1018842, at *7 (D.N.J. Mar. 26, 2012) (dismissing challenge to a claim that a product was "the world's fastest, hardest hitting"); *In re Toshiba Am. HD DVD Mktg. & Sales Prac. Litig.*, 2009 WL 2940081, at *9 (D.N.J. Sept. 11, 2009) (dismissing challenge to a claim that the product was "the best").

The third category of advertisements challenged in plaintiffs' complaint involves statements that the vehicles comply with emissions standards. *See, e.g.*, CAC ¶¶ 151, 188, 192, 196. Plaintiffs not only fail to allege that anyone saw or relied on these statements, but their opposition brief also completely ignores them, presumably in an attempt to downplay these allegations to avoid dismissal based on the doctrines of preemption or primary jurisdiction. By failing to respond to Defendants' arguments that their challenges to these statements should be dismissed, plaintiffs have abandoned these challenges, and all of their claims relating to these statements should be dismissed. *See Leisure Pass N. Am., LLC v. Leisure Pass Grp., Ltd.*, 2013 WL 4517841, at *4 (D.N.J. Aug. 26, 2013).

Plaintiffs therefore lack standing under a benefit-of-the-bargain theory.[3] They fail to allege facts showing they saw or relied on any of the advertisements they challenge when buying

---

[3] Plaintiffs assert only a benefit-of-the-bargain theory, but to the extent their opposition and complaint can be construed as asserting an "out-of-pocket" theory of damages, that theory fails as well. "Under the out-of-pocket rule, a plaintiff's damages are the difference between the price paid and the actual value of the property acquired." *Harnish*, 2016 WL 4363133, at *5 (internal quotation marks omitted). And as *Harnish* held, this theory is not cognizable where, as here,

or leasing their vehicles.  Plaintiffs also fail to allege facts showing that the challenged statements were false, so they cannot show that the statements deprived them of the alleged bargain.

## II.   PLAINTIFFS' CLAIMS ARE BARRED UNDER THE DOCTRINES OF PREEMPTION AND PRIMARY JURISDICTION

### A.   Plaintiffs' Claims Are Preempted Under the Clean Air Act Because They Refer and Are Connected to Standards Relating to Emissions

Plaintiffs do not contest that state-law claims enforcing a standard—whether from the EPA or some other source—that has "any connection with or reference to the control of emissions from motor vehicles are preempted by [the CAA's express preemption provision]." *Jackson v. Gen. Motors Corp*., 770 F. Supp. 2d 570, 576 (S.D.N.Y. 2011) (internal quotation marks omitted). Instead, plaintiffs argue that emissions standards "are not remotely implicated by plaintiffs' claims."  Opp. 2.  But their complaint shows otherwise: ***dozens of times***, they refer to the EPA's emissions standards, alleging that Defendants represented that BlueTEC vehicles "complied with EPA regulations" when, allegedly, they were "non-EPA-compliant."  CAC ¶¶ 188, 221, 262; *see also id. passim* (over 70 references to "emissions standards" in complaint).  Lead plaintiffs' counsel also repeatedly told Magistrate Judge Dickson that their case was about alleged non-compliance with regulatory emissions standards.  *See, e.g.*, Dkt. 26: May 10, 2016 Hrg. Tr. 7:14-16 ("They violate the emissions standards.  They shouldn't have been certified.  They shouldn't have been sold *ab initio*.").

All of plaintiffs' claims are plainly preempted because they require "a determination of whether [Defendants] complied with the Federal emissions standard."  *In re Office of the Att'y*

---

plaintiffs have failed to allege that the actual value of the vehicles was less than they paid.  *Id.* at *9-10.

*Gen. of N.Y.*, 709 N.Y.S.2d 1, 9-10 (N.Y. App. Div. 2000); *see also* Mem. 16.  Multiple court decisions have held that both statutory and common-law claims are preempted where, as here, they are premised on a failure to meet the federal standards promulgated by EPA.  *See In re Office of the Att'y Gen. of N.Y.*, 709 N.Y.S.2d at 9-10 (dismissing as preempted fraud and breach of warranty claims premised on alleged concealment of emissions levels exceeding federal standards through employment of alleged "defeat devices"); *Jackson*, 770 F. Supp. 2d at 576 (dismissing as preempted negligence and strict product liability claims alleging harm caused by exhaust emissions from non-compliant vehicles).

Plaintiffs seek to avoid preemption by citing to a recent, non-precedential state trial-court decision that, while purporting to be consistent with *In re Office of the Attorney General* and *Jackson*, in fact conflicts with both of those decisions.  *See* Dkt. 50-1: *In re Volkswagen "Clean Diesel" Litig.*, CL-2016-9917 (Va. Cir. Ct. Aug. 30, 2016); *see also* Va. Supreme Ct. R. 5A:1(f) (circuit court decisions are non-binding).  While the Virginia trial court correctly recognized that the CAA's preemptive scope is "particularly broad," it erroneously held that a claim is preempted only in the very limited circumstances when the legal duty underlying the claim enforces an emissions standard.  Dkt. 50-1 at 7-8.  But under this standard, the fraud claims in *In re Office of the Attorney General* would not have been preempted, and neither would the negligence claims based on failure to warn in *Jackson*.  This focus on legal duty is also inconsistent with how "related to" has been interpreted by federal courts in other preemption provisions.  *See Metro. Taxicab Bd. of Trade v. City of N.Y.*, 615 F.3d 152, 156 (2d Cir. 2010) ("Determining whether a state law *relates to* a preempted subject matter requires examining whether the challenged law contains a reference to the preempted subject matter or makes the existence of the preempted subject matter essential to the law's operation." (emphasis added) (internal quotation marks omitted)).  Moreover,

if this legal duty standard were correct—and it is not—the CAA's broad preemptive scope could be defeated simply by relabeling a compliance claim as a misrepresentation of compliance claim—a result Congress surely did not intend. *Cf. Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004) ("distinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would elevate form over substance and allow parties to evade [preemption] simply by relabeling their" claims (internal quotation marks omitted)).

