NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE MERCEDES-BENZ EMISSIONS LITIGATION | Civil Action No.: 16-881 (JLL)(JAD)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendants Mercedes-Benz USA, LLC's and Daimler AG's motion to dismiss the Consolidated and Amended Class Action Complaint ("CAC") and to compel arbitration. (ECF No. 38). Plaintiffs have opposed this motion (ECF No. 45), and Defendants have replied to that opposition (ECF No. 54). The Court decides this matter without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, Defendants' motion is granted, and the CAC is dismissed without prejudice.

**I.    Background[1]**

This action involves allegations that Defendants Mercedes-Benz USA, LLC ("MBUSA") and Daimler AG ("Daimler") (collectively, "Defendants" or "Mercedes") have unlawfully mislead consumers into purchasing certain "BlueTec Clean Diesel" vehicles (the "Affected Vehicles") by misrepresenting the environmental impact of these vehicles during on-road driving. (*See, e.g.*, CAC ¶ 12).[2]

---

[1] The facts as stated herein are taken as alleged in the Consolidated Class Action Complaint. (ECF No. 17, "CAC").
[2] Specifically, "Plaintiffs allege that the following Mercedes models powered by BlueTec diesel fueled engines are affected by the unlawful, unfair, deceptive, and otherwise defective emissions controls utilized by Mercedes: ML 320, ML 350, G320, E320, S350, R320, E Class, GL Class, ML Class, R Class, S Class, GLK Class, GLE Class, and Sprinter (the Affected Vehicles)." (CAC ¶ 13).

1

According to Plaintiffs, "Mercedes' advertisements, promotional campaigns, and public statements represented that the Affected Vehicles had high fuel economy, low emissions, reduced NOx by 90%, had lower emissions than comparable diesel vehicles, and had lower emissions than other comparable vehicles." (*Id.* ¶ 101). For example, the CAC cites to press releases that indicated that Mercedes offers "the world's cleanest diesel automobiles" and that the BlueTec Clean Diesel vehicles have "ultra-low emissions." (*Id.* ¶ 101a-101b). Plaintiffs cite to similar representations located, *inter alia*, on Mercedes' website and in promotional brochures. (*Id.* ¶ 101).

Plaintiffs allege that these representations are false and misleading. Specifically, Plaintiffs allege that Defendants utilize "defeat devices" in the BlueTec vehicles, which devices are said to "reduce[] the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal use." (*Id.* ¶ 11). Thus, Plaintiffs claim that "these Mercedes vehicles are not 'clean diesels' and emit more pollutants than allowed by federal and state laws—and far more than their gasoline fueled counterparts and far more than what a reasonable consumer would expect from a 'Clean Diesel'." (*Id.* ¶ 12).

Each individual Plaintiff offers similar allegations with respect to their reliance on Defendants' representations with respect to the Affected Vehicles. For example, New Jersey Plaintiff Anthony Caputo alleges as follows:

> Plaintiff selected and ultimately purchased his vehicle, in part, because of the BlueTec Clean Diesel system, as represented through advertisements and representations made by Mercedes. Plaintiff recalls that advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system. None of the advertisements or representations received by Plaintiff contained any disclosure that the Affected Vehicle had high emissions compared to gasoline vehicles and the fact that Mercedes had designed part of the emissions reduction system to turn off during normal driving conditions.

(*Id.* ¶ 20).

2

The Plaintiffs proceed to allege that if Defendants had been truthful in their representations, they either would not have purchased or leased their respective vehicle, or would have paid less for them. (*Id.*). As a result of Defendants' conduct, Plaintiffs allege that they have suffered the following ascertainable loss: "out-of-pocket loss and future attempted repairs, future additional fuel costs, decreased performance of the vehicle, and diminished value of the vehicle." (*Id.* ¶ 18).

Against this backdrop, Plaintiffs allege claims for breach of contract and State statutory and common law claims sounding in fraudulent concealment and violations of consumer protection laws. (CAC at 104-398). A number of individual plaintiffs filed similar claims in this District, on behalf of overlapping putative classes. On May 5, 2016, for the purposes of judicial efficiency, this Court ordered that these actions, and any substantially similar cases subsequently filed in or transferred to this District were to be consolidated for all purposes. (ECF No. 19). On May 6, 2016, Plaintiff filed the operative CAC.

