**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| IN RE MERCEDES-BENZ EMISSIONS LITIGATION | Civil Action: 16-cv-881 (JLL) (JAD)<br><br>Motion Date: February 5, 2018<br><br>**ELECTRONICALLY FILED**<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS MERCEDES-BENZ USA, LLC'S AND DAIMLER AG'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS
THE FOURTH CONSOLIDATED AND AMENDED COMPLAINT
AND TO COMPEL ARBITRATION**

Daniel W. Nelson
Geoffrey M. Sigler
Lucas C. Townsend
Chantale Fiebig
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Tel: (202) 887-3731
Fax: (202) 530-4254

Troy M. Yoshino
Matthew J. Kemner
Eric J. Knapp
Squire Patton Boggs (US) LLP
275 Battery Street, Suite 2600
San Francisco, CA 94111
Tel: (415) 743-2441
Fax: (415) 989-0932

*Attorneys for Defendants Mercedes-Benz USA, LLC and Daimler AG*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1
BACKGROUND ................................................................................................. 2
LEGAL STANDARD........................................................................................... 5
ARGUMENT ...................................................................................................... 6

    I.      PLAINTIFFS' CLAIMS FAIL FOR LACK OF ARTICLE III STANDING.......................... 6

          A.      Most Plaintiffs Failed To Heed The Court's Prior Dismissal Order ......... 6

          B.      At Most, Plaintiffs Allege A Benefit-Of-The-Bargain Injury, And Their Assertions About Future Or Public Harms Should Again Be Dismissed .................................................................................................. 10

    II.     PLAINTIFFS' RICO CLAIM FAILS AS A MATTER OF LAW.................................... 12

          A.      Plaintiffs Have Failed To Allege RICO Injury ....................................... 13

          B.      Plaintiffs Have Failed To Allege RICO Causation.................................. 15

          C.      Plaintiffs Have Failed To Allege A RICO Enterprise Involving The Mercedes Defendants........................................................................... 18

          D.      Plaintiffs Have Failed To Allege That The Mercedes Defendants Directed The Conduct Of The RICO Enterprise.................................... 22

          E.      Plaintiffs Have Failed To Allege A Pattern Of Racketeering Activity With Sufficient Particularity Under Rule 9(b).......................... 24

    III.    PLAINTIFFS' STATE-LAW CLAIMS ARE PREEMPTED BY THE CLEAN AIR ACT...... 26

    IV.    PLAINTIFFS' STATE-LAW MISREPRESENTATION CLAIMS FAIL BECAUSE THEY CHALLENGE ONLY NONACTIONABLE PUFFERY .......................................... 31

    V.     PLAINTIFFS' STATE FRAUDULENT CONCEALMENT CLAIMS SHOULD BE DISMISSED ................................................................................................... 34

          A.      Plaintiffs Have Failed To Adequately Allege The What, Who, Where, Or When Of The Alleged Fraud Under Rule 9(b) .................... 35

          B.      Plaintiffs Have Failed To Plead Facts Giving Rise To A Duty To Disclose.................................................................................................. 38

    VI.    PLAINTIFFS' STATE STATUTORY CLAIMS SHOULD BE DISMISSED ...................... 41

          A.      Plaintiffs Have Failed To State A Claim For Violations Of State Consumer Protection Statutes Under Rule 9(b)...................................... 41

i

# TABLE OF CONTENTS
(cont'd)

Page

B.  Plaintiffs Have Failed To Plead Ascertainable Loss As Required By Two States ........................................................................... 43

C.  Plaintiffs' Statutory Claims Are Time-Barred In Three States ............... 44

D.  State Class Action Bars Require Dismissal Of Plaintiffs' Statutory Class Claims In Seven States ................................................. 46

VII.  AT LEAST TWO PLAINTIFFS MUST ARBITRATE ALL CLAIMS RELATING TO THEIR VEHICLES ........................................................................ 48

CONCLUSION ............................................................................................. 50

# TABLE OF AUTHORITIES

Page

**Cases**

*A.J.'s Auto. Sales, Inc. v. Freet*,
  725 N.E.2d 955 (Ind. Ct. App. 2000) ........................................................................45

*Absolute Power Sys., Inc. v. Cummins, Inc.*,
  2016 WL 6897782 (D.N.J. Nov. 23, 2016) .............................................................26

*Abuhouran v. KaiserKane, Inc.*,
  2011 WL 6372208 (D.N.J. Dec. 19, 2011) ............................................................29

*Aetna Health Inc. v. Davila*,
  542 U.S. 200 (2004) ............................................................................................29

*In re Aetna UCR Litig.*,
  2015 WL 3970168 (D.N.J. June 30, 2015) ......................................................21, 23

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ................................................................................16, 17, 18

*Arenson v. Whitehall Convalescent & Nursing Home, Inc.*,
  880 F. Supp. 1202 (N.D. Ill. 1995) .......................................................................24

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009) ............................................................................................49

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..............................................................................................5

*In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*,
  804 F.3d 633 (3d Cir. 2015) ......................................................................13, 14, 17

*Azoulai v. BMW of N. Am. LLC*,
  2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) .......................................................31

*Baez v. Root*,
  2014 WL 1414433 (S.D. Fla. Apr. 11, 2014) .......................................................45

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................................5

*Blinco v. Green Tree Servicing LLC*,
  400 F.3d 1308 (11th Cir. 2005) .............................................................................49

*Bonnieview Homeowners Ass'n v. Woodmont Builders, L.L.C.*,
  655 F. Supp. 2d 473 (D.N.J. 2009) .......................................................................34

iii

## TABLE OF AUTHORITIES
(cont'd)

Page

*Boyle v. United States*,
  556 U.S. 938 (2009)..................................................................................19, 21

*In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*,
  155 F. Supp. 2d 1069 (S.D. Ind. 2001) ...............................................................13

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001)..................................................................................30, 31

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
  394 F.3d 126 (3d Cir. 2004)..........................................................................6, 8

*Castrol Inc. v. Pennzoil Co.*,
  987 F.2d 939 (3d Cir. 1993)............................................................................31

*In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.*,
  2015 WL 4591236 (D.N.J. July 29, 2015)..............................................29, 30, 43

*Cedric Kushner Promotions, Ltd. v. King*,
  533 U.S. 158 (2001)........................................................................................23

*Chan v. Daimler AG*,
  2012 WL 5827448 (D.N.J. Nov. 9, 2012) .............................................................5

*Cipollone v. Liggett Grp., Inc.*,
  505 U.S. 504 (1992)..................................................................................26, 27

*Collins v. Davol, Inc.*,
  56 F. Supp. 3d 1222 (N.D. Ala. 2014)..............................................................44

*Comwest, Inc. v. Am. Operator Servs., Inc.*,
  765 F. Supp. 1467 (C.D. Cal. 1991) ................................................................24

*Connick v. Suzuki Motor Co.*,
  675 N.E.2d 584 (Ill. 1996)................................................................................39

*Counts v. Gen. Motors, LLC*,
  237 F. Supp. 3d 572 (E.D. Mich. 2017)...........................................7, 29, 33, 34

*Crichton v. Golden Rule Ins. Co.*,
  2006 WL 2349961 (S.D. Ill. Aug. 11, 2006) .....................................................23

*Crozier v. Johnson & Johnson Consumer Cos.*,
  901 F. Supp. 2d 494 (D.N.J. 2012) ....................................................................6

iv

# TABLE OF AUTHORITIES
(cont'd)

Page

*DLJ Mortg. Capital, Inc. v. Kontogiannis*,
   726 F. Supp. 2d 225 (E.D.N.Y. 2010) ....................................................................12

*Dugan v. TGI Fridays, Inc.*,
   2017 WL 4399352 (N.J. Oct. 4, 2017) ...................................................................43

*Early v. K-Tel Int'l, Inc.*,
   1999 WL 181994 (N.D. Ill. Mar. 24, 1999)............................................................24

*Efron v. Embassy Suites (P.R.), Inc.*,
   223 F.3d 12 (3d Cir. 2000)......................................................................................12

*El-Issa v. Compaq Comput. Corp.*,
   1997 WL 790730 (N.D. Ill. Dec. 19, 1997) ............................................................24

*In re Elevator Antitrust Litig.*,
   502 F.3d 47 (2d Cir. 2007)......................................................................................20

*In re Elk Cross Timbers Decking Mktg., Sales Practices & Prods. Liab. Litig.*,
   2015 WL 6467730 (D.N.J. Oct. 26, 2015)..............................................................35

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
   541 U.S. 246 (2004)...........................................................................................27, 28

*FCMA, LLC v. Fujifilm Recording Media U.S.A., Inc.*,
   2010 WL 3076486 (D.N.J. Aug. 5, 2010) ..........................................................48, 49

*Fejzulai v. Sam's West, Inc.*,
   205 F. Supp. 3d 723 (D.S.C. 2016).........................................................................47

*Felix v. Volkswagen Grp. of Am., Inc.*,
   2017 WL 3013080 (N.J. Super. Ct. App. Div. July 17, 2017)................................29

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II)*,
   2010 WL 2813788 (D.N.J. July 9, 2010).............................................................9, 40

*Forrest v. Owen J. Roberts Sch. Dist.*,
   2011 WL 1549492 (E.D. Pa. Apr. 1, 2011) ............................................................25

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007)......................................................................................5

*Friedman v. Mercedes Benz USA, LLC*,
   2013 WL 8336127 (C.D. Cal. June 12, 2013) ..........................................................9

**TABLE OF AUTHORITIES**
(cont'd)

Page

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.,*
966 F. Supp. 1525 (E.D. Mo. 1997)................................................................32

*In re Gen. Motors LLC Ignition Switch Litig.,*
2016 WL 3920353 (S.D.N.Y. July 15, 2016) ......................................13, 14, 15, 22

*In re Gerber Probiotic Sales Practices Litig.,*
2013 WL 4517994 (D.N.J. Aug. 23, 2013) ......................................................6, 7

*In re GNC Corp.,*
789 F.3d 505 (4th Cir. 2015) ...........................................................................42

*Gold v. Lumber Liquidators, Inc.,*
2015 WL 7888906 (N.D. Cal. Nov. 30, 2015) ...............................................41

*Gray v. Bayer Corp.,*
2009 WL 1617930 (D.N.J. June 9, 2009) ........................................................41

*Hammer v. Vital Pharm., Inc.,*
2012 WL 1018842 (D.N.J. Mar. 26, 2012).....................................................32

*Hartz Mountain Indus., Inc. v. Polo,*
2005 WL 2807355 (D.N.J. Oct. 26, 2005).......................................................11

*Hemi Grp., LLC v. City of N.Y.,*
559 U.S. 1 (2010).......................................................................................17, 18

*Henderson v. Volvo Cars of N. Am., LLC,*
2010 WL 2925913 (D.N.J. July 21, 2010) ......................................................36

*Hildebrand v. Dentsply Int'l, Inc.,*
264 F.R.D. 192 (E.D. Pa. 2010)......................................................................10

*Holmes v. Behr Process Corp.,*
2015 WL 7252662 (N.D. Ala. Nov. 17, 2015) ................................................44

*Holmes v. Parade Place, LLC,*
2013 WL 5405541 (S.D.N.Y. Sept. 26, 2013)................................................12

*Impress Commc'ns v. Unumprovident Corp.,*
335 F. Supp. 2d 1053 (C.D. Cal. 2003) ..........................................................13

*Indian Brand Farms, Inc. v. Novartis Crop Prot. Inc.,*
617 F.3d 207 (3d Cir. 2010)............................................................................36

# TABLE OF AUTHORITIES
(cont'd)

Page

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010).....................................................................*passim*

*In re iPhone 4s Consumer Litig.*,
637 F. App'x 414 (9th Cir. 2016) ..........................................................42

*Jackson v. Gen. Motors Corp.*,
770 F. Supp. 2d 570 (S.D.N.Y. 2011)........................................27, 28, 30

*James River Ins. Co. v. Rapid Funding, LLC*,
658 F.3d 1207 (10th Cir. 2011) ..............................................................46

*Joseph v. Wiles*,
223 F.3d 1155 (10th Cir. 2000) ..............................................................38

*Klein v. Gen. Nutrition Cos.*,
186 F.3d 338 (3d Cir. 1999)....................................................................24

*Kolar v. Preferred Real Estate Invs., Inc.*,
361 F. App'x 354 (3d Cir. 2010) ............................................................12

*Koronthaly v. L'Oreal USA, Inc.*,
374 F. App'x 257 (3d Cir. 2010) ............................................................11

*Leonard v. Abbott Labs., Inc.*,
2012 WL 764199 (E.D.N.Y. Mar. 5, 2012)............................................46

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
134 S. Ct. 1377 (2014)..............................................................................7

*Lieberson v. Johnson & Johnson Consumer Cos.*,
865 F. Supp. 2d 529 (D.N.J. 2011) ..................................................42, 43

*Lightning Lube, Inc. v. Witco Corp.*,
4 F.3d 1153 (3d Cir. 1993)......................................................................39

*Lockey v. CMRE Fin. Servs., Inc.*,
2011 WL 2971085 (S.D. Miss. July 20, 2011) .......................................47

*Longmont United Hosp. v. Saint Barnabas Corp.*,
2007 WL 1850881 (D.N.J. June 26, 2007)..............................................17

*Lum v. Bank of Am.*,
361 F.3d 217 (3d Cir. 2004)..............................................................25, 26

## TABLE OF AUTHORITIES
(cont'd)

Page

*Maio v. Aetna, Inc.,*
  221 F.3d 472 (3d Cir. 2000)............................................................................13

*Major League Baseball v. Morsani,*
  790 So. 2d 1071 (Fla. 2001)...........................................................................45

*Mayberry v. Bristol-Myers Squibb Co.,*
  2009 WL 5216968 (D.N.J. Dec. 30, 2009)....................................................47

*McKissic v. Country Coach, Inc.,*
  2008 WL 2782678 (M.D. Fla. July 16, 2008) ...............................................45

*McLaughlin v. Am. Tobacco Co.,*
  522 F.3d 215 (2d Cir. 2008).....................................................................13, 14

*Mega Concrete, Inc. v. Smith,*
  2011 WL 1103831 (E.D. Pa. Mar. 24, 2011).................................................20

*Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,*
  453 U.S. 1 (1981)...............................................................................................4

*Miller v. William Chevrolet/GEO, Inc.,*
  762 N.E.2d 1 (Ill. App. Ct. 2001) .................................................................39

*Morales v. Trans World Airlines, Inc.,*
  504 U.S. 374 (1992)........................................................................................27

*Morris v. BMW of N. Am., LLC,*
  2014 WL 793550 (D.N.J. Feb. 26, 2014) ......................................................10

*Nathan Kimmel, Inc. v. DowElanco,*
  275 F.3d 1199 (9th Cir. 2002) .......................................................................31

*Nationwide Ins. Co. of Columbus, Ohio v. Patterson,*
  953 F.2d 44 (3d Cir. 1991)..............................................................................50

*Nestlé Purina Petcare Co. v. Blue Buffalo Co.,*
  181 F. Supp. 3d 618 (E.D. Mo. 2016).............................................................22

*In re Office of Att'y Gen. of N.Y.,*
  709 N.Y.S.2d 1 (App. Div. 2000)........................................................27, 28, 29

*Oliver v. Funai Corp.,*
  2015 WL 9304541 (D.N.J. Dec. 21, 2015)...................................................6, 7

