## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE MERCEDES-BENZ EMISSIONS LITIGATION | Civil Action No. 2:16-cv-881 (JLL) (JAD)<br><br>Motion Date: April 1, 2019<br><br>**ELECTRONICALLY FILED** |

### DEFENDANTS MERCEDES-BENZ USA, LLC'S AND DAIMLER AG'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CERTIFICATION OF ORDER FOR INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)

Troy M. Yoshino
  *admitted pro hac vice*
Matthew J. Kemner
  *admitted pro hac vice*
Eric J. Knapp
  *admitted pro hac vice*
Squire Patton Boggs (US) LLP
275 Battery Street, Suite 2600
San Francisco, CA 94111
Tel: (415) 743-2441
Fax: (415) 989-0932

Daniel W. Nelson
  *admitted pro hac vice*
Geoffrey M. Sigler
  *admitted pro hac vice*
Lucas C. Townsend
Chantale Fiebig
  *admitted pro hac vice*
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Tel: (202) 887-3731
Fax: (202) 530-4254

*Attorneys for Defendants Mercedes-Benz USA, LLC and Daimler AG*

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................... 1

ARGUMENT ..................................................................................................... 4

I.      The Issue Raised Is A Controlling Question Of Law. ........................... 5

II.     There Are Substantial Grounds For A Difference Of Opinion. ............ 7

III.    An Immediate Appeal Would Materially Advance The Ultimate Termination Of This Case. ................................................................................................................. 15

CONCLUSION ................................................................................................. 19

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*290 at 71, L.L.C. v. JPMorgan Chase Bank, Nat'l Ass'n,*
   No. A-09-CA-576-SS, 2010 WL 11597154 (W.D. Tex. Feb. 1, 2010)..................18

*Anza v. Ideal Steel Supply Corp.,*
   547 U.S. 451 (2006).................................................................1, 9, 10, 13

*Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC,*
   Civ. No. 11-00011, 2013 WL 663301 (D.N.J. Feb. 21, 2013) ................................8

*Bedoya v. Am. Eagle Express,*
   Civ. No. 14-2811, 2017 WL 4330351 (D.N.J. Sept. 29, 2017) .............................15

*Bledsoe v. FCA US LLC,*
   No. 4:16-cv-14024 (E.D. Mich.)..............................................................18

*Bridge v. Phoenix Bond & Indem. Co.,*
   553 U.S. 639 (2008).........................................................................13

*Callahan v. A.E.V., Inc.,*
   182 F.3d 237 (3d Cir. 1999)......................................................2, 5, 9, 10, 11

*Casper v. Paine Webber Grp., Inc.,*
   787 F. Supp. 1480 (D.N.J. 1992) ..............................................................5

*Chavez v. Occidental Chem. Corp.,*
   300 F. Supp. 3d 517 (S.D.N.Y. 2018).........................................................7

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab.
   Litig.,*
   295 F. Supp. 3d 927 (N.D. Cal. 2018) ...............................................12, 18

*Counts v. Gen. Motors, LLC,*
   No. 1:16-cv-12541 (E.D. Mich.).............................................................18

*Dartell v. Tibet Pharm., Inc.,*
   Civ. No. 14-3620, 2018 WL 994896 (D.N.J. Feb. 21, 2018) .................8, 11, 13, 15

*DRFP, L.L.C. v. Republica Bolivariana de Venezuela,*
   Civ. No. 2:04-793, 2009 WL 948764 (S.D. Ohio Apr. 1, 2009) ...........................18

*Fenner v. Gen. Motors, LLC,*
   No. 1:17-cv-11661 (E.D. Mich.)..............................................................18

*Forsyth v. Kleindienst,*
   599 F.2d 1203 (3d Cir. 1979).................................................................6

**TABLE OF AUTHORITIES**

(cont'd)

Page(s)

*FTC v. Wyndham Worldwide Corp.*,
    10 F. Supp. 3d 602 (D.N.J. 2014) ................................................................................ *passim*

*Gamboa v. Ford Motor Co.*,
    No. 2:18-cv-10106 (E.D. Mich.) ....................................................................................18

*Heaton v. Soc. Fin., Inc.*,
    No. 14-cv-05191-TEH, 2016 WL 232433 (N.D. Cal. Jan. 20, 2016) .............................17

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010) ...................................................................................................... *passim*

*Henriquez-Disla v. Allstate Prop. & Cas. Ins. Co.*,
    No. 13-cv-284, 2014 WL 3887750 (E.D. Pa. Aug. 7, 2014) .........................................6

*Holmes v. Sec. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992)...........................................................................................5, 9, 13

*Katz v. Carte Blanche Corp.*,
    496 F.2d 747 (3d Cir. 1974)...........................................................................2, 4, 5, 6

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in*
    *Amministrazione Straordinaria*,
    921 F.2d 21 (2d Cir. 1990)...........................................................................................17

*Krangel v. Crown*,
    791 F. Supp. 1436 (S.D. Cal. 1992) ............................................................................17

*Leite v. Crane Co.*,
    Civ. No. 11-00636, 2012 WL 1982535 (D. Haw. May 31, 2012) .............................17

*In re Lloyd's Am. Tr. Fund Litig.*,
    No. 96 CIV. 1262 (RWS), 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997) .....................6

*Malabarba v. Chi. Tribune Co.*,
    149 F.3d 690 (7th Cir. 1998) .......................................................................................12

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
    399 F. Supp. 2d 320 (S.D.N.Y. 2005).........................................................................17

*N.J. Prot. & Advocacy, Inc. v. N.J. Dep't of Educ.*,
    Civ. No. 07-2978 (MLC), 2008 WL 4692345 (D.N.J. Oct. 8, 2008) ...................5, 6, 15

