# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE MERCEDES-BENZ EMISSIONS LITIGATION | Civil Action No. 16-881 (SDW) (JAD)<br><br>Motion Date: June 17, 2019<br><br>**ELECTRONICALLY FILED**<br><br>**ORAL ARGUMENT REQUESTED** |

---

## RESPONSE OF CLEARY GOTTLIEB STEEN & HAMILTON LLP TO PLAINTIFFS' REQUEST FOR SERVICE UNDER RULE 4(F)(3)

---

CLEARY GOTTLIEB STEEN & HAMILTON LLP

JEFFREY A. ROSENTHAL
CARMINE D. BOCCUZZI, JR.
One Liberty Plaza
New York, NY 10006
(212) 225-2000

MATTHEW D. SLATER
2112 Pennsylvania Ave., N.W.
Washington, D.C. 20037
(202) 974-1500

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT ....................................................................................................... 4

   I.   BECAUSE PLAINTIFFS DID NOT EXERCISE "DUE DILIGENCE" IN ATTEMPTING HAGUE SERVICE UNDER RULE 4(F)(1), ALTERNATIVE SERVICE UNDER RULE 4(F)(3) IS NOT WARRANTED. ............................. 4

   II.  PLAINTIFFS' PROPOSED FORMS OF ALTERNATIVE SERVICE ARE UNJUSTIFIED AND IMPERMISSIBLE. ........................................................12

      A.  Plaintiffs' proposed service on Cleary Gottlieb in the United States would be untimely under Rule 4(m). ........................................................12

      B.  Plaintiffs' alternative request for service by e-mail in Germany is impermissible because it is prohibited by the Hague Convention. ..................17

CONCLUSION ..................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Agha v. Jacobs*,
   No. C 07-1800 RS, 2008 WL 2051061 (N.D. Cal. May 13, 2008) ...................18

*Allstate Ins. Co. v. Hewlett-Packard Co.*,
   No. 1:07-cv-799, 2016 WL 613571 (M.D. Pa. Feb. 16, 2016) .........................16

*Blumedia Inc. v. Sordid Ones BV*,
   No. 10-cv-01158-MSK-KLM, 2011 WL 42296 (D. Colo. Jan. 6, 2011) ..........11

*Bravetti v. Liu*,
   No. 3:12-cv-7492-MAS-TJB, 2013 WL 6501740 (D.N.J. Dec. 11, 2013)..........9

*C & F Sys., LLC v. Limpimax, S.A.*,
   No. 1:09-cv-858, 2010 WL 65200 (W.D. Mich. 2010)......................................11

*Celgene Corp. v. Blanche Ltd.*,
   Civil Action No. 16-501 (SDW) (LDW), 2017 WL 1282200 (D.N.J. Mar.
   10, 2018).........................................................................................................20

*Celgene Corporation v. Gupta*,
   No. 2:17-cv-5308-KM-JBC, 2018 WL 4027032 (D.N.J. Aug. 23, 2018) .........12

*Cephalon Inc. v. Sun Pharm. Indus., Inc.*,
   No. 11-5474, 2011 WL 6130416 (D.N.J. Dec. 7, 2011) ..........................8, 10-11

*Creative Products Group v. Decolee Co.*,
   No. 06-CV-02305 (C.D. Cal. June 30, 2006) (**Exhibit 2**)...............................18

*Devi v. Rajapaska*,
   No. 11 Civ. 6634(NRB), 2012 WL 309605 (S.D.N.Y. Jan. 21, 2012).............11

*Douglas v. Nesbit*,
   No. 1:16-cv-01836, 2017 WL 1021680 (M.D. Pa. Mar. 16, 2017)...................14

*Eslick v. VW, et al*,
   Case No. 3:15-md-02672-CRB, ECF No. 1418 (N.D. Cal. April 14,
   2016) .................................................................................................8

*Garlanger v. Verbeke*,
   223 F. Supp. 2d 596 (D.N.J. 2002)..................................................16

*Gish v. Attorney General United States*,
   604 F. App'x 119 (3d Cir. 2015).....................................................13

*In re Bulk (Extruded) Graphite Prods. Antitrust Litig.*,
   No. Civ. 02-6030(WHW), 2006 WL 1084093 (D.N.J. April 24, 2006)..............4

*In re Takata Airbag Prods. Liab. Litig.*,
   No. 15-MDL-02599, 2017 WL 8809362 (S.D. Fla. Mar. 11, 2017) ..................9

*Kornea v. J.S.D. Mgmt.*,
   336 F. Supp. 3d 505 (E.D. Pa. 2018)................................................13

*Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*,
   265 F.R.D. 106 (S.D.N.Y. 2010)......................................................11

*Marlabs Inc. v. Jakher*,
   No. 07-cv-04074 (DMC)(MF), 2010 WL 1644041 (D.N.J. April 22,
   2010) .................................................................................................9

