**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| IN RE MERCEDES-BENZ EMISSIONS LITIGATION | Civil Action No. 16-881 (SDW) (JAD)<br><br>Motion Date: October 7, 2019<br><br>**ELECTRONICALLY FILED**<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT ROBERT BOSCH GMBH'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS
THE FIFTH CONSOLIDATED AND AMENDED CLASS ACTION COMPLAINT**

CLEARY GOTTLIEB STEEN & HAMILTON LLP

JEFFREY A. ROSENTHAL
CARMINE D. BOCCUZZI, JR.
One Liberty Plaza
New York, NY 10006
(212) 225-2000

MATTHEW D. SLATER
2112 Pennsylvania Ave., NW
Washington, D.C. 20037
(202) 974-1500

CRITCHLEY, KINUM & DENOIA, LLC

MICHAEL CRITCHLEY, SR.
AMY LURIA
75 Livingston Avenue
Roseland, NJ 07068
(973) 422-9200

*Counsel for Defendant Robert Bosch GmbH*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT .............................................................................. 1

FACTUAL BACKGROUND ................................................................................... 4

    A.    Bosch GmbH Is A German Auto Parts Manufacturer With No Direct Connection To Plaintiffs ...................................................... 4

    B.    Initial Stages Of This Litigation Proceed Without Bosch GmbH ............... 5

    C.    Plaintiffs File The 5AC, Which Alleges Bosch GmbH's Role As An Auto Parts Supplier, But Not As A Promoter Of Clean Diesel Technology In The United States ...................................................... 6

    D.    Plaintiffs Belatedly Serve Bosch GmbH Through Alternative Means .............................................................................................. 7

ARGUMENT ............................................................................................................ 8

    I.    Plaintiffs' RICO Claim Should Be Dismissed ........................................ 8

        A.    Plaintiffs Should Not Be Permitted To Convert An Alleged Clean Air Act Violation Into A RICO Suit ........................................... 8

        B.    The Direct-Purchaser Rule Prohibits Plaintiffs From Recovering Against Bosch GmbH Under RICO ........................................... 14

        C.    Plaintiffs May Not Base Their RICO Claim On A "Fraud On The Regulator" Theory ...................................................................... 16

        D.    Plaintiffs Have Failed To Allege A Cognizable RICO Injury ................... 17

    II.    Plaintiffs' Claims Under New Jersey And Georgia Consumer Protection Laws Should Be Dismissed ...................................................... 21

        A.    Plaintiffs Have Not Alleged An Ascertainable Loss, As Required By The New Jersey Consumer Fraud Act .................................. 22

        B.    Plaintiffs Have Not Alleged Ongoing Or Future Harm, As Required By The Georgia Uniform Deceptive Trade Practices Act .......... 24

    III.    Plaintiffs' Fraudulent Concealment Claims Should Be Dismissed Because Plaintiffs Have Not Alleged Bosch GmbH Had A Duty To Disclose ................... 25

CONCLUSION ....................................................................................................... 29

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) ...................................................................................12

*Andes v. Albano,*
    853 S.W.2d 936 (Mo. 1993) ........................................................................26

*Apple Inc. v. Pepper,*
    139 S. Ct. 1514 (2019) ................................................................................15

*Arnesen v. Rivers Edge Golf Club & Plantation, Inc.,*
    781 S.E.2d 1 (N.C. 2015) ............................................................................26

*Associated General Contractors of California, Inc. v. California State Council of
    Carpenters,*
    459 U.S. 519 (1983) ....................................................................................15

*Ayres v. General Motors Corp.,*
    234 F.3d 514 (11th Cir. 2000) ...............................................................8-10

*Brown v. First Tennessee Bank National Ass'n,*
    753 F. Supp. 2d 1249 (N.D. Ga. 2009) .................................. 8, 10-11, 13

*Callahan v. A.E.V., Inc.,*
    182 F.3d 237 (3d Cir. 1999) ................................................................8-9, 13

*Catrett v. Landmark Dodge, Inc.,*
    560 S.E.2d 101 (Ga. Ct. App. 2002) .....................................................24-25

*Chrysler Credit Corp. v. First National Bank & Trust Co. of Washington,*
    746 F.2d 200 (3d Cir. 1984) ........................................................................29

*Cleveland v. United States,*
    531 U.S. 12 (2000) ......................................................................................17

*Colonial Imports, Inc. v. Carlton Northwest, Inc.,*
    853 P.2d 913, 917 (1993) ............................................................................26

*Connick v. Suzuki Motor Co.,*
    675 N.E.2d 584, 593 (Ill. 1996) .................................................................26

*Danielsen v. Burnside-Ott Aviation Training Center, Inc.*,
    941 F.2d 1220 (D.C. Cir. 1991) ..................................................................8, 10

*Davenport v. GMAC Mortgage*,
    2013 WL 5437119 (Nev. 2013) .........................................................................26

*Dodd v. Nelda Stephenson Chevrolet, Inc.*,
    626 So. 2d 1288 (Ala. 1993) .............................................................................26

*First Bank of Whiting v. Schuyler*,
    692 N.E.2d 1370 (Ind. Ct. App. 1998) ............................................................26

*Groob v. KeyBank*,
    843 N.E.2d 1170 (Ohio 2006) ..........................................................................26

*Hale v. Stryker Orthopaedics*,
    2009 WL 321579 (D.N.J. Feb. 9, 2009) ...........................................................14

*Hamilton v. Leavy*,
    322 F.3d 776 (3d Cir. 2003) ...............................................................................4

*Hogan v. Maryland State Dental Ass'n*,
    843 A.2d 902 (Md. Ct. Spec. App. 2004) .........................................................26

*Holmes v. Securities Investor Protection Corp.*,
    503 U.S. 258 (1992) ...........................................................................................15

*Humphries v. Becker*,
    366 P.3d 1088 (Idaho 2016) ..............................................................................26

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977) ...................................................................................... 14-15

*In re Aetna UCR Litigation*,
    2015 WL 3970168 (D.N.J. June 30, 2015) .......................................................20

*In re Avandia Marketing, Sales Practices & Product Liability Litigation*,
    804 F.3d 633 (3d Cir. 2015) ........................................................................ 20-21

*In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*,
    155 F. Supp. 2d 1069 (S.D. Ind. 2001) ............................................................18

*In re Burlington Coat Factory Securities Litigation*,
    114 F.3d 1410 (3d Cir. 1997) ...................................................................... 27-28

*In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Products Liability Litigation*,
295 F. Supp. 3d 927 (N.D. Cal. 2018) ...................................................................19

*In re Duramax Diesel Litigation*,
298 F. Supp. 3d 1037 (E.D. Mich. 2018).......................................................... 19-20

*In re: General Motors LLC Ignition Switch Litigation*,
2019 WL 3564698 (S.D.N.Y. Aug. 6, 2019)........................................................24

*In re General Motors LLC Ignition Switch Litigation*,
2016 WL 3920353 (S.D.N.Y. July 15, 2016) .......................................................19

*In re Insulin Pricing Litigation*,
2019 WL 643709 (D.N.J. Feb. 15, 2019) ........................................................ 15-16

*In re Temporomandibular Joint (TMJ) Implants Products Liability Litigation*,
113 F.3d 1484 (8th Cir. 1997) ..............................................................................29

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litigation*,
2017 WL 4890594 (N.D. Cal. Oct. 30, 2017)..........................................................5

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litigation*,
264 F. Supp. 3d 1040 (N.D. Cal. 2017) ................................................................11

*Lexmark International, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)..............................................................................................13

*Lieberson v. Johnson & Johnson Consumer Cos., Inc.*,
865 F. Supp. 2d 529 (D.N.J. 2011) ......................................................................23

*Lightning Lube, Inc. v. Witco Corp.*,
4 F.3d 1153 (3d Cir. 1993)....................................................................................26

*Livingston v. K-Mart Corp.*,
32 F. Supp. 2d 369 (S.D. W. Va. 1998) ................................................................26

*Mabus v. St. James Episcopal Church*,
13 So. 3d 260 (Miss. 2009)...................................................................................26

*Maio v. Aetna, Inc.*,
221 F.3d 472 (3d Cir. 2000)..................................................................................18

*Mallon Oil Co. v. Bowen/Edwards Associates, Inc.*,
   965 P.2d 105 (Colo. 1998) ................................................26

*Mandarin Trading Ltd. v. Wildenstein*,
   944 N.E.2d 1104 (N.Y. 2011) ................................................26

*Matter of Estate of Evasew*,
   584 A.2d 910 (Pa. 1990) ................................................26

*McCabe v. Daimler AG*,
   160 F. Supp. 3d 1337 (N.D. Ga. 2015) ................................................26

*McCarthy v. Recordex Service, Inc.*,
   80 F.3d 842 (3d Cir. 1996) ................................................14-15

*McCulloch v. PNC Bank Inc.*,
   298 F.3d 1217 (11th Cir. 2002) ................................................9

