UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

IN RE MERCEDES-BENZ EMISSIONS LITIGATION

Civil Action No. 2:16-cv-881 (KM) (ESK)

## SEARCH TERM PROTOCOL

### I. GENERAL GUIDELINES

1. **General.** The purpose of this Order is to facilitate the exchange of electronically stored information (as defined in Federal Rule of Civil Procedure 34(a)(1)(A), "ESI") and hard copy documents in an efficient manner and in accordance with the Federal Rules and the Protocol for the Discovery of Paper Documents and Electronically Stored Information. See Dkt. No. 48, Stipulation (Sep. 2, 2016). This Order applies to all Parties.

2. **Definitions of Production and Requesting Party.** The phrase "Producing Party" shall mean the party producing Documents in response to any request for production of documents pursuant to Rule 34(a) of the Federal Rules of Civil Procedure. The phrase "Requesting Party" shall mean the party receiving the production of Documents in response to any request for production of documents pursuant to Rule 34(a) of the Federal Rules of Civil Procedure.

3. **Scope.** Except as specifically set forth herein, this Order does not: (a) alter or affect the applicability of the Federal Rules of Civil Procedure ("Federal Rules") or any Local Rules of the U.S. District Courts ("Local Rules"), as applicable; (b) address, limit, determine, or affect the relevance, discoverability, or admissibility as evidence of any document or ESI,

regardless of whether the document or ESI is to be preserved, is preserved, or is produced; or (c) alter or affect the objections to discovery available under the Federal Rules.

4. **Limitations and Non-Waiver.** By stipulating to this Order and agreeing to produce documents, generally, in a particular form or forms, no Party waives any objections to producing any particular document or category of documents on any grounds whatsoever.

5. **Variations.** If any Party identifies a circumstance where application of this Order is not technologically practicable, the Party will disclose to all other Parties the reason(s) for, and circumstances surrounding, the need to vary from this Order, and the Parties will meet and confer in an effort to reach agreement on an appropriate deviation from this Order. In the event the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

6. **Transparency.** To permit Requesting Parties an appropriate level of transparency into the Producing Party's electronic search process, the Parties will endeavor to be reasonably transparent regarding the documents subject to targeted collections or culling via search terms. The Producing Party does not waive their right to work product protections, and this paragraph is not intended to compel disclosure of work product.

## II. IDENTIFICATION AND COLLECTION OF DOCUMENTS AND ESI

7. **Custodians and Sources.** The Parties have agreed to exchange information regarding the identification, preservation, and collection of sources of relevant ESI, including information related to current and former internal departments, divisions, committees, or teams, and individual members of such departments, divisions, committees, or teams. The parties agree to continue to meet and confer in an effort to agree upon the following: (a) the identity and role of custodians possessing relevant information and from whom documents will be collected or produced; (b) the location(s) and description(s) of relevant data sources including custodial, non-custodial, and third-party documents; (c) the identity and scope of sources of documents and ESI

2

to be produced without the use of a search methodology; (d) applicable timeframe for collection and review of documents; and (e) prioritization of categories of documents and ESI to be collected, reviewed, and produced. To the extent the Requesting Party believes additional sources should be searched, the parties will meet and confer on that topic.

8. **Known Responsive ESI Must Be Produced.** Documents or ESI reasonably known by the Producing Party to be responsive to a discovery request shall be produced without regard to whether it was responsive to any search methodology described herein or developed in accordance with this Order, unless Counsel specifically identifies the documents being withheld and has a specific objection for withholding each withheld document.

9. **Discrete Document Collections / Custodian Identified Files.** Those portions of the Parties' documents representing discrete folders or collections of information that are reasonably known to contain documents likely to be responsive to a discovery request, such as relevant folders of ESI that are identified or segregated by the Producing Party through the civil litigation process, shall be identified and collected without the use of search terms or any other content-based filtering to cull or limit the scope of Documents from the discrete set or grouping, and produced on a rolling basis within sixty (60) days of entry of this Order. Notwithstanding a Party's awareness that a discrete collection is likely to contain responsive information, a Producing Party may, in good faith, withhold Documents from any such discrete collection based on responsiveness, confidentiality, privilege, or other protection(s) from disclosure or production. In addition, should the Producing Party believe that a discrete folder or collection of information is too voluminous to make review of each document proportional to the needs of the case, the Parties shall meet and confer to discuss a resolution. A Receiving Party may also request that the Parties meet and confer if it identifies any deficiency in the productions. Should

the Parties be unable to reach a resolution after a meet and confer, the Parties may seek a further order from the Court as provided in the Stipulated General Order on Proceedings Before the Special Master.

