**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE MERCEDES-BENZ EMISSIONS LITIGATION | Civil Action No. 16-cv-881 (KM) (ESK)<br><br>**OPINION** |

**JOSEPH A. DICKSON, U.S.M.J.**

This matter is before the Court upon three applications by Defendants Daimler AG ("Daimler") and Mercedes-Benz USA ("Mercedes") (collectively, the "Mercedes Defendants").[1] First, the Mercedes Defendants appeal the Special Master's October 4, 2019 Order & Opinion compelling the Mercedes Defendants to produce certain personal data identifying likely custodians of relevant documents. (ECF No. 246). Second, the Mercedes Defendants appeal the Special Master's November 4, 2019 Order & Opinion denying a stay of the October 4, 2019 Order & Opinion pending the disposition of Defendants' initial appeal, and petition this Court for an emergency stay of the Special Master's October 4, 2019 Order & Opinion. (ECF No. 249). Third, the Mercedes Defendants appeal the Special Master's November 4, 2019 Order & Opinion (the "GDPR Ruling") resolving the parties' discovery dispute involving the parties' proposed Discovery Privacy Orders and the European Union's ("EU") General Data Protection Regulation ("GDPR"). (ECF No. 263). Plaintiffs oppose each of the Mercedes Defendants' applications.

---

[1] On November 18, 2019, this case was reassigned to the Honorable Kevin McNulty, U.S.D.J., and the Honorable Edward S. Kiel, U.S.M.J., for all further proceedings. (ECF No. 262). In light of the undersigned's familiarity with the history of this case and the issues on appeal from the Special Master, and in the interest of judicial economy, and with the approval of Judge McNulty and Judge Kiel, the undersigned agreed to hear and decide the parties' pending appeals. (ECF No. 269).

(ECF Nos. 247, 256, 272). The Mercedes Defendants filed a reply in support of two of their appeals, the appeal of the Special Master's October 4, 2019 Order & Opinion and the appeal of the Special Master's November 4, 2019 GDPR Ruling. (ECF Nos. 258, 272). Pursuant to Federal Rule of Civil Procedure 78, the Court did not hear oral argument. After carefully considering the parties' submissions, and for the reasons stated herein, the Mercedes Defendants' appeals, (ECF Nos. 246, 249, 263), are **DENIED**.

I. <u>**BACKGROUND**</u>

The Mercedes Defendants' appeals are the culmination of an ongoing and overarching dispute over the balancing of Plaintiffs' discovery needs pursuant to Federal Rule of Civil Procedure 26 and the Mercedes Defendants' compliance with privacy regulations pursuant to the GDPR.

**A. The Origins of the Parties' GDPR Dispute**

The GDPR, adopted and implemented by the European Parliament in mid-2016, concerns the data protection and privacy of all EU citizens. Critical to the present dispute is the GDPR's regulation of the transfer of EU citizens' personal data outside of EU member states, such as transfer to the U.S. The GDPR broadly defines personal data as "any information relating to an identified or identifiable natural person." GDPR Article 4(1).[2] This broad definition of personal data inherently includes information like an individual's name and job title, information that is generally considered benign in U.S. litigation and must be produced in discovery pursuant to the Federal Rules of Civil Procedure. As a German company, Daimler is subject to the GDPR.

---

[2] The full text of the GDPR is publicly available online at https://eur-lex.europa.eu/legal-content/EN/TXT/?qid=1532348683434&uri=CELEX:02016R0679-20160504.

In June and July of 2019, the parties met and conferred to establish confidentiality and privacy protections for the exchange of discovery. (ECF No. 246 at 4; ECF No. 256 at 1). While the parties were able to agree to a Stipulated Discovery Confidentiality Order governing the confidentiality and disclosure of U.S. data and documents, the parties were not able to agree on a Discovery Privacy Order governing the confidentiality and disclosure of foreign private data that may otherwise be subject to certain protections under the GDPR. The parties submitted to the Special Master competing proposed Data Privacy Orders, each with differing approaches to discovery that the parties felt best addressed and protected their respective privacy concerns. The parties also submitted briefing on the issue to the Special Master in July and August of 2019 and appeared for oral argument before the Special Master in September of 2019. As discussed in Section I.C. below, the Special Master adopted and entered the Plaintiffs' proposed Discovery Privacy Order on November 4, 2019. (ECF No. 250).

