# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE MERCEDES-BENZ EMISSIONS LITIGAITON. | Case No.: 2:16-cv-881 (SDW)(JAD) <br><br> **ORDER & OPINION OF THE SPECIAL MASTER** |

This matter comes before the Special Master upon letter briefing submitted by Plaintiffs and Defendant Robert Bosch LLC ("Bosch") related to the parties' discovery dispute involving the scope of discovery and appropriate custodial sources related to Bosch's promotion of "clean diesel."

## DISCUSSION

### I. Background of the Dispute

Plaintiffs request an order compelling Bosch to produce information concerning its efforts to promote "clean diesel" technology and vehicles. Plaintiffs argue that when the District Court denied Bosch's motion to dismiss, it specifically rejected Bosch's position that this case is narrowly focused solely on the marketing and promotion of the specific vehicles at issue. According to Plaintiffs, the Court recognized that Bosch also actively supported the fraud by promoting the notion of clean diesel technology generally and lobbying U.S. regulators to approve clean diesel.

Bosch is alleged to have contributed to the market demand for clean diesel vehicles, generally, in the Unites States and the natural consequences of Bosch's efforts was to support price premiums for clean diesel vehicles, such as those at issue here. Plaintiffs believe Bosch's overarching promotion of and lobbying for clean diesel is an important issue because such efforts were part of the promotion of the specific clean diesel technology and vehicles at issue in this matter.

1

Plaintiffs explain that their proposal has three main parts:

1. Scope: Bosch should produce responsive materials that concern the overarching clean diesel campaign that was not limited to any specific vehicles or technology. And Bosch should produce clean diesel documents that discuss the vehicles or technology at issue.

2. Core Materials: Bosch should locate and produce seven categories of materials (whether from custodians or non-custodian sources)
   a. Final versions of promotional/educational materials
   b. Materials posted to Bosch websites or social media pages during the relevant period
   c. Final versions of presentations/prepared remarks by Bosch at external events
   d. Draft or final promotional or educational materials Bosch shared with Mercedes/Daimler or with specific industry groups that actively promoted clean diesel passenger cars in the United States.
   e. Actual plans or budgets for clean diesel promotion/education, documents approving the plans or budgets and documents reflecting what was actually spent on such efforts
   f. Bosch's actual lobbying communication/presentations concerning clean diesel
   g. Presentations, studies, or reports concerning the market for, consumer interest in, or the pricing of clean diesel passenger vehicles in the United States.

3. Custodial Documents: Bosch should collect and review the relevant clean diesel documents from a reasonable, well-defined set of custodians:
   a. Who: Bosch has proposed to search the files of the Director of Marketing (now, Andres Sambel and, previously, Lars Ulrich). Plaintiffs have proposed to enlarge the custodians to include (1) Regional President, Diesel Systems; (2) Director of External Affairs; (3) Director of Corporate Communications; (4) Manager of Public Relations; (5) Director of Sales; (6) Any other individual that served as Bosch's representative to or liaison with specific industry organizations that actively promoted clean diesel passenger cars in the United States.
   b. What: From the materials created and maintained by the above custodians—and subject to the Scope limits set forth above—Plaintiffs seek:
      i. Drafts of, comments on, or discussions of the core clean diesel materials identified above
      ii. Communications concerning clean diesel promotional/educational/lobbying proposals, plans or efforts
      iii. Communications concerning the market for, consumer interest in, or the pricing of clean diesel passenger cars in the United States
      iv. Communications concerning any clean diesel messaging/claims, including the accuracy/fairness/support for/impact of such messaging claims
      v. Communications with Mercedes or Daimler concerning:

2

              1. Clean diesel promotional/educational/lobbying proposals, plans or efforts
              2. Data supporting any clean diesel messaging/claims
              3. The DTF, the USCADC, or the VDA
        vi. Communications with the DTF, the USCADC, or the VDA concerning:
              1. Mercedes/Daimler/Bluetec
              2. Clean diesel promotional/educational/lobbying proposals, plans or efforts.

Plaintiffs argue that they have made a good faith proposal that narrows the scope of the clean diesel category generally, specifies a reasonable, well-defined set of core materials to be produced, and further specifies a reasonable, well-defined set of custodians whose files should be reviewed for six categories of documents. Plaintiffs argue the categories and custodians are relevant and proportional as the case involves hundreds of thousands of vehicles alleged to have been fraudulently sold with polluting systems over a period of years throughout the country.

