**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE MERCEDES-BENZ EMISSIONS LITIGATION | Civil Action No. 16-881(KM) (ESK) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND APPROVAL OF DISSEMINATION OF NOTICE OF SETTLEMENT**

James E. Cecchi
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

Christopher A. Seeger
Jennifer R. Scullion
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
(973) 639-9100

*Counsel for Plaintiffs*
*and the Proposed Class*

Steve W. Berman
Sean R. Matt
Andrew M. Volk
Shelby R. Smith
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292

*Interim Lead Counsel*
*for Plaintiffs and the*
*Proposed Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................... iii

I.     INTRODUCTION ......................................................................... 1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ...... 4

III.   SUMMARY OF SETTLEMENT TERMS ........................................ 7

     A. The Settlement Class Definition. ..................................................... 7

     B. The Settlement Provides Substantial Benefits to the Class. ...... 8

IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL
     ................................................................................................ 11

     A. The Standard and Procedures for Granting Preliminary
        Approval. ......................................................................... 11

     B. There is a Strong Basis to Conclude that the Settlement Is
        Fair, Reasonable, and Adequate and that the Rule 23(e)(2)
        Standards for Approval Will Be Met ........................................... 12

        1. The proposed Settlement was reached after substantial
           litigation, including fulsome discovery and motion practice,
           and the benefits of the proposed Settlement far outweigh the
           risks of continued litigation ...................................................... 12

        2. The Settlement yields robust benefits to the Class ............... 14

        3. The Settlement negotiations occurred at arm's-length ......... 14

        4. The proponents of the Settlement are experienced in similar
           litigation. ................................................................................ 15

V.    THE COURT SHOULD CERTIFY THE PROPOSED CLASS
     FOR SETTLEMENT PURPOSES ................................................... 16

     A. The Rule 23(a) Requirements Are Satisfied ................................. 16

1. Rule 23(a)(1) – Numerosity is present. ..................................17

2. Rule 23(a)(2) – There are issues common to all Class Members. ..................................................................17

3. Rule 23(a)(3) – Typicality is satisfied. ..................................19

4. Rule 23(a)(4) – Adequacy is satisfied. ..................................20

5. The proposed Class is ascertainable. ..................................23

B. As Required by Rule 23(b)(3), Common Issues Predominate and Class Treatment is Superior to a Multiplicity of Individual Lawsuits. ..................................................................23

C. Proposed Class Counsel Satisfy Rule 23(g). ..............................27

VI.   THE FORM AND MANNER OF NOTICE ARE PROPER...........28

VII.  THE COURT SHOULD SET SETTLEMENT DEADLINES AND SCHEDULE A FAIRNESS HEARING ...........................................31

VIII. CONCLUSION ..................................................................33

## TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*Alves v. Main*,
    2012 WL 6043272 (D.N.J. Dec. 4, 2012) ............................................................. 14, 16

*Amchem Prods, Inc. v. Windsor*,
    521 U.S. 591 (1997) ...................................................................... 16, 21, 23, 26

*Butler v. Sears, Roebuck & Co.*,
    702 F.3d 359 (7the Cir. 2012) ............................................................................ 23

*Byrd v. Aaron's Inc.*,
    784 F.3d 154 (3d Cir. 2015) ............................................................................... 23

*Carnegie v. Household Int'l, Inc.*,
    376 F.3d 656 (7th Cir. 2004) ............................................................................. 26

*In re Chrysler-Dodge Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ............................................... *passim*

*City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*,
    867 F.3d 434 (3d Cir. 2017) ............................................................................... 23

*In re Cmty. Bank of N. Va.*,
    622 F.3d 275 (3d Cir. 2010) ............................................................................... 22

*Damassia v. Duane Reade, Inc.*,
    250 F.R.D. 152 (S.D.N.Y. 2008) ........................................................................ 21

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010) ............................................................................... 11

*Emig v. Am. Tobacco Co.*,
    184 F.R.D. 379 (D. Kan. 1998) .......................................................................... 22

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ................................................................................. 12

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975) ............................................................................... 12

*In re Ins. Brokerage Antitrust Litig.*,
    579 F.3d 241 (3d Cir. 2009) ............................................................................... 15

*Johnston v. HBO Film Mgmt.,*
    265 F.3d 178 (3d Cir. 2001) ..................................................................... 19

*Kaplan v. Chertoff,*
    2008 WL 200108 (E.D. Pa. Jan. 24, 2008) ............................................. 28

*Marcus v. BMW of N. Am., LLC,*
    687 F.3d 583 (3d Cir. 2012) ..................................................................... 19

*Martinez-Santiago v. Public Storage,*
    312 FRD 380 (D.N.J. 2015) ...................................................................... 17

*In re Mercedes-Benz Emissions Litig.,*
    2016 WL 7106020 (D.N.J. Dec. 6, 2016) .................................................. 5

*In re Mercedes-Benz Emissions Litig.,*
    2019 WL 2591158 (D.N.J. June 25, 2019), and (2) ................................. 5

*In re Mercedes-Benz Emissions Litig.,*
    2019 WL 413541 (D.N.J. Feb. 1, 2019) .................................................... 5

*In re Mercedes-Benz Emissions Litig.,*
    2019 WL 5800270 (D.N.J. Nov. 7, 2019) .................................................. 6

*In re Mercedes-Benz Emissions Litig.,*
    2020 WL 103975 (D.N.J. Jan. 9, 2020) .................................................... 5

*In re Mercedes-Benz Emissions Litig.,*
    2020 WL 487288 (D.N.J. Jan. 30, 2020) .................................................. 5

*In re Mercedes-Benz Emissions Litig.,*
    797 F. App'x 695 (3d Cir. 2020) ............................................................... 5

*In re Merck & Co., Vytorin/Zetia Sec. Litig.,*
    No. 08-cv-2177, 2012 WL 4482041 (D.N.J., Sept. 25, 2012) .................. 19

*In re Nat'l Football League Players Concussion Injury Litig.,*
    821 F.3d 410 (3d Cir. 2016) ..................................................................... 28

*In re Neurontin Antitrust Litig.,*
    2011 WL 286118 (D.N.J. Jan. 25, 2011) ................................................. 26

*In re Novo Nordisk Sec. Litig.,*
    2020 WL 502176 (D.N.J. Jan. 31, 2020) ................................................. 24

*In re Ocean Power Techs, Inc.,*
    2016 WL 6778218 (D.N.J. Nov. 15, 2016) ......................................... 28, 29

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ............................................................... 18, 24

