# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE MERCEDES-BENZ EMISSIONS LITIGATION | Civil Action No. 16-881(KM)(ESK) Special Master Dennis M. Cavanaugh, U.S.D.J. (Ret.) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND APPROVAL OF DISSEMINATION OF NOTICE OF SETTLEMENT

James E. Cecchi
Donald A. Ecklund
**CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, NJ 07068
(973) 994-1700

Steve W. Berman
Sean R. Matt
Andrew M. Volk
Shelby R. Smith
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292

Christopher A. Seeger
Jennifer R. Scullion
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
(973) 639-9100

*Counsel for Plaintiffs and the Class*

708452v1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................iii

I.     INTRODUCTION ......................................................................1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY.......4

III.   SUMMARY OF SETTLEMENT TERMS...........................................6

A.     The Settlement Class Definition............................................6

B.     The Settlement Provides Substantial Benefits to the Class. ..........7

IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL 8

A.     The Standard and Procedures for Granting Preliminary
       Approval...................................................................................8

B.     There is a Strong Basis to Conclude that the Settlement Is Fair,
       Reasonable, and Adequate and that the Rule 23(e)(2) Standards
       for Approval Will Be Met. ....................................................10

1.     The proposed Settlement was reached after substantial litigation,
       including fulsome discovery and motion practice, and the benefits
       of the proposed Settlement far outweigh the risks of continued
       litigation..................................................................................10

2.     The Settlement yields robust benefits to the Class. ........................11

3.     The Settlement negotiations occurred at arm's-length. ................11

4.     The proponents of the Settlement are experienced in similar
       litigation..................................................................................12

V.     THE COURT SHOULD CERTIFY THE PROPOSED CLASS
       FOR SETTLEMENT PURPOSES .......................................13

A.     The Rule 23(a) Requirements Are Satisfied....................................14

1.     Rule 23(a)(1) – Numerosity is present..............................................14

2.     Rule 23(a)(2) – There are issues common to all Class Members.....14

3.     Rule 23(a)(3) – Typicality is satisfied. ..............................................16

4.     Rule 23(a)(4) – Adequacy is satisfied. ..............................................17

5.     The proposed Class is ascertainable. ..............................................20

i

B.    As Required by Rule 23(b)(3), Common Issues Predominate and Class Treatment is Superior to a Multiplicity of Individual Lawsuits........................................................................................20

C.    Proposed Class Counsel Satisfy Rule 23(g). ....................................24

VI.   THE MODIFIED FORM OF NOTICE IS PROPER, AND THE MANNER OF NOTICE ALREADY HAS BEEN APPROVED .....25

VII.  THE COURT SHOULD SET SETTLEMENT DEADLINES AND SCHEDULE A FAIRNESS HEARING................................................28

VIII. CONCLUSION ..........................................................................29

# TABLE OF AUTHORITIES

**Cases**                                                                         **Page(s)**

*Alves v. Main*,
 2012 WL 6043272 (D.N.J. Dec. 4, 2012) ..................................... 15, 17

*Amchem Prods, Inc. v. Windsor*,
 521 U.S. 591 (1997) ....................................................... 17, 22, 24, 27

*Butler v. Sears, Roebuck & Co.*,
 702 F.3d 359 (7the Cir. 2012) ........................................................ 24

*Byrd v. Aaron's Inc.*,
 784 F.3d 154 (3d Cir. 2015) .......................................................... 24

*Carnegie v. Household Int'l, Inc.*,
 376 F.3d 656 (7th Cir. 2004) ......................................................... 27

*In re Chrysler-Dodge Ecodiesel Mktg., Sales Practices &
 Prods. Liab. Litig.*,
 2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ........................... 22, 25, 27

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices
 & Prod. Liab. Litig.*,
 No. 17-MD-02777-EMC, 2019 WL 2554232 (N.D. Cal. May
 3, 2019) ................................................................................. 16

*City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*,
 867 F.3d 434 (3d Cir. 2017) .......................................................... 24

*In re Cmty. Bank of N. Va.*,
 622 F.3d 275 (3d Cir. 2010) .......................................................... 23

*Damassia v. Duane Reade, Inc.*,
 250 F.R.D. 152 (S.D.N.Y. 2008) .................................................... 22

*Ehrheart v. Verizon Wireless*,
 609 F.3d 590 (3d Cir. 2010) .......................................................... 13

*Emig v. Am. Tobacco Co.*,
   184 F.R.D. 379 (D. Kan. 1998) ........................................................... 22

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods.*
   *Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ................................................................. 13

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) ............................................................... 13

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009) ............................................................... 16

*Johnston v. HBO Film Mgmt.*,
   265 F.3d 178 (3d Cir. 2001) ............................................................... 20

*Kaplan v. Chertoff*,
   2008 WL 200108 (E.D. Pa. Jan. 24, 2008) ........................................ 29

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012) ............................................................... 20

*Martinez-Santiago v. Public Storage*,
   312 FRD 380 (D.N.J. 2015) ................................................................ 18

*In re Merck & Co., Vytorin/Zetia Sec. Litig.*,
   No. 08-cv-2177, 2012 WL 4482041 (D.N.J., Sept. 25, 2012) .............. 20

*In re Nat'l Football League Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016) ............................................................... 29

*In re Neurontin Antitrust Litig.*,
   2011 WL 286118 (D.N.J. Jan. 25, 2011) ............................................ 27

*In re Novo Nordisk Sec. Litig.*,
   2020 WL 502176 (D.N.J. Jan. 31, 2020) ............................................ 24

*In re Ocean Power Techs, Inc.*,
   2016 WL 6778218 (D.N.J. Nov. 15, 2016) .......................................... 29

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ......................................................... 19, 24

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
962 F. Supp. 450 (D.N.J. 1997) ............................................................ 17

