# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE MERCEDES-BENZ EMISSIONS LITIGATION | Civil Action No. 16-881 (KM)(ESK)<br><br>Special Master Dennis M. Cavanaugh, U.S.D.J. (Ret.) |

## CLASS COUNSEL'S MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

James E. Cecchi
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
Email: jcecchi@carellabyrne.com

Steve W. Berman
Sean R. Matt
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: sean@hbsslaw.com

*Interim Co-Lead Counsel for Plaintiffs*
(additional counsel on signature page)

727261v1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

I. INTRODUCTION ........................................................................ 1

II. SUMMARY OF THE BASIS FOR THE FEE REQUEST ................................. 1

III. LEGAL ARGUMENT ........................................................................ 11

    A. The Court Should Award the Requested Attorneys' Fees. ................... 11

        1. The size of the recovery and the number of persons benefitted favor approving the fee requests. ................................................ 14

        2. The lack of objections so far favors approving the fee requests. 15

        3. The skill and efficiency of Class Counsel favor approval of the fee requests. ................................................................. 16

        4. The complexity and duration of the litigation favor approval of the fee requests. ........................................................... 17

        5. Class Counsel undertook the risk of non-payment. ................... 19

        6. Class Counsel devoted significant time to this case. ................. 21

        7. Awards in similar cases favor the fee request. ......................... 22

        8. The lack of benefits attributable to others, including government agencies, favors the requested fee award. ................................. 23

        9. The percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement favors approval. ................................................................. 25

        10. Innovative terms of the settlements support the fee request. .... 25

        11. The lodestar cross-check supports the fairness and reasonableness of the requested/agreed fees and expenses. ....... 26

    B. Class Counsel's Expenses are Reasonable and Should be Approved... 29

IV. CONCLUSION ........................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
592 F.3d 991 (9th Cir. 2010) ................................................................... 21

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ................................................................. 21

*In re Apple Comput. Sec. Litig.*,
1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ........................................... 21

*In re AremisSoft Corp. Sec. Litig.*,
210 F.R.D. 109 (D.N.J. 2002) ........................................................... 15, 16

*In re AT&T Corp.*,
455 F.3d 160 (3d Cir. 2006) ........................................................... *passim*

*Bell Atl. Corp. v. Bolger*,
2 F.3d (3d Cir. 1993) ............................................................................... 15

*Blum v. Stenson*,
465 U.S. 886 (1984) ................................................................................. 13

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ................................................................................. 11

*Careccio v. BMW of N. Am. LLC*,
2010 WL 1752347 (D.N.J. Apr. 29, 2010) .............................................. 30

*Castro v. Sanofi Pasteur Inc.*,
2017 WL 4776626 (D.N.J. Oct. 23, 2017) .............................................. 23

*In re Cendant Corp. Derivative Action Litig.*,
232 F. Supp. 2d 327 (D.N.J. 2002) ......................................................... 29

*In re Cendant Corp. PRIDES Litig.*,
243 F.3d 722 (3d Cir. 2001) ...................................................... 9, 17, 29, 30

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*,
269 F.R.D. 468 (E.D. Pa. 2010) ............................................................. 15

*Dartell v. Tibet Pharms., Inc.*
2017 WL 2815073 (D.N.J. June 29, 2017) ............................................. 23

*Demaria v. Horizon Healthcare Servs., Inc.*,
  2016 WL 6089713 (D.N.J. Oct. 18, 2016) ........................................ 9, 30

*Demmick v. Cellco P'ship*,
  2015 WL 13646311 (D.N.J. May 1, 2015) ............................................ 7

*Dewey v. Volkswagen Aktiengesellschaft*,
  558 F. App'x 191 (3d Cir. 2014) ............................................ *passim*

*In re Diet Drugs*,
  582 F.3d 524 (3d Cir. 2009) ........................................ 3, 25

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  2020 WL 256132 (N.D. Ga. Mar. 17, 2020) .............................. 10, 28

*In re Flonase Antitrust Litig.*,
  291 F.R.D. 93 (E.D. Pa. 2013) .......................................... 20

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ............................................ 11

*Gunter v. Ridgewood Energy Corp.*,
  223 F.3d 190 (3d Cir. 2000) .................................... 14, 16, 28

*Henderson v. Volvo Cars of N. Am., LLC*,
  2013 WL 1192479 (D.N.J. Mar. 22, 2013) ........................... 13

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................ 11, 14

*In re Ikon Office Solutions, Inc.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ............................ 16, 23, 25

*In re Ins. Brokerage Antitrust Litig.*,
  297 F.R.D. 136 (D.N.J. 2013) ........................................ 23

*In re Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241 (3d Cir. 2009) ........................................... 8

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
  2009 WL 4730185 (D.N.J. Dec. 4, 2009) .......................... 23

*In re LG/Zenith Rear Projection TV Class Action Litig.*,
  2009 WL 455513 (D.N.J. Feb. 18, 2009) ........................... 12

*Lobatz v. U.S. W. Cellular of Cal., Inc.*,
  222 F.3d 1142 (9th Cir. 2000) ........................................ 7

727261v1

*McCoy v. Health Net, Inc.*,
  569 F. Supp. 2d (D.N.J. 2008) ............................................................................. 29

*MCI Commc'ns. Corp. v. Am. Tel. & Tel. Co.*,
  708 F.2d 1081 (7th Cir. 1983) ............................................................................. 21

*McLennan v. LG Elecs. USA, Inc.*,
  2012 WL 686020 (D.N.J. Mar. 2, 2012) ............................................................ 29

*In re Mercedes-Benz Emissions Litig.*,
  2016 WL 7106020 (D.N.J. Dec. 6, 2016) ........................................................... 17

*In re Mercedes-Benz Emissions Litig.*,
  2019 WL 2591158 (D.N.J. June 25, 2019) ........................................................ 17

*In re Mercedes-Benz Emissions Litig.*,
  2019 WL 413541 (D.N.J. Feb. 1, 2019) .............................................................. 17

*In re Mercedes-Benz Emissions Litig.*,
  2019 WL 5800270 (D.N.J. Nov. 7, 2019) ........................................................... 18

*In re Mercedes-Benz Emissions Litig.*,
  2020 WL 103975 (D.N.J. Jan. 9, 2020) .............................................................. 18

*In re Mercedes-Benz Emissions Litig.*,
  2020 WL 487288 (D.N.J. Jan. 30, 2020) ............................................................ 18

*In re Mercedes-Benz Emissions Litig.*,
  797 F. App'x 695 (3d Cir. 2020) .......................................................................... 18

*In re Merck & Co., Inc. Vytorin ERISA Litig.*,
  2010 WL 547613 (D.N.J. Feb. 9, 2010) ......................................................*passim*

*In re Merry–Go–Round Enters.*,
  244 B.R. 327 (Bankr. D. Md. 2000) ................................................................. 9, 29

*Milliron v. T-Mobile USA, Inc.*,
  2009 WL 3345762 (D.N.J. Sept. 14, 2009) ....................................................... 23

*Milliron v. T-Mobile USA, Inc.*,
  423 F. App'x 131 (3d Cir. 2011) .......................................................................... 29

*Mirakay v. Dakota Growers Pasta Co.*,
  2014 WL 5358987 (D.N.J. Oct. 20, 2014) ...................................................... 12, 13

*Muse v. Dymacol, Inc.*,
  2003 WL 22794698 (E.D. Pa. Nov. 7, 2003) ...................................................... 19

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
2009 WL 2408560 (D. Mass. Aug. 3, 2009)........................................................ 9, 29