Plaintiffs also cannot now avoid preemption by "amending" their complaint through their opposition brief to paint their claims as unrelated to the EPA's emissions standards. *See* Opp. 22-23 (arguing that "[p]laintiffs' contentions, if proven, would result in Mercedes liability even if there were no federal laboratory standards" (emphasis omitted)). Not only are plaintiffs bound to the allegations in their complaint despite contradictory statements in their opposition brief, *Konrad v. Epley*, 2013 WL 6200009, at *14 n.9 (E.D.N.Y. Nov. 25, 2013), but even if plaintiffs could drop all of the complaint's express references to the EPA's emissions standards, plaintiffs' claims remain connected to emissions standards because they are predicated on Defendants' alleged misrepresentations of the vehicles' diesel emissions, which are tightly regulated by those standards. 42 U.S.C. § 7543(a) (preempting any attempt to "enforce [a] standard relating to the control of emissions"). This focus on purportedly misrepresented emissions levels is in stark contrast to the claims at issue in *In re Caterpillar, Inc., C13 & C15 Engine Products Liability Litigation*, where the plaintiffs alleged that the faulty emissions systems caused the vehicles' engines to shut off altogether. 2015 WL 4591236, at *2-3, *9 (D.N.J. July 29, 2015). The engine cut-off was entirely unrelated to the vehicles' levels of emissions. Here, by contrast, plaintiffs' claims are fundamentally intertwined with the vehicles' levels of emissions, and are therefore preempted. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 385-86 (1992)

(express preemption provisions using the phrase "relating to" broadly preempt claims based on state common law and consumer production statutes); *Abuhouran v. KaiserKane, Inc.*, 2011 WL 6372208, at *4-5 (D.N.J. Dec. 19, 2011) (CAA does not permit private damages actions based on alleged violations of CAA's "emission standards").

Plaintiffs contend that emissions levels from BlueTEC vehicles are "higher" than they should be. Opp. 18; CAC ¶ 20. While couched as misrepresentation claims, these allegations necessarily involve measuring those emissions against *some* standard because emissions cannot be "higher" (or "clean" or "ultra-low") in a vacuum. *See Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 253-54 (2004) ("*EMA*") (a "standard" under the CAA means some criterion or test relating to whether the vehicles "emit more than a certain amount of a given pollutant"). Plaintiffs admit that their only benchmark for "clean" at this point involves compliance with the "federal standard[s] for laboratory dynamometer testing," Opp. 21 n.16, but even if they could come up with some other "standard," all of their claims still would be preempted. Contrary to plaintiffs' assertions, the Supreme Court's *EMA* decision did not "narrow[] the scope of the word 'standard' in § 7543(a)." Opp. 20. To the contrary, the definition of "standard" in *EMA* proves that plaintiffs' claims fall within the CAA's preemptive scope, as their claims explicitly "relate to the emission characteristics of a vehicle or engine." 541 U.S. at 252-53.[4] And there is no dispute in this case as to what constitutes a standard:

---

[4]  The other cases plaintiffs cite for a supposedly narrow definition of "standard" are similarly unavailing. *Jensen Family Farms, Inc. v. Monterey Bay Unified Air Pollution Control District* involved municipal vehicle registration requirements imposed on operators of heavy-duty vehicle engines, which did not address emissions at all. 644 F.3d 934, 937, 939 (9th Cir. 2011). And in *Association of Taxicab Operators USA v. City of Dallas*, the Fifth Circuit held that a law giving cabs a "head-of-the-line" privilege for passenger pickup if they used low-emission engines was merely "a compelling offer, not a compelled restraint," and thus not a "standard" for purposes of § 209(a). 720 F.3d 534, 540, 542 (5th Cir. 2013).

federal emissions regulations are standards, and plaintiffs' attempts to recover from Defendants for their vehicle performance relative to those standards are expressly preempted.

Plaintiffs' argument that their claims do not hinge on federal emissions standards, but rather are based only on the alleged falsity of "Mercedes' express promises," Opp. 21, cannot save their claims from preemption.  According to plaintiffs, the "crux" of their claims is that Defendants' "promise[s]" of "'clean diesel" with "ultra-low emissions" were false, because plaintiffs instead received "dirty diesels."  Opp. 2, 23.  But plaintiffs' "clean/dirty" dichotomy is fundamentally tied to the federal emissions standards, as they contend that BlueTEC vehicles are allegedly "'clean' diesels in laboratory testing [*i.e.*, meet emissions standards] but are 'dirty' diesels under on-road driving conditions [*i.e.*, do not meet emissions standards]."  Opp. 8; *see also, e.g.*, CAC ¶ 123.  This "clean when tested but dirty on the road" characterization means plaintiffs' claims depend on their allegations that their vehicles employ a "defeat device," and thus would not otherwise meet regulatory emissions standards.  *See* CAC ¶ 10 (vehicles "use a defeat device to obtain test results that appear to pass emissions standards").  This undoubtedly is the enforcement of a standard having a "connection with or reference to the control of emissions from motor vehicles," so all of their claims are preempted.  *Jackson*, 770 F. Supp. 2d at 576-77 (internal quotation marks omitted).

## B.      The Primary Jurisdiction Doctrine Bars All of Plaintiffs' Claims

Plaintiffs' attempts to divorce their claims from established emissions standards and regulations fail here as well.  Plaintiffs' consumer fraud claims necessarily implicate technical and policy questions that should be addressed first by EPA, not the Court.  *See Astiana v. Hain Celestial Grp.*, 783 F.3d 753, 760 (9th Cir. 2015).  Plaintiffs assert the contrary and cite to the Virginia trial court's decision not to defer or dismiss on primary jurisdiction grounds in *In re Volkswagen "Clean Diesel" Litigation*.  Dkt. 50: Plaintiffs' Letter of Supplemental Authority at

1.  That decision, however, not only conflated primary jurisdiction and preemption analyses, but failed even to consider the four factors set forth in *Baykeeper v. NL Industries, Inc.*, 660 F.3d 686, 691 (3d Cir. 2011).  These factors should control the Court's analysis, and neither plaintiffs nor the Virginia court's decision rebuts Defendants' showing that this case satisfies each factor.