In the pending motion, Defendants argue that Plaintiffs' claims should be dismissed due to both jurisdictional bars and pleading deficiencies. Respecting jurisdictional preclusion, Defendants maintain that Plaintiffs lack standing to bring this lawsuit and that their claims are preempted by Federal legislation and barred by the primary jurisdiction doctrine. The Court will begin its analysis with the standing issue, as standing is a threshold question that implicates the Court's power to hearing this case. *See, e.g., O'Shea v. Littleton*, 414 U.S. 488, 493 (1974).

## II. Motion to Dismiss on Standing Grounds: Legal Standard

Federal courts have limited jurisdiction and are permitted to adjudicate "cases" and "controversies" only as permitted under Article III of the Constitution. *See* U.S. Const, Art. III, § 2; *see also Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 322-23 (3d Cir. 1998). "That case-or controversy requirement is satisfied only where a plaintiff has standing." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Taliaferro. v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (citing *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003)); *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) ("If a dispute is not a proper case or controversy, the courts have no business deciding it . . . .").

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 489 (1975). To that end, "the 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citations omitted).[3]

---

[3] In the recent past, courts have held that "[s]tanding implicates both constitutional requirements and prudential concerns." *Common Cause v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citing *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004)). In 2014, however, in *Lexmark International, Inc. v. Static Control Components, Inc.*, the Supreme Court appears to have refined the prudential standing doctrine, stating that "[j]ust as a court cannot apply its independent policy judgment to recognize a cause of action that Congress has denied, it cannot limit a cause of action that Congress has created merely because 'prudence' dictates." 134 S. Ct. 1377, 1388 (2014); *see also* Scholtes, Virginia, *The Lexmark Test for False Advertising Standing: When Two Prongs Don't Make a Right*, 30 BERKELEY TECH. L. J. 1023, 1028 (2015). As the standing issue at bar does not implicate prudential standing concerns, the Court need not address this prong of standing.

4

In the context of a putative class action lawsuit, "[t]he standing inquiry does not change." *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d. 451, 461 (D.N.J. 2005). That is, "a predicate to [a plaintiff's] right to represent a class is his eligibility to sue in his own right. What he may not achieve himself, he may not accomplish as a representative of a class." *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 734 (3d Cir. 1970). At the pleading stage, "[a]lthough general factual allegations of injury resulting from the defendant's conduct may suffice, the complaint must still 'clearly and specifically set forth facts sufficient to satisfy' Article III." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011) (quoting *Lujan*, 504 U.S. at 561); *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

"'A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.'" *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)). It is not necessary for the Court to restate the standard for resolving motions to dismiss for lack of standing, because that standard has already been enunciated. *See, e.g., Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007).

Here, Defendants maintain that Plaintiffs have failed to allege the existence of any defect or deficiency in the emissions profile of the make and model of the vehicles that Plaintiffs themselves actually owned or leased. (ECF No. 38-1 ("Defs.' Mov. Br.") at 7). Additionally, Defendants contend that Plaintiffs' allegations as to "damage" are "not particularized, speculative, and not plausibly pled." (*Id.* at 10-13). Lastly, Defendants argue that Plaintiffs have not shown that their injury is "fairly traceable" to Defendants' conduct. The Court addresses each of these arguments below.

### III. Discussion

Plaintiffs contend that they have sufficiently pled an injury in fact by alleging that they were denied the "benefit of the bargain." (ECF No. 45 ("Pls.' Br.") at 10-15).[4] Plaintiffs correctly note that "benefit of the bargain damages are recoverable for overpayment and recoverable to confer standing" under certain circumstances, and neither party contends that a benefit of the bargain theory is inappropriate to confer standing as to claims alleged in the CAC. (*Id.* at 11). A plaintiff may establish an injury in fact vis à vis the benefit of the bargain theory by "alleg[ing] that she received a product that failed to work for its intended purpose or was worth objectively less than what one could reasonably expect." *Koronthaly v. L'Oreal USA, Inc.*, 374 Fed. App'x 257, 259 (3d Cir. 2010).