**TABLE OF AUTHORITIES**
(cont'd)

Page

*Pelman ex rel. Pelman v. McDonald's Corp.*,
    396 F.3d 508 (2d Cir. 2005)........................................................................41

*Peruto v. TimberTech Ltd.*,
    126 F. Supp. 3d 447 (D.N.J. 2015) ...........................................................32

*Plumbers' Local Union No. 690 Health Plan v. Sanofi, S.A.*,
    2016 WL 2757736 (D.N.J. May 11, 2016).......................................42, 43

*Powell v. Lennon*,
    914 F.2d 1459 (11th Cir. 1990) ..................................................................4

*Precision Funding Grp., LLC v. Nat'l Fid. Mortg.*,
    2013 WL 2404151 (D.N.J. May 31, 2013)..............................................50

*RBC Bank (USA) v. Petrozzini*,
    2012 WL 1965370 (D.N.J. May 31, 2012)..............................................42

*Reilly v. Ceridian Corp.*,
    664 F.3d 38 (3d Cir. 2011).........................................................................11

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)................................................................12, 23, 24

*In re Riddell Concussion Reduction Litig.*,
    77 F. Supp. 3d 422 (D.N.J. 2015) ...........................................................43

*Robinson v. Kia Motors Am., Inc.*,
    2015 WL 5334739 (D.N.J. Sept. 11, 2015) ............................................37

*Sarpolis v. Tereshko*,
    26 F. Supp. 3d 407 (E.D. Pa. 2014) ...................................................25, 26

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
    678 F.3d 235 (3d Cir. 2012)........................................................................5

*In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*,
    2009 WL 2043604 (D.N.J. July 10, 2009)...............................................16

*Seaton v. TripAdvisor LLC*,
    728 F.3d 592 (6th Cir. 2013) ....................................................................33

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010).............................................................................46, 47

## TABLE OF AUTHORITIES
(cont'd)

Page

*Shaw v. Nissan N. Am., Inc.*,
220 F. Supp. 3d 1046 (C.D. Cal. 2016) ................................................................21, 22

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S. 220 (1987) ................................................................48

*Sherer v. Green Tree Servicing, LLC*,
548 F.3d 379 (5th Cir. 2008) ................................................................49

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016) ................................................................11

*Stevenson v. Mazda Motor of Am., Inc.*,
2015 WL 3487756 (D.N.J. June 2, 2015) ................................................34, 35, 39

*In re Suprema Specialties, Inc. Sec. Litig.*,
438 F.3d 256 (3d Cir. 2006) ................................................................5, 35, 41

*Syncsort Inc. v. Sequential Software, Inc.*,
50 F. Supp. 2d 318 (D.N.J. 1999) ................................................................31

*Tait v. BSH Home Appliances Corp.*,
2011 WL 1832941 (C.D. Cal. May 12, 2011) ................................................................46

*In re Target Corp. Data Sec. Breach Litig.*,
66 F. Supp. 3d 1154 (D. Minn. 2014) ................................................................46

*In re TD Bank, N.A.*,
150 F. Supp. 3d 593 (D.S.C. 2015) ................................................................46

*Tierney & Partners, Inc. v. Rockman*,
274 F. Supp. 2d 693 (E.D. Pa. 2003) ................................................................25

*Tietsworth v. Sears, Roebuck & Co.*,
2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) ................................................................33

*Toll Bros., Inc. v. Twp. of Readington*,
555 F.3d 131 (3d Cir. 2009) ................................................................6, 9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &
Prods. Liab. Litig.*,
826 F. Supp. 2d 1180 (C.D. Cal. 2011) ................................................................21

*Traylor v. Awwa*,
899 F. Supp. 2d 216 (D. Conn. 2012) ................................................................35

x

## TABLE OF AUTHORITIES
(cont'd)

Page

*United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*,
719 F.3d 849 (7th Cir. 2013) ..................................................................21, 23

*United States v. Pearlstein*,
576 F.2d 531 (3d Cir. 1978).............................................................................25

*United States v. Turkette*,
452 U.S. 576 (1981).........................................................................................19

*Univ. of Md. at Balt. v. Peat, Marwick, Main & Co.*,
996 F.2d 1534 (3d Cir. 1993)...........................................................................23

*Urbino v. Ambit Energy Holdings, LLC*,
2015 WL 4510201 (D.N.J. July 24, 2015).......................................................32

*Vinson v. Seven Seventeen HB Phila. Corp.*,
2001 WL 1774073 (E.D. Pa. Oct. 31, 2001).....................................................10

*In re Volkswagen "Clean Diesel" Litig.*,
2016 WL 5347198 (Va. Cir. Ct. Aug. 30, 2016) ..............................................29

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
2017 WL 1902160 (D.N.J. May 8, 2017) ...............................................39, 40, 50

*Warden v. McLelland*,
288 F.3d 105 (3d Cir. 2002)............................................................................25

*Worldwide Directories S.A. De C.V. v. Yahoo! Inc.*,
2016 WL 1298987 (S.D.N.Y. Mar. 31, 2016) ..................................................20

**Statutes**

18 U.S.C. § 1961...................................................................................19, 24

18 U.S.C. § 1962(c) .....................................................................................22

18 U.S.C. § 1964(c) .....................................................................................15

42 U.S.C. § 7507............................................................................................3

42 U.S.C. § 7543 ................................................................................ *passim*

Ala. Code § 8-19-10(f).............................................................................46, 47

Ala. Code § 8-19-14....................................................................................44

# TABLE OF AUTHORITIES
(cont'd)

Page

Fla. Stat. § 95.051 .................................................................................44, 45

Ga. Code § 10-1-399(a) .................................................................................46

Ind. Code § 24-5-0.5-5 .................................................................................45

Miss. Code § 75-24-15 .............................................................................46, 47

Mont. Code § 30-14-133(1) ...........................................................................46

N.Y. G.B.L. § 349 ...........................................................................................41

Ohio Rev. Code § 1345.09(A) .......................................................................46

S.C. Code § 39-5-140(a) ................................................................................46

Tenn. Code § 47-18-109(a)(1) .......................................................................46

**Rules**

Fed. R. Civ. P. 8 ..............................................................................41, 42, 43

Fed. R. Civ. P. 9(b) ................................................................................. *passim*

Fed. R. Civ. P. 12(b)(1) ...................................................................................5

Fed. R. Civ. P. 12(b)(6) ...........................................................................5, 50

Fed. R. Civ. P. 23 ...........................................................................................46

N.Y. C.P.L.R. 901(b) .....................................................................................47

**Regulations**

40 C.F.R. § 86.1803-01 ....................................................................................3

Cal. Code Regs. § 2701(26) .............................................................................3

Cal. Code Regs. § 2702(a) ...............................................................................3

# INTRODUCTION

This case purports to be a false advertising lawsuit.  Plaintiffs claim they were harmed by

Daimler AG and Mercedes-Benz USA, LLC ("MBUSA") (collectively, the "Mercedes

Defendants") through a purported false advertising scheme that allegedly misrepresented

Mercedes-Benz BlueTEC diesel vehicles as environmentally friendly when the vehicles,

according to plaintiffs, impermissibly exceeded regulatory emissions standards.  But plaintiffs'

Fourth Amended Complaint ("FAC") continues to suffer from numerous flaws, including the

same fatal jurisdictional deficiency that previously led this Court to dismiss this case.  As this

Court previously ruled, plaintiffs' claims fail at the Article III standing threshold.  Indeed,

despite this Court's clear directive to identify the challenged advertising that allegedly deceived

them, many plaintiffs have simply reasserted the same inadequate allegations that this Court

previously rejected as too generalized, while others sprinkle in only sparse additions that fail to

cure the standing deficiencies.  Plaintiffs who still fail to satisfy Article III standing should now

be dismissed with prejudice.

Plaintiffs' claims should also be dismissed because they are all based on a thinly veiled

attempt to repackage alleged violations of diesel emission regulations as false advertising claims.

For example, plaintiffs' new RICO claim—in which plaintiffs allege the Mercedes Defendants

entered into an unlawful enterprise with suppliers Robert Bosch GmbH and Robert Bosch LLC

(collectively, "Bosch") to defraud regulators regarding the vehicles' compliance with emissions

standards—is emblematic of plaintiffs' improper attempt to enforce alleged regulatory violations

in the guise of a false advertising suit.  But the regulators are currently reviewing diesel-

emissions matters, and plaintiffs should not be permitted to bypass agency review.

Plaintiffs' new RICO claim also should be dismissed because it suffers from additional

legal deficiencies.  Plaintiffs lack statutory standing under RICO and have failed to allege an

injury to plaintiffs that is fairly traceable to the alleged predicate acts claimed to form a pattern of racketeering by the alleged RICO enterprise. Moreover, plaintiffs fail to allege a RICO enterprise involving the Mercedes Defendants because plaintiffs' allegations focus on Bosch's relationships with vehicle manufacturers that are not parties to this case—namely Volkswagen AG, which is subject to separate proceedings that plaintiffs improperly rely upon to pursue this case against the Mercedes Defendants. In addition, plaintiffs' allegations do not even approach the level of specificity that Rule 9(b) requires for pleading predicate acts based on fraud.

All of plaintiffs' state-law claims should be dismissed as well, because they attempt to enforce alleged regulatory standards, and are therefore expressly or impliedly preempted under the Clean Air Act. Additionally, the overwhelming majority of the allegedly false advertisements amount to nonactionable puffery. These claims also fail to satisfy the heightened pleading requirements of Rule 9(b) and are barred by various state-specific requirements as well. Finally, some plaintiffs' claims are barred by arbitration clauses that preclude them from pursuing this litigation at all.

**BACKGROUND**

Plaintiffs are consumers who allegedly purchased or leased Mercedes-Benz BlueTEC diesel vehicles in the United States and who now contend that the vehicles were not as environmentally friendly as advertised because they purportedly emit levels of diesel emissions that exceed applicable regulatory standards. FAC ¶¶ 27-87. These vehicles are subject to a complex regulatory regime under the Clean Air Act ("CAA"), which requires all passenger and light-duty diesel vehicles to receive a Certificate of Conformity ("COC") from the U.S. Environmental Protection Agency ("EPA") or the California Air Resources Board ("CARB") before they may be sold in the United States. *Id.* ¶ 125. Manufacturers can receive a COC to

2

sell their diesel vehicles only after certifying that the vehicles meet all applicable emissions standards.  *Id.*[1]  Both EPA and CARB are currently reviewing Mercedes-Benz's diesel-vehicle emissions, as well as those of other manufacturers throughout the industry.

Plaintiffs allege in the FAC that their vehicles did not comply with the applicable emissions standards because they purportedly contain "defeat devices"—a term defined by EPA regulation, 40 C.F.R. § 86.1803-01—that allow the vehicles to pass certification inspections in the laboratory, despite allegedly emitting higher levels of emissions (namely, nitrogen oxides or "NOx") when the vehicles are being driven on the road, in real-world driving conditions outside of a laboratory.  FAC ¶ 141.  Plaintiffs do not contend that the vehicles exceed any specific standards for "on-road" driving, nor could they, because neither EPA nor CARB has ever promulgated specific emissions standards for on-road driving or testing—only for in-lab testing.

Many of the allegations in plaintiffs' complaint attempt to link the Mercedes Defendants to the alleged misconduct of Volkswagen AG, an unrelated auto manufacturer that received a Notice of Violation from the EPA in 2015 for its use of a defeat device in Volkswagen vehicles.  *See, e.g.*, FAC ¶ 134 n.9 ("As detailed in the EPA's [NOV], software in Volkswagen and Audi diesel vehicles detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test.").  The FAC describes at length Volkswagen's admitted emissions violations, *id.* ("Volkswagen has admitted to installing a defeat device in its diesel vehicles."); *accord id.* ¶ 277, even though plaintiffs cannot rely on *Volkswagen*'s

---

[1]    The CAA expressly preempts states from setting their own "standards" governing motor vehicle emissions, with the exception that the EPA can waive preemption for California and other states that wish to "opt-in" to CARB's emissions control program.  42 U.S.C. §§ 7507, 7543.  Similar to the EPA, CARB issues executive orders (analogous to certificates of conformity) after automobile manufacturers verify that their vehicles comply with CARB's emissions standards.  13 Cal. Code Regs. §§ 2701(26), 2702(a).

regulatory emissions violations to construct a case against the Mercedes Defendants.  Critically, however, plaintiffs do not allege—nor could they—that any of these regulatory violations pertains to diesel vehicles manufactured by the Mercedes Defendants.

The CAA does not contain a private right of action.  *See Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 17 n.27 (1981); *Powell v. Lennon*, 914 F.2d 1459, 1462 n.7 (11th Cir. 1990).  Thus, consumers cannot assert claims that their vehicles do not comply with federal regulations promulgated under the CAA—or that their vehicles violate those regulations by, for example, containing a defeat device.  In an effort to sidestep this bar, plaintiffs contend here that they instead are challenging false advertising based on various, nonspecific claims that the vehicles are "clean diesel," "green," and "environmentally-friendly." FAC ¶¶ 16, 27, 33 (quotation marks omitted).  But most plaintiffs do not allege that they read, saw, or relied on the advertising that they allege to be false.

This Court dismissed a previous version of plaintiffs' complaint in December 2016, holding that plaintiffs had failed to allege an injury caused by any of the advertisements that plaintiffs alleged were false.  D.E. 58 at 11-14.  The Court held that the complaint did not "contain sufficient facts to allege that Plaintiffs' injuries were fairly traceable to any of Defendants' representations," and that instead, plaintiffs "hinge[d] the causation element of standing on a general advertising scheme" without explaining who saw which advertisements containing which allegedly false representations, if any.  *Id.* at 14.

In addition to the improperly pled false advertising claims, the FAC also asserts a legally deficient RICO claim.  Plaintiffs allege that the Mercedes Defendants and Bosch worked together and formed a bilateral enterprise—the so-called Emissions Fraud Enterprise ("EFE")— whose purpose was to sell non-compliant Mercedes vehicles using Bosch inputs and software to

4

misrepresent vehicle performance.  FAC ¶¶ 352-56.  This theory is expressly based on plaintiffs'

supposition that Bosch engaged in conduct with the Mercedes Defendants that plaintiffs allege it

also engaged in with three other automakers, including principally Volkswagen.  *Id.* ¶¶ 287, 291,

364.  The FAC is replete with irrelevant allegations against these others manufacturers, *see, e.g.*,

*id.* ¶¶ 279-312, but as to the Mercedes Defendants themselves, the plaintiffs make only the same

unsupported assertion that underlies all of their other claims:  that Mercedes-Benz diesel vehicles

supposedly were misrepresented as complying with applicable regulatory emissions standards.

*See id.* ¶ 395.

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(1), a court must dismiss a complaint where plaintiffs lack

standing.  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 244

(3d Cir. 2012); *Chan v. Daimler AG*, 2012 WL 5827448, at *4 (D.N.J. Nov. 9, 2012).  In addition,

a complaint must be dismissed under Rule 12(b)(6) unless it "contain[s] sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Because plaintiffs' claims sound in fraud, they also need to satisfy the more "stringent

pleading requirements" of Rule 9(b), through which a plaintiff is required to "state with

particularity the circumstances of the alleged fraud or otherwise inject the requisite precision into

her allegations."  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *see also* Fed. R.