*N.J., Dep't of Treasury, Div. of Inv. v. Fuld*,
    Civ. No. 09-1629 (AET), 2009 WL 2905432 (D.N.J. Sept. 8, 2009)...................3, 15

iii

# TABLE OF AUTHORITIES
### (cont'd)

Page(s)

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001).................................................................6

*Pub. Interest Research Grp. of N.J., Inc. v. Hercules, Inc.*,
  830 F. Supp. 1549 (D.N.J. 1993) ..........................................................15

*Reese v. BP Exploration (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) .............................................................8, 13

*Republic of Colombia v. Diageo N. Am. Inc.*,
  619 F. Supp. 2d 7 (E.D.N.Y. 2007) ....................................................6, 7, 13

*Rickman v. BMW of N. America, LLC*,
  No. 2:18-cv-4363 (D.N.J.) ..................................................................18

*Santomenno v. John Hancock Life Ins. Co. (U.S.A)*,
  Civ. No. 10-01655 (WJM), 2013 WL 3864395 (D.N.J. July 24, 2013) ...............12

*Triax Co. v. United States*,
  20 Cl. Ct. 507 (1990) .......................................................................17

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  MDL No. 2672 CRB (JSC), 2018 WL 4777134 (N.D. Cal. Oct. 3, 2018)........12, 18

*Williams v. Mohawk Indus., Inc.*,
  Civ. No. 04-0003 (HLM), 2004 WL 7333989 (N.D. Ga. May 27, 2004) .........7, 9, 13

*In re WorldCom, Inc. Sec. Litig.*,
  No. 02 Civ. 3288, 2003 WL 22953644 (S.D.N.Y. Dec. 16, 2003).......................17

**Statutes**

9 U.S.C. § 16(a)(1)(B) ...........................................................................4, 18

18 U.S.C. § 1964(c) ............................................................................1, 2, 5

28 U.S.C. § 1292(b) ........................................................................... *passim*

**Other Authorities**

John K. Cornwell, *RICO Run Amok*, 71 SMU L. REV. 1017, 1035 (2018) .................14

Randy D. Gordon, *Making Meaning: Towards A Narrative Theory of Statutory Interpretation and Judicial Justification*, 12 OHIO ST. BUS. L.J. 1, 25 (2017) ..........14

010-8736-9582/1/AMERICAS

# INTRODUCTION

Pursuant to 28 U.S.C. § 1292(b), Defendants Mercedes-Benz USA, LLC and Daimler AG (the "Mercedes Defendants") respectfully request that this Court certify for interlocutory appeal this Court's February 1, 2019 Order on their Motion To Dismiss And To Compel Arbitration. *See* Order, D.E. 162 ("Order"). The Order decided a dispositive legal question on which there is substantial ground for difference of opinion:

> Whether allegations that defendants deceived government regulators to obtain a certificate of conformity that allowed third-party dealers to sell an allegedly defective product to consumers are sufficient to establish proximate causation under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c).

Plaintiffs' RICO claim rests on the assertion that the Mercedes Defendants made misrepresentations to government regulators—the U.S. Environmental Protection Agency ("EPA") and the California Air Resources Board ("CARB")—to obtain certificates of conformity that enabled consumers to purchase allegedly defective vehicles from third-party dealers. But to establish that the Mercedes Defendants' claimed fraud caused harm to the business or property of consumers, *see* 18 U.S.C. § 1964(c), plaintiffs must show that (1) but for the alleged fraud on regulators, the allegedly defective vehicles never would have been legal to sell in the United States, (2) third-party dealerships never would have sold plaintiffs their vehicles, and (3) plaintiffs never would have overpaid third parties for the defective vehicles. Although there is no appellate precedent addressing this precise factual scenario, the Mercedes Defendants believe that Supreme Court and Third Circuit precedent strongly indicates that this multi-step, multi-party theory of causation is insufficient as a matter of law to establish the "direct" proximate causation needed to state a RICO claim. *See, e.g.*, *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010); *Anza v.*

*Ideal Steel Supply Corp.*, 547 U.S. 451, 460-61 (2006); *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 263-65 (3d Cir. 1999).

This Court concluded that plaintiffs have pleaded an actionable theory of RICO causation based on recent, out-of-circuit district court decisions in other diesel emissions litigation. *See* Opinion 22-24, D.E. 161 ("Opinion"). However, significant doubt exists as to whether those decisions are consistent with binding precedent on RICO causation. At a minimum, this Court's Order satisfies the requirements for a certified interlocutory appeal under 28 U.S.C. § 1292(b) because it involves a controlling question of law, there is a substantial ground for difference of opinion as to that controlling question, and an appeal may materially advance the ultimate termination of the litigation.

*First*, the issue of RICO proximate causation "involves a controlling question of law." 28 U.S.C. § 1292(b). A question of law is "controlling" under section 1292(b) when it would lead to reversal on appeal if decided erroneously or when it is "serious to the conduct of the litigation." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974). Here, plaintiffs' RICO count can survive a motion to dismiss *only* if plaintiffs can allege sufficiently that they were injured in their business or property "by reason of" a prohibited activity, 18 U.S.C. § 1964(c)—and the Supreme Court has not hesitated to reverse RICO counts that fail to allege a cognizable theory of causation. *See, e.g.*, *Hemi Grp.*, 559 U.S. at 9. Moreover, because reversal as to proximate causation would require dismissing plaintiffs' sole federal claim—for which they seek treble damages in a putative nationwide class of purchasers—prompt appellate resolution of the RICO issue would dramatically affect the conduct of the litigation and any future settlement discussions.