*Mason v. Therics, Inc.*,
   No. 08-2404 (RBK), 2009 WL 44743 (D.N.J. Jan. 6, 2009)...........................14

*MCI Telecomms. Corp. v. Teleconcepts, Inc.*,
   71 F.3d 1086 (3d Cir. 1995)..................................................... 14-15

*Rice v. Electrolux Home Prods.*,
   No. 4:15-CV-00371, 2018 WL 4964076 (M.D. Pa. Oct. 15, 2018) .................17

*Rollolazo v. BMW of North America, LLC*,
   8:16-cv-00966-BRO-SS (C.D. Cal.) ................................................5

*Saavedra v. Volkswagen*,
  Case No. 3:15-md-02672, ECF No. 37 (N.D. Cal. Aug. 30, 2017) ....................8

*SEC v. China Ne. Petroleum Holdings Ltd.*,
  27 F. Supp. 3d 379 (S.D.N.Y. 2014) .............................................................10

*SEC v. Dubovoy*,
  No. 15-6076 (MCA)(MAH), 2016 WL 7217607 (D.N.J. Dec. 13, 2016) ....... 8-9

*Shenouda v. Mehanna*,
  203 F.R.D. 166 (D.N.J. 2001) .......................................................................17

*South Carolina v. Hitachi Displays, Ltd.*,
  No. 3:13-cv-00899-JFA, 2013 WL 4499149 (D.S.C. Aug. 20, 2013)...............11

*The Knit With v. Knitting Fever, Inc.*,
  Civil Action Nos. 08-4221, 08-4775, 2010 WL 2788203 (E.D. Pa. 2010)........15

*Trilliant Funding, Inc. v. Marengere (In re Bozel S.A.)*,
  No. 1:16-cv-3739, 2017 WL 3175606 (S.D.N.Y. July 25, 2017).....................15

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
  486 U.S. 694 (1988)................................................................................4, 20

*Water Splash, Inc. v. Menon*,
  137 S. Ct. 1504 (2017).......................................................................17-18, 20

**Other Authorities**

Fed. R. Civ. P. Rule 4 ..............................................................................passim

Fed. R. Civ. P. 6(b)(2).......................................................................................14

*Hague Convention, Germany - Central Authority & practical information*,
  HCCH, https://www.hcch.net/en/states/authorities/details3/?aid=257 (last
  visited June 4, 2019) ......................................................................................17

*Hague Service Convention*, HCCH, https://assets.hcch.net/docs/6365f76b-
  22b3-4bac-82ea-395bf75b2254.pdf (last updated Feb. 2019).........................17

3

Oberlandesgericht [OLG] [Higher Regional Court] Dec. 3, 2009, NZG
　　2010, 1214-1317 (Ger.).......................................................................7

Private International Law, Practical Handbook on the Operation of the
　　Service Convention 54 (3d ed. 2003)...........................................19

Private International Law, Practical Handbook on the Operation of the
　　Service Convention 177 (4th ed. 2016) ........................................19

Statute of the Hague Conference on Private International Law arts. 1, 4-6...........18

## PRELIMINARY STATEMENT

Because Plaintiffs have requested that they be permitted to serve Robert Bosch GmbH ("Bosch GmbH") by serving Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb"), we respectfully submit this response to bring to the Court's attention reasons why such service is not proper. While we represent in this litigation Robert Bosch LLC ("Bosch LLC"), an indirect U.S. subsidiary of Bosch GmbH, we have no mandate to receive service on behalf of Bosch GmbH. For the avoidance of doubt, this response is made by Cleary Gottlieb and not by Bosch LLC or Bosch GmbH.

Plaintiffs first named Bosch GmbH as a Defendant in this lawsuit nearly two and a half years ago on December 16, 2016. *See* Second Consolidated and Amended Class Action Complaint and Demand for Jury Trial (Dec. 16, 2016), ECF No. 60 ("Second Amended Complaint"). Bosch GmbH is a German company with its headquarters near Stuttgart, Germany. As a matter of U.S. law, plaintiffs are obligated to serve a foreign defendant by means provided by an applicable international agreement, *see* Fed. R. Civ. P. 4(f)(1), here the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention" or "Hague Convention").[1]

---

[1] The Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361.

Three amended complaints and more than two years later, Plaintiffs have only now informed the parties and the Court of what was a half-baked attempt to employ Hague service in early 2017, which Plaintiffs admit they cut short when they chose not to respond at all to the relevant German authority's request for further information on May 16, 2017, i.e., more than two years ago.  Plaintiffs now request that the Court reward their inadequate service efforts by allowing them the extraordinary relief of evading the requirements of the Hague Service Convention by delivery to Cleary Gottlieb or via email, *see* Letter (May 24, 2019), ECF No. 214 ("Letter Brief").  That request is not well supported and should be denied.