*McLaughlin v. American Tobacco Co.*,
   522 F.3d 215 (2d Cir. 2008) ................................................19

*Middlesex City Sewerage Authority v. National Sea Clammers Ass'n*,
   453 U.S. 1 (1981) ................................................12

*Norman v. Niagara Mohawk Power Corp.*,
   873 F.2d 634 (2d Cir. 1989) ................................................9

*Parness v. Christie*,
   2015 WL 4997430 (D.N.J. Aug. 19, 2015) ................................................18

*Popejoy v. Sharp Electronics Corp.*,
   2016 WL 3381229 (D.N.J. June 9, 2016) ................................................28

*Powell v. Lennon*,
   914 F.2d 1459 (11th Cir. 1990) ................................................12

*Regions Bank v. Schmauch*,
   582 S.E.2d 432 (S.C. Ct. App. 2003) ................................................26

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979) ................................................21

*Southern Snow Manufacturing Co. v. SnoWizard Holdings, Inc.*,
   912 F. Supp. 2d 404 (E.D. La. 2012) ................................................17

*Saggese v. Beazley Co. Realtors,*
  155 Conn. App. 734 (Conn. App. Ct. 2015) ...........................................................26

*Sanders v. Apple Inc.,*
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ...................................................................26

*Silverstein v. Procter & Gamble Manufacturing Co.,*
  2008 WL 4889677 (S.D. Ga. Nov. 12, 2008) .........................................................25

*Smith v. Frandsen,*
  94 P.3d 919 (Utah 2004) .......................................................................................26

*Stolzoff v. Waste Systems International, Inc.,*
  792 N.E.2d 1031 (Mass. 2003) ..............................................................................26

*Taylor Investment Corp. v. Weil,*
  169 F. Supp. 2d 1046 (D. Minn. 2001) ..................................................................26

*Trollinger v. Tyson Foods, Inc.,*
  370 F.3d 602 (6th Cir. 2004) .................................................................................14

*United States ex rel. Petratos v. Genentech Inc.,*
  855 F.3d 481 (3d Cir. 2017).....................................................................................4

*United States v. Murphy,*
  836 F.2d 248 (6th Cir. 1988) .................................................................................17

*Van Den Heuvel v. A.I. Credit Corp.,*
  951 F. Supp. 2d 1064 (E.D. Wis. 2013) .................................................................26

*White v. Potocska, P.C.,*
  589 F. Supp. 2d 631 (E.D. Va. 2008) ....................................................................26

*Williams v. Dow Chemical Co.,*
  255 F. Supp. 2d 219 (S.D.N.Y. 2003) ....................................................................17

**Statutes**

18 U.S.C. § 1341 ........................................................................................................17

18 U.S.C. § 1343 ........................................................................................................17

18 U.S.C. § 1961 ........................................................................................................14

42 U.S.C. § 7401 ..............................................................................................................11, 13

42 U.S.C. § 7521 ..............................................................................................................11, 22

42 U.S.C. § 7522 ..............................................................................................................11, 22

42 U.S.C. § 7524 ..............................................................................................................11, 22

42 U.S.C. § 7525 ..............................................................................................................11, 22

42 U.S.C. § 7543 ..............................................................................................................11, 22

42 U.S.C. § 7604 ......................................................................................................................12

Ga. Code Ann. § 10-1-373 ......................................................................................................24

**Other Authorities**

40 C.F.R. § 86.1803-01 ...........................................................................................................13

Fed. R. Civ. P. 12(h)(2) ...........................................................................................................22

"Fiat Chrysler Automobiles Clean Air Act Civil Settlement Information Sheet," *epa.gov*,
    https://www.epa.gov/enforcement/fiat-chrysler-automobiles-clean-air-act-civil-
    settlement-information-sheet (last visited Aug. 27, 2019) ...........................................13

Restatement (Second) of Torts § 551 (1977) ....................................................................28-29

"Volkswagen Clean Air Act Civil Settlement," *epa.gov*,
    https://www.epa.gov/enforcement/volkswagen-clean-air-act-civil-settlement (last
    visited Aug. 27, 2019); ................................................................................................13

## PRELIMINARY STATEMENT

Plaintiffs' Fifth Consolidated and Amended Class Action Complaint ("5AC") should be dismissed as against defendant Robert Bosch GmbH ("Bosch GmbH") for failure to state a claim for relief. U.S. consumer Plaintiffs are attempting to assert a RICO claim based on the purchase of allegedly non-conforming Mercedes vehicles against a German car parts manufacturer that did not manufacture the cars and neither sold them nor advertised them. Their claims stretch RICO beyond any recognizable bounds and are flatly contrary to the statute's strict causation and injury requirements. Although this Court has already considered arguments for dismissal from the other defendants in this case—Daimler AG and Mercedes-Benz USA, LLC (together, the "Mercedes Defendants") and Robert Bosch LLC ("Bosch LLC")—the allegations against Bosch GmbH are different in material respects and fall short of stating a claim against Bosch GmbH. Furthermore, Bosch GmbH raises in this Motion several legal arguments that were not presented in prior motions to dismiss by the other defendants. These legal arguments demonstrate that Plaintiffs' claims are deficient and should be dismissed.

*Plaintiffs' RICO Claim Should Be Dismissed for at Least Four Independent Reasons: First*, Plaintiffs may not assume the role of private environmental regulators and convert an alleged violation of the Clean Air Act ("CAA") into a RICO suit for treble damages. In crafting the CAA, Congress explicitly eschewed private damages actions, providing instead other carefully crafted remedies. Federal and California regulators have acted vigorously to redress emissions violations and have extracted substantial penalties where there have been violations. Here, Plaintiffs' lawsuit against Bosch GmbH is premised upon a claim that those regulators have not even asserted—the notion that their vehicles exceed the "emissions standard" under the CAA—and this "emissions standard" is the only specific emissions benchmark that Plaintiffs have alleged was exceeded. It is for the federal and state regulators to investigate and assert such

1

claims (if they can be made). Multiple courts, including the Third Circuit, have held that plaintiffs cannot use RICO to convert what is, in essence, a regulatory violation into a treble damages claim. Plaintiffs' lawsuit is therefore in essence a suit for violation of the CAA, and Plaintiffs' RICO claim is accordingly barred.

*Second,* Plaintiffs' RICO claim is unambiguously barred by the "direct-purchaser" rule. The direct-purchaser rule is a bright-line test of proximate cause articulated by the Supreme Court and applied by the Third Circuit to RICO claims that prevents consumer plaintiffs from bringing RICO claims of overpayment against defendants that are more than one step removed from the plaintiffs in the distribution chain. Plaintiffs had no relation to Bosch GmbH, which is a components supplier at least three steps removed up the distribution chain from consumers. Therefore, Plaintiffs' RICO claim should be dismissed under the direct-purchaser rule.

*Third,* Plaintiffs' RICO claim should be dismissed because their claim of an alleged fraud on the regulators does not constitute a RICO predicate act of mail or wire fraud. Plaintiffs allege that Bosch GmbH helped the Mercedes Defendants defraud the regulators to obtain certificates of conformity for the vehicles. However, the Supreme Court has held that regulatory approvals are not "property" in the hands of the regulators as required to support a claim for mail or wire fraud (which are the alleged predicate acts that underlie Plaintiffs' RICO claim). Therefore, Plaintiffs cannot base their RICO claim on a theory of fraud on the regulators.

*Fourth*, Plaintiffs' RICO claim should be dismissed because Plaintiffs have failed to allege a cognizable RICO injury. This Court previously found that Plaintiffs' overpayment theory of injury is cognizable under RICO, but Bosch GmbH respectfully submits that this prior finding was incorrect. Multiple courts have held that allegations of overpayment for defective products *at the time of purchase* do not constitute a "concrete financial loss" as required under

the RICO statute.  Moreover, although courts in other diesel emissions cases have found that allegations of overpayment qualify under RICO, those cases involved allegations of specific price differentials between diesel vehicles and allegedly comparable gasoline vehicles, which are not present in this case.

*Plaintiffs' Claims Under New Jersey and Georgia Consumer Protection Laws Should Be Dismissed*.  This Court previously dismissed Plaintiffs' claim against the Mercedes Defendants under the New Jersey Consumer Fraud Act for failing to allege an ascertainable loss.  Plaintiffs have now pled this claim against Bosch GmbH, but, once again, they have failed to plead an ascertainable loss, and their claim should therefore be dismissed.  Plaintiffs' claim under the Georgia Uniform Deceptive Trade Practices Act should also be dismissed because the statute only provides for injunctive relief, and Plaintiffs have not alleged any sort of ongoing harm or a threat of future harm from Bosch GmbH that could entitle them to injunctive relief.