10. **Key Word Searching.** If the Producing Party is identifying or culling potentially responsive materials, which are not already known to be responsive, using search terms, the Parties will meet and confer about search terms in English, German, and any other languages used in the Producing Party's documents. During the meet and confer process, the Producing Party will provide a list of relevant English and German company terminology (or equivalent) and relevant project and code names, code words, acronyms, abbreviations, and nicknames, if any. Before implementing search terms, the Producing Party will disclose information regarding the search platform to be used, a list of search terms in English and German in the exact forms that they will be applied (i.e., as adapted to the operators and syntax of the search platform), any date filters, or other culling methods after which the Receiving Party may propose additional terms or culling parameters. The Parties shall participate in an iterative and cooperative approach in which the Parties will meet and confer regarding reasonable and appropriate methods to achieve an appropriate level of recall (the percentage of responsive documents in the collection against which the search terms were run which include a search term), including hit reports, opportunities for the Parties to propose additional search terms, as well as transparent and cooperative validation procedures and random sampling both of nonresponsive sets and of the entire collection against which search terms were run, as described below. Hit reports, validation metrics, and sampling are necessary quality control measures for search terms.

11. **Hit Reports.** In the event that a Party claims burden with respect to modified and additional search terms proposed by the Requesting Party, the Producing Party will provide a hit

4

report for each document collection (for Defendants, there will be both US and German collections) where the terms were applied, including the following with respect to each proposed or modified search term in the collection:

    a. The number of documents with hits for that term;

    b. The number of unique documents, i.e., documents which do not have hits for any other term, for that term;

    c. The number of family members, including the documents with hits, of the documents with hits for that term; and

    d. The number of unique family members of the documents with hits for that term.

The hit report will also include the total number of documents in the de-duplicated collection against which the search terms were applied, the total number of unique documents containing hits, and the total number of unique family members, including the documents with hits, of the documents with hits. It is understood that the unique hit numbers would be document collection specific, as European custodial data will not be comingled with U.S. data for deduplication. The Parties will meet and confer to resolve disagreements over the search terms or their application.

    12. **Validation of Search Methodology and Results**: To evaluate the recall of relevant documents within the search results the Parties will meet and confer within ten (10) days of this Order regarding validation procedures and random sampling.[1] The Producing Party will review simple random samples of documents to ensure that appropriate levels of responsive

---

[1] All references to random samples or random sampling herein shall include the provision of the standard statistical metrics (the composition and size of the size of the collection being sampling, confidence level, confidence interval, etc.) necessary to evaluate the sample in context. The size of the statistically random sample shall be calculated using a confidence level of 95% and a margin of error of 5%.

5

documents are identified through the search term process, as described below. The Producing Party's counsel will review the sample documents for responsiveness. Responsive, non-privileged documents from the validation shall be produced to the Requesting Party. Any responsive documents deemed privileged by the Producing Party's counsel will be either entirely withheld from viewing by the Receiving Party or redacted prior to viewing by the Receiving Party. Responsive documents withheld as privileged will be logged on a privilege log. The Producing Party agrees to provide metrics from the validation review to the Requesting Party. The Parties will then work collaboratively to determine whether additional terms need to be created or if modifications should be made to the search criteria to address the irregularities or deficiencies. To the extent the Parties disagree regarding the addition of more terms or the modification of the search criteria, they will meet and confer in an effort to resolve the dispute, and if they cannot reach agreement, the matter may be submitted to the Court for resolution.

a. **Defendants' Validation**

   i. **Dropped Item Validation.** If the Requesting Party and Producing Party cannot agree on search criteria the Requesting Party may request once that the Producing Party conduct a sampling of the incremental hits proposed by the Requesting Party. This incremental/dropped item analysis will be applied to ensure that large percentages of responsive documents are not being inadvertently omitted through changes to the search criteria. This will draw a simple random sample from the documents that uniquely hit on the Requesting Party's criteria set but do not hit on the Producing Party's criteria. The Producing Party will review the samples of the Dropped documents for responsiveness to ensure that responsive documents had not been dropped. Once the Producing Party has identified responsive items, they shall be provided to the Requesting Party along with the