### B. The Custodian Identification Dispute and the Special Master's October 4, 2019 Order & Opinion

In the midst of the parties briefing the GDPR dispute, Plaintiffs' filed a letter application to the Special Master for an Order compelling the Mercedes Defendants to produce basic information about their custodial and non-custodial sources that have responsive documents and electronically stored information ("ESI"). (ECF No. 247 at 13; ECF No. 246-5, Ex. D). Plaintiffs requested information such as organization charts and the names, titles, and dates of employment for certain groups of employees. (ECF No. 246-5, Ex. D at 3). The Mercedes Defendants objected to Plaintiffs' requests as premature, unduly burdensome, and "improperly leapfrogging" the Special Master's ruling on the GDPR dispute. (ECF No. 246 at 5).

On October 4, 2019, the Special Master ruled on Plaintiffs' request for custodial information and ordered the Mercedes Defendants to provide Plaintiffs, within 30 days:

3

> (1) organization charts, or equivalent information, covering the "relevant period" for both Mercedes and Daimler;
>
> (2) the identity, by name, title and dates of employment of each current or former employee with known relevant information;
>
> (3) the identity of each current and former employee, by name and position, whose job responsibilities included interacting with Bosch regarding the class of vehicles; and
>
> (4) the identity of each current and former employee, by name and position, whose job responsibilities included interacting with federal and state regulators.

(ECF No. 244 at 3-4). The Special Master determined that Plaintiffs must be provided this information "in order to evaluate and engage in a meaningful meet and confer with respect to the Mercedes Defendants' proposed custodians." (Id. at 3). With respect to the Mercedes Defendants' concerns regarding the GDPR, the Special Master noted that the Mercedes Defendants may provide the above information pursuant to a protective order that the parties agree on. (Id. at 4, n. 1). Plaintiffs notified the Special Master by email that there was no need for "any additional protective order" to address GDPR concerns because the Court had already entered a Discovery Confidentiality Order. (ECF No. 246, Ex. G). The Special Master responded that the "existing protective order should suffice." (Id.).

The Mercedes Defendants subsequently appealed the Special Master's October 4, 2019 Order & Opinion, arguing that: (1) the Special Master's ruling failed to consider Daimler's GDPR obligations and failed to conduct the international comity analysis required by Société Nationale Industrielle Aérospatiale v. U.S. Dist. Court for S. Dist. of Iowa, 482 U.S. 522 (1987), and (2) even if the GDPR were not a barrier to production, the compelled information is irrelevant, overbroad, and outside the scope of permissible discovery under the Federal Rules of Civil Procedure. (ECF No. 246).

While the appeal was pending, the parties, by way of joint letter dated November 21, 2019, requested a permanent modification to the Special Master's October 4, 2019 Order & Opinion. (ECF No. 268). The Court approved the modification, which required:

> the production of only organizational charts (or lists of individuals, with the department and title of each, to the extent the individuals are not on organizational charts) for the departments of current and former employees who, based on a reasonable good-faith search, the Mercedes Defendants have identified as having information responsive to Plaintiffs' first, second, and third sets of Requests for Production.

(ECF No. 270 at 2). The modification thereby narrowed the issues on the first appeal down to one: "whether the names of certain current and former Daimler AG employees who are European Union citizens should be produced subject to the Discovery Confidentiality Order or redacted." (Id.). This issue remains pending before the Court. In the interim, Plaintiffs agreed that Daimler AG may temporarily redact the names of current and former employees from the organizational charts and employee lists it provides to Plaintiffs. (Id. at 2).

### C. The Special Master's November 4, 2019 Orders & Opinions

On November 4, 2019, the Special Master issued a series of rulings related to the parties' ongoing discovery disputes. (ECF Nos. 250, 251, 252). The Mercedes Defendants appealed two of those rulings to this Court.

First, the Special Master issued an Order & Opinion denying the Mercedes' Defendants application for a stay of the October 4, 2019 Order & Opinion pending this Court's resolution of the first appeal. (ECF No. 252). Without a stay, the Mercedes Defendants needed to produce the unredacted discovery ordered by the Special Master in the October 4, 2019 Order & Opinion by November 12, 2019. (ECF No. 244 at 4). On November 6, 2019, the Mercedes Defendants appealed the Special Master's denial of a stay to this Court and moved to stay the Special Master's October 4, 2019 Order & Opinion until this Court could resolve the underlying appeal. (ECF No.