Plaintiffs argue that Bosch has rejected its reasonable proposal and instead only offered to use Boolean search strings using the trade name and model for the specific Bosch emission system in the vehicles at issue. Plaintiffs argue that Bosch's approach will not give Plaintiffs any clean diesel-related documents unless they specifically contain the words "BlueTEC" or "EDC17," and therefore will exclude relevant information about Bosch's general efforts to build and support a market for clean diesel passenger cars in the U.S. Plaintiffs argue that there is no doubt that these general documents are relevant and should be produced. Plaintiffs believe that many of the documents at issue likely reside in electronic files and folders already labeled or known to the custodians.

Bosch believes that Plaintiffs' demand should be rejected as overly burdensome, irrelevant, and disproportionate to the needs of the case. Bosch explains that it performed none of the engineering work on the BlueTEC vehicles and that its role concerned only marketing and

promotion in the United States. Bosch maintains that it has already agreed to search the custodian files of its marketing directors using search terms and to review marketing share drive subfolders identified as potentially holding responsive information. Those custodians were responsible for and involved in the clean diesel promotion efforts in which Bosch engaged. Bosch argues that the search terms will identify any connection between those activities and the vehicles at issue. The terms proposed by Bosch are: (1) (BlueTEC AND diesel) OR (ML@%) AND diesel) or (ML350 AND diesel); (2) (BlueTEC AND Mercedes); (3) (BlueTEC AND Diamler); (4) (BlueTEC AND "Diesel Technology Forum") OR (ML250 AND "Diesel Technology Forum") OR (ML#%) AND "Diesel Technology Forum"); (5) ((market* OR advertise OR advertising) AND (BlueTEC*)) OR ((market* OR advertise OR advertising) AND (ML350)); (6) ("good. Clean. Fun" OR "good clean fun" AND (BlueTEC* OR EDC17); (7) (Clean/10 diesel) AND (BlueTEC* or EDC17); (8) ("Diesel Technology Forum") AND (BlueTEC* OR EDC17); and (9) ("DTF") AND (BlueTEC* OR EDC17).

Bosch argues that Plaintiffs have not proposed any additional terms and instead demand an open-ended search of undefined and unmanageable proportions. Bosch further argues that not a single named plaintiff alleges that he or she was aware of Bosch's marketing efforts or knew that his or her BlueTEC vehicle contained parts made by Robert Bosch GmbH. Bosch argues that Plaintiffs are requesting that Bosch laboriously search for and produce materials relating to the marketing of diesel technology that was not used in the vehicles that are the subject of this litigation for a twelve year period. Bosch further argues that Plaintiffs have no limited their requests to final versions of advertisements, but also seek drafts that never reached consumers. Bosch argues that the burden and expense of performing such extensive search and review would be significant.

4

Bosch further argues that Plaintiffs' proposal seeks to add numerous custodians and that while ESI volumes vary, based on experience from other diesel emissions cases, the estimated cost of first level review and privilege review of an average Bosch custodian is at least $100,000, not including the cost of non-privilege second level reviews. Bosch argues that to the extent Plaintiffs have pretended to limit the scope of their requests, those illusory limitations are not amenable to prospective application and can only be applied after documents are located, collected, processed, and reviewed. Bosch argues that it has identified the custodians most likely to possess relevant data—Andreas Sambel and Lars Ulrich and that the custodians proposed by Plaintiffs are unlikely to yield any further relevant material.

In its reply, Plaintiffs argue that Bosch cannot limit discovery because the Court has already held that this case is not only about the specific promotion of BlueTEC vehicles, but also about Bosch's general promotion of clean diesel that "contributed to the market demand for 'clean diesel' vehicles, generally" and the price premiums that were the "natural consequences" of Bosch's efforts. Plaintiffs maintain that Bosch's overarching efforts to help create the clean diesel market in which Plaintiffs bought their vehicles are a relevant and important part of this case and an issue on which Plaintiffs are entitled to discovery under Rule 26.

Plaintiffs argue that as to scope, they only seek materials that concern clean diesel generally or the specific BlueTEC vehicles or EDC17 technology at issue in this matter. Plaintiffs argue that as to the seven categories of core materials sought, given their nature, they should be readily located. Plaintiffs further argue that as to draft materials, they only seek drafts of materials actually sent to Mercedes/Daimler or the three organizations instrumental in promoting clean diesel. The other categories seek only final published materials.