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
962 F. Supp. 450 (D.N.J. 1997) .................................................................. 15

*Reap v. Cont'l Cas. Co.*,
199 F.R.D. 536 (D.N.J. 2001) ..................................................................... 25

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ....................................................................... 12

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) ................................................................. 19, 21

*Sheinberg v. Sorensen*,
606 F.3d 130 (3d Cir. 2010) ................................................................. 21, 27

*Shelton v. Bledsoe*,
775 F.3d 554 (3d Cir. 2015) ....................................................................... 23

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) ................................................................................... 25

*Sullivan v. DB Invs., Inc*,
667 F.3d 273 (3d Cir. 2011) (en banc) ....................................................... 18

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) ............................................................................... 24

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
2020 WL 3166456 (D.N.J. June 15, 2020) .................................................. 24

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005) .................................................................... 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab.*
*Litig.*,
2016 WL 4010049 (N.D. Cal. July 26, 2016) .......................... 18, 20, 21, 24

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ............................................................................. 17, 18

*Ward v. Flagship Credit Acceptance LLC*,
2020 WL 759389 (E.D. Pa. Feb. 13, 2020) ................................................. 11

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ............................................................................. 11, 18

*In re Wellbutrin XL Antitrust Litig.*,
    282 F.R.D. 126 (E.D. Pa. 2011) ...................................................................... 17, 18

*Wragg v. Ortiz*,
    2020 WL 2745247 (D.N.J. May 27, 2020) ..................................................... 16, 17

*Yaeger v. Subaru of Am., Inc.*,
    2016 WL 4541861 (D.N.J. Aug. 31, 2016) .......................................................... 19

## Other Authorities

Federal Rule of Civil Procedure 23 ............................................................................*passim*

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs respectfully move for preliminary approval of the proposed Settlement with Defendants Mercedes-Benz USA, LLC and Daimler Aktiengesellschaft (collectively, "Mercedes"), preliminary certification of the Class defined in the Settlement, and approval of proposed Class Notice.[1]

## I.    INTRODUCTION

Plaintiffs, on behalf of themselves and other members of the proposed settlement Class, are pleased to present to the Court their proposed Settlement with Mercedes.   Plaintiffs are current and/or former owners/lessees of certain defined Mercedes "Subject Vehicles"—that is, model year 2009–2016 diesel vehicles sold or leased in the United States and equipped with the BlueTEC II emission control technology.   These vehicles include both passenger cars and Sprinter vans.   The Settlement, reached after four and one-half years of hard-fought litigation, will resolve Plaintiffs' and Class Members' claims against Mercedes.

The Settlement is designed to complement and work together with Mercedes' settlements with the Environmental Protection Agency and the California Air Resources Board, which are filing a Consent Decree in the United States District Court for the District of Columbia that will resolve regulatory claims against Mercedes and set a schedule for the implementation of an Approved Emissions

---

[1] The Settlement Agreement is Exhibit A to the Declaration of Steve W. Berman in Support of Motion for Preliminary Approval ("Berman Decl.").   Capitalized terms not defined herein have the same definitions and meanings ascribed to them in the Settlement Agreement.

Modification ("AEM") to the Subject Vehicles that will modify the emission control system software calibration and certain related hardware to ensure that the vehicles meet the emissions standards to which they were originally certified.

For each Subject Vehicle that receives an AEM, the Consent Decree provides an "Extended Modification Warranty" backing certain emissions-related components for a period equal to the greater of: (i) 10 years from date of initial sale or 120,000 miles on the odometer, whichever comes first; or (ii) 4 years or 48,000 miles from the date of installation of the Approved Emission Modification, whichever comes first. Notice and implementation of the government Consent Decree and this Settlement are designed to be coordinated.

The Settlement before the Court provides substantial monetary benefits to the Class. Class Members who submit Valid Claims are eligible to receive payment of up to $3,290 to current owners and lessees; payment of $822.50 to former owners and lessees; and the prospect of additional payments if Mercedes does not meet certain milestones set forth in the Settlement.

The proposed Settlement is a favorable resolution for the Class that avoids the substantial risks and expense of continued litigation, including the risk of recovering less than the Settlement amount, or nothing at all. The proposed Settlement Agreement resulted from arm's-length, good faith negotiations between and among experienced counsel under the auspices of a respected and experienced Court-ordered mediator, the Honorable Edward A. Infante. It provides a fair, reasonable, and adequate resolution of this litigation, which will substantially reduce costs and the

expenditure of resources, eliminate the risk of uncertain litigation outcomes, and prevent further delay in remedying the harms suffered by Class Members. Furthermore, this Settlement, along with resolution of government enforcement actions and payment of fines, not only resolves Plaintiffs' claims but also facilitates the end of Mercedes' alleged misconduct in unlawfully manipulating the emissions systems in the Subject Vehicles.

Accordingly, Plaintiffs respectfully request that the Court enter a Preliminary Approval Order, substantially in the form attached as Exhibit 7 to the Settlement Agreement that: (1) grants preliminary approval of the proposed Settlement Agreement entered into between the Parties; (2) finds that the Court, at the final approval stage, will likely certify the Class as defined in the Settlement Agreement; (3) directs that notice be provided to proposed Class Members in the form and manner specified in the Settlement Agreement, which is designed to work in concert with the Consent Decree; (4) appoints Plaintiffs as representatives of the proposed Class; (5) appoints Carella, Byrne, Cecchi, Olstein, Brody & Agnello, PC, Hagens Berman Sobol Shapiro LLP, and Seeger Weiss LLP as Class Counsel for the proposed Class; (6) establishes certain dates and procedures in connection with final approval of the Settlement Agreement, including but not limited to deadlines and procedures for Settlement objections, Opt-Outs, and Claims; and (7) schedules a Fairness Hearing to determine whether the Settlement is fair, reasonable, and adequate under Rule 23(e)(2), and whether the Class should be certified.

In sum, the Settlement before the Court represents real relief for consumers.

It was achieved after years of difficult litigation and a year of mediation. The Settlement is fair, reasonable, and the Court will likely approve the proposal under Rule 23(e)(2) and certify the Class for purposes of judgment on the Settlement. Therefore, the Settlement meets the standards for preliminary approval.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This litigation commenced with the filing of the initial complaint in February 2016. On April 7, 2016, the Court appointed Steve W. Berman of Hagens Berman Sobol Shapiro LLP and James E. Cecchi of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. as initial interim lead counsel. In addition, Christopher A. Seeger of Seeger Weiss LLP has served as counsel of record for Plaintiffs.