*Reap v. Cont'l Cas. Co.*,
199 F.R.D. 536 (D.N.J. 2001) ............................................................... 26

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ................................................................ 13

*In re Schering Plough Corp. ERISA Litig.*,
589 F.3d 585 (3d Cir. 2009) .......................................................... 20, 21

*Sheinberg v. Sorensen*,
606 F.3d 130 (3d Cir. 2010) ........................................................... 22, 28

*Shelton v. Bledsoe*,
775 F.3d 554 (3d Cir. 2015) ................................................................ 23

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) ........................................................................... 26

*Sullivan v. DB Invs., Inc*,
667 F.3d 273 (3d Cir. 2011) ............................................................... 19

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) ....................................................................... 25

*United States v. Daimler AG et al.*,
Civ. No. 1:20-civ-02564, ECF No. 2-1 (D.D.C. filed Sept. 14, 2020) ...................................................................................... 11

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
2020 WL 3166456 (D.N.J. June 15, 2020) ........................................ 25

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005) ............................................................. 17

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices &*
   *Prod. Liab. Litig.*,
   No. 2672 CRB (JSC), 2016 WL 4010049 (N.D. Cal. July
   26, 2016) .................................................................................. 22, 25

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices &*
   *Prod. Liab. Litig.*,
   No. MDL 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal.
   Oct. 25, 2016), *aff'd.*, 895 F.3d 597 (9th Cir. 2018) ............................ 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices &*
   *Prod. Liab. Litig.*,
   No. MDL 2672 CRB (JSC), 2017 WL 2212783 (N.D. Cal.
   May 17, 2017) .................................................................................... 16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...................................................................... 18, 19

*Ward v. Flagship Credit Acceptance LLC*,
   2020 WL 759389 (E.D. Pa. Feb. 13, 2020) (discussing
   revised preliminary approval test under Dec. 1, 2018
   revisions to Rule 23(e)) ...................................................................... 12

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) .......................................................... 13, 19

*In re Wellbutrin XL Antitrust Litig.*,
   282 F.R.D. 126 (E.D. Pa. 2011) ........................................................ 19

*Wragg v. Ortiz*,
   2020 WL 2745247 (D.N.J. May 27, 2020) ..................................... 17, 18

*Yaeger v. Subaru of Am., Inc.*,
   2016 WL 4541861 (D.N.J. Aug. 31, 2016) ......................................... 20

## Other Authorities

Fed. R. Civ. P. 23 ............................................................................ *passim*

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs respectfully move for preliminary approval of the proposed Settlement with Defendants Robert Bosch GmbH and Robert Bosch LLC (collectively, "Bosch"), preliminary certification of the Class defined in the Settlement, and approval of proposed Class Notice.[1]

## I.     INTRODUCTION

Plaintiffs, on behalf of themselves and other members of the proposed settlement Class, are pleased to present to the Court their proposed Settlement with Bosch.   Plaintiffs are current and/or former owners/lessees of certain defined Mercedes "Subject Vehicles"—that is, model year 2009–2016 diesel vehicles sold or leased in the United States and equipped with the BlueTEC II emission control technology.  These vehicles include both passenger cars and Sprinter vans.  As with the settlement with Mercedes-Benz USA LLC and Daimler Aktiengesellschaft (collectively, the "Mercedes Defendants" or "Mercedes") that the Court has preliminarily approved (*see* ECF No. 304, "Mercedes Settlement"), the Settlement with Bosch transforms the parties' posture from one of adversarial litigation to one of collaborative resolution that will resolve Plaintiffs' and Class Members' claims against Bosch.

This Settlement ("Bosch Settlement") was reached after frank and contentious

---

[1] The Settlement Agreement is Exhibit A to the Declaration of Steve W. Berman in Support of Motion for Preliminary Approval ("Berman Decl.").  Capitalized terms not defined here have the same definitions and meanings ascribed to them in the Settlement Agreement.

negotiations, including a mediation conducted under the guidance of a respected and experienced mediator, the Honorable Edward A. Infante.  It is also substantially linked to the settlement reached between Plaintiffs and the Mercedes Defendants, which this Court preliminarily approved on September 16, 2020. ECF No. 304.

As shown below, the proposed Settlement with Bosch, like the Mercedes settlement, is an excellent result for the Class, and provides additional monetary relief for Plaintiffs and Class Members. If this Settlement is also approved, Class Members who submit Valid Claims are eligible to receive a payment from Bosch up to $300[2]—a payment that is additional to payments to be made by Mercedes through the Mercedes settlement.  The proposed Settlement is a favorable resolution for the Class that avoids the substantial risks and expense of continued litigation, including the risk of recovering less than the Settlement amount, or nothing at all. It provides a fair, reasonable, and adequate resolution of this litigation, which will curtail costs and the expenditure of resources, eliminate the risk of uncertain litigation outcomes, and prevent further delay in remedying the harms suffered by Class Members.  There can be no serious question that the Settlement meets the bar for preliminary approval. It is not just free of "obvious deficiencies," it includes obvious benefits to Plaintiffs and Class Members. Under such circumstances, courts routinely grant motions for preliminary and final approval, particularly in complex class actions such as the present case. *See, e.g.*, ECF No. 304.

For these reasons, Plaintiffs respectfully request that the Court enter a

---

[2] This payment may be reduced up to 25% for attorneys' fees and costs awarded by the Court.