*In re Ocean Power Techs., Inc.*,
2016 WL 6778218 (D.N.J. Nov. 15, 2016) ................................................................ 7

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437 (E.D.N.Y. 2014) ................................................................. 3, 25

*Pearson v. NBTY, Inc.*,
772 F.3d 778 (7th Cir. 2014) ................................................................................... 10

*Polanski v. Trump Taj Mahal Assocs.*,
137 F.3d 139 (3d Cir. 1998)..................................................................................... 11

*Pro v. Hertz Equip. Rental Corp.*,
2013 WL 3167736 (D.N.J. June 20, 2013) ............................................................. 12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998).............................................................................. 28, 29

*In re Prudential-Bache Energy Income Partnerships Sec. Litig.*,
1994 WL 202394 (E.D. La. May 18, 1994)............................................................. 20

*In re Remeron Direct Purchaser Antitrust Litig.*,
2005 WL 3008808 (D.N.J. Nov. 9, 2005) ........................................................... 8, 25

*In re Remeron End-Payor Antitrust Litig.*,
2005 WL 2230314 (D.N.J. Sept. 13, 2005)............................................................. 29

*In re Rent-Way Sec. Litig.*,
305 F. Supp. 2d 491 (W.D. Pa. 2003) ..................................................................... 20

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) .................................................................. 9, 29

*In re Rite Aid Corp. Sec. Litig.*,
362 F. Supp. 2d 587 (E.D. Pa. 2005) .................................................................. 9, 29

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (2d Cir. 2005).................................................................................. 8, 27

*Robbins v. Koger Props.*,
116 F.3d 1441 (11th Cir. 1997) ............................................................................... 21

*Rossi v. Procter & Gamble Co.*,
2013 WL 5523098 (D.N.J. Oct. 3, 2013) ........................................................ 11, 12

*Rowe v. E.I. DuPont de Nemours and Co.*,
2011 WL 3837106 (D.N.J. Aug. 26, 2011) ........................................................ 29

*In re Safety Components, Inc. Sec. Litig.*,
166 F. Supp. 2d 72 (D.N.J. 2001) .................................................................... 30

*Schuler v. Medicines Co.*,
2016 WL 3457218 (D.N.J. June 24, 2016) ........................................................ 23

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
91 F. Supp. 2d 941 (E.D. Tex. 1999) ................................................................ 17

*Stevens v. SEI Invs. Co.*,
2020 WL 996418 (E.D. Pa. Feb. 28, 2020) ..................................................... 10, 28

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
2005 WL 1213926 (E.D. Pa. May 19, 2005) ...................................................... 9, 29

*Sullivan v. DB Invs.*,
667 F.3d 273 (3d Cir. 2011) (en banc) ......................................................... 7, 13, 27

*Sullivan v. DB Invs., Inc.*,
2008 WL 8747721 (D.N.J. May 22, 2008) ....................................................... 10, 28

*In re Syngenta AG Mir162 Corn Litig.*,
2018 WL 7254709 (D. Kan. Nov. 21, 2018), *report and
recommendation adopted as modified on other grounds*, 2018 WL
6839380 (Dec. 31, 2018) ................................................................................ 3, 25

*Varacallo v. Mass. Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005) ......................................................................... 29

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) .................................................................. 17, 19

*Weiss v. Mercedes-Benz of N. Am., Inc.*,
899 F. Supp. 1297 (D.N.J. 1995), *aff'd*, 66 F.3d 314 (3d Cir. 1995) ................. 9, 29

## Other Authorities

1 Alba Conte, ATTORNEY FEE AWARDS § 2.06 (2d ed. 1993) ....................................... 29

## I.    INTRODUCTION

Class Counsel submit this Brief in support of their request for attorneys' fees and expenses.  Class Counsel, on behalf of all lawyers and their law firms that have performed authorized work (collectively, "Plaintiffs' Counsel"), seek a fee award of $80,200,000 and reimbursement of up to $3,200,000 in out-of-pocket expenses from the settlement with Mercedes-Benz USA, LLC ("Mercedes").   The requested attorney's fee and expenses amount to 11.4% of the estimated (and conservative, low end value) $707 million settlement value.  And because Mercedes has agreed to pay any fee award separate from and on top of the settlement relief, a fee award will not dilute the settlement benefits available to the Class in the Mercedes settlement.

Class Counsel also seek a fee award of $15,750,000 from the $63.3 million fund created by the separate settlement with the Bosch Defendants, an award that is 25% of the fund.   Collectively, the fee and expense award sought by Class Counsel represents a modest 11.3% of the total benefits made available to the Class in both settlements—using conservative estimates of the settlements' collective values.  The fee and expense awards sought in both Settlements were disclosed in the notices mailed to the Class members.

## II.    SUMMARY OF THE BASIS FOR THE FEE REQUEST

Several attributes separate these two settlements from other large automotive settlements and fully support the reasonability of the fee request: (i) this case did not draft upon a government investigation or public notice of an alleged regulatory violation by the defendants; rather, Plaintiffs' Counsel independently investigated and developed the facts supporting the consumers' claims; (ii) the settlement of this

727261v1

case was not a foregone conclusion but distinguished by a continued and vigorous defense; (iii) the settlements contain consumer benefits superior to other diesel emissions settlements which came before it; and (iv) the percentage fee requested is reasonable under binding Third Circuit authority.  It is also noteworthy that these Settlements were achieved in a time of great global uncertainty.  Plaintiffs' Counsel vigorously litigated through the pandemic in a fight that could have gone south at any moment. Individually, any one of the relevant factors identified above would support the fee request.  Collectively, they show that the fees requested are reasonable and appropriate in this case.  We address each of these factors briefly.

*Plaintiffs' Counsel independently investigated and developed the underlying facts supporting the consumers' claims.*

This Court is well aware that many important plaintiffs' cases follow after the public announcement of a government regulatory action, investigation, indictment, or notice of violation.  The pattern is well known: the Government announces some adverse action—be it a recall or notice of violation—and, within days, scores of plaintiffs across the country file consumer civil cases.  There is nothing wrong with this—it is just reality.  But here, a different series of events occurred.

Rather than draft upon a Government prosecution or announcement, Plaintiffs independently developed and supported every aspect of their case. They retained experts, conducted testing, and completed a thorough and costly investigation before they filed their initial complaint and *before there was any public awareness* of a government investigation. Without Plaintiffs' independent investigation, persistence,

727261v1

and tireless efforts, there would have been no investigation, no litigation, and no legal recovery. Indeed, the usual pattern was reversed here—the public announcement of the DOJ investigation followed Plaintiffs' filing of this case in February 2016, and one can persuasively argue that the result achieved by the Government was, *at least partially*, a result of the pre-suit work by Plaintiffs' Counsel and their experts.[1]  At a minimum, the Government benefited from Plaintiffs' comprehensive investigation and testing and the complaint. When the Court considers what is just and appropriate here, these facts are paramount.[2]

### *Defendants vigorously contested liability.*

The risks attendant to prosecuting this case are also distinct.  One need only look to other recent significant automotive litigation to appreciate this point.  The Government recall of Takata airbags was followed by hundreds of overlapping

---

[1] *See, e.g.*, https://www.reuters.com/article/us-daimler-emissions/u-s-senators-press-justice-department-on-daimler-emissions-probe-letter-idUSKCN1G7209 ("The U.S. [EPA] in February 2016 requested information from Mercedes-Benz to explain diesel emissions levels.  Daimler said in April 2016 the Justice Department had asked it to investigate its emissions certification process.").