*First*, despite plaintiffs' attempts to do so, their claims cannot be detached from EPA regulations, including EPA emissions standards governing a wide range of pollutants in a wide range of scenarios (which plaintiffs refer to repeatedly throughout their complaint), as well as many other regulations and certifications related to the specific emissions control systems in diesel vehicles.  As explained in detail in Defendants' opening brief, Mem. 3-6, all of these issues are exceedingly complex and "involve[] technical and policy considerations" by the EPA and, in some cases, CARB.  *Oh v. AT&T Corp.*, 76 F. Supp. 2d 551, 557 (D.N.J. 1999).  Plaintiffs respond that their claims merely involve "run-of-the-mill contentions of deceptive conduct," Opp. 26, but the alleged deception is inextricably intertwined with the underlying regulatory scheme.

As described above, plaintiffs' claims implicate the EPA's emissions standards at least for NOx.  Plaintiffs also allege that BlueTEC vehicles employ "defeat devices"—a term defined by EPA's regulations—that reduce the effectiveness of the emissions control system under "real world" driving conditions.  *E.g.*, CAC ¶ 7 ("Mercedes has programmed its BlueTEC vehicles to turn off or otherwise limit the effectiveness of the emission reduction systems during real-world driving"); *id.* ¶ 10 (alleging use of "defeat devices"); *see also* 40 C.F.R. §§ 86.1844-01(d)(11), 86.1803-01 (regulating defeat devices).  Plaintiffs' empty assertion that they can "demonstrat[e] through easy-to-understand expert testimony that Mercedes manipulates the BlueTEC emissions reduction system to shut off or significantly reduce effectiveness under most real world driving conditions," Opp. 27, grossly over-simplifies the inquiry.  The existence of a "defeat device"

cannot be determined without extensive analysis of complex technical issues and regulations, because the EPA expressly *permits* emissions control systems to function at different effectiveness levels under different circumstances.  *See* 40 C.F.R. §§ 86.1844-01(d)(11), 86.1803-01; *cf. Beshear v. Volkswagen Grp. of Am., Inc.*, 2016 WL 3040492, at *4 (E.D. Ky. May 25, 2016) (claims based on installation of "defeat devices" fall within "the expansive scope of the CAA").

      *Second*, all of these regulatory issues fall squarely within the EPA's jurisdiction.  *E.g.*, CAC ¶¶ 188, 221, 262.  At a minimum, a stay is appropriate in these circumstances.  *See, e.g.*, *Demmick v. Cellco P'ship*, 2011 WL 1253733, at *7 (D.N.J. Mar. 29, 2011) (Linares, J.) (staying case pending determination by the FCC as to whether the challenged conduct was "reasonable" under regulations).

      *Third*, contrary to plaintiffs' claims, there is substantial danger of inconsistent rulings in this case.  Although plaintiffs attempt to reframe the issue to avoid explicit mention of regulatory compliance, they argue that "[t]he issue is whether Mercedes misrepresented to consumers the true nature of its BlueTEC vehicles."  Opp. 29.  And the "nature" of BlueTEC vehicles at issue is, at least in part, *whether they comply* with EPA regulations, including regulations allowing permitted changes in emissions control functions in various real-world conditions and governing "defeat devices."  A finding regarding the alleged "nature" of BlueTEC vehicles risks conflicting with EPA determinations regarding their compliance with regulatory standards.

      *Fourth*, given the ongoing EPA and CARB investigations, "the issue to be referred [is] already [ ] pending before the agency."  *Demmick*, 2011 WL 1253733, at *6; *cf. Baykeeper*, 660 F.3d at 692 (relevance of prior application depends on how recently the agency has addressed the issues).  Plaintiffs' argument that Defendants have "no evidence that any comprehensive

investigation is underway," Opp. 30, is contrary not only to their own complaint, *see* CAC ¶ 105 (alleging EPA is investigating BlueTEC), but also to lead plaintiffs' counsel's representations to this Court, *see* May 10, 2016 Hrg. Tr. 17:10-13 ("the EPA and CARB . . . [are] investigating this problem right now involving the Mercedes diesel vehicles").  Given this ongoing review and the other *Baykeeper* factors, the Court should stay these proceedings, particularly because plaintiffs do not dispute that they will not be prejudiced in any way by a temporary stay.

### III.   PLAINTIFFS CANNOT AVOID ARBITRATION BY DROPPING THEIR BREACH OF CONTRACT CLAIMS

Plaintiffs' complaint conceded the relevance of their purchase contracts by asserting a breach-of-contract claim.  *See, e.g.*, CAC ¶¶ 183, 216, 257 (alleging "Mercedes breached these contracts by . . . selling or leasing to Plaintiffs" allegedly "defective" vehicles and "by mispresenting" the "NOx reduction system").  Many of those agreements contain arbitration provisions.  Now, plaintiffs are attempting to back-track by dropping all breach-of-contract claims.  *See* Opp. 1 n.2.  Because plaintiffs have acquiesced in Defendants' motion to dismiss their breach of contract claims, *id.*, all of the breach of contract counts should be dismissed. *Griglak v. CTX Mortg. Co.*, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010).

Dropping the breach-of-contract claims does not, however, allow plaintiffs to avoid the arbitration agreements that they signed—agreements that expressly require arbitration of any claims arising out of the purchase or condition of their vehicles.  It is well-settled that plaintiffs "cannot avoid the [agreement's] mandate to arbitrate claims by simply failing to bring a breach of contract claim."  *Oral Cancer Prevention Int'l, Inc. v. Johnson & Johnson*, 2011 WL 6130599, at *8 (D.N.J. Dec. 7, 2011).

Plaintiffs do not dispute that at least three named plaintiffs—Andary, Feller, and McVey—agreed to arbitrate "[a]ny claim or dispute" arising out of the "purchase or condition"

of their vehicles or any resulting transaction or relationship, "including any such relationship with third parties who do not sign this contract." Opp. 33 n.25 (quoting Fleming Decl. Ex. 1).[5] These provisions require them to arbitrate all tort and statutory claims arising from the vehicles' condition, as well as their purchase or lease. All of plaintiffs' claims plainly arise out of their purchases (or leases), because they contend that their standing to sue (and their alleged injury) arises out of the "benefit of the bargain" they were promised when buying or leasing the vehicles. *See* Opp. 2, 11.