Plaintiffs' benefit of the bargain theory proceeds as follows: "Had [Plaintiffs] known Mercedes' undisclosed manipulations and the higher emissions produced by the BlueTECs, Plaintiffs would not have purchased or leased those vehicles, or would have paid substantially less than they did." (Pls.' Br. at 11). Stated differently, "Plaintiffs here allege that they would not have

---

[4] Plaintiffs plead several damages theories in the CAC. (*See* CAC ¶¶ 142-145). In a section of the CAC entitled "The Damage," Plaintiffs espouse the public health and environmental consequences of increased NOx emissions. (*See* CAC ¶¶ 142-143). Plaintiffs further plead that in the event Defendants recall the affected vehicles to make them EPA-compliant, Plaintiffs' vehicles will have a diminished value and Plaintiffs will incur greater fuel costs than anticipated. (*Id.* ¶¶ 144-145). Finally, Plaintiffs plead a "benefit of the bargain" theory. (*Id.* ¶ 145). Specifically, Plaintiffs allege that had they "known of the higher emissions at the time they purchased or leased their Affected Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did." (*Id.*).
  With respect to Plaintiffs' damages theories rooted in (1) environmental harm; (2) public health consequences; and (3) diminished value and increased fuel prices, Defendants contend that these allegations are far too generalized and speculative to confer standing on Plaintiffs. (Defs.' Mov. Br. at 10-12). Plaintiffs have not disputed that these three theories are inadequate to confer standing. (*See* Pls.' Br. at 10-15). In fact, Plaintiffs state the Defendants' cases respecting the possibility of future injury or harm to the public at large are inapplicable because "[t]his is not a case about fear of future injury; Plaintiffs were deceived and overpaid as a result of Mercedes' deception, resulting in a present, concrete injury recognizable by law." (Pls.' Br. at 16). Thus, Plaintiff appear to have abandoned each of their damages theories, with the exception of that premised upon overpayment.

purchased their BlueTEC vehicles or would have paid less had they known about Mercedes' misrepresentations and omissions." (*Id.* at 13).

### A. Whether Plaintiffs have Sufficiently Pled an Injury in Fact

Defendants maintain that Plaintiffs cannot establish an injury in fact via the benefit of the bargain theory because: (1) they have failed to allege that the advertisements and statements relied upon by Plaintiffs were, in fact, false, and; (2) Plaintiffs have not sufficiently established that the particular vehicles that the named Plaintiffs actually owned or leased were defective or did not meet applicable regulatory standards.

As to the first point, Defendants argue that Plaintiffs have not sufficiently pled the benefit of the bargain theory because "even taking all of [P]laintiffs' allegations as true, the Court still cannot draw a plausible inference that [P]laintiffs did not receive the benefit of the bargain because the Mercedes-Benz 'Clean Diesel' vehicles were less 'environmentally friendly' than they were advertised to be or do not meet regulatory standards.'" (Defs.' Mov. Br. at 12-13). In other words, Defendants state that "Plaintiffs' benefit-of-the-bargain theory [ ] fails because they cannot allege facts showing that the advertisements they challenge—even *if* they had seen and relied on these statements—were false or deceptive." (Defs.' Reply Br. at 5). Specifically, Defendants argue that Plaintiffs fail to allege the following "critical factual allegations":

- That there is any objective measure of "environmental friendliness" that can be used to determine whether the vehicles were as "environmentally friendly" as advertised;

- That allegedly elevated levels of NOx emissions are not counteracted by lower levels of other exhaust emissions, such as ammonia or greenhouse gases, resulting in a low level of emissions overall; or

- That the "FTP standard" used as a benchmark by [P]laintiffs is considered by the regulatory agencies to be an appropriate or applicable standard for measuring test results for on-road driving, such that [P]laintiffs' on-road tests can be considered evidence of non-compliance.

7

According to Defendants, in the absence of these factual allegations, among others, "[P]laintiffs' allegations are equally consistent with the inference that, given modern engineering constraints, complex chemical reactions, and existing industry regulations, Mercedes-Benz diesel vehicles are, as advertised, 'environmentally friendly,' CAC ¶ 101, and compliant with all regulations, *id.* ¶ 104." (Defs.' Mov. Br. at 13). Thus, Defendants contend that "exactly how Plaintiffs 'received a product that did not deliver the advertised benefits' cannot be plausibly inferred from their allegations, so [P]laintiffs' claims must be dismissed for lack of standing." (*Id.* at 13).

The Court finds that, at the motion to dismiss stage and as to the standing issue, Plaintiffs have plausibly pled that the products received did not live up to the claims made by Defendants. First, the CAC identifies the precise representations made by Defendants. Among other of Defendants' alleged misrepresentations, Plaintiffs claim that:

- "Mercedes vigorously markets its BlueTEC vehicles as 'the world's cleaniest and most advanced diesel' with 'ultra-low emissions, high fuel economy and responsive performance' that emits 'up to 30% lower greenhouse-gas emissions than gasoline'" and that Mercedes "also represents that its BlueTEC vehicles 'convert[] the nitrogen oxide emissions into harmless nitrogen and oxygen' and 'reduces the nitrogen oxide in the exhaust gases by up to 90%.'" (CAC ¶ 5).