Civ. P. 9(b).  "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of . . .

fraud with all of the essential factual background that would accompany the 'first paragraph of

any newspaper story'—that is, the 'who, what, when, where and how' of the events at issue."  *In*

*re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006) (quotation marks and

citation omitted).  In the class action context, "each 'individually named plaintiff must satisfy Rule 9(b) independently.'"  *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012) (citation omitted).

Where, as here, allegations were previously dismissed as deficient, and plaintiffs received "a detailed blueprint of how to remedy the defects in their claims," which plaintiffs ignored, the amended complaint should be dismissed with prejudice.  *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 164 (3d Cir. 2004); *Oliver v. Funai Corp.*, 2015 WL 9304541, at *5 (D.N.J. Dec. 21, 2015) (Linares, J.) (dismissing complaint with prejudice where it contained "the same allegations . . . which ha[d] already been deemed insufficient by this Court").

## ARGUMENT

### I.   PLAINTIFFS' CLAIMS FAIL FOR LACK OF ARTICLE III STANDING

The Court should again dismiss fifty-four plaintiffs' claims for the same reason it did before:  these plaintiffs have failed to allege an injury-in-fact that is "fairly traceable to any of Defendants' representations" as required under Article III.  D.E. 58 at 14; *see Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137-38 (3d Cir. 2009).

#### A.   Most Plaintiffs Failed To Heed The Court's Prior Dismissal Order

Relying on *In re Gerber Probiotic Sales Practices Litigation*, 2013 WL 4517994 (D.N.J. Aug. 23, 2013), this Court dismissed plaintiffs' prior complaint because they failed to allege "reliance (or 'causation') on any alleged misrepresentations."  D.E. 58 at 12-13.  The Court explained that the traceability prong of standing requires allegations of reliance or causation by each plaintiff, but that "[n]o Plaintiff" had "alleged that he or she relied upon any of the cited advertisements in deciding to lease or purchase one of Defendants' vehicles."  *Id.* at 13-14.  Instead, plaintiffs had made only "vague reference to 'advertisements and representations.'"  *Id.* at 12.  This Court instructed that, at a minimum, each plaintiff must plead

6

both the "category of advertisements—*i.e.*, Defendants' website, press releases, etc.," *and* that these advertisements "contained the alleged misrepresentations." *Id.* at 14.[2]

Despite the Court's clear directive, most plaintiffs—fifty-four out of the sixty named plaintiffs in the FAC—still fail to allege facts sufficient to support Article III standing. Indeed, while the Mercedes Defendants set forth below the primary reason why each plaintiff lacks standing, most of these fifty-four plaintiffs lack standing for multiple reasons. *See* Appendix A.

First, remarkably, twenty-four plaintiffs—ten whose claims were previously dismissed,[3] and fourteen new plaintiffs[4]—simply repeat the exact same boilerplate assertions of generalized

---

[2]     One opinion has questioned the Court's ruling, but its standing analysis is an outlier. In *Counts v. General Motors, LLC*, 237 F. Supp. 3d 572, 584-86 (E.D. Mich. 2017)—a diesel emissions false advertising case against General Motors—the court rejected General Motors' argument that plaintiffs lacked standing because they failed to specify which deceptive advertisements they saw. In reaching its conclusion, the court stated that this Court's prior decision dismissing plaintiffs' complaint blurred the distinction between traceability and proximate causation. *Id.* at 585 ("The decision in *Mercedes-Benz Emissions Litigation* is incompatible with existing Sixth Circuit and Supreme Court precedent."). But *Counts* is incorrect in its descriptions of the Court's decision, and of the law. As an initial matter, neither the Court nor the Mercedes Defendants made any reference to proximate cause in addressing plaintiffs' lack of standing in this case. To the contrary, the Court held that plaintiffs' vague references to "advertisements and representations" were insufficient to plead plaintiffs' *reliance* on the challenged advertisements—not proximate cause. D.E. 58 at 12 (quotation marks omitted). Moreover, the cases on which *Counts* relied, including the Supreme Court's decision in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), confirm that in order for a plaintiff to establish Article III standing, any injury must "be fairly traceable to the defendant's conduct"—the point at the heart of this Court's prior ruling. *Id.* at 1391 n.6; *see also Gerber*, 2013 WL 4517994, at *6. And *Counts* reached its conclusion without the benefit of any briefing on this issue because General Motors did not challenge plaintiffs' failure to establish traceability in *Counts*. 237 F. Supp. 3d at 584. For all of these reasons, *Counts* does not warrant any change in this Court's standing analysis.

[3]     FAC ¶ 29 (Mose); ¶ 31 (Vidal); ¶ 42 (Watkins); ¶ 57 (Gates); ¶ 61 (Thorson); ¶ 63 (Reed); ¶ 67 (Minerva); ¶ 68 (Holbrook); ¶ 74 (Patel); ¶ 81 (Medler).

[4]     FAC ¶ 28 (Caniero); ¶ 30 (Louis); ¶ 37 (Servin); ¶ 43 (Carroll); ¶ 44 (Cunningham); ¶ 50 (Findlay); ¶ 51 (Rubey); ¶ 55 (Sheehy); ¶ 58 (Schafer); ¶ 60 (Ashcraft); ¶ 69 (Trepper); ¶ 72 (Ledlie); ¶ 76 (Bird); ¶ 87 (Kurzawa).

deception and reliance that this Court already rejected as deficient.  *See* Appendix A.  A
comparison between the allegations in the Consolidated Amended Complaint ("CAC") (D.E.
17), which was the operative complaint that this Court dismissed, and the allegations in the FAC
reveals no differences, other than a semantic change in the phrase used to describe the vehicles:

> Plaintiff selected and ultimately purchased his vehicle, in part,
> because of the BlueTEC Clean Diesel system, as represented
> through advertisements and representations made by Mercedes.
> None of the advertisements reviewed or representations received
> by Plaintiff contained any disclosure that the ~~Affected~~ Polluting
> Vehicle had high emissions compared to gasoline vehicles and the
> fact that Mercedes had designed part of the emissions reduction
> system to turn off during normal driving conditions.

CAC ¶ 21 (Mose) (referring to "Affected Vehicle"); FAC ¶ 29 (Mose) (referring to "Polluting
Vehicle").  For Mose and the other twenty-three plaintiffs who assert the exact same allegations
that this Court already dismissed, their claims should again be dismissed because the Court's
order "provided [them] with a detailed blueprint of how to remedy the defects in their claims,"
*Chubb*, 394 F.3d at 164-65, and they deliberately failed to do so.

Second, seventeen plaintiffs do not identify any advertising by the Mercedes Defendants
(much less the specific advertising that plaintiffs purport to challenge).[5]  Rather, the alleged
communications on which plaintiffs purportedly relied either are from individuals who were
working at non-party dealerships ***not*** owned, affiliated with, or operated by the Mercedes
Defendants, *see, e.g.*, FAC ¶ 27 (Caputo) (alleging reliance on statements by a "salesperson" at
dealership that the vehicle "'runs clean'" and "would last much longer than the gasoline
engine"), or from online sources that are ***not*** alleged to be affiliated with or in any way speak for

---

[5]    FAC ¶ 27 (Caputo); ¶¶ 34-35 (A.C. Roberts); ¶ 38 (Hall); ¶ 41 (Fox); ¶ 46 (Hamilton);
¶ 47 (Morgan); ¶ 48 (Melnyk); ¶ 52 (Downs); ¶ 54 (Zavareei); ¶ 64 (Yanus); ¶ 70 (Deutsch);
¶ 71 (Dingle); ¶ 75 (Jordan); ¶ 77 (Dilgisic); ¶ 79 (Lynevych); ¶ 82 (Gershberg); ¶ 85 (Johnson).

the Mercedes Defendants, *see, e.g.*, *id.* ¶ 38 (Hall) (alleging reliance on articles from third

parties); *id*. ¶¶ 34-35 (A.C. Roberts) (alleging reliance on "online research" without identifying a

source).  None of these allegations supports standing since injury "must be 'fairly traceable to the

*challenged action of the defendant*, and not the result of independent action of some third party

not before the court.'"  *Toll Bros.*, 555 F.3d at 137-38 (emphasis added); *In re Ford Motor Co.*

*E-350 Van Prods. Liab. Litig. (No. II)*, 2010 WL 2813788, at *43 (D.N.J. July 9, 2010)

("[A]utomobile dealerships are generally not agents of automobile manufacturers . . . ."), *order*

*amended*, 2011 WL 601279 (D.N.J. Feb. 16, 2011); *Friedman v. Mercedes Benz USA, LLC*,

2013 WL 8336127, at *6 (C.D. Cal. June 12, 2013) (dismissing fraud-based claims where there

were no facts alleged to show that dealership "in any respect serv[ed] as MBUSA's agent").[6]

Third, seven plaintiffs should be dismissed because their amended allegations fail to

allege that the advertisements on which they purportedly relied "contained the alleged

misrepresentations."  D.E. 58 at 14.[7]  Allegations that these plaintiffs viewed "reviews and side-

by-side comparisons of vehicles," FAC ¶ 66 (Laurino), do not support the assertion that plaintiffs

saw the particular advertisements that they allege are fraudulent.  And without this link, plaintiffs

continue to "hinge the causation element of standing on a general advertising scheme" that this

Court has already ruled insufficient.  D.E. 58 at 14; *see also id.* at 13-14 ("[N]o Plaintiff has

alleged that he or she relied upon any of the *cited advertisements*." (emphasis added)).

---

[6]    Plaintiff Fraga-Errecart alleges that Mercedes-Benz or Daimler AG representatives in Germany advised him about BlueTEC technology directly, but he nevertheless lacks standing because he fails to allege that he received and relied upon the alleged representations prior to purchasing his vehicles.  FAC ¶ 53.

[7]    FAC ¶ 39 (Albers); ¶ 40 (Lingua); ¶ 49 (Steelberg); ¶ 66 (Laurino); ¶ 78 (Knight); ¶ 80 (Feller); ¶ 84 (Edwards).

Finally, six plaintiffs fail to allege whether they viewed or relied upon the challenged advertising prior to purchasing or leasing their vehicle.[8]  These allegations fail as well, because these plaintiffs could not rely on statements they did not see until after acquiring their vehicles.

For these reasons, fifty-four of the sixty named plaintiffs should be dismissed for lack of Article III standing, along with their claims and corresponding state subclasses.  *See Hildebrand v. Dentsply Int'l, Inc.*, 264 F.R.D. 192, 201 (E.D. Pa. 2010) (dismissing subclass lacking any plaintiff who could survive dismissal); *Vinson v. Seven Seventeen HB Phila. Corp.*, 2001 WL 1774073, at *10 (E.D. Pa. Oct. 31, 2001) (same); *see also Morris v. BMW of N. Am., LLC*, 2014 WL 793550, at *12 (D.N.J. Feb. 26, 2014) (Linares, J.) (holding plaintiff could not "represent a sub-class of whom she is not a part").[9]

### B.    At Most, Plaintiffs Allege A Benefit-Of-The-Bargain Injury, And Their Assertions About Future Or Public Harms Should Again Be Dismissed

Out of the 1,752 paragraphs of allegations in the FAC—many of which simply repeat, over and over, the same generalized assertions with respect to each plaintiff or subclass—only five describe any purported injuries, and those paragraphs are largely identical to plaintiffs' previous damage allegations in the CAC.  *Compare* FAC ¶¶ 328-32, *with* CAC ¶¶ 142-45.  The only addition is a paragraph describing two studies purporting to calculate the number of deaths worldwide or in Europe due to excess NOx emissions, FAC ¶ 330, but this allegation simply mimics plaintiffs' earlier allegations of a generalized risk of physical harm resulting from excess

---

[8]    FAC ¶ 32 (C. Roberts); ¶ 36 (Smith); ¶ 45 (Ngwashi); ¶ 53 (Fraga-Errecart); ¶ 65 (Weiss); ¶ 83 (Rolle).

[9]    The following state subclasses should be dismissed as lacking any plaintiff with standing: New Jersey, Alabama, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Kentucky, Maryland, Michigan, Mississippi, Missouri, Nevada, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas, Utah, Virginia, Washington, and West Virginia.  *See* Appendix A.

NOx emissions globally.  *See, e.g.*, CAC ¶ 3.  By repeating the prior claims of injury without substantive modification, plaintiffs have repeated their deficiencies in failing to allege a cognizable Article III injury-in-fact.

Plaintiffs set forth four theories of injury, three of which are foreclosed as a matter of law.  First, plaintiffs' allegations about purported public environmental and health harms are "'generalized grievances that are shared by the public at large,'" and "not the type of particular, concrete, and litigant-specific injury" that can support standing.  *See Hartz Mountain Indus., Inc. v. Polo*, 2005 WL 2807355, at *3, *5 (D.N.J. Oct. 26, 2005).  Second, plaintiffs' allegations about violations of environmental regulations are not sufficient to confer standing because the Supreme Court has held that "even in the context of a statutory violation," Article III "requires a concrete injury."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).  Third, plaintiffs' allegations of future harm—*e.g.*, their vehicles might someday have decreased performance, be "worth less in the marketplace," or require "additional sums [for] fuel," FAC ¶ 332—are impermissibly speculative.  *See Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011).  And as the Court recognized, plaintiffs previously and for good reason abandoned these three purported injuries as bases for standing.  D.E. 58 at 6 n.4 ("Plaintiff[s] appear to have abandoned each of their damages theories, with the exception of that premised upon overpayment.").  Yet plaintiffs included these theories in the FAC.  The Mercedes Defendants recognize that this Court's previous ruling accepted the fourth and final theory offered by plaintiffs—an alleged benefit-of-the-bargain injury.  D.E. 58 at 8-9.  The Mercedes Defendants respectfully submit, however, that plaintiffs still have not adequately pled facts showing that the vehicles they purchased or leased "failed to work for [their] intended purpose or [are] worth objectively less than what one could reasonably expect."  *Koronthaly v. L'Oreal USA, Inc.*, 374 F. App'x 257, 259 (3d Cir. 2010).  At

11

a minimum, plaintiffs' three, previously abandoned theories of harm—based on general public risks, alleged regulatory violations, or speculative future loss—should again be dismissed, and any surviving claims should be limited to plaintiffs' alleged benefit-of-the-bargain injury.

## II.   PLAINTIFFS' RICO CLAIM FAILS AS A MATTER OF LAW

Plaintiffs seek to stretch the limits of civil RICO to apply to their false advertising claims, which are themselves stretched to disguise plaintiffs' reliance on alleged regulatory noncompliance.  While "RICO's major purpose was to attack the 'infiltration of organized crime and racketeering into legitimate organizations,'" *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993), "plaintiffs have often been overzealous in pursuing RICO claims, flooding federal courts by dressing up run-of-the-mill fraud claims as RICO violations."  *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 236 (E.D.N.Y. 2010).  That is the case here.  As plaintiffs' allegations make clear, this is not a RICO case, and their claims should be dismissed consistent with the Court's "obligation to scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud."  *Holmes v. Parade Place, LLC*, 2013 WL 5405541, at *14 (S.D.N.Y. Sept. 26, 2013) (quotation marks omitted); *see also Kolar v. Preferred Real Estate Invs., Inc.*, 361 F. App'x 354, 363 (3d Cir. 2010) (affirming dismissal of RICO claims in commercial dispute).