*Second*, there is "substantial ground for difference of opinion" as to the controlling question of RICO proximate causation. 28 U.S.C. § 1292(b). The Mercedes Defendants believe that the

2

Supreme Court and the Third Circuit have held that multi-step, multi-party causal chains of the sort alleged by plaintiffs here cannot survive a motion to dismiss.  This Court allowed plaintiffs' RICO claim to proceed by distinguishing the appellate RICO precedent and relying instead on recent district court opinions in diesel emissions litigation pending in other circuits.  Opinion 22-24.  But none of those district court RICO rulings has been subjected to appellate review, and none of the courts rendering those decisions were bound by Third Circuit case law rejecting the same essential theory that plaintiffs espouse here.  Consequently, there are at least substantial grounds for a difference of opinion as to whether those district court cases were correctly decided in light of Supreme Court and Third Circuit precedent.

Moreover, even if the appellate precedent were distinguishable, that would simply confirm that there is an "absence of controlling law" on plaintiffs' attenuated theory of RICO causation in the context of the diesel emissions litigation.  *N.J., Dep't of Treasury, Div. of Inv. v. Fuld*, Civ. No. 09-1629 (AET), 2009 WL 2905432, at *2 (D.N.J. Sept. 8, 2009) (quotation marks and citation omitted).  This absence of controlling authority would provide an independent substantial ground for difference of opinion on the RICO causation element.

*Third*, an immediate appeal from the Order "may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  If the Third Circuit were to accept the Mercedes Defendants' interlocutory appeal and hold in their favor on this issue, the massive RICO count would be eliminated, which "will save time and expense, and will materially advance the ultimate resolution of this litigation."  *FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 635 (D.N.J. 2014) (quotation marks and citation omitted), *aff'd*, 799 F.3d 236 (3d Cir. 2015).  The "saving of time of the district court and of expense to the litigants" is "a highly relevant factor"

when determining whether to certify an order for interlocutory appeal under section 1292(b). *Katz*, 496 F.2d at 755.

Other factors also illustrate why an immediate appeal would materially advance the litigation and thus weigh decisively in favor of certifying an immediate interlocutory appeal. This case is large, complex, and involves an international defendant—factors that courts have found relevant in certifying appeals under section 1292(b). Moreover, as this Court already has recognized, plaintiffs' allegations are similar to RICO claims in diesel emissions cases around the nation, and the Third Circuit's scrutiny of the allegations in this matter would provide much-needed appellate-level guidance for *all* district courts grappling with these emissions cases. Furthermore, the Mercedes Defendants have filed an appeal as of right from this Court's ruling denying their motion to compel arbitration, *see* 9 U.S.C. § 16(a)(1)(B), so there will be a Third Circuit appeal on the arbitration issue regardless of whether this Court certifies the Order as to the RICO causation issue. *See* D.E. 174.

For all of these reasons, this Court should certify the Order as to the RICO causation issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## ARGUMENT

A district court may certify an otherwise non-appealable order for review by an appellate court if: (1) the order involves a "controlling question of law"; (2) there is "substantial ground for difference of opinion" as to the controlling question; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The controlling legal issue presented by plaintiffs' theory of RICO causation not only materially affects the disposition of this case, but, if resolved in the Mercedes Defendants' favor, would result in immediate dismissal of plaintiffs' RICO claim.

I.     THE ISSUE RAISED IS A CONTROLLING QUESTION OF LAW.

The Third Circuit has held that a controlling question of law is one which: (1) if decided erroneously, "would result in a reversal of a judgment after final hearing"; *or* (2) is "serious to the conduct of the litigation, either practically or legally." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974). This Court's ruling on plaintiffs' theory of RICO causation easily satisfies both standards.

First, a reversal of this Court's holding that plaintiffs had adequately pleaded RICO causation would require dismissing plaintiffs' RICO count, because a cognizable theory of proximate causation is necessary to state a claim for a violation of civil RICO. *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992); *see also, e.g.*, *Callahan v. A.E.V., Inc.*, 182 F.3d 237, 242 (3d Cir. 1999) (affirming dismissal of plaintiffs' RICO claim because plaintiffs failed to prove RICO proximate causation). Accordingly, RICO causation qualifies as a controlling question of law under 28 U.S.C. § 1292(b). *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 634 (D.N.J. 2014) (certifying an issue for interlocutory appeal when a reversal of the court's decision would result in dismissal of only one claim); *N.J. Prot. & Advocacy, Inc. v. N.J. Dep't of Educ.*, Civ. No. 07-2978 (MLC), 2008 WL 4692345, at *3 (D.N.J. Oct. 8, 2008) ("It is not required that reversal of the order terminate the litigation . . . .").

Second, plaintiffs' RICO count is "serious to the conduct of the litigation," both practically and legally. *Katz*, 496 F.2d at 755. Dismissal of the RICO count likely would have a substantial effect on the course of discovery, litigation, and settlement discussions. The RICO count provides for an award of treble damages, *see* 18 U.S.C. § 1964(c); Fourth Am. Compl., D.E. 107 ¶ 401, and plaintiffs seek to apply it to a nationwide damages class, *see* Fourth Am. Compl. ¶ 342. Courts have recognized the coercive effect that RICO claims can have on the course of litigation, *see, e.g.*, *Casper v. Paine Webber Grp., Inc.*, 787 F. Supp. 1480, 1500 n.8 (D.N.J. 1992), and the

"hydraulic pressure" on defendants to settle even non-meritorious claims is a recognized ground for allowing interlocutory appeals in a variety of contexts. *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 165 (3d Cir. 2001) (interlocutory appeal from class certification).