*First*, Plaintiffs did not exercise due diligence in seeking service on Bosch GmbH through the Hague Convention under Federal Rule of Civil Procedure 4(f)(1), which courts within the Third Circuit and this District have made clear is a prerequisite for Court intervention under Rule 4(f)(3).  Plaintiffs could easily have supplied the additional information the German authority requested in May 2017, and doing so may have resulted in proper Hague service of Bosch GmbH, as shown by the fact that such service has been successful in other diesel emissions cases against Bosch GmbH.  Rule 4(f)(3) provides for alternative service based on necessity, not expediency, and Plaintiffs have not met their burden.

*Second*, Plaintiffs' proposed forms of alternative service are unjustified and impermissible.  To the extent that they seek to serve Cleary Gottlieb in the United

States, such service would be domestic.  Rule 4(m) requires that domestic service be accomplished within 90 days.  Plaintiffs missed that deadline long ago and have not shown the good cause required to avoid it.  Plaintiffs' alternative request for service via e-mail to Germany is impermissible because it is prohibited by the Hague Convention itself.

Although Plaintiffs' request was filed as a letter, on its face it appears to be a motion for relief in the form of a court order, and we therefore submit this response consistent with Local Rule 7.1 and in the time provided by the Court's Order of May 28, 2019, ECF No. 215.  Further, because Plaintiffs' letter was addressed to both the Court and Judge Cavanaugh in his capacity as Special Master, we note that the Court's appointment of Judge Cavanaugh was exclusively to "oversee the schedule for completion of discovery and all discovery disputes and motions related thereto," and Judge Cavanaugh is accordingly empowered to "address" only "discover[y] issues" that have arisen or may arise in the future between the parties.  Order at 7 (April 11, 2019), ECF No. 195.  Plaintiffs' request for an order pursuant to Rule 4(f)(3) is not a discovery dispute.  It is not even a motion between parties, but rather concerns the proper manner (if any) of bringing before the Court someone who has never been called upon to appear.  This request is therefore outside the scope of Judge Cavanaugh's appointment and should be decided by the Court.

## ARGUMENT

I. **BECAUSE PLAINTIFFS DID NOT EXERCISE "DUE DILIGENCE" IN ATTEMPTING HAGUE SERVICE UNDER RULE 4(F)(1), ALTERNATIVE SERVICE UNDER RULE 4(F)(3) IS NOT WARRANTED.**

Bosch GmbH is a German company, and Germany is a signatory to the Hague Convention. *See In re Bulk (Extruded) Graphite Prods. Antitrust Litig.*, No. Civ. 02-6030(WHW), 2006 WL 1084093, at *2 (D.N.J. April 24, 2006). Thus, service upon Bosch GmbH in Germany must be effected in accordance with the Hague Convention, which is mandatory for service abroad in a signatory country. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988).

Plaintiffs submit that they attempted service via the Hague Convention by sending a request for service of a complaint on March 20, 2017,[2] to the relevant German Central Authority, the District Court of Freiburg. Letter Brief at 1. Plaintiffs assert that the Freiburg Court "refused to serve Bosch GmbH" in May 2017. Letter Brief at 1. That assertion is wrong. The Freiburg Court's May 2017 letter is plain on its face that it did not constitute a refusal of service. Rather, it

---

[2] Plaintiffs do not state which version of the complaint they attempted to serve on Bosch GmbH through the Hague Convention. However, we assume that the Plaintiffs attempted to serve the Third Amended Complaint, which was the operative complaint as of the date of their request to the German Central Authority. *See* Third Consolidated and Amended Class Action Complaint and Demand for Jury Trial (March 3, 2017), ECF No. 81 ("Third Amended Complaint"). Plaintiffs do not allege that they attempted to serve any subsequent amended complaints.

4

simply noted that Plaintiffs' request was insufficient for the Freiburg Court to
understand the nature of Plaintiffs' claims, advised Plaintiffs to "have the request
completed taking into account my statements above," and "kindly ask[ed] that
[Plaintiffs] send the supplementing documents . . . to [the Central Authority]."
Letter re. Legal aid request in civil matters, dated May 16, 2017, ECF No. 214-1
("Freiburg Court's 2017 Letter").  In other words, the Freiburg Court's 2017 Letter
advised Plaintiffs that their application was procedurally incomplete and invited
Plaintiffs to cure that defect.  This is procedurally akin to the Freiburg Court
informing Plaintiffs that they had provided the wrong address or failed to submit
all of the required information on a form.  The Freiburg Court's request for
clarification and supplemental information is in stark contrast to the letter from the
Munich Court in the *In re Takata* matter on which Plaintiffs heavily rely, which
stated unequivocally that the plaintiffs' Hague service request was "denied," and
that service of the complaint "must [ ] be refused due to the reasons in Article 13 of
the Hague Service Convention."  Letter from Higher Regional Court of Munich,
dated October 19, 2016, ECF No. 214-2 ("*In re Takata* Letter").[3]