*Plaintiffs' State-Law Fraudulent Concealment Claims Should Be Dismissed.*  As this Court previously recognized, Plaintiffs' state-law fraudulent concealment claims are based on a theory of fraud by omission, which requires a duty to disclose.  Plaintiffs have failed to allege any facts that could impose upon Bosch GmbH a duty to disclose.  Specifically, Plaintiffs have not alleged *any* relationship with Bosch GmbH, and they have not alleged that Bosch GmbH made any misleading statements that could conceivably require correction.  Plaintiffs' state-law fraudulent concealment claims should therefore be dismissed.

The fundamental deficiencies in the 5AC cannot be cured by amendment, and this Court should accordingly dismiss these claims with prejudice.

Bosch GmbH is cognizant of this Court's February 1 Order.  But that Order was made without the benefit of briefing by Bosch GmbH and without considering the allegations against

3

Bosch GmbH.  The law of the case doctrine does not constrain Bosch GmbH's ability to raise

any of the grounds for dismissal of those claims presented below.  *See Hamilton v. Leavy*, 322

F.3d 776, 787 (3d Cir. 2003) (instructing that "[t]he law of the case doctrine should not be read

so rigidly that it precludes a party from raising an argument that it had no prior opportunity to

raise") (citation and quotation marks omitted).  Nor does the doctrine prevent this Court from

reconsidering issues decided by the Honorable Jose L. Linares.  *See United States ex rel.*

*Petratos v. Genentech Inc.*, 855 F.3d 481, 493 (3d Cir. 2017) ("Although the doctrine provides

that 'a successor judge should not lightly overturn decisions of [her] predecessors in a given

case,' 'it does not limit the power of trial judges from reconsidering issues previously decided by

a predecessor judge from the same court.'") (quoting *Fagan v. City of Vineland*, 22 F.3d 1283,

1290 (3d Cir. 1994)).  For the reasons addressed below, the 5AC should be dismissed against

Bosch GmbH.

## FACTUAL BACKGROUND

### A.     Bosch GmbH Is A German Auto Parts Manufacturer With No Direct Connection To Plaintiffs

Bosch GmbH is a German company headquartered in Germany.  5AC ¶ 84.[1]  Among

many other business lines, Bosch GmbH designs and sells electronic engine control units

("ECUs") for gasoline and diesel engines to numerous car manufactures.  *Id.* ¶ 259.  ECUs are

sophisticated on-board computers that are present in all modern engines.  *Id.* When Bosch

GmbH introduced a new generation of ECU for use in diesel engines, the Electronic Diesel

Control Unit 17 ("EDC17"),  it was designed to be highly adaptable so that car manufacturers

could use it "very flexibly in any vehicle segment on all the world's markets." *Id.* "The EDC17

---

[1]     For purposes of this Motion, Bosch GmbH recites allegations in the 5AC without
admitting their truthfulness and reserves its right to deny the 5AC's allegations.

4

is not inherently a tool for deceit; it is widely used by automakers that operate modern diesel engines." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2017 WL 4890594, at *2 (N.D. Cal. Oct. 30, 2017).

Bosch GmbH does not sell ECUs directly to consumers or even to car dealers. Rather, it supplies ECUs to vehicle manufacturers and works with the manufacturers "to create a unique set of specifications and software code to manage the vehicles' engine operation." 5AC ¶ 260. The manufacturers then market and sell the vehicles to dealers who, in turn, sell them to consumers.

**B.      Initial Stages Of This Litigation Proceed Without Bosch GmbH**

In February 2016, Plaintiffs filed an initial complaint against the Mercedes Defendants, s*ee* ECF No. 1, and then an amended complaint in May 2016, *see* ECF No. 17. This Court dismissed the amended complaint for lack of Article III standing because Plaintiffs failed to allege "that they actually viewed any category of advertisements" by the Mercedes Defendants upon which they purportedly relied. *See* Opinion 14, Dec. 6, 2016, ECF No. 58.

On December 16, 2016, Plaintiffs filed a second amended complaint, in which they added Bosch LLC and Bosch GmbH as defendants. *See* ECF No. 60. Plaintiffs filed further amended complaints on March 3 and September 28, 2017. *See* ECF Nos. 81, 107. Plaintiffs did not serve Bosch GmbH during this time. On November 9, 2017, Bosch LLC and the Daimler Defendants moved to dismiss Plaintiffs' fourth amended complaint ("4AC"). *See* ECF Nos. 117, 118.

On February 1, 2019, this Court granted in part and denied in part the motions by Bosch LLC and the Daimler Defendants. *See* ECF No. 161 ("Feb. 1 Op."). This Court denied the motions with respect to Plaintiffs' federal RICO claim, *id.* at 15-36, state-law fraudulent concealment claims, *id.* at 40-46, and several state-law consumer protection law claims, *id.* at 46-53. This Court granted the motions with respect to Plaintiffs' state-law misrepresentation claims,

*id.* at 40, and Plaintiffs' claim under the New Jersey Consumer Fraud Act ("NJCFA") (which was pled against the Mercedes Defendants only in the 4AC).

With respect to Plaintiffs' NJCFA claim, this Court found that "[a]scertainable loss is an essential element of a claim under the [NJCFA]" and requires a "price comparison" to state a claim. *Id.* at 48-49. Plaintiffs failed to adequately plead the ascertainable loss element because they did not "compare the price of a Polluting Vehicle with what they believe to be a comparable replacement." *Id.* at 49. Plaintiffs' allegation that they "would not have purchased or leased the BlueTEC vehicles at the prices they paid, or would have purchased or leased a less expensive alternative," did not suffice. *Id.* This Court granted Plaintiffs leave to amend their claim under the NJCFA. *Id.* at 50.

In denying Bosch LLC's motion to dismiss, this Court focused on two broad categories of allegations Plaintiffs had raised against Bosch LLC. First, this Court focused on allegations that Bosch LLC worked with the Mercedes Defendants to develop the alleged defeat device. *Id.* at 13, 26. Second, this Court pointed to allegations that Bosch LLC engaged in marketing and lobbying activities to promote "clean diesel" in the United States. *Id.* at 13, 43.

## C.    Plaintiffs File The 5AC, Which Alleges Bosch GmbH's Role As An Auto Parts Supplier, But Not As A Promoter Of Clean Diesel Technology In The United States

On March 15, 2019, Plaintiffs filed the 5AC. *See* ECF No. 185. The 5AC continues to allege that the EDC17 "was enabled by Bosch GmbH and Mercedes to surreptitiously evade emissions regulations." 5AC ¶ 263. It also alleges that "Bosch GmbH and Mercedes worked together to develop and implement a specific set of software algorithms for implementation in the Polluting Vehicles," and that "Bosch GmbH and Bosch LLC employees exchanged emails with Mercedes engineers that expressly considered and discussed how to optimize emissions performance in the laboratory and how to turn down or off emissions controls outside the

laboratory." *Id.* ¶ 263. No such communications are identified with particularity. Moreover, notwithstanding its ponderous length of over 400 pages, the 5AC does not identify any particular software algorithms that purportedly contribute to allegedly higher on-road emissions in the Mercedes vehicles at issue in this case (the "Subject Vehicles") or explain how Bosch GmbH and Mercedes engineers allegedly optimized emissions performance in the laboratory.

The 5AC also alleges that "Bosch" engaged in various activities to promote diesel technology in the United States. *See id.* ¶¶ 289-97, 321-26. Notably, although elsewhere Plaintiffs refer to Bosch GmbH by name, in these paragraphs they do not identify Bosch GmbH as having been involved in any marketing activities and do not allege, in any event, that any of these activities involved Mercedes vehicles.

Finally, the 5AC pleads two claims against "Bosch" that were not pled in the 4AC. First, it alleges a claim against "Bosch" under the NJCFA, which was the claim this Court previously dismissed as pled against the Mercedes Defendants. *Id.* ¶¶ 399-418. The 5AC also alleges a claim against "Bosch" under a Georgia consumer protection statute, the Uniform Deceptive Trade Practices Act ("UDTPA"). *Id.* ¶¶ 649-53.

### D.      Plaintiffs Belatedly Serve Bosch GmbH Through Alternative Means

Bosch GmbH had still not been served when the 5AC was filed in March. On May 24, 2019, Plaintiffs applied for an order authorizing service of process on Bosch GmbH through its U.S. counsel in other emissions-related cases under Federal Rule of Civil Procedure 4(f)(3). *See* ECF No. 214. The Honorable Joseph A. Dickson granted Plaintiffs' application. *See* ECF No. 228. Bosch GmbH's deadline to respond to the 5AC was extended until August 27, 2019. *See* ECF No. 235.