6

metrics of the sample. The parties will then meet-and-confer to determine whether additional terms need to be created to capture these items or if modifications made to the criteria should be changed so these items would still be included.

    ii.    **Non Hit Validation.** As search criteria are being developed and used to move resulting documents forward into document review, the Producing Party will review simple random samples of documents that did not hit on any of the search criteria being used (the "Non Hit"). The Producing Party should review the Non Hit documents for responsiveness. The purpose of this phase is to enable calculation of elusion (the number of responsive documents not captured by the search process). As with the Dropped Item Validation, any documents that are deemed responsive during review shall be shared with the Receiving Party. The Parties will evaluate the metrics, relevant documents, and existing measures/estimates of relevant documents identified through the finalized search terms to determine whether additional search criteria or modifications to existing criteria are necessary to capture additional responsive documents. The Parties shall confer on the appropriate timing and frequency of Non Hit validation, which is intended to validate tentatively agreed search terms or, if the Parties are unable to agree on search terms, to validate a Producing Party's proposed search terms at impasse. The Parties shall also confer on carrying out Non Hit validation if and when the corpus of materials being reviewed is increased materially since the time of a prior Non Hit validation for a given set of search terms.

    iii.    **Post-Production Validation.** At the conclusion of the process described above, and after generating the production set, the Producing Party will disclose the size of the collection against which the search terms were run and the number of responsive

documents identified for production or withheld as privileged, and the Producing Party will conduct validation testing. A simple random sample will be drawn from four "Subcollections" of documents. Subcollection 1 ("Responsive and Produced") consists of all search collection documents coded as responsive and produced by the Producing Defendant, including privileged documents. Subcollection 2 ("Non-Responsive and Produced") consists of documents that were produced but that were not coded as responsive. Subcollection 3 ("Reviewed and Non Responsive") consists of all search collection documents reviewed, coded as non-responsive, and not produced by the Producing Defendant. Subcollection 4 ("Not Known") consists of all search collection documents that did not contain a search term and were not reviewed for responsiveness by the Producing Party. Family relationships will not be considered in defining the subcollections; each document will enter the subcollection corresponding to its own review status, regardless of the review status of any other documents in its family. The sample will be created by combining separate simple random samples drawn from each Subcollection (the "Validation Sample"), drawing 400 documents from Responsive Subcollection 1, 400 documents from Non Responsive Subcollection 2, 400 documents from Non Responsive Subcollection 3, and 1,800 from Not Known Subcollection 4. The Producing Party will then produce responsive, non-privileged documents identified during the validation review, as follows:

    1.    The Validation Sample will be reviewed by the Producing Defendant to determine the responsiveness of the documents in the Validation Sample. During the course of the Validation Sample review, the documents will be presented to and reviewed by the Reviewers in random or arbitrary (e.g. by

MD5 hash value) order, i.e., not ordered by any other process or grouped by subset. The Reviewers will not be provided with any information concerning the Subcollections, the samplings, the prior coding of any document by any process, whether any document contained a search term, or whether any document had previously been reviewed.

2.  Once the Validation Review is complete, the Producing Defendant will prepare (and provide to the Plaintiffs) a table listing each of the documents in the Validation Sample (the "Validation Report"). For each document, the table shall include: (i) the Bates number of the document (for documents produced), or a control/identification number (for non-produced documents); (ii) the Subcollection from which the document came; (iii) the Reviewer's responsiveness coding for the document; (iv) the Reviewer's privilege coding for the document; and (v) a flag indicating whether the document contained a search term. All documents in the Validation Sample coded as privileged by the Reviewer shall be included on the Producing Defendant's privilege log.