249). In the interests of fairness and judicial economy, the undersigned, by way of Letter Order dated November 7, 2019, temporarily stayed the Special Master's October 4, 2019 Order & Opinion until the parties could fully brief the issues and present their positions on the record at oral argument. (ECF No. 254). The parties agreed to extend the temporary stay until the Court resolved the pending appeals. (ECF No. 268 at 2).

Next, the Special Master resolved the parties' July 2019 discovery dispute discussed in Section I.A. above by entering Plaintiffs' proposed Discovery Privacy Order, (ECF No. 251), and the GDPR Ruling setting forth the legal basis for adopting Plaintiff's proposed Discovery Privacy Order and the ways it affects the Mercedes Defendants' GDPR concerns. (ECF No. 251). In the GDPR Ruling, the Special Master conducted the international comity analysis set forth in Société Nationale, and found that the factors weighed in favor of disclosing, unredacted:

> the names, positions, titles or professional contact information of relevant current or former employees of any Defendant or third parties identified in relevant, responsive documents, data, or information produced in discovery in this Action. The parties will not be prohibited from redacting irrelevant personal information of an intimate or private nature, or private data that is objectively irrelevant to this Action.

(Id. at 9). The Special Master opined:

> [T]he Discovery Confidentiality Order provision allowing a producing party to designate and protect as "Highly Confidential" information that the producing party claims to be Foreign Private Data[,] such as employee names, sufficiently balances the EU's interest in protecting its citizens private data and the U.S. legal system's interest in preserving and maintaining the integrity of the broad discovery provisions set forth in the Federal Rules of Civil Procedure.

(Id. at 8-9).

On November 18, 2019, the Mercedes Defendants appealed the Special Master's GDPR Ruling, arguing that providing such information unredacted, even with the Discovery Confidentiality Order provision in place, renders EU citizens' private data unprotected and is

249). In the interests of fairness and judicial economy, the undersigned, by way of Letter Order dated November 7, 2019, temporarily stayed the Special Master's October 4, 2019 Order & Opinion until the parties could fully brief the issues and present their positions on the record at oral argument. (ECF No. 254). The parties agreed to extend the temporary stay until the Court resolved the pending appeals. (ECF No. 268 at 2).

Next, the Special Master resolved the parties' July 2019 discovery dispute discussed in Section I.A. above by entering Plaintiffs' proposed Discovery Privacy Order, (ECF No. 251), and the GDPR Ruling setting forth the legal basis for adopting Plaintiff's proposed Discovery Privacy Order and the ways it affects the Mercedes Defendants' GDPR concerns. (ECF No. 251). In the GDPR Ruling, the Special Master conducted the international comity analysis set forth in Société Nationale, and found that the factors weighed in favor of disclosing, unredacted:

> the names, positions, titles or professional contact information of relevant current or former employees of any Defendant or third parties identified in relevant, responsive documents, data, or information produced in discovery in this Action. The parties will not be prohibited from redacting irrelevant personal information of an intimate or private nature, or private data that is objectively irrelevant to this Action.

(Id. at 9). The Special Master opined:

> [T]he Discovery Confidentiality Order provision allowing a producing party to designate and protect as "Highly Confidential" information that the producing party claims to be Foreign Private Data[,] such as employee names, sufficiently balances the EU's interest in protecting its citizens private data and the U.S. legal system's interest in preserving and maintaining the integrity of the broad discovery provisions set forth in the Federal Rules of Civil Procedure.

(Id. at 8-9).

On November 18, 2019, the Mercedes Defendants appealed the Special Master's GDPR Ruling, arguing that providing such information unredacted, even with the Discovery Confidentiality Order provision in place, renders EU citizens' private data unprotected and is

contrary to EU law and U.S. principles of international comity. (ECF No. 263). This appeal, like the Mercedes Defendants' two prior appeals, are fully briefed and ripe for review. However, because the issues on appeal substantially overlap, and because the Special Master's comity analysis goes to the heart of the issues, resolution of the Mercedes Defendants' appeal of the Special Master's GDPR Ruling obviates the need to address the merits of the Mercedes Defendants' two prior appeals. The Court will therefore focus its analysis on the Special Master's GDPR Ruling, (ECF No. 251), the Mercedes Defendants' appeal of the GDPR Ruling, (ECF No. 263), and the parties' related briefing to resolve the instant applications.