Plaintiffs argue that given the enormity of the fraud at issue, Bosch's unsupported assertions of burden ring hollow. Plaintiffs argue that there is no dispute that the relevant period is twelve years, and that the fact that Defendants engaged in illegal acts for a long time cannot be used to give Plaintiffs less discovery.

On September 27 and November 7, 2019, the Special Master conducted status conferences in this matter. At the November 7, 2019 status conference, Plaintiffs agreed to withdraw without prejudice one of the requested custodians, the Regional President Diesel Systems, and Bosch agreed to one of the requested custodians, the Director of External Affairs. Thereafter, the parties again met and conferred.

By correspondence dated November 8, 2019, Bosch provided a written description of its most recent discovery proposal to Plaintiffs. Bosch indicated that as of the September 27 conference, it agreed to produce documents from the custodial files of the individuals who served as Bosch's Director of Marketing for the period 2007-2015, using the nine search terms previously outlined. Bosch made two additional proposals: (1) to add as custodian the person who served as Bosch's Head of Government for the same period; and (2) to accept Plaintiffs' request to expand the scope of the custodial search to include generic promotional materials relating to clean diesel technology generally, even if not related to the vehicles or EDC-17 technology at issue. These proposals were subject to Plaintiffs agreeing to withdraw or modify their request for irrelevant and duplicative additional custodians. According to Bosch, Plaintiffs rejected the proposal.

Thereafter, by email correspondence dated November 13, 2019, Plaintiffs confirmed that at the November 7 conference they agreed to withdraw, without prejudice, one of the requested custodians and Bosch agreed to one of the requested custodians, thereby leaving the custodian

6

categories in dispute to the Director of Corporate Communications, Director of Sales, and Bosch liaisons with two clean diesel industry groups. The parties subsequently conferred but were unable to reach agreement. However, Plaintiffs indicated they were willing to withdraw, without prejudice, their request for the Manager of Public Relations.

By correspondence dated January 31, 2020, Bosch wrote to clarify the status of discussions with Plaintiffs regarding Plaintiffs' requests for clean diesel discovery. Bosch indicated that it had made a further proposal to Plaintiffs, agreeing to include the individuals who served as DTF and USCADC representatives since 2007, two of whom were already custodians. Bosch proposed to defer including the director of sales as a custodian in the first instance, subject to and without prejudice to Plaintiffs' right to seek additional custodians after reviewing Bosch's productions. Plaintiffs did not accept Bosch's proposal.

As to the custodian issue related to the Director of Sales, Bosch explains that the diesel systems sales function generally deals with relationships with specific vehicle manufacturers, and not marketing efforts directed toward the public. Bosch further explains that in the case of Daimler, the relationship was not coordinated by Bosch. To the extent that a Bosch employee was assigned to assist with Daimler-related sales, that employee was not responsible for diesel sales for passenger vehicles, nor was the employee involved in clean diesel marketing.

With respect to core categories of document requests, Bosch continues to maintain that the requests are generally so vague and broad that Bosch would not know how to conduct an appropriate search. By way of example, Bosch points to core category C, which requests all "presentations/prepared remarks" and imposes no limit on the types of presentations or remarks sought. Therefore, Bosch argues that even if the Court were to grant Plaintiffs' requests, it would

7

be necessary for the parties to meet and confer to discuss search parameters. Bosch argues it has asked Plaintiffs to engage in that process first, which Plaintiffs have declined to do.

By correspondence dated February 3, 2020, Plaintiffs argue that the clean diesel discovery issue had been pending since the Fall of 2019 and that the proposal submitted on August 23, 2019 was concrete, specific, and proportionate to the case—and already represented substantial compromise by Plaintiffs in response to Bosch's earlier objections. Plaintiffs argue that Bosch's assertions that it cannot understand the scope of what such well-targeted requests seek rings hollow. Plaintiffs thus request a ruling to confirm the scope of discovery. Plaintiffs maintain that they can then work with Bosch on search terms, if any are needed, to be used to help look for materials that fall within the ordered scope. As to the Director of Sales, Plaintiffs agree to table that custodian so as not to further delay Bosch's search for and production of core material information on its promotion and creation of the clean diesel market.

By correspondence dated February 10, 2020, Bosch argues that Plaintiffs' proposal calls for "drafts of, comments on, or discussions on" all core clean diesel materials. Bosch argues that to the extent Plaintiffs try to make a distinction based on the fact that Part 3.b.i pertains to custodians, it is of little practical significance given that Plaintiffs demand drafts of the very same materials in Part 2.d, which pertains to non-custodial sources.