Unlike other diesel emissions fraud cases against the Volkswagen ("*VW*") and Chrysler-Dodge-Jeep ("*FCA*")—cases that followed government action and settled, Plaintiffs here developed and supported every aspect of their case without the benefit of a government indictment or criminal or civil judgments or penalties against Mercedes. Plaintiffs' counsel retained experts, conducted testing, and completed a thorough and costly investigation before they filed their initial complaint and long before there was any public awareness of a government investigation of Mercedes. It was only months later that, in April 2016, that Mercedes said the U.S. Department of Justice had asked Mercedes to investigate its emissions certification process.

Also unlike the *VW* and *FCA* cases, where government action spurred a relatively quick march to settlement, this case has been marked by protracted, vigorous litigation. The dockets before this Court and the Third Circuit reveal

multiple rounds of motions to dismiss and to force arbitration, challenging appeals, and numerous discovery disputes. The Court granted Mercedes' initial motion to dismiss, *In re Mercedes-Benz Emissions Litig.*, 2016 WL 7106020 (D.N.J. Dec. 6, 2016), resulting in the dismissal of this case for lack of Article III standing, which required Plaintiffs to replead and (successfully) re-litigate additional motions to dismiss. *See, e.g., In re Mercedes-Benz Emissions Litig.*, 2019 WL 413541 (D.N.J. Feb. 1, 2019) (denying Mercedes' and Bosch LLC's motion to dismiss fourth amended complaint). Plaintiffs also were required to respond to multiple appellate efforts by Mercedes, namely (1) an unsuccessful request for interlocutory review of the order denying Mercedes' second motion to dismiss, *see In re Mercedes-Benz Emissions Litig.*, 2019 WL 2591158 (D.N.J. June 25, 2019), and (2) Mercedes' appeal from the denial of a motion to compel arbitration for two Plaintiffs to the Third Circuit, which ordered further proceedings below on that issue. *In re Mercedes-Benz Emissions Litig.*, 797 Fed. App'x 695 (3d Cir. 2020). Mercedes has denied, and continues to deny, Plaintiffs' material allegations and claims, and it is only through settlement that the Parties are avoiding lengthy and protracted litigation.

In April 2019, the Court appointed as Special Master the Honorable Dennis Cavanaugh (Ret.) before whom the parties were engaged in intensive and vigorously disputed discovery. To foster the parties' pursuit of relevant evidence, the Special Master scheduled frequent case management conferences, decided many discovery disputes, and facilitated the advancement of discovery. *See, e.g., In re Mercedes-Benz Emissions Litig.*, 2020 WL 487288 (D.N.J. Jan. 30, 2020); *In re Mercedes-Benz*

*Emissions Litig.*, 2020 WL 103975 (D.N.J. Jan. 9, 2020); *In re Mercedes-Benz Emissions Litig.*, 2019 WL 5800270 (D.N.J. Nov. 7, 2019). Approximately 20 discovery motions were briefed. The disputes included the manner in which Defendants would search for documents; the scope of custodians to be searched; the scope of Plaintiffs' discovery requests; and invasive searches of Plaintiffs' own documents. All told, Plaintiffs served 91 Requests for Production on Mercedes and another 59 requests on the Bosch defendants. Plaintiffs served subpoenas on 11 third parties. The Mercedes and the Bosch defendants produced approximately 43,920 documents comprising more than 331,000 pages, which Plaintiffs reviewed and coded. Berman Decl., ¶ 7. Plaintiffs' experts reviewed much of the technical discovery that was produced.

Depositions were underway when the Parties reached the proposed Settlement. Plaintiffs took Rule 30(b)(6) depositions of Mercedes and Bosch LLC, respectively, while Defendants took the depositions of five Plaintiffs. Berman Decl., ¶ 8.

The Settlement was reached only after extensive mediation efforts. Seven full-day and two half-day mediation sessions were held with Judge Infante over the course of a year, and the mediation also entailed additional conference calls with Judge Infante and between the Parties. Berman Decl., ¶ 9.

The timing of this Settlement is also highly significant when assessing its value. The ongoing litigation and this settlement occurred at a time of great global unrest and when the parties in this case and others across the nation face enormous

pressure to seek early resolutions.   Efforts to settle cases have failed because companies have little or no money to fund any type of recovery, or they fear that economic recovery may not occur in the near future.  Despite this, Plaintiffs' counsel continued fighting through the pandemic for each and every piece of consumer relief – a fight that could have gone south at any moment.

## III.   SUMMARY OF SETTLEMENT TERMS

### A.   The Settlement Class Definition.

The Class includes all current and former owners or lessees of Subject Vehicles in the United States, including territories of the United States, who (1) on or before the Settlement Announcement Date owned or leased, and Registered, a Subject Vehicle, or (2) after the Settlement Announcement Date begin owning or leasing, and Register, a Subject Vehicle for which an AEM has not been installed.[2]

---

[2] Excluded from the Class are: (1) the Mercedes Defendants and their officers, directors, and employees; the Mercedes Defendants' corporate affiliates and corporate affiliates' officers, directors, and employees; their distributors and distributors' officers, directors, and employees; (2) judicial officers and their immediate family members and associated court staff assigned to this Action; (3) persons who have settled with, released, or otherwise had claims adjudicated on the merits against the Mercedes Defendants arising from the same core allegations or circumstances as this case; and (4) all Persons otherwise in the Class who timely and properly exclude themselves from the Class as provided in the Class Action Agreement.

Subject Vehicles means a "Subject Vehicle" as defined in the Consent Decree, which includes the following Mercedes diesel vehicles:

| BlueTEC II Diesel Vehicles | |
|---|---|
| Model | Model Year(s) |
| E250 | 2014-2016 |
| E350 | 2011-2013 |
| GL320 | 2009 |
| GL350 | 2010-2016 |
| GLE300d | 2016 |
| GLE350d | 2016 |
| GLK250 | 2013-2015 |
| ML250 | 2015 |
| ML320 | 2009 |
| ML350 | 2010-2014 |
| R320 | 2009 |
| R350 | 2010-2012 |
| S350 | 2012-2013 |
| Mercedes-Benz Sprinter (4-cylinder) | 2014-2016 |
| Freightliner Sprinter (4-cylinder) | 2014-2016 |
| Mercedes-Benz Sprinter (6-cylinder) | 2010-2016 |
| Freightliner Sprinter (6-cylinder) | 2010-2016 |

**B.    The Settlement Provides Substantial Benefits to the Class.**

In addition to receiving AEMs to ensure Subject Vehicles meet their original certification standards and an Extended Modification Warranty under the terms of the Consent Decree, Class Members who submit Valid Claims are eligible to receive substantial cash compensation.    Class Members and their monetary benefits generally fall into three categories:

1.    Current owners and lessees whose Subject Vehicle receives an AEM and who submit a Valid Claim will receive $3,290 or, if an Eligible Former Owner or Eligible Former Lessee also submits a Valid Claim for that same

vehicle, current owners/lessees will receive $2,467.50. Most Class Members will be current owners or lessees.