Preliminary Approval Order, substantially in the form attached as Exhibit __ to the Settlement Agreement, that: (1) grants preliminary approval of the proposed Settlement Agreement between the Parties; (2) finds that the Court, at the final approval stage, will likely certify the Class as defined in the Settlement Agreement, which has already been provisionally certified for settlement purposes for the Mercedes settlement; (3) directs that an amended notice addressing both the Bosch Settlement and Mercedes Settlement, which is largely consistent with the notice already approved by this Court for the Mercedes Settlement, be provided to proposed Class Members; (4) appoints the same Plaintiffs already appointed as representatives for the Mercedes settlement as representatives of the proposed Class; (5) appoints the same three firms already appointed as Class Counsel for the proposed Class in the Mercedes settlement as Class Counsel for the proposed Class; (6) establishes the same dates and procedures for final approval of the Bosch Settlement as those approved for approval of the Mercedes Settlement, including, but not limited to, deadlines and procedures for Settlement objections and Opt-Outs; and (7) schedules a Fairness Hearing to determine whether the Settlement is fair, reasonable, and adequate under Rule 23(e)(2), and whether the Class should be certified.

In sum, the Settlement before the Court represents real relief for consumers and, like the Mercedes settlement, far exceeds all applicable requirements of law, including Rule 23(e)(2) and constitutional due process, to apprise Class Members of the pendency of the action, the terms of the Settlement, and their rights to opt out of, or object to, the Settlement. The Settlement therefore meets the standards for

preliminary approval.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This litigation commenced with the filing of the initial complaint in February 2016.  On April 7, 2016, the Court appointed Steve W. Berman of Hagens Berman Sobol Shapiro LLP and James E. Cecchi of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. as initial interim lead counsel.  In addition, Christopher A. Seeger of Seeger Weiss LLP has served as counsel of record for Plaintiffs.

Unlike other diesel emissions fraud cases such as Volkswagen ("*VW*") and Chrysler-Dodge-Jeep ("*FCA*")—cases that followed government action and settled— Plaintiffs here developed and supported every aspect of their case without the benefit of a government indictment or criminal or civil judgments or penalties against any Defendant.  Plaintiffs' counsel retained experts, conducted testing, and completed a thorough and costly investigation before they filed their initial complaint and long before there was any public awareness of a government investigation of the Subject Vehicles.

Also, unlike the *VW* and *FCA* cases, where government action spurred a relatively quick march to settlement, this case has been marked by protracted, vigorous litigation.  The dockets before this Court and the Third Circuit reveal multiple rounds of motions to dismiss and to force arbitration, challenging appeals, and numerous discovery disputes.

Bosch has denied, and continues to deny, Plaintiffs' material allegations and claims, and it is only through settlement that the Parties are avoiding lengthy and protracted litigation.

In April 2019, the Court appointed as Special Master the Honorable Dennis Cavanaugh (Ret.) before whom the parties were engaged in intensive and vigorously disputed discovery. To foster the parties' pursuit of relevant evidence, the Special Master scheduled frequent case management conferences, decided many discovery disputes, and facilitated the advancement of discovery. Approximately 20 discovery motions were briefed. The disputes included the way Defendants would search for documents; the scope of custodians to be searched; the scope of Plaintiffs' discovery requests; and invasive searches of Plaintiffs' own documents. All told, Plaintiffs served 59 Requests for Production on Bosch and another 91 requests on the Mercedes defendants. Plaintiffs served subpoenas on 11 third parties. The Bosch and Mercedes defendants produced approximately 43,920 documents comprising more than 331,000 pages, which Plaintiffs reviewed and coded. Berman Decl., ¶ 8. Plaintiffs' experts reviewed much of the technical discovery that was produced.

Depositions were underway when the Parties reached the proposed Settlement. Plaintiffs took a Rule 30(b)(6) deposition of Robert Bosch GmbH, while Defendants deposed five Plaintiffs. Berman Decl., ¶ 9.

The Settlement was reached only after extensive mediation efforts. Berman Decl., ¶ 10. The timing of this Settlement is also key when assessing its value. The ongoing litigation and this settlement occurred at a time of great global unrest and when the parties here and others across the nation face enormous pressure to seek early resolutions. Efforts to settle cases have failed because companies have little or no money to fund any type of recovery, or they fear that economic recovery may not

occur soon.  Still, Plaintiffs' counsel continued fighting through the pandemic for every piece of consumer relief – a fight that could have gone south at any moment.

### III.   SUMMARY OF SETTLEMENT TERMS

**A.   The Settlement Class Definition.**

The Class includes all current and former owners or lessees of Subject Vehicles in the United States, including territories of the United States, who (1) on or before the Settlement Announcement Date owned or leased, and Registered, a Subject Vehicle, or (2) after the Settlement Announcement Date begin owning or leasing, and Register, a Subject Vehicle for which an AEM has not been installed.[3]  The Class is identical to the one certified by this Court for purposes of preliminarily approving the Mercedes settlement.

---

[3] The parties agree that the Bosch Defendants and their corporate affiliates, along with all of their officers, directors, and employees are not eligible to receive compensation under this agreement.

Subject Vehicles means a "Subject Vehicle" as defined in the Consent Decree filed by the U.S. Environmental Protection Agency and the California Air Resources Board,[4] which includes the following diesel vehicles:

| BlueTEC II Diesel Vehicles | |
|---|---|
| Model | Model Year(s) |
| E250 | 2014-2016 |
| E350 | 2011-2013 |
| GL320 | 2009 |
| GL350 | 2010-2016 |
| GLE300d | 2016 |
| GLE350d | 2016 |
| GLK250 | 2013-2015 |
| ML250 | 2015 |
| ML320 | 2009 |
| ML350 | 2010-2014 |
| R320 | 2009 |
| R350 | 2010-2012 |
| S350 | 2012-2013 |
| Mercedes-Benz Sprinter (4-cylinder) | 2014-2016 |
| Freightliner Sprinter (4-cylinder) | 2014-2016 |
| Mercedes-Benz Sprinter (6-cylinder) | 2010-2016 |
| Freightliner Sprinter (6-cylinder) | 2010-2016 |

**B.    The Settlement Provides Substantial Benefits to the Class.**

While it is unnecessary to undertake a full fairness analysis at the preliminary approval stage, the substantial benefits of this Settlement support proceeding to a full-scale fairness hearing. This Settlement augments the monetary relief provided

---

[4] *United States v. Daimler AG et al.*, Civ. No. 1:20-civ-02564, ECF No. 2-1 (D.D.C. filed Sept. 14, 2020) ("US-CA Consent Decree"), https://www.epa.gov/sites/production/files/2020-09/documents/ daimleragandmercedesbenzusallc.pdf.

by the Mercedes Defendants by providing money benefits to the Class payable from a fund exceeding $63 million to the Class.