[2] *See*, *e.g.*, *In re Diet Drugs*, 582 F.3d 524, 544 (3d Cir. 2009) (affirming finding that fee applicants played essential role in creating value where "Class Counsel had not relied on 'the government or other public agencies to do their work for them as has occurred in some cases'"); *In re Syngenta AG Mir162 Corn Litig.*, 2018 WL 7254709, at *21 (D. Kan. Nov. 21, 2018) ("In contrast to many class actions that follow on and build on governmental enforcement proceedings – *e.g.*, the *Volkswagen* diesel emissions case, the *Deepwater Horizon* BP oil spill case, or securities fraud or antitrust cases – the Syngenta corn cases did not involve any parallel government proceedings on which plaintiffs' counsel could 'piggyback' their efforts," which "increased the risk of non-recovery."), *report and recommendation adopted as modified on other grounds*, 2018 WL 6839380 (Dec. 31, 2018); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 441 (E.D.N.Y. 2014) ("plaintiffs did not piggyback on previous government action—indeed, the government piggybacked on their efforts").

consumer class actions filed by many firms.  The same holds true for the *Volkswagen* and *Chrysler-Dodge-Jeep* diesel emissions cases, where more than a dozen law firms were appointed and many more sought leadership appointments.  By contrast here, most leading law firms passed on this case, likely believing that without a Government recall or investigation to jump-start the case, the case was fraught with unique risk. Put simply, the predictable cascade of copycat cases never came—for the simple reason that the other firms sensed unacceptable risk here.

Those premonitions about risk proved prescient.  This case was anything but a quick march toward settlement.  It was a brawl, trench warfare at every step. Defendants, represented by two prominent law firms, vigorously litigated.  Plaintiffs fought for years against skilled defense counsel and overcame significant hurdles. Defendants' initial motion to dismiss was granted, Defendants sought interlocutory review after Plaintiffs overcame their second motion to dismiss, and defeated an effort to compel arbitration, which resulted in a trip to the Third Circuit.

Nor were Defendants prepared to admit wrongdoing or willing to turn over reams of data and information regarding their underlying conduct. Defendants fought for every inch of ground, left no stone unturned, and resisted discovery to the greatest extent permitted by the Federal Rules.  This spirited resistance required Plaintiffs' Counsel to invest thousands of hours addressing complex legal, technical, regulatory, procedural and appellate matters. The grinding pace of discovery prompted the Court to appoint a Special Master, who devoted hundreds of hours reviewing the parties' submissions, hearing arguments, and deciding complicated

disputes.  Defendants' firm resistance highlights the risks that Plaintiffs faced, and the obstacles overcome to achieve the proposed settlement.

It is also noteworthy the mediation process spanned over a year and a half and required eight days of in-person mediation and numerous sessions by telephone which focused not only on the economics of the deal, but also the granular details of the relief and remedies offered to the Class.  This was not a one-day settlement negotiation with a few numbers passed back and forth.

### The Settlements provide robust and unique Class benefits.

The substance of the settlements support the fee request.  While two recent diesel vehicle emissions settlements provided a working framework for this settlement, Class Counsel improved upon those settlements with important, substantive protective terms, including: a delayed repair payment ("Deferred Availability Payment") of $400 to each Eligible Owner or Eligible Lessee as compensation for approved emission modifications ("AEM") that are not scheduled to be submitted for agency approval until 60 days after the settlement effective date; an additional payment of up to $400 to each Eligible Owner or Eligible Lessee if Mercedes fails to submit a proposed AEM within a set time based on the U.S.-CA Consent Decree target dates; an additional payment of $75 if the AEM changes how often consumers need to refill their diesel exhaust fluid ("DEF") tanks; an additional payment of $350 to each Eligible Owner or Eligible Lessee if an Eligible Vehicle must be reclassified to a less stringent emissions standard after receiving an AEM; and a payment of $325 to

727261v1

each Eligible Owner and Eligible Lesseeif the AEM causes "Reduced Performance,"[3] or $650 if "the AEM causes a substantial, material adverse degradation."[4]  Moreover, unlike in the *Volkswagen* and *Chrysler-Dodge-Jeep* cases, Class members here are entitled to payments ranging from 30-80% of the owner/lessee payment if the AEM is unavailable before the claims submission deadline, with Mercedes agreeing to repurchase any such vehicle that cannot be reregistered by an Eligible Owner.[5]

Also of note is the fact that under the parallel regulatory consent decree with the Environmental Protection Agency and California Air Resources Board, Mercedes must hit certain targets of implementing the approved emissions modification if they wish to avoid penalties under the consent decree.  This fact means that all parties, including the defendants, have an important incentive to maximize as much as possible the number of vehicles which receive the important emissions modifications. That target is 85%.  Plaintiffs' counsel and Mercedes believe that this target will be met.  Indeed, in other regulatory settings where such targets and compensation structures exist, the repair/take rate has exceeded 90%.  Plaintiffs' counsel have used these targets to calculate the minimum value of the settlement: the number of vehicles anticipated to be repaired and the economic relief under the consumer

---

[3] Reduced fuel economy by 3 MPG, or decreased peak horsepower or torque by greater than 5%.

[4] Reduced fuel economy by 6 MPG, or decreased peak horsepower or torque by greater than 10%.

[5] The terms of the Settlements discussed in this brief, including eligibility requirements, are set forth in greater detail in the settlement agreements.

settlements.  The total value available, as noted, exceeds $707,000,000 on the low end, and at least $800,000,000 on the high end.

### *The fee requested is reasonable.*

Class Counsels' fee request is reasonable and appropriate.  *Sullivan v. DB Invs.*, 667 F.3d 273, 330 (3d Cir. 2011) (en banc). The two settlements are worth more than $707,000,000 on the low end, and at least $800,000,000 on the high end after all benefits are factored in.  The Bosch settlement creates a traditional common fund, and the Mercedes settlement constitutes a constructive common fund because Mercedes will separately pay attorneys' fees.[6]  Award percentages in the Third Circuit range from 19 to 45%.  *See, e.g.*, *In re Ocean Power Techs., Inc.*, 2016 WL 6778218, at *29 (D.N.J. Nov. 15, 2016) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995)).[7]  In the District of New Jersey, 33.33% is the norm,[8] which is sensible because one of the considerations

---

[6] *E.g.*, *Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x 191, 197 (3d Cir. 2014); *Lobatz v. U.S. W. Cellular of Cal., Inc.*, 222 F.3d 1142, 1146-47 (9th Cir. 2000).

[7] While some courts have recognized a "megafund rule" requiring a fee percentage to be lower when the recovery is high, the Third Circuit has held "there is no rule that a district court must apply a declining percentage reduction in every settlement involving a sizable fund,' and . . . [have] approved large settlements where [as here] 'class counsel's efforts played a significant role in augmenting and obtaining an immense fund.'" *Sullivan*, 667 F.3d at 331.

[8] *See Demmick v. Cellco P'ship*, 2015 WL 13646311, at *3 (D.N.J. May 1, 2015) (recognizing 33.33% as the common benchmark in the District, "which is the approximate median of the range recognized as acceptable by the Third Circuit") (citing cases); *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) ("*Merck ERISA*") ("review of 289 settlements demonstrates 'average attorney's fees percentage [of] 31.71% with a median value that turns out to be one-third'") (quoting *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at *15 (D.N.J. Nov.9, 2005)).  Indeed, a "33 ⅓ % fee award . . . reflects

is that the percentage method should approximate the fee that a lawyer would have negotiated in the private marketplace. *In re Remeron Direct Purchaser Antitrust Litig.*, 2005 WL 3008808, at \*16 (lawyer should be paid "what he would have gotten in the way of a fee in an arm's-length negotiation, had one been feasible," and that "[i]f this were not a class-action litigation, a contingent fee in such a complex case would likely range between 30 and 40 percent of the recovery.).