Plaintiffs' argument that Defendants lack standing to enforce the arbitration agreements because they are non-signatories to the contract fails. Plaintiffs' argument would disregard—and invalidate contrary to the Federal Arbitration Act ("FAA")—the plain terms of their agreements, which expressly require arbitration of claims against "third parties who do not sign this contract." Also, as courts have recognized, "[a] contrary result would permit a plaintiff to avoid its arbitration agreement simply by naming" a related non-signatory as a defendant in cases otherwise subject to arbitration. *FCMA, LLC v. Fujifilm Recording Media U.S.A., Inc.*, 2010 WL 3076486, at *7 (D.N.J. Aug. 5, 2010).

Plaintiffs' cases stand only for the proposition that the Third Circuit has at times refused to extend the FAA's presumption of arbitrability to a *signatory* who is attempting to enforce an arbitration agreement *against a non-signatory* to that agreement—*i.e.*, if the situation here were

---

[5] Plaintiffs' argument that the purchase contracts are not properly authenticated is baseless. Opp. 31 n.24. They offer no valid reason to contest authenticity, *see* Fed. R. Evid. 901(b)(1), (4), and it has been amply satisfied here because Defendants have submitted records kept in the routine course of business at plaintiffs' respective Mercedes-Benz dealerships, as attested to by a competent witness in a sworn affidavit. *See Sutler v. Redland Ins. Co.*, 2013 WL 3732873, at *2 (D. Mass. July 12, 2013); *Atl. Circulation, Inc. v. Midwest Circulations, LLC*, 2012 WL 5876515, at *9 (M.D. Pa. Nov. 20, 2012). Moreover, these plaintiffs do not dispute that they signed these agreements or that they are bound by them.

reversed.  *Compare Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014) (declining

to apply presumption to force non-signatory to arbitrate), *with Flintkote Co. v. Aviva PLC*, 769

F.3d 215, 220 & n.3 (3d Cir. 2014) (applying presumption).  But those are ***not*** the circumstances

present here.  Where, as here, plaintiffs are *signatories* to the arbitration agreement that the *non-*

*signatory* defendant seeks to enforce, courts in this district apply the presumption of arbitrability

and hold signatories to their agreements.  *See Goldstein v. Roxborough Real Estate, LLC*, 2015

WL 5823056, at *2-3 (D.N.J. Oct. 2, 2015) (applying presumption to enforce arbitration

agreement against a signatory); *Sicily by Car S.p.A. v. Hertz Global Holdings, Inc.*, 2015 WL

2403129, at *2-3 (D.N.J. May 20, 2015) (same).

Plaintiffs argue that, for a nonsignatory to enforce an arbitration provision against a

signatory, the nonsignatory needs to invoke state-law principles of estoppel, assignment, or other

doctrines.  But where, as here, there is "an express contractual agreement to arbitrate with a non-

signatory," a third party need not invoke these other state-law grounds to enforce an arbitration

agreement.  *Hornicek v. Cardworks Serv., LLC*, 2011 WL 2623274, at *2 (E.D. Pa. June 29,

2011) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)).  Numerous decisions are in

accord.  *See Blinco v. Green Tree Serv., LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005) (per

curiam); *Sherer v. Green Tree Serv., LLC*, 548 F.3d 379, 382 (5th Cir. 2008) (per curiam); *see*

*also* Mem. 23-24 (discussing *Sherer* and *Blinco*).  Plaintiffs claim these decisions were abrogated

by *Arthur Andersen*, but *Arthur Andersen* held that nonsignatories *can* enforce arbitration

agreements against signatories and remanded on the question of what grounds existed to do so

under state law.  556 U.S. at 631.  Cases that follow *Arthur Anderson*, including *Hornicek* in this

Circuit, confirm that nonsignatories can enforce arbitration provisions when permitted to do so

under the terms of that agreement, without the need to invoke estoppel or other possible grounds

under state law.  *See also*, *e.g.*, *Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd.*, 601 F.3d 329, 336 (5th Cir. 2010) ("[I]f the terms of an agreement clearly address whether a nonsignatory can be bound to arbitrate, then courts need not inquire whether nonsignatories can be bound under third party beneficiary theory or other doctrines." (citing *Sherer*, 548 F.3d at 382)); *Herndon v. Green Tree Serv., LLC*, 2016 WL 1613973, at *5 (M.D. Pa. Apr. 22, 2016). In any event, plaintiffs' claims satisfy estoppel principles as well: plaintiffs cannot seek relief based on the "benefit of the bargain" they reached when they bought or leased their vehicles, while simultaneously avoiding the express terms of that bargain as reflected in their signed written purchase or lease agreements.

Plaintiffs also cite statements in the agreements that a claim shall be arbitrated "at your or our election."  Opp. 33 n.25 (citing Fleming Decl. Ex. 2).  But plaintiffs' interpretation—that "our" refers only to the signatory, and this means only the signatory can enforce the agreement— is contrary to basic contract interpretation principles, because it would render nugatory the preceding clause requiring arbitration of certain claims against "third parties who do not sign this agreement."  Fleming Decl. Ex. 1.  The more logical interpretation is that "our" includes these referenced "third parties," including MBUSA and Daimler AG.  *E.g.*, *Wilder v. Midland Credit Mgmt.*, 2010 WL 2499701, at *1, *5 (N.D. Ga. May 20, 2010) (granting non-signatory's motion to compel arbitration where agreement allowed for arbitration "upon the election of you or us"); *Selby v. Deutsche Bank Trust Co. Ams.*, 2013 WL 1315841, at *7-9 (S.D. Cal. Mar. 28, 2013) (same); *Mance v. MBUSA*, 901 F. Supp. 2d 1147, 1153-54 (N.D. Cal. 2012) (same).  Plaintiffs who executed arbitration provisions are bound by their terms, and these plaintiffs' claims should be ordered to arbitration.