- "Mercedes promotes its Clean Diesel vehicles as 'Earth Friendly: With BlueTEC, cleaner emissions are now an equally appealing benefit.'" (*Id.* ¶ 6).

- "Mercedes' advertisements, promotional campaigns, and public statements represented that the Affected Vehicles had high fuel economy, low emissions, reduced NOx by 90%, had lower emissions than comparable diesel vehicles, and had lower emissions than other comparable vehicles." (*Id.* ¶ 101).

Plaintiffs have further alleged that "[t]hese representations are deceptive and false" and that "Mercedes has programmed BlueTEC vehicles to turn off or otherwise limit the effectiveness of the emissions reduction systems during real-world driving." (*Id.* ¶ 7). In support of these

8

statements, Plaintiffs cite to (1) on-road testing of the vehicles, which appear to have been conducted by Plaintiffs' experts (*id.* ¶¶124-135); (2) tests conducted by foreign entities (*id.* ¶¶ 137-138); and (3) Defendants' alleged admissions (which Defendants deny) (*id.* ¶¶ 106, 107).

In reply, Defendants argue that Plaintiffs have not and cannot allege any factual allegations to support their position that Mercedes' statements are false or misrepresentations. (*See* Defs.' Reply Br. at 5-8). However, at this stage of the litigation and in viewing the allegations in the CAC in the totality, the Court finds Plaintiffs' allegations sufficient to support Plaintiffs' claims that the vehicles do not live up to Defendants' representations.

As to the second point, Defendants argue that Plaintiffs cannot establish their benefit of the bargain theory because they "fail to allege that the particular makes or models of vehicles *they* own or lease produce more emissions than Defendants represented, or are defective because they do not meet applicable regulatory emissions standards." (Defs.' Mov. Br. at 7) (emphasis in original). Defendants maintain that Plaintiffs' extensive reliance on testing and reports based upon European models of MBUSA vehicles is misplaced. (*Id.* at 8). First, Defendants note that any tests run on European vehicles are irrelevant to the emissions of Plaintiffs' vehicles, since Plaintiffs' vehicles "were designed for and sold in the United States." (*Id.*). Second, according to Defendants, the testing of European vehicles have no bearing on Plaintiffs' vehicles since European emissions standards differ from those of the United States. (*Id.*). Moreover, Defendants state that the vehicles tested in the European studies were of different models than Plaintiffs' vehicles. (*Id.*). Even if testing of European vehicles could permit any inference with respect to Plaintiffs' vehicles, Defendants explain that the test results do not support Plaintiffs' claims because, contrary to Plaintiffs' representations, those test results affirmatively disclaimed any illegal activity. (*Id.* at 8-9).

In response, Plaintiffs note that although "the European studies did not test the precise models at issue here," the "findings based on testing of similar engines using similar pollution control technologies buttress Plaintiffs' allegations regarding the U.S. models." (Pls.' Br. at 17, n.12).

Additionally, Defendants challenge Plaintiffs' reliance on the results of their experts' "on road" testing. (*Id.* at 9). That is, Defendants note that "[P]laintiffs fail to allege facts showing that any of *their* vehicles were tested—or even which model(s) or model year(s) were tested" and that there is, therefore, "no basis to infer that testing of undisclosed vehicles under unregulated conditions can plausibly demonstrate anything about the emissions of [P]laintiffs' vehicles." (*Id.*) (emphasis in original).

In response Plaintiffs explain that it "it is not necessary to test each specific model in order to allege injury" because "[t]he BlueTECs have one of two engine types: 2.1 liter or 3.0 liter." (Pls.' Br. at 7, n.5). According to Plaintiffs, "[a]ll 2.1 liter engine models have the same engine and emissions control system, as do all 3.0 liter engine models. Plaintiffs' experts tested both engine types covering all class vehicles." (*Id.*). Further, Plaintiff argues that "it is implausible to suggest that the emissions systems are different in each model; they were not in Volkswagen, where the EPA issued violation notices based on engine size (2.0 and 3.0 liters) and did not differentiate based on models or year. In other words, all 2.0 models were in violation, not, for example, some but not all Jettas or Jettas but not Passats. Similarly, what is common to all Mercedes class vehicles, regardless of engine, is the BlueTEC system." (*Id.*).