Plaintiffs' RICO claim should be dismissed because, as further discussed below, the substantive RICO allegations are legally deficient.  In addition, because plaintiffs' substantive RICO claim is deficient, their RICO conspiracy claim should also be dismissed.  *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 21 (3d Cir. 2000) ("[I]f the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails."); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 373 (3d Cir. 2010).

12

### A.  Plaintiffs Have Failed To Allege RICO Injury

Plaintiffs' vague allegations fail to support an injury for which RICO affords a cause of action—what courts have generally termed a statutory "standing" problem.  *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 804 F.3d 633, 638 (3d Cir. 2015).  "[C]onceptions of injury [in the RICO context] have been more cabined than in the consumer protection realm," in recognition that "RICO compensates only for injury to 'business or property.'"  *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *16-17 (S.D.N.Y. July 15, 2016) (quoting *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 228 (2d Cir. 2008)); *Avandia*, 804 F.3d at 638 (recognizing this limitation "has a restrictive significance, which helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff" (quotation marks omitted)).

Plaintiffs here unsuccessfully allege two forms of RICO injury: (1) diminished value and (2) overpayment.  FAC ¶ 400.  Plaintiffs' diminished value theory is insufficient to establish RICO standing because plaintiffs have not alleged any facts supporting the claim that their vehicles have lower "sale and resale value."  *Id.*  The Third Circuit has made clear that RICO does not recognize injuries that hinge on the "*possibility* that future events might occur," or on "a significant degree of factual speculation."  *Maio v. Aetna, Inc.*, 221 F.3d 472, 495 (3d Cir. 2000). And courts have concluded in analogous circumstances that speculative allegations of future diminished value cannot support RICO standing, because those allegations rely on potential "financial loss [that] is grounded in the possibility of future events."  *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1091 (S.D. Ind. 2001); *see also Impress Commc'ns v. Unumprovident Corp.*, 335 F. Supp. 2d 1053, 1063-65 (C.D. Cal. 2003) (finding no RICO injury in the "diminished economic value" of plaintiffs'

health insurance policy where they "never sought benefits, and thus cannot allege that benefits to which they were entitled were not conferred").

Plaintiffs' overpayment allegations also fail. Federal courts hold that "'loss of value' or 'benefit of the bargain' damages 'are generally unavailable in RICO suits' and 'plainly' unavailable where . . . a RICO claim 'sound[s] in fraud in the inducement.'" *Gen. Motors Ignition Switch*, 2016 WL 3920353, at *16 (quoting *McLaughlin*, 522 F.3d at 228-29). This is because benefit-of-the-bargain claims—that is, claims that the product is not what consumers *expected* to receive—do not require plaintiffs to prove that the products are actually defective. *McLaughlin*, 522 F.3d at 228 (claims that plaintiffs paid more for "light" cigarettes that they believed to be healthier than regular cigarettes were insufficient to support RICO claim); *Gen. Motors Ignition Switch*, 2016 WL 3920353, at *17 (dismissing as insufficient to establish RICO standing plaintiffs' claim that the expected resale value of their vehicles dropped when news of GM defects tarnished the GM brand). Thus, these "expectation-based, benefit-of-the-bargain damages [are] incompatible with RICO," *Gen. Motors Ignition Switch*, 2016 WL 3920353, at *16, because a failure to meet consumers' expectations does not amount to an injury to "business or property," as required to support a RICO claim. *McLaughlin*, 522 F.3d at 228.[10]

---

[10]   Plaintiffs' claims are distinguishable from claims made in other RICO cases where an overpayment injury was found sufficient to confer standing. For example, in *Avandia*, plaintiffs alleged the exact amount of overpayment they incurred when they purchased the pharmaceutical drug, Avandia, instead of its generic competitor. 804 F.3d at 636; *see also id.* at 638 (holding a showing of injury under RICO "requires proof of a concrete financial loss" (quotation marks omitted)). Plaintiffs here have not alleged any similar "proof of actual monetary loss, i.e., an out-of-pocket loss," since they allege only that they would have paid less absent the "clean diesel" advertisements, but do not allege why or by how much. *Id.* at 638 (quotation marks omitted). In addition, the plaintiffs in *Avandia* brought their RICO claim *after* the FDA restricted access to Avandia based on increased health risks that had been misrepresented by the manufacturer. *Id.* at 636. Here, although plaintiffs assert that the vehicles they received "did not meet [emission and fuel efficiency] standards," FAC ¶ 400, they have not alleged that any such regulatory finding has occurred.

Courts have also recognized that RICO claims based on expectation damages or a benefit-of-the-bargain theory cannot proceed even where other traditional fraud-based claims—like fraudulent concealment—may, based on similar allegations of injury.  In other words, even if plaintiffs were to have Article III standing to proceed on a benefit-of-the-bargain theory for certain claims (they do not), the same theory does not suffice to establish a RICO injury in this case, given the statutory requirement that plaintiffs allege an injury to "business or property." 18 U.S.C. § 1964(c).  For example, in *General Motors Ignition Switch*, the court held that plaintiffs had failed to allege a RICO injury where they sought damages based on a benefit-of-the-bargain theory, but allowed plaintiffs to proceed on other claims, including alleged breach of warranty and state statutory claims.  2016 WL 3920353, at *18.  In so holding, the court rightly recognized that "not every fraud can form the basis of a RICO claim," and that by alleging only that they received a vehicle that did not meet their expectations at the time of purchase, plaintiffs had "fail[ed] to allege injury to 'business or property' within the meaning of RICO."  *Id.*

### B.    Plaintiffs Have Failed To Allege RICO Causation

Plaintiffs' RICO claim should also be dismissed because it fails to adequately allege that plaintiffs were injured by any of the alleged enterprise's conduct that they claim constitutes a predicate act or crime.  Plaintiffs' entire theory of RICO conduct relies on the claim that the Mercedes Defendants and Bosch misrepresented Mercedes-Benz diesel vehicles to *government regulators*.  FAC ¶¶ 373-74.  For example, plaintiffs allege that the "RICO Defendants knew and intended that government regulators . . . would rely on the material misrepresentations and omissions made by them about the Polluting Vehicles."  *Id.* ¶ 395.  Plaintiffs also allege that without this threshold deception, "Mercedes could not have obtained valid COCs [from the EPA] and EOs [from CARB] to sell the Polluting Vehicles."  *Id.*  And nearly all of the alleged predicate acts concern fraud on the regulators exclusively.  *See id.* ¶ 384 (listing dozens of

15

alleged examples of "applications for certification filed with the EPA"). Since plaintiffs cannot maintain a cause of action for the alleged regulatory violations under the CAA, however, plaintiffs have attempted to depict the enterprise as one that also engaged in false advertising on consumers. But whether the EFE is construed as perpetuating an alleged fraud on consumers or regulators, plaintiffs have failed to adequately allege facts showing that consumers were injured as a result of any alleged RICO violation.

To the extent plaintiffs purport to allege that the RICO enterprise directly deceived consumers, the Court should dismiss the claim because plaintiffs' RICO allegations are based on the same generalized advertising scheme that the Court previously found insufficient to satisfy the "fairly traceable" requirement of Article III standing. D.E. 58 at 14 (holding "Plaintiffs in this action . . . hinge the causation element of standing on a general advertising scheme"). This deficiency defeats plaintiffs' RICO claim, just as it did plaintiffs' false advertising claims before the addition of the RICO count, because RICO also requires that plaintiffs sufficiently plead that their injuries are fairly traceable to the alleged RICO violation. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460-61 (2006). Here, plaintiffs have failed to identify any specific advertisements communicated to them by the "RICO Defendants" that they allegedly relied upon or that otherwise directly injured them. Thus, plaintiffs have failed to sufficiently allege that their "injuries were fairly traceable to any of Defendants' representations" in connection with the general advertising scheme that purportedly underlies their RICO allegations. D.E. 58 at 14.[11]

---

[11] Moreover, plaintiffs' challenges to the advertising of Mercedes-Benz vehicles is based on nonactionable puffery, *see infra* at 31-34, and puffery cannot form the basis for a RICO claim. *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 2009 WL 2043604, at *13 (D.N.J. July 10, 2009).

To the extent that plaintiffs allege that the RICO enterprise defrauded regulators, plaintiffs' RICO claim should also be dismissed because their benefit-of-the-bargain theory fails to meet RICO's "proximate cause requirement." *Longmont United Hosp. v. Saint Barnabas Corp.*, 2007 WL 1850881, at *4 (D.N.J. June 26, 2007). Proximate causation in the RICO context "requires 'some direct relation between the injury asserted and the injurious conduct alleged.' A link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient." *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 9 (2010) (alteration and citation omitted). Courts must therefore examine the specific acts alleged to constitute the predicate crime—here, mail and wire fraud—in order to assess "whether the alleged violation led directly to the plaintiff's injuries," *Anza*, 547 U.S. at 460-61, and they routinely find that where "the conduct directly causing the harm was distinct from the actions that gave rise to the fraud," proximate cause "is lacking." *Avandia*, 804 F.3d at 643. Attempts to shoe-horn allegations of a generalized course of conduct distinct from the actions constituting the claimed predicate acts do not suffice. *See Anza*, 547 U.S. at 460-61 (plaintiffs' RICO claim failed proximate cause element where conduct causing alleged harm was distinct from alleged fraud).

Here, plaintiffs have failed to allege—as they must—facts showing that the conduct that allegedly injured them is the same as the alleged conduct constituting the claimed RICO predicate acts themselves: "[T]he compensable injury flowing from a RICO violation necessarily is the harm caused by the predicate acts." *Hemi Grp.*, 559 U.S. at 13 (alterations and quotation marks omitted). Indeed, plaintiffs' claimed *injuries* have no connection to the purported fraud on the regulators, much less the required "direct" causal nexus. As this Court previously recognized, plaintiffs' benefit-of-the-bargain theory—which is the only claim of injury on which plaintiffs are proceeding, D.E. 58 at 6 n.4—alleges that plaintiffs overpaid for

17

their BlueTEC vehicles based on allegedly false marketing, *id.* at 6-7.  Indeed, the Court

identified the "precise representations" that plaintiffs challenge, all of which are samples of

BlueTEC advertising.  *Id.* at 8.  But plaintiffs have only nominally alleged that the purpose of the

EFE was to promulgate advertising.  To the contrary, the primary alleged purpose of the EFE

was to deceive *regulators* to obtain certifications for the diesel vehicles.  *See, e.g.*, FAC ¶ 395

("EPA, CARB, and other regulators relied on the misrepresentations and material omissions

made or caused to be made by the RICO Defendants.").

Significantly, however, not a single plaintiff alleges that any overpayment injury was

*caused* by the EFE's alleged fraud on the regulators.  Plaintiffs have not alleged that they relied

on the regulatory certifications in connection with their purchase decisions or that they relied on

the COCs or EOs when determining *how much* to pay for their vehicle.  Nor have they alleged

that any regulatory action or inaction caused or resulted in any alleged price premium.  Plaintiffs

have not alleged that the moniker "Clean Diesel" or any other phrase allegedly used in marketing

the vehicles was submitted to or approved by the regulators, or that the alleged marketing

reflected any determination by the regulators that the vehicles were more or less clean relative to

other certified vehicles, or that they were otherwise "environmentally friendly."  In other words,

plaintiffs have failed to allege facts showing that as a result of the EFE's alleged deception of

regulators, consumers paid *more* for the vehicles than they otherwise would have paid.  As a

result, plaintiffs have failed to allege a RICO violation that "led directly to the plaintiff[s']

injuries."  *Anza*, 547 U.S. at 460-61.

### C.    Plaintiffs Have Failed To Allege A RICO Enterprise Involving The Mercedes Defendants

In addition to their failure to plead RICO injury and causation, plaintiffs' RICO claim

also should be dismissed because they fail to plead the existence of a RICO enterprise at all.

18

There are two types of RICO enterprises: legal entities (*e.g.*, corporations, partnerships, unions, etc.), and associations in fact, which are defined as "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); *United States v. Turkette*, 452 U.S. 576, 581-82 (1981). Pleading a RICO association-in-fact enterprise—which plaintiffs purport to do here—requires "at least three structural features: [1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Ins. Brokerage*, 618 F.3d at 366 (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)). Plaintiffs here fail to allege facts showing the first two elements: "relationships among those associated with the enterprise" or a common "purpose."

Plaintiffs' failure to allege "relationships among those associated with the enterprise" is fatal to plaintiffs' RICO claim. Although the complaint nominally alleges a bilateral, association-in-fact enterprise—the so-called EFE—between the Mercedes Defendants and Bosch, *see* FAC ¶ 357, virtually all of their allegations address Bosch's relationships with *other* vehicle manufacturers, namely Volkswagen and FCA, which plaintiffs now claim "add[] plausibility to [Bosch's] participation in the enterprise described herein." *Id.* ¶ 361; *see also id.* ¶¶ 287-312. But the bulk of the RICO allegations concerning Bosch, Volkswagen, and FCA are simply imported from plaintiffs' preexisting litigation against Volkswagen, *In re Volkswagen 'Clean Diesel' Marketing, Sales Practices and Product Liability Litigation*, MDL No. 2671 (N.D. Cal.). *See* FAC ¶¶ 265-312. By relying on alleged misconduct by Volkswagen and FCA—and the public censures for wrongdoing by those manufacturers, including Notices of Violation issued by EPA to Volkswagen and FCA—plaintiffs seek to penalize the Mercedes Defendants for other manufacturers' conduct. *Id.* ¶¶ 270-77, 361. But plaintiffs cannot allege a RICO violation against the Mercedes Defendants by alleging that Volkswagen or FCA engaged

19

in separate misconduct.  *See Worldwide Directories S.A. De C.V. v. Yahoo! Inc.*, 2016 WL

1298987, at *5 (S.D.N.Y. Mar. 31, 2016) ("[G]eneralizations do not help Plaintiffs plead a claim

against [defendant] because each element of a RICO violation must be plausibly alleged 'as to

each individual defendant.'").

 Moreover, courts routinely reject this sort of "if it happened there, it could have happened

here" reasoning, because it provides no actual factual allegations against the Mercedes

Defendants, and is legally insufficient to elevate a RICO allegation "from conceivable to

plausible."  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) (quotation marks

omitted).  Indeed, plaintiffs have conceded—as they must—that the RICO allegations relating to

Bosch's relationship with Volkswagen (or other manufacturers) "have no relationship with the

bulk of the allegations directed against the Mercedes Defendants."  D.E. 71 at 1.

 Once stripped of these irrelevancies, the complaint contains nothing but "vague and

conclusory allegations of collaboration and conspiracy" between Bosch and the Mercedes

Defendants.  *Mega Concrete, Inc. v. Smith*, 2011 WL 1103831, at *10 (E.D. Pa. Mar. 24, 2011).

The FAC avers, for example—without any factual support—that because Bosch worked with

Volkswagen to develop a defeat device, "there is no logical reason to believe Bosch and Bosch

GmbH did not act in a similar fashion with respect to" the Mercedes Defendants.  FAC ¶ 287;

*see also id.* ¶ 364 ("The exact same logic applies to the Mercedes Polluting Vehicles.").  This

"logic" directly contradicts allegations elsewhere that the Volkswagen defeat device was among

its most-closely guarded trade secrets.  *E.g.*, *id.* ¶ 297.  Similarly, the FAC assumes, without

supporting factual allegations, that "Bosch's and Bosch GmbH's business model" somehow

required "each of Bosch's entity's cooperation in programming . . . software to enable" the

alleged fraud, *id.* ¶ 21, and that "Bosch worked with each vehicle manufacturer . . . to create a

unique set of specifications and software code to manage the vehicles' engine operation," *id.*
¶ 268. But it is unremarkable that a supplier would implement programming for a component to
operate with an automaker's engine. These are merely guilt-by-association insinuations that
"assert" but "do not show" that parties agreed to engage in an enterprise, and are therefore
inadequate to state a RICO claim. *Ins. Brokerage*, 618 F.3d at 326 (alterations and quotation
marks omitted).