In addition, an appellate determination that plaintiffs have failed to plead RICO causation would reduce the litigation burdens on this Court and the parties—a "highly relevant factor" in identifying controlling legal issues under 28 U.S.C. § 1292(b). *Katz*, 496 F.2d at 755; *N.J. Prot. & Advocacy, Inc.*, 2008 WL 4692345, at *3; *see also Henriquez-Disla v. Allstate Prop. & Cas. Ins. Co.*, No. 13-cv-284, 2014 WL 3887750, at *5 (E.D. Pa. Aug. 7, 2014) ("Saving judicial time and the resources of the litigants have been recognized as relevant factors in the analysis."). Promoting the "institutional efficiency" of the federal court system is a "major purpose" of certified appeals under section 1292(b). *Forsyth v. Kleindienst*, 599 F.2d 1203, 1208 (3d Cir. 1979). And "[b]ecause the district court's efficiency concerns are greatest in large, complex cases, certification may be more freely granted in so-called 'big' cases." *In re Lloyd's Am. Tr. Fund Litig.*, No. 96 CIV. 1262 (RWS), 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12, 1997).

It is indisputable that this case is large and complex: the 500-page operative complaint contains 1,752 paragraphs, there are 33 putative subclasses, and two of the defendants are foreign corporations. Moreover, while most of plaintiffs' claims are set forth in around 20 or fewer paragraphs (*see, e.g.*, Fourth Am. Compl., D.E. 107 ¶¶ 569-589 (California Fraudulent Concealment Count)), plaintiffs devote nearly 50 paragraphs to setting forth their massive RICO count. *See id.* ¶¶ 352-401. Interlocutory review is therefore appropriate in a "big" RICO case, such as this, that would "require extensive and costly discovery involving multiple parties and third-parties in the United States and abroad." *Republic of Colombia v. Diageo N. Am. Inc.*, 619

F. Supp. 2d 7, 11 (E.D.N.Y. 2007) (granting request for interlocutory review); *see also Chavez v. Occidental Chem. Corp.*, 300 F. Supp. 3d 517, 540 (S.D.N.Y. 2018), *recon. denied*, 2018 WL 620488 (S.D.N.Y. Jan. 29, 2018) (certifying order for interlocutory appeal in part because "the Court anticipates a protracted discovery process" where the "case span[s] two continents, involving complex questions of science and causation, and implicating the activities of multiple manufacturers beyond the defendant in this forum"). And because plaintiffs have conceded that their state-law claims do not rely on the existence of the "defeat device" that underpins their RICO count, elimination of the RICO count should eliminate the need for significant international discovery. *See* Hr'g Tr. 56:23-24 (May 21, 2018), D.E. 149 ("MR. BERMAN: With respect to the state law claims, none of those allegations or omissions rely on a defeat device.").

For these reasons, RICO causation is a textbook example of a controlling issue of law that qualifies for certified appeal under 28 U.S.C. § 1292(b), as many courts have found. *See, e.g.*, *Republic of Colombia*, 619 F. Supp. 2d at 10. n.1, 11 (certifying RICO causation for interlocutory appeal and noting that "how Supreme Court and Second Circuit cases addressing the RICO proximate cause requirement should be reconciled with each other" is a "pure question" of controlling law); *Williams v. Mohawk Indus., Inc.*, Civ. No. 04-0003 (HLM), 2004 WL 7333989, at *1-2 (N.D. Ga. May 27, 2004) (agreeing with defendant that adequacy of pleading RICO causation was a controlling issue of law "because if Plaintiffs have not adequately pleaded . . . proximate causation, Plaintiffs' RICO claims necessarily fail"). Thus, the first condition for certification pursuant to 28 U.S.C. § 1292(b) is satisfied.

## II.   THERE ARE SUBSTANTIAL GROUNDS FOR A DIFFERENCE OF OPINION.

A "substantial ground for difference of opinion" exists when there is a "genuine doubt as to the correct legal standard." *Wyndham Worldwide Corp.*, 10 F. Supp. 3d at 634 (quotation marks and citation omitted). "Such doubt can stem from conflicting precedent, the absence of controlling

law on a particular issue, or novel and complex issues of statutory interpretation." *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, Civ. No. 11-00011, 2013 WL 663301, at *4 (D.N.J. Feb. 21, 2013). Contradictory precedent is not required. Rather "'[a] substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed.'" *Dartell v. Tibet Pharm., Inc.*, Civ. No. 14-3620, 2018 WL 994896, at *2 (D.N.J. Feb. 21, 2018) (quoting *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)) (alteration in original).

    **A.** There are substantial grounds for a difference of opinion over whether plaintiffs have pleaded a viable theory of RICO causation. Plaintiffs allege that the Mercedes Defendants "[m]isrepresent[ed] and omitt[ed]" the nature of Mercedes-Benz diesel vehicles on applications to U.S. regulators, Fourth Am. Compl. ¶¶ 373.d., 383.a., causing the U.S. regulators to issue "fraudulent" certificates of conformity, *id.* ¶¶ 367, 383.f.-g., 395, which in turn allowed the Mercedes Defendants to introduce noncompliant vehicles into the stream of commerce, *id.* ¶¶ 373.e., 395, where consumers purchased the noncompliant vehicles from third-party dealers at inflated prices, *id.* ¶¶ 316, 395-400. The causal chain requires plaintiffs to prove, among other things, that (1) but for the alleged fraud on regulators, the allegedly defective vehicles never would have been legal to sell in the United States, (2) third-party dealerships never would have sold plaintiffs their vehicles, and (3) plaintiffs never would have overpaid third parties for the defective vehicles. At the oral argument, plaintiffs' counsel confirmed that a necessary "first step" of the asserted scheme depends on plaintiffs proving that the defendants sought to "deceive the regulators and get the Certificates of Compliance." Hr'g Tr. 48:10-12, D.E. 149.