---

[3] Plaintiffs' citation to *Rollolazo v. BMW of North America, LLC*, 8:16-cv-00966-
BRO-SS (C.D. Cal.), is similarly inapposite.  *See* Letter Brief at 2 (citing Letter
from Higher Regional Court of Munich, dated December 7, 2016, ECF No. 214-3)
("*Rollolazo* Letter").  Like the *In re Takata* Letter, the *Rollolazo* Letter stated that
the Hague Service request was "rejected" and that "it is not possible to settle this

Plaintiffs suggest that "[i]t is not clear what the German courts are referring to as 'split-recovery' statutes" and that in this case it is "far from clear what it would take to satisfy the unwritten rules the German courts have devised." Letter Brief at 2.[4] Plaintiffs are wrong. A quick review of German court decisions demonstrates that German courts consider regulatory claims by or for governmental authorities to be administrative or criminal in nature, and not civil or commercial matters subject to Hague service, and on that basis will not deploy the Hague procedures for service of such claims. This means that if private parties bring claims that *primarily* seek relief for government authorities, it may be improper for the German court to serve the complaint. That is the context for the Freiburg Court's question to Plaintiffs about "split-recovery."

In a 2009 decision of the Higher Regional Court of Frankfurt, for example, a German appellate court considered whether Hague service was proper for a U.S.

_____

case within the framework of The Hague Treaty on Service of Process." *Rollolazo* Letter at 1-2.

[4] Notably, Plaintiffs have presented their request for clarification of the Freiburg Court's 2017 letter to this Court, rather than having raise these same issues with the German Authority itself at any time in the intervening two years since the May 2017 Letter. When asked about this decision, Plaintiffs simply responded that they had "not had further communications with the Freiburg court, nor do we think it is incumbent on us to do so." Email from J. Scullion to M. Slater, May 20, 2019, ECF No. 214-5.

False Claims Act lawsuit filed by private plaintiffs in the United States on behalf of the U.S. government.  *See* Oberlandesgericht [OLG] [Higher Regional Court] Dec. 3, 2009, NZG 2010, 1214-1317 (Ger.) (**Exhibit 1**).  Plaintiffs filing under the False Claims Act receive a small portion (typically about 15–25%) of any recovered damages; the remainder of any recovery reverts to the United States.  In that case, the Higher Regional Court of Frankfurt concluded that Hague service was improper because a public entity – the U.S. government – rather than private parties would *primarily* benefit from any eventual recovery.  The Frankfurt Court explained that there is no prohibition on the use of Hague service for private claims seeking punitive damages.  But in the particular case at hand it was "dispositive" that "[t]he 'proceeds [of the claim],' as is shown in the served complaints, are only in small part intended for the [plaintiffs]."  It was on that basis that "[t]he *overall predominant public-law character, i.e. criminal character of the complaint*, does not allow for a categorization as a civil or commercial matter," and rejected Hague service accordingly.  *Id.* at ¶¶ 16-19 (citations omitted) (emphasis added).

In the present case, in contrast, it is not clear whether any of the claims that were included in the complaint that Plaintiffs sought to serve were subject to "split-recovery" with a state, and Plaintiffs have not suggested that they were.  But under any reading of the complaint by a U.S. lawyer, the vast majority, if not the entirety, of any relief sought would go to private parties.  Plaintiffs cannot show and have

not shown that German authorities will refuse Hague service in such circumstances.  And in fact, in other U.S. diesel emissions cases involving complaints similar to Plaintiffs' here, other plaintiffs have successfully served Bosch GmbH in Germany through the Hague Convention process.  *E.g., Saavedra v. Volkswagen*, Case No. 3:15-md-02672, ECF No. 37 (N.D. Cal. Aug. 30, 2017); *Eslick v. VW, et al*, Case No. 3:15-md-02672-CRB, ECF No. 1418 (N.D. Cal. April 14, 2016).  Thus, there is every reason to believe that if Plaintiffs had not chosen to outright ignore the Freiburg Court's request for clarification, and instead had explained that recovery was sought exclusively or predominantly for private parties, the Freiburg Court would have effectuated Hague service.

Contrary to the out-of-circuit case law on which Plaintiffs rely for the proposition that "[t]here is no requirement to 'exhaust' service under the HSC before seeking to serve under Rule 4(f)(3)," Letter Brief at 3 (citing *In re Takata Airbag Prods. Liab. Litig.*, No. 15-MDL-02599, 2017 WL 8809362 (S.D. Fla. Mar. 11, 2017) (Report & Recommendation)), case law of ***this*** district requires that plaintiffs first attempt service under Rule 4(f)(1) with "due diligence" before seeking alternative service under Rule 4(f)(3).  *See Cephalon Inc. v. Sun Pharm. Indus., Inc.*, No. 11-5474, 2011 WL 6130416, at *2, 5-6 (D.N.J. Dec. 7, 2011).[5]  In

---

[5] Plaintiffs' citation to *SEC v. Dubovoy*, No. 15-6076 (MCA)(MAH), 2016 WL 7217607 (D.N.J. Dec. 13, 2016) is inapposite.  *See* Letter Brief at 3 n.4.  In that