## ARGUMENT

### I.   Plaintiffs' RICO Claim Should Be Dismissed

As explained further below, there are four independent reasons Plaintiffs' RICO claim should be dismissed.  First, Plaintiffs may not convert an alleged violation of the CAA into a treble-damages RICO lawsuit.  Second, the bright-line "direct-purchaser" rule prohibits Plaintiffs from recovering against Bosch GmbH, which is at least three levels removed up the distribution chain.  Third, to the extent Plaintiffs' RICO claim is based upon alleged fraud upon the Environmental Protection Agency ("EPA") or the California Air Resources Board ("CARB") to obtain certificates of conformity for the Subject Vehicles, it should be dismissed because regulatory approvals do not qualify as "property" in the hands of the regulators, and therefore alleged fraud in obtaining them does not constitute mail or wire fraud.  Fourth, Plaintiffs' RICO claim should be dismissed because Plaintiffs have failed to allege a cognizable RICO injury.

### A.   Plaintiffs Should Not Be Permitted To Convert An Alleged Clean Air Act Violation Into A RICO Suit

Courts—including the Third Circuit—have recognized that plaintiffs may not convert violations of comprehensive regulatory schemes into treble-damages RICO claims.  *See Callahan v. A.E.V., Inc.*, 182 F.3d 237, 267 (3d Cir. 1999) (holding that plaintiffs could not predicate a RICO claim on violations of Pennsylvania's liquor control scheme); *Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 525 (11th Cir. 2000) (holding that plaintiffs could not predicate a RICO claim on violations of the National Traffic and Motor Vehicle Safety Act); *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1229 (D.C. Cir. 1991) (holding that plaintiffs could not predicate a RICO claim on violations of the McNamara-O'Hara Service Contract Act); *Brown v. First Tenn. Bank Nat'l Ass'n*, 753 F. Supp. 2d 1249, 1254 (N.D. Ga. 2009) (holding that plaintiffs could not predicate a RICO claim on violations of regulations

8

promulgated by the Secretary of Veterans Affairs).[2]   The principle set forth in these cases was not addressed in prior briefing by the Mercedes Defendants or Bosch LLC or previously considered by this Court, but it requires that Plaintiffs' RICO claim be dismissed.

*Callahan*, *Ayres*, *Danielsen*, *Brown* and similar cases stand for the principle that, where a federal claim for damages would not otherwise stand under the carefully crafted provisions of a regulatory statute such as the CAA, enterprising plaintiffs may not use the contrivance of RICO to create one. In *Callahan*, the plaintiffs were operators of small beer distributorships who alleged that they were injured in their business and property by the racketeering activity of defendants who had fraudulently obtained licenses from the state government. *Callahan*, 182 F.3d at 262. The Third Circuit rejected plaintiffs' argument "that proximate causation is present in a civil RICO case where the alleged racketeering conduct effects violations of a regulatory regime designed to protect the plaintiffs." *Id.* at 267. The court further explained that even if the plaintiffs' argument was right, the claim should still be dismissed because the purpose of the underlying regulatory regime "[was] to promote temperance, not to protect small-business owners." *Id.* at 267. The Third Circuit held that the district court had properly granted summary judgment to defendants on the plaintiffs' RICO claims, because the plaintiffs could not show that the defendants' fraud on the regulator proximately caused the plaintiffs' loss of business. *Id.* at 268.

In *Ayres*, the plaintiffs brought claims under Georgia's civil RICO statute against an automobile manufacturer and the supplier of an electronic control module. *Ayres*, 234 F.3d at

---

[2]   *See also Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634, 637-38 (2d Cir. 1989) (dismissing RICO claim for intruding upon exclusive remedy provision of Energy Reorganization Act); *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1226-27 (11th Cir. 2002) (rejecting "Plaintiffs' mail and wire fraud claims [as] nothing more than purported [Higher Education Act] violations pled in RICO terms").

516. The plaintiffs alleged that the National Traffic and Motor Vehicle Safety Act (the "Safety Act") created a duty to disclose safety defects, and that by not disclosing the alleged safety defects, the defendants committed federal mail and wire fraud. *Id.* at 516-17. The Eleventh Circuit determined that "[t]he Safety Act establishes its own extensive array of administrative remedies for a violation of its notification obligations." *Id.* at 522. The court reasoned that "given the limits on . . . civil penalties, the absence of a private right of action, and the option of private parties to petition for administrative action, it is . . . clear that Congress did not intend for a violation of the Safety Act's notification requirements to be the basis for a private civil RICO action, which would permit unlimited, treble damages." *Id.*

The *Danielsen* plaintiffs asserted RICO claims alleging that the defendants had fraudulently entered into contracts with improper minimum wage classifications under regulations promulgated by the Secretary of Labor pursuant to the McNamara-O'Hara Service Contract Act ("SCA"). *Danielsen*, 941 F.2d at 309. The District of Columbia Circuit held that "the statutory scheme for administrative relief set forth by Congress in the SCA leaves no room for a RICO action." *Id.* The court found that the SCA did not imply a private right of action, and observed that "[i]f there is no implied cause of action for damages, how much the less for treble damages." *Id.* at 311.

In *Brown*, the court dismissed a RICO claim based upon the defendant's misrepresentations about loan-related charges that were prohibited by regulations issued by the Secretary of Veterans Affairs. *Brown*, 753 F. Supp. 2d at 1263. The *Brown* court noted that the fact the defendant "affirmatively misrepresented the [loan-related] charges and used the mail and wires to further the scheme" did not change the analysis, because the focus of the analysis is "Congress's intent to limit the nature of the remedies, as evidenced by the absence of a private

10

statutory right of action and the presence of an extensive administrative regime." *Id.* at 1258, 1259. The court observed that "[w]hen Congress expresses a desire to remedy a deprivation of a federal right with administrative relief, plaintiffs may not use civil RICO claims that are premised on mail and wire fraud as an end-around legislative intent." *Id.* at 1254.

Plaintiffs here are seeking to do precisely what the courts in *Callahan*, *Ayres*, *Danielsen* and *Brown* ruled was impermissible:  to end-run the carefully crafted CAA regulatory scheme through a RICO claim for treble damages.  The purpose of the CAA is to reduce air pollution for the general public, not to protect vehicle purchasers such as Plaintiffs.  *See* 42 U.S.C. § 7401.  To that end, the CAA makes the EPA, not individual plaintiffs, "responsible for regulating emissions from motor vehicles" in the broad public interest in order to avoid the "spectre of an anarchic patchwork of federal and state regulatory programs," which would create "nightmares" for vehicle manufacturers.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*, 264 F. Supp. 3d 1040, 1049 (N.D. Cal. 2017).  The CAA provides for emission standards, requires manufacturers to obtain certificates of conformity prior to selling vehicles, and reflects Congress' intent to centralize administration in the EPA and the states (and not in private plaintiffs) to ensure uniformity of regulation and to reduce costs for manufacturers to promote the sale of new vehicles in the United States, while at the same time protecting environmental standards through the CAA's penalty provisions.  *See* 42 U.S.C. §§ 7521-22, 7524-25, 7543.

The CAA does not allow for a private damages action—much less a private treble damages action—nor have courts implied one.  The CAA includes a carefully limited provision that allows citizen suits to compel only regulatory enforcement of the Act, not damages, and then only if the private party has provided notice to the EPA Administrator and the Administrator or

the state in which the violation occurred has not commenced and is not diligently prosecuting a civil action. *See* 42 U.S.C. § 7604(b)(1). The Supreme Court explicitly rejected an implied private right of action under the parallel Clean Water Act provisions because the "elaborate [statutory] enforcement provisions" present there meant that the Court "[could not] assume[] that Congress intended to authorize by implication additional judicial remedies." *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14-15 (1981) ("*Sea Clammers*"); *see also Alexander v. Sandoval*, 532 U.S. 275, 290 (2001) ("[O]ne method of enforcing" a private right "suggests that Congress intended to preclude others."). Courts have subsequently interpreted *Sea Clammers'* reasoning to preclude a private right of action for damages under the CAA as well. *See, e.g.*, *Powell v. Lennon*, 914 F.2d 1459, 1462 n.7 (11th Cir. 1990) (applying *Sea Clammers* to reject right of action under the CAA).

Plaintiffs here are improperly attempting to sneak through the backdoor of RICO a treble damages action that cannot be brought through the front door of the CAA itself. The sole point of reference for the Plaintiffs' claim of excess emissions—upon which their "compliance factor" is based—is "the emission standard" under the CAA regulations. 5AC ¶ 167. Plaintiffs' case is premised upon the notion that the Subject Vehicles produce on-road emissions in excess of the CAA "emission standard," and Plaintiffs have identified no alternative metric that could be used for determining whether the Subject Vehicles are "clean" or "dirty." That claim, if it is to be brought by anyone, belongs to the federal and California regulators who have demonstrated through their actions against other manufacturers that they are not reticent to call a violation

when they see one.[3] Here, as in *Brown*, "[t]he fraud in this case is bound up in the violation of [the applicable] regulations, and, as such, the RICO claim is at its core an enforcement of these regulations." 753 F. Supp. 2d at 1260-61. But Congress did not intend RICO to shred the CAA's regulatory framework and outsource enforcement of the CAA to private class action lawyers purporting to act as government regulators.[4]

For similar reasons, Plaintiffs' RICO claim falls outside the "zone-of-interests" that Congress sought to protect in passing the CAA. Failing the zone of interests test is an independent reason to dismiss the RICO claim. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129-33 (2014). Just as the plaintiff beer distributorships in *Callahan* fell outside the zone of interests of the state regulatory regime, which was designed to promote temperance, *see Callahan*, 182 F.3d at 267-68, so here Plaintiffs fall outside the zone of interests of the CAA, which was designed to promote air quality, *see* 42 U.S.C. § 7401.