3.  Within seven (7) days of the completion of the Validation Report, the Producing Party will provide the Receiving Party with: (i) a copy of the Validation Report; (ii) the statistics and estimates detailed in this Order; and (iii) a copy of each non-privileged responsive document in the Validation Sample that was not previously produced or identified for production. The Producing Party shall also provide the Receiving Party with a list of any other samples drawn from any Subcollection for possible inclusion in the Validation Sample, or considered or evaluated for such inclusion in the Validation Sample, but not used in the

Validation Sample, and for each such listed sample, provide a table listing each of the documents in the listed sample. For each document, the table shall include: (i) the Bates number of the document (for documents produced), or a control/identification number (for non-produced documents); (ii) the Subsample from which the document came; (iii) a flag indicating whether the document contained a search term, and, if the Reviewer coded the documents, (iv) the Reviewer's responsiveness coding for the document; and (v) the Reviewer's privilege coding for the document. The Producing Party shall also provide the Receiving Party with a copy of each non-privileged, responsive document in the listed samples that was not previously produced or identified for production. All responsive documents in these listed samples coded as privileged by the Reviewers shall be included on the Producing Party's privilege log.

4. The Parties will meet and confer regarding any disagreements about the classification of individual documents and additional search criteria or modifications to existing criteria that are proposed after the Receiving Party reviews the responsive documents provided by the Producing Party after validation review. The purpose for this phase is to verify that acceptable levels of substantive, responsive documents are identified and produced.

b. **Plaintiffs' Validation.** Unlike Defendants, which are large corporations, Plaintiffs are individual consumers with comparatively smaller amounts of discoverable ESI. Plaintiffs have agreed to perform searches of emails and other discoverable ESI, using search terms, related to the issues in the case. Plaintiffs will meet and confer with Defendants regarding each Plaintiff's search and shall perform appropriate sampling and quality control to

achieve an appropriate level of validation of Plaintiffs' search term results, including providing Defendants with review metrics (*e.g.*, for precision), from initial review and validation samples. At Defendants' request, Plaintiffs shall meet and confer with Defendants concerning the application of validation procedures based on those specified in paragraph 12(a) above, and if the Parties are unable to agree on such procedures, Defendants may seek a further order from the Court as provided in the Stipulated General Order on Proceedings Before the Special Master.

13. **Use of TAR or Other Search Technologies.** If the Producing Party decides to use TAR, including "predictive coding," to identify or cull documents to be reviewed or produced, the Producing Party will notify the Receiving Party in advance to discuss an appropriate protocol for that type of review.

14. **Unsearchable Documents.** Documents that have been identified as potentially responsive and for which text-based search technologies are fundamentally ineffective, including images, audio files, or hard copy documents, must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text. Prior to the production of such unsearchable items, the Producing Party may conduct a page-by-page review for responsiveness, confidentiality, privilege, and other protections.

15. **Reassessment.** After the completion of the search methodology meet and confer sessions, a Producing Party may encounter the need to reassess a search methodology and/or validation process and, in such case, the Producing Party will notify the Requesting Party and the Parties will meet and confer to address any issues in a reasonable and timely manner.

16. **Good faith.** The Parties will act in good faith and use these procedures to identify and reduce the potential for disputes that may arise in connection with the search and/or review methodologies selected by the Producing Party.

17. **Continuing Obligations.** The Parties recognize that discovery shall be an iterative and cooperative process. The Parties will continue to meet and confer regarding any issues as necessary and appropriate. This Order does not address or resolve any objections to the scope of the Parties' respective discovery requests.

18. **Reservation of Rights.** The Parties retain the right, upon reviewing any productions made by another Party in this action or conducting other investigation and discovery, to request that documents or ESI from additional non-custodial data sources and custodians be produced or that additional methods of identifying documents or ESI be applied to the original or current non-custodial data sources and custodians. The Parties will meet and confer regarding such request(s) prior to any search or production related thereto.

### III. ESI LIAISONS

To promote transparency, communications, and cooperation between the Parties, the Parties will designate e-discovery liaisons for purposes of meeting and conferring on ESI topics. The ESI liaison for Plaintiffs shall be Christopher L. Ayers of Seeger Weiss LLP and Sean R. Matt of Hagens Berman Sobol Shapiro LLP. The ESI liaison for MB Defendants shall be Clark Adams of Gibson Dunn & Crutcher. The ESI liaison for Bosch Defendants shall be Christian J. Mahoney and Matthew Aglialoro of Cleary Gottlieb Steen & Hamilton. All productions of ESI by any Party or non-party shall be sent to the parties' respective ESI liaison and lead counsel.

\* \* \* \* \*

DATED: January 8, 2020.

Hon. Dennis M. Cavanaugh (Ret.),
Special Master