## II. DISCUSSION

### A. Legal Standard Applicable to the Review of the Special Master's GDPR Ruling

The parties disagree on the applicable legal standard to the Court's review of the Special Master's GDPR Ruling. The Mercedes Defendants argue that the Court reviews decisions on non-dispositive matters by the Special Master in the same manner that it would for a Magistrate Judge—under the "clearly erroneous or contrary to law" standard. (ECF No. 263-1 at 7). Under this standard, the Court reviews findings of fact for "clear error," but reviews de novo any legal conclusions. Eisai Co. v. Teva Pharm. USA, Inc., 629 F. Supp. 2d 416, 424 (D.N.J. 2009). The Mercedes Defendants contend that the Special Master misapplied the relevant legal authorities and standards in the GDPR Ruling, and so the Court should review the Special Master's legal conclusions de novo. (ECF No. 263-1 at 7-8). In contrast, Plaintiffs argue that because the Mercedes Defendants challenge a discovery ruling, and one that implicates international comity, the Court reviews the GDPR Ruling under the even more deferential abuse of discretion standard. (ECF No. 272 at 9).

7

The Court finds that the appropriate standard of review to apply to the Special Master's GDPR Ruling is the abuse of discretion standard. Pursuant to the Court's April 11, 2019 Order appointing the Special Master, the authority of the Special Master is coextensive with those of a Magistrate Judge in the District of New Jersey pursuant to Local Civil Rule 72.1. (ECF No. 195 at 7). As such, any appeal of an action or decision made by the Special Master shall be filed with the Court pursuant to Local Civil Rule 72.1(c)(1). (Id.). In a more recent Opinion, the Honorable Kevin McNulty, U.S.D.J., set forth the standard of review that the Court applies to an appeal filed pursuant to Local Civil Rule 72.1(c)(1):

> A Magistrate Judge's decision is to be overturned only when the ruling was clearly erroneous or contrary to law. The party filing the notice of appeal bears the burden of demonstrating that the magistrate judge's decision was clearly erroneous or contrary to law. A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. A ruling is contrary to law if the Magistrate Judge has misinterpreted or misapplied applicable law.
>
> Where an appeal seeks review of a matter within the exclusive purview of the Magistrate Judge, such as a discovery dispute, the abuse of discretion standard must be applied. Where a magistrate judge is authorized to exercise his or her discretion, the decision will be reversed only for an abuse of discretion.

Virginia St. Fidelco, L.L.C. v. Orbis Prod. Corp., No. 11-2057 (KM) (JBC), 2018 WL 1399304, at *2 (D.N.J. Mar. 20, 2018) (internal citations and quotations omitted) (applying an abuse of discretion standard to the Magistrate Judge's decision to exclude a party's untimely and non-compliant expert reports). Judge McNulty also noted that applying "[a]buse of discretion review . . . may get us to much the same place" as if the Court applied a "clearly erroneous or contrary to law" standard. Thompson v. Real Estate Mortg. Network, Inc., No. 11-1494 (KM) (MAH), 2017 WL 1157859, at *1 (D.N.J. Mar. 28, 2017). "[A]s a practical matter, [abuse of discretion review] incorporates clear-error review of factual issues and plenary review of legal questions." Id. (citing Koon v. United States, 518 U.S. 81, 100 (1996)).