## II.    Opinion of the Special Master

Federal Rule of Civil Procedure 26(b)(1) provides that a party may obtain discovery regarding "any nonprivileged material that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of the proposed discovery outweighs its likely benefit." It is "well recognized that the federal rules allow broad and liberal discovery." *Pacini v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999). Relevance is a broader inquiry at the discovery stage than at the trial stage, see *Nestle Food Corp. v. Aetna Cos. & Surety Co.*, 135 F.R.D. 101, 103 (D.N.J. 1990), and "relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000).

While relevant information need not be admissible, the burden remains on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000). When establishing the parameters of discovery relevance, it is the claims and defenses of the parties, in the Complaint and other pleadings, which set the guardrails for discoverable information. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Becton, Dickinson & Co.*, No. CV 14-4318 (CCC), 2019 WL 1771996, at *3 (D.N.J. Apr. 23, 2019).

"To determine the scope of discoverable information under Rule 26(b)(1), the Court looks initially to the pleadings." *Trask v. Olin Corp.*, 298 F.R.D. 244, 263 (W.D. Pa. 2014). In ascertaining which materials are discoverable and which are not, a district court must further distinguish between requests that "appear[ ] reasonably calculated to lead to the discovery of admissible evidence," *Bell v. Lockheed Martin Corp.*, 270 F.R.D. 186, 191 (D.N.J. 2010), and demands that are "overly broad and unduly burdensome." *Miller v. Hygrade Food Products Corp.*, 89 F.Supp.2d 643, 657 (E.D. Pa. 2000).

A court may deny a discovery request if "[a]fter assessing the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues, . . . there exists a likelihood that the

resulting benefits would be outweighed by the burden or expenses imposed as a consequence of the proposed discovery." *Salamone v. Carter's Retail, Inc.*, No. CIV.A. 09-5856 GEB, 2011 WL 310701, at *10 (D.N.J. Jan. 28, 2011), aff'd, No. CIV.A. 09-5856 GEB, 2011 WL 1458063 (D.N.J. Apr. 14, 2011) (citing *Takacs v. Union Cty.*, No. CIVA 08-711 KSH/MAS, 2009 WL 3048471, at *1 (D.N.J. Sept. 23, 2009)). "The purpose of this rule of proportionality is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry." *Takacs v. Union Cty.*, No. CIVA 08-711 KSH/MAS, 2009 WL 3048471, at *3 (D.N.J. Sept. 23, 2009) (citing *Bowers v. Nat'l Collegiate Athletic Ass'n*, No. CIV. A. 97-2600 JBS, 2008 WL 1757929, at *6 (D.N.J. Feb. 27, 2008)). A party resisting discovery on the grounds of burden or expense "bears the burden of showing specifically how the request is burdensome." *Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 2010 WL 4922701, at *3 (W.D. Pa. Nov. 29, 2010).

In this matter, the scope of discovery includes the vehicles or technology at issue as well as the overarching clean diesel campaign that was not limited to any specific vehicles or technology. In his opinion regarding Bosch's motion to dismiss, Judge Linares recognized that Plaintiffs' Complaint alleged that Bosch "marketed 'Clean Diesel' in the United States and lobbied U.S. regulators to approve 'Clean Diesel.'" *In re Mercedes-Benz Emissions Litig.*, No. CV 16-881 (JLL)(JAD), 2019 WL 413541, at *8 (D.N.J. Feb. 1, 2019), vacated and remanded, No. 19-1484, 2020 WL 115529 (3d Cir. Jan. 10, 2020). Judge Linares found that Plaintiffs had sufficiently alleged that their injuries were fairly traceable to Bosch's conduct. *Id.* In doing so, the Court cited *Duramex*, which reasoned that though "the exact nature of Bosch's marketing is unclear, it is plausible that Bosch's efforts contributed to the market demand for

'clean diesel' vehicles, generally, in the United States, and that the premiums Plaintiffs paid for those vehicles "were a natural consequence of that market demand." *Id.* (citing *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1054 (E.D. Mich. 2018)).