2. Eligible Former Owners and Former Lessees will receive up to $822.50 for each vehicle, which will be divided equally among the Eligible Former Owners and Eligible Former Lessees who submit Valid Claims related to the same vehicle.

3. Eligible Post-Announcement Owners and Eligible Post-Announcement Lessees whose Subject Vehicle receives an AEM and who submit a Valid Claim will receive $2,467.50 per Subject Vehicle.

Along with the payments described above, in some cases, Eligible Current Owners/Lessees may receive additional payments for deferred AEM availability, any late submissions of emissions modification proposal reports by Mercedes to the regulators, and any reclassification of Subject Vehicles to a lesser emissions standard. If an AEM for a Subject Vehicle is unavailable within a grace period beyond the deadline, Class Members who own or lease an affected Registered Subject Vehicle on that date will be eligible for a substantial payment pegged to the Owner/Lessee Payment in accordance with the Settlement Agreement, based on model year from 30% up to 80%. If, before the deadline, an AEM is unavailable, and no vehicle in that Emissions Modification Category can be re-registered in the Registered Subject Vehicle owner's state of residence because the AEM is unavailable and the owner files a claim within 60 days of that deadline, Mercedes will offer to repurchase the Subject Vehicle for an amount equal to the value of the vehicle according to the Manheim

Market Report.

On top of all of these benefits, if an AEM causes "Reduced Performance" of the Subject Vehicle, then Current Owners/Lessees will be eligible for a payment of $325. If an AEM causes "Substantially Reduced Performance" of the Subject Vehicle, then Current Owners/Lessees will be eligible for a payment of up to $650. And if an AEM increases the frequency of refilling the diesel emission fluid, Current Owners/Lessees of the affected Subject Vehicle will be eligible to receive another $75.

Given that there are an estimated 250,000 Subject Vehicles, the money benefits of the Settlement likely exceed $700 million.[3] And Class Members preserve their legal rights to continue seeking additional recovery from the Bosch Defendants.

In addition, Mercedes has agreed to separately pay Attorneys' Fees and Costs and reasonable Class Representative Service Awards. After agreeing to the principal terms set forth in the Agreement, Plaintiffs' Counsel and Mercedes' Counsel mediated the amount of Attorneys' Fees and Expenses that, following application to the Court and subject to Court approval, would be paid as the fee award and costs award to Plaintiffs' counsel. Class Counsel, on behalf of all plaintiffs' counsel, will apply for an award of Attorneys' Fees and Expenses in the Actions in the amount of $80,200,000

---

[3] In addition to these monetary benefits, each Subject Vehicle that receives an AEM will also receive an "Extended Modification Warranty" under the terms of the Consent Decree backing certain emissions-related components for a period equal to the greater of: (i) 10 years from date of initial sale or 120,000 miles on the odometer, whichever comes first; or (ii) 4 years or 48,000 miles from the date of installation of the Approved Emission Modification, whichever comes first. The warranty is transferable to subsequent purchasers and is not dependent on submitting a claim or remaining in the Class. Details of the Extended Modification Warranty can be found at www.mbbluetecsettlement.com and www.mbbluetecupdate.mbusa.com.

in fees, plus up to $3,200,000 in expenses incurred before the Rule 23(e)(2) Fairness Hearing.  Mercedes has agreed not to oppose an application for these amounts.

## IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.    The Standard and Procedures for Granting Preliminary Approval.

Rule 23(e) provides that the Court should direct notice for the settlement in a reasonable manner and may approve a class action settlement after a hearing and upon finding that the settlement is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2).  At the preliminary approval stage, a hearing is neither necessary nor required under Rule 23(e), but "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class," and a court is to direct notice to prospective class members "who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to . . . (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(A)-(B); *see also Ward v. Flagship Credit Acceptance LLC*, 2020 WL 759389, at *4 (E.D. Pa. Feb. 13, 2020) (discussing revised preliminary approval test under Dec. 1, 2018 revisions to Rule 23(e)).

The Third Circuit has long encouraged the settlement of class action litigation. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an

overriding public interest in settling class action litigation, and it should therefore be encouraged"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

As shown below, the Settlement warrants preliminary approval and dissemination of notice to the Class.[4]

**B.   There is a Strong Basis to Conclude that the Settlement Is Fair, Reasonable, and Adequate and that the Rule 23(e)(2) Standards for Approval Will Be Met.**

**1.   The proposed Settlement was reached after substantial litigation, including fulsome discovery and motion practice, and the benefits of the proposed Settlement far outweigh the risks of continued litigation.**

As noted above, the Settlement comes after four and one-half years of spirited litigation.   That litigation saw extensive motion practice and entailed fulsome discovery.   Over the course of the litigation, the Parties exchanged formal, comprehensive discovery requests and responses, negotiated ESI search terms,

---

[4] At the final approval stage, courts in the Third Circuit prescribes a more rigorous nine-factor analysis to assess the fairness, adequacy, and reasonableness of a proposed class action settlement.   The nine factors established by *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risk of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.   *See also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005).

retained and consulted with multiple experts, and further exchanged extensive data and information related to the Settlement Class Vehicles and damages during arm's-length settlement negotiations. Class Counsel have a clear view of the strengths and weaknesses of the Class's claims and damages approaches. Sufficient discovery has been conducted here. As a result, the Parties are sufficiently well informed as to the factual and legal issues relevant to this action.

In addition, the risk, expense, complexity, and duration of further litigation is significant. The array of defense arguments on various issues that could narrow Plaintiffs' claims or certain segments of the Class include, among others: preemption; choice of law; variations in law; arbitration clause enforcement; and lack of damages. Mercedes continues to deny Plaintiffs' claims and attack them. If the litigation went ahead, other issues, such as motions to exclude material components of Plaintiffs' evidence of liability and damages in expert reports could also undermine Plaintiffs' case. Nor has a litigation class been certified. Were the Court to certify one, Defendants would no doubt pursue a Rule 23(f) petition to the Third Circuit for immediate review. The risk of maintaining class action status through trial is real. Moreover, if Plaintiffs prevailed at trial, a long appeal period would certainly result. The litigation road has been arduous and promises to be harder absent settlement. In sum, this case was far from a "slam dunk" and, considering the substantial future risks posed by trial and appeals, this is a laudable recovery that offers Settlement Class Members an immediate recovery upon approval, rather than the uncertainties of further litigation. All of these considerations allow counsel to unhesitatingly

recommend the Settlement for the Court's approval.