Class Counsel, on behalf of all plaintiffs' counsel, will apply for an award of Attorneys' Fees and Expenses in the Actions of 25% of payments made to Class Members for valid claims under the Bosch settlement agreement. Bosch has agreed not to oppose an application for these amounts.

## IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   The Standard and Procedures for Granting Preliminary Approval.

Rule 23(e) provides that the Court should direct notice for the settlement in a reasonable manner and may approve a class action settlement after a hearing and upon finding that the settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). At the preliminary approval stage, a hearing is neither necessary nor required under Rule 23(e), but "[t]he parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class," and a court is to direct notice to prospective class members "who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to . . . (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(A)-(B); *see also Ward v. Flagship Credit Acceptance LLC*, 2020 WL 759389, at *4 (E.D. Pa. Feb. 13, 2020) (discussing revised preliminary approval test under Dec. 1, 2018 revisions to Rule 23(e)).

The Third Circuit has long encouraged the settlement of class action litigation. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Settlement

agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

As shown below and as the Court determined for the Mercedes settlement, the Settlement is both substantively and procedurally fair and thus it warrants preliminary approval and dissemination of notice to the Class.[5] *See* ECF No. 304.

---

[5] At the final approval stage, courts in the Third Circuit prescribe a more rigorous nine-factor analysis to assess the fairness, adequacy, and reasonableness of a proposed class action settlement.  The nine factors established by *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), are: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risk of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *See also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 301 (3d Cir. 2005).

**B.**   **There is a Strong Basis to Conclude that the Settlement Is Fair, Reasonable, and Adequate and that the Rule 23(e)(2) Standards for Approval Will Be Met.**

**1.**   **The proposed Settlement was reached after substantial litigation, including fulsome discovery and motion practice, and the benefits of the proposed Settlement far outweigh the risks of continued litigation.**

Like the Mercedes settlement, this Settlement comes after years of spirited litigation.   ECF No. 304, ¶ 1. The litigation saw extensive motion practice and entailed thorough discovery.  Over the course of the litigation, the Parties exchanged formal, comprehensive discovery requests and responses, negotiated ESI search terms, retained and consulted with multiple experts, and further exchanged extensive data and information related to the Subject Vehicles and damages during arm's-length settlement negotiations.   Class Counsel have a clear view of the strengths and weaknesses of the Class's claims and damages approaches.  Sufficient discovery has been conducted here.  As a result, the Parties are sufficiently well informed as to the factual and legal issues relevant to this action.

In addition, the risk, expense, complexity, and duration of further litigation is significant.  *See id.*  The array of defense arguments on various issues that could narrow Plaintiffs' claims or certain segments of the Class include, among others: preemption; choice of law; variations in law; arbitration clause enforcement; and lack of damages.  Bosch continues to deny Plaintiffs' claims and attack them.  If the litigation went ahead, other issues, such as motions to exclude material components of Plaintiffs' evidence of liability and damages in expert reports could also undermine Plaintiffs' case.  Nor has a litigation class been certified.  Were the Court to certify one, Defendants would no doubt pursue a Rule 23(f) petition to the Third Circuit for

immediate review.  The risk of maintaining class action status through trial is real. Moreover, if Plaintiffs prevailed at trial, a long appeal period would certainly result. The litigation road has been arduous and promises to be harder absent settlement. In sum, this case was far from a "slam dunk" and, considering the substantial future risks posed by trial and appeals, this is a laudable recovery that offers Settlement Class Members an immediate recovery upon approval, rather than the uncertainties of further litigation.  All these considerations allow counsel to unhesitatingly recommend the Settlement for the Court's approval.

   2.   **The Settlement yields robust benefits to the Class.**

As detailed above, the Settlement provides tens-of-millions of dollars in benefits for the Settlement Class.  In sum, the Settlement is an excellent result for consumers after an extremely hard-fought litigation, and the Settlement falls within the range of reasonableness when compared to the risks posed by trial and issues in dispute.  Its benefits are substantial and, in large part, encompass or exceed the relief that could be obtained through a jury verdict in favor the Class.[6]  Class Counsel, who have collectively served as class counsel in hundreds of actions and who have been appointed to represent the Class in connection with the Mercedes settlement, fully endorse the Settlement as fair, reasonable, and adequate.

   3.   **The Settlement negotiations occurred at arm's-length.**

Parallel to the hard-fought litigation track, the Parties actively engaged in

---

[6] The Settlement also compares favorably when compared to Bosch's recently approved diesel emissions class action settlements in the *VW* and *FCA* cases.

vigorous negotiations.  The Parties negotiated arduously and at arm's-length under the supervision and aid of Judge Infante.  This factor supports preliminary approval. *See Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) ("The participation of an independent mediator in settlement negotiations 'virtually insures that the negotiations were conducted at arm's-length and without collusion between the parties.'").

The parties struggled through contentious negotiations to resolve this matter. The result—a Settlement valued at over $63 million—speaks for itself.  It is Class Counsel's reasoned opinion that, given the alternative of long and complex litigation, and the risks involved in such litigation, including a class certification battle, trial on the merits, and appeals, the availability of robust relief under the Settlement weighs heavily in favor of preliminary approval.  *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 259 (3d Cir. 2009) (settlement that would eliminate delay and expenses and provides immediate benefit to class strongly favors approval).