In "cross-checking" a percentage-of-recovery award against counsel's lodestar, the Third Circuit has emphasized that the calculation is "not a full-blown lodestar inquiry" and need not entail "'mathematical precision'" or "'bean counting.'" *In re AT&T Corp.*, 455 F.3d 160, 169 n.6 (3d Cir. 2006) (quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (2d Cir. 2005)); *accord In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 280 (3d Cir. 2009) (cross-check involves "an abridged analysis" of lodestar). Indeed, the Third Circuit has cautioned that "[t]he lodestar cross-check, while useful, should not displace a district court's primary reliance on the percentage-of-recovery method." *AT&T*, 455 F.3d at 164; *accord In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 307 ("lodestar cross-check does not trump the primary reliance on the percentage of common fund method"). Courts "may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 306-07. In short, a lodestar cross-check serves merely as a *rough,*

---

commonly negotiated fees in the private marketplace." *Merck ERISA*, 2010 WL 547613, at \*12.

"back-of-the-envelope" yard-stick to gauge the reasonableness of a percentage-of-the-recovery fee request.

The gross collective fee requested is $95,950,000 or less than 12.5% of the collective settlement benefit, resulting in a multiplier of approximately 5.67. This estimate also does not include the inevitable appeals that Class Counsel will have to battle from the usual cadre of serial objectors. Courts in this Circuit and elsewhere have approved large multipliers—when appropriate—even in a range exceeding 10.[9] And importantly, unlike in many mega-fund settlements, the payment of fees and costs in the Mercedes settlement will *not* reduce the pay-out to the class, thus *adding* to the overall value of the recovery for the class. *See Pearson v. NBTY, Inc.*, 772 F.3d

---

[9] *See, e.g., In re Merry–Go–Round Enters.*, 244 B.R. 327 (Bankr. D. Md. 2000) (40% award for $71 million fund awarded, resulting in cross-check multiplier of 19.6); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, 2005 WL 1213926, at *12, 15-17 (E.D. Pa. May 19, 2005) (multiplier of 15.6 and fee of 20% of $100M settlement where "no prior government investigation" or finding of civil or criminal liability existed); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (approving multiplier of 8.3 and 20% fee); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 736 n.44 (E.D. Pa. 2001) (fee of 25% of $193 million fund, which amounted to $48 million and represented a multiplier of 4.5–8.5, which court described as "handsome but unquestionably reasonable"); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (E.D. Pa. 2005) (25% of $126,800,000 fund awarded; multiplier of 6.96); *Weiss v. Mercedes-Benz of N. Am., Inc.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (fee tresulted in multiplier of 9.3 times hourly rate), *aff'd*, 66 F.3d 314 (3d Cir. 1995); *see also* 1 Alba Conte, ATTORNEY FEE AWARDS § 2.06, at 39 n.90 (2d ed. 1993) ("When a large common fund has been recovered and the hours are relatively small, some courts reach a reasonable fee determination based on large multiples of five or ten times the [lodestar].") (footnote omitted); *cf. In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 (3d Cir. 2001) (5.7% of $341,500,000 settlement awarded, resulting in multiplier of 7); *Demaria v. Horizon Healthcare Servs., Inc.*, 2016 WL 6089713, at *5 (D.N.J. Oct. 18, 2016) (multiplier over 4 reasonable and "consistent with the considerable risks that counsel faced in taking on this litigation, and the sophisticated legal work required to achieve success").

-9-

778, 781 (7th Cir. 2014) ("[T]he value of the settlement [is] defined as the sum of the awards to the class and to its lawyers.").  Class Counsel also will have to perform substantial future work as part of the administration of the Settlement and will continue to work on behalf of the class until the final AEM is completed, which may be years after final approval of the Settlement.  This additional work will lower the multiplier over time.[10]

All these points are supported by Professor Brian Fitzpatrick's accompanying declaration. *See* Exhibit A to the Declaration of James E. Cecchi in Support of Motion for Attorneys' Fees and Costs ("Cecchi Decl.").  Professor Fitzpatrick is a leading scholar in the class action field, clerked for Justice Antonin Scalia, and is the author of the book at *The Conservative Case for Class Actions*.  Professor Fitzpatrick explains based on empirical research that the normal range for fees in cases such as this is 30% to 35%.  Plaintiffs' request for 11.4% of the Mercedes settlement and 25% of the Bosch settlement (or an overall amount of 12.5%) falls well below this average.

In sum, it is inarguable that this settlement provides significant and real value to consumers, and that were obtained despite inherent and significant risks and

---

[10] *See Stevens v. SEI Invs. Co.*, 2020 WL 996418, at \*13 (E.D. Pa. Feb. 28, 2020) ("Class Counsel is expected to perform additional work in connection with this case following this Court's approval. As such, the multiplier will likely be lower by the time the matter is closed and Class Counsel's work is complete."); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at \*40 (N.D. Ga. Mar. 17, 2020) (future time should be included in lodestar calculations); *Sullivan v. DB Invs., Inc.*, 2008 WL 8747721, at \*36 (D.N.J. May 22, 2008) (actual multiplier would be even lower because counsel's lodestar "does not include the additional work that will be needed to fully implement the settlement and bring the case to closure, and it is unquestioned that additional work will be required").

obstacles.  Plaintiffs' Counsel are proud of the result they achieved and the work that they have done here.  We believe that our excellent work should be appropriately compensated and that a total fee of $95,950,000 is the right and reasonable number.

### III.   LEGAL ARGUMENT

Courts have long held that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 820 n.39.  The Third Circuit has noted that at the "heart of this [doctrine] is a concern for fairness and unjust enrichment; the law will not reward those who reap the substantial benefits of litigation without participating in its costs." *Polanski v. Trump Taj Mahal Assocs.*, 137 F.3d 139, 145 (3d Cir. 1998).

The award of attorneys' fees in a class action settlement is within the Court's discretion.  *Rossi v. Procter & Gamble Co.*, 2013 WL 5523098, at *9 (D.N.J. Oct. 3, 2013).  Relevant to this agreed upon award, the Supreme Court has recognized a preference of allowing litigants to resolve fee issues through agreement. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  "A request for attorney's fees should not result in a second major litigation." *Id.*

### A.   The Court Should Award the Requested Attorneys' Fees.

Under the Mercedes Settlement Agreement, Mercedes agreed to pay "up to $80,200,000 in fees and $3,200,000 in costs that must be approved by the Court." Mercedes Settlement Agreement, ¶ 11.1.  The fee award is separate from, and in no way diminishes, the Class relief.  Fees must also be approved under the agreement

-11-

with the Bosch Defendants, which provides that Class Counsel will seek a percentage of the $63.3 million fund created in the Bosch Settlement not to exceed 25 percent. Bosch Settlement Agreement, ¶ 12.1.