IV.    **PLAINTIFFS' FRAUDULENT CONCEALMENT CLAIMS SHOULD BE DISMISSED**

When defending their fraudulent concealment claims, plaintiffs suddenly shift gears and argue that their misrepresentation claims are "omission-based" and therefore subject to a "relaxed" pleading standard.  Opp. 37 (emphasis omitted).  But plaintiffs' claims are "omission-based" only to the extent they contend that omissions made Defendants' *affirmative* advertising statements deceptive.  From the very first page of plaintiffs' opposition brief, these *affirmative* advertising statements are the central focus of plaintiffs' claims.  Opp. 1 ("Mercedes aggressively touted its BlueTEC 'clean diesel' vehicles as 'Earth Friendly' vehicles having 'ultra-low emissions,' and 'the world's cleanest diesel automobiles' with 'up to 30% lower greenhouse-gas emissions than gasoline' powered vehicles.").  The complaint is no different.  *See, e.g.*, CAC ¶¶ 5, 7.  Plaintiffs repeatedly argue that the alleged affirmative advertising statements were deceptive *because of* the alleged omissions relating to on-road emissions performance.  *See, e.g.*, Opp. 6 (alleged cold-weather shut-off "puts the lie to Mercedes' claims" that BlueTEC is "the world's cleanest diesel passenger vehicle"); *id.* 44 (alleging "fraud occurred at the time of the bargain" because plaintiffs received "vehicles that were not *as promised*" (emphasis added)).[6]  Their claims are thus affirmative misrepresentation claims and must be treated as such.  *See Joseph v. Wiles*, 223 F.3d 1155, 1162-63 (10th Cir. 2000) (rejecting plaintiffs' attempt to "recharacterize the alleged wrongdoing" as "omission rather than an

---

[6]  *See also* CAC ¶ 147 (alleging Defendants were "misrepresenting" the "emission qualities of the Affected Vehicles" by "concealing" alleged shut-off); *id.* ¶ 151 (alleging "Mercedes falsely represented that the Affected Vehicles had [cleaner] emissions" because it did not disclose "that the quality and quantity of emissions from the Affected Vehicles were far worse than represented"); *id.* ¶¶ 192, 225 (alleging "Mercedes intentionally failed to disclose" certain features, "making other disclosures about the emissions system deceptive").

affirmative act" to take advantage of a lower legal standard).  Plaintiffs are not entitled to any

"relaxed" pleading standard.  And in any event, they fail any standard.

### A.     Plaintiffs Fail to Allege Sufficient Facts to State a Claim

"Allegations of a cause of action for fraudulent concealment are subject to Rule 9(b)'s

requirements."  *Weske v. Samsung Elecs. Am., Inc.*, 2012 WL 833003, at *5 (D.N.J. Mar. 12,

2012); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (a

"nondisclosure [claim] is a claim for misrepresentation" that "(as any other fraud claim) must be

pleaded with particularity under Rule 9(b)").  Here, plaintiffs' allegations fail to satisfy Rule 8,

let alone the heightened requirement of Rule 9(b).[7]

First, plaintiffs fail to allege facts showing they saw or relied on any of the

advertisements they challenge, and that supposedly rendered Defendants' omissions deceptive.

*See supra* at 4-5.  Plaintiffs not only fail to allege these basic facts about the alleged deception,

but they also fail to allege any particulars—the "who, what, when, where, and how" of any

alleged fraud.  *See Stevenson v. Mazda Motor of Am., Inc.*, 2015 WL 3487756, at *7-9 (D.N.J.

June 2, 2015) (plaintiff's failure to "allege[] when *he* viewed the statements on the Mazda

[we]bsite, or if such statements were posted at the time *he* purchased his vehicle" required

dismissal of fraudulent concealment claim); Mem. 30-31.  All of these failures doom plaintiffs'

claims under Rule 9(b).  *See In re Elk Cross Timbers Decking Mktg., Sales Pracs. & Prods.*

---

[7]  No cause of action for fraudulent concealment exists under Connecticut law, and therefore this
claim should be dismissed regardless of whether plaintiffs have pleaded it with particularity.
*Traylor v. Awwa*, 899 F. Supp. 2d 216, 224-25 (D. Conn. 2012).  Plaintiffs' reliance on an
unpublished Connecticut Superior Court decision in which the court did not even consider this
argument is unavailing.  *See* Dkt. 45-1: App'x A in Support of Plaintiffs' Opposition Brief at 8.
By contrast, in *Traylor*, the court expressly held there is no private cause of action for fraudulent
concealment under Connecticut law, and held that such claims can only be used to toll statutes of
limitations.

*Liab. Litig.*, 2015 WL 6467730, at *25 (D.N.J. Oct. 26, 2015) (Linares, J.); *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 453 (D.N.J. 2012) ("Without any allegation of actual reliance, [a plaintiff's] complaint is lacking all the essential factual background necessary to inform the Court of Plaintiff's fraud claim." (internal quotation marks omitted)) (cited in Opp. 36).  Indeed, even under a relaxed pleading standard, plaintiffs must plead "what representations she relied on, if any, or where and how those representations were made."  *Montich*, 849 F. Supp. 2d at 453.

Plaintiffs' cases do not help them.  They cite *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) (cited in Opp. 40), but this was another California state court decision that did not address Rule 9(b); rather, it addressed only "what plaintiffs must plead and prove in UCL fraud actions" under a specific provision of California state procedure that limits private enforcement of the UCL to plaintiffs who can demonstrate that they were injured "as a result of" unfair competition. *Id.* at 326, 328.  *In re Tobacco* was expressly "limited to . . . UCL action[s]," *id.* at 325 n.17, and does not absolve plaintiffs of their obligation to allege reliance with the specificity required by Rule 9(b).

Second, plaintiffs' complaint repeatedly and impermissibly lumps Daimler AG and MBUSA together as "Mercedes," *see, e.g.*, CAC ¶ 101 (describing "Mercedes' advertisements, promotional campaigns, and public statements").  Plaintiffs have no response to the numerous authorities in Defendants' opening brief showing that under Rule 9(b) they are required to "detail the allegations of fraud against each defendant individually."  *Donachy v. Intrawest U.S. Holdings, Inc.*, 2012 WL 869007, at *3 (D.N.J. Mar. 14, 2012).  Rule 8 also requires this specificity.  *See* Mem. 25-26 (citing, *e.g.*, *Faistl v. Energy Plus Holdings, LLC*, 2012 WL 3835815, at *7-8 (D.N.J. Sept. 4, 2012) (Linares, J.)).