Given that the above statements pertaining to the relationship between the engine types of Plaintiffs' vehicle and the engine types of the vehicles that were tested were not included in the Complaint, the Court will not consider them at the motion to dismiss stage. *See, e.g., In re*

*Nickelodeon Consumer Privacy Litig.*, MDL No. 2443 (SRC), 2014 WL 3012873, at *7 (D.N.J. July 2, 2014) (citing *Frederico v. Home Depot*, 507 F.3d 188, 201-02 (3d Cir. 2007)). However, because, for the reasons stated below, the Court will dismiss the complaint without prejudice on other grounds, Plaintiffs will have the opportunity to amend their pleading to add these new allegations.[5]

### B. Whether the Alleged Injury is "Fairly Traceable" to Defendants' Conduct

"The second requirement of Article III standing is 'traceability.' If the injury-in-fact prong focuses on *whether* the plaintiff suffered harm, then the traceability prong focuses on *who* inflicted that harm." *Toll Bros., Inc. Twsp. Of Readington*, 555 F.3d 131, 142 (3d Cir. 2009) (citation omitted). Here, Defendants argue that "Plaintiffs have not plausibly alleged that any purported injury of 'overpayment' is 'fairly traceable to the challenged action of the [Defendants].'" (Defs.' Mov. Br. at 13) (quoting *Toll Bros.*, 555 F.3d at 137-38). That is, Defendants state that Plaintiffs have not identified any specific misrepresentations that the named Plaintiffs relied upon in purchasing or leasing their vehicles. (Defs.' Mov. Br. at 13). Moreover, Defendants note that Plaintiffs have not alleged that any of the suspect advertisements related to the specific models Plaintiffs purchased or leased.

---

[5] Plaintiffs also refute Defendants' statement that "Plaintiffs lack standing because they fail 'to allege that they experienced a [] defect.'" (Pls.' Br. at 13). Specifically, Plaintiffs explain that they are not required to allege a defect in order to succeed on their benefit of the bargain theory. (*Id.* at 13-16). While the Court agrees with Plaintiffs that Defendants contend that the evidence alleged in the CAC does not support the existence of a defect generally, the Court construes Defendants' brief as primarily arguing that Plaintiffs have not explained how their particular vehicles are defective. (*See, e.g.*, Defs.' Mov. Br. at 9 ("Among other things, [P]laintiffs fail to allege facts showing that any of *their* vehicles were tested—or even which model(s) or model year(s) were tested. As with the European testing, there is no basis to infer that testing of undisclosed vehicles under unregulated conditions can plausibly demonstrate anything about the emissions *of [P]laintiffs' vehicles*.") (emphasis in original). To the extent Defendants argue that Plaintiffs cannot prove any misrepresentations, the Court has addressed these arguments, above.

11

In response, Plaintiffs maintain that they have sufficiently pled facts to show that Defendants' conduct was fairly traceable to their decision to purchase or lease their vehicles. As an example, Plaintiffs cite to the following allegations of New Jersey Plaintiff Anthony Caputo:

> Mercedes knew about, manipulated, or recklessly disregarded, the inadequate emission controls during normal driving conditions, but did not disclose such facts or their effects to Plaintiff, so Plaintiff purchased his vehicle on the reasonable, but mistaken, belief that his vehicle was a "clean diesel" as compared to gasoline vehicles, complied with United Sates emissions standards, and would retain all of its operating characteristics throughout its useful life, including high fuel economy. Plaintiff selected and ultimately purchased his vehicle, in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes. Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Affected Vehicle had high emissions compared to gasoline vehicles and the fact that Mercedes had designed part of the emissions reduction system to turn off during normal driving conditions. Had Mercedes disclosed this design, and the fact that the ML 350 actually emitted pollutants at a much higher level than gasoline vehicles do, and at a much higher level than a reasonable consumer would expect, and emitted unlawfully high levels of pollutants, Plaintiff would not have purchased the vehicle, or would have paid less for it.