Equally fatal is plaintiffs' failure to allege the second element of the RICO enterprise—
the enterprise's supposed purpose. To adequately allege the purpose of a RICO enterprise,
plaintiffs must allege facts showing that members of the purported enterprise went "outside the
bounds of the parties' normal commercial relationships" to engage in a coordinated fraud.
*United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v.
Walgreen Co.*, 719 F.3d 849, 856 (7th Cir. 2013); *In re Aetna UCR Litig.*, 2015 WL 3970168, at
*31 (D.N.J. June 30, 2015). "[C]ourts have overwhelmingly rejected attempts to characterize
routine commercial relationships as RICO enterprises." *Shaw v. Nissan N. Am., Inc.*, 220 F.
Supp. 3d 1046, 1054 (C.D. Cal. 2016) (quotation marks omitted).

Here, plaintiffs have not shown that enterprise members shared "a common purpose of
engaging in a course of conduct," *Boyle*, 556 U.S. at 944 (quotation marks omitted), because
they allege only that Bosch supplied software to the Mercedes Defendants in the ordinary course
of a routine supplier-to-manufacturer relationship. *See* FAC ¶ 363 ("The EDC 17 ECU was
manufactured by Bosch GmbH and sold to Mercedes."). Numerous courts have precluded
similar attempts to graft RICO claims onto standard commercial relationships. *See, e.g.*, *In re
Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 826
F. Supp. 2d 1180, 1202-03 (C.D. Cal. 2011) ("Plaintiffs do nothing more than allege that

21

Defendants associated in fact to carry on their own primary business purposes.").[12]   In *Shaw*, for

example, the district court dismissed a RICO claim against Nissan, holding that it was not

enough for the plaintiff to repeat generic allegations that Nissan's "primary business activity—

the design, manufacture, and sale or lease of . . . vehicles—was conducted fraudulently."  220 F.

Supp. 3d at 1056 (quotation marks omitted).   Nor was it sufficient for the *Shaw* plaintiffs to

allege that the purported enterprise consisting of Nissan and its supplier "shared a common

purpose of fraudulently selling defective vehicles."  *Id*. at 1055.

So, too, here:  it is insufficient for plaintiffs to allege that the Mercedes Defendants and

Bosch "shared a common purpose of fraudulently selling defective vehicles."  *Shaw*, 220 F.

Supp. 3d at 1055; *cf.* FAC ¶ 368 ("The [EFE] functioned by selling vehicles and component

parts to the consuming public.").   These conclusory assertions "cannot support the inference"

that the alleged enterprise members "associated together for a common purpose of engaging in a

course of conduct," *Ins. Brokerage*, 618 F.3d at 374, and cannot satisfy the purpose prong of

alleging a RICO enterprise.

### D.     Plaintiffs Have Failed To Allege That The Mercedes Defendants Directed The Conduct Of The RICO Enterprise

In addition to failing to properly plead a RICO enterprise, the FAC fails to allege facts

showing that the Mercedes Defendants directed the conduct of the alleged enterprise.  *See* 18

U.S.C. § 1962(c).  The Supreme Court has held that to state a RICO claim, a plaintiff must plead

---

[12]   *See also Gen. Motors Ignition Switch*, 2016 WL 3920353, at *16 ("[B]ecause [Defendants] acted in concert with New GM to carry out its business, and had no common purpose beyond helping New GM carry on its ordinary affairs, Plaintiffs do not meet the pleading requirements for a RICO enterprise."); *Nestlé Purina Petcare Co. v. Blue Buffalo Co.*, 181 F. Supp. 3d 618, 633 (E.D. Mo. 2016) ("[A]ny cooperation that was required for the RICO Defendants to execute the scheme as alleged would have been the type of cooperation that is already required by their ordinary business relationship.").

facts showing that the defendant "conducted or participated in the conduct of the '*enterprise's* affairs,' not just [its] *own* affairs." *Reves*, 507 U.S. at 185.  Thus, the Court's inquiry turns on whether the defendant "knowingly engage[d] in '*directing* the enterprise's affairs' through a pattern of racketeering activity." *Univ. of Md. at Balt. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) (citation omitted); *Ins. Brokerage*, 618 F.3d at 372.

The FAC alleges boilerplate legal language for this element—that the Mercedes Defendants "participated in the operation and management of the [EFE] by directing its affairs"—but they include no facts to support that threadbare assertion.  FAC ¶ 372.  Instead, the FAC avers nothing more than a conventional supplier-manufacturer relationship between Bosch and the Mercedes Defendants, alleging, for example, that "the Bosch Defendants . . . sold hundreds of thousands of EDC Unit 17s to Mercedes" and that "each Bosch entity continuously cooperated with Mercedes to ensure that the EDC Unit 17 was fully integrated" into Mercedes-Benz vehicles.  *Id.* ¶¶ 365, 374.

None of this amounts to RICO conduct.  "An arms-length business relationship between distinct entities is not sufficient to show operation or management of an enterprise." *Crichton v. Golden Rule Ins. Co.*, 2006 WL 2349961, at *7 (S.D. Ill. Aug. 11, 2006) (citing cases); *see also Aetna UCR Litig.*, 2015 WL 3970168, at *29-30.  Plaintiffs have not alleged that the Mercedes Defendants' cooperation "fell outside the bounds of the parties' normal commercial relationships." *Walgreen*, 719 F.3d at 856.  They list business activities they claim show how the Mercedes Defendants controlled the EFE—including by "[m]anufacturing, distributing, and selling the Polluting Vehicles" or "collecting revenues and profits from the sale of such products," FAC ¶ 373—but these generic, undetailed allegations refer only to how the Mercedes Defendants conducted *their own business*, not the affairs of a RICO enterprise.  *Cedric Kushner*

23

*Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) (RICO liability "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's affairs*,' not just their own affairs" (emphasis in original) (citation omitted)); *see also Reves*, 507 U.S. at 185; *Early v. K-Tel Int'l, Inc.*, 1999 WL 181994, at *7 (N.D. Ill. Mar. 24, 1999) ("The allegation of 'business relationships' certainly does not permit an inference that the defendant retail stores participated in the operation or management of K-Tel and Dominion.").[13]  Plaintiffs have therefore failed to plead RICO conduct, and the claim should be dismissed for that reason as well.

**E.      Plaintiffs Have Failed To Allege A Pattern Of Racketeering Activity With Sufficient Particularity Under Rule 9(b)**

Finally, plaintiffs' RICO claim should be dismissed because they have also failed to plead sufficient facts to allege that the Mercedes Defendants engaged in a pattern of racketeering activities, which requires plaintiffs to plead at least two predicate acts of racketeering.  *See* 18 U.S.C. § 1961(5); *Ins. Brokerage*, 618 F.3d at 363.

Plaintiffs allege mail and wire fraud as the purported enterprise's predicate acts.  Because both sound in fraud, plaintiffs must plead these predicate acts with particularity under Rule 9(b).  *Klein v. Gen. Nutrition Cos.*, 186 F.3d 338, 344 (3d Cir. 1999).  In particular, plaintiffs must "identify each separate predicate act, of which [they have] knowledge, indicating the date, the particular person or entity who sent the [transmission] in question, the recipient, and, most

---

[13]      *See also El-Issa v. Compaq Comput. Corp.*, 1997 WL 790730, at *5 (N.D. Ill. Dec. 19, 1997) (allegations of "a typical business relationship between a manufacturer and its retailers" are insufficient to establish the conduct element of a RICO claim); *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 880 F. Supp. 1202, 1209 (N.D. Ill. 1995) (allegations of "a simple supplier-purchaser relationship" were insufficient to allege that the defendant participated in the operation or management of a RICO enterprise); *Comwest, Inc. v. Am. Operator Servs., Inc.*, 765 F. Supp. 1467, 1475 (C.D. Cal. 1991) (finding a lack of conduct for RICO purposes where "the parties' agreements do not suggest that the parties contemplated any relationship beyond an arms-length business transaction between two independent corporate entities").

importantly, the way in which the particular transmission furthered the pattern of racketeering activity and the overall fraudulent scheme." *Sarpolis v. Tereshko*, 26 F. Supp. 3d 407, 428-29 (E.D. Pa. 2014) (quotation marks omitted); *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004).  Further, plaintiffs "must explain how specific, identified mailings, interstate wire communications, or . . . statements 'were false or misleading, or how they contributed to the alleged fraudulent scheme.'" *Forrest v. Owen J. Roberts Sch. Dist.*, 2011 WL 1549492, at *13 (E.D. Pa. Apr. 1, 2011) (quoting *Warden v. McLelland*, 288 F.3d 105, 114 (3d Cir. 2002)). Plaintiffs have failed to meet that exacting standard here.

Plaintiffs allege only nondescript acts by unidentified parties at unspecified times, including such vague and ambiguous allegations as that the "RICO Defendants *or third parties*" transmitted, delivered, or shipped "[f]alsified emission tests," "[d]eposits of proceeds," or "[o]ther documents and things."  FAC ¶ 383 (emphasis added).  These broad allegations— untethered to any specific references to dates, times, or actors—assert only in the most conclusory fashion that the Mercedes Defendants "or other third parties" supposedly defrauded regulators and consumers. *Tierney & Partners, Inc. v. Rockman*, 274 F. Supp. 2d 693, 698 (E.D. Pa. 2003) (rejecting "bare lists [that] fail to provide details regarding the transmission of the invoices, via mail or wire" because "[s]uch details are necessary to properly allege predicate acts under RICO"); *Lum*, 361 F.3d at 224 (rejecting allegations of predicate acts that did not "indicate which defendant(s) made misrepresentations to which plaintiff(s)").  Plaintiffs' vague references to advertising and puffery in other parts of the complaint do not satisfy Rule 9(b), and in any event are not actionable as mail or wire fraud.  *See United States v. Pearlstein*, 576 F.2d 531, 540 n.3 (3d Cir. 1978) (statements such as products were "among the finest . . . in the world" are "not cognizable under the federal mail fraud statute").

25

Plaintiffs attempt to cure the obvious deficiencies in their predicate-act pleadings by embedding hyperlinks in the complaint to a series of the Mercedes Defendants' Applications for Certification to the EPA, which they claim used the wires and mails to make false statements. FAC ¶¶ 384-85.  But simply referring the Court to the applications themselves and stating generally that they contain false statements with regard to emissions, without any further delineation or specificity, is insufficient under Rule 9(b).  First, plaintiffs do not explain how (or on what basis) the applications were allegedly false, nor do they specify *which* statements within the scores of applications are allegedly false.  *Lum*, 361 F.3d at 224 (dismissing "conclusory allegations" that "do not satisfy Rule 9(b)" because they do not specify details regarding the alleged misrepresentation).

Second, plaintiffs have not pled any facts demonstrating how the applications further the purposes of the alleged EFE, as they are required to do to state a RICO claim.  *Sarpolis*, 26 F. Supp. 3d at 429 ("All of these allegations are conclusory in that they generally claim that the wires and mails were used, without identifying with the requisite degree of specificity how these alleged actions were part of a pattern of racketeering activity."); *Absolute Power Sys., Inc. v. Cummins, Inc.*, 2016 WL 6897782, at *5 (D.N.J. Nov. 23, 2016).  At most, plaintiffs' reliance on the applications as predicate acts only underscores that the purported RICO enterprise is principally alleged to have deceived *regulators* that the diesel vehicles satisfied regulatory emission standards.

## III.   PLAINTIFFS' STATE-LAW CLAIMS ARE PREEMPTED BY THE CLEAN AIR ACT

As with plaintiffs' RICO claims, all of plaintiffs' state-law claims are predicated on alleged regulatory violations, and must therefore be dismissed as expressly preempted by Section 209(a) of the CAA because they "relat[e] to the control of emissions."  42 U.S.C. § 7543(a); *see also Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 523 (1992) (preemption of state enforcement

actions "relating to" a federally regulated subject includes state common-law suits); *Jackson v. Gen. Motors Corp.*, 770 F. Supp. 2d 570, 576 (S.D.N.Y. 2011) (CAA preempts state tort claims alleging diesel engines were designed to allow excessive emissions), *aff'd sub nom. Butnick v. Gen. Motors Corp.*, 472 F. App'x 80 (2d Cir. 2012).

Section 209(a) of the CAA unequivocally bars states from "adopt[ing] or attempt[ing] to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines." 42 U.S.C. § 7543(a).[14] The CAA's broad preemption provision encompasses both state statutory causes of action and common-law torts when those claims are premised on a failure to meet EPA standards, because "state regulation can be as effectively exerted through an award of damages as through some form of preventive relief." *Cipollone*, 505 U.S. at 521, 523 (alteration and quotation marks omitted); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-84 (1992) (consumer protection claims based on alleged regulatory violations were preempted as "enforcement" of those regulations).

Thus, courts have held that both statutory and common-law claims are preempted where, as here, they are premised on a failure to meet the federal standards promulgated by EPA. *See In re Office of Att'y Gen. of N.Y.*, 709 N.Y.S.2d 1, 9-10 (App. Div. 2000) (dismissing as preempted fraud and breach of warranty claims based on alleged "defeat devices"). For instance, in *Jackson*, plaintiffs sued under a theory that they had been harmed by diesel exhaust fumes from urban transit

---

[14]   A "standard" under the CAA is broadly defined as any criterion or test relating to whether the vehicles "emit more than a certain amount of a given pollutant," as any such criterion "relate[s] to the emission characteristics of a vehicle or engine." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252-54 (2004). Accordingly, Section 209(a) has a "broad scope" and "expansive sweep," as it preempts any standards "relating to"—that is, any standards having any "connection with, or reference to"—the control of emissions. *Morales*, 504 U.S. at 383-84 (quotation marks omitted); *Jackson*, 770 F. Supp. 2d at 577 ("[E]nforcement actions that have any 'connection with or reference to' the control of emissions from motor vehicles are preempted by § 209(a).").

buses. 770 F. Supp. 2d at 572. Plaintiffs brought a variety of state-law claims, including failure to warn, design defect, and negligence. *Id.* The court dismissed all of plaintiffs' claims as preempted by Section 209(a) because of their "'connection with or reference to' the control of emissions from motor vehicles." *Id.* at 577.

Here, plaintiffs' claims—including the false advertising claims—refer repeatedly to the vehicles' compliance with EPA regulations. The cornerstone of the FAC is plaintiffs' allegation that the "vehicles exceed federal and state emission standards and employ 'defeat devices' to turn down the emissions controls when the vehicle senses that it is not in the certification test cycle," FAC ¶ 4, and that had the Mercedes Defendants been truthful to *regulators*, their vehicles never would have been certified for sale, *id.* ¶ 183. Plaintiffs have reframed this objection to assert their alleged false advertising claims by alleging that their vehicles were misrepresented as "compliant with all relevant emissions standards," and as "clean" and "earth friendly" despite emitting excess emissions. *Id.* ¶ 16. But plaintiffs' claims that the cars were advertised as more environmentally friendly than they were requires measuring the vehicles' emissions against *some* standard because emissions cannot be "higher" (or "low" or "ultra low") in a vacuum. *See Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 253-54 (2004). Indeed, plaintiffs object that the vehicles were advertised as "clean diesel"—a phrase that appears in the FAC over 700 times—but plaintiffs themselves define "clean" as meeting federal emissions standards and "dirty" as failing to meet those standards. FAC ¶¶ 2, 117, 125, 136.