    No appellate courts to date have analyzed the precise theory of RICO causation that plaintiffs here (and the plaintiffs in other diesel emissions litigation) allege, and, as discussed in

greater detail below, *see infra* 13-15, the absence of controlling authority is a recognized basis for finding that "a substantial ground for difference of opinion exists as to the issue of [RICO] proximate causation." *Williams*, 2004 WL 7333989, at *2. That is especially so where "few courts have addressed proximate causation in a case such as the instant action." *Id.*

More generally, however, the U.S. Supreme Court and the Third Circuit have held that multi-step, multi-party indirect chains of causation cannot satisfy RICO's proximate causation element. *See, e.g.*, *Hemi Grp.*, 559 U.S. at 9; *Anza*, 547 U.S. at 461; *Holmes*, 503 U.S. at 268; *Callahan*, 182 F.3d at 263-65. "Proximate cause for RICO purposes," the Supreme Court has explained, "should be evaluated in light of its common-law foundations" and "requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Hemi Grp.*, 559 U.S. at 9 (quoting *Holmes*, 503 U.S. at 268). Applying that limiting principle, the Court in *Holmes* rejected a theory of RICO causation based on allegations that a defendant fraudulently caused broker-dealers to fail to meet their obligations to customers, thereby harming the customers. *Holmes*, 503 U.S. at 261. The Court held that the plaintiff's RICO claim failed because "the link is too remote between the stock manipulation alleged and the customers' harm, being purely contingent on the harm suffered by the broker-dealers." *Id.* at 271. The Court instructed lower courts to look at the directness of the injury and whether the claim could be vindicated by another, more directly injured plaintiff. *Id.* at 272-73.

Building on *Holmes*, the Supreme Court has repeatedly held that a causal chain fails to satisfy RICO proximate causation when it depends on injuries allegedly sustained as a result of a defendant's fraud on a regulator. *See Hemi Grp.*, 559 U.S. at 8 (applying *Holmes*); *Anza*, 547 U.S. at 456 (same). *Anza*, for example, involved allegations that a company failed to charge its customers the requisite state sales tax, thereby allowing the company to reduce its prices and divert

9

business from its competitors.  547 U.S. at 454-55.  The Supreme Court held that the "direct victim of this conduct" was the regulator, not the competitor, and therefore the competitor could not establish that "its own harms" were proximately caused by the fraud on the regulator.  *Id.* at 458. Moreover, the Court made clear that "[t]he requirement of a direct causal connection is especially warranted where the immediate victims of an alleged RICO violation"—here, the regulator—"can be expected to vindicate the laws by pursuing their own claims."  *Id.* at 460.

Similarly, in *Hemi Group*, the Court rejected an indirect RICO causation theory that depended on establishing an intervening fraud on a state authority.  New York City alleged that it was injured in its business or property as a result of the defendant selling cigarettes to New York City residents without reporting those sales to New York State authorities, thereby depriving the City of information needed to recoup City taxes from consumers who failed to pay those taxes at the point of sale.  *Hemi Grp.*, 547 U.S. at 6-7, 9.  It did not matter that the *State* was not injured by any loss of *City* tax revenue; the Court held that the City's "attenuated" theory of causation failed as a matter of law because "[t]he general tendency of the law" is not to go beyond the first step when evaluating proximate causation under RICO's direct relationship requirement.  *Id.* at 9, 10 (quotation marks and citation omitted; alteration in original).  The Court explained that RICO liability does not extend to situations where the defendant's fraud on a third party (the State) made it easier for a fourth party (the taxpayer) to cause harm to the plaintiff.  *Id.* at 11 (noting that "[w]e have never before stretched the causal chain of a RICO violation so far . . .").

The Third Circuit also has applied this principle in RICO cases to require a direct relationship between the defendants' actions and the plaintiffs' injuries.  In *Callahan*, the Third Circuit rejected a RICO claim based upon allegations that the defendants fraudulently obtained business licenses from a state regulatory body, thereby harming the defendant's competitors.  182

F.3d at 262, 264. The court noted that while the regulatory body had not suffered economic harm, and therefore could not bring its own civil RICO claim, it could bring charges under other statutes and was therefore better situated than the plaintiffs to vindicate the law's "general interest in deterring injurious conduct." *Id*. at 267 (quotation marks and citation omitted); *accord Hemi Grp.*, 559 U.S. at 12 (declining to decide "whether the State could bring a RICO action for any lost tax revenue").

To be sure, the Court in *Hemi Group* was not unanimous in its judgment, and three dissenting Justices would have held that the City had adequately pleaded RICO proximate causation under a "foreseeability" standard. *See* 559 U.S. at 996-97 (Breyer, J., dissenting); *see also id.* at 991 (majority op.) (noting same). But the fact that three Justices dissented from the Court's holding demonstrates that reasonable jurists can and do frequently disagree on issues concerning the sufficiency of pleading RICO proximate causation. This is, therefore, a paradigm example of an issue on which "reasonable jurists might disagree," *Dartell*, 2018 WL 994896, at *2 (quotation marks and citation omitted), and one on which this Court should find substantial grounds for difference of opinion.

Similarly, this is not an instance of "[m]ere disagreement with the district court's ruling." *Wyndham Worldwide Corp.*, 10 F. Supp. 3d at 634 (quotation marks and citation omitted). Rather, this case arises in a broader context of evolving litigation, and the RICO count raises a legal issue (causation) on which courts have disagreed. The Mercedes Defendants respectfully submit that the appellate decisions discussed above should control the outcome here. Indeed, the regulatory bodies that are the direct victims of the alleged "fraud"—the EPA and CARB—are investigating the allegations to determine whether to vindicate the same claims identified in the Fourth Amended Complaint. *See, e.g.*, Hr'g Tr. 26-27, D.E. 149; *see also* Mem. in Supp. of Mot. to Dismiss 1, D.E.