*Cephalon*, the Court explained that Rule 4(f) "requires that a party first use 'any internationally agreed means of service that is reasonably calculated to give notice.'" *Id.* Only when there is no internationally agreed means may a party effect service by the alternatives in subsections (f)(2) and (f)(3). *Id.* The Court concluded that because plaintiffs had not promptly sought to initiate Hague service nor demonstrated diligent efforts to do so, it would not authorize service under Rule 4(f)(3). *Id. See also Marlabs Inc. v. Jakher*, No. 07-cv-04074 (DMC)(MF), 2010 WL 1644041, at *2-3 (D.N.J. April 22, 2010) (authorizing alternative service under Rule 4(f)(3) only after plaintiffs made "*numerous attempts* to locate and serve Defendant" in accordance with the Hague convention, which they initiated two months after filing the complaint) (emphasis added).

Plaintiffs' reliance on *In re Takata* is further misplaced because that decision relied upon authority analyzing a version of Rule 4 that no longer applies. *See In*

---

case, because Russia had "unilaterally suspended all judicial cooperation with the United States in civil and commercial matters," the Court concluded that 4(f)(1) service would be "futile." *Dubovoy*, 2016 WL 7217607, at *2-3. Here, by contrast, there is every reason to believe that if Plaintiffs had responded to the Freiburg Court's request for clarification, the Freiburg Court would have effectuated Hague service. Plaintiffs also cite *Bravetti v. Liu*, No. 3:12-cv-7492-MAS-TJB, 2013 WL 6501740 (D.N.J. Dec. 11, 2013), *see* Letter Brief at 3 n.4, but in that case the Court concluded that "the Hague Convention [did] not apply" at all because the Convention provides that it "shall not apply where the address of the person to be served is not known." *Bravetti*, 2013 WL 6501740, at *3 (citing Hague Service Convention art. 1).

9

*re Takata Airbag Prods. Liab. Litig.*, No. 15-MDL-02599, 2017 WL 8809362, at

*3 (quoting *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir.

2002)). The *Cephalon* court noted and disagreed with other decisions that, like

*Takata*, relied on the pre-2007 version of Rule 4 in which "the conjunction 'or'

appeared after subsection (1)." *Cephalon*, 2011 WL 6130416, at *5.[6] The "or"

after subsection (1) of Rule 4(f) does not exist in the current version of the rule.

Thus, under the rule as it must be applied here and now, subsection (1) is

mandatory when its provisions are met, and resort to subsections (2) or (3) is

permitted only if subsection (1) is not applicable. *See id.*

The *Cephalon* decision is in accord with the weight of federal authority in

imposing a threshold requirement that a plaintiff first "diligently" or "reasonably"

attempt service through an international agreement like the Hague Convention

under Rule 4(f)(1) before seeking court assistance under Rule 4(f)(3). *E.g.*, *SEC v.*

*China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 398 (S.D.N.Y. 2014)

("When courts have allowed for alternative service, they have done so when

'plaintiffs have been unable, despite <u>diligent efforts</u>, to serve the defendant in the

[foreign country] according to the Hague [ ] Convention procedures.'") (emphasis

---

[6] The conjunction "or" after Rule 4(f)(1) was removed in the 2007 version of the rule. *Compare* Fed. R. Civ. P. 4(f) (2006) (repealed 2007), *with* Fed. R. Civ. P. 4(f) (2019).

in original) (quoting *S.E.C. v. Shehyn*, No. 04 Civ.2003(LAP), 2008 WL 6150322, at *3 (S.D.N.Y. May 26, 2008)); *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010) ("A district court may require the parties 'to show that they have reasonably attempted to effectuate service on the defendant(s) and that the circumstances are such that the district court's intervention is necessary.'") (quoting *Export-Import Bank v. Asia Pulp & Paper Co., Ltd.*, No. 03Civ.8544(LTS)(JCF), 2005 WL 1123755, at *4 (S.D.N.Y. May 11, 2005)); *Devi v. Rajapaska*, No. 11 Civ. 6634(NRB), 2012 WL 309605, at *1-2 (S.D.N.Y. Jan. 21, 2012) (same); *Blumedia Inc. v. Sordid Ones BV*, No. 10-cv-01158-MSK-KLM, 2011 WL 42296, at *4 (D. Colo. Jan. 6, 2011) (same); *C & F Sys., LLC v. Limpimax, S.A.*, No. 1:09-cv-858, 2010 WL 65200 at *3 (W.D. Mich. 2010).[7]

Plaintiffs' failure to exercise due diligence by doing *any* follow up with the Freiburg Court over the last two years necessarily disqualifies their attempt to obtain alternative service under Rule 4(f)(3).  *See, e.g.*, *Cephalon*, 2011 WL 6130416 at *2, 5-6.  *See also South Carolina v. Hitachi Displays, Ltd.,* No. 3:13-cv-00899-JFA, 2013 WL 4499149, at *2-3 (D.S.C. Aug. 20, 2013) (rejecting