---

[3]     *See* "Volkswagen Clean Air Act Civil Settlement," *epa.gov*, https://www.epa.gov/enforcement/volkswagen-clean-air-act-civil-settlement (last visited Aug. 27, 2019); "Fiat Chrysler Automobiles Clean Air Act Civil Settlement Information Sheet," *epa.gov*, https://www.epa.gov/enforcement/fiat-chrysler-automobiles-clean-air-act-civil-settlement-information-sheet (last visited Aug. 27, 2019).

[4]     Plaintiffs' reliance on the FTP-75 compliance standard to benchmark their litigation-driven testing results dramatically oversimplifies the complex regulatory regime provided for by the CAA and demonstrates the point. Federal regulations permit vehicles to use *authorized* Auxiliary Emissions Control Devices, which can legally reduce the effectiveness of the emissions control system under certain conditions. 40 C.F.R. § 86.1803-01. And Plaintiffs acknowledge that the agencies empowered to enforce emissions regulations—EPA and CARB— "make wide use of PEMS to evaluate vehicles for the presence of defeat devices." 5AC ¶ 153. These agencies, and not Plaintiffs, are the ones with the expertise and authority to enforce the complex regulatory framework of the CAA and "to vindicate the public interest." *Callahan*, 182 F.3d at 266. But despite the intense scrutiny that *all* diesel vehicles have come under since the EPA issued the Notice of Violation to Volkswagen in September 2015, *id.* ¶ 112 n.9, neither agency has determined that any of the Subject Vehicles contains a defeat device. Plaintiffs' attempt to use their litigation-driven testing and interpretation of a single regulatory standard to assert their RICO claim is an impermissible attempt to substitute their interests for the judgment of the regulators and weaponize the CAA in a way Congress never intended.

13

The list of RICO predicate acts is expansive; CAA violations are not included. 18 U.S.C. § 1961(1). Plaintiffs' RICO claim should therefore be dismissed.

**B.      The Direct-Purchaser Rule Prohibits Plaintiffs From Recovering Against Bosch GmbH Under RICO**

The direct-purchaser rule is a second independent reason Plaintiffs' RICO claim should be dismissed. The direct-purchaser rule is a doctrine of standing that bars downstream indirect purchasers from bringing a federal RICO claim against upstream manufacturers. Although originally addressed in the federal antitrust context, *see McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 847-48 (3d Cir. 1996), the Third Circuit has squarely held that it is also applicable to RICO, whose private standing provisions were explicitly modeled on Section 4 of the Clayton Act, *id.* at 855 (citing *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 270 (1992)).[5] Plaintiffs do not (and cannot) allege that they purchased their vehicles directly from Bosch GmbH, and their claim is therefore barred by the direct-purchaser rule.

The direct-purchaser rule was established by the Supreme Court in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). In *Illinois Brick*, the Supreme Court held that the State of Illinois could not bring an antitrust action against the manufacturer of concrete blocks, because the State

---

[5]      *See also Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 616 (6th Cir. 2004) ("indirect purchasers lack standing under RICO and the antitrust laws to sue for overcharges passed on to them by middlemen"); *Hale v. Stryker Orthopaedics*, 2009 WL 321579 at *3 (D.N.J. Feb. 9, 2009) (dismissing a plaintiff's RICO complaint where the plaintiffs did "not plead that they purchased [the products] directly from [the defendants]").

had purchased the blocks from general contractors, who acquired the blocks from masonry contractors, who acquired the blocks from the manufacturers. *Id.* at 726, 735-36.[6]

The Supreme Court recently summarized the "bright-line rule of *Illinois Brick*" as follows: "if manufacturer A sells to retailer B, and retailer B sells to consumer C, then C may not sue A." *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1521 (2019). The Third Circuit has held that the direct-purchaser rule applies equally to RICO claims, and therefore indirect purchasers may not recover under RICO. *See McCarthy*, 80 F.3d at 855 (affirming dismissal of antitrust damages and RICO claims because plaintiffs were not direct purchasers). In doing so, the Third Circuit contrasted the bright-line rule of *Illinois Brick* with the more open-ended "determination of 'proximate-cause' in the negligence context." *McCarthy*, 80 F.3d at 851 n.14. The Third Circuit recognized that the Supreme Court's purpose in drawing a bright-line rule was to avoid the "intractable problem of tracing and apportioning damages between different purchasers in the chain of distribution." *Id.* at 848.

This Court recently applied the direct-purchaser rule to dismiss RICO claims brought by consumers against insulin manufacturers, recognizing "the voluminous federal jurisprudence determining that courts may apply the indirect purchaser rule to RICO actions with the same force as under antitrust law." *See In re Insulin Pricing Litig.*, 2019 WL 643709, at *11, 13 (D.N.J. Feb. 15, 2019).[7] Although this Court found that the consumers had adequately alleged proximate causation for purposes of RICO standing., *id.* at *7, it squarely held that they did not

---

[6]     The Supreme Court further amplified the scope of *Illinois Brick* in *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 545 (1983), and *Associated General Contractors* was a critical precedent on which the Court relied in holding that proximate cause is a required element of a RICO case of action, just as it is under the antitrust laws. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 265-69 (1992).

[7]     This Court in *Insulin* referred to the rule as the "indirect purchaser rule."

satisfy *Illinois Brick* because they were not direct purchasers: they bought the insulin from pharmacies, who acquired it from wholesalers, who acquired it from the manufacturers. *Id.* at *2. This Court therefore dismissed the consumer's RICO claims pursuant to the bright-line direct-purchaser rule. *Id.* at *13.

This Court should do the same here and dismiss Plaintiffs' RICO claim. Similar to the *Insulin* decision, Judge Linares found that Plaintiffs have adequately alleged proximate causation. *See* Feb. 1 Op. at 22-26. However, as the Honorable Brian R. Martinotti noted, Judge Linares did not consider (as the defendants had not presented) the direct-purchaser rule. *See Insulin*, 2019 WL 643709, at *13. Proper application of the *Apple* construct demonstrates that the rule requires dismissal here: Bosch GmbH is a component part supplier "A," which sold to manufacturer "B" (here, one or both of the Mercedes Defendants), which sold to retailers "C" (here, dealers), which sold or leased vehicles to consumers "D" (here, the Plaintiffs). Bosch GmbH had no relation with "C" (dealers) or "D" (consumers) and is three levels removed up the distribution chain from "D." *See* 5AC ¶ 84. In short, vis-à-vis Bosch GmbH, Plaintiffs are indirect purchasers and therefore may not recover under RICO, even if proximate cause were present (which Bosch GmbH disputes). Plaintiffs' RICO claim should therefore be dismissed.[8]

### C.    Plaintiffs May Not Base Their RICO Claim On A "Fraud On The Regulator" Theory

A third independent reason Plaintiffs' RICO claim should be dismissed is because Plaintiffs' theory of "fraud on the regulator" is squarely foreclosed by Supreme Court case law.

---

[8]    Even if Plaintiffs try to blur the Supreme Court's "bright-line rule" by arguing that this Court should consider the alleged RICO enterprise as a whole for purposes of the rule, they are still barred as indirect purchasers because the dealers stand between them and the alleged RICO enterprise. Plaintiffs who purchased used vehicles are even farther removed in the chain back to Bosch GmbH.

To try to satisfy the predicate acts requirement of a RICO claim, Plaintiffs have alleged mail and wire fraud. 5AC ¶ 378. Plaintiffs must therefore plausibly allege the elements of mail and wire fraud, which include that the fraudulent scheme was perpetrated to obtain money or property from the direct victim of the fraud. *See* 18 U.S.C. §§ 1341, 1343.

A centerpiece of Plaintiffs' allegations is that "Bosch" helped Mercedes to submit fraudulent applications to government regulators to obtain certificates of conformity. 5AC ¶¶ 266-77, 381-82. However, the Supreme Court has held that regulatory approvals like the certificates at issue here are not "property" as required to support a mail or wire fraud claim. *See Cleveland v. United States*, 531 U.S. 12, 15, 26 (2000). *Cleveland* instructs that (1) the object of mail or wire fraud must be "property" in "the victim's hands" and (2) regulatory permits or licenses do not constitute "property" in the hands of agencies tasked with granting those approvals. 531 U.S. at 12, 15, 26.[9] Because Plaintiffs' RICO claim is based upon fraud allegedly perpetrated upon the EPA or CARB, they cannot establish the predicate acts of mail or wire fraud, and the RICO claim should be dismissed.