8

Here, the GDPR Ruling is a ruling on discovery, on what personal identifying information the Mercedes Defendants are prohibited from redacting or permitted to redact in the organizational charts and employee lists that the Special Master Ordered be produced in the October 4, 2019 Order & Opinion. The GDPR Ruling is within the purview of the Special Master's authority pursuant to his appointment. (ECF No. 195 at 7). Additionally, the Special Master undertook an international comity analysis to arrive at his ruling, which warrants the application of an abuse of discretion standard. For instance, the United States Court of Appeals for the Third Circuit, when deciding an appeal from the District Court where the District Court declined to extend international comity to a Dutch court's order, applied an abuse of discretion standard, stating that "the grant or denial of [international] comity is discretionary." Remington Rand Corp. v. Bus. Sys. Inc., 830 F.2d 1260, 1266 (3d Cir. 1987); see also Royal Park Invs. SA/NV v. HSBC Bank USA, N.A., No. 14-8175 (LGS), 2018 WL 745994, at *1 (S.D.N.Y. Feb. 6, 2018) (recognizing that "[t]he decision whether to grant comity is 'within the court's discretion,'" and thus applying an abuse of discretion standard to the Magistrate Judge's ruling that the international comity analysis weighed in favor of a party producing unredacted documents). Accordingly, the Court will apply an abuse of discretion standard to the Special Master's GDPR Ruling.

### B. The Special Master Did Not Abuse His Discretion in the GDPR Ruling

Turning now to the issues on appeal, the Court must decide whether, "given [the Mercedes Defendants'] obligation under U.S. law to produce . . . documents in unredacted form, . . . considerations of international comity relieve [the Mercedes Defendants'] of its obligation in light of the purportedly conflicting [GDPR]." Royal Park Invs. SA/NV, 2018 WL 745994, at *2. The Special Master ruled that considerations of international comity do not relieve the Mercedes Defendants of its obligations under U.S. law and that the Discovery Confidentiality Order

provision sufficiently protects unredacted personal data of EU Citizens. (ECF No. 251). Based on the Special Master's well-reasoned international comity analysis, this Court agrees and finds that the Special Master did not abuse his discretion in arriving at his conclusion.

As a threshold matter, in determining whether the compelled discovery at issue is protected from disclosure under the GDPR, the Court notes that "the party relying on foreign law has the burden of showing such law bars production." AstraZeneca LP v. Breath Ltd., No. 08-1512 (RMB) (AMD), 2011 WL 1421800, at *11 (D.N.J. Mar. 31, 2011) (quoting In re Air Crash at Taipei, Taiwan on Oct. 31, 2000, 211 F.R.D. 374, 377 (C.D. Cal. 2002) (internal quotations omitted)). "[E]ven where a party seeks to prevent disclosure of documents based on a foreign law, . . . the United States Supreme Court expressly stated that a foreign statute does 'not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute.'" Id. (quoting Société Nationale, 482 U.S. at 544 n.29). Rather, in this scenario, the Court employs a comity analysis set forth in the Restatement (Third) of Foreign Relations Law § 442(1)(c) and adopted by the Supreme Court in Société Nationale to weigh "the interests of the United States and the party seeking discovery against the foreign state's interest in secrecy." Id. at *11 (citing In re Air Crash at Taipei, 211 F.R.D. at 377). The international comity analysis requires the Court to consider five factors:

> (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interest of the state where the information is located.

Société Nationale, 482 U.S. at 544 n.28.

Here, the Special Master evaluated each of these five factors in the GDPR Ruling. (ECF No. 251 at 5-8). As to the first factor—the importance of the information requested in the instant

10

litigation—"this factor weighs in favor of disclosure where the evidence is directly relevant to the claims in the litigation." AstraZeneca LP, 2011 WL 1421800, at *13 (citing In re Air Crash at Taipei, 211 F.R.D. at 377). The Special Master correctly found that "the names, positions, titles, and professional contact information of relevant current or former employees of any Defendant or third party identified in relevant documents, data or information produced by discovery is by its very nature directly relevant to Plaintiffs' claims." (ECF No. 251 at 5).

The Mercedes Defendants argue that the Special Master conflated the comity analysis's "importance of information" with Federal Rule of Civil Procedure 26's broad relevance standard. (ECF No. 263-1 at 12). The Mercedes Defendants rely on persuasive, but not binding, authority from this District, as well as other Districts around the country that articulate varying formulations of "importance" as a heightened standard.[3] (Id. at 12-13). But the Special Master did not rely on Rule 26's relevance standard; the Special Master indeed applied a heightened standard by expressly looking to whether the information sought was directly relevant and necessary to the parties' claims and defenses. Even where courts, particularly those within the Ninth Circuit, have applied a different formulation of the "importance" prong, those courts have also stated that