Bosch's reliance on *Fassett v. Sears Holdings Corp.*, 319 F.R.D. 143, 151 (M.D. Pa. 2017), in its opposition is misplaced as Plaintiffs are not seeking discovery related specifically to other vehicle models. Rather, Plaintiffs are seeking discovery related to Bosch's overarching clean diesel campaign, which is not specific to particular vehicles or technology. Such discovery is relevant to Plaintiffs claims. Accordingly, based on the allegations made by Plaintiffs, the scope of discovery includes materials relating to Bosch's overarching clean diesel campaign in the United States.

As to Plaintiffs' request for core materials, it is the Opinion of the Special Master that Plaintiffs' requests are relevant and proportional to the needs of the case. Plaintiffs have adequately noticed Bosch of the general categories of documents they seek. Accordingly, the Special Master will direct Bosch to produce the seven categories of materials requested (whether from custodians or non-custodian sources): (1) final versions of promotional/educational materials; (2) materials posted to Bosch websites or social media pages during the relevant period; (3) final versions of presentations/prepared remarks by Bosch at external events; (4) draft or final promotional or educational materials Bosch shared with Mercedes/Daimler or with specific industry groups that actively promoted clean diesel passenger cars in the United States; (5) actual plans or budgets for clean diesel promotion/education, documents approving the plans or budgets and documents reflecting what was actually spent on such efforts; (6) Bosch's actual lobbying communication/presentations concerning clean diesel; and (7) presentations, studies, or

reports concerning the market for, consumer interest in, or the pricing of clean diesel passenger vehicles in the United States.

Additionally, as to the materials created and maintained by the custodians and subject to the scope of discovery, Bosch shall produce: (1) communications concerning clean diesel promotional/educational/ lobbying proposals, plans or efforts; (2) communications concerning the market for, consumer interest in, or the pricing of clean diesel passenger cars in the United States; (3) communications concerning any clean diesel messaging/claims, including the accuracy/fairness/support for/impact of such messaging claims; (4) communications with Mercedes or Daimler concerning: (a) clean diesel promotional/educational/lobbying proposals, plans or efforts; (b) data supporting any clean diesel messaging/claims and (c) the DTF, the USCADC, or the VDA; (5) communications with the DTF, the USCADC, or the VDA concerning: (a) Mercedes/Daimler/Bluetec; and (b) clean diesel promotional/educational/ lobbying proposals, plans or efforts. Bosch shall also produce from materials created and maintained by the custodians and subject to the scope of discovery, draft or final promotional or educational materials shared with Mercedes/Daimler or with specific industry groups that actively promoted clean diesel passenger cars in the United States.

Bosch has not met its burden to demonstrate that production of these relevant materials would create an undue burden. Bosch has failed to submit any affidavits particularizing the cost and burden associated with the discovery sought. Moreover, the Special Master has already indicated that generalized arguments of burden and cost will not be looked upon favorably as the parties chose to utilize search terms as opposed to technology assisted review, despite wide recognition that technology assisted review is cheaper, more efficient and superior to keyword searching.

While Bosch did specify that the estimated cost of first level review and privilege review of an average Bosch custodian is at least $100,000, not including the cost of non-privilege second level reviews, the Special Master does not believe this establishes undue cost or burden. This is a punitive class action involving allegations that Defendants, including Bosch, unlawfully mislead consumers into purchasing vehicles by misrepresenting the environmental impact of those vehicles. In light of the seriousness of the allegations alleged, Bosch's presumed resources as a large multinational corporation, and the relevance of the materials sought, the Special Master does not believe that Bosch has met its burden to demonstrate that the discovery sought is outweighed by the burden or expenses imposed.

Bosch has indicated that it will utilize Boolean search strings to locate relevant documents within the scope of discovery. Bosch has already outlined its proposed search terms, which Plaintiffs have not countered. With the understanding that the scope of discovery encompasses the core materials and those categories of information sought from custodians as outlined above, the parties are to meet and confer within 15 days of the date of this Order to discuss the search terms Bosch will utilize to locate relevant documents. Any dispute regarding the search terms shall be brought to the attention of the Special Master.

As to the custodian issues, the Special Master will not render a decision at this time as the parties have agreed upon a number of custodians and agreed to table their disputed custodians for the time being. Accordingly, after Plaintiffs have reviewed and digested the production of materials made by Bosch, Plaintiffs may renew their request to add specific custodians should there be a reasonable belief that relevant records are in possession of those custodians and were not otherwise produced. The parties shall then meet and confer and bring any unresolved issue to the attention of the Special Master.

_[signature]_
**DENNIS M. CAVANAUGH, U.S.D.J. (Ret.)**
**Special Master**

Date: February 13, 2020