2.    **The Settlement yields robust benefits to the Class.**

As detailed above, the Settlement provides hundreds-of-millions of dollars in benefits for the Settlement Class.  Also, the Settlement requires Court-awarded attorneys' fees and litigation expenses of up to $83,400,000 to be paid *separately*, without reducing Class recovery.  That is an additional valuable benefit to the Class, which will be relieved from having to pay common benefit fees out of its recovery.  In sum, the Settlement is an excellent result for consumers after an extremely hard-fought litigation, and the Settlement falls within the range of reasonableness when compared to the risks posed by trial and issues in dispute.  Its benefits are substantial and, in large part, encompass or exceed the relief that could be obtained through a jury verdict in favor the Class.[5]  Class Counsel, who have collectively served as class counsel in hundreds of actions, fully endorse the Settlement as fair, reasonable, and adequate.

3.    **The Settlement negotiations occurred at arm's-length.**

Parallel to the hard-fought litigation track, the Parties actively engaged in many rounds of negotiations for over a year.  The Parties negotiated arduously and at arm's-length under the supervision and aid of Judge Infante.  This factor supports preliminary approval.  *See Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("The participation of an independent mediator in settlement negotiations

---

[5] The Settlement also compares favorably when compared to other recently approved diesel emissions class action settlements in the *VW* and *FCA* cases.

14

'virtually insures that the negotiations were conducted at arm's-length and without collusion between the parties.'").

The negotiations involved submissions of proposals and counter-proposals, and the evaluation of ample evidence and competing factual and legal arguments. The Parties worked long and hard to resolve this matter. The result—a Settlement valued at over $700 million—speaks for itself. It is Class Counsel's reasoned opinion that, given the alternative of long and complex litigation, and the risks involved in such litigation, including a class certification battle, trial on the merits, and appeals, the availability of robust relief under the Settlement weighs heavily in favor of preliminary approval. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 259 (3d Cir. 2009) (a settlement that would eliminate delay and expenses and provides immediate benefit to the class strongly favors approval).

4.   **The proponents of the Settlement are experienced in similar litigation.**

Class Counsel are highly experienced class action litigators. Throughout the course of negotiations, Class Members were represented by a team of attorneys who have considerable experience (and success) in prosecuting (and settling) class actions. Their decision to settle after more than four years of hard-fought litigation and evaluation of the claims weights in favor of the Court granting preliminary approval. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997) ("the Court credits the judgment of Plaintiffs' Counsel, all of whom are active, respected, and accomplished in this type of litigation."); *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("[T]he Court

15

puts credence in the fact that Class Counsel consider the Proposed Settlement to be fair, reasonable and adequate."); *Alves*, 2012 WL 6043272, at *22 ("[C]ourts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.") (citation and internal quotation marks omitted).

## V.   THE COURT SHOULD CERTIFY THE PROPOSED CLASS FOR SETTLEMENT PURPOSES

Plaintiffs request, in accordance with Rule 23(e)(1)(B)(ii), that the Court preliminarily certify a Settlement Class and direct dissemination of notice about the action and the Settlement.  Mercedes does not object to certification of the Settlement Class for purposes of settlement only, and the Supreme Court has long acknowledged the propriety of certifying a class solely for settlement purposes. *See, e.g., Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 618 (1997).  In conducting this task, a court's "dominant concern" is "whether a proposed class has sufficient unity so that the absent members can fairly be bound by the decisions of class representatives."  *Id.* at 621.  To be certified under Rule 23, a putative class must satisfy, by a preponderance of the evidence, each of the four requirements of Rule 23(a) as well as the requirements of one of the three subsections of Rule 23(b). *See, e.g., Wragg v. Ortiz*, 2020 WL 2745247, at *27 (D.N.J. May 27, 2020).

## A.   The Rule 23(a) Requirements Are Satisfied.

Plaintiffs must satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).  As shown below, the proposed Class readily satisfies all four elements.

1.     **Rule 23(a)(1) – Numerosity is present.**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[G]enerally, where the potential number of plaintiffs is likely to exceed forty members, the Rule 23(a) numerosity requirement will be met." *Martinez-Santiago v. Public Storage,* 312 FRD 380, 388 (D.N.J. 2015) (citing *Marcus v. BMW of N. Am., LLC,* 687 F.3d 583, 595 (3d Cir. 2012)). With approximately 250,000 Subject Vehicles included, there can be no dispute that the members of the proposed Class are so numerous as to make their joinder impractical. *See*, *e.g.*, *Wragg*, 2020 WL 2745247, at * 27 (numerosity "must be based on common sense") (citation and internal quotation marks omitted). Indeed, courts routinely find numerosity in automotive class actions, as should be the case here. *See*, e.g., *In re Chrysler-Dodge Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 536661, at *5 (N.D. Cal. Feb. 11, 2019) (numerosity satisfied for comparable diesel emissions settlement). The numerosity test is readily satisfied.

2.     **Rule 23(a)(2) – There are issues common to all Class Members.**

Rule 23(a)(2) requires that there be "questions of law *or* fact common to the class," and that the class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350, 369 (2011) (citation omitted and emphasis added). In other words, the class's claims must "depend upon a common contention ... capable of class-wide resolution." *In re Wellbutrin XL Antitrust Litig.*, 282 F.R.D. 126, 137 (E.D. Pa. 2011) (citing *Wal-Mart,* 564 U.S. at 350). "A contention is capable of class-wide resolution if determination of its truth or falsity will resolve an issue that is

central to the validity the claims 'in one stroke.'" *Id.* (quoting *Wal-Mart,* 564 U.S. at 350).

The commonality inquiry focuses on the defendant's conduct. *Sullivan v. DB Invs., Inc*, 667 F.3d 273, 297 (3d Cir. 2011) (en banc) ("commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members").   Not all questions of fact and law need to be common if there are common questions at the heart of the case. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 530 (3d Cir. 2004) (quotation omitted); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 310 (3d Cir. 1998). "For purposes of Rule 23(a)(2), even a single [common] question will do." *Wal-Mart,* 564 U.S. at 359 (brackets in original; citation omitted).