4.    **The proponents of the Settlement are experienced in similar litigation.**

This Court concluded that Plaintiffs' Counsel have the requisite skills and experience in class actions deserving of appointment as Class Counsel.  ECF No. 304, ¶ 5. And it is beyond dispute that Bosch is represented by reputable and highly experienced counsel. Indeed, Bosch's counsel have now resolved *three* class actions arising from allegations of diesel defeat devices, including this class action.[7]  Their

---

[7] *In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prod. Liab. Litig.*, No. 17-MD-02777-EMC, 2019 WL 2554232 (N.D. Cal. May 3, 2019); *In re Volkswagen*

decision to settle after more than four years of hard-fought litigation and evaluation of the claims supports the Court granting preliminary approval. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997) ("the Court credits the judgment of Plaintiffs' Counsel, all of whom are active, respected, and accomplished in this type of litigation"); *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("[T]he Court puts credence in the fact that Class Counsel consider the Proposed Settlement to be fair, reasonable and adequate."); *Alves*, 2012 WL 6043272, at *22 ("[C]ourts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class.") (citation and internal quotation marks omitted).

## V.   THE COURT SHOULD CERTIFY
## THE PROPOSED CLASS FOR SETTLEMENT PURPOSES

Plaintiffs request, in accordance with Rule 23(e)(1)(B)(ii), that the Court direct dissemination of notice to the Class about the action and the Settlement (as it did for the related Mercedes settlement; *see* ECF No. 304). Bosch does not object to the Settlement Class for purposes of settlement only, and the Supreme Court has long acknowledged the propriety of certifying a class solely for settlement purposes. *See, e.g., Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 618 (1997). In conducting this task, a court's "dominant concern" is "whether a proposed class has sufficient unity so that the absent members can fairly be bound by the decisions of class representatives." *Id.* at 621. To be certified under Rule 23, a putative class must

---

*"Clean Diesel" Mktg., Sales Practices & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 2212783 (N.D. Cal. May 17, 2017).

satisfy, by a preponderance of the evidence, each of the four requirements of Rule 23(a) as well as the requirements of one of the three subsections of Rule 23(b). *See*, *e.g.*, *Wragg v. Ortiz*, 2020 WL 2745247, at *27 (D.N.J. May 27, 2020).

## A.   The Rule 23(a) Requirements Are Satisfied.

Plaintiffs must satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a).  As shown below, the proposed Class—which has already been provisionally certified in connection with the Mercedes Settlement--readily satisfies all four elements.

### 1.   Rule 23(a)(1) – Numerosity is present.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[G]enerally, where the potential number of plaintiffs is likely to exceed forty members, the Rule 23(a) numerosity requirement will be met." *Martinez-Santiago v. Public Storage,* 312 FRD 380, 388 (D.N.J. 2015) (citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012)).  With hundreds of thousands of Subject Vehicles included, the members of the proposed Class are so numerous as to make their joinder impractical.  *See*, *e.g.*, *Wragg*, 2020 WL 2745247, at * 27 (numerosity "must be based on common sense") (citation and internal quotation marks omitted).   Indeed, this Court has found numerosity for the same Class. ECF No. 304, ¶ 3(a).  So, the numerosity test is easily met here.

### 2.   Rule 23(a)(2) – There are issues common to all Class Members.

Rule 23(a)(2) requires that there be "questions of law *or* fact common to the

class," and that the class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350, 369 (2011) (citation omitted and emphasis added). In other words, the class's claims must "depend upon a common contention ... capable of class-wide resolution." *In re Wellbutrin XL Antitrust Litig.*, 282 F.R.D. 126, 137 (E.D. Pa. 2011) (citing *Wal-Mart,* 564 U.S. at 350). "A contention is capable of class-wide resolution if determination of its truth or falsity will resolve an issue that is central to the validity the claims 'in one stroke.'" *Id.* (quoting *Wal-Mart,* 564 U.S. at 350).

The commonality inquiry focuses on the defendant's conduct. *Sullivan v. DB Invs., Inc*, 667 F.3d 273, 297 (3d Cir. 2011) ("commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members").   Not all questions of fact and law need to be common if there are common questions at the heart of the case. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 530 (3d Cir. 2004) (quotation omitted); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 310 (3d Cir. 1998). "For purposes of Rule 23(a)(2), even a single [common] question will do." *Wal-Mart,* 564 U.S. at 359 (brackets in original; citation omitted).

This Court found commonality for the same Class because the most significant question concerns the existence of an alleged defeat device and emissions levels higher than government regulations permit. *See* ECF No. 304, ¶ 3(b). That central question is equally present here.  The claims of all Class Members involve the same advertising, the same vehicles, the same emissions control technology and software,

the same alleged defeat device, the same conduct which focuses on the Defendants and not individual Class members, and so on. These issues are at the heart of the case and are enough to satisfy the Rule 23(a)(2) commonality element.

    3.    **Rule 23(a)(3) – Typicality is satisfied.**

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. The Third Circuit has explained that "the named plaintiffs' claims must merely be 'typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class.'" *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009) (citation omitted); *Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 184 (3d Cir. 2001) (citation omitted). Rule 23(a)(3), however, "does *not* require that all putative class members share *identical* claims." *HBO,* 265 F.3d at 184 (emphasis added).

Under the permissive standards of this rule, representative claims are "typical" if they are reasonably coextensive with those of absent class members and they need not be identical. Indeed, when it is alleged that the defendant engaged in conduct common to all members of the class, "there is a strong presumption that the claims of the representative parties will be typical of the absent class members." *In re Merck & Co., Vytorin/Zetia Sec. Litig.*, No. 08-cv-2177, 2012 WL 4482041, at *4 (D.N.J., Sept. 25, 2012) (citation omitted). Likewise, "[w]hen a class includes purchasers of a variety of different products, a named plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types."