In this District, Courts routinely approve agreed upon attorney's fees when the amount is independent of the class recovery and does not diminish the benefit to the class. *E.g.*, *Mirakay v. Dakota Growers Pasta Co.*, 2014 WL 5358987, at *11 (D.N.J. Oct. 20, 2014); *Rossi,* 2013 WL 5523098, at *9; *Pro v. Hertz Equip. Rental Corp.*, 2013 WL 3167736, at *6 (D.N.J. June 20, 2013); *In re LG/Zenith Rear Projection TV Class Action Litig.*, 2009 WL 455513, at *8 (D.N.J. Feb. 18, 2009). In such instances, the Court's fiduciary role in overseeing the award *is significantly reduced* because there is no potential conflict between the attorneys and class members. *Mirakay*, 2014 WL 5358987, at *11; *Rossi,* 2013 WL 5523098, at *9 (citing *McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006)). While the agreement of the parties does not bind the Court, the fact that the award emerges from arm's-length negotiations weighs strongly in favor of approval. *Rossi*, 2013 WL 5523098, at *10. "[T]he benefit of a fee negotiated by the parties at arm's length is that it is essentially a market-set price—[defendant] has an interest in minimizing the fee and Class Counsel have an interest in maximizing the fee to compensate themselves for their work and assumption of risk." *Id.* Thus, the requested award associated with the Mercedes Settlement is presumptively fair and reasonable because the award will not diminish the settlement fund.

Even when a settlement, such as the Mercedes settlement, "is not strictly a common fund because the fees were separately negotiated and will be paid apart from money awarded to the class, courts apply many of the same principles as are applied when analyzing a common fund." *Mirakay*, 2014 WL 5358987, at *11 (citing *In re Gen. Motors Corp. Pick-up Truck*, 55 F.3d at 821). The Third Circuit has consistently ruled that the percentage-of-recovery method is the preferred approach in calculating an award of fees in common fund cases. *See Sullivan,* 667 F.3d at 330 (the percentage of recovery method "is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure") (internal quotation marks and citation omitted); *AT&T*, 455 F.3d at 164; *Henderson v. Volvo Cars of N. Am., LLC*, 2013 WL 1192479, at *14 (D.N.J. Mar. 22, 2013) ("The percentage-of-recovery method is preferred in common fund cases. . . .").[11]

The Third Circuit has directed courts to consider the following factors when evaluating the reasonableness of a fee under the percentage of recovery method:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

---

[11] The Supreme Court has consistently held that the percentage-of-recovery approach is an appropriate methodology in a common fund case. *See, e.g.*, *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class").

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).  This Circuit

has also suggested three other factors that may be relevant to the Court's inquiry:

> (8) the value of benefits attributable to the efforts of class
> counsel relative to the efforts of other groups, such as
> government agencies conducting investigations, (9) the
> percentage fee that would have been negotiated had the case
> been subject to a private contingent fee agreement at the time
> counsel was retained, and (10) any innovative terms of
> settlement.

*Merck ERISA*, 2010 WL 547613, at *6 (D.N.J. Feb. 9, 2010).  "The fee award

reasonableness factors need not be applied in a formulaic way because each case is

different, and in certain cases, one factor may outweigh the rest."  *AT&T*, 455 F.3d at

166 (internal quotation marks and citation omitted).  The Third Circuit recommends

that the Court "use the lodestar method to cross-check the reasonableness of a

percentage-of-recovery fee award."  *Id.* at 164;  *see also Merck ERISA*, 2010 WL

547613, at *12 (applying lodestar cross-check).  Still, "[t]he lodestar cross-check, while

useful, should not displace a district court's primary reliance on the percentage-of-

recovery method."  *AT&T*, 455 F.3d at 164.

Consideration of these factors shows that Class Counsel's request for 11.4% of

the Mercedes settlement and 25% of the Bosch settlement (or an overall amount of

12.5%) is reasonable and should be approved.

### 1.    The size of the recovery and the number of persons benefitted favor approving the fee requests.

The result achieved is one of the primary factors to assess the propriety of an

attorneys' fee award.  *See Hensley*, 461 U.S. at 436 ("most critical factor is the degree

of success obtained");  *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 132 (D.N.J.

2002) (same). Class notice was mailed to over 438,000 Class members who, collectively, owned or leased more than 250,000 Mercedes vehicles.[12]  Class members may receive a cash payment of up to $3,590 because of the Settlements.[13]  The Mercedes Settlement is conservatively valued on the low end at more than $707 million, while the Bosch Settlement added another $63.3 million.  Thus, Class Counsel negotiated sizeable and meaningful Settlements for the Class.  Given the inherent litigation risks in this putative nationwide class action, the benefit is key as it provides tangible benefits without the risks and delays of continued litigation.

### 2.   The lack of objections so far favors approving the fee requests.

As of this date, only 2 objections have been received (objection period is open until May 24, 2021).  This fact suggests a positive response to the Settlement. *See Bell Atl. Corp. v. Bolger*, 2 F.3d at 1314, n.15 (3d Cir. 1993) (silence is "tacit consent" to settlement); *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 485 (E.D. Pa. 2010) ("The Third Circuit has looked to the number of objectors from the class as an indication of the reaction of the class.").  Class Counsel will

---

[12] The Class is larger than the number of vehicles because many vehicles had multiple owners/lessees.

[13] Class Members and their monetary benefits generally fall into three categories: (i) current owners and lessees whose Subject Vehicle receives an AEM and who submit a Valid Claim will receive $3,590 or, if an Eligible Former Owner or Eligible Former Lessee also submits a Valid Claim for that same vehicle, current owners/lessees will receive $2,692.50 (most Class Members will be current owners or lessees); (ii) Eligible Former Owners and Former Lessees will receive up to $897.50 for each vehicle, which will be divided equally among the Eligible Former Owners and Eligible Former Lessees who submit Valid Claims related to the same vehicle and (iii) Eligible Post-Announcement Owners and Eligible Post-Announcement Lessees whose Subject Vehicle receives an AEM and who submit a Valid Claim will receive $2,692.50 per Subject Vehicle.

provide a final tally of any objections (as well as responses) in a separate brief filed later.  As of this date, no objections to the noticed fee have been received.

### 3.  The skill and efficiency of Class Counsel favor approval of the fee requests.

Class Counsel's success in bringing this litigation to a successful conclusion is perhaps the best indicator of the experience and ability of the attorneys involved.  *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. at 132 ("the single clearest factor reflecting the quality of class counsels' services to the class are the results obtained") (internal quotation marks and citation omitted).  Class Counsel are highly experienced in litigating complex class actions. The quality of the work presented to the Court, the undersigned believe, speaks for itself.  Through their efforts, Class Counsel defeated Defendants' motions to dismiss, wrangled the production of essential documents after lengthy discovery negotiations and motion practice, and, through protracted, hard-fought, and creative negotiations, successfully obtain a highly favorable recovery from Defendants.  Facing the significant risk of further litigation, as discussed above, Class Counsel's results here are substantial.  Class Counsel also invested significant time over several years to achieve the Settlements.[14]

The quality and vigor of opposing counsel is also relevant in evaluating the quality of the services rendered by Class Counsel.  *See, e.g.*, *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *In re Warner Commc'ns Sec.*

---

[14] That a case settles rather than proceeding to trial "in and of itself, is never a factor that the district court should rely upon to reduce a fee award.  To utilize such a factor would penalize efficient counsel, encourage costly litigation, and potentially discourage able lawyers from taking such cases."  *Gunter*, 223 F.3d at 198.

727261v1

*Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985) ("The quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work."); *Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 941, 970 (E.D. Tex. 1999).  All Defendants were ably represented by counsel from some of the most capable firms in the country.