Plaintiffs concede they use "'Mercedes' to commonly refer to both entities."  Opp. 38. Their purported justification is that "Daimler AG is simply the 'alter ego' of MBUSA," and "it is impossible to 'lump together' that which cannot be separated."  *Id.*  But plaintiffs allege no facts establishing an alter-ego relationship.  *See, e.g.*, *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 241, 245 (3d Cir. 2005) (affirming dismissal of fraud-based claims when plaintiff failed to differentiate between defendant parent and the defendant subsidiary); Mem. 28-29.  Likewise, plaintiffs' claim that Daimler AG exercises some degree of control over MBUSA pursuant to a General Distributor Agreement, Opp. 38 (quoting CAC ¶ 75), is also insufficient because this is a "bare-boned allegation[] of . . . common control and/or management"—it does not establish the type of domination necessary for alter-ego liability.  *Richmond v. Lumisol Elec. Ltd.*, 2014 WL 1405159, at *4 (D.N.J. Apr. 10, 2014).

Plaintiffs' cases do not help them here either.  In *BK Trucking Company v. PACCAR, Inc.*, the court did not even address whether two defendants could be referred to as one; rather, plaintiffs' selective quotation addresses the detail with which a physical defect must be pled. 2016 WL 3566723, at *7-9 (D.N.J. June 30, 2016).  And in *Peel v. BrooksAmerica Mortgage Corporation*, the plaintiff avoided dismissal only by pleading "separate paragraphs making more specific allegations about the individually named Defendants."  788 F. Supp. 2d 1149, 1160 (C.D. Cal. 2011) (cited in Opp. 38).  Here, by contrast, the only allegations specific to Daimler AG describe its corporate organization and practices.  *See* CAC ¶¶ 68, 71-77.  Plaintiffs' failure to distinguish between Defendants requires dismissal.

Third, plaintiffs' fallback theory—that Defendants supposedly had a duty to disclose certain information about the emissions control system or specific emissions levels even in the absence of affirmative advertising statements—also fails, because plaintiffs identify no duty to

disclose this information.  Mem. 31-33; *see, e.g.*, *Arcand*, 673 F. Supp. 2d at 297 ("[T]here can be no fraud, or reliance for that matter, if the defendant was under no obligation to disclose the information in the first place."); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141-43 (9th Cir. 2012) (concluding that "absent a duty to disclose, the failure to disclose a defect 'that might or might not' shorten the useful life of a car that 'functions precisely as warranted'" is not an actionable claim under California law).

Plaintiffs claim Defendants "had exclusive knowledge of material facts not known to plaintiffs" and "actively concealed material facts."  Opp. 41-43.  But plaintiffs fail to provide any facts to support these conclusory assertions; nor do they identify what "material facts" they contend Defendants should have disclosed in light of the complexity of emissions control technology and regulatory issues—or when or how they should have done so.  *See, e.g.*, *Weske*, 2012 WL 833003, at *5 (plaintiffs failed to provide "sufficient factual allegations" establishing defendant's knowledge of the purported defect when the report and consumer complaints that allegedly placed defendant on notice "all appear to have occurred *after* the purchases at issue in this litigation" (emphasis added)); *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1343 (S.D. Fla. 2013) (plaintiffs "fail[ed] to plead facts sufficient to establish Honda's knowledge and concealment of the defect" when "it is impossible for the Court to know" whether Honda was put "on notice before or after" plaintiffs purchased their allegedly defective vehicles).  Finally, in multiple states (including New Jersey), neither exclusive knowledge nor so-called active concealment creates a duty to disclose absent additional factors, such as the

parties sharing a special relationship, which plaintiffs have not alleged here.  *See* Mem. 32 & App'x B.[8]

### B.     The Economic Loss Doctrine Bars Plaintiffs' Fraud-Based Claims

As explained in Defendants' opening brief, the economic loss doctrine bars fraudulent concealment claims like those asserted here, under the laws of Florida, Missouri, New Jersey, New York, North Carolina, Pennsylvania, and Virginia.  *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671, 678-79, 681 (3d Cir. 2002) (doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from contract"); Mem. 33-35.  The doctrine also bars statutory claims arising under Pennsylvania, Missouri, Virginia, and North Carolina law where plaintiffs seek only monetary recovery.  Mem. 34-35.

Plaintiffs attempt to avoid the doctrine by arguing that the "complained of injury is not to the vehicles themselves," but to their economic interest because the injury occurred at the time of their alleged overpayment.  Opp. 43-44.  This benefit-of-the-bargain theory, however, falls squarely within the economic loss doctrine.  Where, as here, a plaintiff's claim to damages alleges that "the product has not met the customer's expectations," the claim is best addressed by "express and implied warranties under contract law," and is barred under the economic loss doctrine.  *Werwinski*, 286 F.3d at 671; Mem. 34.

Plaintiffs rely on cases involving *fraudulent inducement* claims, which they have not asserted here.  *See, e.g.*, Opp. 44 (quoting *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d

---

[8]  *See, e.g.*, *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993) ("[W]here a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a special relationship" (internal quotation marks omitted)); *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 843 (Ala. 1998) ("Superior knowledge of a fact, without more, does not impose upon a party a legal duty to disclose such information.").

936, 964 (N.D. Cal. 2014) ("[A]lthough fraud claims cannot proceed where they arise from duties implicated by the parties' contract, pre-contractual allegations of fraudulent inducement are not barred by the economic loss rule.")).  In addition, as the court explained in *MyFord Touch*, to avoid the economic loss doctrine, a plaintiffs' fraudulent inducement claim must relate to something *other than* "whether the defendant adequately performed under the contract—'that is, whether Defendant breached the agreement by providing a defective [product].'"  46 F. Supp. 3d at 965-66.  Here, therefore, plaintiffs' claims are barred, because they rest on a contention that they did not receive the benefit of their bargain, a concept that "relies on contract law." *Koronthaly*, 374 F. App'x at 259.