(Pls.' Br. at 18) (citing CAC ¶ 20, and noting that the CAC makes nearly identical allegations for all other Plaintiffs). Plaintiffs opine that they "need not demonstrate their reliance on specifically-delineated advertisements because they each plead: (i) that they relied on pervasive advertisements touting the cleanliness of the BlueTEC engines, advertisements that Plaintiffs contend caused them to purchase their vehicles, and (ii) that they would not have bought or leased the vehicles had they known the truth, or would have paid less." (Pls.' Br. at 40-41). While the Court agrees with Plaintiffs that they do not need to point to specific advertisements that they relied upon, Plaintiffs' vague reference to "advertisements and representations" is insufficient to prove reliance (or "causation") on any alleged misrepresentations.

In *In re Gerber Probiotic Sales Practices Litig.*, 12-cv-835, 2013 WL 4517994 (Aug. 23, 2013)—relied upon by Defendants herein—a putative class of consumers brought consumer fraud claims arising out of the alleged deceptive, false, and misleading marketing of certain Gerber baby products. The *Gerber* plaintiffs alleged that the manufacturer represented the products as providing immune system benefits that it did not, in fact, provide. *Id.* at *1. Like the Plaintiffs in the case at bar, the *Gerber* Plaintiffs relied upon a benefit of the bargain theory to confer standing. *Id.* at *5 ("Plaintiffs claim that they paid a premium for the Products at issue based on false, deceptive and misleading representations.").

In its standing analysis, this Court considered whether plaintiffs had sufficiently pled reliance on Gerber's labeling and advertising to show that Defendants' conduct was fairly traceable to Plaintiffs' alleged injury. There, the plaintiffs pled reliance on defendants' advertising and labeling to varying degrees of specificity. This Court explained:

> [O]ther than the Products' label, no Plaintiff alleges even the general type of medium or "advertising" to which they were allegedly exposed. . . . Therefore, the SAC does not contain sufficient facts to allege that the injuries which resulted to Plaintiffs were fairly traceable to any of Gerber's representations other than those on the Products' labeling.

*Id.* [6] Thus, this Court concluded that "[t]he SAC only establish[ed] standing to sue for injuries caused by the alleged misrepresentations on the Products' labels." *Id.* at *10.

In the case at bar, Plaintiffs reference a number of specific advertisements throughout the Complaint. (*See, e.g.,* CAC ¶ 98 (citing a 2008 press release), ¶ 100 (referencing print advertising and brochures), ¶ 101(c) (citing Mercedes' website)). However, no Plaintiff has alleged that he or

---

[6] In a subsequent opinion in *Gerber*, this Court held that the plaintiffs had sufficiently amended their complaint to demonstrate causation for standing purposes where "[e]ach [p]laintiff [alleged that he or she] saw the product labels" and where several plaintiffs also alleged that they viewed the company's website or saw print, television, or in-store advertisements. *In re Gerber Probiotic Sales Practices Litig. ("Gerber II")*, No. 12-cv-835 (JLL), 2014 WL 1310038, *4-6 (D.N.J. Mar. 31, 2014).

she relied upon any of the cited advertisements in deciding to lease or purchase one of Defendants' vehicles. (*See, e.g.,* CAC ¶ 20). That is, Plaintiffs in this action, just as the plaintiffs in *Gerber*, hinge the causation element of standing on a general advertising scheme. Specifically, Plaintiffs allege that they purchased or leased their vehicles "in part, because of the BlueTEC Clean Diesel system, as represented through advertisements and representations made by Mercedes. Plaintiff recalls that the advertisements and representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system." (CAC ¶ 20). Just as their counterparts in *Gerber*, Plaintiffs here have not "allege[d] the general type of medium or 'advertising' to which they were [personally] allegedly exposed.'" *Gerber*, 2013 WL 4517994, *6. For example, Plaintiffs have not alleged that they actually viewed any category of advertisements—*i.e.*, Defendants' website, press releases, etc.— that contained the alleged misrepresentations. *See Geber II*, 2014 WL 1310038, *4-6. Accordingly, the Court finds that the CAC does not contain sufficient facts to allege that Plaintiffs' injuries were fairly traceable to any of Defendants' representations. *See Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587, 599 (2007) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984) ("A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.")).

Because the Court finds that Plaintiffs do not have standing based upon the facts alleged in the CAC, the Court is without subject matter jurisdiction to address Defendants' remaining arguments for dismissal.

### IV. Conclusion

For the reasons stated herein, Defendants' motion to dismiss Plaintiffs' CAC is granted. Plaintiffs' CAC is hereby dismissed without prejudice. An appropriate Order accompanies this Opinion.

IT IS SO ORDERED.

DATED: December 5, 2016

_____
JOSE L. LINARES, U.S.D.J.