Even plaintiffs' false advertising claims thus fall within the CAA's preemptive scope because they are connected to and refer to the control of emissions, and require "a determination of whether [the Mercedes Defendants] complied with the Federal emission standard." *Office of Att'y Gen.*, 709 N.Y.S.2d at 9-10. Plaintiffs' claims attempt to enforce regulatory standards by "seeking

28

to use [the] State's . . . law to penalize" the Mercedes Defendants for alleged failure to comply with EPA regulations, and so are expressly preempted. *Id.* at 9; *see also Abuhouran v. KaiserKane, Inc.*, 2011 WL 6372208, at *4-5 (D.N.J. Dec. 19, 2011) (dismissing as preempted private damages actions based on violations of CAA's "emission standards").

Plaintiffs may seek to avoid preemption here by citing *Counts v. General Motors, LLC*, 237 F. Supp. 3d 572 (E.D. Mich. 2017). *Counts* improperly limits preemption by ruling that § 209(a) preempts only those claims that "directly depend on proof of noncompliance with federal emissions standards." *Id.* at 591. But this focus on whether claims "directly depend" on proof of noncompliance has no basis in the text of § 209(a). *See* 42 U.S.C. § 7543(a) ("No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part."). Under the unduly heightened standard applied by *Counts*, the fraud claims in *In re Office of Attorney General* would not have been preempted, and neither would the negligence claims based on failure to warn in *Jackson*. Indeed, this approach would defeat the purpose of preemption because a plaintiff could circumvent the CAA's broad preemptive scope by relabeling a compliance claim as a misrepresentation of compliance claim—a result Congress surely did not intend. *Cf. Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004) (relabeling claims cannot evade preemption).[15]

Moreover, *Counts* relies heavily on *In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig.*, 2015 WL 4591236 (D.N.J. July 29, 2015), *see* 237 F. Supp. 3d at 592, but *Caterpillar* actually supports a finding of preemption here. Unlike plaintiffs in this case, the *Caterpillar*

---

[15]   Likewise, two state decisions parroting the same unduly narrow interpretation of Section 209(a) fail to properly apply the broad scope of the express preemption provision. *See Felix v. Volkswagen Grp. of Am., Inc.*, 2017 WL 3013080, at *3-6 (N.J. Super. Ct. App. Div. July 17, 2017) (per curiam); *In re Volkswagen "Clean Diesel" Litig.*, 2016 WL 5347198, at *4-6 (Va. Cir. Ct. Aug. 30, 2016).

plaintiffs did "not allege that the [e]ngines failed to conform to [EPA's emission] standards," but rather that the engine "fail[ed] to perform as an engine at all" and that the engine's inability to maintain reliable thermal management of exhaust temperatures frequently and repeatedly rendered the vehicles inoperable.  2015 WL 4591236, at *3, *11.  *Caterpillar* acknowledges that Section 209(a) expressly preempts "design requirements related to emissions control, which [were] not at issue" in that case, and *Caterpillar* reiterates that "the CAA made clear that 'a state common law tort action that questions whether a defendant complied with standards promulgated under the CAA is an example of a state attempting to enforce the CAA, and is therefore subject to preemption.'"  *Id.* at *11-12 (quoting *Jackson*, 770 F. Supp. 2d at 575).  Here, in contrast, plaintiffs do not allege that the vehicles are inoperable, but rather that the vehicles "exceed federal and state emission standards and employ 'defeat devices' to turn down the emissions controls when the vehicle senses that it is not in the certification test cycle."  FAC ¶ 4.  Accordingly, plaintiffs' claims are expressly preempted.

Furthermore, even if plaintiffs' claims were not expressly preempted (they are), they would be impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001).  In *Buckman*, plaintiffs alleged that the defendant "made fraudulent representations to the [FDA] in the course of obtaining approval to market [orthopedic bone] screws," which allegedly caused physical injuries to plaintiffs.  *Id*. 343.  Plaintiffs argued that "[h]ad the [allegedly fraudulent] representations not been made, the FDA would not have approved the devices, and plaintiffs would not have been injured."  *Id*.  But the Supreme Court rejected plaintiffs' attempt to assert state tort claims based on defendants' alleged fraud on the agency and held that allowing plaintiffs to proceed on those claims would "inevitably conflict with the [agency's] responsibility to police fraud consistently with [its] judgment and objectives."  *Id*. at 350.  Accordingly, under the

Supreme Court's decision in *Buckman*, state tort claims stemming from a defendant's alleged fraud on a federal agency are preempted.  *Id.*; *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1204-07 (9th Cir. 2002) (holding state-law claims preempted under *Buckman* because "the alleged fraud-on-the-EPA and abuse of the labeling process . . . give rise to [plaintiff's] damaged business claims and to his proffered cause of action").  Plaintiffs' claims here—which all stem from the threshold allegation that "the COCs were fraudulently obtained" and the vehicles were therefore "never legal for sale; nor were they EPA and/or CARB compliant, as represented," FAC ¶ 275—thus fall squarely within the realm of *Buckman* preemption.

Because the allegations in the FAC—including plaintiffs' false advertising claims—are tied to federal emissions standards and the alleged fraud on the regulators, all of plaintiffs' state-law claims should be dismissed as preempted.

## IV. PLAINTIFFS' STATE-LAW MISREPRESENTATION CLAIMS FAIL BECAUSE THEY CHALLENGE ONLY NONACTIONABLE PUFFERY

A vast majority of plaintiffs' misrepresentation claims—including those arising under state common law and state consumer protection statutes—should also be dismissed because they are based on nonactionable puffery.  For a statement to avoid constituting puffery, it must "involve[e] more than a mere generality" and instead must be "both specific and measurable by comparative research."  *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 946 (3d Cir. 1993); *see also Syncsort Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 342 (D.N.J. 1999) ("At the pleading stage," plaintiff must "plead facts demonstrating the assertions of product superiority contained in . . . [a]dvertisements rely on measurable, comparative test results.").  A generic sales statement, such as a representation that a vehicle feature operates "safely," "is not actionable even if a consumer subjectively believes it means something more specific."  *Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017).  Courts routinely

31

dismiss false advertising claims arising under common-law fraud as well as state consumer protection statutes where those claims are based on puffery.  *See, e.g.*, *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1534-36 (E.D. Mo. 1997) (dismissing state common law and consumer fraud claims based on puffery).

Plaintiffs here challenge a host of nonspecific and generalized claims that cannot be measured by comparative research or any objective standard.  In particular, plaintiffs contend that they were misled by advertising that marketed BlueTEC diesel vehicles as being "clean," "very clean," "environmentally friendly," the "most advanced" or "elite," or as featuring "low emissions," "ultra-low emissions," "high fuel economy," "excellent gas mileage," "responsive performance," or "the holy grail of emissions systems."  FAC ¶¶ 27, 32-34, 36, 48, 73, 77.  But these claims—and many others in plaintiffs' 500-plus page FAC—are not subject to a specific measurable standard, and they therefore cannot serve as a basis for fraud-based claims.

Indeed, courts routinely dismiss fraud-based claims challenging advertising that is similarly nonspecific.  For example, claims challenging all of the following generalized advertising statements have been dismissed as nonactionable puffery:

- Claims of "years of outdoor living pleasure," "designed to provide years of low-maintenance use and enjoyment," "dependable and attractive for years," "less work more life" and "get the same consistent, high-quality board-to-board," *Peruto v. TimberTech Ltd.*, 126 F. Supp. 3d 447, 458 n.10 (D.N.J. 2015);

- Claims of "'substantial savings,' 'low, competitive rates,' 'exceptional value,' and 'great savings,'" *Urbino v. Ambit Energy Holdings, LLC*, 2015 WL 4510201, at *5 n.7 (D.N.J. July 24, 2015);

- Claims that "Clenbutrx is 'the world's fastest, hardest hitting fat incinerator' and that Clenbutrx contains an 'authentic synergistic blend of ingredients . . . [that] leave[s] scientists wondering how amazing this stuff is,'" *Hammer v. Vital Pharm., Inc.*, 2012 WL 1018842, at *7 n.5 (D.N.J. Mar. 26, 2012); and

- A claim that a washing machine "would save the consumer energy and water," without "indicat[ing] how much water or energy should be consumed by the Machine" or making a

"verifiable comparison to any identifiable competitive machine or model," *Tietsworth v. Sears, Roebuck & Co.*, 2009 WL 3320486, at *7 (N.D. Cal. Oct. 13, 2009). The same result is warranted here.

Significantly, the district court in *Counts* specifically found "clean diesel" advertisements to constitute nonactionable puffery. 237 F. Supp. 3d at 598. In *Counts*, as here, plaintiffs alleged that General Motors was liable for fraud for advertising its diesel vehicles as "Clean Diesel," with "more efficient combustion" and "improved performance." *Id.* The court held that "[s]tatements of cleanliness convey 'inherently subjective' concepts and thus 'constitute [] nonactionable opinion[s].'" *Id.* at 597 (quoting *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 598 (6th Cir. 2013)). The court also held that because the "clean diesel" advertisements are not specific and measurable, they cannot serve as the basis for liability, and plaintiffs could not proceed on their claims that defendants engaged in fraud on the basis of these alleged affirmative misrepresentations. *Id.*

Here, as in *Counts*, which emissions are "clean" or "very clean," or which are "low" or "ultra-low," are "inherently subjective" concepts, 237 F. Supp. 3d at 598 (unless they are measured against the federal emissions standards, in which case plaintiffs' claims are preempted, *see supra* at 26-31). Accordingly, plaintiffs cannot rely on these statements to support their fraud-based affirmative misrepresentation claims. The forty-seven plaintiffs whose only alleged misrepresentations are based on nonactionable puffery should therefore be dismissed. Furthermore, claims by the remaining thirteen plaintiffs should be limited to specific and measureable advertisements.[16] *See* Appendix A.

---

[16]   The only claims that arguably are not based solely on puffery are the discrete—but preempted, *see supra* at 26-31—claims comparing the vehicles' emissions against measurable standards and the discrete claims that the vehicles met EPA regulations, which are made by only thirteen plaintiffs. *See* FAC ¶ 33 (Andary); ¶ 41 (Fox); ¶ 45 (Ngwashi); ¶ 46 (Hamilton); ¶ 47

These plaintiffs' omission-based allegations do not change the analysis.  In *Counts*, the court held that although plaintiffs could not proceed on their affirmative misrepresentation claims challenging puffery, they could proceed on the theory that the defendant had failed to properly disclose the presence of an alleged defeat device because the defendant had a duty to disclose under various state laws based on its exclusive knowledge of the defect.  237 F. Supp. 3d at 600.  Here, however, plaintiffs' claims based on alleged omissions are barred because plaintiffs cannot demonstrate that the Mercedes Defendants had a duty to disclose absent any affirmative statements under New Jersey law, which does not recognize a duty to disclose based on exclusive knowledge.  *See infra* at 38-41.  New Jersey recognizes a duty to disclose based on a partial disclosure, *Stevenson v. Mazda Motor of Am., Inc.*, 2015 WL 3487756, at *10-11 (D.N.J. June 2, 2015), but here a partial disclosure theory is not actionable where the only affirmative statements are puffery, *see Bonnieview Homeowners Ass'n v. Woodmont Builders, L.L.C.*, 655 F. Supp. 2d 473, 508 (D.N.J. 2009) (holding that puffery is "not actionable" under New Jersey law).  Accordingly, for those plaintiffs whose allegations involve only nonactionable puffery, all of their misrepresentation and omission-based claims should be dismissed.

## V.   PLAINTIFFS' STATE FRAUDULENT CONCEALMENT CLAIMS SHOULD BE DISMISSED

Plaintiffs allege fraudulent concealment under the common law applicable to each of the thirty-three state subclasses (including New Jersey common law, which plaintiffs also seek to apply to the nationwide class, FAC ¶¶ 402-39).  These claims—like RICO's predicate acts—are

---

(Morgan); ¶ 52 (Downs); ¶ 54 (Zavareei); ¶ 64 (Yanus); ¶ 70 (Deutsch); ¶ 73 (Daschke); ¶ 75 (Jordan); ¶ 83 (Rolle); ¶ 85 (Johnson). Accordingly, the following state subclasses should be dismissed because not one of the plaintiffs in those state subclasses alleges representations that are not puffery:  New Jersey, Alabama, Arizona, Colorado, Connecticut, Florida, Illinois, Indiana, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, New York, North Carolina, Pennsylvania, South Carolina, Utah, Virginia, and Wisconsin. *See* Appendix A.

subject to Rule 9(b).  Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake."); *In re Elk Cross Timbers Decking*

*Mktg., Sales Practices & Prods. Liab. Litig.*, 2015 WL 6467730, at *25 (D.N.J. Oct. 26, 2015)

(Linares, J.) (applying Rule 9(b) to fraudulent concealment claims); *Suprema Litig.*, 438 F.3d at

270.  All of plaintiffs' state common law claims fail as a matter of law.[17]

### A.    Plaintiffs Have Failed To Adequately Allege The What, Who, Where, Or When Of The Alleged Fraud Under Rule 9(b)

The Court should dismiss plaintiffs' fraudulent concealment claims because their

allegations do not meet Rule 9(b)'s heightened pleading requirements.  Plaintiffs are required

under Rule 9(b) to plead reliance by alleging *what* "advertisements and representations" they

saw, *who* was speaking or communicated the alleged misrepresentation, *where* they saw them,

and *when* they saw them.  *See Stevenson*, 2015 WL 3487756, at *7-9 (plaintiff's failure to

"allege[] when *he* viewed the statements on the Mazda [web]site, or if such statements were

posted at the time *he* purchased his vehicle" could not satisfy the "reliance" element to state a

claim for fraudulent concealment); *see also* Appendix B.

Every plaintiff fails to plead sufficiently the "what" to satisfy Rule 9(b) because they fail

to specify what false statements were allegedly made regarding *their* vehicle.  For instance,

plaintiff Andary, who unlike many plaintiffs makes at least some personalized allegations,

alleges that she read on the "Mercedes website" "something about a 'green generation of

Mercedes,' and 'a new wave of environmentally friendly vehicles.'"  FAC ¶ 33.  Yet, these

allegations are not "sufficiently specific" to satisfy Rule 9(b) because these purported statements

---

[17]    There is no private cause of action for fraudulent concealment under Connecticut law, so the Connecticut claim should be dismissed.  *Traylor v. Awwa,* 899 F. Supp. 2d 216, 224 (D. Conn. 2012) ("[U]nder Connecticut law, there is no cause of action for fraud by concealment.").

are generalized—not specific—and do not necessarily apply to her vehicle.  *Henderson v. Volvo Cars of N. Am., LLC*, 2010 WL 2925913, at *4 (D.N.J. July 21, 2010) ("Plaintiffs' broad assertions that Defendant marketed its vehicles as being of superior quality when the class vehicles contained a known defect [are] not sufficiently specific.").  That is especially so because Andary, like most plaintiffs, fails to allege whether the general statements she purportedly viewed even applied to the particular model or year of her vehicle.  FAC ¶ 33.[18]

Forty-nine plaintiffs—twenty-four with only boilerplate allegations, *see supra* at 7, and twenty-five others[19]—fail to plead the requisite "who," instead attributing claimed statements to dealership representatives or unidentified third-party websites, without alleging facts showing that the Mercedes Defendants intentionally used these third parties to perpetrate the alleged fraud.  *Cf. Indian Brand Farms, Inc. v. Novartis Crop Prot. Inc.*, 617 F.3d 207, 218 (3d Cir. 2010) (New Jersey permits recovery based on "indirect reliance" only if plaintiff proves the defendant "communicated the false statement [to a third party] with the intention that the victim hear it, rely on it, and act to his or her detriment" (quotation marks omitted)).  For example, plaintiff Hamilton alleges only that a dealership representative made representations to him, FAC ¶ 46, and without any specific allegations that the Mercedes Defendants defrauded him.