11

117-1.  This Court distinguished the appellate precedents and instead followed two recent district court decisions entered in diesel emissions litigation pending in other circuits.  *See* Opinion 24 (citing *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig.* ("*FCA*"), 295 F. Supp. 3d 927, 967 (N.D. Cal. 2018), and *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2018 WL 4777134, at *15 (N.D. Cal. Oct. 3, 2018)).  The Mercedes Defendants believe that both of those decisions are in significant tension with Supreme Court precedent, and neither has yet been subject to appellate scrutiny.  Nor are the district courts that rendered them bound by Third Circuit precedent on RICO causation.  *See Malabarba v. Chi. Tribune Co.*, 149 F.3d 690, 697 (7th Cir. 1998) (noting that "the persuasiveness of the reasoning underlying [district court] decisions is at its lowest when, as here, it comes from courts that are not bound by the precedents of this circuit").  Accordingly, there is (at a minimum) room for "genuine doubt" as to whether those district court decisions comport with controlling Supreme Court and Third Circuit authority, and genuine doubt is a recognized basis for finding a substantial ground for difference of opinion.  *See Wyndham Worldwide Corp.*, 10 F. Supp. 3d at 634 (quotation marks and citation omitted); *see also Santomenno v. John Hancock Life Ins. Co. (U.S.A)*, Civ. No. 10-01655 (WJM), 2013 WL 3864395, at *8 (D.N.J. July 24, 2013) (noting that when there is controlling Third Circuit precedent, this "Court will follow the Third Circuit, rather than relying on the out-of-circuit district court decisions"), *aff'd sub nom. Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284 (3d Cir. 2014).[1]

---

[1]  Indeed, the district court in *FCA* apparently harbored its own doubts about RICO proximate causation.  After that court issued its opinion denying in part the motions to dismiss the first amended complaint, *see FCA*, 295 F. Supp. 3d at 941, the court held a hearing on new motions to dismiss the second amended complaint.  In that hearing, the court again questioned "whether there

**B.**  If the Supreme Court and Third Circuit precedent were deemed distinguishable because they do not involve substantially similar allegations, then there is no controlling authority because there is no appellate-level precedent addressing RICO causation in the context of alleged Clean Air Act violations, much less in the present diesel emissions litigation.  Any absence of controlling authority independently constitutes a "substantial ground for difference of opinion."  28 U.S.C. § 1292(b).

This Court has recognized that "when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent."  *Dartell*, 2018 WL 994896, at *2 (quotation marks and citation omitted); *accord Reese*, 643 F.3d at 688. As noted above, RICO causation is a hotly litigated issue on which courts and jurists frequently disagree.  The Supreme Court has weighed in on RICO proximate causation no fewer than four times, reversing the courts of appeals' judgments in three of those cases.  *See Hemi Grp.*, 559 U.S. at 5; *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008); *Anza*, 547 U.S. at 460-61; *Holmes*, 503 U.S. at 264, 271.  RICO causation also is the basis for numerous certified appeals under section 1292(b).  *See, e.g.*, *Republic of Colombia*, 619 F. Supp. 2d at 11 ("[D]etermining whether the plaintiffs had adequately pled the proximate cause element of their RICO claim also presented close and difficult issues about which there is a substantial ground for difference of opinion."); *Williams*, 2004 WL 7333989, at *2 (concluding that "a substantial ground for

---

is proximate cause when you have a regulatory agency as the purported victim."  *See* Defs.' Notice of Suppl. Auth. 2 (quotation marks and citation omitted), No. 3:17-md-02777 (N.D. Cal. Aug. 21, 2018), D.E. 367.  The court subsequently ordered supplemental briefing to address "the interplay between civil RICO claims and federal regulatory regimes."  *See* Order re Suppl. Briefing, No. 3:17-md-02777 (N.D. Cal. Aug. 22, 2018), D.E. 368.  The issue remained pending when the parties settled the case.

difference of opinion exists as to the issue of [RICO] proximate causation" because "few courts have addressed proximate causation in a case such as the instant action").  Legal scholars, too, have recognized the uncertainty that can surround complex theories of RICO causation.[2]

This Court has already acknowledged that plaintiffs' aggressive theory of RICO causation merits close scrutiny.  At the oral argument on the motions to dismiss, this Court identified RICO causation as a pivotal issue in this case:

> One of the issues in my head is whether or not fraud on the regulators, whether that would be sufficient or not for RICO causation, and if what plaintiff is alleging, whether the fraud was on the consumer, then why would there not be then an issue of reliance or a reliance problem in light of Hemi Group, the Supreme Court case, dealing with the issue of whether or not we go beyond the first step of the causation chain, so I would like to hear argument on that.

Hr'g Tr. 7:5-12, D.E. 149.  Plaintiffs' counsel subsequently *admitted* that their RICO count rested on the same fraud-on-the-regulators theory that troubled this Court at the outset of the hearing. *See id.* at 48:8-12 (admitting that the "first step" of the RICO scheme "was to deceive the regulators and get the Certificates of Compliance"), 48:16-18 ("THE COURT: But without the first one, the second one doesn't happen.  MR. BERMAN: That's correct . . . ."); 50:8-10 ("THE COURT: . . . [L]ying to the regulators puts the car on the market.  It doesn't get the consumer to buy the car, right, and that is I think where the argument is.").  *See id.* at 46:13-50:21.  The time devoted to this issue at the oral argument clearly supports a finding that there are substantial grounds for a difference of opinion on RICO causation.