---

[7] Despite these clear authorities requiring diligence, Plaintiffs contend it was "not incumbent on [them]" to answer the Freiberg Court's questions.  Email from J. Scullion to M. Slater, May 20, 2019, ECF No. 214-5.

request for service under Rule 4(f)(3), and concluding that court intervention was unnecessary where Japanese Central Authority rejected attempted Hague service of Japanese company because the request contained an outdated address for a defendant whose correct address was readily available).  *Cf. Celgene Corporation v. Gupta*, No. 2:17-cv-5308-KM-JBC, 2018 WL 4027032, at *4 (D.N.J. Aug. 23, 2018) (concluding that plaintiffs' attempt at Hague service through the Indian Central Authority, followed by the submission of two letters to the Indian Central Authority to which they received no response, for more than a year, constituted due diligence).

## II.   PLAINTIFFS' PROPOSED FORMS OF ALTERNATIVE SERVICE ARE UNJUSTIFIED AND IMPERMISSIBLE.

Even if alternative service under Rule 4(f)(3) were justified – which it is not – Plaintiffs' proposed forms of alternative relief must be rejected.  Service on Cleary Gottlieb in the United States would be untimely under Rule 4(m), and service by e-mail to Germany would violate the Hague Convention.

### A.   Plaintiffs' proposed service on Cleary Gottlieb in the United States would be untimely under Rule 4(m).

To the extent Plaintiffs now seek to serve Cleary Gottlieb in the United States, *see* Letter Brief at 4-5, such service would be domestic.  Rule 4(m) requires

that domestic service be effectuated within 90 days of the filing of the complaint. *See* Fed. R. Civ. P. 4.[8]

Plaintiffs amended their complaint to name Bosch GmbH on December 16, 2017.  *See* Second Amended Complaint.  Plaintiffs did not attempt to initiate service of Bosch GmbH in the U.S. for nearly two and a half years after they filed the complaint against Bosch GmbH, and for more than two years after they claim Hague service was "rejected."  Plaintiffs did not ask for an exemption from the 90-day requirement, and they have not shown the good cause required for one.

When a plaintiff misses the deadline under Rule 4(m), a court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time," unless the plaintiff can show "good cause for the failure." Fed R. Civ. P. 4(m).  The Third Circuit has been unequivocal: "neither half-hearted efforts prior to the deadline nor inadvertence by counsel constitutes good cause.  In no uncertain terms, we have warned plaintiffs of the severity of Rule 4(m): 'Treat the [90] days with the respect reserved for a time bomb.'"  *Gish v. Attorney*

---

[8] Plaintiffs incorrectly assert that Rule 4(m) imposes a 120-day time limit.  *See* Letter Brief at 5.  Rule 4(m) has imposed a 90-day time limit since December 1, 2015.  *See* Fed. R. Civ. P. 4 Advisory Committee Notes to 2015 Amendment ("The presumptive time for serving a defendant is reduced from 120 days to 90 days").  Amending a complaint does not restart the 90-day clock for serving defendants under Rule 4(m).  *See, e.g., Kornea v. J.S.D. Mgmt.*, 336 F. Supp. 3d 505, 511 (E.D. Pa. 2018).

*General United States*, 604 F. App'x 119, 121 (3d Cir. 2015) (quoting *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1307 (3d Cir. 1995)).[9]

In the Third Circuit, "good cause" for this analysis is the same as the standard for "excusable neglect" justifying an extension of time under Federal Rule of Civil Procedure 6(b)(2), pursuant to which the Court will apply a three-factor test: "(1) reasonableness of plaintiff's efforts to serve, (2) prejudice to the defendant by lack of timely service and (3) whether plaintiff moved for an enlargement of time to serve." *MCI Telecomms. Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995); *Mason v. Therics, Inc.*, No. 08-2404 (RBK), 2009 WL 44743, at **2-3 (D.N.J. Jan. 6, 2009) (quoting *MCI*, 71 F.3d at 1097). The Court's analysis should mainly focus on whether a plaintiff has demonstrated "good faith" in requesting the extension and whether there is "some reasonable basis for noncompliance within the time specified in the rule." *Mason*, 2009 WL 44743, at *2 (quoting *MCI*, 71 F.3d at 1097). The Third Circuit has also instructed that while prejudice to the defendant "may tip the 'good cause' scale, the primary

---

[9] Although much of the case law on Rule 4(m) – including *Petrucelli* – relates to the 120-day requirement, courts have continued to rely upon these decisions in interpreting the current version of Rule 4(m), which has the 90-day time limit. *See, e.g., Douglas v. Nesbit*, No. 1:16-cv-01836, 2017 WL 1021680, at *3 n. 5 (M.D. Pa. Mar. 16, 2017) (citing to *Petrucelli* and dismissing complaint for plaintiffs' failure to serve defendant within 90-day time limit of the current version of Rule 4(m)).

focus is on the plaintiff's reasons for not complying with the time limit in the first place." *MCI*, 71 F.3d at 1097.  All three factors weigh against an extension for Plaintiffs here.