**D.    Plaintiffs Have Failed To Allege A Cognizable RICO Injury**

A fourth independent reason Plaintiffs' RICO claim should be dismissed is for failing to allege a cognizable RICO injury. Plaintiffs seeking to recover under RICO must plausibly

---

[9]    *See also United States v. Murphy*, 836 F.2d 248, 253-54 (6th Cir. 1988) (reversing mail fraud conviction based on misrepresentation to obtain state certificates allowing organizations to conduct bingo games because such certificates were not "property" of the state); *S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 912 F. Supp. 2d 404, 421-22 (E.D. La. 2012) (alleged fraud on the U.S. Patent and Trademark Office to wrongfully obtain patents and trademarks cannot be RICO predicate because alleged conduct did not defraud government of "property"); *Williams v. Dow Chem. Co.*, 255 F. Supp. 2d 219, 225-26 (S.D.N.Y. 2003) ("The fraudulent statements and concealments allegedly directed at the EPA by Defendants do not constitute racketeering activity . . . . because the alleged [mail and wire fraud] scheme was designed to obtain EPA regulatory approval of [pesticide], not to deprive the EPA of money or property.").

allege, among other things, "that [they] suffered an injury to business or property." *Maio v. Aetna, Inc.*, 221 F.3d 472, 482-83 (3d Cir. 2000). A RICO injury must constitute a "concrete financial loss and not mere injury to a valuable intangible property interest." *Id.* at 483 (citing *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)); *see also Parness v. Christie*, 2015 WL 4997430, at *7 (D.N.J. Aug. 19, 2015) (complaint "must contain allegations 'of actual monetary loss, i.e., an out-of-pocket loss' to adequately plead the injury element" of RICO) (citation omitted).

Bosch GmbH recognizes that this Court previously found Plaintiffs' overpayment theory of injury to be a cognizable injury under RICO. *See* Feb. 1 Op. at 17-22.[10] However, Bosch GmbH respectfully submits that in so ruling, this Court misapprehended the relevant caselaw in three important respects. The relevant authorities demonstrate that Plaintiffs have not, and cannot, allege a cognizable RICO injury.

*First*, this Court incorrectly distinguished three cases on the basis that they did not involve claims for overpayment at the time of purchase. *See* Feb. 1 Op. at 19 (distinguishing the *Bridgestone*, *Ignition Switch*, and *McLaughlin* decisions because, *inter alia*, "Plaintiffs allege that they overpaid for the Polluting vehicles *at the time of purchase*"). In fact, in all three of these cases, the plaintiffs alleged that they had overpaid at the time of purchase. In *Bridgestone*, which involved claims that the plaintiffs had purchased tires that were significantly less safe than advertised, the plaintiffs alleged that they would have paid substantially less for the defective tires or the vehicles equipped with them. *In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig.*, 155 F. Supp. 2d 1069, 1089-90 (S.D. Ind. 2001). In *Ignition Switch*, in which plaintiffs

---

[10]    This Court found that Plaintiffs have abandoned their diminished value theory of injury. *See* Feb. 1 Op. at 17. Plaintiffs have not alleged any additional facts in the 5AC that should disturb that ruling.

alleged that a defective ignition switch made their cars more dangerous than advertised, plaintiffs asserted that "had they known about the defect, they would have paid fewer than *x* dollars for the car (or not bought the car at all), because a car with a safety defect is worth less than a car without a safety defect." *In re General Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *7 (S.D.N.Y. July 15, 2016). And in *McLaughlin*, plaintiffs alleged they would have paid less for their "light" cigarettes had they known that they were not as healthy as advertised. *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 220 (2d Cir. 2008), *abrogated on other grounds by Bridge v. Phx. Bond & Indem Co.*, 553 U.S. 639 (2008). Accordingly, in all three of these cases, the courts found that allegations of overpayment at the time of purchase do not suffice to establish a RICO injury. This Court should reach the same conclusion. Plaintiffs simply cannot allege they suffered a concrete financial loss at the time of purchase when they received a vehicle that is fuel efficient, safe, and legal to drive.

*Second*, this Court incorrectly relied upon two out-of-circuit district court decisions in other diesel emissions cases involving other manufacturers, where plaintiffs had pled specific overpayment amounts. Feb. 1 Op. at 14-15. Setting aside whether those cases were correctly decided, this case is different because here Plaintiffs have not alleged a specific overpayment amount. In both the FCA and GM cases, the courts found that the plaintiffs had sufficiently alleged an overpayment injury because they had identified a specific amount of overpayment for their diesel vehicles as compared to a similar gasoline vehicle. *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, and Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 962 (N.D. Cal. 2018) ("Plaintiffs have identified a particular, reasonably narrow range by which they allegedly overpaid for the Class Vehicles—'between $3,120 and $5,000 more for the EcoDiesel option than for the comparable gasoline vehicles.'"); *In re Duramax Diesel Litig.*, 298 F. Supp. 3d

1037, 1071-72 (E.D. Mich. 2018) ("Plaintiffs contend that they 'paid a premium of nearly $9,000, as GM charged more for its Duramax engine than a comparable gas car.' . . . Plaintiffs thus identify a specific payment attributable directly to the vehicle component at issue which they opted to purchase on the basis of fraudulent conduct."). In fact, the *Duramax* court specifically noted that "the contention that they 'would have paid substantially less' [for the vehicles at issue] appears to be premised on some approximation of what the new market value for the vehicles would have been. Determining what that decrease in value would have been seems hopelessly speculative." *Duramax*, 298 F. Supp. 3d at 1071. Here, Plaintiffs have merely alleged that they bought vehicles that "were worth less than what was paid." 5AC ¶ 397(a). There is nothing "concrete" about such a speculative allegation, and it therefore does not suffice to establish a cognizable RICO injury.

The remaining decisions cited by this Court, *see* Feb. 1 Op. at 20-21, do not support finding that Plaintiff's allegations suffice to establish a RICO injury. Importantly, *Avandia* is distinguishable, because the plaintiffs in that case "alleged that they had suffered a concrete economic injury based on the substantial savings they would have experienced had they covered cheaper alternatives to [the drug at issue]." *In re Avandia Mktg., Sales Practices & Prod. Liability Litig.*, 804 F.3d 633, 637, 639-40 (3d Cir. 2015). Plaintiffs in that case identified the specific relevant price comparisons. *Id.* at 636. By contrast, the Plaintiffs here do not seek to recover under RICO for any concrete loss based on the difference in price from similar alternative vehicles. *Aetna* is also distinguishable, because the plaintiffs did not allege that they overpaid by purchasing a product that was different from what they expected, but rather that they did not receive the insurance reimbursement coverage to which they were entitled. *In re Aetna UCR Litig.*, 2015 WL 3970168, at *10 (D.N.J. June 30, 2015) ("Subscriber plaintiffs here are not

20

alleging injury based on their subjective determination of plan value; they claim to have been harmed by Aetna's underpayment of insurance benefits for [out-of-network] services.").

*Third*, the Supreme Court's decision in *Reiter*, which this Court relied upon to find that an alleged overpayment constitutes a RICO injury, Feb. 1 Op. at 21, does not support that result in this case. Significantly, the plaintiff in *Reiter* did not allege that she received a different product than she expected, which is what Plaintiffs are alleging here. Instead, she alleged that an antitrust conspiracy led to the artificial inflation of the price she paid, and that the artificial price inflation was her antitrust injury. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 335 (1979). By contrast, here Plaintiffs' alleged injury is that they purchased a vehicle that is different than what they expected to receive. 5AC ¶ 397(a) ("Plaintiffs . . . believed they were paying for vehicles that met certain emission and fuel efficiency standards and obtained vehicles that did not meet these standards."). Their overpayment theory is therefore based on expectancy, which the cases consistently reject for RICO injury. *See, e.g., Avandia,* 804 F.3d at 638-41 (distinguishing expectancy cases).

In sum, Plaintiffs here assert a treble-damages RICO claim based on nothing more than an unspecified and conclusory overpayment amount resulting from their purported subjective expectations regarding emissions performance from vehicles that remain emissions-certified and safe and legal to drive. These speculative allegations fall far short of RICO's "concrete financial loss" standard, and Plaintiffs' RICO claim should accordingly be dismissed.