---

[3] One case cited by the Mercedes Defendants, In re: Xarelto (Rivaroxaban) Prod. Liab. Litig., No. MDL 2592, 2016 WL 3923873, at *14 (E.D. La. July 21, 2016), offers a succinct summary of this observation:
> Jurists evaluating the "importance" of the requested discovery to the litigation have offered different formulations of the "importance" prong. Some circuits articulate an exceedingly high bar. For instance, the Ninth Circuit hesitates to compel production unless the outcome of litigation "stand[s] or fall[s] on the present discovery order." Courts in the District of Columbia evaluate whether the sought materials are "absolutely essential" to the case. The Fifth Circuit has not provided guidance regarding the degree of "importance" necessary to assuage comity concerns under Société Nationale, but the Eastern District of Texas has used language suggesting that the sought evidence must "be critical or compelling."

(internal citations omitted).

11

"[w]here the evidence is directly relevant . . . we have found this factor to weigh in favor of disclosure." Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1475 (9th Cir. 1992) (citation omitted); In re Air Crash at Taipei, 211 F.R.D. at 377 (quoting Richmark Corp., 959 F.2d at 1475); accord AstraZeneca LP, 2011 WL 1421800, at *13 (citing In re Air Crash at Taipei, 211 F.R.D. at 377). Therefore, the Special Master properly considered the importance of the information at issue.

The Mercedes Defendants further argue that it cannot be that all names, positions, titles, and professional contact information in relevant documents are directly relevant to the claims and defenses in this action. (ECF No. 263-1 at 12-13). For instance, the Mercedes Defendants point to a scenario where "a responsive email containing marketing materials could be contained in a 100-page email chain forwarded to hundreds of employees and third parties." (Id. at 13). Of course, not every piece of foreign private data within a document may be relevant, but Plaintiffs are entitled to the basic identities of individuals so that Plaintiffs can determine that relevance, or else Plaintiffs' ability to acquire individuals' documents and testimony to investigate the allegations in this matter is significantly curtailed. If the Mercedes Defendants' posited scenario does arise, the Court is confident that the Mercedes Defendants will designate and protect such information as "Highly Confidential" pursuant to the appropriate Discovery Confidentiality Order provision. Accordingly, the first factor weighs in favor of compelling production in this case.[4]

Under the second factor—the degree of specificity of the requests—"the Court examines the extent to which the discovery requests will burden the party from whom production is sought[,]

---

[4] Furthermore, in the event there are numerous names appearing on email chains that are indeed irrelevant, the Mercedes Defendants have the benefit of a meet and confer with Plaintiffs and the oversight of the Special Master. Nothing herein is intended to require production of irrelevant material.

12

as 'generalized searches for information, disclosure of which is prohibited under foreign law, are discouraged.'" AstraZeneca LP, 2011 WL 1421800, at *13 (citing In re Air Crash at Taipei, 211 F.R.D. at 378). Here, Plaintiffs seek to prohibit Defendants from redacting the names, positions, titles, or professional contact information of relevant current or former employees of any Defendant or third parties identified in relevant, responsive documents, data, or information produced in discovery in this action. The Special Master correctly found this to be "a specific request relating to relevant employees in relevant documents." (ECF No. 251 at 6). The Mercedes Defendants argue that Plaintiffs' "seventy-plus document requests—seeking millions of pages of emails and other documents from numerous EU citizens" are "extremely broad and will require production of voluminous documents containing vast amounts of personal data." (ECF No. 263-1 at 14). The argument concerning the general scope of Plaintiffs' document requests is misplaced. As Plaintiffs accurately note, "[t]he GDPR Ruling does not require the production of irrelevant, sensitive personal information; it calls for the production of business records (such as emails and reports) in their ordinary form"—in other words, the production of unredacted documents commonly produced in U.S. litigation. (ECF No. 272 at 17 (emphasis in original)). The Court finds that the second factor also weighs in favor of compelling production in this case.