In two analogous cases, commonality was found when the most significant question concerns the existence of an alleged defeat device and emissions levels higher than government regulations permit. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2016 WL 4010049, at *10 (N.D. Cal. July 26, 2016) (commonality satisfied for comparable diesel emissions settlement class); *In re Chrysler-Dodge Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 536661, at *5 (same).   That central question is equally present here.   The claims of all Class Members involve the same advertising, the same vehicles, the same emissions control technology and software, the same alleged defeat device, the same conduct which focuses on the Defendants and not individual Class members, and so on.   These issues are at the heart of the case and are enough to satisfy the Rule

23(a)(2) commonality element.

    3.    **Rule 23(a)(3) – Typicality is satisfied.**

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members.  The Third Circuit has explained that "the named plaintiffs' claims must merely be 'typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class.'" *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009) (citation omitted); *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 184 (3d Cir. 2001) (citation omitted). Rule 23(a)(3), however, "does *not* require that all putative class members share *identical* claims."  *HBO,* 265 F.3d at 184.

Under the permissive standards of this rule, representative claims are "typical" if they are reasonably coextensive with those of absent class members and they need not be identical.  Indeed, when it is alleged that the defendant engaged in conduct common to all members of the class, "there is a strong presumption that the claims of the representative parties will be typical of the absent class members."  *In re Merck & Co., Vytorin/Zetia Sec. Litig.*, No. 08-cv-2177, 2012 WL 4482041, at *4 (D.N.J., Sept. 25, 2012) (citation omitted).  Likewise, "[w]hen a class includes purchasers of a variety of different products, a named plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types." *Marcus* 687 F.3d at 599; *see also Yaeger v. Subaru of Am., Inc.*, 2016 WL 4541861, at *6 (D.N.J. Aug. 31, 2016) (finding typicality where "plaintiffs allege that the class

claims arise out of the same conduct of the defendants related to their design, manufacture, and sale of the class vehicles that suffered from an alleged oil consumption defect, and defendants' alleged failure to disclose that material fact").

The named Plaintiffs' claims, and those of absent members of the Settlement Class, arise from a common alleged course of conduct and under common legal theories.  Plaintiffs contend that Mercedes conspired with the Bosch defendants to form an enterprise for unlawful purposes, thereby violating RICO.  Plaintiffs allege that Mercedes engaged in false advertising in violation of consumer protection laws and committed fraud by selling vehicles with alleged defeat devices that allegedly emit harmful pollutants at illegal high levels; not informing consumers of the alleged defeat devices or the excessive emissions; and making material misstatements and omissions in violation of RICO about the vehicles' performance, fuel-efficiency, and emissions, and whether the vehicles were environmentally friendly and met emissions limits under everyday driving conditions.  Plaintiffs allege that their vehicles have the same alleged defeat devices as all other Class Vehicles and that they purchased or leased vehicles that emit excessive pollutants without knowing the truth about the vehicles' "real world" emissions. *See Volkswagen*, 2016 WL 4010049, at *11 (typicality satisfied for diesel emissions settlement class); *In re Chrysler-Dodge Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 536661, at *5-6 (N.D. Cal. Feb. 11, 2019) (same).  These claims are typical of the claims of every member of the Class.

4.    **Rule 23(a)(4) – Adequacy is satisfied.**

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In the Third Circuit, the relevant inquiries are (1) whether the named plaintiffs have any interests antagonistic with other class members and (2) whether the named plaintiffs' counsel are qualified, experienced, and able to conduct the proposed litigation. *In re Schering Plough Corp.*, 589 F.3d at 602.[6] The core analysis for the first prong is whether Plaintiffs have interests antagonistic to those of absent members of the Settlement Class. The second prong analyzes the capabilities and performance of Class Counsel based on factors set forth in Rule 23(g). *See Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010). Plaintiffs satisfy both prongs.

First, the proposed Class Representatives interests "are entirely aligned [with those of the proposed Class] in their interest in proving that [Defendants] misled them and share the common goal of obtaining redress for their injuries." *Volkswagen*, 2016 WL 4010049, at *11; *see also In re Chrysler-Dodge Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 536661, at *6 (same). The Class Representatives have had every incentive to vigorously prosecute this litigation against Mercedes because, as discussed above, their claims are typical of the absent Class Members. *E.g., Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y.

---

[6] "The adequacy of representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. The adequacy heading also factors in competency and conflicts of class counsel." *Amchem Prods., Inc.*, 521 U.S. at 626 n.20 (citation and internal quotation marks omitted).

21

2008) ("The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class."); *Emig v. Am. Tobacco Co.*, 184 F.R.D. 379, 387 (D. Kan. 1998) (noting that "[a]n overlap exists in the typicality and adequacy of representation requirements because if typicality is not present, the class representatives do not have an incentive to vigorously prosecute class claims").

The Class Representatives also understand their duties: they have all kept abreast of the litigation and aided in discovery, and many have submitted to depositions. There can be no reasoned argument that any of the Class Representatives have conflicts antagonistic to the Class, and the Court should conclude that they will—and have—adequately represented the Class.

Likewise, Plaintiffs' choice of counsel further underscores their adequacy. *See In re Cmty. Bank of N. Va.*, 622 F.3d 275, 292 (3d Cir. 2010) ("Realistically, for purposes of determining adequate representation, the performance of class counsel is intertwined with that of the class representative." (citation and internal quotation marks omitted). In retaining, Carella Byrne, Hagens Berman, and Seeger Weiss, Plaintiffs have employed counsel who are qualified and experienced in complex class litigation and who have the resources, zeal, and successful record in class cases.[7] There can be no genuine question that the proposed Class Representatives are

---

[7] The fitness of these three firms to adequately represent the Class is further addressed in Section V-C below in connection with their qualifications for appointment as Class Counsel under Rule 23(g).

adequate.

      5.     **The proposed Class is ascertainable.**

Although not specified in the text of Rule 23, courts, including this District, imply a prerequisite that the proposed class be ascertainable. *E.g.*, *Shelton v. Bledsoe*, 775 F.3d 554, 559 (3d Cir. 2015). "The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (citations omitted); *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 439 (3d Cir. 2017).

Here, the Class definition uses objective criteria that make class membership objectively verifiable, and there is a reliable and administratively feasible mechanism through which qualified Class Members will be readily identified: registration data available from State DMV's and third-party vendors.