*Marcus* 687 F.3d at 599; *see also Yaeger v. Subaru of Am., Inc.*, 2016 WL 4541861, at *6 (D.N.J. Aug. 31, 2016) (finding typicality where "plaintiffs allege that the class claims arise out of the same conduct of the defendants related to their design, manufacture, and sale of the class vehicles that suffered from an alleged oil consumption defect, and defendants' alleged failure to disclose that material fact").

The named Plaintiffs' claims, and those of absent members of the Settlement Class, arise from a common alleged course of conduct and under common legal theories. Plaintiffs contend that Bosch conspired with the Mercedes defendants to form an enterprise for unlawful purposes, thereby violating RICO. Plaintiffs allege that Bosch engaged in false advertising in violation of consumer protection laws; not informing consumers of the alleged defeat devices or the excessive emissions; and making material misstatements and omissions in violation of RICO about the vehicles' performance, fuel-efficiency, and emissions, and whether the vehicles were environmentally friendly and met emissions limits under everyday driving conditions. Plaintiffs allege that their vehicles have the same alleged defeat devices as all other Class Vehicles and that they purchased or leased vehicles that emit excessive pollutants without knowing the truth about the vehicles' "real world" emissions. These claims are typical of the claims of every member of the Class. ECF No. 304, ¶ 3(c).

4.   **Rule 23(a)(4) – Adequacy is satisfied.**

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

In the Third Circuit, the relevant inquiries are (1) whether the named plaintiffs have any interests antagonistic with other class members and (2) whether the named plaintiffs' counsel are qualified, experienced, and able to conduct the proposed litigation. *In re Schering Plough Corp.*, 589 F.3d at 602.[8]  The core analysis for the first prong is whether Plaintiffs have interests antagonistic to those of absent members of the Settlement Class. The second prong analyzes the capabilities and performance of Class Counsel based on factors set forth in Rule 23(g). *See Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010).  Plaintiffs satisfy both prongs.

First, the proposed Class Representatives interests "are entirely aligned [with those of the proposed Class] in their interest in proving that [Defendants] misled them and share the common goal of obtaining redress for their injuries." *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 4010049, at *11 (N.D. Cal. July 26, 2016); *see also In re Chrysler-Dodge Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig.*, 2019 WL 536661, at *6 (N.D. Cal. Feb. 11, 2019) (same).  The Class Representatives have had every incentive to vigorously prosecute this litigation against Bosch because, as discussed above, their claims are typical of the absent Class Members. *E.g., Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 158 (S.D.N.Y. 2008) ("The fact that plaintiffs' claims are typical

---

[8] "The adequacy of representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. The adequacy heading also factors in competency and conflicts of class counsel." *Amchem Prods., Inc.*, 521 U.S. at 626 n.20 (citation and internal quotation marks omitted).

of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class."); *Emig v. Am. Tobacco Co.*, 184 F.R.D. 379, 387 (D. Kan. 1998) ("[a]n overlap exists in the typicality and adequacy of representation requirements because if typicality is not present, the class representatives do not have an incentive to vigorously prosecute class claims").

The Class Representatives also understand their duties: they have all kept abreast of the litigation and aided in discovery, and many have submitted to depositions. There can be no reasoned argument that any of the Class Representatives have conflicts antagonistic to the Class, and the Court should conclude that they will—and have—adequately represented the Class.

Likewise, Plaintiffs' choice of counsel also underscores their adequacy. *See In re Cmty. Bank of N. Va.*, 622 F.3d 275, 292 (3d Cir. 2010) ("Realistically, for purposes of determining adequate representation, the performance of class counsel is intertwined with that of the class representative.") (citation and internal quotation marks omitted). In retaining, Carella Byrne, Hagens Berman, and Seeger Weiss, Plaintiffs have employed counsel who are qualified and experienced in complex class litigation and who have the resources, zeal, and successful record in class cases.[9] There can be no genuine question that the proposed Class Representatives are adequate. *See* ECF No. 304, ¶ 3(d).

---

[9] The fitness of these three firms to adequately represent the Class is also addressed in Section V-C below in connection with their qualifications for appointment as Class Counsel under Rule 23(g).

5. **The proposed Class is ascertainable.**

Although not specified in the text of Rule 23, courts, including this District, imply a prerequisite that the proposed class be ascertainable. *E.g.*, *Shelton v. Bledsoe*, 775 F.3d 554, 559 (3d Cir. 2015). "The ascertainability inquiry is two-fold, requiring a plaintiff to show that: (1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'" *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (citations omitted); *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 439 (3d Cir. 2017).

Here, the Class definition uses objective criteria that make class membership objectively verifiable, and there is a reliable and administratively feasible mechanism through which qualified Class Members will be readily identified: registration data available from State DMV's and third-party vendors. *See* ECF No. 304, ¶ 4(c).

## B. As Required by Rule 23(b)(3), Common Issues Predominate and Class Treatment is Superior to a Multiplicity of Individual Lawsuits.

Under Rule 23(b)(3), a class should be certified when the court finds that common questions of law or fact predominate over individual issues and a class action would be superior to other methods of resolving the controversy.

The predominance element "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods, Inc.,* 521 U.S. at 623. At its core, "[p]redominance is a question of efficiency." *Butler v. Sears, Roebuck & Co.,* 702 F.3d 359, 362 (7the Cir. 2012). The superiority component requires the court "to balance, in terms of fairness and efficiency, the merits of a class

action against those of alternative methods' of adjudication." *Prudential*, 148 F.3d at 316 (citation omitted).  Here, the Class readily meets both requirements.