       **4.**    **The complexity and duration of the litigation favor approval of the fee requests.**

"[C]omplex and/or novel issues, extensive discovery, acrimonious litigation, and tens of thousands of hours spent on the case by class counsel" are the "factors which increase the complexity of class litigation." *In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 741.  This case was no exception.  The dockets in this Court and the Third Circuit reveal multiple rounds of motions to dismiss and to force arbitration, challenging appeals, and many discovery disputes. By way of example, the Court granted Mercedes' initial motion to dismiss, *In re Mercedes-Benz Emissions Litig.*, 2016 WL 7106020 (D.N.J. Dec. 6, 2016), prompting the dismissal of this case for lack of Article III standing, which required Plaintiffs to replead and (successfully) re-litigate additional motions to dismiss.  *See, e.g.*, *In re Mercedes-Benz Emissions Litig.*, 2019 WL 413541 (D.N.J. Feb. 1, 2019) (denying Mercedes' and Bosch LLC's motion to dismiss fourth amended complaint).  Plaintiffs also had to respond to multiple appellate efforts by Mercedes: (i) an unsuccessful request for interlocutory review of the order denying Mercedes' second motion to dismiss, *see In re Mercedes-Benz Emissions Litig.*, 2019 WL 2591158 (D.N.J. June 25, 2019), and (ii) Mercedes' appeal from the denial of a motion to compel arbitration for two Plaintiffs to the Third Circuit, which ordered further proceedings below on that issue.  *In re Mercedes-Benz*

*Emissions Litig.*, 797 F. App'x 695 (3d Cir. 2020).  Mercedes has denied and continues to deny Plaintiffs' material allegations and claims, and it is only through settlement that the Parties are avoiding long and protracted litigation.  This procedural history alone illustrates the significant and serious risks counsel faced here—and their diligence in presenting this case.

Also noteworthy, the parties engaged in intense and vigorously disputed discovery motions submitted to Special Master Dennis Cavanaugh (Ret.).  To foster the parties' pursuit of relevant evidence, the Special Master scheduled frequent case management conferences, decided many discovery disputes, and facilitated the advancement of discovery.  *See, e.g.*, *In re Mercedes-Benz Emissions Litig.*, 2020 WL 487288 (D.N.J. Jan. 30, 2020); *In re Mercedes-Benz Emissions Litig.*, 2020 WL 103975 (D.N.J. Jan. 9, 2020); *In re Mercedes-Benz Emissions Litig.*, 2019 WL 5800270 (D.N.J. Nov. 7, 2019).  Approximately 20 discovery motions were briefed. The disputes included the way Defendants would search for documents; the scope of custodians to be explored; the scope of Plaintiffs' discovery requests; and resisting invasive searches of Plaintiffs' documents.

Plaintiffs served 91 Requests for Production on Mercedes and another 59 requests on the Bosch defendants.  Plaintiffs served subpoenas on 11 third parties. The Mercedes and the Bosch defendants produced tens of thousands of documents comprising hundreds of thousands of pages, which Plaintiffs reviewed and coded. ECF 306-2, ¶ 7.  Plaintiffs' experts reviewed much of the technical discovery that was produced.  Depositions were underway when the Parties reached the proposed

Settlement. Plaintiffs took Rule 30(b)(6) depositions of Mercedes and Bosch LLC, respectively, while Defendants deposed five Plaintiffs. *Id.*, ¶ 8. Extensive mediation efforts were required. Seven full-day and two half-day mediation sessions were held with Judge Infante over a year. The mediation also entailed many conference calls with Judge Infante and between the Parties. *Id.*, ¶ 9.

Although Plaintiffs' Counsel engaged in substantial motion practice and extensive discovery, this Action could continue for years if it were to go to trial. *See Muse v. Dymacol, Inc.*, 2003 WL 22794698, at *2 (E.D. Pa. Nov. 7, 2003) ("[s]ettlement . . . will avoid delay in realizing benefit for the affected class members, and will avoid unnecessary litigation costs"). A settlement now points to finding the fee request reasonable. *See Merck ERISA*, 2010 WL 547613, at *10 ("inherently complex suit" that was "ongoing for more than two years" warranted 33⅓% fee award).

### 5. Class Counsel undertook the risk of non-payment.

Courts across the country have consistently recognized that the risk of receiving little or no recovery is an influential factor in considering an award of attorneys' fees. *See, e.g.*, *Warner Commc'ns*, 618 F. Supp. at 747-49 (citing cases). As one court stated:

> Counsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable. Counsel advanced all of the costs of litigation, a not insubstantial amount, and bore the additional risk of unsuccessful prosecution.

*In re Prudential-Bache Energy Income Partnerships Sec. Litig.*, 1994 WL 202394, at *6 (E.D. La. May 18, 1994); *see also, e.g.*, *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d

491, 516 (W.D. Pa. 2003) ("investment of time, personnel and resources" supported awarding requested fee); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 104 (E.D. Pa. 2013) ("as a contingent fee case, counsel faced a risk of nonpayment in the event of an unsuccessful trial. Throughout this lengthy litigation, class counsel have not received any payment. This factor supports approval of the requested fee."). Courts in the Third Circuit have consistently recognized that the attorneys' contingent fee risk is an essential factor in determining a fee award. *See Merck ERISA*, 2010 WL 547613, at *11 ("[t]he risk of little to no recovery weighs in favor of an award of attorneys' fees" where counsel accepted the action on a contingent-fee basis).

The risks attendant to prosecuting this case were not theoretical. This case was actually dismissed on the pleadings and it was only because of counsels' diligence that it was resurrected and then successfully prosecuted. Other recent significant automotive litigations are also instructive to appreciate this point. For instance, the government recall of Takata airbags was followed by hundreds of overlapping consumer class actions filed across the country. Similarly, in the *Volkswagen* and *Chrysler-Dodge-Jeep* diesel emissions cases, more than a dozen law firms were appointed. Many more sought leadership appointments at the start of the case. In this case, by contrast, leading law firms and lawyers passed on this case after our filing—believing (wrongly) that this litigation would result in no recovery without a government recall to jump-start the case.

Class Counsel have prosecuted this Action on a contingent basis and continue to shoulder all the risks (and costs) of litigation. From the outset, Class Counsel

-20-

understood that they were embarking on a complex, expensive, and potentially lengthy litigation, which could require (and has) the investment of millions of dollars and many thousands of hours of attorney time, with no guarantee of ever being compensated for the investment of such time and resources.  In undertaking this risk, Class Counsel had to, and did, ensure that sufficient resources were dedicated to prosecuting this Action.   Indeed, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingent basis, expended millions of dollars in time and expenses, and received nothing for their efforts.[15] Despite the litigation risks, Class Counsel forged a resolution that provides significant relief to the Class now, including substantial monetary benefits.  Thus, Class Counsel undertook a significant risk here and the fee award, respectfully, should reflect that risk.

### 6.   Class Counsel devoted significant time to this case.

Since its inception, Plaintiffs' Counsel have collectively expended over 25,948.55 hours to the case, making a cumulative, collective lodestar of $16,905,790.00.   *See* Cecchi Decl., ¶¶ 37-43 & Exs. 1-6.  This includes, among other

---

[15] *See, e.g., Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991 (9th Cir. 2010) (Ninth Circuit affirmed district court's dismissal on summary judgment, and plaintiffs received no damages); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict after 19-day trial and dismissing case with prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *In re Apple Comput. Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions); *MCI Commc'ns. Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081 (7th Cir. 1983) (antitrust judgment remanded for new trial and damages).

things: the time spent in the initial investigation of the case and testing related to class vehicles; researching complex issues of law; preparing and filing the initial and amended complaints; resisting serial motions to dismiss; engaging in written discovery; engaging in extensive discovery negotiations and motion practice; reviewing documents produced by Defendants; preparing for and taking/defending depositions; working with expert witnesses; hard-fought settlement negotiations; documenting the Settlement; and researching and briefing issues relating to the preliminary and final approval of the Settlement. *See id.* In addition, Class Counsel will incur more lodestar in (hopefully) obtaining final approval of the Settlements, as well as attending to ongoing settlement administration. Thus, Class Counsel's submission today does not include time to be spent going forward, both in preparing and presenting arguments on final approval, defending the settlement from any appellate or other attacks that may result, and assisting class members with the claims process.