## V.   PLAINTIFFS' STATE STATUTORY CLAIMS SHOULD BE DISMISSED

### A.   Plaintiffs Have Failed to Allege Fraud-Based Statutory Violations with Sufficient Particularity

Plaintiffs make only two arguments in defense of their statutory claims.  First, although they do not dispute they have "failed to allege the causal connection between the alleged misrepresentations and their damages," plaintiffs claim this requirement does not apply to "Plaintiffs' omissions allegations."  Opp. 45.  As discussed above, however, plaintiffs' "omissions allegations" cannot be divorced from their affirmative misrepresentation claims because plaintiffs identify no legal basis for a claim that Defendants were required to disclose the details of how the vehicles' emissions controls systems worked absent these specific affirmative statements.  Moreover, plaintiffs fail to allege any *facts* to plausibly support the conclusory allegation "that they would not have purchased their vehicles" had they known that the vehicles' emissions vary in different driving conditions, *id.*, particularly in light of regulators' recognition that varying levels of emissions are expected and, in designated circumstances, authorized and expressly permitted.  *See* 40 C.F.R. § 86.1803-01 (defining "auxiliary emission control devices"

("AECDs") and specifying the circumstances in which AECDs can permissibly reduce the effectiveness of emissions systems); *see also Koronthaly*, 374 F. App'x at 259 (dismissing plaintiff's claim that she was misled as to lead levels in lipstick because the claim was "belied by" the FDA's finding that the lead levels in the lipstick were not dangerous).

Second, plaintiffs argue that they need not allege ascertainable loss with specificity, and that it is sufficient that they plead "only that they purchased a product and got something less than what had been promised." Opp. 46. In making this argument, plaintiffs encourage the Court to disregard Chief Judge Simandle's decision in *In re Riddell Concussion Reduction Litigation*, 77 F. Supp. 3d 422, 438-39 (D.N.J. 2015), as "contrary" to the "weight of authority." Opp. 46-47. But Judge Simandle's decision is directly on point because it involved a similar theory of harm. There, as here, plaintiffs sought to assert state statutory violations for misrepresentation claims, including under the New Jersey Consumer Fraud Act. *In re Riddell*, 77 F. Supp. 3d at 439. And there, as here, the complaint merely stated that "each plaintiff paid a 'price premium' for Defendants' product and fail[ed] to identify the specific price paid or allege any other facts necessary to plead injury or ascertainable loss." *Id.* at 438. Judge Simandle correctly recognized that "[c]ourts in this District have required plaintiffs to specify the price paid for the product and the price of comparable products to adequately state a claim under the NJCFA," and dismissed plaintiffs' state statutory claims for failure to do so. *Id.* (citing, *e.g., Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 541-42 (D.N.J. 2011) (dismissing claims that lacked "any specific information concerning the price of the Products or the price of any comparable products"); *Green v. Green Mountain Coffee Roasters, Inc.*, 279 F.R.D. 275, 282 (D.N.J. 2011) (same)).

Courts in this district have continued to routinely invoke and apply this rule, *see, e.g.*, *In re Caterpillar*, 2015 WL 4591236, at *38-39; *Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d 447, 458-59 (D.N.J. 2015); *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 374-76 (D.N.J. 2015), and plaintiffs have proffered no basis on which this Court could or should depart from the well-settled requirement that plaintiffs must allege "specific information concerning the price of the [p]roducts or the price of any comparable products" in order "to withstand a motion to dismiss." *Lieberson*, 865 F. Supp. 2d at 541-42.  Because plaintiffs have failed to adequately allege ascertainable loss, their statutory claims should be dismissed.[9]

### B.   Applicable Statutes of Limitations and Repose Bar Plaintiffs' Claims

Plaintiffs concede that, absent some form of tolling, their statutory claims under Alabama, Florida, and Michigan law are time-barred.  Opp. 47-49.  Their assertions of "fraudulent concealment" do not toll these limitations periods, as a matter of law.

As to the Alabama claims, plaintiffs conflate the statute of *limitations* with the statute of *repose*, but they are distinct.  The shorter one-year statute of limitations may be tolled, but the statute of repose separately provides that "in *no event* may any action be brought under this

---

[9]  Plaintiffs' state statutory claims under Alabama, California, Georgia, Massachusetts, Texas, and West Virginia laws should also be dismissed since, as they concede, plaintiffs failed to deliver pre-suit notice to Daimler AG.  Opp. 49.  At a minimum, they should be held in abeyance for 60 days.  Tex. Bus. & Com. Code § 17.505.  Plaintiffs served a purported notice and demand letter on Daimler AG dated August 23, 2016, but the letter does not cure the *pre-suit* notice deficiency.  Among other failings, plaintiffs' August 23 letter does not satisfy the requirements of the statutory notice provisions because it does not adequately identify the "claimant(s)," *see, e.g.*, Ga. Code § 10-1-399(b); "reasonably describ[e] the unfair or deceptive act or practice" that forms the basis of the complaint, *see, e.g.*, Ala. Code § 8-19-10(e); or reasonably describe any injury or damages suffered by any claimant(s), *see, e.g.*, Mass. Gen. Laws Ch. 93A, § 9(3).  *See also Stanley v. Huntington Nat'l Bank*, 492 F. App'x 456, 461 (4th Cir. 2012) (per curiam) (affirming dismissal under West Virginia Consumer Credit and Protection Act for inadequate notice); *Rodriguez v. Nationstar Mortg. LLC*, 2014 WL 5426972, at *4 (D. Mass. Oct. 24, 2014) (dismissing claims under Massachusetts Chapter 93A for failure to give notice).

chapter more than four years from the date of the transaction giving rise to the cause of action." Ala. Code § 8-19-14 (emphasis added).  Taken together, these statutes provide that tolling may extend the one-year limitations period, but only to an outside limit of four years after the transaction, at which point the statute of repose provides an immutable deadline.  *See Collins v. Davol, Inc.*, 56 F. Supp. 3d 1222, 1228 (N.D. Ala. 2014) (ADTPA's statute of limitations may be subject to tolling, but the statute of repose is not).  Plaintiff Mose purchased his vehicle more than four years before commencing this action; his claims should be dismissed.