---

[18]   Even where a plaintiff has arguably alleged the "what" for some of his allegations, he has failed to allege the accompanying "who," "where," or "when" for those allegations.  For example, plaintiff Deutsch's allegation that a dealership representative promised that his vehicle would "produce[] far less pollution and get[] much better gas mileage than a vehicle with a gasoline engine" is deficient because the dealership representative does not speak for the Mercedes Defendants—*i.e.* the "who" is not alleged sufficiently to state a claim.  FAC ¶ 70.

[19]   FAC ¶ 27 (Caputo); ¶¶ 34-35 (A.C. Roberts); ¶ 36 (Smith); ¶ 38 (Hall); ¶ 39 (Albers); ¶ 41 (Fox); ¶ 45 (Ngwashi); ¶ 46 (Hamilton); ¶ 47 (Morgan); ¶ 48 (Melnyk); ¶ 52 (Downs); ¶ 54 (Zavareei); ¶ 64 (Yanus); ¶ 65 (Weiss); ¶ 66 (Laurino); ¶ 70 (Deutsch); ¶ 71 (Dingle); ¶ 75 (Jordan); ¶ 77 (Dilgisic); ¶ 78 (Knight); ¶ 79 (Lynevych); ¶ 80 (Feller); ¶ 82 (Gershberg); ¶ 84 (Edwards); ¶ 85 (Johnson).

Likewise, plaintiff Gershberg alleges he "conducted extensive internet research," without alleging whose websites he viewed, or whether they were operated or maintained by the Mercedes Defendants. *Id.* ¶ 82.

Twenty-nine plaintiffs—twenty-four with only boilerplate allegations, *see supra* at 7, and five others[20]—fail to plead the requisite "where," in that they claim to have seen representations on the internet but do not say where on the internet they saw them, or they provide even less detail than that. For instance, plaintiff Edwards states merely that he "remembers that the [vehicle] was advertised as having ultra-low emissions and high fuel economy." FAC ¶ 84. This falls far short of Rule 9(b)'s requirement that plaintiffs apprise the Mercedes Defendants as to "where" they saw the alleged representations. *Robinson v. Kia Motors Am., Inc.*, 2015 WL 5334739, at *5 n.4 (D.N.J. Sept. 11, 2015) ("Plaintiffs need to allege where and when the misrepresentations occurred and appeared.").

Moreover, forty-three plaintiffs—twenty-four with only boilerplate allegations, *see supra* at 7, and nineteen others[21]—fail to allege whether they viewed the challenged advertisements prior to obtaining their vehicle, *i.e.*, the "when" of the fraud. For example, plaintiff Morgan fails to allege whether he "reviewed electronic advertisements on the Mercedes Sprinter website" before or after purchase, and therefore fails to state a claim. FAC ¶ 47.

Because no plaintiff has sufficiently alleged under Rule 9(b)'s heightened pleading standard the *what*, *who*, *where*, and *when* of any fraud, no plaintiff has adequately pled reliance,

---

[20]   FAC ¶¶ 34-35 (A.C. Roberts); ¶ 36 (Smith); ¶ 48 (Melnyk); ¶ 82 (Gershberg); ¶ 84 (Edwards).

[21]   FAC ¶ 32 (C. Roberts); ¶ 36 (Smith); ¶ 39 (Albers); ¶ 45 (Ngwashi); ¶ 46 (Hamilton); ¶ 47 (Morgan); ¶ 49 (Steelberg); ¶ 53 (Fraga-Errecart); ¶ 64 (Yanus); ¶ 65 (Weiss); ¶ 66 (Laurino); ¶ 70 (Deutsch); ¶ 71 (Dingle); ¶ 75 (Jordan); ¶ 78 (Knight); ¶ 79 (Lynevych); ¶ 80 (Feller); ¶ 83 (Rolle); ¶ 84 (Edwards).

and all of their claims must be dismissed.  For ease of reference, Appendix A lists the Rule 9(b) pleading deficiencies identified in this section for each plaintiff.

### B.       Plaintiffs Have Failed To Plead Facts Giving Rise To A Duty To Disclose

The crux of plaintiffs' false-advertising claims is that the Mercedes Defendants "misrepresent[ed] the emissions performance of . . . vehicles equipped with BlueTEC engines because of [their] manipulations that limit emission controls in normal driving conditions."  FAC ¶ 326; *see, e.g., id.* ¶ 318 (alleging the Mercedes Defendants conveyed a "'clean diesel' message" and "pervasively promote[d] BlueTEC Clean Diesel vehicles as 'clean' diesels, as environmentally friendly, and as the World's cleanest diesels").  As explained above, however, plaintiffs have failed to plead any affirmative representations with the particularity required by Rule 9(b).

Recognizing this deficiency, plaintiffs claim they also challenge omissions.  But they cannot simply "recharacterize the alleged wrongdoing" as "omission rather than an affirmative act" to avoid the requirements of Rule 9(b).  *Joseph v. Wiles*, 223 F.3d 1155, 1162-63 (10th Cir. 2000).  And even if they could, their omission-based claims fail because all of the plaintiffs have failed to plead facts establishing a duty to disclose under New Jersey law, which they allege applies to the nationwide class as well as the New Jersey subclass.

New Jersey provides for a duty to disclose in only three categories of relationships: (1) "fiduciary relationships, such as principal and agent, client and attorney, or beneficiary and trustee"; (2) "relationships where one party expressly reposits trust in another party, or else from the circumstances, such trust necessarily is implied"; and (3) "relationships involving transactions so intrinsically fiduciary that a degree of trust and confidence is required to protect the parties."  *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993).  New Jersey does not treat "buyer-seller and lender-borrower relationships" as falling into any of these three

categories.  *Id.*  New Jersey also imposes a duty to disclose where "disclosure is necessary to make a previous statement true."  *Id.*[22]

Here, plaintiffs do not—and cannot—allege that they had a special relationship with the Mercedes Defendants that would create a duty to disclose.  *Lightning Lube*, 4 F.3d at 1185.  And, importantly, their allegations that the Mercedes Defendants possessed exclusive knowledge cannot establish a duty to disclose under New Jersey law.  *Stevenson*, 2015 WL 3487756, at *10.  Accordingly, a duty can exist only if plaintiffs have sufficiently alleged that the Mercedes Defendants had a duty to disclose information necessary to render true a previous statement made by the Mercedes Defendants to individual plaintiffs—*i.e.*, to correct a partial disclosure.

This materially distinguishes New Jersey law from that of other states, including those states that this Court concluded in *In re Volkswagen Timing Chain Product Liability Litigation* do impose a duty to disclose.  2017 WL 1902160, at *19 (D.N.J. May 8, 2017).  In *Timing Chain*, plaintiffs alleged that their vehicles contained a defective timing chain system, which could cause "substantial engine failure" and could pose a serious safety risk.  *Id.* at *3, *20.  They also alleged that the manufacturer provided dealers with several technical service bulletins describing the defective timing chain system, but did not disclose these bulletins to owners, lessees, or the public.  *Id.* at *4.  Based on these allegations, the Court held that plaintiffs had

---

[22]   Similarly, a commercial transaction does not give rise to a duty to disclose under Illinois law in the absence of a special relationship between the parties.  *See Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996) (holding that Suzuki had no duty to disclose the excessive rollover risk of its vehicles); *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 13-14 (Ill. App. Ct. 2001) ("[T]he arms-length transaction that occurred between Miller and William Chevrolet did not give rise to a confidential relationship sufficient to impose a general duty of disclosure under the fairly rigorous principles of common law.").  Accordingly, the Court should also dismiss plaintiffs' fraudulent concealment claims under Illinois law.

sufficiently alleged a duty to disclose under the laws of various states where those state laws imposed a duty to disclose based on exclusive knowledge or partial disclosure. *Id.* at *5.

Plaintiffs here, unlike in *Timing Chain*, have failed to establish that the Mercedes Defendants had a duty to disclose to correct a previous statement. In *Timing Chain*, the plaintiffs alleged that the defendants made *uniform* partial disclosures to them in the maintenance schedules, 2017 WL 1902160, at *20, but here, the alleged representations vary from plaintiff to plaintiff, FAC ¶¶ 27-87.[23] Indeed, here, forty-seven of the sixty plaintiffs allege only that they saw a wide variety of generalized advertising statements, *see supra* at 31-34—a stark contrast to the partial disclosures contained in the technical service bulletins in *Timing Chain*. Accordingly, these plaintiffs cannot establish that disclosure was necessary to make true a previous statement made by the Mercedes Defendants to those individual plaintiffs. Ten others allege representations made by third parties—including dealerships—which could not trigger a duty to disclose for the Mercedes Defendants, FAC ¶ 41 (Fox); ¶ 46 (Hamilton); ¶ 47 (Morgan); ¶ 52 (Downs); ¶ 64 (Yanus); ¶ 70 (Deutsch); ¶ 73 (Daschke); ¶ 75 (Jordan); ¶ 83 (Rolle); ¶ 85 (Johnson); *cf. Ford*, 2010 WL 2813788, at *43 ("automobile dealerships are generally not agents of automobile manufacturers"), and another alleges representations on an unspecified website, which is not alleged to be a website connected to the Mercedes Defendants. FAC ¶ 45 (Ngwashi). Accordingly, the fraudulent concealment claims arising under New Jersey law should be dismissed for these fifty-eight plaintiffs (*i.e.*, all plaintiffs but Andary and Zavareei) because they have failed to allege any duty of disclosure that has been breached by the Mercedes Defendants.

---

[23]   This case is also distinguishable from *Timing Chain* because plaintiffs have not alleged a safety defect. *See Timing Chain*, 2017 WL 1902160, at *20 (noting that some states—but not New Jersey—impose an independent duty to disclose safety defects).

## VI.   PLAINTIFFS' STATE STATUTORY CLAIMS SHOULD BE DISMISSED

In addition to asserting fraudulent concealment claims under the common law of the thirty-three state subclasses, plaintiffs also assert claims against the Mercedes Defendants under the state consumer protection statutes of those states.  While the elements of the statutory claims also vary by state (and by statute, since some state subclasses invoke multiple state-specific consumer protection statutes, like New York), all of the state statutory claims sound in fraud— and therefore should be dismissed for failure to meet the requirements of Rule 9(b).[24]  They also fail to state a claim under Rule 8's plausibility standard.  Certain state statutory claims should also be dismissed because the statutes require specific pleadings of ascertainable loss, are time-barred, or prohibit recovery through class action litigation.

### A.   Plaintiffs Have Failed To State A Claim For Violations Of State Consumer Protection Statutes Under Rule 9(b)

Reliance—or at least a "causal nexus" between the alleged unlawful conduct and any alleged injury—is an element of every consumer protection statute that plaintiffs allege the Mercedes Defendants violated.  *See* Appendix B.  Accordingly, plaintiffs' statutory claims must be dismissed for the very same reason as plaintiffs' fraudulent concealment claims:  they have not pled this causal nexus with the requisite specificity.  *See supra* at 35-38; *Gray v. Bayer Corp.*, 2009 WL 1617930, at *3 (D.N.J. June 9, 2009) (holding plaintiffs must "*specify* what misrepresentations [they] relied upon or when and how [they] [were] exposed to those

---

[24]   Although the Second Circuit has declined to hold plaintiffs to the strictures of Rule 9(b) when asserting fraud claims under New York's General Business Law Section 349, *see Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 512 (2d Cir. 2005), the Third Circuit has repeatedly held to the rule that when claims "sound in fraud," Rule 9(b) governs.  *In re Suprema Litig.*, 438 F.3d at 270.  Because plaintiffs' New York statutory claims sound in fraud, they must conform with Rule 9(b).  *See, e.g.*, *Gold v. Lumber Liquidators, Inc.*, 2015 WL 7888906, at *12 (N.D. Cal. Nov. 30, 2015) (applying Rule 9(b) to fraud claims under New York's General Business Law because it was required to apply Ninth Circuit, not Second Circuit, law).

misrepresentations" (emphasis added)); *see also Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 539 (D.N.J. 2011) (same).

Plaintiffs' state statutory claims should also be dismissed under Rule 9(b) because plaintiffs have failed to allege facts establishing that the Mercedes Defendants made a "false, deceptive, or misleading" statement. Appendix B. Although the Court held that plaintiffs had adequately alleged that they had not received the benefit of their bargain, the Court can and should still dismiss plaintiffs' claims for failure to sufficiently allege that any statements were false, deceptive, or misleading under Rule 9(b)—a higher standard than the plausibility standard applied to the standing inquiry. *In re GNC Corp.*, 789 F.3d 505, 513 & n.6 (4th Cir. 2015); *see also RBC Bank (USA) v. Petrozzini*, 2012 WL 1965370, at *3 (D.N.J. May 31, 2012) (stating that a plaintiff must provide a "specific explanation as to why" a defendant's representations "were false"). At best, plaintiffs have alleged they are subjectively unhappy, but "[f]ailure to meet Plaintiffs' . . . expectations . . . does not render [Defendants'] representations misleading" under the applicable state consumer protection statutes. *In re iPhone 4s Consumer Litig.*, 637 F. App'x 414, 415-16 (9th Cir. 2016). Plaintiffs must plead objective standards by which to evaluate the Mercedes Defendants' alleged advertisements regarding BlueTEC emissions, diesel emissions relative to gasoline vehicles, or compliance of "on-road" emissions with laboratory standards. D.E. 54 at 5-8. They have not done so.

Even if Rule 9(b) did not apply to plaintiffs' statutory claims, Rule 8 also requires dismissal because the FAC lacks "allegations plausibly suggesting (not merely consistent with) wrongdoing." *Plumbers' Local Union No. 690 Health Plan v. Sanofi, S.A.*, 2016 WL 2757736, at *9 (D.N.J. May 11, 2016) (citation omitted). Allegations that third parties made misrepresentations, for example, fail to raise a *plausible* inference that the Mercedes Defendants

42

have engaged in any wrongdoing.  *Id.* at *10.  The same is true of alleged misrepresentations with no temporal connection to plaintiffs' purchasing and leasing decisions.  *See supra* at 10. Accordingly, under either Rule 8 or Rule 9(b), all state statutory claims should be dismissed.