---

[2]  *See, e.g.*, John K. Cornwell, *RICO Run Amok*, 71 SMU L. REV. 1017, 1035 (2018) ("In light of this uncertain terrain, it should come as no surprise that lower courts have struggled to understand how best to articulate [RICO] proximate cause requirements"); *id.* at 1031 ("[T]he ambiguity surrounding civil RICO's causation requirements contributes to the uncertainty surrounding the statute's breadth . . . ."); Randy D. Gordon, *Making Meaning: Towards A Narrative Theory of Statutory Interpretation and Judicial Justification*, 12 OHIO ST. BUS. L.J. 1, 25 (2017) ("The [Supreme] Court could not, of course, articulate a one-size-fits-all test for determining [RICO] proximate cause, so open questions remained (and still remain).").

Thus, at a minimum, RICO causation here should be viewed as a "difficult and pivotal question[] of law *not settled by controlling authority*."  *Bedoya v. Am. Eagle Express*, Civ. No. 14-2811 (ES)(JAD), 2017 WL 4330351, at *2 (D.N.J. Sept. 29, 2017) (quotation marks citation omitted; emphasis in original), *op. after grant of certification*, *Bedoya v. Am. Eagle Express Inc.*, 914 F.3d 812 (3d Cir. 2019).  A certified interlocutory appeal therefore "would help facilitate the development of law."  *Dartell*, 2018 WL 994896, at *5; *see also Fuld*, 2009 WL 2905432, at *3 (permitting request for interlocutory review as to "complex" issue when the Third Circuit had not addressed the specific question and "only one other Circuit has opined on the issue").  For this independent reason, the second condition for certification pursuant to 28 U.S.C. § 1292(b) is satisfied.

## III.   AN IMMEDIATE APPEAL WOULD MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THIS CASE.

The third requirement under section 1292(b)—that an immediate appeal "may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b)—is "closely tied to the requirement that the order involve a controlling question of law."  *Pub. Interest Research Grp. of N.J., Inc. v. Hercules, Inc.*, 830 F. Supp. 1549, 1557 (D.N.J. 1993) (quotation marks and citation omitted).  Several factors are relevant in assessing whether an interlocutory appeal would advance the termination of the case, including whether "the interlocutory appeal eliminates: (1) the need for trial; (2) complex issues that would complicate trial; or (3) issues that would make discovery more costly or burdensome."  *Wyndham Worldwide Corp.*, 10 F. Supp. 3d at 635 (quotation marks and citation omitted).  "Certification is more likely to materially advance the litigation where the appeal occurs early in the litigation, before extensive discovery has taken place and a trial date has been set."  *N.J. Prot. & Advocacy, Inc.*, 2008 WL 4692345, at *3.

Here, a reversal of this Court's holding on RICO causation would result in dismissal of the RICO count, which "will save time and expense, and will materially advance the ultimate resolution of this litigation." *Wyndham Worldwide Corp.*, 10 F. Supp. 3d at 635 (quotation marks and citation omitted). The RICO count rests on the supposed existence of a so-called "Emissions Fraud Enterprise" between all of the named defendants, including the overseas defendants. *See* Fourth Am. Compl. ¶ 357. Plaintiffs allege no fewer than twelve ways by which the Mercedes Defendants supposedly controlled and participated in this enterprise, *id.* ¶ 373, and fifteen ways by which the defendants supposedly used the mails and wires in furtherance of this enterprise, *id.* ¶ 383. The breadth of plaintiffs' RICO allegations undoubtedly will lead to significant discovery requests and litigation if the RICO claim is allowed to proceed. Moreover, a substantial amount of that broad discovery would burden non-parties to this litigation, including the government regulators themselves.

By contrast, a reversal of this Court's holding on RICO causation would mean that "any dispositive motions or a trial would only focus on" plaintiffs' remaining state law claims. *See Wyndham Worldwide Corp.*, 10 F. Supp. 3d at 635 (certifying an issue for interlocutory appeal even though defendant conceded that the appeal would not eliminate the need for trial). Moreover, this case is still in the early phases of litigation: Preliminary "discovery is ongoing, the parties still have an opportunity to file dispositive motions, and trial is not scheduled." *Id.* at 636 (quotation marks and citation omitted). Eliminating the RICO count would advance the termination of this case by eliminating "complex issues that would complicate trial" and "issues that would make discovery more costly or burdensome." *Id.* at 635 (quotation marks and citation omitted).

Other factors also illustrate why an appeal at this time would materially advance the termination of the litigation, and thus weigh in favor of certifying the Order for interlocutory

review.  "[O]ne of the chief concerns of Section 1292 is the efficiency of the federal court system, and efficiency is of particular concern in large complex cases."  *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2003 WL 22953644, at *4 (S.D.N.Y. Dec. 16, 2003).  Here, interlocutory appellate review would serve these efficiency concerns by resolving whether the RICO count can proceed before the parties engage in costly, complex discovery.  An interlocutory appeal would prevent the parties from litigating these issues to a final judgment only to have the appellate courts subsequently determine that the RICO count never should have been allowed to proceed.  *See Leite v. Crane Co.*, Civ. No. 11-00636 (JMS) (RLP), 2012 WL 1982535, at *7 (D. Haw. May 31, 2012).  "Such result would clearly not serve the interests of justice, resulting in a waste of both the court's and the parties' time and expense, an outcome that will only be exacerbated by the numerous cases presenting this same issue."  *Id.*

An interlocutory appeal is particularly appropriate where, as here, resolution of the controlling legal issue may materially advance the termination of *other* pending cases.[3]  As this Court has recognized, plaintiffs are advancing similar RICO causation theories against other