*First*, as discussed in detail above, Plaintiffs' single attempt at Hague service two years ago, and their failure to respond to the Freiburg Court's request for clarification or to inform the parties or the Court of the request until recently, cannot be described as diligent or "reasonable efforts."  *See Trilliant Funding, Inc. v. Marengere (In re Bozel S.A.)*, No. 1:16-cv-3739, 2017 WL 3175606, at *5-8 (S.D.N.Y. July 25, 2017) (concluding that plaintiffs violated Rule 4(m) because their "failure to take further steps" in effecting Hague service, the delay of ten months before speaking with defendant's counsel, the lack of explanation for these delays, and the passage of twenty-five months since the filing of the complaint all "precluded a finding of diligence").[10]

---

[10] Plaintiffs' failure to timely inform counsel about their attempted Hague service on Bosch GmbH until May 15, 2019, should also be taken into account.  *See* Email from D. Tawil to M. Slater, May 15, 2019, ECF No. 214-5.  The case Plaintiffs cite in support of their attempt to sidestep the requirement for expeditious service in Rule 4(m), *The Knit With v. Knitting Fever, Inc.*, Civil Action Nos. 08-4221, 08-4775, 2010 WL 2788203 (E.D. Pa. 2010), is easily distinguished.  There, conflicting jurisprudence gave the plaintiffs "good cause to believe that the service … was proper and effective." *Id.* at *12.  By contrast, Plaintiffs here have known for over two years that their attempted service of Bosch GmbH was incomplete, and they knowingly chose to abort that effort.  Plaintiffs' failure to inform the defendants or the Court of their attempted service emphasizes their "record of dilatoriness," and undercuts any claim of a reasonable, good faith effort

*Second*, Bosch GmbH is a subject of German law and is entitled not to have German law requirements for Hague service overridden on the basis of careless and dilatory efforts by Plaintiffs. Further, Plaintiffs have made evident their desire to make precedent here to try to apply in other cases against Bosch GmbH (and perhaps others), without making in those other cases even the half-hearted Hague service efforts made in this case. The Court should not be party to such inequitable conduct.

*Third*, at no time since naming Bosch GmbH as a defendant have Plaintiffs sought any extension of time for service. Instead, they kept both their service attempt and the Freiburg Court's response a secret from the Court, the other defendants, and the other defendants' counsel for the intervening two years. Plaintiffs' efforts now are too little, too late. *See, e.g.*, *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 610-11 (D.N.J. 2002) (weighing plaintiff's failure to make an application to the Court to extend time against plaintiff and dismissing complaint under Rule 4(m) as to defendant).

---

to effect service. *Allstate Ins. Co. v. Hewlett-Packard Co.*, No. 1:07-cv-799, 2016 WL 613571, at *4-5 (M.D. Pa. Feb. 16, 2016).

**B.     Plaintiffs' alternative request for service by e-mail in Germany is impermissible because it is prohibited by the Hague Convention.**

Article 10(a) of the Hague Convention permits service through the mailing of "judicial documents, by postal channels, directly to persons abroad," "provided the State of destination does not object."[11]   The Supreme Court has held that service under Article 10 is only permissible if the recipient country has not objected to Article 10 service.  *See Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1512-13 (2017).  But Germany, like dozens of other countries,[12] has objected to Article 10 in its entirety.  *See Hague Convention, Germany – Central Authority & practical information,* HCCH, https://www.hcch.net/en/states/authorities/details3/?aid=257 (last visited June 4, 2019).  Because Germany has objected to Article 10, a defendant cannot be served in Germany through "postal channels" under Rule 4(f)(3).  *See Rice v. Electrolux Home Prods.*, No. 4:15-CV-00371, 2018 WL 4964076, at *5 (M.D. Pa. Oct. 15, 2018) (because China has objected to Article 10, service on defendant in China through "postal channels" impermissible); *Shenouda v. Mehanna,* 203 F.R.D. 166, 171 (D.N.J. 2001) (same for Egypt).  To allow Plaintiffs to serve Bosch GmbH by

---

[11] Hague Service Convention, art. 10(a).

[12] *See Table Reflecting Applicability of Articles 8(2), 10 (a)(b) and (c), 15(2) and 16(3) of the Hague Service Convention*, HCCH, https://assets.hcch.net/docs/6365f76b-22b3-4bac-82ea-395bf75b2254.pdf (last updated Feb. 2019*).*

sending an e-mail to Cleary Gottlieb or to Bosch GmbH in Germany would violate Germany's "rights as a signatory to the Convention, and thus violate Rule 4(f)(3), which allows service only by 'means not prohibited by international agreement.'" *Creative Products Group v. Decolee Co.*, No. 06-CV-02305, at *7 (C.D. Cal. June 30, 2006) (minute order) (**Exhibit 2**) (citing Fed. R. Civ. P. 4(f)(3)).