## II.   Plaintiffs' Claims Under New Jersey And Georgia Consumer Protection Laws Should Be Dismissed

The 5AC adds claims against "Bosch" for violations of the New Jersey Consumer Fraud Act ("NJCFA"), *see* 5AC ¶¶ 399-418, and violations of the Georgia Uniform Deceptive Trade

Practices Act ("UDTPA"), *see* 5AC ¶¶ 649-53. These claims suffer from fundamental legal defects and should be dismissed.[11]

### A. Plaintiffs Have Not Alleged An Ascertainable Loss, As Required By The New Jersey Consumer Fraud Act

As this Court previously recognized, "[a]scertainable loss is an essential element of a claim under the [NJCFA]." Feb. 1 Op. at 48 (citing *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 97 (D.N.J. 2011)). This Court dismissed Plaintiffs' NJCFA claims as pled against the Mercedes Defendants in the 4AC because Plaintiffs failed to satisfy the standard for pleading ascertainable loss. Feb. 1 Op. at 50. This Court noted that a "price comparison" is necessary to plead ascertainable loss. Feb. 1 Op. at 48. Although Plaintiffs had "set the table for a price comparison, alleging that Plaintiffs would not have purchased or leased the BlueTEC vehicles at the prices they paid, or would have purchased or leased a less expensive alternative," Plaintiffs did not go "one step further to compare the price of a Polluting Vehicle with what they believe to be a comparable replacement." Feb. 1 Op. at 49. This Court specifically cautioned Plaintiffs that they could not rely upon expert testimony as to damages to satisfy the ascertainable loss requirement, because ascertainable loss and damages are separate concepts. Feb. 1 Op. at 50 ("'There is no calculation of "damages sustained" unless the ascertainable loss requirement is

---

[11]     Plaintiffs have not attempted to assert claims against Bosch GmbH under the consumer protection laws of other states. For the reasons explained in Bosch LLC's and the Mercedes Defendants' motions to dismiss, ECF Nos. 117 and 118, all of Plaintiffs' state-law claims are preempted by Section 209(a) of the CAA, 42 U.S.C. § 7543, and are not preserved by Section 209(d). However, preemption requires a more complex analysis to which this Court already devoted attention in its February 1 Opinion, and this Motion presents alternative straightforward grounds for dismissal of Plaintiffs' state-law claims against Bosch GmbH. If Plaintiffs' state-law claims against Bosch GmbH are not dismissed for the reasons presented in this Motion, Bosch GmbH reserves its right to argue those claims are preempted at a later stage of this litigation. *See* Fed. R. Civ. P. 12(h)(2).

first satisfied.  The two concepts indeed have separate functions in the analysis.'") (quoting *D'Agostino v. Maldonado*, 78 A.3d 527, 542 (N.J. 2013)).

In apparent response to this Court's February 1 Order, Plaintiffs added the following paragraph to the 5AC:

> 416. Each Plaintiff and the other Class and Subclass members has suffered an ascertainable loss, namely the difference between the value of what they believed they were purchasing and the value of what they received.  While the precise amount of that loss will be the subject of expert analysis, based on market prices reflecting the value consumers place on "Clean Diesel" Plaintiffs allege that the difference in value is at least 10% of the purchase price.  Plaintiffs anticipate relying on expert analyses, including conjoint analyses of the value consumers place on different product attributes and vehicles with and without certain attributes (including vehicles that have emissions controls that turn on and off and those that are not manipulated), as well as a standard statistical analysis concerning the impact of different attributes on consumers' "willingness to pay." This analysis will quantify at trial the exact amount and such analysis allows for admissible proof of an ascertainable loss, which is alleged at this stage to be at least ten percent.

Plaintiffs' revamped allegations do not allege any sort of a price comparison with a comparable replacement vehicle, which this Court previously instructed is required to plead ascertainable loss.  Indeed, this Court has specifically found that alleging overpayment by a certain percentage is not enough.  *See Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 541 (D.N.J. 2011).  In *Lieberson*, the plaintiff alleged that the defendant "charges a premium of at least $1.00 for the Products and that comparable products cost at least twenty-five (25%) less than those manufactured by Defendant." *Id.* (internal citations and quotation marks omitted). This Court found that these allegations fell short of the ascertainable loss standard because the Court was "unable to quantify the difference in value between the promised product and the actual product received." *Id.* (quotation omitted).  Specifically, the plaintiff "ha[d] not alleged the identity or the cost of any allegedly comparable products" or "alleged the price she paid for the Products." *Id.*

Plaintiffs' allegations in the 5AC suffer from the same defects. None of the named Plaintiffs have alleged the prices they paid for their vehicles. 5AC ¶¶ 25-64. Nor have Plaintiffs alleged the identity or cost of any allegedly comparable product. As this Court noted in *Lieberson*, alleging overpayment by a certain percentage does not suffice to allege ascertainable loss. Plaintiffs' proposed "conjoint analyses" and statistical measures of consumers' "willingness to pay" cannot remedy these defects and will not suffice to establish damages in any event. Indeed, a court recently rejected conjoint analyses as a measure of overpayment damages in three bellwether states—including Missouri, which similarly "requires proof of an 'ascertainable loss.'" *In re Gen. Motors LLC Ignition Switch Litig.*, 2019 WL 3564698, at *7, 14 (S.D.N.Y. Aug. 6, 2019) (finding that "where the law awards damages based on the difference in market value, evidence—including conjoint analyses—that measures only consumers' subjective valuation or willingness to pay is not sufficient evidence of such damages."). Even if it were sufficient to offer expert evidence, Plaintiffs have merely tacked on a conclusory allegation that they overpaid by 10%, and promise to support this number with "expert analyses." There is no indication that these "expert analyses" have been performed; Plaintiffs appear to have pulled the 10% figure out of a hat.

Because Plaintiffs still have not alleged an ascertainable loss after receiving a second bite at the apple, their NJCFA claim should be dismissed with prejudice.

### B.    Plaintiffs Have Not Alleged Ongoing Or Future Harm, As Required By The Georgia Uniform Deceptive Trade Practices Act

Plaintiffs' allegations fail to state a claim under Georgia's UDTPA because Plaintiffs seek injunctive relief but have not alleged ongoing harm or a threat of future harm from Bosch GmbH. "[I]njunctive relief is the only remedy permitted by the UDTPA." *Catrett v. Landmark Dodge, Inc.*, 560 S.E.2d 101, 106 (Ga. Ct. App. 2002); *see also* Ga. Code Ann. § 10-1-373(a)

("A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it . . . ."). "Because injunctions can rectify ongoing or future harm but cannot redress past harm, a plaintiff who cannot show continuing, present adverse effects or a real and immediate threat of future harm lacks Article III standing to pursue an injunction." *Silverstein v. Procter & Gamble Mfg. Co.*, 2008 WL 4889677, at *2 (S.D. Ga. Nov. 12, 2008) (internal citations and quotations omitted). Here, Plaintiffs have at most alleged that they suffered a past harm—they allegedly overpaid when they purchased their vehicles. "A plaintiff who demonstrates past harm, but does not allege ongoing or future harm, has not shown that he is 'likely to be damaged' within the meaning of [Georgia's UDTPA]." *Id.* at *4-5 (finding that plaintiffs lacked standing to bring a claim under the UDTPA because they could not "show that they will suffer ongoing or future harm from Defendant's allegedly deceptive trade practices."); *see also Catrett*, 560 S.E. 2d at 106 (affirming decision granting defendant summary judgment on UDTPA claim because a "misrepresentation cannot be remedied through an injunction").

In short, because Plaintiffs have not alleged ongoing or future harm from Bosch GmbH, their claim for an injunction under Georgia's UDTPA should be dismissed.

**III.   Plaintiffs' Fraudulent Concealment Claims Should Be Dismissed Because Plaintiffs Have Not Alleged Bosch GmbH Had A Duty To Disclose**

Plaintiffs have pled claims of fraudulent concealment against "Bosch" under the laws of Alabama, California, Colorado, Connecticut, Georgia, Idaho, Illinois, Indiana, Maryland, Massachusetts, Minnesota, Mississippi, Missouri, Nevada, New Jersey, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Texas, Utah, Virginia, Washington, West Virginia, and Wisconsin. These claims should be dismissed because Plaintiffs have not alleged that Bosch GmbH had a duty to disclose.