With respect to the third factor—whether the information originated in the United States—the Court looks to whether "the documents to be disclosed and people who will produce those documents are located in a foreign country" or in the United States. AstraZeneca LP, 2011 WL 1421800, at *13 (citing In re Air Crash at Taipei, 211 F.R.D. at 378). If the determination is a foreign country, this factor weighs against compelling production. (Id.). The private data at issue here is that of EU citizens. While Plaintiffs continue to assert that at least some of the documents containing this information originated in the U.S., (ECF No. 251 at 7; ECF No. 263-1 at 14), it is

logical to assume, as the Special Master did, that the majority of documents to be produced from Daimler, a German company, originated in the EU. (ECF No. 251 at 7). The third factor therefore weighs against compelling production in this case.

As to the fourth factor—the availability of alternative means for securing the information sought—the Court looks to whether "the information sought in discovery can easily be obtained elsewhere." AstraZeneca LP, 2011 WL 1421800, at *14 (citing In re Air Crash at Taipei, 211 F.R.D. at 378). If it can be easily obtained elsewhere, "there is little or no reason to require a party to violate foreign law." Id. The Special Master correctly concluded that there is not an alternative means for Plaintiffs to obtain the relevant current or former employees' names, positions, titles, or professional contact information. (ECF No. 251 at 7). The Special Master based this conclusion on the Mercedes Defendants' failure to propose any workable alternative to redacting the requested information. (ECF No. 251). In this regard, and by adopting Plaintiffs' Discovery Privacy Order, the Special Master rejected the Mercedes Defendants' "layered approach" to production, which the Mercedes Defendants argue is a viable means of Plaintiffs obtaining the foreign personal data that is "actually necessary" to their claims. (ECF No. 263-1 at 14). Under the Mercedes Defendants' proposed "layered" approach, Daimler would first "produce responsive documents and data from Germany with redactions of names and other identifiers that Daimler believes 'in good faith' are protected by the GDPR." (Id. at 4). The parties would then meet and confer on any disputes over the propriety of redactions. (Id.). The Mercedes Defendants claim that this "layered" approach is not only consistent with EU privacy rules but has been used in all other U.S. diesel-emissions-related consumer class actions where protective orders have been entered. (Id. at 14-15). Nonetheless, the parties have been briefing these same issues surrounding an appropriate Discovery Privacy Order and the GDPR for the Special Master since July of 2019 and

presented their positions at oral argument before the Special Master in September of 2019. Nothing in the record demonstrates that the Special Master did not fully consider the parties' arguments when he declined to adopt the Mercedes Defendants' "layered" approach and instead adopted and entered Plaintiffs' Discovery Privacy Order. Other than reiterating the same arguments they made to the Special Master, the Mercedes Defendants present no evidence to this Court, and nothing in the record otherwise reflects, that the Special Master abused his discretion in entering the operative Discovery Privacy Order. Accordingly, the fourth factor weighs in favor of compelling production in this case.

The fifth factor—the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the foreign state where the information is located—is the most important factor in determining whether to compel production. AstraZeneca LP, 2011 WL 1421800, at *14 (citing In re Air Crash at Taipei, 211 F.R.D. at 378). "In considering such national interests, the Court must 'assess the interests of each nation in requiring or prohibiting disclosure, and determine whether disclosure would affect important substantive policies or interests of either the United States or [Germany].'" Id. (quoting Richmark Corp., 959 F.2d at 1476). Here, the Special Master considered the Supreme Court's acknowledgement that "[i]t is well known that the scope of American discovery is often significantly broader than is permitted in other jurisdictions, and . . . that foreign tribunals will recognize that the final decision on the evidence to be used in litigation conducted in American courts must be made by those courts." (ECF No. 251 at 8 (quoting Société Nationale, 482 U.S. at 542)). The Special Master noted that the "the United States has a significant interest in preserving and maintaining the integrity of the broad discovery provisions set forth in the Federal Rules of Civil Procedure." (Id. (quoting AstraZeneca LP, 2011 WL 1421800, at *15)).

The Special Master also noted that "the weight of the foreign privacy interest to be considered is 'diminished where the court has entered a protective order preventing disclosure of the secret information.'" (ECF No. 251 at 9 (quoting Finjan, Inc. v. Zscaler, Inc., No. 17-6946 (JST) (KAW), 2019 WL 618554, at *3 (N.D. Cal. Feb. 14, 2019))). Based on these principles and the nature of the claims at issue—the claims that Defendants unlawfully mislead consumers into purchasing certain "BlueTEC diesel" vehicles by misrepresenting the environmental impact of these vehicles during on-road driving—the Special Master concluded that "[t]he United States has a strong interest in protecting U.S. consumers and therefore allowing discovery into Defendants' alleged acts." (ECF No. 251 at 8).