**B.    As Required by Rule 23(b)(3), Common Issues Predominate and Class Treatment is Superior to a Multiplicity of Individual Lawsuits.**

Under Rule 23(b)(3), a class should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy.

The predominance element "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods, Inc.,* 521 U.S. at 623. At its core, "[p]redominance is a question of efficiency." *Butler v. Sears, Roebuck & Co.,* 702 F.3d 359, 362 (7the Cir. 2012). The superiority component

requires the court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods' of adjudication." *Prudential*, 148 F.3d at 316 (citation omitted).  Here, the Class readily meets both requirements.

First, common issues predominate.  The predominance inquiry focuses on liability issues.  *E.g.*, *In re Novo Nordisk Sec. Litig.*, 2020 WL 502176, at *8 (D.N.J. Jan. 31, 2020) ("In determining whether common questions predominate, courts have focused on the claims of liability against defendants.") (citing cases).  The common questions discussed above with respect to the Rule 23(a)(2) commonality element are overarching and thus tower over issues relating to individual Class Members.  Factual and legal questions aside, the salient evidence necessary to prove Plaintiffs' claims is common to both the Class Representatives and all Class Members—all would seek to prove that the Class Vehicles have an emissions defeat device, that Defendants misled regulators and consumers by concealing the emissions defeat device, and that Defendants' conduct was wrongful.  Moreover, the necessary proof would be generalized; it change little, if at all, whether there are dozens or half a million Class Members.   In either instance, Plaintiffs would present the same evidence of Defendants' marketing, and the same evidence of alleged wrongdoing. *See Volkswagen*, 2016 WL 4010049, at *12; *see also In re Chrysler-Dodge Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 536661, at *7.  In other words, the Class's claims depend on the same factual circumstances, *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2020 WL 3166456, at *5 (D.N.J. June 15, 2020), and "the claims present common operative facts and common questions of law that predominate" over

24

any factual variations. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'"). The predominance test is thus satisfied.

Second, certification of the Class under Rule 23 is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R Civ. P. 23(b)(3). The Settlement affords benefits to Class Members who, absent a class settlement, may not have been aware of their legal rights or had too little an incentive to pursue an individual suit involving emissions defeat devices in their vehicles. The presence of the alleged defeat device was never disclosed and is still contested by Mercedes. The high cost of marshaling the evidence (expert, sophisticated electronic discovery, discovery in foreign languages, and so on) necessary to pursue the claims at issue dwarfs any individual consumer's potential recovery and the disparity in resources between individuals and well-funded, litigation-savvy defendant like Mercedes. This Court has recognized that the existence of so-called "negative value" claims—"meaning it costs more to litigate than you would get if you won," *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 675 n.7 (2010) (citation and internal quotation marks omitted)—is typically "*the* most compelling rationale for finding superiority" of class treatment. *Reap v. Cont'l Cas. Co.*, 199 F.R.D. 536, 550 (D.N.J. 2001) (citation and internal quotation marks omitted; emphasis added).

Indeed, Class Counsel have already devoted significant time and resources to this litigation, including multiple rounds of motions to dismiss, discovery briefing, depositions, document review, retaining experts, and engaging in other significant efforts on many other issues.  It is inconceivable than an individual vehicle owner pursuing a purely economic loss case could or would invest the same resources.  *Cf. Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("[O]nly a lunatic or a fanatic sues for $30.").

Certification also serves the interest of judicial economy by avoiding multiple similar lawsuits and resolving claims affected hundreds of thousands of vehicles in one proceeding.  Even a few duplicative individual suits would needlessly burden the courts and risk inconsistent adjudications.  *See In re Neurontin Antitrust Litig.,* 2011 WL 286118, at *11 (D.N.J. Jan. 25, 2011) ("The class action mechanism ... avoids the specter of inconsistent adjudications.") (citation and internal quotation marks omitted).

Thus, class action treatment is far superior to individual adjudication. Moreover, because this is a class certified only for purposes of settlement, manageability concerns associated with a litigation class are irrelevant.  *Amchem Prods, Inc.*, 521 U.S. at 620.  Nevertheless, were this a proposal for certification of a litigation class, there would be no serious manageability problems that would make thousands of individual actions a better alternative.  *See In re Chrysler-Dodge Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 536661, at *6 (superiority satisfied in comparable diesel emissions defeat device case).  The Rule

23(b)(3) superiority component is thus also met here.

## C.    Proposed Class Counsel Satisfy Rule 23(g).

Pursuant to Rule 23(g), Plaintiffs also move for appointment of the law firms of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C., Hagens Berman Sobol Shapiro LLP, and Seeger Weiss LLP as Class Counsel.  Rule 23(g) focuses on the qualifications of class counsel, complementing the requirement of Rule 23(a)(4) that the representative parties adequately represent the interests of the class members. *See Sheinberg v. Sorensen*, 606 F.3d 130, 132-3 (3d Cir. 2010) ("Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4) of the Federal Rules of Civil Procedure, those questions have, since 2003, been governed by Rule 23(g)."). Although a court may consider any factor concerning the proposed class counsel's ability to "fairly and adequately represent the interest of the class," Rule 23(g) specifically instructs a court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Here, each of the Rule 23(g)(1)(A)'s considerations weigh strongly in favor of finding Class Counsel adequate.  Class Counsel did substantial work identifying and investigating potential claims and properly supporting the allegations in the Complaints.  As part of their investigation and work, Class Counsel retained and

consulted with multiple experts in different fields, and carefully reviewed public materials along with all documents and information produced by all Defendants and third parties in discovery.

As the Court is aware, Class Counsel have substantial experience, individually and collectively, successfully prosecuting class actions and other complex litigation, including claims of the type asserted in this action. Class Counsel's extensive efforts in prosecuting this case, combined with their in-depth knowledge of the subject area, amply satisfy the criteria for appointment under Rule 23(g).

## VI.    THE FORM AND MANNER OF NOTICE ARE PROPER

Reasonable notice must be provided to Class Members to allow them an opportunity to object to the proposed Settlement or to opt out of the Class if they do desire. The way that class notice is distributed, as well as its content, must satisfy Rule 23(c)(2) (governing class certification notice), Rule 23(e)(1) (governing settlement notice), and due process. *See In re Ocean Power Techs, Inc.,* 2016 WL 6778218, at *9 (D.N.J. Nov. 15, 2016); *Kaplan v. Chertoff,* 2008 WL 200108, at *12-3 (E.D. Pa. Jan. 24, 2008). Rule 23(e) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). "Due process requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *In re Nat'l Football League Players Concussion Injury Litig.,* 821 F.3d 410, 446 (3d Cir. 2016) (citation omitted). Additionally, Rule 23(c)(2) requires "the best notice practicable

under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B), and such notice should contain sufficient information "'to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class.'" *In re Ocean Power Techs., Inc.,* 2016 WL 6778218 at *10 (quoting *In re Nat'l Football League Players Concussion Injury Litig.,* 821 F.3d at 435). Furthermore, "[i]t is well settled that in the usual situation first-class mail and publication fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause." *Id.* (quoting *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.,* 758 F.2d 86, 90 (3d Cir. 1985)).