The predominance inquiry focuses on liability issues.  *E.g.*, *In re Novo Nordisk Sec. Litig.*, 2020 WL 502176, at *8 (D.N.J. Jan. 31, 2020) ("In determining whether common questions predominate, courts have focused on the claims of liability against defendants.") (citing cases). The common questions discussed above with respect to the Rule 23(a)(2) commonality element are overarching and thus tower over issues relating to individual Class Members.  Factual and legal questions aside, the salient evidence necessary to prove Plaintiffs' claims is common to both the Class Representatives and all Class Members—all would seek to prove that the Subject Vehicles have an emissions defeat device, that Defendants misled regulators and consumers by concealing the emissions defeat device, and that Defendants' conduct was wrongful.  Moreover, the necessary proof would be generalized; it changes little, if at all, whether there are dozens or half a million Class Members.  In either instance, Plaintiffs would present the same evidence of Defendants' marketing, and the same evidence of alleged wrongdoing.  *See Volkswagen*, 2016 WL 4010049, at *12; *see also In re Chrysler-Dodge Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig.*, 2019 WL 536661, at *7.  In other words, the Class's claims depend on the same factual circumstances, *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2020 WL 3166456, at *5 (D.N.J. June 15, 2020), and "the claims present common operative facts and common questions of law that predominate" over any factual variations.  *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues

in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'"). The Court recently found that common questions predominate as to Plaintiffs' claims against the Mercedes Defendants and the same questions predominate here. *See* ECF No. 304, ¶ 4(a). The predominance test is thus satisfied.

Second, certification of the Class under Rule 23 is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R Civ. P. 23(b)(3). The Settlement affords benefits to Class Members who, absent a class settlement, may not have been aware of their legal rights or had too little an incentive to pursue an individual suit involving emissions defeat devices in their vehicles. The presence of the alleged defeat device was never disclosed and is still contested by Bosch. The high cost of marshaling the evidence (expert, sophisticated electronic discovery, discovery in foreign languages, and so on) necessary to pursue the claims at issue dwarfs any individual consumer's potential recovery and the disparity in resources between individuals and well-funded, litigation-savvy defendant like Bosch. This Court has recognized that the existence of so-called "negative value" claims—"meaning it costs more to litigate than you would get if you won," *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 675  n.7 (2010) (citation and internal quotation marks omitted)—is typically "*the* most compelling rationale for finding superiority" of class treatment. *Reap v. Cont'l Cas. Co.*, 199 F.R.D. 536,

550 (D.N.J. 2001) (citation and internal quotation marks omitted; emphasis added).

Indeed, Class Counsel have already devoted significant time and resources to this litigation, including multiple rounds of pleadings, motions to dismiss, discovery briefing, depositions, document review, retaining experts, and engaging in other significant efforts on many other issues. It is inconceivable than an individual vehicle owner pursuing a purely economic loss case could or would invest the same resources. *Cf. Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("[O]nly a lunatic or a fanatic sues for $30.").

Certification also serves the interest of judicial economy by avoiding multiple similar lawsuits and resolving claims affected hundreds of thousands of vehicles in one proceeding. Even a few duplicative individual suits would needlessly burden the courts and risk inconsistent adjudications. *See In re Neurontin Antitrust Litig.,* 2011 WL 286118, at *11 (D.N.J. Jan. 25, 2011) ("The class action mechanism ... avoids the specter of inconsistent adjudications.") (citation and internal quotation marks omitted).

Thus, class action treatment is far superior to individual adjudication. Moreover, because this is a class certified only for settlement purposes, manageability concerns associated with a litigation class are irrelevant. *Amchem Prods, Inc.*, 521 U.S. at 620. That said, were this a proposal for certification of a litigation class, there would be no serious manageability problems that would make thousands of individual actions a better alternative. *See In re Chrysler-Dodge Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig.*, 2019 WL 536661, at *6 (superiority satisfied in

comparable diesel emissions defeat device case). Finally, the Court recently found the superiority requirement satisfied for certification of the Class in connection with the Mercedes settlement, and the same advantages exist here. *See* ECF No. 304, ¶ 4(b). The Rule 23(b)(3) superiority component is thus also met here.

## C.   Proposed Class Counsel Satisfy Rule 23(g).

Under Rule 23(g), a court that certifies a class must appoint class counsel who is charged with fairly and adequately representing the interests of the Class. *See* Fed. R. Civ. P. 23(g). Rule 23(g) focuses on the qualifications of class counsel, complementing the requirement of Rule 23(a)(4) that the representative parties adequately represent the interests of the class members. *See Sheinberg v. Sorensen*, 606 F.3d 130, 132-3 (3d Cir. 2010) ("Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4) of the Federal Rules of Civil Procedure, those questions have, since 2003, been governed by Rule 23(g)."). Although a court may consider any factor concerning the proposed class counsel's ability to "fairly and adequately represent the interest of the class," Rule 23(g) specifically instructs a court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Here, the Court has already found that each firm satisfied Rule 23(g) and

appointed the law firms of Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C., Hagens Berman Sobol Shapiro LLP, and Seeger Weiss LLP as Class Counsel for the Mercedes settlement. ECF No. 304, ¶ 5. Exactly the same considerations, extensive efforts, and in-depth knowledge of the subject area that supported appointment before weigh strongly in favor of finding Class Counsel adequate again.