### 7. Awards in similar cases favor the fee request.

The percentage fee requests (11.4% of the $707 million conservative value of the Mercedes Settlement on the low end, and 25% of the $63.3 million fund created by the Bosch Settlement) are reasonable under the percentage-of-recovery method and consistent with fees awarded by courts in this Circuit. While there is no general rule, the Third Circuit has observed that fee awards generally range from 19% to 45% of the settlement fund. *See, e.g.*, *Castro v. Sanofi Pasteur Inc.*, 2017 WL 4776626, at *9 (D.N.J. Oct. 23, 2017) (approving one-third fee and noting that the "normal range" is from "19% to 45% of the settlement fund"); *In re Ikon*, 194 F.R.D. at 194

("Percentages awarded have varied considerably, but most fees appear to fall in the range of nineteen to forty-five percent."); *cf. La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) ("[c]ourts within the Third Circuit often award fees of 25% to 33⅓% of the recovery").

Ample precedent exists in this District supporting the relevant percentages. *See, e.g.*, *Dartell v. Tibet Pharms., Inc.* 2017 WL 2815073, at *11 (D.N.J. June 29, 2017) ("one-third fee is consistent with fee awards in non-class cases"); *Schuler v. Medicines Co.*, 2016 WL 3457218, at *9-10 (D.N.J. June 24, 2016) (approving 33% fee); *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) ("[33%] has regularly been found acceptable in common fund settlements in this District."); *Merck ERISA*, 2010 WL 547613, at *9-12; *Milliron v. T-Mobile USA, Inc.*, 2009 WL 3345762, at *13 (D.N.J. Sept. 14, 2009) ("The Court is aware that 33 1/3% is a standard figure for recovery in a consumer class action of the contingent-fee variety"). Professor Brian Fitzpatrick reports on this case law in his accompanying declaration and explains that, based on empirical research, the normal range for fees in cases such as this is 30% to 35%.  Plaintiffs' requests for 11.4% and 25%, respectively, fall below this average range.

### 8.   The lack of benefits attributable to others, including government agencies, favors the requested fee award.

This factor contemplates whether Plaintiffs' Counsel benefited from "the efforts of other groups, such as government agencies conducting investigations." *AT&T*, 455 F.3d at 165.  Unlike the Volkswagen and Chrysler-Dodge-Jeep diesel emissions cases that *followed* government action and settled, Plaintiffs here

developed every aspect of their case without the benefit of a government indictment or criminal or civil judgments or penalties against Mercedes.[16]

Class Counsel retained experts, tested vehicles, and completed a thorough and costly investigation before they filed their initial complaint and long before there was any public awareness of a government investigation of Mercedes.  It was only months later that, in April 2016, Mercedes said the Department of Justice had asked Mercedes to investigate its emissions certification process.  At a minimum, these governments benefitted from Plaintiffs' comprehensive investigation, complaint, and testing.

The results obtained for the Class are directly attributable to Class Counsel's efforts.  *See, e.g.*, *In re Diet Drugs*, 582 F.3d at 544 ("this case differed from the typical antitrust or securities litigation . . . 'where government prosecutions frequently lay the groundwork for private litigation" and are followed by private cases) (citation omitted); *In re Syngenta AG Mir162 Corn Litig.*, 2018 WL 7254709, at *21 ("In contrast to many class actions that follow on and build on governmental enforcement proceedings—*e.g.*, the *Volkswagen* diesel emissions case, the *Deepwater Horizon* BP oil spill case, or securities fraud or antitrust cases—the Syngenta corn cases did not involve any parallel government proceedings on which plaintiffs' counsel could 'piggyback' their efforts.  The absence of government involvement also arguably increased the risk of non-recovery."); *In re Payment Card Interchange Fee & Merch.*

---

[16] This Court understands many vital plaintiffs' cases follow, and are conceived upon, the public announcement of a government regulatory announcement, investigation, indictment, or notice of violation.  That was not the case here.

*Disc. Antitrust Litig.*, 991 F. Supp. 2d at 441 ("plaintiffs did not piggyback on previous government action—indeed, the government piggybacked on their efforts").

9.   **The percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement favors approval.**

Although a fee of 33.33% fee request reflects commonly negotiated fees in the private marketplace, *see, e.g.*, *Merck ERISA*, 2010 WL 547613, at *12; *In re Remeron*, 2005 WL 3008808, at *16 ("Attorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation."); *In re Ikon*, 194 F.R.D. at 194 ("[I]n private contingency fee cases . . . plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery"), the requested fees here are lower—11.4% of the $707 million conservate value of the Mercedes Settlement on the low end, and 25% of the $63.3 million fund created by the Bosch Settlement.  As a result, the fee request is reasonable.

10.   **Innovative terms of the settlements support the fee request.**

The Settlements are innovative in important respects.  On top of providing substantial cash benefits to Class members, the Settlements are designed to complement and work together with Mercedes' settlements with the Environmental Protection Agency and the California Air Resources Board that resolve regulatory claims against Mercedes and set a schedule for implementing an Approved Emissions Modification ("AEM") to the Subject Vehicles that will modify the emission control system software calibration and certain related hardware to ensure that the vehicles meet the emissions standards to which they were originally certified.  Along with the cash payments described above, in some cases, Eligible Current Owners/Lessees may

receive additional payments for deferred AEM availability, any late submissions of emissions modification proposal reports by Mercedes to the regulators, any reclassification of Subject Vehicles to a lesser emissions standard,[17] and if any AEMs "substantially reduce" reduce the performance of the car.[18]

### 11. The lodestar cross-check supports the fairness and reasonableness of the requested/agreed fees and expenses.

The Third Circuit recommends that district courts use counsel's lodestar as a "cross-check" to determine whether the fee that would be awarded under the percentage-of-recovery method is reasonable. *See Sullivan*, 667 F.3d at 330.[19]  In applying the lodestar cross-check, however, the Third Circuit has emphasized that the calculation is "not a full-blown lodestar inquiry" and need not entail

---

[17] If an AEM for a Subject Vehicle is unavailable within a grace period beyond the deadline, Class Members who own or lease an affected Registered Subject Vehicle on that date will be eligible for a substantial payment pegged to the Owner/Lessee Payment in accordance with the Settlement Agreement, based on model year from 30% up to 80%.  If, before the deadline, an AEM is unavailable, and no vehicle in that Emissions Modification Category can be re-registered in the owner's state of residence because the AEM is unavailable and the owner files a claim within 60 days of that deadline, Mercedes will offer to repurchase the Subject Vehicle for an amount equal to the value of the vehicle according to the Manheim Market Report.

[18] If an AEM causes "Reduced Performance" of the Subject Vehicle, then Current Owners/Lessees will be eligible for a payment of $325. If an AEM causes "Substantially Reduced Performance" of the Subject Vehicle, then Current Owners/Lessees will be eligible for a payment of up to $650.  And if an AEM increases the frequency of refilling the diesel emission fluid, Current Owners/Lessees of the affected Subject Vehicle will be eligible to receive another $75.