Plaintiffs similarly misconstrue tolling under Florida law, which is governed by section 95.051's "exclusive list of conditions that can 'toll' the running of the statute of limitations." *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1075 (Fla. 2001); *see also* Fla. Stat. § 95.051(2).  This list does not include alleged fraudulent concealment of the purported wrongdoing.  And plaintiffs do not invoke any of the exceptions listed in the statute.  Thus, there is no basis for tolling, because the "legislature has made clear its intent to exclude all tolling exceptions not listed in the statute."  *HCA Health Servs. of Fla., Inc. v. Hillman*, 906 So. 2d 1094, 1098-1100 (Fla. Dist. Ct. App. 2004) (rejecting equitable tolling); *see also Baez v. Root*, 2014 WL 1414433, at *3 (S.D. Fla. Apr. 11, 2014) (citing cases).  Moreover, even if plaintiffs' theory of fraudulent-concealment tolling applied, they do not meet their own standard because mere allegations of a failure to disclose a defect are insufficient under Florida law.  *See Dineen v. Pella Corp.*, 2015 WL 6688040, at *4-5 (D. S.C. Oct. 30, 2015); *In re Ford Tailgate Litig.*, 2014 WL 1007066, at *7 (N.D. Cal. Mar. 12, 2014) (refusing to apply fraudulent-concealment tolling and dismissing FDUTPA claims).  Plaintiff Watkins's claim should be dismissed.

Finally, plaintiffs' reliance on Mich. Comp. Law § 600.5855 is unavailing because they fail to allege "affirmative acts or misrepresentations that were designed to prevent subsequent

discovery of the cause of action." *Beck v. Park W. Galleries, Inc.*, 2016 WL 3653955, at *2 (Mich. Ct. App. July 7, 2016) (per curiam) (alterations omitted).  "[O]nly actions that occur after the alleged injury can conceal plaintiff's causes of action against defendant," *id.* at *2-3, and "[t]here is no authority for the proposition that a party that defends its product . . . is thereby concealing a claim." *Cibrowski v. Pella Window & Door Co.*, 2005 WL 3478159, at *4 (Mich. Ct. App. Dec. 20, 2005) (per curiam).  The *only* misrepresentation that plaintiffs allege took place after their claimed injuries was Daimler AG's supposed "confession" in *Der Spiegel*, Opp. 48 (citing CAC ¶ 106), but plaintiffs have mischaracterized this article as explained *supra* at 2, and in any event Michigan plaintiff O'Neal does not allege that this article published in Germany and written in German concealed anything from her.  Accordingly, this statement does not toll the limitations period and plaintiff O'Neal's claim should be dismissed as time-barred.

## CONCLUSION

For the foregoing reasons, the complaint should be dismissed in its entirety.   Plaintiffs lack standing.  Their claims also are subject to preemption and primary jurisdiction.  Should the Court conclude that it has jurisdiction, then (1) all claims by plaintiffs Andary, Feller, and McVeigh should be ordered to arbitration and (2) plaintiffs' claims should be dismissed for failure to state a claim under Rules 8(a), 9(b) and 12(b)(6).

Dated:    September 15, 2016                Respectfully submitted,

                                           GIBSON, DUNN & CRUTCHER LLP


                                           By:  s/        Lucas C. Townsend
                                                          Lucas C. Townsend

Matthew J. Kemner                          Daniel W. Nelson
     *admitted pro hac vice*                    *admitted pro hac vice*
Troy M. Yoshino                            Geoffrey M. Sigler
     *admitted pro hac vice*                    *admitted pro hac vice*
Eric J. Knapp                              Lucas C. Townsend
     *admitted pro hac vice*               Chantale Fiebig
Squire Patton Boggs (US) LLP                    *admitted  pro hac vice*
44 Montgomery Street, Suite 400            Gibson, Dunn & Crutcher LLP
San Francisco, California 94104            1050 Connecticut Avenue, N.W.
Tel: (415) 743-2441                        Washington, DC 20036-5306
Fax: (415) 989-0932                        Tel: (202) 887-3731
                                           Fax: (202) 530-4254

     *Attorneys for Defendants Mercedes-Benz USA, LLC and Daimler AG*

31

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of September, 2016, I caused a copy of the

foregoing to be served upon the following attorneys of record via the Court's Electronic Filing

System:

> Steve W. Berman
> Sean R. Matt
> HAGENS BERMAN SOBOL SHAPIRO LP
> 1918 8th Avenue, Suite 3300
> Seattle, Washington 98101
> Tel: (206) 623-7292
> Fax: (206) 623-0594
> Steve@hbsslaw.com
> Sean@hbsslaw.com
>
> James E. Cecchi
> CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, PC
> 5 Becker Farm Road
> Roseland, New Jersey 07068
> Tel: (973) 994-1700
> Fax: (973) 994-1744
> JCecchi@carellabyrne.com
>
> *Interim Lead Counsel for Plaintiffs and the Proposed Classes*
>
>
> Christopher A. Seeger
> David R. Buchanan
> Scott A. George
> SEEGER WEISS LLP
> 77 Water Street, New York
> New York, NY 10005
> Tel: (212) 584-0700
> Fax: (212) 584-0799
> CSeeger@seegerweiss.com
> DBuchanan@seegerweiss.com
> SGeorge@seegerweiss.com
>
> Jeffrey S. Goldenberg
> GOLDENBERG SCHNEIDER, L.P.A.
> One West Fourth Street, 18th Floor
> Cincinnati, OH  45202
> Tel: (513) 345-8297

Fax: (513) 345-8294
JGoldenberg@gs-legal.com

Lesley Weaver
BLOCK & LEVITON LLP
520 3rd St., Suite 108
Oakland, California  94607
Tel: (415) 968-8999
Fax: (617) 507-6020
Lesley@blockesq.com

*Plaintiffs' Executive Committee*

I further certify that the following attorney was served a copy of the foregoing via

overnight mail:

Robert Hilliard
HILLIARD MUNOZ GONZALES LLP
719 S Shoreline Blvd, # 500
Corpus Christi, TX 78401
Tel: (361) 882-1612
Fax: (361) 882-3015
BobH@hmglawfirm.com

*Plaintiffs' Executive Committee*


I further certify that I will cause a courtesy copy of this document to be sent via overnight

mail to the Honorable Jose L. Linares, U.S.D.J., at the United States District Court for the

District of New Jersey, Martin Luther King Jr. Building & Courthouse, 50 Walnut Street,

Newark, New Jersey.


                                                    s/Lucas C. Townsend
                                                      Lucas C. Townsend

                                                    *Attorney for Defendants Mercedes-Benz*
                                                    *USA, LLC and Daimler AG*