**B.      Plaintiffs Have Failed To Plead Ascertainable Loss As Required By Two States**

Plaintiffs Caputo, Caniero, Watkins, Carroll, and Cunningham fail to plead injury with the specificity required under the consumer protection statutes of New Jersey and Florida because they have not alleged sufficient facts to show they suffered an ascertainable loss.  In *Riddell Concussion*, the court dismissed plaintiffs' statutory claims under New Jersey law and Florida law because, even though plaintiffs alleged that they paid a "price premium" for certain nonexistent features, plaintiffs failed to "specify the price paid for the product and the price of comparable products."  *In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 439 (D.N.J. 2015).  Without such details, "Plaintiff's allegations concerning the ascertainable loss are nothing more than unsupported conclusory statements that are insufficient to withstand a motion to dismiss."  *Lieberson*, 865 F. Supp. 2d at 541-42.  And that is precisely the case here.  Plaintiffs do not allege how much they paid for their vehicles, how much a comparable vehicle would cost, or that any premium paid will not be recovered upon trade-in or resale; they have therefore failed to plead facts supporting an inference that they suffered any ascertainable loss.  Their claims should be dismissed.  *See Caterpillar*, 2015 WL 4591236, at *38-39 (dismissing New Jersey and Florida statutory claims for failure to plead ascertainable loss); *see also Dugan v. TGI Fridays, Inc.*, 2017 WL 4399352, at *17-18 (N.J. Oct. 4, 2017) (rejecting argument that allegations of classwide overpayment could substitute for ascertainable loss under New Jersey law).

## C.    Plaintiffs' Statutory Claims Are Time-Barred In Three States

Four plaintiffs' statutory claims should also be dismissed as time-barred:  Mose's

Alabama claim;[25] Findlay's and Rubey's Indiana claims; and Watkins' Florida claim.  These

claims are time-barred because—unlike a typical statute of limitations that begins to run from the

date the injury is discovered—the relevant statutes of limitations and repose begin to run from

the date that the alleged tort *occurred—i.e.*, the original purchase date of the vehicles.  And they

are not subject to tolling based on alleged fraudulent concealment.

*First*, Mose's Alabama statutory claim is subject to a four-year statute of repose, which is

distinct from the same law's one-year statute of limitations.  Ala. Code § 8-19-14.  The statute of

repose provides that "*in no event* may any action be brought under this chapter more than *four*

*years from the date of the transaction* giving rise to the cause of action."  *Id.* (emphasis added).

Federal courts in Alabama recognize that this four-year statute of repose is not subject to tolling.

*Collins v. Davol, Inc.*, 56 F. Supp. 3d 1222, 1228 (N.D. Ala. 2014) (ADTPA's statute of repose

is not subject to tolling despite alleged fraud delaying discovery, unlike statute of limitations).

Mose purchased a used 2007 model year vehicle, which means that his claims are well outside

the four-year statute of repose (since it was presumably originally purchased in or near 2007),

and they should be dismissed as time-barred.  FAC ¶ 29.

*Second*, Florida plaintiff Watkins' statutory claim is time-barred because Florida's

consumer protection statute bars tolling based on delayed discovery.  Florida's four-year statute

of limitations is governed by section 95.051's "exclusive list of conditions that can 'toll' the

---

[25]    In the event that the Court declines to dismiss plaintiff Mose's Alabama Deceptive Trade
Practices Act claim, it should dismiss all of his other claims, because he waived his right to bring
other claims when he chose to assert an ADTPA claim.  *See Holmes v. Behr Process Corp.*, 2015
WL 7252662, at *2 (N.D. Ala. Nov. 17, 2015).

running of the statute of limitations," which does not include alleged fraudulent concealment of the wrongdoing. *Major League Baseball v. Morsani*, 790 So. 2d 1071, 1075 (Fla. 2001); *see also* Fla. Stat. § 95.051(2). Florida plaintiff Watkins purchased his used vehicle in 2013, indicating the vehicle was originally sold prior to 2013. His claim is therefore time-barred "[b]ecause the delayed discovery rule does not apply to the FDUPTA, [and] Plaintiffs [are] required to make their claim within four years of the purchase date." *McKissic v. Country Coach, Inc.*, 2008 WL 2782678, at *8 (M.D. Fla. July 16, 2008); *see also Baez v. Root*, 2014 WL 1414433, at *3 (S.D. Fla. Apr. 11, 2014) (citing cases).

*Third*, Indiana plaintiffs Findlay's and Rubey's claims are time-barred by Indiana's two-year statute of limitations, which provides that a claim "may not be brought more than two (2) years after the occurrence of the deceptive act," and Indiana courts have enforced that limitation even when the fraud was discovered later. Ind. Code § 24-5-0.5-5(b). For example, in *A.J.'s Automotive Sales, Inc. v. Freet*, 725 N.E.2d 955, 959 (Ind. Ct. App. 2000), plaintiffs brought a claim against a used-car dealership after they discovered that the odometer was falsified. The court held that the limitations period began to run on the purchase date of the vehicle, not when plaintiffs discovered the alleged fraud. *Id*. at 964-65. Both Findlay's and Rubey's vehicle purchases—in 2011 and 2007 respectively—put them well outside the two-year limitation period, and their statutory claims too should be dismissed. *See* FAC ¶¶ 50-51.[26]

---

[26]   Findlay's and Rubey's claims are also time-barred because of the time requirements for Indiana's notice requirement, which provides that "[n]o action may be brought" unless the alleged deceptive act is incurable or the plaintiff provided written notice to the defendant. Ind. Code § 24-5-0.5-5(a). These plaintiffs failed to comply with the time limitation for sending written notice, which requires written notice "within the sooner of" six months after "the initial discovery of the deceptive act" or one year after the consumer transaction, and these plaintiffs do not allege facts showing that the Mercedes Defendants committed an "incurable" deceptive act. Ind. Code § 24-5-0.5-5(a); FAC ¶¶ 50-51.

**D.      State Class Action Bars Require Dismissal Of Plaintiffs' Statutory Class Claims In Seven States**

Plaintiffs' claims on behalf of putative state subclasses under the consumer-protection laws of Alabama, Georgia, Mississippi, Montana, Ohio, South Carolina, and Tennessee should be dismissed as well because these state laws allow recovery only in *individual* actions.[27]  These seven states chose to define consumer rights and remedies in such a way as to exclude class actions for these *specific* state statutory claims, and expressly require plaintiffs to bring individual suits to seek relief.  Federal procedural rules, such as Rule 23, do not override substantive state law, so this Court should dismiss these class claims.  *See In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1165 (D. Minn. 2014) ("Most courts that have evaluated state consumer-protection laws that conflict with Rule 23 have determined that Rule 23 cannot be applied to otherwise prohibited class actions, because the class-action prohibition defines the scope of the state-created right, namely the right to bring a lawsuit for violations of the state's consumer-protection law."); *see also In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 635 (D.S.C. 2015) (dismissing state statutory class claims); *Tait v. BSH Home Appliances Corp.*, 2011 WL 1832941, at *8-9 (C.D. Cal. May 12, 2011) (same).

Dismissal of these claims is the only outcome consistent with Justice Stevens' controlling opinion in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010).[28]  Although Justice Stevens allowed Rule 23 to preempt the New York procedural rule in

---

[27]    Ala. Code § 8-19-10(f) (plaintiffs Mose and Lewis); Ga. Code § 10-1-399(a) (Ngwashi and Hamilton); Miss. Code § 75-24-15(4) (Ashcraft); Mont. Code § 30-14-133(1) (Silverio); Ohio Rev. Code § 1345.09(A) (Deutsch); S.C. Code § 39-5-140(a) (Ledlie); Tenn. Code § 47-18-109(a)(1) (Daschke).

[28]    *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011); *see also Leonard v. Abbott Labs., Inc.*, 2012 WL 764199, at *12 (E.D.N.Y. Mar. 5, 2012).

*Shady Grove*, the state laws here are "importantly different from the state law at issue in *Shady Grove* because the New York law had *no* substantive component." *Fejzulai v. Sam's West, Inc.*, 205 F. Supp. 3d 723, 727 (D.S.C. 2016).  At issue in *Shady Grove* was a New York procedural rule—N.Y. C.P.L.R. 901(b)—which barred class proceedings in any "action to recover a penalty, or minimum measure of recovery created or imposed by [any] statute," whether the claim stemmed from a New York statute, a federal statute, or a statute from a different state.  By contrast, each class action bar here is "so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy." *Shady Grove*, 559 U.S. at 420 (Stevens, J., concurring in part).  None is a part of its state's general procedural rules; rather, each is a provision *within* the state statute at issue and *applies only* to causes of action under that statute.  Indeed, Alabama expressly declares that its limitation "is a substantive limitation and allowing a consumer or other person to bring a class action or other representative action for a violation of this chapter would abridge, enlarge, or modify the substantive rights created by this chapter." Ala. Code § 8-19-10(f).

Because "federal rules cannot displace a State's definition of its own rights or remedies," *Shady Grove*, 559 U.S. at 418 (Stevens, J., concurring), this Court should enforce the limits of state substantive law by dismissing the statutory class claims under the laws of Alabama, Georgia, Mississippi,[29] Montana, Ohio, South Carolina, and Tennessee.

---

[29]   Plaintiff Ashcraft's claim under the Mississippi Consumer Protection Act also fails because, as a prerequisite to suit, "the plaintiff 'must have first made a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General.'" *Lockey v. CMRE Fin. Servs., Inc.*, 2011 WL 2971085, at *2 (S.D. Miss. July 20, 2011) (quoting Miss. Code § 75-24-15(2)); *see also Mayberry v. Bristol-Myers Squibb Co.*, 2009 WL 5216968, at *6 (D.N.J. Dec. 30, 2009).  Ashcraft has not alleged that he has done so, so the Court should dismiss this claim.

## VII.   AT LEAST TWO PLAINTIFFS MUST ARBITRATE ALL CLAIMS RELATING TO THEIR VEHICLES

In addition to all of the foregoing bars to plaintiffs' claims, the Mercedes Defendants are presently aware of at least two named plaintiffs, Andary and Feller, whose purchase agreements require that they arbitrate all claims—including claims against non-signatories to the agreements—arising from the sale or condition of their Mercedes-Benz diesel vehicles.[30]  These two plaintiffs' claims should therefore be dismissed, and they should be compelled to arbitrate.

Plaintiffs Andary's and Feller's contracts show that they agreed to arbitrate "[a]ny claim or dispute, whether in contract, tort, statute or otherwise . . . which arises out of or relates to [the] credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)." Ex. 1 (Andary Agreement); *see* Ex. 2 (Feller Agreement) (same).  That language encompasses every claim asserted in the FAC—RICO, fraudulent concealment, and state statutory violations—because they sound in tort and statute.  FAC ¶¶ 352-439; *see, e.g.*, *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 242 (1987) (holding that RICO claims are arbitrable); *FCMA, LLC v. Fujifilm Recording Media U.S.A., Inc.*, 2010 WL 3076486, at *6 (D.N.J. Aug. 5, 2010) (holding that non-signatory may arbitrate fraud and conspiracy claims).  And all of plaintiffs' claims alleging deception regarding emissions in their Mercedes-Benz diesel vehicles

---

[30]   Any sale or lease agreement (or other agreement, such as a financing agreement) relating to plaintiffs' vehicles is beyond the custody or control of the Mercedes Defendants, *see* Fleming Decl. ¶ 4, and may contain any number of distinct substantive terms that govern plaintiffs' claims.  The Mercedes Defendants are presently aware of arbitration clauses in agreements with only certain dealerships, and similar clauses may exist in plaintiffs' contracts with Carmax or other private sellers.  The Mercedes Defendants reserve their right to compel arbitration of the remaining plaintiffs' claims if their agreements also contain arbitration clauses.

arise from the purchase or condition of the vehicle and their resulting relationship with the Mercedes Defendants. *FCMA*, 2010 WL 3076486, at *6.

   These arbitration agreements apply even though the Mercedes Defendants are not signatories. Courts have consistently held that defendants who are not parties to an arbitration agreement can enforce the agreements when their terms plainly apply to plaintiffs who are signatories. For example, in *Sherer v. Green Tree Servicing, LLC*, the plaintiff sued his loan servicer after obtaining the loan through a contract with a separate company. 548 F.3d 379, 381-82 (5th Cir. 2008) (per curiam). There, the plaintiff had "agreed to arbitrate any claims arising from 'the relationships which result from the agreement.'" *Id*. at 382 (alterations omitted). Because "without the Loan Agreement, there would be no loan for [the defendant] to service," the Fifth Circuit held that all of the plaintiff's claims against the non-signatory defendant— including his statutory claims—fell within the contract's broad arbitration language. *Id.*; *Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1310 (11th Cir. 2005) (compelling arbitration of statutory claims against non-signatory defendant).[31]

   The same framework applies here. Plaintiffs agreed to arbitrate "any claim" related to the "purchase or condition" of their vehicles or "any resulting transaction or relationship." Without signing the purchase and lease agreements, plaintiffs Andary and Feller would not possess the vehicles upon which their claims are based. Moreover, the specific contract language that these plaintiffs signed references and contemplates arbitrating disputes arising from "any resulting transaction or relationship (*including any such relationship with third parties who do*

---

   [31]   Plaintiffs have claimed that these decisions were abrogated by *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), but *Arthur Andersen* held that non-signatories can enforce arbitration agreements against signatories and remanded on the question of what grounds existed to do so under state law. *Id*. at 631.

49

*not sign this contract*).” Ex. 1 (Andary Agreement) (emphasis added); *accord* Ex. 2 (Feller

Agreement); *cf. Timing Chain*, 2017 WL 1902160, at *8 (analyzing an arbitration clause that did

not expressly include claims against third parties).  All of their claims therefore fall within the

plain language of their agreements.  If this Court concludes it has jurisdiction, it should dismiss

Andary’s and Feller’s claims and compel arbitration.  *See Nationwide Ins. Co. of Columbus,*

*Ohio v. Patterson*, 953 F.2d 44, 45-46 & n.1 (3d Cir. 1991) (“Dismissal of a declaratory

judgment action because the dispute is covered by an arbitration provision is generally effected

under Rule 12(b)(6).”); *Precision Funding Grp., LLC v. Nat’l Fid. Mortg.*, 2013 WL 2404151, at

*8-9 (D.N.J. May 31, 2013) (granting non-signatory’s motion to compel arbitration).

## CONCLUSION

All claims against Daimler AG and Mercedes-Benz USA, LLC should be dismissed with

prejudice and, if the Court determines it has jurisdiction, plaintiffs Andary and Feller should be

ordered to arbitrate their claims.

Dated:  November 9, 2017

Respectfully Submitted,

GIBSON, DUNN & CRUTCHER LLP

By:  s/     Lucas C. Townsend
           Lucas C. Townsend

Troy M. Yoshino
  *admitted pro hac vice*
Matthew J. Kemner
  *admitted pro hac vice*
Eric J. Knapp
  *admitted pro hac vice*
Squire Patton Boggs (US) LLP
275 Battery Street, Suite 2600
San Francisco, CA 94111
Tel: (415) 743-2441
Fax: (415) 989-0932

Daniel W. Nelson
  *admitted pro hac vice*
Geoffrey M. Sigler
  *admitted pro hac vice*
Lucas C. Townsend
Chantale Fiebig
  *admitted pro hac vice*
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Tel: (202) 887-3731
Fax: (202) 530-4254

*Attorneys for Defendants Mercedes-Benz USA, LLC and Daimler AG*