---

[3] *See, e.g., Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990) ("[T]he impact that an appeal will have on other cases is a factor that we may take into account in deciding whether to accept an appeal that has been properly certified by the district court."); *Triax Co. v. United States*, 20 Cl. Ct. 507, 514 (1990) (finding that interlocutory appeal would materially advance the litigation because appellate review would have "precedential value in a large number of cases"), *abrogation recognized on other grounds in Reliance Ins. Co. v. United States*, 23 Cl. Ct. 108 (1991); *Heaton v. Soc. Fin., Inc.*, No. 14-cv-05191-TEH, 2016 WL 232433, at *6 (N.D. Cal. Jan. 20, 2016) (section 1292(b) is most appropriate where appellate "review and resolution of an issue would clarify the issue for not only the instant case, but also other cases already pending before the Court or in other courts"); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 399 F. Supp. 2d 320, 324 (S.D.N.Y. 2005) (noting that courts may consider whether the controlling issue would have precedential value for other cases); *Krangel v. Crown*, 791 F. Supp. 1436, 1449 (S.D. Cal. 1992) ("Certification for appeal may also materially advance the conclusion of other cases involving this same legal issue.").

automakers in diesel emissions litigation around the country.  *See* Opinion 24 (citing *FCA*, 295 F. Supp. 3d at 967, and *Volkswagen*, 2018 WL 4777134, at *15).[4]  In several of these cases, the district courts have not yet ruled on the sufficiency of the plaintiffs' RICO claims, *see Gamboa*, No. 2:18-cv-10106 (E.D. Mich.); *Rickman*, No. 2:18-cv-4363 (D.N.J.); *Bledsoe*, No. 4:16-cv-14024 (E.D. Mich.), and in *none* of these cases has a court of appeals had an opportunity to scrutinize the plaintiffs' theories of RICO causation.  The RICO causation question is therefore an "important question of national significance that should be resolved by [an appellate court] sooner rather than later."  *See 290 at 71, L.L.C. v. JPMorgan Chase Bank, Nat'l Ass'n*, No. A-09-CA-576-SS, 2010 WL 11597154, at *4 (W.D. Tex. Feb. 1, 2010) (quotation marks and citation omitted) (certifying an issue for interlocutory appeal that was "of national importance with ramifications well beyond [the] lawsuit, as there are numerous cases pending . . . that present the same controlling questions") (quotation marks and citation omitted).

Finally, the Mercedes Defendants have filed an appeal as of right from this Court's Order denying their motion to compel arbitration.  *See* D.E. 174; 9 U.S.C. § 16(a)(1)(B).  That appeal will proceed in the Third Circuit regardless whether this Court certifies the Order for immediate appeal as to the ruling on RICO causation.  Because there will be an interlocutory appeal in any event, the general policy disfavoring piecemeal appellate review actually counsels *in favor* of certifying the RICO issue for consolidated review with the arbitration issue.  *See DRFP, L.L.C. v. Republica Bolivariana de Venezuela*, Civ. No. 2:04-793, 2009 WL 948764, at *2-3 (S.D. Ohio

---

[4]  *See also Gamboa v. Ford Motor Co.*, No. 2:18-cv-10106 (E.D. Mich.); *Rickman v. BMW of N. America, LLC*, No. 2:18-cv-4363 (D.N.J.); *Bledsoe v. FCA US LLC*, No. 4:16-cv-14024 (E.D. Mich.); *Fenner v. Gen. Motors, LLC*, No. 1:17-cv-11661 (E.D. Mich.); *Counts v. Gen. Motors, LLC*, No. 1:16-cv-12541 (E.D. Mich.).

Apr. 1, 2009) (certifying order for interlocutory appeal in part because there would be an appeal as of right in any event).

Accordingly, the third condition for certification pursuant to 28 U.S.C. § 1292(b) is satisfied.

*     *     *

A RICO count can alter the course of litigation in ways ordinary claims cannot. Its requirement of pleading and proving an "association-in-fact" enterprise and a "pattern of racketeering activity" can make discovery complex and expensive, and its threat of treble damages can raise the stakes for litigation and settlement discussions. For these reasons, it is especially important for courts and litigants to resolve uncertainties about the sufficiency of RICO claims early in the litigation, before time is invested, litigation expenses accrue, and positions harden. This Court should take this opportunity to certify the Order for immediate appeal as to the RICO causation issue, and thereby provide the appellate courts with a much-needed opportunity to examine plaintiffs' fraud-on-the-regulators theory in the context of the diesel emissions litigation.

<strong>CONCLUSION</strong>

For the foregoing reasons, the Mercedes Defendants respectfully request that this Court grant the instant motion and certify its February 1, 2019 Order denying the Mercedes Defendants' Motion to Dismiss the Fourth Consolidated and Amended Complaint and to Compel Arbitration for interlocutory review pursuant to 28 U.S.C. § 1292(b) to determine the sufficiency of the plaintiffs' theory of RICO causation.

19

Dated:  February 28, 2019          Respectfully Submitted,

GIBSON, DUNN & CRUTCHER LLP

By:  s/      Lucas C. Townsend
          Lucas C. Townsend

| | |
|---|---|
| Troy M. Yoshino<br>   *admitted pro hac vice*<br>Matthew J. Kemner<br>   *admitted pro hac vice*<br>Eric J. Knapp<br>   *admitted pro hac vice*<br>Squire Patton Boggs (US) LLP<br>275 Battery Street, Suite 2600<br>San Francisco, CA 94111<br>Tel: (415) 743-2441<br>Fax: (415) 989-0932 | Daniel W. Nelson<br>   *admitted pro hac vice*<br>Geoffrey M. Sigler<br>   *admitted pro hac vice*<br>Lucas C. Townsend<br>Chantale Fiebig<br>   *admitted pro hac vice*<br>Gibson, Dunn & Crutcher LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C. 20036-5306<br>Tel: (202) 887-3731<br>Fax: (202) 530-4254 |

*Attorneys for Defendants Mercedes-Benz USA, LLC, and Daimler AG*