The Hague Convention, adopted in 1965, does not define the term "postal channels." But any "attempt to distinguish email and facsimile from the 'postal channels' referred to in the text of Article 10 is unavailing." *Agha v. Jacobs*, No. C 07-1800 RS, 2008 WL 2051061, at *2 (N.D. Cal. May 13, 2008). *See also Creative Products Group*, No. 06-CV-02305, at **4-7. As the *Creative Products* court recognized, the Permanent Bureau of the Hague Conference on Private International Law[13] has counseled that the "functional equivalent approach" should be followed in determining whether service by e-mail is proper under Article 10. *Creative Products*, No. 06-CV-02305, at *6 (citing Permanent Bureau of the Hague Conference on Private International Law, PRACTICAL HANDBOOK ON THE

---

[13] The Permanent Bureau serves as the secretariat for the Hague Conference. Statute of the Hague Conference on Private International Law arts. 1, 4-6. Among other tasks, the Permanent Bureau publishes various handbooks on the operation of certain Conventions, including the Hague Service Convention. *See, e.g.*, *Water Splash*, 137 S. Ct. at 1511 (relying on the fourth edition of the Practical Handbook to interpret the word "send" in Article 10(a) of the Hague Service Convention).

OPERATION OF THE SERVICE CONVENTION 54 (3d ed. 2003)).[14]  This requires "review[ ], for each method of transmission provided for by the Convention, [of] the aim and function of the related requirements," followed by consideration of "whether these requirements could be satisfied in equivalent fashion in an electronic environment."  *Id.*

Applying the "functional equivalent approach," the *Creative Products* court concluded that service by e-mail "would be the functional equivalent of transmission via postal channels" because both shared the aim of "simplify[ing] the method of transmission of these documents," and the function of sending judicial documents "directly to persons abroad" and not through the Central Authority designated by the country to effectuate service.  *Id.* at *7.  The court reasoned that "in objecting to Article 10(a), South Korea objected to more than just the direct transmission of judicial documents via defined postal channels.  Effectively, it rejected the aim and the function of the service methods set forth in Article 10(a)."  *Id.*  Likewise, here, Germany's objection to Article 10(a) "implies an objection to service via facsimile and e-mail as well."  *Id.*

---

[14] The Permanent Bureau issued a revised version of the Practical Handbook in 2016, which retains the reference to the "functional equivalent approach" to interpreting Article 10.  *See* Permanent Bureau of the Hague Conference on Private International Law, PRACTICAL HANDBOOK ON THE OPERATION OF THE SERVICE CONVENTION 177 (4th ed. 2016).

Plaintiffs' citations to non-binding cases authorizing service via e-mail are inapt – all of those cases concerned situations in which service via the Hague Convention had failed after due diligence, and none of those cases addressed the substantive issue of whether e-mail service complies with Germany's objection to Article 10. If Hague service were not possible in this case – which has not been demonstrated – it would be because Germany considered the complaint to fall into the category of administrative or criminal claims whose service Germany considers to be an offense to its sovereignty. The Court should not circumvent those concerns by allowing a means of service to which Germany has properly objected. After all, the Hague Convention does not authorize service by mail (or email), but permits it only "if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law." *Water Splash*, 137 S. Ct. at 1512-13.[15]

---

[15] To the extent that Plaintiffs seek to rely on e-mail, Courts in this District have required the moving party to make a prima facie showing that they sent emails to the proposed email address, which did not come back undelivered, indicating that the address is still valid. *See, e.g.*, *Celgene Corp. v. Blanche Ltd.*, Civil Action No. 16-501 (SDW) (LDW), 2017 WL 1282200, at *3 (D.N.J. Mar. 10, 2018). Plaintiffs have not done so. To the extent Plaintiffs are seeking to make delivery to Cleary Gottlieb or Bosch GmbH in Germany by some other unspecified method, compliance with the Hague Convention would still be mandatory. *See Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 699. *See also Water Splash*, 137 S. Ct. at 1512-13.

## CONCLUSION

For all the foregoing reasons, Plaintiffs have not shown that they are entitled to alternative service under Rule 4(f)(3).

Respectfully Submitted,

**CLEARY    GOTTLIEB    STEEN    &
HAMILTON LLP**

DATED:  June 4, 2019          By: *s/ Jeffrey A. Rosenthal*
                                        Jeffrey A. Rosenthal
                                        Carmine D. Boccuzzi, Jr.
                                        One Liberty Plaza
                                        New York, NY 10006
                                        Tel. (212) 225-2000
                                        Fax: (212) 225-3999
                                        jrosenthal@cgsh.com

                                        Matthew D. Slater
                                        2112 Pennsylvania Avenue NW
                                        Washington, DC 20037
                                        Tel. (202) 974-1500
                                        Fax: (202) 974-1999
                                        mslater@cgsh.com