As this Court previously recognized, claims for fraudulent concealment require Plaintiffs to adequately allege a duty to disclose. *See* Feb. 1 Op. at 44.[12] This Court also found that because Plaintiffs had not pled any sort of special relationship with the defendants in this case, the only issue is "whether or not a duty to disclose existed to make a previous statement true." *See* Feb. 1 Op. at 44; *see also Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993) ("[W]here a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'"). This Court concluded that both the Mercedes Defendants and Bosch LLC had made previous statements that gave rise to a duty to disclose. *See* Feb. 1 Op. at 43-45. With respect to Bosch LLC, this Court noted that Plaintiffs had

---

[12]     *See also Dodd v. Nelda Stephenson Chevrolet, Inc.*, 626 So. 2d 1288, 1293 (Ala. 1993) (Alabama law); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 985 (N.D. Cal. 2009) (California law); *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105, 111 (Colo. 1998) (Colorado law); *Saggese v. Beazley Co. Realtors*, 155 Conn. App. 734, 753 (Conn. App. Ct. 2015) (Connecticut law); *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1350-58 (N.D. Ga. 2015) (Georgia, Texas, and Virginia law); *Humphries v. Becker*, 366 P.3d 1088, 1096 (Idaho 2016) (Idaho law); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996) (Illinois law); *First Bank of Whiting v. Schuyler*, 692 N.E.2d 1370, 1372 (Ind. Ct. App. 1998) (Indiana law); *Hogan v. Maryland State Dental Ass'n*, 843 A.2d 902, 908 (Md. Ct. Spec. App. 2004) (Maryland law); *Stolzoff v. Waste Sys. Int'l, Inc.*, 792 N.E.2d 1031, 1044 (Mass. Ap. Ct. 2003) (Massachusetts law); *Taylor Inv. Corp. v. Weil*, 169 F. Supp. 2d 1046, 1064 (D. Minn. 2001) (Minnesota law); *Mabus v. St. James Episcopal Church*, 13 So. 3d 260, 265 (Miss. 2009) (Mississippi law); *Andes v. Albano*, 853 S.W.2d 936, 943 (Mo. 1993) (Missouri law); *Davenport v. GMAC Mortg.*, 2013 WL 5437119, at *3 (Nev. 2013) (Nevada law); *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1108 (N.Y. 2011) (New York law); *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 781 S.E.2d 1, 7 (N.C. 2015) (North Carolina law); *Groob v. KeyBank*, 843 N.E.2d 1170, 1178 (Ohio 2006) (Ohio law); *Matter of Estate of Evasew*, 584 A.2d 910, 913 (Pa. 1990) (Pennsylvania law); *Regions Bank v. Schmauch*, 582 S.E.2d 432, 445 (S.C. Ct. App. 2003) (South Carolina law); *Smith v. Frandsen*, 94 P.3d 919, 923 (Utah 2004) (Utah law); *White v. Potocska, P.C.*, 589 F. Supp. 2d 631, 642 (E.D. Va. 2008) (Virginia law); *Colonial Imports, Inc. v. Carlton Nw., Inc.*, 853 P.2d 913, 917 (Wash. 1993) (Washington law); *Livingston v. K-Mart Corp.*, 32 F. Supp. 2d 369, 374 (S.D. W. Va. 1998) (West Virginia law); *Van Den Heuvel v. A.I. Credit Corp.*, 951 F. Supp. 2d 1064, 1073-74 (E.D. Wis. 2013) (Wisconsin law).

"allege[d] that Bosch intentionally withheld the existence of the defeat device while simultaneously promoting clean diesel technology around the country." Feb. 1 Op. at 43.

The same notably cannot be said for Bosch GmbH. Although the 5AC attributes some promotional activities to "Bosch" generically, it does not allege that Bosch GmbH was involved in advertising to consumers.[13] Indeed, the sources Plaintiffs cite, and which this Court may consider for purposes of this Motion, identify Bosch LLC—and not Bosch GmbH—as having been involved in promoting diesel technology in the United States. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that the court may consider on a motion to dismiss documents plaintiffs rely upon and base their claims upon).

For example, paragraph 294 alleges that "[i]n 2009, Bosch also became a founding member of the U.S. Coalition for Advanced Diesel Cars." However, the article Plaintiffs cite to support this allegation clearly states that Bosch LLC specifically (and not Bosch GmbH) was the founding member. Similarly, paragraph 293 alleges that "[i]n April 2009, Bosch organized and hosted a two-day 'California Diesel Days' event in Sacramento, California." However, the press release Plaintiffs cite explicitly states that Bosch LLC specifically (and not Bosch GmbH) hosted this event.

To take yet another example, paragraph 321 alleges that "Bosch was a member of the Diesel Technology Forum ('DTF')." The next several paragraphs detail various statements by the DTF, which Plaintiffs allege should be attributed to Bosch GmbH by virtue of its purported membership in the DTF. However, the DTF website, which Plaintiffs cite multiple times in the 5AC, reflects that Bosch LLC specifically (and not Bosch GmbH) is the member. *See* "Robert

---

[13]   The best Plaintiffs do is the general and conclusory and insufficient allegation that "Bosch GmbH acted on behalf of its global group" "[i]n its efforts to promote 'Clean Diesel.'" 5AC ¶ 297.

Bosch LLC, Diesel Systems North America," *Diesel Technology Forum*, https://www.dieselforum.org/members/robert-bosch-llc-diesel-systems-north-america (last visited Aug. 27, 2019).[14] Given that there are no plausible allegations that Bosch GmbH was a member of the DTF, there is no basis whatsoever to attribute the DTF's activities to Bosch GmbH.

The only allegation that could conceivably reflect any involvement of Bosch GmbH is a press item cited in paragraph 290, footnote 29, reporting that "German supplier Robert Bosch" planned to promote diesel technology in the United States. But that article too does not specify that Bosch GmbH—as opposed to its U.S. subsidiary Bosch LLC—planned to engage in those efforts, much less that it did so.[15] Plaintiffs thus have not identified any statements by Bosch GmbH that could result in a duty to disclose.

Moreover, to the extent the applicable states would look to the Restatement (Second) of Torts for purposes of determining when a duty to disclose exists, the Restatement would not

---

[14]     This Court may consider this portion of the DTF website for purposes of this Motion, given that Plaintiffs have cited to several other portions of the same website. *See Popejoy v. Sharp Elecs. Corp.*, 2016 WL 3381229, at *3 (D.N.J. June 9, 2016) (on a motion to dismiss, considering portions of a website when plaintiffs had cited to other portions of the website in a prior iteration of their complaint); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426 (explaining that a plaintiff should not be able to "maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.").

[15]     Several of the website links for the sources cited in paragraphs 289-97 of the 5AC no longer work, and the Plaintiffs have not provided these sources to this Court. However, Plaintiffs' counsel attached these sources as exhibits to a complaint filed in a separate litigation. *See* Exhibits 31-40 to First Amended and Consolidated Class Action Complaint, *In re Duramax Diesel Litig.*, No. 2:17-cv-11661-CGS-APP (E.D. Mich. Aug. 4, 2017), ECF Nos. 18-32 through 18-41. For the Court's convenience, these sources as filed in the *In re Duramax Diesel Litigation* are attached as Exhibits A through J to the Declaration of David Wagner in support of this Motion.

support finding that Bosch GmbH owed such a duty. The Restatement extends liability for nondisclosure only to the parties to a transaction. *See* Restatement (Second) of Torts § 551 (1977); *Chrysler Credit Corp. v. First Nat'l Bank & Tr. Co. of Wash.*, 746 F.2d 200, 207 (3d Cir. 1984) ("Section 551 of the Restatement of Torts, Second, accords liability for nondisclosure only if the parties are engaged in a business transaction or stand in a fiduciary relationship."); *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1497 (8th Cir. 1997) ("[A]bsent any relationship between plaintiffs and [defendant], there can be no duty to speak."). Bosch GmbH had nothing to do with the transactions by which the Plaintiffs purchased or leased their vehicles from Mercedes dealers or other third parties, and as a result, Bosch GmbH could not have actively concealed any information from the Plaintiffs in the context of those transactions. It would be absurd to impose upon Bosch GmbH—a German company—a duty to make disclosures to U.S. consumers, when Bosch GmbH had no dealings with those consumers (and thus no way to identify them) and made no statements that could conceivably require correction.

In sum, Plaintiffs have failed to allege the existence of any special relationship with Bosch GmbH or any prior misleading or incomplete statements by Bosch GmbH, so Plaintiffs have not plausibly alleged that Bosch GmbH had a duty to disclose. Plaintiffs' state-law claims for fraudulent concealment against Bosch GmbH should accordingly be dismissed.

## CONCLUSION

For the foregoing reasons, the Fifth Consolidated and Amended Class Action Complaint should be dismissed with prejudice.

Respectfully Submitted,

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

DATED:  August 27, 2019          By:  *s/ Jeffrey A. Rosenthal*
                                 Jeffrey A. Rosenthal
                                 Carmine D. Boccuzzi, Jr.
                                 One Liberty Plaza
                                 New York, NY 10006
                                 Tel. (212) 225-2000
                                 Fax: (212) 225-3999
                                 jrosenthal@cgsh.com
                                 cboccuzzi@cgsh.com

                                 Matthew D. Slater
                                 2112 Pennsylvania Ave., NW
                                 Washington, DC 20037
                                 Tel. (202) 974-1500
                                 Fax: (202) 974-1999
                                 mslater@cgsh.com

                                 CRITCHLEY, KINUM & DENOIA, LLC
                                 Michael Critchley, Sr.
                                 Amy Luria
                                 75 Livingston Avenue
                                 Roseland, NJ 07068
                                 Tel. (973) 422-9200
                                 Fax: (973) 422-9700
                                 mcritchley@critchleylaw.com
                                 aluria@critchleylaw.com

                                 *Attorneys for Defendant*
                                 *Robert Bosch GmbH*