The Mercedes Defendants argue that the Special Master failed to properly consider the EU's "weighty interest in protecting its citizens' privacy." (ECF No. 263-1 at 15). The Mercedes Defendants claim that a violation of the GDPR would place Daimler in legal jeopardy, threaten severe reputational harm, and damage the morale of Daimler's workforce. (Id.). The Mercedes Defendants also argue that the Discovery Confidentiality Order provision is not, on its own, sufficient to protect these "weighty interests" and does not obviate the need for redactions of personal data. (Id.).

The Court finds these arguments unavailing. The Special Master properly weighed national interests implicated in this matter, and found that, on balance, disclosing names, job positions, titles, or professional contact information of relevant current or former employees pursuant to a Discovery Confidentiality Order fairly balanced the parties' rights under the Federal Rules of Civil Procedure and the Mercedes Defendants' GDPR concerns. Additionally, the Special Master did not, as the Mercedes Defendants suggest, misconstrue or improperly rely on Finjan's proposition that the weight of a foreign privacy interest is diminished where a protective order is

16

in place. (ECF No. 263-1 at 10, 16). More specifically, by citing to this proposition, the Special Master was not, as the Mercedes Defendants allude to, bypassing the GDPR's requirements by a protective order. (ECF No. 263-1 at 16). Similar to the court in Finjan, the Special Master found that, on balance, the U.S. had a stronger interest in protecting its consumers than the EU did in protecting its citizens' private data, particularly with a Discovery Confidentiality Order provision allowing producing parties to designate and protect foreign private data as "Highly Confidential" information. (ECF No. 251 at 8-9); see Finjan, 2019 WL 618554, at *3. Accordingly, the fifth factor weighs in favor of compelling production in this case.[5]

### III. CONCLUSION

Based on the Court's own international comity analysis, as well as an analysis of the Special Master's GDPR Ruling, the Court finds that the Special Master conducted a well-reasoned international comity analysis and did not abuse his discretion by prohibiting parties from redacting the names, positions, titles, or professional contact information of relevant current or former employees of any Defendant or third parties identified in relevant, responsive documents, data, or information produced in discovery in the above-captioned matter. Such information can be designated and protected as "Highly Confidential" pursuant to the Discovery Confidentiality Order provision. In this regard, the Special Master's GDPR Ruling ensured that Plaintiffs obtain the discovery they are entitled to pursuant to the Federal Rules of Civil Procedure while protecting EU citizens' private data. Therefore, the Court hereby **AFFIRMS** the Special Master's November 4, 2019 GDPR Ruling, (ECF No. 251). The Mercedes Defendants' appeal of the Special Master's

---

[5] The Special Master also found, as an additional consideration to the fifth factor, that Defendants failed to produce evidence that producing the information at issue here would lead to an enforcement action against Daimler by an EU data protection supervisory authority for breach of the GDPR. Indeed, whether an EU authority aggressively polices this type of data production in the context of pre-trial discovery in U.S. litigation remains to be seen.

17

GDPR Ruling, (ECF No. 263), is **DENIED**. The Mercedes Defendants' appeal of the Special Master's October 4, 2019 Order & Opinion, (ECF No. 246), is also **DENIED**, as this Opinion resolves the remaining issue of whether the names of certain current and former Daimler employees who are EU citizens should be produced subject to the Discovery Confidentiality Order or redacted. Lastly, the Mercedes Defendants' November 6, 2019 emergency motion for a stay of the Special Master's October 4, 2019 Order & Opinion, (ECF No. 249), until the Court resolved the underlying appeal is hereby **DENIED** as moot. The Mercedes Defendants shall produce to Plaintiffs unredacted discovery that was previously produced in temporarily redacted form, in accordance with this Opinion. An Order consistent with the terms of this Opinion will follow.

JOSEPH A. DICKSON, U.S.M.J.

cc: Hon. Kevin McNulty, U.S.D.J.
Dennis M. Cavanaugh, U.S.D.J. (Ret.), Special Master