Here, the content of the Class Notice satisfies all requirements. The proposed Class Notice is written in plain English and is easy to read. It includes: (1) a description of the Class; (2) a description of the claims asserted in the action; (3) a description of the Settlement and release of claims; (4) the deadlines for exercising the right to opt-out; (5) the identity of counsel for the Class; (6) the Final Approval Hearing date; (7) an explanation of eligibility for appearing at the Final Approval Hearing; and (8) the deadline for objecting to the Settlement. The Class Notice provides Settlement Class Members with clear and correct information about the nature and principal terms of the Settlement Agreement to make an informed and intelligent decision whether to object to the Settlement or opt out. In addition, under Rule 23(h), the proposed Class Notice sets forth the maximum amount of Attorneys' Fees and Expenses and Case Contribution Awards that may be awarded under the

Settlement Agreement.

The proposed plan for dissemination of the Class Notice likewise satisfies all Rule 23 and due process requirements, as set forth in the Settlement Administrator's (JND Legal Administration) declaration. The proposed Notice Program was designed to reach the greatest practicable number of Class Members. Direct mail notice via U.S. mail and email notice (where available) will be the principal methods of notice, providing Class Members with an opportunity to read, review, and understand their rights and options in this Class Action Settlement. Under the Settlement Agreement, the Settlement Administrator will send individualized Class Notices and Claims Forms to Settlement Class Members by first-class mail. Mail Notice will be sent to the last known address reflected in state DMV registration records for each Class Member. Additionally, before the mailing of the Class Notice, an address search through the National Change of Address database will be conducted. For any mailed notice that is returned as undeliverable, the Settlement Administrator will re-mail the Class Notice where a forwarding address has been provided. For any remaining undeliverable notice packets, the Settlement Administrator will perform an advanced address search (*e.g.*, a skip trace) and re-mail any undeliverable Class Notices if any new and current address are found. Notice will also be emailed to all Class Members for whom a valid email address is obtained. *See* Declaration of Jennifer M. Keough Regarding Proposed Notice Program ("Keough Decl.").

In addition, a dedicated website,[8] toll free number,[9] email account,[10] and post office box[11] have been (or will soon be) established so that Class Members can readily direct any questions, obtain additional copies of materials sent by the Settlement Administrator, and find instructions on how to submit a Claim. *See* Keough Decl.

The proposed Class Notice and notice program comply with the standards of fairness, completeness, and neutrality required of a settlement class notice distributed under authority of the Court. The Parties respectfully ask that the Court approve retention of JND Legal Administration as the Settlement Administrator to oversee notice and claims administration for this Settlement. JND Legal Administration, which has successfully administered numerous complex class action settlements has been retained on competitive and favorable terms. And the costs of notice and claims administration are being paid by Mercedes separately, not decreasing Class recovery.[12]

## VII.   THE COURT SHOULD SET SETTLEMENT DEADLINES AND SCHEDULE A FAIRNESS HEARING

If it preliminarily approves the proposed Settlement, the Court should also set a final approval hearing date, dates for mailing the Notices, and deadlines for objecting to the Settlement and filing papers in support of the Settlement. Plaintiffs

---

[8] www.mbbluetecsettlement.com.

[9] 1-877-313-0170.

[10] info@mbbluetecsettlement.com.

[11] MB Blue Tec Settlement, c/o JND Legal Administration, P.O. Box 91310, Seattle, WA 98111.

[12] *See, e.g.,* https://www.jndla.com/cases/class-action-administration.

propose the following schedule, which the Parties believe will provide ample time and opportunity for Class Members to decide whether to request exclusion or object. The schedule provided in the proposed Preliminary Approval order is driven by the date on which preliminary approval of the Settlement is granted and the date selected for the final approval hearing. Specifically, it provides the following:

| Event | Proposed Date |
|---|---|
| Class Notice Program and Claims Period begins | Within 15 business days after the entry of the Preliminary Approval Order or the entry of the US-CA Consent Decree, whichever is later |
| Motion for Attorneys' Fees and Expenses Application filed | 30 days after Notice Date |
| Objection and Opt-Out Deadline | 60 days after Notice Date |
| Motion for Final Approval filed | 90 days after Notice Date |
| Fairness Hearing | 110 days after Notice Date |

To allow adequate time to obtain necessary information from the state DMVs and for mailing notices, and for the requisite coordination with the Mercedes Defendants' regulatory resolution that provides for the AEMs, Plaintiffs request that the Court promptly enter the proposed Preliminary Approval Order. If the Court enters the Preliminary Approval Order this week, Plaintiffs respectfully submit that the Fairness Hearing can be scheduled at a date and time convenient to the Court within 110 days of the Notice Date, or as soon thereafter as convenient for the Court. The parties will inform the Court of the calendar date that should be considered the Notice Date as soon it becomes known.

## VIII.  CONCLUSION

For all these reasons, the Court should grant preliminary approval of the proposed Settlement and enter the accompanying proposed Preliminary Approval Order.

Dated:  September 14, 2020                  Respectfully submitted,

                                            CARELLA BYRNE CECCHI
                                            OLSTEIN BRODY & AGNELLO, P.C.


                                            By  */s/ James E. Cecchi*
                                            JAMES E. CECCHI

                                            By  */s/ Steve W. Berman*
                                            STEVE W. BERMAN
                                            Sean R. Matt
                                            Andrew M. Volk
                                            Shelby R. Smith
                                            HAGENS BERMAN SOBOL SHAPIRO LLP
                                            1918 8th Avenue, Suite 3300
                                            Seattle, Washington 98101
                                            Tel: (206) 623-7292


                                            By  */s/ Christopher A. Seeger*
                                            CHRISTOPHER A. SEEGER
                                            Jennifer R. Scullion
                                            SEEGER WEISS LLP
                                            55 Challenger Road
                                            Ridgefield Park, New Jersey 07660
                                            Tel: (973) 639-9100

                                            *Counsel for Plaintiffs and the Class*