## VI.   THE MODIFIED FORM OF NOTICE IS PROPER, AND THE MANNER OF NOTICE ALREADY HAS BEEN APPROVED

Reasonable notice must be provided to Class Members to allow them an opportunity to object to the proposed Settlement or to opt out of the Class if they do desire.  The way that class notice is distributed, as well as its content, must satisfy Rule 23(c)(2) (governing class certification notice), Rule 23(e)(1) (governing settlement notice), and due process.  *See In re Ocean Power Techs, Inc.,* 2016 WL 6778218, at *9 (D.N.J. Nov. 15, 2016); *Kaplan v. Chertoff,* 2008 WL 200108, at *12-3 (E.D. Pa. Jan. 24, 2008).   Rule 23(e) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).   "Due process requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 446 (3d Cir. 2016) (citation omitted).  Additionally, Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B), and such notice should contain sufficient information "'to enable class members to make informed

decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class.'" *In re Ocean Power Techs., Inc.,* 2016 WL 6778218 at *10 (quoting *In re Nat'l Football League Players Concussion Injury Litig.,* 821 F.3d at 435). Furthermore, "[i]t is well settled that in the usual situation first-class mail and publication fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause." *Id.* (quoting *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.,* 758 F.2d 86, 90 (3d Cir. 1985)).

Here, the content of the Class Notice satisfies all requirements. The notice and claim form that will issue to Class Members will be an amended and unified version of the notice and claim form previously approved by this Court for the Mercedes settlement. *See* ECF No. 304, ¶¶ 8, 14-16, 22. The amended notice will include a description of the Bosch Settlement, explain the distribution of the settlement proceeds, and provide information sufficient for Class Members to intelligently and meaningfully participate, object, opt-out of the Class, or otherwise comment on the Settlement while avoiding confusion caused by two rounds of notice and two claim forms. In addition, under Rule 23(h), the proposed Class Notice sets forth the maximum amount of Attorneys' Fees and Expenses and Case Contribution Awards that may be awarded under the Settlement Agreement. As this Court found, the proposed Class Notice and notice program comply with the standards of fairness, completeness, and neutrality required of a settlement class notice distributed under authority of the Court, and the amendments and course of action with respect to this Settlement do as well.

The proposed plan for dissemination of the Class Notice likewise satisfies all Rule 23 and due process requirements, as this Court previously found in approving the manner of notice when preliminarily approving the Mercedes Settlement. The proposed Notice Program is explained in the Settlement Administrator's (JND Legal Administration) declaration, and was designed to reach the greatest practicable number of Class Members. Direct mail notice by U.S. mail and email notice (where available) will be the main methods of notice, providing Class Members with an opportunity to read, review, and understand their rights and options in this Class Action Settlement. Under the Settlement Agreement, the Settlement Administrator will send individualized Class Notices and Claims Forms to Settlement Class Members by first-class mail. Mail Notice will be sent to the last known address reflected in state DMV registration records for each Class Member. Additionally, before the mailing of the Class Notice, an address search through the National Change of Address database will be conducted. For any mailed notice that is returned as undeliverable, the Settlement Administrator will re-mail the Class Notice where a forwarding address has been provided. For any remaining undeliverable notice packets, the Settlement Administrator will perform an advanced address search (*e.g.*, a skip trace) and re-mail any undeliverable Class Notices if any new and current addresses are found. Notice will also be emailed to all Class Members for whom a valid email address is obtained. *See* Declaration of Jennifer M. Keough Regarding Proposed Notice Program ("Keough Decl.").

In addition, a dedicated website,[10] toll free number,[11] email account,[12] and post office box[13] have been (or will soon be) established so that Class Members can readily direct any questions to the Settlement Administrator, obtain additional copies of materials sent by the Settlement Administrator, and find instructions on how to submit a Claim.  *See* Keough Decl.

## VII.   THE COURT SHOULD SET SETTLEMENT DEADLINES AND SCHEDULE A FAIRNESS HEARING

If it preliminarily approves the proposed Settlement, the Court also should set a final approval hearing date, dates for mailing the Notices, and deadlines for objecting to the Settlement and filing papers in support of the Settlement.  Plaintiffs propose the same schedule that the Court approved for the Mercedes settlement, which the Parties believe will provide ample time and opportunity for Class Members to decide whether to request exclusion from the Class or object.   The schedule provided in the proposed Preliminary Approval order follows the schedule for the Mercedes settlement notice.  Specifically, it provides the following:

| Event | Proposed Date |
|---|---|
| Class Notice Program and Claims Period begins | Simultaneous with the Mercedes Class Action Settlement Notice |
| Motion for Attorneys' Fees and Expenses Application filed | 30 days after Notice Date |

[10] www.mbbluetecsettlement.com.

[11] 1-877-313-0170.

[12] info@mbbluetecsettlement.com.

[13] MB Blue Tec Settlement, c/o JND Legal Administration, P.O. Box 91310, Seattle, WA 98111.

| Objection and Opt-Out Deadline | 60 days after Notice Date |
|---|---|
| Motion for Final Approval filed | 90 days after Notice Date |
| Fairness Hearing | 110 days after Notice Date |

If the Court enters the Preliminary Approval Order this week, Plaintiffs respectfully submit that the Fairness Hearing can be scheduled at a date and time convenient to the Court within 110 days of the Notice Date, or as soon thereafter as convenient for the Court. The parties will inform the Court of the calendar date that should be considered the Notice Date as soon it becomes known.

## VIII.  CONCLUSION

For all these reasons, the Court should grant preliminary approval of the proposed Settlement and enter the accompanying proposed Preliminary Approval Order.

Dated:  October 16, 2020                  Respectfully submitted,

CARELLA BYRNE CECCHI
OLSTEIN BRODY & AGNELLO, P.C.


By  */s/ James E. Cecchi*
JAMES E. CECCHI

By */s/ Steve W. Berman*
STEVE W. BERMAN
Sean R. Matt
Andrew M. Volk

Shelby R. Smith
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, Washington 98101
Tel: (206) 623-7292

By */s/ Christopher A. Seeger*
CHRISTOPHER A. SEEGER
Jennifer R. Scullion
SEEGER WEISS LLP
55 Challenger Road
Ridgefield Park, New Jersey 07660
Tel: (973) 639-9100

*Counsel for Plaintiffs and the
Class*

30