[19] Under the lodestar method, a court multiplies the number of hours each timekeeper spent on the case by their hourly rate, then adjusts that lodestar figure by applying a multiplier to reflect such factors as the risk and contingency nature of the litigation, the result obtained, and the quality of the attorneys' work. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 305.

727261v1

"mathematical precision" or "bean counting." *AT&T*, 455 F.3d at 169, n.6. Further, "the district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d at 306-07.

Plaintiffs' Counsel have devoted over 25,948.55 hours to the prosecution of the Class's claims against Defendants, creating a total lodestar of $16,905,790.00. Cecchi Decl., ¶ 43. The hourly rates vary appropriately between attorneys and between paralegals, depending on the position, experience level, and locale of individual. *Id.*, Exs. 1-6. The rates for each attorney and paralegal are outlined in the charts and exhibits to the Cecchi Declaration. *Id.*, Exs. 1-6. The lodestar rates reflect a reasonable hourly billing rate for such services given the geographical area, the services provided, and the lawyer's experience. *Gunter*, 223 F.3d at 195. Considering the several factors discussed above, including the economic benefits of the Settlements, the complexity and risk of the litigation, and the skill and experience of counsel, Class Counsel's rates are reasonable in this case.

The requested fee award results in applying a multiplier of 5.67, within the range of multipliers typically awarded in the Third Circuit (and, of course, the multiplier will decline over time as Class Counsel continue to work on the case[20]).

---

[20] *See Stevens*, 2020 WL 996418, at *13 (recognizing that the multiplier will be lower by the time the matter is closed given that "Class Counsel is expected to perform additional work in connection with this case following this Court's approval"); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132, at *40 (future time should factor into lodestar calculations); *Sullivan*, 2008 WL 8747721, at *36 (actual multiplier will be lower because counsel's lodestar "does not include the additional work that will be needed to fully implement the settlement and bring the case to closure, and it is unquestioned that additional work will be required").

727261v1

Multipliers are used to account for the risks of non-recovery, as an incentive for counsel to undertake socially beneficial litigation, or as an award for an extraordinary result. "By nature they are discretionary and not susceptible to objective calculation." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 340 (3d Cir. 1998). In *Prudential,* the court found that "[m]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *Id.* at 341.[21]  Indeed, courts in this Circuit and elsewhere have approved large multipliers, when appropriate, in a range exceeding 10. *See, e.g.*, *In re Merry–Go–Round Enters.*, 244 B.R. 327 (40% award for $71 million fund awarded, resulting in cross-check multiplier of 19.6); *Stop & Shop Supermarket Co.*, 2005 WL 1213926, at *12, 15-17 (multiplier of 15.6 and fee of 20% of $100M settlement where "no prior government investigation" or finding of civil or criminal liability existed); *New England Carpenters*, 2009 WL 2408560, at *2 (approving multiplier of 8.3 and 20% fee); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d at 736 n.44 (award of 25% of the

---

[21] *Accord In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d 327, 341-42 (D.N.J. 2002); *Rowe v. E.I. DuPont de Nemours and Co.*, 2011 WL 3837106, at *22 (D.N.J. Aug. 26, 2011). In *In re Cendant Corp. PRIDES Litig.*, the Third Circuit approved a lodestar multiplier of 2.99 in a case it described as "relatively simple in terms of proof" in which "discovery was virtually nonexistent." 243 F.3d at 735-36; *see also Milliron v. T-Mobile USA, Inc.*, 423 F. App'x 131, 135 (3d Cir. 2011) (2.21 multiplier); *McLennan v. LG Elecs. USA, Inc.*, 2012 WL 686020, at *10 (D.N.J. Mar. 2, 2012) (awarding multiplier of 2.93 and citing cases noting that range of multipliers in this circuit is between 1 and 4); *Merck ERISA*, 2010 WL 547613, at *13 (2.786 multiplier); *McCoy v. Health Net, Inc.*, 569 F. Supp. 2d at 448, 479 (D.N.J. 2008) (2.3 multiplier); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 256 (D.N.J. 2005) (2.83 multiplier); *In re Remeron End-Payor Antitrust Litig.*, 2005 WL 2230314, at *31 (D.N.J. Sept. 13, 2005) (multiplier of 1.73 was "on the low end of the spectrum") (citing cases).

$193 million fund, which amounted to $48 million and represented a multiplier of 4.5–8.5, which court described as "handsome but unquestionably reasonable"); *In re Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587 (25% of $126,800,000 fund awarded; multiplier of 6.96); *Weiss*, 899 F. Supp. at 1304 (fee resulted in multiplier of 9.3 times hourly rate); *see also* 1 Alba Conte, ATTORNEY FEE AWARDS § 2.06, at 39 n.90 (2d ed. 1993) ("When a large common fund has been recovered and the hours are relatively small, some courts reach a reasonable fee determination based on large multiples of five or ten times the [lodestar].") (footnote omitted); *cf. In re Cendant Corp. PRIDES Litig.*, 243 F.3d at 732 (5.7% of $341,500,000 settlement awarded, resulting in multiplier of 7); *Demaria*, 2016 WL 6089713, at *5 (lodestar multiplier over 4 was reasonable and "consistent with the considerable risks that counsel faced in taking on this litigation, and the sophisticated legal work required to achieve success").

## B.    Class Counsel's Expenses are Reasonable and Should be Approved.

Along with their request for attorneys' fees, Class Counsel request reimbursement of certain out-of-pocket expenses totaling $3,635,238.32.   Cecchi Decl., ¶¶44-46 & Exs. 1-6; *Careccio v. BMW of N. Am. LLC,* 2010 WL 1752347, at *8 (D.N.J. Apr. 29, 2010); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (finding counsel to be "entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action").   The expenses are of the type typically billed by attorneys to paying clients in the marketplace and include such costs as copying fees, expert fees, computerized research, travel in connection with this litigation, and discovery expenses.   All the costs were reasonable and necessary for the successful

prosecution of this case and should be approved.  *See* Cecchi Decl., ¶¶ 44-52.  Further, Class Counsel will incur even more expenses on this case going forward, including working with the Settlement Administrator, communicating with Settlement Class members, and attending the Final Approval Hearing.  As a part of the Mercedes Settlement Agreement, the parties agreed that Plaintiffs would seek reimbursement of expenses not to exceed $3,200,000.  Class Counsel accordingly requests that the Court approve this amount.

## IV.   CONCLUSION

For all these reasons, the Court should grant Class Counsel's reasonable fee and expense reimbursement request as to the Mercedes settlement and as to the Bosch Settlement.

Dated:  April 22, 2021                              Respectfully submitted,

                                                              */s/ James E. Cecchi*
                                                              James E. Cecchi
                                                              Donald A. Ecklund
                                                              CARELLA, BYRNE, CECCHI, OLSTEIN,
                                                              BRODY & AGNELLO, P.C.
                                                              5 Becker Farm Road
                                                              Roseland, NJ 07068
                                                              Telephone: (973) 994-1700
                                                              Facsimile: (973) 994-1744
                                                              Email: jcecchi@carellabyrne.com
                                                              Email: decklund@carellabyrne.com

727261v1

Steve W. Berman
Sean R. Matt
Andrew M. Volk
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: sean@hbsslaw.com
Email: andrew@hbsslaw.com

Christopher A. Seeger
Jennifer R. Scullion
David R. Tawil
**SEEGER WEISS LLP**
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: (212) 584-0700
Facsimile: (212) 584-0799
Email: cseeger@seegerweiss.com
Email: jscullion@seegerweiss.com
Email: dtawil@seegerweiss.com

*Attorneys for Plaintiffs and the Class*

727261v1